UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA
EASTERN DIVISION

| | |
|---|---|
| JESSICA KRAFT, individually and as parent to minors L.K., S.K., and O.K.; SHELLI SCHNEIDER, individually and as parent to minors A.S. and W.S.; individually and on behalf of all others similarly situated, | Case No. 3:20-CV-00121 |
| Plaintiffs, | **MEMORANDUM IN SUPPORT OF MOTION TO DISMISS** |
| vs. | |
| ESSENTIA HEALTH, JOHN DOES MANUFACTURERES, JOHN DOE DISTRIBUTOR, | |
| Defendants. | |

## I.    INTRODUCTION

Defendant, Essentia Health ("Essentia"), moves to dismiss the Plaintiffs' Complaint pursuant to Article III of the United States Constitution and Rule 12(b)(1) of the Federal Rules of Civil Procedure as Plaintiffs failed to allege sufficient facts necessary to establish standing, a prerequisite to the federal courts' exercise of subject matter jurisdiction. Essentia, additionally and alternatively, moves to dismiss Counts I and II of Plaintiffs' Complaint. Even if this Court had subject matter jurisdiction over Plaintiffs' claims, Counts I and II of Plaintiffs' Complaint must be dismissed for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Essentia also moves for dismissal of Count III of Plaintiffs' Complaint in its entirety for Plaintiffs' failure to comport with the pleading requirements of Rule 9 of the Federal Rules of Civil Procedure. For these reasons, outlined below, Essentia respectfully requests this Court dismiss Plaintiffs' Complaint.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Jessica Kraft ("Kraft"),  individually and as parent to minors L.K, S.K., and O.K., Shelli Schneider ("Schneider"), individually and as parent of minors A.S. and W.S., (collectively, referred to as "Plaintiffs"), both North Dakota residents, commenced this action against Essentia, John Doe Manufacturers, and John Doe Distributor (collectively, referred to as "Defendants") in July of 2020.  (Doc. ID No. 2, *Summons Issued;* Doc. ID No. 3, *Waiver of Service Executed*).  Plaintiffs claim the Defendants are responsible for ensuring temperature sensitive pharmaceutical products ("TTSPPs") are continuously stored at the proper cold temperature.  (Doc. ID No. 1, *Complaint* at ¶ 1).  Plaintiffs further allege that vaccines and other TTSPPs exposed to temperatures outside the proper cold range, otherwise known as a temperature excursion, have reduced potency and increase the risk of vaccine-preventable diseases. *Id.* at ¶ 2.  Plaintiffs allege, since January 2017, Essentia sold and administered more than 100 TTSPPs manufactured by John Doe Manufacturers and stored and distributed by John Doe Distributor (defined by the Plaintiffs as the "Affected Medications") to Plaintiffs, their children, and putative class members. *Id.* at ¶ 3.  Plaintiffs allege the Affected Medications were handled and stored outside the proper temperature range and, thus, subject to one or more temperature excursions, affecting 50,000 patients across Minnesota and North Dakota. *Id.* at ¶¶ 3-4.  The putative class includes "All persons who paid, in whole or in part, for or were administered the Affected Medications at Essentia Health." *Id.* at ¶ 58.

Specific to the named Plaintiffs, Kraft contends she received a flu vaccine at Essentia's South University Clinic on January 31, 2017 and that upon information and belief the flu vaccine she received was distributed by John Doe Distributor to Essentia Health and was subject to a temperature excursion. *Id.* at ¶ 12.  Kraft further alleges that her three children

also received flu vaccines on January 31, 2017, which were subject to a temperature excursion. *Id.* In addition, Kraft claims her daughter also received vaccinations for DTAP/HEPB/IPV, Rotavirus, and Pneumococcal, all allegedly subjected to a temperature excursion. *Id.* Schneider's allegations are very similar. Schneider contends her child's immunizations for DTAP (administered 5/25/18), Hep A (administered 8/24/18, 2/16/18), Hib (administered 5/25/18), and Influenza (administered 10/12/19, 10/26/18, 11/27/17, 10/26/17) were subject to a temperature excursion. *Id.* at ¶ 13. Schneider contends she was advised that these vaccinations were affected by a temperature excursion in an April 21, 2020 e-mail from a nurse and an April 7, 2020 letter from Essentia. *Id.* at 13.

Plaintiffs' Complaint pleads four separate claims for relief. Count I asserts a claim against all Defendants for breach of express warranties. *Id.* at ¶¶ 68-82. To summarize, Plaintiffs claim Defendants had a duty to exercise reasonable care in the design, manufacture, testing, marketing, labeling, packaging, handling, distribution, storage, and/or sale of the Affected Medications, including the duty to ensure that their products met the safety, efficacy, and purity requirements of their labels. *Id.* at ¶ 70. Plaintiffs contend that statements made by the Defendants in labels, publications, package inserts, and other written materials constitute affirmations of fact or promises made by the seller to the buyer, which related to the goods and became part of the basis of the bargain, creating an express warranty that the goods would conform to the representations. *Id.* at ¶¶ 71-74. Plaintiffs allege Defendants breached these warranties because the Affected Medications were defective, unfit for use, and not merchantable or safe for their intended, ordinary, and foreseeable use and purpose. *Id.* at 76. Specifically, Plaintiffs contend the Defendants represented that the expiry dates on their products were accurate and that the Affected Medications were safe and effective through the

3

expiry period and that Defendants did not disclose that the Affected Medications' efficacy and potency were likely to decrease completely or dramatically as a result of temperature excursions from improper storage and handling. *Id.* Plaintiffs further allege they relied on the express warranties to their detriment because Physicians would not have prescribed and Plaintiffs would not have purchased or used the Affected Medications if Defendants had disclosed the improper handling and storage and alleged resulting temperature excursions. *Id.* at ¶ 77.

Count II is a claim against all Defendants for breach of implied warranties. *Id.* at ¶¶ 83-94. Plaintiffs allege Defendants impliedly warranted to their consumers, including Plaintiffs, that the Affected Medications were of merchantable quality and safe and fit for the use for which they were intended. *Id.* at 85. Plaintiffs assert Defendants breached the implied warranty because the Affected Medications were not of merchantable quality, safe, or fit for their intended use due to their inadequate storage and cooling. *Id.* at ¶ 92. Much like their claim for breach of express warranties, Plaintiffs claim they relied on Defendants' implied warranties to their detriment, sustaining economic loss and other injuries as a result. *Id.* at ¶¶ 90 & 94.

Count III is a claim for violation of consumer protection and deceptive trade practices laws under both Minnesota and North Dakota law. *Id.* at ¶¶ 95-117. Plaintiffs contend Defendants' actions constitute unfair competition or unfair, unconscionable deceptive or fraudulent acts, or trade practices because Defendants did not disclose the Affected Medications were subjected to a temperature excursion. *Id.* at ¶ 96. Plaintiffs assert that absent Defendants' deceptive or fraudulent representations and material omissions, Plaintiffs would not have purchased the Affected Medications. *Id.* at ¶¶ 111-113. Plaintiffs further contend

4

Defendants' unlawful acts and practices were harmful to the general public and caused the Plaintiffs' ascertainable losses and damages. *Id.* at ¶¶ 115-117.

Count IV is a claim for unjust enrichment. *Id.* at ¶¶ 118-125. Plaintiffs allege Defendants knew or should have known the Affected Medications were not safe, effective, or of the quality required to provide the protections promised by the vaccines and immunizations and that they were unjustly enriched for their failure to make necessary disclosures, receiving a measurable benefit in the form of Plaintiffs' payments for the Affected Medications and associated medical visits. *Id.* at ¶¶ 120-122. Plaintiffs contend it would be inequitable for Defendants to retain this benefit, requiring Defendants to return Plaintiffs to the position they occupied prior their interaction with the Defendants. *Id.*

The entirety of Plaintiffs' Complaint is premised upon communication it alleges Essentia sent to approximately 50,000 patients, in both North Dakota and Minnesota, in April of 2020, notifying patients that "medication or vaccines they received <u>might</u> have been compromised by improper storage by the John Doe Distributor." *Id.* at ¶ 4 (emphasis added). Plaintiffs claim that they, and the putative class, were injured by paying for the Affected Medicines and related medical appointments without receiving the benefit of the bargain. *Id.* at ¶ 5. Plaintiffs acknowledge Essentia offered to revaccinate free of charge, but suggest that they are instead "entitled to refunds for visits for which they did not receive proper care." *Id.* at ¶ 6. Plaintiffs also contend revaccinations "are worthless to the thousands of patients who received vaccines that cannot be re-administered, such as annual flu vaccines for the 2017, 2018 and 2019 flu seasons." *Id.* at ¶ 7. Plaintiffs suggest that patients may choose to be re-vaccinated outside of the Essentia system and will have to bear additional out-of-pocket costs in addition to the pain and suffering to be revaccinated, "as well as the aggravation and time

5

to undergo and attend additional medical examinations." *Id.* at ¶ 8. Significantly, Plaintiffs do not allege that they, or any of the putative class members, were plagued with the disease the vaccinations and/or immunizations were intended to prevent or suffered some other concrete injury as a result of the vaccination and/or immunization.

Now, Essentia brings the present Motion to Dismiss Plaintiffs' Complaint as Plaintiffs allegations are insufficient to demonstrate an injury-in-fact divesting this Court of subject matter jurisdiction. Essentia, in addition and alternatively, moves to dismiss Counts I and II of Plaintiffs' Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure as Plaintiffs failed to plead a set of facts entitling them to relief for their breach of warranty claims. Essentia also moves to dismiss Count III of Plaintiffs' Complaint for their failure to comply with pleadings requirements under Rule 9 of the Federal Rules of Civil Procedure, stripping Essentia of the ability to respond to Plaintiffs' allegations with anything other than a Motion to Dismiss.

## III.   LAW AND ARGUMENT

### A.   This Court does not have subject matter jurisdiction over Plaintiffs' claims and Plaintiffs' Complaint should be dismissed in its entirety.

Article III, Section 2 of the United States Constitution limits the exercise of federal jurisdiction to actual cases and controversies. *Steger v. Franco, Inc.,* 228 F.3d 889, 892 (8th Cir. 2000). "Under Article III of the United States Constitution, a plaintiff must have "standing" to invoke the power of the federal court." *Clausen v. National Geographic Soc.,* 664 F. Supp. 2d 1038, 1047 (D.N.D. 2009), *aff'd sub nom. Clausen v. National Geographic Soc.,* 378 Fed. Appx. 595 (8th Cir. 2010). "[I]f a plaintiff lacks standing to sue, the district court has no subject-matter jurisdiction." *Auer v. Trans Union, LLC,* 902 F.3d 873, 877 (8th

6

Cir. 2018). "Therefore, the plaintiff's standing to sue 'is the threshold question in every case, determining the power to entertain the suit.'" *Steger,* 228 F.3d at 892 (quoting *Warth v. Seldin,* 422 U.S. 490, 498 (1975)).

Standing is comprised of three separate and independent requirements. "[T]he plaintiff must have a 'distinct' and palpable' injury; the injury must be fairly traceable to the defendant's conduct; and relief from the injury must be likely to follow a favorable decision from the court." *Clausen,* 664 F. Supp. 2d at 1047. The plaintiff bears the burden of establishing the basis for jurisdiction and "[w]here, as here, a case is at the pleading stage, the plaintiff must 'clearly…allege facts demonstrating' each element." *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1547 (2016), as revised (May 24, 2016).

Standing analysis does not change in the context of a class action lawsuit. *In re SuperValu, Inc.,* 870 F.3d 763, 768 (8th Cir. 2017). "A putative class action can proceed as long as one named plaintiff has standing." *Id.* Where, however, "none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other members of the class." *O'Shea v. Littleton,* 414 U.S. 488, 494 (1974). Whether a plaintiff has standing as required under Article III is a question of law for this Court. *Clausen,* 664 F. Supp. 2d at 1047 (citing *Park v. Forest Serv. Of the U.S.,* 205 F.3d 1034, 1036 (8th Cir. 2000)).

"To establish injury in fact, [the first and foremost of standing's three elements,] a plaintiff must show that he or she suffered an 'invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Amburgey v. CaremarkPCS Health, L.C.C.,* No. SACV1700183CJCKESX, 2017 WL 7806634, at *1 (C.D. Cal. Sept. 21, 2017) (quoting *Lujan v. Defs. of Wildlife,* 504 U.S. 555,

7

560 (1992)). A plaintiff is required to demonstrate that he or she "'sustained or is immediately in danger of sustaining some direct injury as the result of the challenged conduct and [that] the injury or threat of injury [is] both real and immediate...'" *Seger,* 228 F.3d at 892 (quoting *City of Los Angeles v. Lyons,* 461 U.S. 95, 102 (1983)). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Spokeo,* 136 S.Ct. at 1548. To be concrete, the injury "must be '*de facto*'; that is, it must actually exist." *Id.*

For example, the Court in *Wallace v. ConAgra Foods, Inc.* held plaintiffs lacked standing because injuries grounded in speculation and conjecture are not cognizable under Article III. 747 F.3d 1025, 1030-31 (8th Cir. 2014). At issue in *Wallace* was the quality of Hebrew National meat products manufactured by ConAgra. *Id.* at 1028. As part of its advertising campaign, ConAgra promotes its compliance with various kosher requirements as a reason to purchase Hebrew National meat products, at a higher price point than ConAgra's non-kosher competitors. Hebrew National's commitment to sell only kosher meat products that "meet a higher standard," and its alleged failure to achieve that higher standard by selling meat products with a non-kosher defect served as the basis of the litigation in *Wallace v. ConAgra Foods, Inc.* A group of consumers sued ConAgra for its alleged failure to produce and sell products consistent with their labeling, "100% kosher." *Id.* at 1027. Plaintiffs alleged they paid an unjustified premium for kosher beef, which was not, in fact, kosher. *Id.* The consumers alleged that due to ConAgra's manufacturing quotas, the kosher inspection process was defective and unreliable and that meat from cows that do not meet kosher requirements was used in meat products labeled kosher and sold under the Hebrew National's product line. *Id.* at 1028.

8

ConAgra moved to dismiss the consumers' Complaint for lack of Article III standing. *Id.* "ConAgra allege[d] that even if the consumers would have overpaid if the Hebrew National products they bought were not actually kosher, the consumers '[did] not allege[] that the products they each purchased were defective." *Id.* at 1029-30. Affirming the lower court's dismissal, the Eighth Circuit Court of Appeals agreed. *Id.* at 1032. "The Supreme Court has made it clear that standing must be particularized, meaning the alleged 'injury must affect the plaintiff in a personal and individual way." *Id.* at 1030 (quoting *Lujan*, 504 U.S. at 560 n.1). As the Eighth Circuit Court of Appeals explained in *Wallace,* "it is pure speculation to say the particular packages sold to the consumers were tainted by non-kosher beef." *Id.* at 1031. "Without any particularized reason to think the consumers' own packages of Hebrew National beef actually exhibited the alleged non-kosher defect, the consumers lack Article III standing to sue." *Id.* at 1030. It is simply insufficient to allege that a product line contains a defect; instead, plaintiffs are required to allege that the product they themselves purchased actually exhibited the alleged defect. *Id.* (quoting *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 616 (8th Cir. 2011) (internal quotations omitted)).

Here, the entirety of Plaintiffs' Complaint hinges on the alleged notification Essentia made to approximately 50,000 patients in April of 2020. Specifically, Plaintiffs allege Essentia notified patients, comprising the putative class, "that medication or vaccines they received might have been compromised by improper temperature storage." (Doc. ID No. 1, *Complaint*, at 4 (emphasis added)). This speculation serves as the foundation for Plaintiffs' remaining factual allegations and Plaintiffs' "'unadorned, the defendant-unlawfully-harmed-me accusations[s]' are not entitled to the assumption of truth." *Auer v. Trans Union, LLC,* 902 F.3d 873, 878 (8th Cir. 2018) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). Plaintiffs'

bare contentions that they suffered harm as a result of receiving medications and/or vaccinations which may have been affected by a temperature excursion "devoid of further factual enhancement falls short of plausibly establishing injury." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted)). Plaintiffs also claim that although Essentia offered to revaccinate free of charge, some patients may choose to be re-vaccinated outside the Essentia system and, thus, will have to bear additional out-of-pocket costs. (Doc. ID No. 1, *Complaint*, at ¶ 7). However, Plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Auer*, 902 F.3d at 878 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013)).

Application of the applicable law to very similar facts as are present in this case was recently undertaken by a California Federal District Court in *Amburgey v. Caremark PCS Health, L.L.C..* Although outside of this jurisdiction, *Amburgey* further compels dismissal of Plaintiffs' Complaint for lack of Article III standing. *See Amburgey v. CaremarkPCS Health, L.C.C.*, No. SACV1700183CJCKESX, 2017 WL 7806634, at *1 (C.D. Cal. Sept. 21, 2017). In *Amburgey*, Plaintiffs sued Caremark, a drug distribution company, for its alleged failure to maintain certain drugs at the proper temperature. *Id.* It was not clear based on Plaintiffs' Complaint, however, which or how many drugs qualify as "Specialty Drugs," or those drugs requiring refrigeration. *Id.* "The crux of Plaintiffs' allegations [was] that Caremark does not implement adequate policies and procedures to ensure that Specialty Drugs are maintained at proper temperatures in accordance with U.S. Food and Drug Administration ("FDA") guidelines." *Id.* "Plaintiffs further allege[d] that Caremark's conduct 'exposed an untold number of Americans to Specialty Drugs that are adulterated, have serious and fatal side

10

effects, and the efficacy of which is in question because it is illegal and immoral to test adulterated drugs on human beings." *Id.*

Two named Plaintiffs commenced the putative class action. Amburgey, a California resident, asserted claims under California Consumers Legal Remedies Act, California's Unfair Competition Law, and a claim for breach of implied warranties, on behalf of herself, and also on behalf of a class defined as "any resident of California who obtained a Specialty Drug from any Caremark specialty pharmacy during the Class Period." *Id.* at *2. Washington, a Wisconsin resident, asserted claims under Wisconsin's Deceptive Trade Practices Act and a claim for breach of the implied warranty of merchantability on behalf of herself, as well as a class defined as "any resident of Wisconsin who obtained a Specialty Drug from any Caremark specialty pharmacy during the Class Period." *Id.*

Caremark moved to dismiss Plaintiffs' Complaint for lack of standing, among other arguments. The California Federal District Court ultimately granted Caremark's Motion to Dismiss. *Id.* at *3. Although both named Plaintiffs claimed they had received drugs which were either frozen or too warm, the Complaint was devoid of "factual allegations indicating the 'frozen and/or too warm' Specialty Drugs caused physical harm to Plaintiffs, caused unwanted side effects, or did not work as intended." *Id.* Plaintiffs did claim they "noticed a lack of efficacy in treatment...when using the Specialty Drugs shipped by Caremark's specialty pharmacies[;]" Plaintiffs did not, however, aver that the Specialty Drugs worked less effectively than intended. *Id.* at*3. Because of this deficiency, the Court held Plaintiffs failed to plead an injury-in-fact required to establish Article III standing. *Id.; see also Myers-Armstrong v. Actavis Totowa, LLC*, 2009 WL 1082026, at *4 (N.D. Cal. Apr. 22, 2009), aff'd, 382 Fed.Appx. 545 (9th Cir. 2010) (no standing to pursue claims based on plaintiff's purchase

11

of a drug where plaintiff did not plead facts indicating the drug did not work as intended, or any facts indicating adverse side effects, physical harm, or personal injury).

The Court also gave short shrift to Plaintiffs' argument that they suffered economic harm because they would have either paid less for the Specialty Drugs or declined to purchase them altogether if they had known about the risks associated with a possible temperature excursion. *Id.* "This alleged loss does not constitute an injury-in-fact because it is not actual or imminent. Instead, this alleged loss is premised on the conjecture that the drugs 'may' have been maintained at improper temperatures," a hypothetical risk. *Id.*

Here, Plaintiffs failed to clearly allege facts demonstrating the elements of standing, requiring dismissal. *See Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1033 (8th Cir. 2014) ("When it becomes clear a case originally filed in federal court does not belong there because the plaintiffs lack Article III standing, generally the appropriate remedy is to dismiss without prejudice."). Absent in Plaintiffs' Complaint are any allegations that the vaccinations Plaintiffs, or their children, received were less effective or that they contracted the disease which the particular vaccination and/or immunizations were intended to prevent. Additionally, Plaintiffs have not alleged some other harm resulting from the administration of the Affected Medications. At best, Plaintiffs allege the Affected Medications might have been subjected to a temperature excursion, potentially rendering them less effective or potent. Moreover, Plaintiffs' only possible measurable injury is the cost associated with the purchase of the Affected Medications and associated medical services. This is not the type of injury, however, which can serve as the basis for Article III standing because it is grounded in nothing more than speculation. Accordingly, Essentia respectfully requests this Court dismiss Plaintiffs' Complaint for lack of Article III standing.

**B.    Additionally, and in the alternative, Plaintiffs' claims for breach of express warranties and breach of implied warranties must be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.**

A motion to dismiss under Rule 12(b)(6) must be granted if the plaintiff's complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6); *Knapp v. Hanson*, 183 F.3d 786, 788 (8th Cir. 1999). To survive a motion to dismiss, the Complaint must plead enough factual matter that, if accepted as true, plausibly entitles the plaintiff to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The motion will be granted when plaintiff cannot prove any set of facts that would entitle him to the relief requested. *In re K-Tel Int'l, Inc. Sec. Litig.*, 300 F.3d 881, 888-89 (8th Cir. 2001).

In deciding a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court assumes all facts in the complaint to be true and draws all reasonable inferences from those facts in the light most favorable to the plaintiff. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). The court is not required, however, to accept as true wholly conclusory allegations or legal conclusions drawn by the plaintiff from the facts alleged. *Hanten v. Sch. Dist. Of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999); *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). In deciding a motion to dismiss under Rule 12(b)(6), a court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and any attached exhibits. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

As is outlined above, Plaintiffs assert a claim for breach of express warranties against all Defendants in Count I and a claim for breach of implied warranties against all Defendants in Count II. Plaintiffs do not specifically indicate that their claim for breach of express

warranties is premised upon Article II of the North Dakota Commercial Code. However, because Plaintiffs allege Defendants' representations created an express warranty that the goods, in this case the Affected Medications, would conform to the representations and that the Affected Medications were not merchantable or safe for their intended, ordinary, and foreseeable use, this claim is best analyzed under Section 41-02-30 of the North Dakota Century Code. *See* Doc ID No. 1, *Complaint*, at ¶¶ 74 & 76. Section 41-02-30 tracks the language of Section 313 of Article II of the Uniform Commercial Code. *Compare* N.D. CENT. CODE § 41-02-30 *with* U.C.C. § 2-313.

Similarly, Plaintiffs allege Defendants impliedly warranted the Affected Medications were of merchantable quality, safe, and fit for use and that Defendants breached this implied warranty because the Affected Medications were not adequately stored and, thus, not effective. *See* Doc. ID No. 1, *Complaint*, at ¶ 89. Implied warranty of merchantability, as raised in Plaintiffs' Complaint, is addressed in Section 41-02-31 of the North Dakota Century Code, tracking the language of Section 314 of Article II of the Uniform Commercial Code. *Compare* N.D. CENT. CODE § 41-02-31 *with* U.C.C. § 2-314.

By definition Ch. 41-02, the sales chapter of North Dakota's Uniform Commercial Code, only applies to "transactions in goods" and establishing the existence of a transaction for the purchase of goods is an essential element of a claim for breach of either express or implied warranties. N.D. CENT. CODE § 41-02-02. The "transaction" which serves as the basis of Plaintiffs' Complaint, however, is not a transaction for the purchase of goods and is not governed by the North Dakota Uniform Commercial Code. Therefore, on its face Plaintiffs' Complaint is deficient and Counts I and II should be dismissed for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).

14

Under Article II of the North Dakota Commercial Code, "goods" are defined as "all things (including specially manufactured goods) which are movable at the time of the identification to the contract for sale other than the money in which the price is to be paid, investment securities, and things in action." N.D. CENT. CODE § 41-02-05(2). While vaccinations and medications are movable objects in a very literal sense, they are not the type of good contemplated by the North Dakota Commercial Code. Said differently, a vaccination is not analogous to a pair of shoes or pots and pans, items understood to be "goods" under the common definition of the word. Simply put, a vaccination is useless to a consumer on its own and must be accompanied by a professional's administration to have any value.

The "transaction" at issue in Plaintiffs' Complaint is distinctly different because it also involves the administration of the vaccination or medication, innate in which is the exercise of professional judgment and skill. In fact, Plaintiffs allege that they, their children, and the putative class have been "injured by paying for the Affected Medicines and associated medical visits without receiving the benefit of the bargain." (Doc. ID No. 1, *Complaint,* at ¶ 5) (emphasis added). Plaintiffs' Complaint further alleges that they "are entitled to refunds for visits for which they did not receive proper care." *Id.* at ¶ 6. This allegation underscores the fact that the rendition of professional medical services lies at the heart of this case

"[A] contract does not become a contract for goods just because goods may be involved." *Leno v. K & L Homes, Inc.,* 2011 ND 171, ¶ 18, 803 N.W.2d 543. Based on Plaintiffs' Complaint alone it is obvious that Plaintiffs' real issue is with the administration of the alleged Affected Medications, and not just the mere purchase of the Affected Medications themselves. At best, the administration of a vaccination or other medication is a hybrid or mixed transaction. North Dakota applies the predominant factor test in determining whether

15

the sales provisions of North Dakota's Uniform Commercial Code apply. *D.G. Porter, Inc. v. Fridley*, 373 N.W.2d 917, 919 (N.D. 1985). The provisions of Article II are only applicable "if the essential element or nature of the contract is for the transfer of movable goods…and the performance of other acts…are merely incidental or secondary elements under the contract." *Id.* at 924. It is only when the non-good assets are merely incidental or secondary elements to the sale of goods that the statutory warranties of Article II apply. *Leno*, 2011 ND 171, ¶ 18. While North Dakota courts have not had occasion to address whether the combined provision of professional medical services and a sale of goods is predominantly a sale of goods for purposes of the warranty provisions of the Commercial Code, other states have undertaken such analysis.

For example, in *Perlmutter v. Beth David Hosp.*, the New York Supreme Court held the plaintiff could not maintain a claim against the defendant hospital for the injuries he allegedly sustained as a result of a bad blood transfusion he received while under the defendant's care. 123 N.E.2d 792 (N.Y. 1954). The plaintiff argued the blood transfusion constituted a sale within the meaning of New York's Sales Act such that certain warranties attached. *Id.* at 793. In analyzing the issue, the New York Supreme Court examined the transaction in its entirety to determine whether a transfusion can properly be classified as a sale of goods. *Id.* at 795. Ultimately, the New York Supreme Court held "[t]he supplying of blood by the hospital was entirely subordinate to its paramount function of furnishing trained personnel and specialized facilities in an endeavor to restore plaintiff's health." *Id.* at 795. "It was not for blood or iodine or bandages for which plaintiff bargained, but the wherewithal of the hospital staff and the availability of hospital facilities to provide whatever medical treatment was considered advisable." *Id.* Because "[c]oncepts of purchase and sale cannot

16

separately be attached to the healing materials such as medications, drugs or, indeed, blood supplied by the hospital for a price as part of the medical services it offers," the New York Supreme Court determined the transfer of personal property, in this case blood, was merely an incidental feature of the transaction, precluding the plaintiff's claims under the Sales Act. *Id.* at 794.

More recently, the Illinois Supreme Court dismissed a similar claim. *Brandt v. Boston Sci. Corp.*, 792 N.E.2d 296 (Ill. 2003). The plaintiff, in *Brandt*, suffered complications following the surgical implantation of a medical device which was recalled by the manufacturer following her surgery. *Id.* at 297. She asserted a warranty claim under Illinois's Uniform Commercial Code against the hospital. *Id.* The warranty claim was ultimately dismissed because the transaction was predominantly for services rather than goods. *Id.* at 298. The Illinois Supreme Court's analysis turned on the application of the predominant purpose test. *Id.* at 299. The parties did not dispute that the implanted sling satisfied the UCC definition of "goods," but the parties disagreed about whether the hospital primarily provided medical services as the foundation, and predominant purpose, of the transaction. *Id.* The Illinois Supreme Court ultimately held the transaction was predominantly for services, in accord which a majority of foreign jurisdictions. *Id.* at 304 (providing string cite to various out-of-state cases reaching the same conclusion under similar facts).

Here, the argument is even stronger that Ch. 41-02 is not applicable. Unlike medical devices, vaccinations and medications comport even less with our common sense notion of "goods" and, this is even more true, after the vaccination is administered. That the predominant purpose of the transaction in this case was the rendition of professional medical services, and not a sale of goods, is further supported by Plaintiffs' allegations. More

17

specifically, Plaintiffs' allege Essentia "sold and administered" more than 100 TTSSPs which may have been compromised by improper temperature storage. (Doc. ID No. 1, *Complaint,* at ¶ 3). Plaintiffs allege economic injury as a result of paying for both the Affected Medicines and associated medical visits and they claim they are entitled to "refunds for visits for which they did not receive proper care." *Id.* at ¶¶ 5-6. It is plain, that the provision of healthcare in this context is predominantly a service transaction rather than a sale of goods. Accordingly, Count I and II of Plaintiffs' Complaint fails to state a claim upon which relief can be granted, entitling Essentia to dismissal pursuant to Rule 12(b)(6).

**C.     Additionally, and in the alternative, Plaintiffs' Complaint does not state with particularity the circumstances constituting fraud as required by Rule 9 of the Federal Rules of Civil Procedure, requiring dismissal of Count III.**

Plaintiffs' claim premised on the Defendants' alleged violation of consumer protection and deceptive trade practices law under both Minnesota and North Dakota law is subject to an exacting pleading standard as outlined in Rule 9(b) of the Federal Rules of Civil Procedure. *Northern Bottling Co., Inc. v. Henry's Foods, Inc.,* No. 1:19-CV-021, 2020 WL 4208526, at *3 (D.N.D. July 22, 2020); *Marshall v. Smith & Nephew, Inc.,* No. CV 19-2313 (DWF/DTS), 2020 WL 362803, at *8 (D. Minn. Jan. 22, 2020). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b).

"In order to satisfy the pleading requirements of Rule 9(b), the complaint must plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result." *Northern,* at *3, (quoting *Olin v. Dakota Access, LLC,* 910 F.3d 1072, 1075 (8th Cir. 2018)). Plaintiffs are, therefore, generally required to identify the "who, what, where, when, and how" of the alleged fraud. *Id.* (citing *United States*

18

*ex rel. Costner v. URS Consultants, Inc.*, 317 F.3d 883, 888 (8th Cir. 2003). In that regard, "[a]llegations pleaded on information and belief usually do not meet Rule 9(b)'s particularly requirement." *Id.* (quoting *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009)). To permit otherwise would defeat the purpose of Rule 9(b)'s heightened pleading standard which is designed "to enable defendants to respond specifically, at an early stage of the case, to potentially damaging allegations of immoral and criminal conduct." *Id.* (quoting *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 920 (8th Cir. 2001) (internal quotations omitted)).

Here, Plaintiffs' Complaint fails to satisfy the heightened standard required by Rule 9(b) of the Federal Rules of Civil Procedure. The lack of specificity provided in Plaintiffs' Complaint makes responding to the allegations nothing more than a guessing game and precludes the Defendants from responding in an intelligent fashion. It is unclear what 100 TTSPPs Plaintiffs allege were stored outside the proper temperature range. *See* Doc. ID No. 1, *Complaint*, at ¶ 3. Plaintiffs similarly have not alleged when or how the temperature excursions occurred, except to say that the distribution of Affected Medications began as early as January of 2017 and that Essentia Health notified patients that medications or vaccines might have been compromised by improper temperature storage. *Id.* at ¶¶ 3-4. Plaintiffs also rely on an alert on Essentia's website which Plaintiffs' allege disclosed that "more than 100 refrigerated injectable medications <u>could have been</u> compromised." *Id.* at ¶ 28 (emphasis added). While Schneider claims to have received more specific communication from "a nurse" regarding her children's vaccines, the Complaint is devoid of any specific allegations regarding language in the product label, package insert, product information, or other written communication which Plaintiffs allege contained affirmative misrepresentations, misleading information, or material omissions. Instead, Plaintiffs generally claim Defendants engaged in

19

"[u]nfair methods of competition or deceptive acts or practices that were proscribed by law includ[ing] (a) Representing that goods or services have characteristics, ingredients, uses benefits or qualities they do not have; (b) Representing that Affected Medications are of a particular standard, quality, and grade when they are not; (c) Advertising goods or services with the intent not to sell them as advertised; (d) Engaging in fraudulent and deceptive conduct that creates a likelihood of confusion or misunderstanding." *Id.* at ¶ 100.

Plaintiffs failed to allege who made fraudulent statements, what fraudulent statements were made, when the statements were made, and to whom the statements were made. *See Olin v. Dakota Access, LLC*, No. 1:17-cv-007, 2017 WL 4532581, at *4 (D.N.D. Oct. 10, 2017), aff'd, 910 F.3d 1072 (8th Cir. 2018). Plaintiffs' Complaint does not specifically set forth the time, place, and contents of the alleged false representations or the identity of the person making the representations. *See Marshall v. Smith & Nephew, Inc.*, No. CV 19-2313 (DWF/DTS), 2020 WL 362803, at *7 (D. Minn. Jan. 22, 2020). As presently drafted, Plaintiffs' Complaint does not provide the Defendants, or this Court, with the "who, what, where, when, and how" of the alleged fraudulent conduct. Accordingly, Plaintiffs' Complaint should be dismissed for their failure to comport with the requirements of Rule 9.

## IV.    CONCLUSION

For the reasons set forth above, Essentia respectfully requests that its Motion to Dismiss be granted.

Dated this 11th day of September, 2020.

**VOGEL LAW FIRM**

*s/ Angela E. Lord*

Angela E. Lord (#05351)
Robert B. Stock (#05919)
Briana L. Rummel (#08399)
218 NP Avenue
PO Box 1389
Fargo, ND  58107-1389
Telephone:  701.237.6983
Email:    alord@vogellaw.com
         rstock@vogellaw.com
         brummel@vogellaw.com
ATTORNEYS FOR ESSENTIA HEALTH

4143566.3

21