UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA
EASTERN DIVISION

| | |
|---|---|
| JESSICA KRAFT, individually and as a parent to minors L.K., S.K., and O.K.; SHELLI SCHNEIDER, individually and as parent to minors A.S. and W.S.; individually and on behalf of others similarly situated,<br><br>            Plaintiffs,<br><br>vs.<br><br>ESSENTIA HEALTH, JOHN DOES MANUFACTURERS, JOHN DOE DISTRIBUTOR,<br><br>            Defendants. | Case No. 3:20-CV-00121<br><br><br><br>**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS** |

## I.    INTRODUCTION

Defendant, Essentia Health ("Essentia"), respectfully submits this Reply Memorandum in Support of its Motion to Dismiss.  In response to Essentia's Motion to Dismiss, Plaintiffs failed to demonstrate they sustained an injury-in-fact, an essential element of Article III standing.  Plaintiffs' lack of standing, a prerequisite to this Court's exercise of subject matter jurisdiction, is alone sufficient to dismiss Plaintiffs' Complaint in its entirety.  Plaintiffs also contend that the administration of a vaccination is a sale of goods within the meaning of the North Dakota Uniform Commercial Code ("ND UCC").  Plaintiffs' argument fails, as it is plain that the administration of a vaccination, which by its very nature cannot be obtained absent the medical service, is not a transaction in goods, precluding Plaintiffs' claims for breach of express and implied warranties. Lastly, Count III (Violation of Consumer Protection and Deceptive Trade Practices Law) of Plaintiffs' Complaint is subject to dismissal for their

failure to comply with the pleading requirements of Rule 9 of the Federal Rules of Civil Procedure.  Plaintiffs' response to the Motion to Dismiss does not change the conclusion Essentia urged this Court to reach in its moving memorandum.  Accordingly, this Court ought to grant Essentia's Motion to Dismiss, dismissing Plaintiffs' Complaint in its entirety.

## II.   LAW AND ARGUMENT

### A.   This Court does not have subject matter jurisdiction over Plaintiffs' claims and therefore Plaintiffs' Complaint ought to be dismissed in its entirety.

Plaintiffs must have "standing" within the meaning of Article III of the United States Constitution, "to invoke the power of the federal court." *Clausen v. National Geographic Soc.*, 664 F. Supp. 2d 1038, 1047 (D.N.D. 2009), *aff'd sub nom. Clausen v. National Geographic Soc.*, 378 Fed. Appx. 595 (8th Cir. 2010).  The absence of any one of the three separate and independent requirements to establish standing divests the Court of subject matter jurisdiction, necessitating dismissal. *Auer v. Trans Union, LLC*, 902 F.3d 873, 877 (8th Cir. 2018).  In this case, Plaintiffs failed to carry their burden to establish a basis for federal court jurisdiction. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), as revised (May 24, 2016).

Plaintiffs did not allege they contracted any disease that the Affected Medications were intended to prevent.  In addition, Plaintiffs did not allege some other harm resulting from the administration of the Affected Medications.  Instead, Plaintiffs contend they did not receive the "benefit of the bargain" in that they paid for vaccines that were potentially ineffective and that this economic injury is sufficient to establish Article III standing.  Although a physical injury is not required to establish an injury-in-fact, an injury-in-fact, whether grounded in alleged physical or economic harm, must be "'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Amburgey v. CaremarkPCS Health, L.C.C.*, No.

SACV1700183CJCKESX, 2017 WL 7806634, at *1 (C.D. Cal. Sept. 21, 2017) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). Plaintiffs' alleged economic injury is speculative and is a not a concrete, or *de facto* injury, in that it does not actually exist. *Spokeo*, 136 S.Ct. at 1548.

The cases cited by Plaintiffs in opposition to Essentia's Motion to Dismiss are readily distinguished. The Plaintiffs in *In re Hydroxycut Mktg. & Sales Practices Lit.* alleged they read Hydroxycut's advertising claims and product label representations and purchased Hydroxycut products believing they were both safe and effective for weight-loss purposes. 801 F. Supp. 2d 993, 1000 (S.D. Cal. 2011). Plaintiffs stopped consuming Hydroxycut products only after learning they posed serious health risks, at which time they commenced suit alleging they suffered money damages, namely the purchase price of the products in question, as well as costs incurred for related health testing. *Id.* The Court in *In re Hydroxycut* determined Plaintiffs' economic injury was sufficient to demonstrate an injury-in-fact for purposes of Article III standing. *Id.* at 1003-04.

Significantly, however, the Plaintiffs' allegations in *In re Hydroxycut* were grounded in more than mere conjecture and were not premised upon some hypothetical risk of harm. To the contrary, prior to the Plaintiffs' commencement of the action, doctors reported multiple cases involving health problems after taking Hydroxycut. *Id.* at 1000. Years later, but still prior to commencement, the FDA indicated Hydroxycut was likely to cause idiosyncratic hepatoxicity and ultimately "issued a press release warning consumers to immediately stop using Hydroxycut problems based on reports of serious health problems." *Id.* One day after the FDA's warning, but still prior to commencement of the lawsuit, Hydroxycut products were

3

recalled. *Id.* The Plaintiffs alleged that despite these facts Hydroxycut "continued to mislead and downplay the health risks associated with their products." *Id.*

*In re Bayer Corp.* is very similar. *In re Bayer Corp. Combination Aspirin Products Mktg. & Sales Practices Lit.,* 701 F. Supp. 2d 356 (E.D.N.Y. 2010). The named Plaintiffs in *In re Bayer Corp.* purchased a Bayer combination product to decrease their risk of osteoporosis and lower their cholesterol. *Id.* at 364-65. The Plaintiffs alleged that at the time of purchase they believed the products were approved by the FDA and that their use included these health benefits. *Id.* at 365. Plaintiffs claimed that if they had known the products were not approved by the FDA and could not actually provide the health benefits advertised on the product labels, they would not have purchased the products at all, seeking a refund of the purchase price. *Id.*

The Plaintiffs sued under various consumer protection laws in several states and alleged claims for breach of express and implied warranties and for misrepresentation. *Id.* The Court concluded the Plaintiffs established an injury-in-fact because the Plaintiffs pleaded they thought they were buying an FDA-approved product and also "explained in great detail how the combination products contained inadequate amounts…to provide the health benefits defendants advertised and for which they paid a premium." *Id.* at 382 (emphasis added).

In stark contrast, the entirety of Plaintiffs' Complaint in the present case hinges on the alleged notification Essentia made to approximately 50,000 patients in April of 2020. Specifically, Plaintiffs allege Essentia notified patients, comprising the putative class, "that medication or vaccines they received might have been compromised by improper temperature storage," potentially rendering them less effective or potent. (Doc. ID No. 1, *Complaint*, at ¶¶ 4 & 27 (emphasis added)). Plaintiffs failed to allege that the Affected Medications were

4

actually rendered less effective because of a temperature excursion. Absent allegations as to the actual reduced efficacy, Plaintiffs suffered no articulable injury, economic or otherwise.

This speculation serves as the foundation for Plaintiffs' factual allegations. Not only are Plaintiffs' conjectural allegations not entitled to the assumption of the truth, they fall short of even plausibly establishing an injury-in-fact necessary for this Court to exercise jurisdiction. *Auer*, 902 F.3d 873, 878 (8th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Accordingly, Essentia respectfully requests this Court dismiss Plaintiffs' Complaint for lack of Article III standing.

**B.      The administration of a vaccine is not a transaction in goods subject to the provisions of the North Dakota Uniform Commercial Code.**

Plaintiffs suggest that the "fact" that vaccines are "goods," as defined under ND UCC, is so obvious that courts generally do not address the issue at all and instead launch into analysis regarding whether the sale of allegedly-defective vaccines breached UCC warranties. In support of this contention, Plaintiffs provide a string cite to various out-of-state cases. In all four of the cases Plaintiffs cited, however, whether the administration of vaccinations is a transaction that should be governed by the applicable UCC was not raised, which explains why the courts offered no analysis regarding the same. *See Pearson v. Franklin Laby'ys, Inc.*, 254 N.W.2d 133 (S.D. 1977) (addressing expert testimony, whether disclaimer on cattle vaccines was conspicuous and unambiguous, and whether trial court awarded appropriate damages); *Van Wyk v. Norden Lab'ys, Inc.*, 719 F. Supp. 470 (Iowa 1984) (addressing exclusion of expert evidence and whether a claim for breach of implied warranty of merchantability may be maintained alongside a claim for breach of implied warranty of fitness for a particular purpose); *Rohrbough v. Wyeth Laby's, Inc.*, 719 F. Supp. 470 (N.D. W. Va. 1989) (addressing

5

whether Plaintiffs satisfied their burden of proof and whether expert witness established causation); *Holmes v. Merck & Co.,* 2008 WL 11348410 (D. Nev. June 16, 2008) (addressing whether fraud allegations fail as a matter of law, whether the vaccine was fit for the ordinary purpose or a particular purpose, precluding Plaintiff's ability from proceeding on claims for breach of implied warranty of merchantability and warranty of fitness for a particular purpose).

Two of the cases involve cattle vaccines, and in one of the cases, the vaccination was purchased at a retail store and administered by the end-consumer. *See Pearson,* 254 N.W.2d 133 (S.D. 1977). The cases Plaintiffs cited simply do not stand for the proposition they wish to advance. Indeed, the professional medical services rendered by way of administration of the Affected Medications was not merely incidental to the Plaintiffs' "purchase" of the Affected Medications. *See Leno v. K & L Homes, Inc.,* 2011 ND 171, ¶ 18, 803 N.W.2d 543.

Plaintiffs suggest that merely because a service is required to inject a product does not mean that the transaction is not governed by the UCC, citing *Bonebrake v. Cox.* Reading the very limited information Plaintiffs provide from *Bonebrake* leads one to believe that the case is about vaccinations and could be factually analogous to the case at bar. (Doc. ID No. 10, *Plaintiff's Opposition to Defendant's Motion to Dismiss,* at pg. 16 ("simply because an added service is required to inject or apply the product."). However, *Bonebrake* is neither dispositive nor persuasive as it involved the purchase and installation of bowling equipment in a bowling alley, which is not analogous to the administration of a vaccination. *Bonebrake v. Cox,* 499 F.2d 951, 952 (8th Cir. 1974). The *Bonebrake* Court also acknowledged that when the predominant purpose of a transaction "is the rendition of service, with goods incidentally involved (e.g. contract with artist for painting)" the transaction is not governed by the UCC whereas "a transaction of sale, with labor incidentally involved (e.g. installation of a water

6

heater in a bathroom)" is. *Id.* at 960. Not unlike a contract with an artist for painting, the administration of a vaccination cannot be obtained without the administration itself.

Next, Plaintiffs suggest the administration of a vaccination is not unlike dispensing birth control pills, which the Court in *Berry v. G.D. Searle Co.* held was a sale of goods. *See Berry v. G.D. Searle & Co.,* 309 N.E.2d 550 (Ill. 1974). There is a factually, and legally, significant difference between the sale of a prescription by a pharmacy and the administration of a vaccination. The latter cannot be accomplished absent the rendition of medical services, inherent in which is the exercise of professional judgment and skill. The Plaintiffs' own allegations make this plain. Plaintiffs allege they were "injured by paying for the Affected Medicines <u>and associated medical visits</u>." (Doc. ID No. 1, *Complaint,* at ¶ 5) (emphasis added). Plaintiffs' Complaint further alleges they "are entitled to refunds <u>for visits</u> for which they did not receive proper care." *Id.* at ¶ 6. The predominant purpose of the "transaction" described in Plaintiffs' Complaint cannot be the sale of goods when Plaintiffs would have been otherwise unable to obtain the vaccinations they complain of without the underlying service.

The provision of healthcare, rather than the "purchase" of the Affected Medications, predominates Plaintiffs' allegations and demonstrates that this is not a "sale of goods," but rather a service transaction. Accordingly, Counts I and II of Plaintiffs' Complaint fails to state a claim upon which relief can be granted, entitling Essentia to dismissal pursuant to Rule 12(b)(6).

### C.     Plaintiffs' Complaint does not state with particularity the circumstances constituting fraud as required by Rule 9, requiring dismissal of Count III.

To escape the natural consequences of Plaintiffs' failure to plead their consumer protection and deceptive trade practices claims with the specificity required by Rule 9,

Plaintiffs now attempt to reframe their allegations as fraudulent omission rather than fraudulent concealment or some other affirmative misrepresentation. The most specific allegations underlying Plaintiffs' consumer protection and deceptive trade practices claim are set forth in paragraph 100 of Plaintiffs' Complaint. Plaintiffs allege Defendants engaged in

> Unfair methods of competition or deceptive acts or practices that were proscribed by law includ[ing] (a) Representing that goods or services have characteristics, ingredients, uses benefits or qualities they do not have; (b) Representing that Affected Medications are of a particular standard, quality, and grade when they are not; (c) Advertising goods or services with the intent not to sell them as advertised; (d) Engaging in fraudulent and deceptive conduct that creates a likelihood of confusion or misunderstanding.

(Doc. ID No. 1, *Complaint,* at ¶ 100). While other sections of Plaintiffs' Complaint include a vague reference to Defendants' alleged fraudulent omissions, Plaintiffs' consumer protection and deceptive trade practices claims are premised on alleged affirmative fraudulent conduct.

Moreover, Plaintiffs allege Essentia first learned of the alleged improper temperature storage in February of 2020 and notified patients in April of 2020. (Doc. ID No. 1, *Complaint,* at ¶¶ 24-25). While Plaintiffs make much of their allegation that affected medications may date back to September, or even January, of 2017, Plaintiffs' Complaint is devoid of any allegations that suggest Essentia was on notice of the alleged improper temperature storage prior to February 2020. *See* Doc. ID No. 10, *Plaintiffs' Opposition to Defendant's Motion to Dismiss,* at pg. 5. Instead, Plaintiffs allege that in or about February 2020, Essentia learned John Doe Distributor stored certain vaccines and medications outside of the recommended temperature range. *Id.* at pg. 4. Plaintiffs allege that, at most two months later, Essentia notified patients that certain vaccinations and/or medications <u>might</u> have been compromised by improper temperature storage. *Id.* at pg. 5 (emphasis added). Plaintiffs do not allege Essentia was aware of the alleged temperature excursion at the time their vaccinations were

8

administered.  On the facts as Plaintiffs have alleged them, a claim for fraudulent omission does not stand.  *See American Bank Center v. Wiest*, 2010 ND 251, ¶ 10, 793 N.W.2d 172 (fraud requires proof of an intent to deceive); Restatement (Second) of Torts § 551 ("One who fails to disclose to another a fact that <u>he knows</u> may justifiably induce the other to act or refrain from acting… is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose…if he is under a duty to the other to exercise reasonable care to disclose the matter in question.") (emphasis added).

Even assuming Plaintiffs' claims are correctly characterized as fraudulent omission, which Essentia disputes, Plaintiffs' Complaint still fails to include the requisite specificity and is, therefore, appropriately subject to dismissal.  To satisfy Rule 9 for allegations of fraudulent omissions "the Complaint must still allege what the omissions were, the person responsible for failing to disclose, the context of the omission and the manner in which it mislead Plaintiff, and what the Defendant obtained through the fraud." *Belville v. Ford Motor Co.*, 60 F. Supp. 3d 690, 697 (S.D. W. Va. 2014).  Where, for example, allegations are made "upon information and belief" or fail "to specifically identify the representations, advertisements, and promotional materials that omitted the reference to the defective [product]' which mislead [Plaintiffs] and upon which [Plaintiffs] relied," the Complaint is not specific enough to satisfy Rule 9.  *Id.* (quoting *Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 101-02 (S.D.N.Y. 1997)); *see also* 5A Fed. Prac. & Proc. Civ. § 1298 (4th ed.) ("Allegations based on 'information and belief' thus won't do in a fraud case—for 'on information and belief' can mean as little as 'rumor has it.'")

It is unclear what 100 TTSPPs Plaintiffs allege were stored outside the proper temperature range.  *See* Doc. ID No. 1, *Complaint*, at ¶ 3.  Further, the Complaint is devoid of any specific allegations regarding language in the product label, package insert, product

information, or other written communication that Plaintiffs allege contained material omissions. Additionally, Plaintiffs' vague allegations are asserted against all of the Defendants without differentiation. "Rule 9(b) does not permit a complaint to 'lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant.'" *In re Hydroxycut,* 801 F. Supp. 2d 993, 1002 (quoting *Destfino v. Reiswig,* 630 F.3d 952, 958 (9th Cir. 2011)). Plaintiffs failed to allege what representations each relied on and did not distinguish between the representations allegedly made for each of the 100 TTSPPs. Simply put, Rule 9's pleading requirements have not been satisfied. Accordingly, Count III of Plaintiffs' Complaint must be dismissed.

## III.    CONCLUSION

For the reasons set forth above, and those reasons outlined in Essentia's moving memorandum, Essentia respectfully requests that its Motion to Dismiss be granted.

Dated this 15th day of October, 2020.

**VOGEL LAW FIRM**

*s/ Angela E. Lord*

BY:   Angela E. Lord (#05351)
Robert B. Stock (#05919)
Briana L. Rummel (#08399)
218 NP Avenue
PO Box 1389
Fargo, ND  58107-1389
701.237.6983
Email:    alord@vogellaw.com
rstock@vogellaw.com
brummel@vogellaw.com
ATTORNEYS FOR ESSENTIA HEALTH

4199503.1