**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA**

Jessica Kraft, individually and as )
parent to minors L.K., S.K., and O.K.; )
Shelli Schneider, individually and as )
Parent of minors A.S. and W.S.; )
individually and on behalf of all others )
similarly situated, )  **ORDER DENYING**
 )  **MOTION TO DISMISS**
    Plaintiffs, )
 )  Case No. 3:20-cv-121
  vs. )
 )
Essentia Health, John Doe Manufacturers, )
and John Doe Distributor, )
 )
    Defendants. )

This matter comes before the Court on a Motion to Dismiss Plaintiffs' Complaint brought

by Defendant Essentia Health ("Essentia") dated September 11, 2020. Doc. No. 4. Plaintiffs filed

an Opposition to Defendant's Motion to Dismiss on October 2, 2020. Doc. No. 10. Essentia

submitted a Reply Brief on October 15, 2020. Doc. No. 12. For the reasons discussed below, the

Motion to Dismiss is denied.

## I.    BACKGROUND

The facts are taken from the Complaint and assumed to be true for purposes of ruling on

Essentia's Motion to Dismiss. See Minn. Majority v. Mansky, 708 F.3d 1051, 1056 (8th Cir. 2013).

Plaintiffs, individually and on behalf of their minor children and others similarly situated,

have sued Essentia and the John Doe defendants for claims arising out of the distribution, sale, and

administration of certain influenza vaccines and other medications that were handled and stored

outside of the proper cold range and as a result were compromised by temperature excursions.

Doc. No. 1, ¶ 3. The Complaint alleges that since as early as January 2017, Essentia has sold and

administered more than 100 time- and temperature-sensitive pharmaceutical products ("TTSPPs")

1

that were handled and stored outside the proper temperature ranges (referred to as the "Affected Medications"). Id.

The Centers for Disease Control and Prevention ("CDC") requires vaccines to be continuously stored at the proper temperature range identified for each specific vaccine. Id. ¶¶ 17-18. Unless the vaccines are stored within the specified temperature ranges, they may become less potent and increase the risk of vaccine-preventable diseases. Id. ¶ 20. The CDC, Minnesota Department of Health, and North Dakota Department of Health recommend that any vaccine subject to temperature excursion be segregated and not used. Id. ¶ 23.

In or about February 2020, Essentia took over the management, storage, and distribution process for medications from John Doe Distributor.[1] Id. ¶ 24. After assuming these functions, Essentia purportedly learned that certain vaccines and medications had been stored outside of the proper temperature ranges. Id. ¶ 25. On or about April 6, 2020, Essentia notified approximately 50,000 patients in Minnesota and North Dakota that vaccines or medications they received might have been compromised by improper temperature storage by the distributor and might be less effective as a result. Id. ¶¶ 26-30. Essentia indicated on its website that the Affected Medications may date back to September 2017. Id. ¶ 29.

Plaintiff Jessica Kraft ("Kraft") alleges she received influenza vaccines from Essentia in January 2017 that were subject to temperature excursions. Id. ¶ 12. Kraft's three minor children also received influenza vaccines and childhood vaccines, including DTaP, Hep B, IPV, Rotavirus, and Pneumococcal, from Essentia during this same time. Id. Kraft alleges these vaccines and immunizations were affected by temperature excursions. Id. Similarly, Plaintiff Shelli Schneider

---

[1] The identity of John Doe Distributor is currently unknown to Plaintiffs. Doc. No. 1, ¶ 15. The Court notes that Essentia has allegedly refused to disclose that information publicly. Id. ¶ 32.

2

("Schneider") alleges she and her two minor children were administered vaccines and immunizations affected by temperature excursions between October 2017 and October 2019. Id. ¶ 13. Essentia allegedly acknowledged that Schneider and her children had received Affected Medications in letters dated April 7, 2020 and May 5, 2020, as well as in an email dated April 21, 2020. Id.

Kraft and Schneider in this suit seek to recover for themselves, their children, and a class of similarly situated persons who paid for and were administered Affected Medications at Essentia (collectively "Plaintiffs"). Id. ¶ 58. Plaintiffs' claims include breach of express warranties, breach of implied warranties, violations of consumer protection and deceptive trade practices laws, and unjust enrichment. See generally Doc. No. 1. Essentia requests the Court to dismiss the Complaint in its entirety based on lack of standing, failure to state a claim for breach of warranties, and failure to plead with particularity the consumer protection and deceptive trade practices claim. Doc. No. 5, pp. 1, 6.

## II.    LAW AND ANALYSIS

### A.    Article III Standing

In every federal civil case, the plaintiff must establish the court has subject matter jurisdiction. This Court's subject matter jurisdiction encompasses only "cases or controversies," and a plaintiff's standing to sue is a necessary component of the "case or controversy" requirement. Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016). Standing to sue includes three elements: (1) the plaintiff must have suffered an "injury in fact" that is concrete, particularized, and "actual or imminent," not conjectural or hypothetical; (2) the injury must be traceable to the defendant's action which is being challenged; and (3) the injury must be one that would be redressed by a decision favorable to the plaintiff. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).

At the pleadings stage, general factual allegations suffice to support standing.  See Jones v. Jegley, 947 F.3d 1100, 1104 (8th Cir. 2020). Whether standing exists is a question of law for the Court to determine. Park v. Forest Serv. of the U.S., 205 F.3d 1034, 1036 (8th Cir. 2000).

Plaintiffs allege they purchased and were administered influenza and other vaccines from Defendants that were compromised and ineffective due to temperature excursions caused by improper storage. Plaintiffs seek to recover for their economic loss and other injuries as a result of the Defendants' conduct.

Essentia contends Plaintiffs have not demonstrated an injury in fact that is individualized, concrete, and not conjectural or hypothetical. Doc. No. 5, p. 9. Essentia contends Plaintiffs' Complaint hinges on a notification Essentia made to approximately 50,000 patients in April 2020, which advised "that medication or vaccines they received might have been compromised by improper temperature storage." Id. (emphasis in original). Essentia relies upon Wallace v. ConAgra Foods, Inc., 747 F.3d 1025 (8th Cir. 2014), to argue Plaintiffs have not alleged an injury that has affected them in a personal and individualized way. Id.

In Wallace, the plaintiff consumers brought suit against a kosher hotdog manufacturer, alleging some packages of hotdogs produced and sold by them were not actually made with kosher beef. Wallace, 747 F.3d at 1028. On appeal from a dismissal by the district court, the Eighth Circuit Court of Appeals held the consumers lacked standing to sue because the allegations failed to show that any of the particular hotdog packages purchased by them were in fact tainted by non-kosher beef. Id. at 1030. The court explained, "it is not enough for a plaintiff to allege that a product line contains a defect or that a product is at risk for manifesting this defect; rather, the plaintiffs must allege that *their* product *actually exhibited* the alleged defect." Id. (internal quotations omitted) (emphasis in original). Essentia argues that Wallace requires dismissal here because Plaintiffs rely

only on a notification, sent to thousands of other patients, advising that they might have received Affected Medications. This, however, is a mistaken reading of the Complaint.

Unlike Wallace, Kraft and Schneider have indeed alleged a particularized harm, specifically that they and their minor children were in fact administered Affected Medications. Doc. No. 1, ¶¶ 12, 13. Paragraphs 12 and 13 of the Complaint provide specific detail of these allegations. For instance, the Complaint alleges "Kraft received a flu vaccine at Essentia's South University Clinic on January 31, 2017 . . . on information and belief, the flu vaccine she received was distributed by John Doe Distributor to Essentia Health and was subject to the Temperature Excursion." Id. ¶ 12. It is also alleged that Kraft's three children received childhood immunizations and flu vaccines, and "the vaccines the Kraft children received were distributed by John Doe Distributor to Essentia Health and were subject to the Temperature Excursion." Id. As a result of Essentia's actions, the Complaint alleges Plaintiff Kraft and her minor children were injured and suffered damages. Id.

Even more specific are the allegations as to Schneider and her minor children. The Complaint alleges that not only did Schneider and her children receive Affected Medications, but also that she was specifically informed by an email on April 21, 2020, two letters dated April 7, 2020, and a letter dated May 5, 2020, that one or more of the vaccines she and her children had received from Essentia were affected by temperature excursions. Id. ¶ 13. Specific details of the types of affected vaccines and the dates of administration were explicitly set forth in the Complaint with regard to Schneider's children. Id.

It is therefore disingenuous for Essentia to argue that the sole basis for Plaintiffs' Complaint is Essentia's April 6, 2020 notification to approximately 50,000 patients advising that some or all of them might have received medications or vaccines compromised by improper

temperature storage. The Complaint is far more specific than Essentia contends. Additionally, the Court has considered and rejects Essentia's argument that Plaintiffs have not suffered an injury since there are no allegations of physical harm resulting from administration of the Affected Medications. It is well settled that economic harm is a sufficient injury for purposes of standing. See Wallace, 747 F.3d at 1029 ("When the alleged harm is 'economic,' 'the "injury in fact" question is straightforward.'").

The Court concludes Plaintiffs have standing for purposes of the "case or controversy" requirement of Article III. Plaintiffs allege to have sustained an injury in fact that is fairly traceable to Essentia's conduct and relief from those injuries is likely to be achieved by a favorable decision from this Court.

**B.      Failure to State a Claim for Breach of Express and/or Implied Warranties**

Essentia also seeks dismissal of Plaintiffs' Complaint for failure to state claims upon which relief can be granted. Doc. No. 5, p. 13.

1.      Rule 12(b)(6) Standard

Federal Rule of Civil Procedure 8(a) requires a pleading only to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Nevertheless, a complaint may be dismissed for "failure to state a claim upon which relief can be granted," and a party may raise that defense by motion. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A plaintiff must show that success on the merits is more than a "sheer possibility." Id. A complaint does not need detailed factual allegations, but it must contain more than labels and conclusions. Bell Atl. Corp. v. Twombly, 551 U.S. 544, 555 (2007).

The Court must accept all factual allegations in the complaint as true, except for legal conclusions or "formulaic recitation of the elements of a cause of action." Iqbal, 556 U.S. at 681. The determination of whether a complaint states a claim upon which relief can be granted is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. "[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." Wilson v. Ark. Dep't Human Servs., 850 F.3d 368, 371-72 (8th Cir. 2017). The burden is on the moving party to prove that no legally cognizable claim for relief exists.

> 2.      Breach of Express and Implied Warranty Claims

Essentia argues Plaintiffs' claims for breach of express and implied warranties, premised on North Dakota's Uniform Commercial Code ("U.C.C."), Article 2, fail to state a claim upon which relief can be granted because the administration of the Affected Medications is not a transaction involving "goods."[2] Doc. No. 5, p. 13. Instead, vaccinations are medical services, according to Essentia, not a sale of goods. Id. at 14-15. In contrast, Plaintiffs assert they have plausible claims for breach of warranty because vaccines are defined by the CDC as "products that stimulate a person's immune system" to produce a specific result. Doc. No. 10, p. 14. And because vaccines are products that are moveable, Plaintiffs assert the Affected Medications meet the definition of "goods" in Article 2. Id.

North Dakota utilizes the "predominant factor" test to determine whether a transaction is a "sale of goods" covered by Article 2 of the U.C.C. or "service" outside the scope of Article 2. Air

---

[2] Article 2 of the U.C.C., defines "goods" to include "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities, and things in action." N.D. Cent. Code § 41-02-05.

Heaters, Inc. v. Johnson Elec., Inc., 258 N.W.2d 649, 652 (N.D. 1977). In Air Heaters, the North Dakota Supreme Court adopted the test applied in Bonebrake v. Cox, 499 F.2d 951 (8th Cir. 1974), to determine whether Article 2 of the U.C.C. applies to a mixed "goods" and "service" contract. Id.

> The test for inclusion or exclusion is not whether they are mixed, but, granting that they are mixed, whether their predominant factor, their thrust, their purpose, reasonably stated, is the rendition of a service, with goods incidentally involved (e.g., contract with artist for painting) or is a transaction of sale, with labor incidentally involved (e.g., installation of a water heater in a bathroom).

Id. (quoting Bonebrake, 499 F.2d at 960).

In the instant case, a decision must be made whether the predominant factor, thrust, and purpose of the vaccinations were the rendition of a medical service with goods (vaccines) incidentally involved, or the sale of vaccines with labor (administration of injections) incidentally involved. North Dakota courts broadly construe the scope of the term "goods" and the term has been held to include items that cannot be simply taken from the shelf and used. See Robertson Co., Inc. v. Kenner, 311 N.W.2d 194 (N.D. 1981) (concluding that sale of a grain storage facilities that had to be assembled on site fit the definition of "goods"). However, no North Dakota cases address the issue of whether medical products and services come within the scope of Article 2 of the U.C.C.

The parties cite cases outside of North Dakota to support their respective positions. Perlmutter v. Beth David Hosp., 123 N.E.2d 792 (N.Y. 1954) (holding that blood transfusion given during the course of emergent health care was not a sale of goods); Brandt v. Boston Sci. Corp., 792 N.E.2d 296 (Ill. 2003) (holding that surgical implantation of pubovaginal sling for treatment of incontinence was transaction predominantly for medical services, not sale of goods). But see Berry v. G.D. Searle & Co., 309 N.E.2d 550 (Ill. 1974) (hold that dispensing birth control pills by clinic constituted a sale to which implied warranty attached).

8

Here, Essentia and Plaintiffs both request the Court to determine, on the basis of the pleadings alone, whether the express and implied warranty provisions of Article 2 apply to the sale and administration of the Affected Medications to patients. Neither party, however, addresses whether under North Dakota law this is a question of law for the Court or a question of fact for the factfinder. Nor does it appear that North Dakota courts have specifically so held.

For instance, the claim in Air Heaters arose out of a building fire caused by the design and installation of an electrical system. Air Heaters, 258 N.W.2d at 650. The plaintiff alleged claims of negligence, breach of express warranty, breach of implied warranties, and strict liability claims against the electrical contractor. Id. at 651. After a court trial, judgment was entered in favor of plaintiff on the breach of implied warranty claims. Id. On appeal, the North Dakota Supreme Court applied the "predominant factor" test to determine whether the installation of an electrical system was the rendition of service, with goods incidentally involved, or a transaction of sale, with labor incidentally involved. Id. at 652. The factual record from the trial, however, did not include sufficient, particularized facts about the contract to allow the North Dakota Supreme Court to make that determination. Id. Because plaintiff failed to meet its burden of proof, the court held claims for breach of implied warranties could not be maintained. Id. at 653.

Though the North Dakota Supreme Court did not specifically state the application of the predominant factor test was a question of fact, the Air Heaters decision clearly indicates the facts of each particular contract are imperative to make that determination. Id. ("[I]t is necessary to look at each particular contract to determine the predominant factor or thrust of that contract. . . .[W]e could not hold that every contract involving installation of an electrical system is automatically outside the scope of Article 2, U.C.C."). Two additional cases from the North Dakota Supreme Court, both on appeal after trial to the district court without a jury, reinforce the fact-intensive

9

nature of the predominant factor test. See Nw. Equip., Inc. v. Cudmore, 312 N.W.2d 347 (N.D. 1981) (holding that contract for the replacement of parts and repair of transmission in a used bulldozer was primarily one for a service); Robertson Co., Inc. v. Kenner, 311 N.W.2d 194 (N.D. 1981) (concluding that sale of a grain storage facilities that had to be assembled on site fit the definition of "goods").

A review of caselaw from other jurisdictions reveals that some courts have held that applying the predominant factor test is question of law for the court. See Valley Farmers' Elevator v. Lindsay Bros. Co., 398 N.W.2d 553, 556 (Minn. 1987) overruled on other grounds by Hapka v. Paquin Farms, 458 N.W.2d 683 (Minn. 1990); Vermillion State Bank v. Tennis Sanitation, LLC, 947 N.W.2d 456, 467-68 (Minn. Ct. App. 2020) (holding that district court, not jury, decides the legal question of whether the U.C.C. applies by looking to a contract's predominant purpose); MBH, Inc. v. John Otte Oil & Propane, 727 N.W.2d 238, 245 (Neb. Ct. App. 2007) (stating that "whether goods or nongoods predominate a contract is generally a question of law"); Linden v. Cascade Stone Co., Inc., 699 N.W.2d 189, 192 (Wis. 2005) ("Interpreting the nature of a contract—whether it is primarily one for goods or primarily one for services—presents a question of law . . . ."); Aliki Foods, LLC v. Otter Valley Foods, Inc., 726 F. Supp. 2d 159, 166 (D. Conn. 2010) (noting that Connecticut law treats the predominant factor test as a question of law for the court to decide).

Contrarily, other courts hold that the issue is a question of fact for the factfinder. See Golden v. Den-Mat Corp., 276 P.3d 773, 792 (Kan. Ct. App. 2012) (concluding that issue of predominance of goods or services in a mixed contract is fundamentally one of fact and typically should be resolved by the trier of fact); Higgins v. Lauritzen, 530 N.W.2d 171, 173 (Mich. Ct. App. 1995) ("Generally, the question whether goods or services predominate in a hybrid contract

10

is one of fact."); Tacoma Athletic Club, Inc. v. Indoor Comfort Sys., Inc., 902 P.2d 175 (Wash. Ct. App. 1995) (classification of contract under the predominant factor test is a question of fact).

Regardless of whether North Dakota would hold the predominant factor test is a question of law for the court or a question of fact for the factfinder, facts are still necessary to apply the test. As the court in Golden recognized, "The predominant purpose test . . . is not especially predictive in the abstract. It looks at and depends upon the factual circumstances of the transaction being litigated." Golden, 276 P.3d at 791; see also Air Heaters, 258 N.W.2d at 653 (explaining that "it is necessary to look at each particular contract to determine the predominant factor or thrust of that contract."). To decide whether goods or services predominate in a mixed contract, courts often consider the contract language, the business of the supplier, and the "intrinsic worth" of the goods involved. See, e.g., Duxbury v. Spex Feeds, Inc., 681 N.W.2d 380, 386 (Minn. Ct. App. 2004). Courts also commonly compare the relative cost between the goods and services in the contract. Id. at 387. In this case, the type of factual information required to properly apply the predominant factor test is lacking because the case is only at the pleading stage.

In Gallinari v. Kloth, 148 F. Supp. 3d 202 (D. Conn. 2015), a patient brought an action against a physician, medical group, hospital, and surgery center after receiving an injection of compounded preservative-free betamethasone which was allegedly contaminated. Id. at 205. The defendants in Gallinari sought dismissal of Plaintiff's products liability and breach of warranty claims under Rule 12(b)(6), arguing the health care providers were not "product sellers." Id. at 213. Noting that the case was only at the pleading stage, not summary judgment, the court examined the four corners of the Complaint to determine whether plaintiff had plausibly alleged product liability and breach of warranty claims. Id. at 213-14. The court concluded the allegations, when taken as true, properly alleged the elements of a products liability claim and breach of

11

implied warranty of fitness for a particular purpose.[3] Id. at 214-15.  The court therefore denied the motion to dismiss. This Court is persuaded by the analysis in Gallinari.

Here, the Complaint alleges Defendants designed, manufactured, tested, marketed, labeled, packaged, handled, distributed, stored, and/or sold the Affected Medications to Plaintiffs and other consumers. Doc. No. 1, ¶ 69. Plaintiffs claim Defendants expressly represented and warranted that the Affected Medications were effective, fit, and proper for their intended use. Id. ¶ 71. The express warranties were made to consumers in labels, publications, package inserts, and other written materials; and Defendants also advertised, labeled, marketed, and promoted the Affected Medications as having certain beneficial qualities. Id. ¶¶ 71-72. Plaintiffs allege the representations about the Affected Medications created an express warranty that the goods would conform to the representations. Id. ¶ 74. Defendants allegedly breached the express warranties because the Affected Medications were defective, unfit for use, did not contain warnings identifying the true risks associated with their use, and were not merchantable or safe for their intended use and purpose. Id. ¶ 76.

With respect to a breach of implied warranty claim, Plaintiffs allege that Defendants impliedly warranted that the Affected Medications were of merchantable quality and safe and fit for the use for which they were intended, and that Plaintiffs relied upon Defendants and used the Affected Medications as instructed, intended, recommended, and promoted by them. Id. ¶¶ 85, 90. Plaintiffs claim they did not know and could not have reasonably discovered the risks associated with the Affected Medications. Id. ¶ 91. As a result of Defendants' breach of express and implied warranties, Plaintiffs claim to have sustained economic loss and other injuries. Id. ¶¶ 82, 94.

---

[3] A breach of implied warranty of merchantability claim was dismissed for lack of allegations that plaintiff notified defendants of the claimed breach, which was an essential element of the claim. Id. at 215.

Based on these allegations and construing the pleadings in the light most favorable to Plaintiffs, the Court concludes Plaintiffs have sufficiently stated claims for breach of express and implied warranties under Article 2 of the U.C.C. to survive a Rule 12(b)(6) motion to dismiss. Accordingly, the motion to dismiss for failure to state a claim as to the breach of warranty claims is denied.

### C.    Failure to Plead Consumer Protection and Deceptive Practices Claims with Particularity

Essentia's final challenge is that Plaintiffs have failed to allege the consumer protection and deceptive trade practices claims with the specificity required by Rule 9(b) of the Federal Rules of Civil Procedure. Doc. No. 5, p. 18. Rule 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) requires a plaintiff to plead "such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." H & Q Props., Inc. v. Doll, 793 F.3d 852, 856 (8th Cir. 2015) (citation omitted).  To do so, a plaintiff must identify the "who, what, where, when, and how" of the alleged fraudulent or deceptive conduct. Freitas v. Wells Fargo Home Mortg., Inc., 703 F.3d 436, 439 (8th Cir. 2013). "Conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." BJC Health Sys. v. Columbia Cas. Co., 478 F.3d 908, 917 (8th Cir. 2007) (citation omitted).

Essentia argues Plaintiffs have failed to sufficiently identify the "who, what, where, when, and how" of the alleged fraud. Specifically, Essentia claims it is unclear from the Complaint which of the 100 TTSPPs Plaintiffs allege were compromised; when or how the alleged temperature excursions occurred; and what specific language in the product label, package insert, product

information, or other written communication contains affirmative misrepresentations, misleading information, or material omissions. Doc. No. 5, p. 19.

In response, Plaintiffs assert that Essentia's failure to disclose that the vaccines were subject to temperature excursions, hindering their efficacy, was deceptive. Doc. No. 10, p. 29. Because Essentia failed to inform patients of the temperature excursions and they had no other way of knowing the vaccines were improperly handled and stored, Plaintiffs were allegedly deceived and harmed by their reliance on Essentia. Id. In essence, Plaintiffs allege they paid for and received worthless vaccinations. Id. at 30. According to Plaintiffs, Essentia's omissions, when there was a duty to disclose such information, state claims under both North Dakota and Minnesota consumer protection and deceptive trade practices laws. Id. at 29-31.

The Court has reviewed the Complaint comprising more than 100 detailed paragraphs and concludes Plaintiffs have adequately stated claims under both North Dakota and Minnesota consumer protection and deceptive trade practices laws. Plaintiffs allege they and their children received influenza and other childhood vaccinations that were subject to temperature excursions. Several of those Affected Medications were specifically identified, including influenza vaccinations, DTaP, and Hep A. Doc. No. 1, ¶ 13. Others were identified upon information and belief, including Hep B, IPV, Rotavirus, and Pneumococcal. Id. ¶ 12. The Complaint states that some of these vaccinations were obtained at the Essentia Clinic on South University Drive in Fargo, North Dakota. Id. The vaccinations were received by the Krafts on January 31, 2017, and by the Schneiders on specified dates from October 2017 to October 2019. Id. ¶¶ 12-13. They allege they were not informed the Affected Medications were tainted by improper temperature handling. Id. ¶¶ 53-55. Plaintiffs allege this was unfair and deceptive because Essentia represented that the goods (vaccines) had characteristics, uses, benefits, or qualities that they did not have, and the

14

Affected Medications were represented to be of a particular standard, quality, and grade when they were not. Id. ¶ 100. Plaintiffs further allege that Defendants had actual knowledge of the defective condition of the Affected Medications and intentionally concealed that information from them. Id. ¶ 109. Based on these allegations, the Court is satisfied Plaintiffs have identified the who, what, where, when, and how of the alleged deceptive acts with sufficient particularity to satisfy Rule 9(b).

Moreover, to the extent that certain details may be lacking, the Court understands Plaintiffs' predicament. Some of the information Essentia claims is lacking in the Complaint—for instance, which of the 100 TTSPPs were compromised and when the alleged temperature excursions occurred—is information peculiarly under the control of Defendants and not available to Plaintiffs except through the course of discovery. The sufficiency of a pleading for Rule 9(b) depends on the circumstances of the specific case before the court, considering factors like the nature of the case and the relationship between the parties. See Allstate Indem. Co. v. Dixon, 304 F.R.D. 580, 584 (W.D. Mo. 2015). Where a complaint alleges the defendant concealed or omitted material information, Rule 9(b) standards are more lenient. Id. To the extent the Complaint is not as detailed as Essentia believes necessary, the Court concludes some leniency is warranted.

## III.    CONCLUSION

For the reasons discussed above, Essentia's Motion to Dismiss the Complaint (Doc. No. 4) is **DENIED.**

**IT IS SO ORDERED**.

Dated this 3rd day of December, 2020.

/s/ Peter D. Welte
Peter D. Welte, Chief Judge
United States District Court

15