UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

JESSICA KRAFT, INDIVIDUALLY AND )
AS PARENT OF MINORS L.K., S.K., and )
O.K.; SHELLI SCHNEIDER, )
INDIVIDUALLY AND AS PARENT OF )
MINORS A.S and W.S.; ANNE BAILEY, )
AS PARENT OF MINOR D.B.; AMY )
LAVELLE, AS PARENT OF MINORS )
Em.L. and El.L; ELIZABETH BEATON, )
INDIVIDUALLY AND AS PARENT OF )        No. 3:20-CV-121
MINOR M.B.; AMANDA AND TYRELL )
FAUSKE, INDIVIDUALLY AND AS )
PARENTS OF MINORS C.R.F  and C.J.F.; )       Hon. Peter D. Welte
JENNIFER REIN, INDIVIDUALLY; and )        Magistrate Alice R. Senechal
JESSICA BERG, AS PARENT OF MINORS )
A.B. and S.B., individually and on behalf of )
all others similarly situated, )
                                        )
           Plaintiffs, )
                                        )
    v.                            )
                                        )
ESSENTIA HEALTH, INNOVIS )
HEALTH, LLC d/b/a ESSENTIA )
HEALTH, DAKOTA CLINIC )
PHARMACY, LLC, JOHN DOE )
MANUFACTURERS, and
JOHN DOE DISTRIBUTOR,

           Defendants.

**PLAINTIFFS' POSITIONS ON UNRESOLVED MATTERS**

Pursuant to Paragraph 8 of the Court's January 20, 2021 Scheduling Order (ECF No. 22),

Plaintiffs submit the following case updates and summaries of their positions on matters not

resolved during the January 19, 2021 Scheduling Conference.

## I.    UPDATES SINCE JANUARY 19, 2021 SCHEDULING CONFERENCE

Plaintiffs filed their Amended Complaint on January 25, 2021, adding Defendants Innovis Health, LLC and Dakota Clinic Pharmacy, LLC (served on February 3, 2021), as well as Plaintiffs Anne Bailey, Amy Lavelle, Elizabeth Beaton, Amanda Fauske, Tyrell Fauske, Jennifer Rein, and Jessica Berg.

On January 8, 2021, Plaintiffs provided Essentia a proposed Stipulated Protective Order ("PO") and ESI Protocol. Essentia provided its revisions to Plaintiffs on February 3, 2021. Plaintiffs and Essentia ("the Parties") participated in meet and confer negotiations regarding the PO and ESI Protocol on February 9 and 10, 2021, and while they were able to reach agreements on the majority of provisions in the documents, the Parties came to an impasse on three provisions (*see* Sections IIB-IIC below). On February 10, 2021, the Parties jointly submitted via email the proposed PO and ESI Protocol containing each parties' disputed provisions ("Proposed PO" and "Proposed ESI Protocol").

Plaintiffs served their First Set of Requests for Production of Documents and First Set of Interrogatories on Essentia Health on January 26, 2021. The Parties exchanged Rule 26(a)(1) Initial Disclosures on February 10, 2021.

## II.    PLAINTIFFS' POSITIONS ON UNRESOLVED MATTERS

### A.   Scope of Discovery

Plaintiffs proposed that discovery be completed within eight months and that their Motion for Class Certification be filed at the end of this eight-month discovery period. *See* ¶ ¶ (2)(a)(i) and 2(k)(i) of the Joint Proposed Scheduling/Discovery Plan. Plaintiffs view this case as relatively straight-forward, focused on a single distributor or facility at which a temperature excursion occurred and affected certain medications. Plaintiffs do not anticipate any particular obstacles or complications to warrant unusual considerations in scheduling.

1

Plaintiffs opposed the bifurcation of discovery as between class discovery and merits discovery as proposed by Defendant. A decision on class certification requires a "rigorous analysis[] that the prerequisites of Rule 23(a) have been satisfied[.]" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011) (internal quotation omitted). That analysis frequently entails overlap with the merits of the underlying claim "because class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Id*. at 351 (internal quotation marks and quoted sources omitted). Therefore, courts are generally reluctant to bifurcate class and merits discovery. *Obertman v. Electrolux Home Care Prods.*, C19-2487, 2020 U.S. Dist. LEXIS 107147 at *4 (E.D. Cal. June 18, 2020) (citations omitted).

The bifurcation of discovery will not promote judicial efficiency or a prompt resolution of the case. "Rather, it [will] unnecessarily delay the action, prejudicing Plaintiff and the putative class, by requiring the Court to resolve the parties' anticipated disagreement as to the bright-line between merits and class certification discovery. Under these circumstances, district courts regularly refuse to bifurcate discovery." *Johansen v. LoanDepot.com LLC*, 2020 U.S. Dist. LEXIS 238375, *3-4  (C.D. Cal. Nov. 10, 2020) (denying defendant's motion to bifurcate discovery in class action) (*citing Ahmed v. HSBC Bank USA, Nat'l Ass'n*, No. ED CV 15-2057 FMO (SPx), 2018 U.S. Dist. LEXIS 2286, at *8-9 (C.D. Cal. Jan. 5, 2018) (finding that bifurcation was not warranted in TCPA action and explaining, "many courts are reluctant to bifurcate class-related discovery from discovery on the merits. . . . This is because the distinction between class certification and merits discovery is murky at best and impossible to determine at worst") (internal citations omitted)); *Jones v. Heartland Coca-Cola Bottling Co., LLC*, No. 5:19-06127-CV-RK, 2020 U.S. Dist. LEXIS 2733, at *2 (W.D. Mo. Jan. 8, 2020) (denying bifurcation

2

of discovery in a case that "the Court is not persuaded . . . is sufficiently complex to require

bifurcation," finding that, "[f]rom a judicial economy standpoint, bifurcation is likely to create

litigation in this case over an artificial distinction between 'class' and 'merits' discovery.").

Accordingly, Plaintiffs proposed an eight-month discovery schedule and schedule for

their motion for class certification consistent with this plan:

Except as set forth below, all fact discovery will be completed by **September 15, 2021**,

with all written discovery to be served a minimum of 30 days prior to the deadline.

Any discovery motions shall be filed by **August 30, 2021**;

An appropriate time for a mid-discovery status conference would be **April 15, 2021**.

Plaintiffs also suggested it would be helpful, given the nature of the class action, to schedule

regular monthly status conferences.

**Class Certification.** Plaintiffs proposed the following deadlines for Plaintiff's motion for

Class Certification:

> **September 17, 2021:** Deadline for Plaintiffs to file their motion for class
> certification, together with any expert report(s) in support thereof;
>
> **November 16, 2021:** Deadline for Defendant(s) to file their opposition to the
> motion for class certification, together with any expert report(s) in support thereof;
>
> **January 14, 2022:** Deadline for Plaintiffs to file their reply in support of their
> motion for class certification, together with any rebuttal expert report(s).

**Post-class certification.** Within 14 days of the Court's decision on class certification, the

parties will confer regarding any outstanding discovery necessary to be completed in light of the

Court's class certification order, and a reasonable period within which to complete the discovery,

as well as proposed deadlines for Rule 26(a)(2) expert reports and dispositive motions.

### B. ESI Protocol

The early discussion and disclosure of search methodologies increases efficiency and decreases discovery disputes. Plaintiffs thus propose the inclusion of two ESI Protocol provisions designed to facilitate a collaborative, transparent discovery process.[1]

### 1. TAR

Defendant Essentia advised Plaintiffs that it anticipates using technology assisted review ("TAR") to narrow documents for its review and production. Plaintiffs thus propose a provision requiring (1) disclosure and meet-and-confer regarding TAR before the negotiation of search terms, if any, and (2) production of any responsive, non-privileged documents from seed sets used in connection with TAR.[2] *See* ¶¶ 8-9 of the Proposed ESI Protocol.

The use of search terms and/or TAR excludes large swaths of potentially responsive data from review. Those methodologies thus require careful crafting and testing. Moreover, the nature of search terms (and whether any are appropriate at all) changes based on whether and how the producing party implements TAR. The parties' agreed-upon procedures for negotiating search

---

[1] The parties have an obligation to work cooperatively to secure the just, speedy, and inexpensive determination of the case. *See, e.g.,* Committee Notes on the 2015 amendment to Fed. R. Civ. P. 1:

> Rule 1 is amended to emphasize that just as the court should construe and administer these rules to secure the just, speedy, and inexpensive determination of every action, so the parties share the responsibility to employ the rules in the same way. Most lawyers and parties cooperate to achieve these ends. But discussions of ways to improve the administration of civil justice regularly include pleas to discourage over-use, misuse, and abuse of procedural tools that increase cost and result in delay. Effective advocacy is consistent with — and indeed depends upon — cooperative and proportional use of procedure.

[2] The production of seed set documents, if any are used, allows the parties to determine that the TAR platform is appropriately "trained" with the right documents; it is a form of front-end quality control. If the platform is, for example, being asked to "predict" the relevance of documents, it needs to be properly trained as to what is and is not relevant. Plaintiffs seek only discoverable (i.e., responsive, non-privileged) documents from the seed set; in other words, documents that Defendant would be required to produce separate and apart from the use of TAR anyway. This provision is particularly appropriate in light of Defendant's refusal to meet-and-confer regarding search validation.

4

terms could be ineffective, and a substantial waste of resources, if the parties do not discuss how those search terms will be implemented.

A recent decision from the District of New Jersey includes a "lengthy discussion" of the need for transparency in connection with the use of TAR and "the unfortunate avoidable consequences that occur when a party does not meaningfully and timely meet, confer and collaborate regarding complex and costly ESI discovery." *In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*, No. 19-2875 (RBK/JS), 2020 U.S. Dist. LEXIS 225666, at *30 (D.N.J. Dec. 2, 2020). The court noted:

> A long line of cases holds that TAR requires, "an unprecedented degree of transparency and cooperation among counsel in the review and production of ESI responsive to discovery requests." 2014 U.S. Dist. LEXIS 69166, [WL] at *10; *accord Youngevity Int'l, Corp. v. Smith*, No. 16-CV-00704-BTM(JLB), 2019 U.S. Dist. LEXIS 60907, 2019 WL 1542300, at *12 (S.D. Cal. April 9, 2019). In the cases that have approved TAR, "the courts have required the producing party to provide the requesting party with full disclosure about the technology used, the process, and the methodology[.]". *Progressive Casualty*, 2014 U.S. Dist. LEXIS 69166, [WL] at *10. This was not done here. The time for Teva to make its TAR disclosure was before the "die was cast," not afterwards. The Court will not endorse a TAR protocol that was unilaterally adopted by a producing party without any input from the requesting party.

*Id* at *63. *See also Progressive Cas. Ins. Co. v. Delaney*, No. 2:11-CV-00678-LRH-PAL, 2014 U.S. Dist. LEXIS 69166, at *25-26 (D. Nev. May 19, 2014) (denying plaintiff's request to use predictive coding in a departure from the agreed-upon use of search terms, noting "the court would not hesitate to approve a transparent, mutually agreed upon ESI protocol" if the parties had worked at the outset of the case to create a TAR-based protocol.)

In *Valsartan*, the parties had agreed to cooperate in good faith regarding the use of TAR and do so as early as possible, and defendant failed to do so. 2020 U.S. Dist. LEXIS 225666, at *47-53. But the need for disclosure and transparency holds true even absent prior agreement. *See*

5

*generally id.* Plaintiffs have no objection to the use of TAR in general, but the parties should confer about that process. And given that TAR methodology has a material impact on the nature of and/or need for search terms, *see, e.g., Rio Tinto PLC v. Vale S.A.*, 2015 U.S. Dist. LEXIS 94117, at *3 (S.D.N.Y. July 15, 2015) ("keyword culling before running TAR. . . should not occur in a perfect world"), that process should be disclosed at the outset of discovery.

### 2. Search Validation

It is well settled that the use of search terms and/or TAR must be subject to careful search validation and quality control, including sampling of those documents that do not hit on any search terms. *E.g., William A. Gross Constr. Assoc., Inc. v. American Mfrs. Mutual Ins. Co.*, 256 F.R.D. 134 (S.D.N.Y. 2009) ("This Opinion should serve as a wake-up call to the Bar in this District about the need for careful thought, quality control, testing, and cooperation with opposing counsel in designing search terms or 'keywords' to be used to produce emails or other electronically stored information"); *In re Seroquel Products Liability Litig.*, 244 F.R.D. 650, 662 (M.D. Fla. 2007) ("Common sense dictates that sampling and other quality assurance techniques must be employed to meet requirements of completeness"); *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 260, 262 (D. Md. 2008) ("The implementation of the methodology selected should be tested for quality assurance; and the party selecting the methodology must be prepared to explain the rationale for the method chosen to the court, demonstrate that it is appropriate for the task, and show that it was properly implemented."); *In re Fresh & Process Potatoes Antitrust Litig.*, No. 4:10-MD-2186-BLW, 2012 U.S. Dist. LEXIS 139440, at *29-30 (D. Idaho Aug. 31, 2012) ("The Search-Term Parties shall certify that they made reasonable efforts to test the accuracy and efficacy of the search terms throughout the review process, including sampling based on statistically significant random samples drawn across the corpus of collected documents. . . ."); *City of Rockford v. Mallinckrodt ARD, Inc.*, 326 F.R.D. 489, 494 (N.D. Ill.

6

2018) ("Conducting a random sample of the null set is a part of the TAR process. . . With key word searching (as with any retrieval process), without doubt, relevant documents will be produced, and without doubt, some relevant documents will be missed and not produced. That is a known known. The known unknown is the number of the documents that will be missed and not produced. But there is a process by which to determine that answer, thereby making the known unknown a known known. That process is to randomly sample the null set. . . . "). Accordingly, Plaintiffs have proposed a provision (1) acknowledging these obligations; (2) requiring the sampling of unreviewed documents; and (3) requiring the parties to meet and confer about search validation. *See* ¶ ¶ 8-9 of the Proposed ESI Protocol.

This provision is particularly important in light of Defendant's refusal to disclose information about TAR. In *Rio Tinto PLC v. Vale S.A.*, 306 F.R.D. 125, 128-29 (S.D.N.Y. 2015), for example, former Magistrate Judge Peck -- renowned for his eDiscovery expertise -- recognized that the question as to exactly "how transparent and cooperative parties need to be" with respect to certain aspects of TAR, like the exchange of seed sets, remains open and subject to varying views. *Id.* at 128. He needed not rule on the issue, because the parties had agreed to a collaborative, transparent process. *Id.* at 129. He noted, however:

> In any event, while I generally believe in cooperation, requesting parties can insure that training and review was done appropriately by other means, such as statistical estimation of recall at the conclusion of the review as well as by whether there are gaps in the production, and quality control review of samples from the documents categorized []as no[t] responsive.

*Id.* at 128-29. (citation omitted). Defendant here, however, seeks to conduct discovery in the dark, setting the parties up for avoidable, late-stage discovery disputes that almost invariably arise when a receiving party—sheltered from a transparent discovery process—raises questions and concerns after the substantial time and financial investment into collection, production, and

7

review, as well as discovery and briefing arising from that production. Each layer of discovery – the use of search terms, the use of TAR, and human review – raises the probability of error, and such errors can compound on one another. Search validation is necessary, and reaching agreed-upon parameters regarding search validation can avoid discovery disputes.

### 3. Applicability of the ESI Protocol to Other Parties

Plaintiffs propose that the ESI Protocol be entered as an order applicable to all parties in this case, including those who appear in the future. Defendant opposed the inclusion of a provision to that effect, noting that the Plaintiffs and Essentia could not stipulate on behalf of other parties. That is true; however, the Court may enter an order that governs discovery for all parties. *See*, *e.g.*, *In re Broiler Chicken Antitrust Litigation*, No. 1:16-cv-08637, 2018 U.S. Dist. LEXIS 33140, at *34 (N.D. Ill. Jan. 3, 2018) (issuing an ESI order governing all parties in the case, "whether they currently are involved or become so in the future," and requiring the parties to disclose, among other things, how the TAR process would work, including whether the predictive coding software accounted for common misspellings and/or synonyms). This order had "the goal of permitting requesting parties an appropriate level of transparency into a producing party's electronic search process, without micromanaging how the producing party meets its discovery obligations and without requiring the disclosure of attorney work product or other privileged information . . . ." *Id.* The provisions of the ESI Protocol are routine, generally accepted discovery practices. Entering the ESI Protocol as a case-wide order would ensure that a common set of procedures apply to all parties and avoid protracted party-by-party negotiations of potentially conflicting stipulations.

### C. Stipulated Protective Order: HIPAA

This litigation will involve the production of protected health information ("PHI")

governed by HIPAA. Accordingly, Plaintiffs have proposed a provision making clear that the PO is a HIPAA-compliant protective order. *See* Protective Order, § J.

A HIPAA-compliant "qualified protective order" allows a "covered entity" to disclose PHI in the course of a judicial proceeding.[3] Plaintiffs' position is that the proposed PO is HIPAA compliant even *without* Plaintiffs' proposed additional language. HIPAA requires only that a qualified protective order include provisions (1) prohibiting disclosure of PHI for any purpose other than the litigation and (2) requiring the return or destruction of PHI after the litigation. 45 CFR § 164.512(e)(1)(v). The agreed terms of the PO meet those requirements even absent the addition of the disputed provision. *See* Protective Order, § C(6) (restricting the use of confidential documents, which include PHI, to the ligation) and § I (requiring the destruction or return of protected material after the conclusion of the litigation).

Nevertheless, Defendant refused to include a provision expressly acknowledging that the PO is HIPAA-compliant. Defendant's apparent basis for disputing that the PO is a qualified protective order is two-fold: (1) to deprive Plaintiffs of discovery regarding putative class members on the grounds that, absent a qualified protective order, Defendant would need a signed release from or notice (and time to object) to each individual putative class member, and (2) to justify its request for overbroad medical releases from Plaintiffs, in lieu of the production of only relevant and responsive records pursuant to a qualified protective order.

Accordingly, Plaintiffs seek to avoid any ambiguity about whether the PO is a qualified

---

[3] In fact, HIPAA allows a covered entity to disclose PHI as long as the requesting party has merely *requested* a qualified protective order. 45 CFR § 164.512(e)(1)(ii)(B) and (iv)(B) (Once a "covered entity" under HIPAA "receives satisfactory assurance . . . from the party seeking [PHI] that reasonable efforts have been made by such party to secure a qualified protective order that meets the requirements of paragraph (e)(1)(v)[,]" e.g., via "a written statement and accompanying documentation demonstrating that . . . [t]he party seeking the [PHI] has requested a qualified protective order from [the court][,]" the covered entity may then disclose PHI in the course of any judicial proceeding.).

protective order and to ensure that covered entities are free to produce properly discoverable information in this proceeding, under the protections of the PO. Plaintiffs thus propose the addition of Section J to the PO, or, in the alternative, respectfully request a ruling from the Court that the PO, without the addition of section J, is a qualified protective order under HIPAA.

### III.     CONCLUSION

In summary, Plaintiffs propose that discovery be completed within eight months and that their Motion for Class Certification be filed at the end of this eight-month discovery period; the entry of Plaintiffs' proposed provisions in the ESI Protocol requiring (1) disclosure and meet-and-confer regarding TAR before the negotiation of search terms, if any, and (2) requiring the parties to conduct, and meet and confer about, validation of any search methodologies governed by the ESI Protocol; and the entry of Plaintiffs' proposed provision in the Protective Order (or a ruling from the Court), making clear that the Protective Order is HIPAA compliant pursuant to 45 CFR § 164.512(e)(1)(v).

Dated: February 12, 2021                     Respectfully Submitted,

By: */s/ Elizabeth A. Fegan*
Elizabeth A. Fegan
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
Ph: 312.741.1019
Fax: 312.264.0100
beth@feganscott.com

Brooke A. Achua
FEGAN SCOTT LLC
140 Broadway, 46th Fl.
New York, NY 10005
Ph: 646.502.7910
Fax: 312.264.0100
brooke@feganscott.com

10

Mac Schneider
SCHNEIDER LAW FIRM
815 3rd Ave. S.
Fargo, ND 58103
Ph: 701-235-4481
Fax: 701-235-1107
mac@schneiderlawfirm.com

J. Barton Goplerud
Brian Marty
SHINDLER, ANDERSON, GOPLERUD
& WEESE, PC
5015 Grand Ridge Drive, Suite 100
West Des Moines, Iowa 50265
Ph: (515) 223-4567
Fax: (515) 223-8887
goplerud@sagwlaw.com

Counsel for Plaintiffs

**CERTIFICATE OF SERVICE**

The undersigned attorney of record hereby certifies that she caused a true and correct copy of the foregoing, Plaintiffs' Positions On Unresolved Matters, to be served on other counsel of record by electronic mail on this 12th day of February 2021, and addressed as follows:

| | |
|---|---|
| Angie E. Lord | Peter W. Zuger |
| Briana L. Rummel | Ian R. McLean |
| Robert B. Stock | Morgan L. Croaker |
| Vogel Law Firm | Serkland Law Firm |
| 218 NP Avenue | 10 Roberts Street, P.O. Box 6017 |
| P.O. Box 1389 | Fargo, ND 58108-6017 |
| Fargo, ND 58107-1389 | pzuger@serklandlaw.com |
| aelord@voeegllaw.com | imclean@serklandlaw.com |
| brummel@vogellaw.com | mcroaker@serklandlaw.com |
| rstock@vogellaw.com | |
| | *Attorneys for Defendant Dakota Clinic* |
| *Attorneys for Defendant Essentia* | *Pharmacy* |

By:    /s/ *Brooke Achua*

12