## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| JESSICA KRAFT, individually and as parent to minors L.K., S.K., and O.K.; SHELLI SCHNEIDER, individually and as parent of minors A.S. and W.S.; ANNE BAILEY, individually and as parent of minor D.B.; AMY LAVELLE, individually and as parent of minors Em.L. and El.L.; ELIZABETH BEATON, individually and as parent of minor M.B.; AMANDA AND TYRELL FAUSKE, individually and as parents of minors C.R.F. and C.J.F.; JENNIFER REIN, individually; and JESSICA BERG, individually and as parent of minors A.B. and S.B; individually and on behalf of all others similarly situated, | Case No. 3:20-cv-121 |
| Plaintiffs, | **ORDER GOVERNING DISCOVERY OF ELECTRONICALLY STORED INFORMATION** |
| vs. | |
| ESSENTIA HEALTH, INNOVIS HEALTH LLC d/b/a ESSENTIA HEALTH, DAKOTA CLINIC PHARMACY, LLC, JOHN DOE MANUFACTURERS, and JOHN DOE DISTRIBUTOR, | |
| Defendants. | |

Following discussions with counsel at status conferences held on February 17, 2021, and February 25, 2021, the Court enters the following order governing the discovery of electronically stored information in this proceeding. The Court recognizes that modification of this order may be necessary as the litigation progresses.

### I.        PURPOSE

This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Local Rules, and any other

applicable orders and rules (the "Rules"). To the extent there is any conflict between this Order and the Rules, the Rules will govern.  All disclosures and productions made pursuant to this Order Governing Discovery of Electronically Stored Information ("ESI Protocol") are subject to the Court's Confidentiality Order ("Confidentiality Order); the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 42 U.S.C. § 1320d, *et seq.*; chapter 23-34 of the North Dakota Century Code; and the Minnesota Health Records Act, Minn. Stat. § 144.291, *et seq.* The Parties may modify or supplement this agreement via stipulation without further order of the court.

**II.        COOPERATION**

The parties are aware of the importance the Court places on cooperation and are to commit to cooperate in good faith throughout the matter consistent with Fed. R. Civ. P. 1 to promote the "just, speedy, and inexpensive determination" of this action. The parties are to cooperate in good faith regarding discovery in general, including, more specifically, the disclosure and formulation of appropriate search methodologies, custodians, and potentially relevant sources of ESI in advance of any search and/or collection.

**III.       ESI DISCLOSURES**

1.        Within 30 days of the entry of this Order, the parties will exchange the information listed in items (a) through (d). The parties' respective responses are to be based on their knowledge and understanding as of the date of the response, and each party is to amend or supplement its responses in a timely manner, throughout the course of discovery, if it learns that in some material respect its response is incomplete or incorrect:

> a.  A written list of document custodians, including current and former employees, likely to have relevant information, including job title, dates of employment, and,

to the extent not apparent from the job titles, a brief description of job responsibilities for each individual;

**b.** A written description of any system for electronic communications and ESI storage (including, but not limited to, custodial locations, shared locations, non-custodial sources, or third-party sources) likely to house potentially relevant data;

**c.** A written description or, at the party's option, a copy of the party's operative document retention policies, throughout the relevant time period, pertaining to any electronic communications and or/ESI storage system(s) that likely house or housed potentially relevant data;

**d.** A written description of the steps the party has taken to preserve likely relevant ESI.

If a party becomes aware that likely relevant ESI, i.e., ESI subject to review and potential production in the matter, is (1) lost or destroyed or (2) inaccessible or only of limited accessibility, and hence not producible by that party without undue burden and/or expense, that party shall provide a description of the general nature of such information (e.g., correspondence, presentation, report, financial planning, budget, etc.) and either the circumstances of the loss/destruction or the reason(s) why the information is considered inaccessible or bears only limited accessibility within 15 days of date of awareness.

## IV.      PRODUCTION FORMATS

1.      Attending to issues relating to form of production at the outset of the case facilitates the efficient and cost-effective conduct of discovery.

2.      Appendix A sets forth technical specifications that the plaintiffs, Essentia Health, and Innovis, LLC proposed to govern the form of production of documents in this litigation, absent agreement of the parties or order by the Court.

3.　　　The parties are to produce documents in file formats as particularized in Appendix A. If particular documents warrant a different format, the parties are to cooperate to arrange for the mutually acceptable production of such documents. A party need not produce the same electronically stored information in more than one form, as provided in Fed. R. Civ. P. 34(b)(2)(E)(iii). The parties are not to degrade the search-ability of documents as part of the document production process.

4.　　　Deduplication of ESI is expected and will only apply to exact duplicates (as determined by matching a document or document family's MD5 or SHA-I hash values) in a given production. The deduplication of email must not break apart families, and the full email header, including the blind copy field (bcc), must be included when generating hash values.

5.　　　The parties share a desire to ensure that ESI is produced in an acceptable, searchable format. To that end, the plaintiffs, Essentia Health, and Innovis, LLC, have discussed but have not yet identified potentially relevant ESI that would not be amenable to the proposed technical specifications. The parties are to meet and confer in good faith to address any issues that may arise in this regard, and to seek judicial intervention only if their efforts to resolve the issues on an informal basis are unsuccessful. Certain information to be produced in discovery may warrant production in an alternative form for purposes of depositions and/or trial. To the extent that becomes necessary, the parties are to meet and confer to reach agreement about such form and are to seek Court intervention only if necessary.

V.　　　**DOCUMENT SEARCH PROTOCOL**

1.　　　The parties are to meet and confer concerning search methodologies, including without limitation, the use of keyword search terms and/or the use of technology assisted review.

2.　　　Even though a document contains one or more of the search terms identified in accordance with the procedures listed below, such document may not be responsive to any

document request. In such cases, the Responding party is not required to produce such documents.

3.        The parties are obligated to interview custodians to identify potentially responsive and/or relevant documents and identify potential locations where responsive documents are likely to reside. The parties are to ask custodians to specifically identify any responsive documents of which they may be aware, and they will produce any such relevant and responsive, non-privileged documents regardless of whether such documents contain any of the search terms (if the party uses search terms).

4.        **Document Collection:** Each responding party will collect documents from custodians and from the locations agreed to between the parties or pursuant to Court order.

5.        **ESI Search Methodology:** The parties are to discuss and attempt to reach an agreement on search methodologies. Agreement on a search methodology does not relieve a party of its obligations under the Federal Rules of Civil Procedure to conduct a reasonable search, interview relevant witnesses and custodians, and produce all relevant and responsive documents of which it is aware, regardless of whether such documents are located with the agreed-upon search methodology, and without waiting for an agreement on or implementation of such search methodology.

6.        The parties **are to** meet and confer about methods to search ESI in order to help identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery. The parties are to establish search methodologies with the goal of limiting the scope of review for production, minimizing the need for motion practice, and facilitating production in accordance with the deadlines set by the Court or agreed upon by the parties.

7.        **Proposed Search Terms:**

a.  If a producing party intends to use search terms to locate responsive documents, the producing party shall first confer in good faith with the requesting party to determine the mutually agreeable search terms before using any search terms.

b.  Prior to implementing search terms, the producing party should provide a list of proposed search terms to the requesting party and the parties shall meet and confer regarding any modifications or additional terms proposed by the requesting party.

c.  If the producing party contends that terms or modifications proposed by the requesting party would recall an excessive number of documents, the producing party shall provide a search term hit list or hit report after deduplication within custodian. The list or report should include:

    i.   the number of documents in the initial set of documents before any search terms are applied;

    ii.  the number of documents returned by each search term;

    iii. the number of unique documents returned by each search term (documents that contain a particular term and no other term on the list);

    iv.  the total number of documents that would be returned using the entire proposed search term list, including disputed terms (including families); and

    v.   a general description and/or examples of some of the types of irrelevant documents that each disputed search term is returning.

    **d.** With respect to any search term for which the producing party believes there exists a modification that will reduce the number of irrelevant documents returned by the search term, the producing party will meet and confer with the requesting party to discuss in good faith any such modification. For any terms that a producing party believes are burdensome, overly broad, and/or objectionable and for which there does not appear to be any modification that would resolve such issues, the producing party shall meet and confer with the requesting party to discuss in good faith its objections to such search terms.

    **e.** The requesting party may propose additional search terms during the course of discovery (for example, if the proposed term, or the significance of the proposed term, was unknown to the requesting party as of the time the original list was formulated). The parties are to meet and confer in good faith regarding the utility and burden of applying additional search terms.

**8.** **TAR:** If a producing party intends to use technology-assisted review ("TAR"), the producing party shall confer with the requesting party, in good faith, in advance of implementation of TAR, and in advance of the parties' negotiation of search terms, to determine the mutually agreeable parameters for using TAR.

**9. Search Validation**: The parties will meet and confer to discuss search validation provisions, regardless of the search methodology implemented.

**10. Presentation to the Court:** If, after engaging in the process described above, the parties cannot reach agreement about search terms or other aspects of this Search Protocol, the parties are **to follow** the Court's Order regarding Resolution of Discovery Disputes. (Doc. 16.)

## VI.    PRIVILEGE LOGS

1.    Where a document is withheld from production entirely or in part by redaction on the basis of the attorney client privilege, work product doctrine, or any other privilege or protection, the producing party will produce a privilege log in accordance with Rule 26(b)(5) of the Federal Rules of Civil Procedure.

2.    The privilege log(s) will be produced in an active sortable, searchable Excel file.

3.    A producing party will produce a separate privilege log for each production within 60 days after the production of documents for which a privilege is asserted, with a final log produced at least 60 days prior to the close of fact discovery, or within 20 days after the production, should a production occur within 60 days of the close of fact discovery. The receiving party will have 60 days after receipt of the final privilege log to raise any disputes arising from the privilege log(s), even if fact discovery would have otherwise closed before the expiration of that 60-day period. To the extent a party provides multiple privilege logs, each such log should contain all previous privilege log entries, such that each privilege log can supersede all prior privilege logs, with any changes to previously produced privilege log entries clearly identified.

## VII.    REDACTIONS

1.    A party may not redact any document based upon any objection related to the relevance or responsiveness of a document, except that a producing party may redact information if it meets these criteria:

    a.    The information is both irrelevant and non-responsive; and

    b.    The information is (i) highly personal, extremely sensitive, non-public, and personally identifying information ("Highly Sensitive PII"); or (ii) a trade secret that the producing party reasonably believes is likely to cause economic harm or

significant competitive disadvantage to the producing party if disclosed in discovery ("Highly Sensitive Trade Secrets").

2.      A party making redactions under this provision will identify each redaction by stamping the relevant portion of the document with searchable text indicating the basis for the redaction, i.e., searchable text reading "Redacted PII" for irrelevant, non-responsive Highly Sensitive PII, as described above; "Redacted Trade Secrets" for irrelevant, non-responsive Highly Sensitive Trade Secrets; "Redacted Attorney Client Privilege"; and "Redacted Work Product."

3.      If it comes to a redacting party's attention that information or items that it redacted do not qualify for redaction, that redacting party must promptly notify all other parties and replace the document(s) with an unredacted version.

4.      Each party reserves all rights to challenge such redactions, including but not limited to, the misuse and overuse of such redactions.

**IT IS SO ORDERED.**

Dated this 1st day of March, 2021.

*/s/ Alice R. Senechal* ___
Alice R. Senechal
United States Magistrate Judge

**Appendix A**
**to Order Governing Discovery of Electronically Stored Information**

**<u>TECHNICAL SPECIFICATIONS FOR PRODUCTION</u>**

**<u>PRODUCTION OF EMAIL AND ELECTRONIC DOCUMENTS</u>**

For documents that have originated in electronic format, the following specifications should be used for their production.

**Production format.** All documents, except for audio, video, spreadsheets (e.g., MS Excel, Numbers), and documents with hidden content and/or tracked changes (which should be produced natively, as described below), shall be produced in single page, TIFF format at a resolution of at least 300 dots per inch (dpi). The parties shall process presentations (e.g., MS PowerPoint) with hidden slides and speaker's notes unhidden, and to show (in the case of PowerPoint) both the slide and the speaker's notes on the TIFF image. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). Where the TIFF image is unreadable or has materially degraded the quality of the original, the producing party shall provide a higher quality TIFF image or the native or original file.

**Attachments.** Attachments, enclosures, and/or exhibits to any parent documents should also be produced and proximately linked to the respective parent documents containing the attachments, enclosures, and/or exhibits.

**Production filename.** Each filename must be unique and match the Bates number of the page. The filename should not contain any blank spaces or special characters (e.g.,-,_) and should be zero padded (for example ABC00000001). The parties agree to endeavor to use consistent filename formats between productions.

**Production media and encryption of productions.** Media may be delivered on CDs, DVDs, External USB hard drives or SFTP, as appropriate. Each media volume should have its own unique name and a consistent naming convention (for example ZZZ001 or SMITH001). The producing party shall encrypt the production data using WinRAR or 7-Zip encryption, and the producing party shall forward the password to decrypt the production data separately from the CD, DVD, external drive or FTP to which the production data is saved.

**Searchable text file.** Extracted text for all documents with extractable text should be delivered on a document level in an appropriately formatted text file (.txt) that is named to match the first bates number of the document. Text files created with optical character recognition (OCR) are only appropriate for electronic documents requiring redaction or documents that do not have extracted text (e.g., JPEG or TIFF files).

**Load Files & Metadata.**

- Files shall be produced along with Concordance/Opticon image load files, with one corresponding entry per document record, that indicate the beginning and ending of each document.

- A text cross reference load file should be included with the production delivery that lists the beginning bates number of the document and the relative path to the extracted or, when appropriate, OCR text file for that document on the production media.

- A delimited database load file should be provided with each production using the delimiters:

Field Separator, ASCII character 020: "¶"
Quote Character, ASCII character 254 "þ"
Newline Character, crlf

The delimited database load file should include, where applicable, the following metadata and system fields:

| Field Name | Specifications Field Name | Field Type | Description (Email) | Description (E-Files/ Attachments) |
|---|---|---|---|---|
| BegDoc | Unique ID (Bates number) | Paragraph | The Document ID number associated with the first page of an email. | The Document ID number associated with the first page of a document. |
| EndDoc | Unique ID (Bates number) | Paragraph | The Document ID number associated with the last page of an email. | The Document ID number associated with the last page of a document. |
| BegAttach | Unique ID (Bates number) Parent-Child Relationships | Paragraph | The Document ID number associated with the first page of a parent email. | The Document ID number associated with the first page of a parent document. |

| EndAttach | Unique ID (Bates number) Parent-Child Relationship | Paragraph | The Document ID number associated with the last page of the last attachment to a parent email. | The Document ID number associated with the last page of the last attachment to a parent document. |
|---|---|---|---|---|
| Pages | Pages | Number | The number of pages for an email. | The number of pages for a document. |
| DateSent | Date Sent | Date (MM/DDNYYY format) | To the extent available, the date the email was sent. | To the extent available, for email attachments, the date the parent email was sent. |
| TimeSent | Time Sent | Time (HH:MM:SS format) | To the extent available, the time the email was sent. | To the extent available, for email attachments, the time the parent email was sent. |
| Author | Author | Paragraph | | The name of the author as identified by the metadata of the document. |
| From | Display Name/Sender (e-mail) | Paragraph | The display name of the author or sender of an email. | |
| To | Recipient | Paragraph | The display name of the recipient(s) of an email. | The display name of the recipient(s) of a document (e.g., fax |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | recipients). |
| CC | cc | Paragraph | | The display name of the copyee(s) of an email. | |
| BCC | BCC | Paragraph | | The display name of the blind copyee(s) of an email. | |
| Doc Subject | Subject (edoc) | Paragraph | | | The subject of a document from entered metadata. |
| Email Subject | Subject (e-mail) | Paragraph | | The subject line of an email. | |
| Custodian | Custodian | Paragraph | | The custodian of an email. | The custodian of a document. |
| All_Custodians | All Custodians | Paragraph | | Custodian, plus any additional Custodian(s) who had a duplicate copy removed during global deduplication, with each Custodian separated by a semicolon (;) | Custodian, plus any additional Custodian(s) who had a duplicate copy removed during global deduplication, with each Custodian separated by a semicolon (;) |
| Designation | Confidentiality Designation | Paragraph | | Identifies whether the record is designated | Identifies whether the record is designated confidential |

| | | | | confidential | |
|---|---|---|---|---|---|
| Redaction | Redaction | Paragraph | Identifies whether the record was redacted | Identifies whether the record was redacted |
| Orig_Path | Original location path | Paragraph | | Original file path to the record; where the document was stored at the time of collection |
| Email_Path | Email Folder Path | Paragraph | Original e-mailbox folder structure | |
| Filed_Ext | File Extension | Paragraph | The record's extension | The record's extension |
| Filename | Filename | Paragraph | | The record's original filename |
| Hash | SHAl or SHA2 Value | Paragraph | The record's generated SHAI orSHA2hash value | The record's generated SHAl or SHA2 hash value |
| Date_LastMod | Date Last Modified | Date (MM/DDIYYYY format) | | To the extent it exists, the date entered in the record's date last modified meta field |
| Time_LastMod | Time Last Modified | Time (HH:MM:SS format) | | To the extent it exists, last modified Time |

| Date_Created | Date Created | Date (MM/DDNYYY format) | The date entered in the record's date created meta field | To the extent it exists, the date entered in the record's date created metadata field |
|---|---|---|---|---|
| Time Created | Time Created | Time (HH:MM:SS format) | | To the extent it exists, the time the document was created, entered in the record's time created metadata field |
| Native_Path | Native File Path | Paragraph | The relative file path to produced native files | The relative file path to produced native files |
| TextPath | Text Path | Paragraph | File path for OCR or Extracted Text Files | File path for OCR or Extracted Text Files |

However, the parties are not obligated to include metadata for any document that does not contain such metadata in the original, if it is not possible to automate the creation of metadata when the document is collected. The parties reserve their rights to object to any request for the creation of metadata for documents that do not contain metadata in the original, and reserve their rights to object to the production of metadata for any particular document on the grounds that production of metadata for that document would not be proportional pursuant to Fed. R. Civ. P. 26(b)(l).

- **Parent and child documents.** Attachments, enclosures, and/or exhibits to any parent documents should also be produced sequentially after the respective parent documents containing the attachments, enclosures, and/or exhibits.

- **Hidden Content.** For any document that contains hidden content, tracked changes or edits, comments, notes, or other similar information viewable within the native file, the Producing Party will provide the native file, or, if possible. an image file of a version showing the hidden content, if there is such content.

- **Foreign language documents.** All documents shall be produced in their original language. Where a requested document exists in a foreign language and the producing party also has an English-language version of that document that it prepared for non-

15

litigation purposes prior to filing of the lawsuit, the producing party shall produce both the original document and all English-language versions. In addition, if the producing party has a certified translation of a foreign-language document that is being produced, (whether or not the translation is prepared for purposes of litigation) the producing party shall produce both the original document and the certified translation. Nothing in this agreement shall require a producing party to prepare a translation, certified or otherwise, for foreign language documents that are produced in discovery. Foreign language text files and metadata should be delivered with the correct encoding to enable the preservation of the documents' original language.

- **Native files.** All spreadsheets and audio or video media files should be produced in their native format and as they were stored in the ordinary course of business. Emails that attach spreadsheets should not be separated from each other and should be linked using the Attachment Range fields above. The file name should match the bates number assigned to the file. The extractable metadata and text should be produced in the same manner as other documents that originated in electronic form. Documents produced natively shall be represented in the set of imaged documents by a slipsheet indicating the production identification number and confidentiality designation for the native file that is being produced.

  The parties agree to work out a future protocol governing the use and format of documents produced pursuant to this paragraph at trial, depositions, or hearings (such as converting to PDF in accordance with the above protocol).

  If necessary, the parties will meet and confer to discuss requests for the production of other files in native format, on a case-by-case basis. If the parties are unable to reach agreement with regard to requests for additional documents in native-file format, the parties reserve the right to seek relief from the Court.

- **Requests for hi-resolution or color documents.** The parties agree to respond to reasonable and specific requests for the production of higher resolution or color images. Nothing in this Stipulation shall preclude a producing party from objecting to such requests as unreasonable in number, timing or scope, provided that a producing party shall not object if the document as originally produced is illegible or difficult to read. The producing party shall have the option of responding by producing a native-file version of the document. If a dispute arises with regard to requests for higher resolution or color images, the parties will meet and confer in good faith to try to resolve it.

## PRODUCTION OF HARD COPY OR PAPER DOCUMENTS

All documents that are hard copy or paper files shall be scanned and produced in the same manner as documents existing in electronic format, above.

## PRODUCTION OF DATABASES AND OTHER STRUCTURED DATA

16

Generally, databases should be produced in a mutually agreeable data exchange format. Certain types of databases are dynamic in nature and may contain information that outside the scope of Fed. R. Civ. P. 26(b)(l). Thus, a party may opt to produce relevant and responsive information from databases in an alternate form, such as a report or data table in static format. Prior to production in an alternate form, the parties agree to identify the specific databases, by name, that contain the relevant and responsive information that parties will produce, and meet and confer regarding the format of production to determine a mutually agreeable format.