**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**

JESSICA KRAFT, INDIVIDUALLY AND )
AS PARENT OF MINORS L.K., S.K., and )
O.K.; SHELLI SCHNEIDER, )
INDIVIDUALLY AND AS PARENT OF )
MINORS A.S and W.S.; ANNE BAILEY, )
AS PARENT OF MINOR D.B.; AMY )
LAVELLE, AS PARENT OF MINORS )
Em.L. and El.L; ELIZABETH BEATON, )
INDIVIDUALLY AND AS PARENT OF )            No. 3:20-CV-121
MINOR M.B.; AMANDA AND TYRELL )
FAUSKE, INDIVIDUALLY AND AS )
PARENTS OF MINORS C.R.F  and C.J.F.; )      Hon. Peter D. Welte
JENNIFER REIN, INDIVIDUALLY; and )
JESSICA BERG, AS PARENT OF MINORS )
A.B. and S.B., individually and on behalf of )
all others similarly situated, )
)
         Plaintiffs, )
)
    v. )
)
ESSENTIA HEALTH, INNOVIS )
HEALTH, LLC d/b/a ESSENTIA )
HEALTH, DAKOTA CLINIC )
PHARMACY, LLC, JOHN DOE )
MANUFACTURERS, and )
JOHN DOE DISTRIBUTOR, )
)
         Defendants. )

**PLAINTIFFS' OPPOSITION TO DEFENDANT DAKOTA CLINIC PHARMACY,**
**LLC'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

I.     INTRODUCTION ............................................................................................... 1

II.    SUMMARY OF FACTS .................................................................................... 1

III.   ARGUMENT...................................................................................................... 2

       A.    Legal Standard ....................................................................................... 2

       B.    Plaintiffs have stated a plausible claim for breach of express
             warranty against Dakota Clinic...................................................................... 3

             1.   Dakota Clinic is a "seller" within the meaning of the U.C.C........................... 3

             2.   Plaintiffs plausibly allege Dakota Clinic made express
                  warranties. ................................................................................................. 5

       C.    Plaintiffs have stated a plausible claim for breach of implied
             warranties........................................................................................................ 6

       D.    Privity is not required to state a claim for breach of express or
             implied warranty. ........................................................................................... 7

       E.    Rule 9(b) is satisfied for Plaintiffs' consumer protection act claims...................... 9

             1.   Rule 9(b) is satisfied where Plaintiffs' allegations plausibly
                  demonstrate Dakota Clinic omitted material facts.................................... 9

             2.   Defendant Dakota Clinic is a "person" regulated by the MCFA
                  and NDCPL........................................................................................... 11

       F.    Plaintiffs have stated plausible claims for unjust enrichment
             against Dakota Clinic.................................................................................... 12

IV.    CONCLUSION................................................................................................ 14

ii

## TABLE OF AUTHORITIES

**Cases**

*AgGrow Oils, L.L.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
276 F. Supp. 2d 999 (D.N.D. 2003) ...................................................................... 7

*Allstate Indem. Co. v. Dixon*,
304 F.R.D. 580 (W.D. Mo. 2015) ......................................................................... 9

*Arceneaux v. Lykes Bros. S.S. Co.*,
890 S.W.2d 191 (Tex. App. 1994) ........................................................................ 6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................... 3

*Bakken Residential, LLC v. Cahoon Enters., LLC*,
154 F. Supp. 3d 812 (D.N.D. 2015) ................................................................... 13

*Bell Atl. Corp. v. Twombly*,
551 U.S. 544 (2007) ............................................................................................... 3

*Belville v. Ford Motor Co.*,
60 F. Supp. 3d 690 (S.D. W. Va. 2014) ........................................................... 9, 11

*Benz Farm, LLP v. Cavendish Farms, Inc.*,
803 N.W.2d 818 (N.D. 2011) ............................................................................. 12

*Bill's Coal Co. v. Board of Public Utilities*,
887 F.2d 242 (10th Cir. 1989) .............................................................................. 4

*Charles E. Beard, Inc. v. Cameronics Tech. Corp.*,
729 F. Supp. 528 (E.D. Tex. 1989) ...................................................................... 6

*Colby Ctr. v. Conagra Foods, Inc.*,
2015 U.S. Dist. LEXIS 89711 (W.D. Ark. 2015) ........................................... 13-14

*Drobnak v. Andersen Corp.*,
561 F.3d 778 (8th Cir. 2009) ................................................................................ 9

*Falcon for Import & Trade Co. v. N. Cent. Commodities, Inc.*,
2004 U.S. Dist. LEXIS 1292, 2004 WL 224676 (D.N.D. Jan. 30, 2004) ........... 7-8

*Fode v. Capital RV Ctr.*,
575 N.W.2d 682 (N.D. 1998) ............................................................................... 5

*Harmon v. Nat'l Auto. Parts Ass'n*,
720 F. Supp. 79 (N.D. Miss. 1989) ...................................................................... 6

*Hart Honey Co. v. Cudworth,,*
  446 N.W.2d 742 (N.D. 1989) ............................................................................... 5

*Hughes v. Wheeler,*
  364 F.3d 920 (8th Cir. 2004) ............................................................................. 13

*Jorgenson v. Agway, Inc.,*
  627 N.W.2d 391 (N.D. 2001) ............................................................................. 12

*Lang v. Gen. Motors Corp.,*
  136 N.W.2d 805 (N.D. 1965) .......................................................................... 6, 8

*Lewey v. Vi-Jon, Inc.,*
  2012 U.S. Dist. LEXIS 71237, 2012 WL 1859031 (E.D. Mo. May 22, 2012) ........................ 9

*Like Hart Honey, Steele v. Ellis,*
  961 F. Supp. 1458 (D. Kan. 1997) ....................................................................... 5

*Opp v. Matzke,*
  1997 ND 32, 559 N.W.2d 837 ............................................................................. 13

*Oscar Mayer Corp. v. Mincing Trading Corp.,*
  744 F. Supp. 79 (D.N.J. 1990) ......................................................................... 5, 6

*Sci. Application, Inc. v. Delkamp,*
  303 N.W.2d 71 (N.D. 1981) ................................................................................ 6

*Sergeants Benevolent Ass'n Health & Welfare Fund v. Actavis, PLC,*
  2018 U.S. Dist. LEXIS 220574 (S.D.N.Y. Dec. 26, 2018) ........................................... 13

*Spieker v. Westgo, Inc.,*
  479 N.W.2d 837 (N.D. 1992) ............................................................................... 7

*Staco Energy Prod. Co. v. Driver-Harris Co.,*
  578 F. Supp. 700 (S.D. Ohio 1983) ...................................................................... 5

*State v. Minnesota School of Business, Inc.,*
  935 N.W.2d 124 (Minn. 2019) ........................................................................... 12

*Superior Homes, LLC v. Comardelle,*
  2013 U.S. Dist. LEXIS 165578 (D.S.D. Nov. 21, 2013) ............................................. 14

*Thimjon Farms Partnership v. First Int'l Bank & Trust,*
  837 N.W.2d 327 (N.D. 2013) ............................................................................. 12

*Watts v. Mercedes-Benz USA, LLC,*
  254 S.W.3d 422 (Tenn. Ct. App. 2007) .................................................................. 5

*Whitney v. Guys, Inc.*,
  700 F.3d 1118 (8th Cir. 2012) ........................................................................... 4

*Wilson v. Ark. Dep't Human Servs.*,
  850 F.3d 368 (8th Cir. 2017) ............................................................................. 3

**Statutes**

Minn. Stat. § 325F.68 ......................................................................................... 9, 12

Minn. Stat. § 325F.69 ....................................................................................... 11, 12

Minn. Stat. § 325F.70 ........................................................................................... 12

N.D. Cent. Code § 41-02-03 ................................................................................ 4, 5

N.D. Cent. Code § 41-02-18 .................................................................................... 4

N.D. Cent. Code § 41-02-30 ............................................................................. 1, 4, 7

N.D. Cent. Code § 41-02-31 ................................................................................. 6, 7

N.D. Cent. Code § 41-02-35 ................................................................................. 6, 7

N.D. Cent. Code § 51-15 .............................................................................. 9, 11, 12

**Rules**

Fed. R. Civ. P. 8(a) ................................................................................................ 2

Fed. R. Civ. P. 9(b) ..................................................................................... 1, 9, 11

Fed. R. Civ. P. 12(b)(6) .......................................................................................... 2

## I.    INTRODUCTION

After failing to properly store more than 100 time- and temperature-sensitive pharmaceutical products (TTSPs[1]) (the "Affected Medications"), Dakota Clinic Pharmacy, LLC ("Dakota Clinic") distributed the Affected Medications to Essentia Health and/or Innovis Health, LLC d/b/a Essentia Health (collectively "Essentia"), which then administered the Affected Medications to Plaintiffs, their children and putative class members. Despite its role as a distributor of the Affected Medications, Dakota Clinic seeks to avoid liability, arguing variations on the argument that Plaintiffs failed to allege it was a "seller" of goods.

Dakota Clinic's arguments should be rejected because: (i) Dakota Clinic's role falls within the definition of seller in the North Dakota Uniform Commercial Code - Sales ("U.C.C."), N.D. Cent. Code. § 41-02-30(1); (2) sales by Dakota Health to Essentia will suffice to trigger application of the U.C.C. as privity is not a requirement for Plaintiffs to maintain a claim for breach of express or implied warranty; and (3) Plaintiffs' consumer protection act claims may be brought against "any person" "in connection with the sale" of goods.  Further, consistent with this Court's Order Denying Motion To Dismiss, Plaintiffs have satisfied Rule 9(b) for their consumer fraud claims where "They allege they were not informed the Affected Medications were tainted by improper temperature handling." *See* Order Denying Motion To Dismiss (ECF 13) ("Order"), at 15. Accordingly, Defendant's motion should be denied.

## II.    SUMMARY OF FACTS

Plaintiffs presume this Court's familiarity of the facts alleged in their original Complaint. *See* Order, § I.  Plaintiffs filed their First Amended Class Action Complaint on January 25, 2021.[2]

---

[1] Capitalized terms have the same meaning as set forth in the First Amended Class Action Complaint.

[2] "¶__" refers to paragraphs in the First Amended Class Action Complaint ("FAC").

1

*See* ECF 28. The amendments are summarized here.

Since at least as early as January 2017, Essentia Health sold and administered more than 100 TTSPs stored and distributed by Dakota Clinic to Plaintiffs, their children and putative class members.[3] The Affected Medications were handled and stored outside the proper temperature range and thus were subject to one or more temperature excursions. In its Answer to the original Complaint, Essentia Health identified the John Doe Distributor as Dakota Clinic. ¶¶ 3, 5.

According to Essentia Health: (i) as of September 6, 2016, Dakota Clinic was an Essentia-owned pharmacy; and (ii) Innovis Health contracted with Dakota Clinic for pharmaceutical management services. ¶¶ 25, 26. Further, on information belief, the temperature excursions occurred, in whole or in part, at one or more medication storage locations owned or maintained by Dakota Clinic. ¶ 27.

The Amended Complaint also added multiple plaintiffs, including parents on behalf of their children, who were informed or understand that their vaccines and chemotherapy medications were affected by the temperature excursions. ¶¶ 13-21. Plaintiffs allege economic losses and personal injuries, including pain and suffering. ¶¶ 6-9, 43, 45-46, 95, 107, 132.

### III.   ARGUMENT

#### A.  Legal Standard

Federal Rule of Civil Procedure 8(a) requires a pleading only to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Nevertheless, a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.

---

[3] Defendants have not yet identified the manufacturers of the Affected Medications.

662, 678 (2009). A complaint does not need detailed factual allegations, but it must contain more than labels and conclusions. *Bell Atl. Corp. v. Twombly*, 551 U.S. 544, 555 (2007).

The Court must accept all factual allegations in the complaint as true, except for legal conclusions or "formulaic recitation of the elements of a cause of action." *Iqbal,* 556 U.S. at 681. The determination of whether a complaint states a claim upon which relief can be granted is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. "[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Wilson v. Ark. Dep't Human Servs*., 850 F.3d 368, 371-72 (8th Cir. 2017). "The burden is on the moving party to prove that no legally cognizable claim for relief exists." Order, at 7.

**B. Plaintiffs have stated a plausible claim for breach of express warranty against Dakota Clinic.**

    **1. Dakota Clinic is a "seller" within the meaning of the U.C.C.**

Count I of the Amended Complaint asserts a claim for breach of express warranties against all Defendants, including Dakota Clinic. Specifically, Plaintiffs allege that Dakota Clinic "expressly represented and warranted to the purchasers of their products, by and through statements made by Defendants in labels, publications, package inserts, and other written materials intended for consumers and the general public, that the Affected Medications were effective, fit, and proper for their intended use." ¶ 84. Plaintiffs further allege that Dakota Clinic "placed Affected Medications into the stream of commerce for sale and recommended their use to consumers and the public without adequately warning of the fact that the Affected Medications were not safe, effective or fit for their intended use due to improper storage and handling." ¶ 88.

The North Dakota Uniform Commercial Code - Sales ("U.C.C.") provides that express warranties may be created by a seller. N.D. Cent. Code § 41-02-30(1). The U.C.C. defines a

3

"seller" as "a person who sells *or contracts to sell* goods." N.D. Cent. Code § 41-02-03(1)(d) (emphasis added). This definition applies "unless the context otherwise requires." *Id*.  The U.C.C. further provides: "The obligation of the seller is to transfer and deliver and that of the buyer is to accept and pay in accordance with the contract." N.D. Cent. Code § 41-02-18. As the distributor of the Affected Medications to Essentia, Dakota Clinic contracted to sell goods within the meaning of the U.C.C. ¶¶ 25, 26. *See* N.D. Cent. Code § 41-02-18 ("The obligation of the seller is to transfer and deliver . . . .").

Contrary to the allegations of the Amended Complaint, Dakota Clinic seeks to have this Court determine it is not a seller as a matter of law.  MTD, at ¶ 9. However, the U.C.C. expressly allows the interpretation of who constitutes a seller to be based on "context." N.D. Cent. Code § 41-02-03(1)(d). Given the allegations that Dakota Clinic distributed the Affected Medications to Essentia, discovery is likely to reflect one of two scenarios: (i) Dakota Clinic sold the Affected Medications to Essentia, which in turn sold the goods to Plaintiffs, or (ii) Dakota Clinic sold the Affected Medications to Plaintiffs through its agent Essentia. Where the facts are solely in the possession of the Defendants,[4] the motion to dismiss should be denied. Alternatively, Plaintiffs request leave to amend the complaint to reflect that Dakota Clinic distributed the Affected Medication to Essentia, and sold the Affected Medication to Essentia or to Plaintiffs through Essentia.

Defendant's reliance on *Hart Honey Co. v. Cudworth* is misplaced; the question there was

---

[4] However, the question of whether Dakota Clinic is a seller within the meaning of the U.C.C. is a question of fact. *See, e.g., Bill's Coal Co. v. Board of Public Utilities,* 887 F.2d 242, 245 (10th Cir. 1989) (finding that the question of how to characterize a seller under the U.C.C. is a question of fact). *See also Whitney v. Guys, Inc.*, 700 F.3d 1118, 1129 (8th Cir. 2012) ("The question . . . is not whether [plaintiff] might at some later stage be able to prove his [claim]; the question is whether he has adequately asserted facts (as contrasted with naked legal conclusions) to support his claims.").

4

whether a corporate officer corporation, rather than the corporation itself its corporate officer who individually owned and sold the subject equipment, could be held liable for the purchase price or interest when a buyer cancelled the contract. 446 N.W.2d 742, 744 (N.D. 1989). The court held that because the officer corporation was not a party to a contract for sale of equipment, it was not a "seller" under Section 41-02-03(1)(d). Moreover, the North Dakota Supreme Court subsequently acknowledge that "*Hart Honey* did not involve a manufacturer and a seller in the distribution chain for goods." *Fode v. Capital RV Ctr.*, 575 N.W.2d 682, 687 (N.D. 1998). It thus has no application here where Plaintiffs allege that Dakota Clinic was a contracting party squarely in the distribution chain for the Affected Medications. *See* ¶¶ 1, 25, 26.

Defendant's other cases on this point are also distinguishable.  Like *Hart Honey*, *Steele v. Ellis*, 961 F. Supp. 1458, 1466 (D. Kan. 1997), *Staco Energy Prod. Co. v. Driver-Harris Co.*, 578 F. Supp. 700, 703 (S.D. Ohio 1983), and *Oscar Mayer Corp. v. Mincing Trading Corp.*, 744 F. Supp. 79, 81-83 (D.N.J. 1990), involved breach of warranty claims against defendants who never had title to the goods at issue. *Watts v. Mercedes-Benz USA, LLC*, 254 S.W.3d 422, 425 (Tenn. Ct. App. 2007) involved whether privity of contract was required for purposes of revocation of acceptance under a separate U.C.C. provision. The court stated that although it was, and therefore the buyer could not seek rescission against the manufacturer, the buyer could seek money damages against the manufacturer for breach of warranty.  *Id.* at 426-27. Accordingly, Plaintiffs have plausibly alleged that Dakota Clinic is subject to the U.C.C.

### 2. Plaintiffs plausibly allege Dakota Clinic made express warranties.

Defendant additionally argues that Plaintiffs have not alleged "what express warranties were made by Dakota." MTD, at ¶ 14. "The question whether or not an express warranty is given is a question of fact for the jury." *Sci. Application, Inc. v. Delkamp*, 303 N.W.2d 71, 74 (N.D.

1981). Here, Plaintiffs allege (i) the Affected Medications were misbranded under applicable federal law (¶¶ 59-62); (ii) Defendant expressly warranted, though labels, publications, package inserts, and other written materials, that the Affected Medications were effective and proper for their intended use (¶¶ 84-85); and (iii) Defendant expressly warranted that the expiry dates on the Affected Medications were accurate and thus that the medications were safe and effective throughout the end of the expiry period. (¶¶ 89-90). Plaintiffs have adequately alleged Defendant's express warranties regarding the Affected Medications.

### C.  Plaintiffs have stated a plausible claim for breach of implied warranties.

Defendant Dakota Clinic argues, as it did above, that it cannot be liable for breaching any implied warranties under N.D. Cent. Code § 41-02-31 because it is not a "seller." It again ignores N.D. Cent. Code § 41-02-35, discussed in greater detail below, which states, "A seller's warranty, whether express *or implied*, extends to any person who may reasonably be expected to use, consume, or be affected by the goods . . . ."  (emphasis added). Thus, a distributor's implied warranties extend to all other persons—including Plaintiffs here—in the distributive chain who may reasonably be expected to use the goods. *See Lang v. Gen. Motors Corp.*, 136 N.W.2d 805, 810 (N.D. 1965) (manufacturer can be liable to ultimate buyer for breach of implied warranty even though it did not sell the goods directly to the buyer).

Defendant's cases are distinguishable. *Oscar Mayer Corp. v. Mincing Trading Corp.*, 744 F. Supp. 79, 81-83 (D.N.J. 1990), *Charles E. Beard, Inc. v. Cameronics Tech. Corp.*, 729 F. Supp. 528, 530 (E.D. Tex. 1989), and *Arceneaux v. Lykes Bros. S.S. Co.*, 890 S.W.2d 191, 196 (Tex. App. 1994) involved a broker, marketing consultant, and product designer, respectively, all of whom never had title to, possession or control of the goods at issue. In *Harmon v. Nat'l Auto. Parts Ass'n*, 720 F. Supp. 79, 82 (N.D. Miss. 1989), the court held that a company that merely endorsed a product, and that was neither a seller *nor a distributor*, could not be liable for breach of implied

6

warranty—suggesting that under appropriate circumstances a distributor *can* be liable along with a seller.

Pursuant to the foregoing authority, Defendant—who distributed the Affected Medications to Essentia Health—can be liable to Plaintiffs for breach of implied warranty under N.D. Cent. Code § 41-02-31 and N.D. Cent. Code § 41-02-35.

**D.  Privity is not required to state a claim for breach of express or implied warranty.**

The North Dakota Uniform Commercial Code does not limit breach of warranty claims only to those in privity with the seller. With respect to section 41-02-30 of the U.C.C., entitled "Express warranties by affirmation, promise, description, sample," Comment 2  explains:

> Although this section is limited in its scope and direct purpose to warranties made by the seller to the buyer as part of a contract for sale, the warranty sections of this Article are not designed in any way to disturb those lines of case law growth which have recognized that warranties need not be confined either to sales contracts or to the direct parties to such a contract.

N.D. Cent. Code § 41-02-30 cmt. 2. Moreover, the U.C.C. expressly recognizes the rights of "[t]hird-party beneficiaries of warranties express or implied," stating:

> A seller's warranty, whether express or implied, extends to any person who may reasonably be expected to use, consume, or be affected by the goods and who is injured by breach of the warranty. A seller may not exclude or limit the operation of this section with respect to injury to the person of an individual to whom the warranty extends.

N.D. Cent. Code § 41-02-35. This provision "appl[ies] regardless of privity." *Spieker v. Westgo, Inc.*, 479 N.W.2d 837, 847 (N.D. 1992); *see AgGrow Oils, L.L.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 276 F. Supp. 2d 999, 1014 (D.N.D. 2003), *aff'd*, 420 F.3d 751 (8th Cir. 2005) (N.D. Cent. Code § 41-02-35 "relax[es] the strict privity requirements for breach of warranty claims.").

Defendant cites *Falcon for Import & Trade Co. v. North Central Commodities, Inc.*, for

7

the proposition that "North Dakota recognizes the necessity of vertical privity" in an action for breach of express warranty. No. A2-01-138, 2004 U.S. Dist. LEXIS 1292, 2004 WL 224676, at *2 (D.N.D. Jan. 30, 2004). *See* MTD, at ¶ 12. First, *Falcon* recognized that the North Dakota Supreme Court rejected the notion that vertical privity is required for warranty actions seeking damages for personal injury. *Falcon for Import & Trade Co. v. N. Cent. Commodities, Inc.*, 2004 U.S. Dist. LEXIS 1292, *4 ("The Uniform Commercial Code (§ 2-318) relaxed the privity requirement allowing non-privity purchasers to recover personal injury damages on a claim for breach of warranty. *Spieker v. Westgo, Inc.*, 479 N.W.2d 837, 847-48 (N.D. 1992)."). Plaintiffs allege they sustained an economic loss *and other injuries*, ¶¶ 94-95, 107. For that reason alone, *Falcon* supports the denial of the motion to dismiss the express and implied warranty claims.

Moreover, the *Falcon* court acknowledged that: "In 1965, *Lang v. General Motors Corp.*, 136 N.W.2d 805, 810 (N.D. 1965), the North Dakota Supreme Court held that parties to an action based on implied warranty in products liability cases need not be in privity of contract." *Falcon for Import & Trade Co.*, 2004 U.S. Dist. LEXIS 1292, *5. Thus, *Falcon* provides a second basis on which to deny the motion to dismiss the implied warranty claims.

Finally, the *Falcon* court recognized that, in a breach of express warranty case involving economic losses only, vertical privity is not required if the plaintiffs are third party beneficiaries and consumers. *Id.* *7. As discussed *supra*, Plaintiffs are both consumers and qualify as third party beneficiaries because they were foreseeable users of the goods. For these reasons, the Court should deny Defendant Dakota Clinic's motion to dismiss Counts I and II of Plaintiffs' Amended Complaint.

**E.  Rule 9(b) is satisfied for Plaintiffs' consumer protection act claims.**

**1.  Rule 9(b) is satisfied where Plaintiffs' allegations plausibly demonstrate Dakota Clinic omitted material facts.**

Plaintiffs allege Dakota Clinic violated the Minnesota Consumer Fraud Act ("MCFA"), Minn. Stat. §§ 325F.68, *et seq.*, and North Dakota Consumer Protection Law ("NDCPL"), N.D. Cent. Code §§ 51-15-01, *et seq.*  Repeating an already-rejected argument, *see* Order, at 14, Dakota Clinic complains that Plaintiffs fail to satisfy Rule 9(b).

However, where a complaint alleges the defendant concealed or omitted material information, Rule 9(b) standards are more lenient. *See Belville v. Ford Motor Co.*, 60 F. Supp. 3d 690, 697 (S.D. W. Va. 2014); *Allstate Indem. Co. v. Dixon*, 304 F.R.D. 580, 584 (W.D. Mo. 2015); *Lewey v. Vi-Jon, Inc.*, No. 4:11CV1341 JAR, 2012 U.S. Dist. LEXIS 71237, 2012 WL 1859031, at *3 (E.D. Mo. May 22, 2012) (holding that Plaintiff's omission allegations were sufficient under Rule 9(b) because "the Court will not require [Plaintiff] to plead with the particularity."). "When the facts constituting the fraud are peculiarly within the opposing party's knowledge, however, such allegations may be pleaded on information and belief." *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009).

Thus, in denying Essentia's motion to dismiss on this same argument, this Court explained:

> The Court has reviewed the Complaint comprising more than 100 detailed paragraphs and concludes Plaintiffs have adequately stated claims under both North Dakota and Minnesota consumer protection and deceptive trade practices laws. Plaintiffs allege they and their children received influenza and other childhood vaccinations that were subject to temperature excursions. Several of those Affected Medications were specifically identified, including influenza vaccinations, DTaP, and Hep A. Doc. No. 1, ¶ 13. Others were identified upon information and belief, including Hep B, IPV, Rotavirus, and Pneumococcal. Id. ¶ 12. The Complaint states that some of these vaccinations were obtained at the Essentia Clinic on South University Drive in Fargo, North Dakota. Id. The vaccinations were received by the Krafts on January 31, 2017, and by the

9

> Schneiders on specified dates from October 2017 to October 2019. Id. ¶¶ 12-13. They allege they were not informed the Affected Medications were tainted by improper temperature handling. Id. ¶¶ 53-55. Plaintiffs allege this was unfair and deceptive because Essentia represented that the goods (vaccines) had characteristics, uses, benefits, or qualities that they did not have, and the Affected Medications were represented to be of a particular standard, quality, and grade when they were not. Id. ¶ 100. Plaintiffs further allege that Defendants had actual knowledge of the defective condition of the Affected Medications and intentionally concealed that information from them. Id. ¶ 109. Based on these allegations, the Court is satisfied Plaintiffs have identified the who, what, where, when, and how of the alleged deceptive acts with sufficient particularity to satisfy Rule 9(b).

Order, at 14-15. The Court's analysis is equally applicable here. Plaintiffs have placed Dakota

Clinic on notice of the particularities of the omissions that are known to Plaintiffs:

> *Who:* Dakota Clinic, who contracted with Essentia Health;; Innovis Health; and John Does (¶¶ 22-28);
>
> *Where:* in Minnesota and North Dakota, including at Essentia's South University Clinic, 52nd Avenue Clinic, and West Fargo Clinic, and, on information and belief, at one or more medication storage locations owned or maintained by Dakota Clinic (¶¶ 13-21, 27);
>
> *When:* when vaccines and medications were administered, including on January 31, 2017 (¶ 13); October 26, November 27, 2017 (¶ 14); February 16, May 25, August 24, October 26, 2018 (¶ 14); October 12, 2019 (¶ 14); April 2018 (¶ 15); February 2018 (¶ 16); between December 3, 2018 and April 1, 2019 (¶ 17); in or about Fall 2019 (¶ 17); October 1, December 3, 2018 and October 21, 2019 (¶ 18); October 4, December 5, 2016 (¶ 19); February 9, August 8, November 6, November 20, December 6, 2017 (¶ 19); in November 2017 (¶ 20); November 12 and December 17, 2018 (¶ 21); January 26, March 28, May 30, July 25, 2018 (¶ 21); February 18, 2019 (¶ 21).
>
> *What:* failure to notify of the temperature excursion, the fact that the vaccines' potency or efficacy was affected, and the fact that CDC, Minnesota Department of Health, and North Dakota Department of Health recommend that any vaccine subject to a temperature excursion not be used or administered to a patient  (¶¶ 29-35); and
>
> *How:* Plaintiffs paid for their visits, and the vaccines, in reliance on

Dakota Clinic's failure to disclose these material facts (¶ 103).

Moreover, this Court recognized "Plaintiffs' predicament," where "information [is] peculiarly under the control of Defendants and not available to Plaintiffs except through the course of discovery." Order, at 15. *Cf. Belville*, 60 F. Supp. 3d at 697 (". . . a plaintiff cannot be required to specifically identify the precise time, place, and content of an event that did not occur.") The nature of this case is premised on omissions that occurred throughout all phases of the distribution chain among defendants who contracted with one another to provide the Affected Medications to the Plaintiffs. Given this context, leniency is warranted.

Plaintiffs' allegations sufficiently put Dakota Clinic on notice of its participation in the fraud, including of the shared responsibilities Dakota Clinic owed Plaintiffs, *see* ¶¶ 1, 31, 118; the roles that Dakota Clinic played in the supply chain of responsible parties, ¶ 3, 36, 44; its contractual relationship with co-defendant Essentia, ¶ 26; its business relationship with co-defendant Essentia, ¶ 25; omissions Dakota Clinic made, resulting in temperature excursions at Dakota Clinic facilities, ¶¶ 27, 36, 37; obligations that Dakota Clinic owed Plaintiffs, ¶ 54; and Dakota Clinic's breaches of those obligations, ¶ 55. Thus, this Court should deny the motion to dismiss under Rule 9(b).

### 2. Defendant Dakota Clinic is a "person" regulated by the MCFA and NDCPL.

Defendant's argument that it cannot be held liable under the MCFA or NDCPL because it is not a "seller" is spurious. The NDCPL and MCFA prohibit deceptive or fraudulent acts "in connection with the sale" of merchandise. N.D. Cent. Code § 51-15; Minn. Stat. § 325F.69.

As the North Dakota Supreme Court stated:

> the clear and unambiguous language of N.D. Cent. Code § 51-15-09, does not preclude an action by 'any person *against any person* who has acquired any moneys or property by means of any practice declared to be unlawful' under N.D. Cent. Code § 51-15-02. The broad definition of "person" includes "any natural person" or other business entity, see N.D. Cent. Code § 51-15-01(4)….

11

*Jorgenson v. Agway, Inc.*, 627 N.W.2d 391, 394 (N.D. 2001) (emphasis supplied). Far broader than "seller," the act defines person as "any natural person or the person's legal representative, partnership, corporation, limited liability company, company, trust, business entity, or association, and any agent, employee, salesman, partner, officer, director, member, stockholder, associate, trustee, or cestui que trust thereof." N.D. Cent. Code § 51-15-01.[5]

The cases cited by Defendant are inapposite. *Benz Farm, LLP v. Cavendish Farms, Inc.*, 803 N.W.2d 818 (N.D. 2011), considered whether the law applied to deceptive and fraudulent conduct of *purchasers* of merchandise. *State v. Minnesota School of Business, Inc.*, 935 N.W.2d 124, 136 (Minn. 2019), concerned whether proof of individual reliance is needed to prevail under the MCFA. Neither situation is at issue here. Accordingly, this Court should find that Defendant is a person within the meaning of the statutes.

### F. Plaintiffs have stated plausible claims for unjust enrichment against Dakota Clinic.

Under North Dakota law, unjust enrichment requires a plaintiff to show "(1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) absence of a justification for the enrichment and impoverishment; and (5) an absence of a remedy provided by law." *Thimjon Farms Partnership v. First Int'l Bank & Trust*, 837 N.W.2d 327, 336 (N.D. 2013). Courts have widely recognized that unjust enrichment is a "broad, equitable doctrine." *Bakken Residential, LLC v. Cahoon Enters., LLC*, 154 F. Supp. 3d 812, 838 (D.N.D. 2015); *see also Hughes v. Wheeler*, 364 F.3d 920, 924 (8th Cir. 2004) ("Rather than looking solely

---

[5] Similarly, the MCFA prohibits "the act, use, or employment by *any person* of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is enjoinable as provided in section 325F.70." Minn. Stat. § 325F.69. The MCFA defines "person" consistent with the NDCPL. *See* Minn. Stat. § 325F.68. Like in North Dakota, the definition is not limited to seller.

12

to the intentions of the parties, [unjust enrichment] applies objective standards of fairness to insure that people do not profit from their own wrongs.").

Plaintiffs allege that they conferred a benefit on Dakota Clinic—as a contracting party and in the chain of distribution with Innovis Health—in the form of payment for the Affected Medications without receiving the benefit of the bargain. ¶¶ 6, 139. Plaintiffs additionally allege that it would be inequitable, unconscionable, and unjust to allow Dakota Clinic to retain the benefits provided to it under the circumstances. ¶ 141. Further, Plaintiffs allege that Dakota Clinic appreciated, recognized, and chose to accept the monetary benefits Plaintiffs conferred onto Dakota Clinic. ¶ 140.

Contrary to Defendant's argument however, the money paid by Plaintiffs need not have been paid directly to Dakota Clinic. *Sergeants Benevolent Ass'n Health & Welfare Fund v. Actavis, PLC*, 2018 U.S. Dist. LEXIS 220574, *174-75 (S.D.N.Y. Dec. 26, 2018) (denying motion to dismiss claim for unjust enrichment under North Dakota law, stating: "North Dakota courts have upheld unjust enrichment claims even where no direct benefit was alleged. *See, e.g., Opp v. Matzke*, 1997 ND 32, 559 N.W.2d 837, 840 (N.D. 1997) (well driller had stated claim for unjust enrichment against landowner even though she had not asked him to drill the well and did not reside on the property; since defendant 'provide[d] her family a place to live on the property,' she benefitted from the well)."). Rather, there just must be "a connection between the enrichment and the impoverishment." *Matzke*, 1997 ND 32 at ¶ 8, 559 N.W.2d at 839-40.

Even if the money need to have been paid directly, the question of whether Plaintiffs paid Essentia as Dakota Clinic's agent is a question of fact. *Colby Ctr. v. Conagra Foods, Inc.*, 2015 U.S. Dist. LEXIS 89711, *16, 2015 WL 4106473 (W.D. Ark. 2015) ("The issue of unjust enrichment is a question of fact."). Plaintiffs have "pleaded sufficient facts to state a facially

13

plausible claim" for unjust enrichment where they "would not ordinarily have access to the information about which party [received payment in a case involving multiple contracted parties] without discovery into the financial information from [defendants and other contracted parties]." *Superior Homes, LLC v. Comardelle*, 2013 U.S. Dist. LEXIS 165578, at \*16 (D.S.D. Nov. 21, 2013) (denying defendant's motion to dismiss unjust enrichment claim). Until further discovery of the terms of the contract between Innovis and Dakota Clinic as well as the flow of money paid, this Court should deny the motion to dismiss. *See* Essentia Health's Answer to Compl. ¶¶ 14-15 ("Innovis Health, LLC contracted with Dakota Clinic, LLC for pharmaceutical management services."). For these reasons, Defendant's Motion to Dismiss as to Count IV of Plaintiffs' Amended Complaint should be denied.

## IV.   CONCLUSION

WHEREFORE, Plaintiffs respectfully request that this Court deny Defendant Dakota Clinic's motion to dismiss, and grant such other and further relief as this Court deems appropriate.

14

Dated: March 10, 2021

JESSICA KRAFT, INDIVIDUALLY AND AS PARENT OF MINORS L.K., S.K., and O.K.; SHELLI SCHNEIDER, INDIVIDUALLY AND AS PARENT OF MINORS A.S and W.S.; ANNE BAILEY, AS PARENT OF MINOR D.B.; AMY LAVELLE, AS PARENT OF MINORS Em.L. and El.L; ELIZABETH BEATON, INDIVIDUALLY AND AS PARENT OF MINOR M.B.; AMANDA AND TYRELL FAUSKE, INDIVIDUALLY AND AS PARENTS OF MINORS C.R.F  and C.J.F.; JENNIFER REIN, INDIVIDUALLY; and JESSICA BERG, AS PARENT OF MINORS A.B. and S.B., individually and on behalf of all others similarly situated,

By: /s/ Elizabeth A. Fegan
Elizabeth A. Fegan
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
Ph: 312.741.1019
Fax: 312.264.0100
beth@feganscott.com

Brooke A. Achua
FEGAN SCOTT LLC
140 Broadway, 46th Fl.
New York, NY 10005
Ph: 646.502.7910
Fax: 312.264.0100
brooke@feganscott.com

Mac Schneider
SCHNEIDER LAW FIRM
815 3rd Ave. S.
Fargo, ND 58103
Ph: 701-235-4481
Fax: 701-235-1107
mac@schneiderlawfirm.com

J. Barton Goplerud
Brian Marty
SHINDLER, ANDERSON, GOPLERUD & WEESE, PC

15

5015 Grand Ridge Drive, Suite 100
West Des Moines, Iowa 50265
Ph: (515) 223-4567
Fax: (515) 223-8887
goplerud@sagwlaw.com

*Counsel for Plaintiffs*

16

**CERTIFICATE OF SERVICE**

I hereby certify that on March 10, 2021, I electronically filed the foregoing using the Court's electronic filing system, which will notify all counsel of record authorized to receive such filings.

By: /s/ Elizabeth A. Fegan
Elizabeth A. Fegan
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
Ph: 312.741.1019
Fax: 312.264.0100
beth@feganscott.com