**Angie E. Lord**

Direct Dial: 701.356.6321  |  alord@vogellaw.com

May 17, 2021

**VIA EMAIL ONLY**
ndd_j-senechal@ndd.uscourts.gov

Magistrate Judge Alice R. Senechal
655 1st Avenue North, Suite 440
Fargo, North Dakota 58102-4952

**Re:    Jessica Kraft et al. v. Essentia Health, et al.  Case No. 3:20-cv-121**

Dear Magistrate Judge Senechal:

Defendant Essentia Health ("Essentia") provides this position statement pursuant to the Court's direction on May 12, 2021, and in advance of the status conference on May 19, 2021.

**Medical Authorizations**

Essentia objected to producing confidential, patient-specific documents or information in response to Plaintiffs' discovery requests in the absence of executed patient authorizations by the named Plaintiffs. By letter dated April 16, 20201, Plaintiffs' counsel challenged the medical privilege objections, asserting that confidential patient information can be produced without patient authorization for the named Plaintiffs, their clients.  Essentia disagrees.  Despite Essentia's agreement to a temporal limitation to medical authorizations, beginning with the timeframe alleged in Plaintiffs' Amended Complaint through the present, Plaintiffs have refused to provide any medical authorizations to date.

In diversity actions in which state law supplies the rule of decision, such as this one, HIPAA and its implementing regulations do not preempt a state's more stringent medical privilege.  *See* FED. R. EVID. 501; *Northwestern Mem'l Hosp. v. Ashcroft,* 362 F.3d 923, 924-25 (7th Cir. 2004); *Bharadwaj v. Mid Dakota Clinic, P.C.*, No. 1:16-CV-262, 2017 WL 11591196, at *2 (D.N.D. Mar. 9, 2017).  Courts recognize the expectation of confidentiality in the context of the physician-patient relationship, which extends the privilege against disclosure to hospital and other medical records.  *State ex rel. Workforce Safety, & Ins. v. Altru Health Sys.,* 2007 ND 38, ¶ 18, 729 N.W.2d 113; N.D. CENT. CODE § 43-17-31(13); Minn. Stat. § 144.292, subd 2.  Healthcare providers have a significant interest, and in fact an obligation, to maintain the confidentiality of patient records.

Even in the absence of state privilege, Essentia would be required by HIPAA and its implementing regulations to first obtain patient authorization prior to the disclosure of medical records and data.  *See* 45 C.F.R. § 164.508.  Plaintiffs suggest Essentia is free to disclose protected health information ("PHI") in the absence of medical authorizations under the exception for "healthcare operations," defined to include "[c]onducting or arranging for…legal services."  45 C.F.R. § 164.501.  Plaintiffs suggest this provision permits the disclosure of PHI in the context of litigation absent patient authorization. However, it is plain that this particular provision simply permits a covered entity to share PHI with its counsel as part of the facility's healthcare operations.  Plaintiffs' counsel also cite to their efforts in obtaining a qualified protective order in these proceedings as permitting confidential information of their clients to be produced.  Again, Essentia disagrees, as previously articulated to the Court and counsel.



Magistrate Judge Alice R. Senechal
May 17, 2021
Page 2

North Dakota law is clear. "Appropriate authorizations permitting access to the written medical record…must be provided by the party commencing the action at the time the action is commenced." N.D. CENT. CODE § 28-01-46.1. This is so because "[a] party who commences an action for malpractice, error, mistake, or failure to cure, whether based on contract or tort, against a health care provider…or a health care facility…waives in that action any privilege…as to any medical records, opinions, or other information in the possession of any other health care provider." *Id.*

It should be noted that in March 2021, Essentia produced extensive de-identified data in response to discovery. Although Plaintiffs suggest that Essentia has only produced 27 documents, this contention unfairly minimizes Essentia's production when Essentia has produced over 2,700 pages of documents/data in response to Plaintiffs' discovery requests, including a substantial amount of de-identified data regarding vaccinations, medications, and financial information. Essentia will produce confidential, patient-specific information for the named Plaintiffs upon receipt of medical authorizations, which have not yet been forthcoming.

**Other Discovery Issues**

Plaintiffs also challenged the status of ESI discovery. As noted at the meet and confer on April 27, 2021, it was confirmed with Plaintiffs' counsel that Essentia was working on the appropriate search methodology. Last week, proposed search terms were provided to Plaintiffs' counsel for consideration. Essentia fully anticipates that once the parties have agreed on search methodologies, including the use of keyword search terms, that additional documents may be identified as responsive and produced or withheld subject to objection or privilege. The ESI process itself is extensive, and Essentia will continue to work with Plaintiffs with the process. The parties have recognized that proportionality and avoidance of duplicative efforts are valid considerations.

Plaintiffs also challenged some of Essentia's objections. Plaintiffs made clear that the primary concern with Essentia's objections was whether documents were being withheld pursuant to assertions of privilege. Through the meet and confer process, Essentia agreed to clarify which Requests for Production of Documents it withheld specific documents and data after production of the privilege log. In addition, Essentia's assertions of privilege and other objections extend to the future as discovery is continuing, particularly with discovery of ESI.

**Application of Peer Review Privilege**

Plaintiffs alleged that Essentia's Privilege Log is deficient. Essentia has supplemented the Privilege Log to provide additional detail for select documents for which additional detail can be provided. However, additional detail cannot be provided for documents subject to the peer review/quality assurance privilege.

"[S]tate law is to govern privilege" where, as here, state law supplies the rule of decision. *Bharadwaj v. Mid Dakota Clinic, P.C.*, No. 1:16-CV-262, 2017 WL 11591196, at *3 (D.N.D. Mar. 9, 2017); FED. R. EVID. 501. Chapter 23-24 of the North Dakota Century Code "establishes a privilege for documents that meet the definition of 'peer review records,' and provides that those records are not subject to subpoena, civil discovery, or introduction into evidence." *Guttormson v. ManorCare of Minot ND, LLC*, No. 4:14-CV-36, 2015 WL 11147876, at *2 (D.N.D. Sept. 28, 2015); *see also* N.D. CENT. CODE § 23-34-01(1)

Magistrate Judge Alice R. Senechal
May 17, 2021
Page 3

("Peer review records are privileged and are not subject to subpoena or discovery or introduction into evidence in any civil or administrative action."). "Peer review records are confidential and may be used by a peer review organization and the organization members only for conducting a professional peer review." N.D. CENT. CODE § 23-34-02(1).

The protection afforded by the peer review/quality assurance statutes in North Dakota extends to "[d]ata, information, reports, documents, findings, compilations and summaries, testimony, and any other records generated by, acquired by, or given to a peer review organization as part of any professional peer review, regardless of when the record was created." N.D. CENT. CODE § 23-24-01(4)(a)(1). The peer review privilege also extends to "[c]ommunications relating to a professional peer review, whether written or oral, between…peer review organization members and other individuals participating in a professional peer review." N.D. CENT. CODE § 23-34-01(4)(a)(2). In turn, "professional peer review" is broadly defined to include "all procedures of a peer review organization or functions it performs to monitor, evaluate, and take action to review the medical care provided to patients by health care organizations or health care providers." N.D. CENT. CODE § 23-34-01(5). Minnesota law similarly provides protection from disclosure for peer review records. *See* Minn. Stat. § 145.64. In fact, the unauthorized disclosure of peer review records is a misdemeanor. Minn. Stat. § 145.66.

Rule 26(b)(5)(A)(ii) provides a party claiming an applicable privilege must "describe the nature of the documents, communications, or tangible things not produced or disclosed, and do so in a matter that, without revealing information itself privileged or protected, will enable other parties to assess the claim." FED. R. CIV. P. 26(b)(5)(A)(ii) (emphasis added). Requiring any greater specificity than Essentia already provided is inconsistent with the peer review/quality assurance statutes and would itself reveal information protected from disclosure by the peer review/quality assurance privilege, information with is both confidential and not subject to discovery under applicable law.

"The rule does not attempt to define for each case what information must be provided when a party asserts a claim of privilege." FED. R. CIV. P. 26(b)(5)(A)(ii) Advisory Committee's Note to 1993 Amendment. In addition, under certain circumstances "some of the pertinent information affecting applicability of the claim…may itself be privileged; the rule provides that such information need not be disclosed." *Id.*

Thank you for your consideration.

Very truly yours,

*s/ Angie E. Lord*

Angie E. Lord

4419933.2