UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

Jessica Kraft, individually )
and as parent to minors )
L.K., S.K., and O.K.; Shelli )
Schneider, individually and )
as parent of minors A.S. and )
W.S.; Anne Bailey, as parent )
of minor D.B.; Amy Lavelle, )
individually and as parent )
of minors Em.L. and El.L; )
Elizabeth Beaton, Amanda )
Fauske, individually and as )
parent of minors C.R.F. and )
C.J.F.; Tyler Fauske, )
individually and as parent )
of minors C.R.F. and C.J.F.; )
Jennifer Rein, individually; )
Jessica Berg, individually )
and as parent of minors A.B. )
and S.B., individually and )
on behalf of all other )
similarly situated, )
)
)
        Plaintiffs, )
)
      vs. )   File No. 3:20-cv-121
)
Essentia Health, Innovis )
Health, LLC d/b/a Essentia )
Health, Dakota Clinic )
Pharmacy, LLC, John Doe )
Manufacturers, and John Doe )
Distributor, )
)
        Defendants. )


TRANSCRIPT OF TELEPHONIC STATUS CONFERENCE

Taken at
United States Courthouse
Fargo, North Dakota
May 19, 2021
BEFORE THE HONORABLE MAGISTRATE ALICE SENECHAL
-- UNITED STATES DISTRICT COURT JUDGE --

APPEARANCES (by phone)


Ms. Melissa Clark
Ms. Brooke Achua
Fegan Scott LLC
140 Broadway
New York, New York   10005

Mr. J. Barton Goplerud
Hudson Mallaney, Schindler & Anderson
5015 Grand Ridge Drive
Suite 100
West Des Moines, Iowa   50265

                                        FOR THE PLAINTIFFS

              - - - - - - - - - -

Ms. Angela Lord
Mr. Robert Stock
Vogel Law Firm
218 NP Avenue
Fargo, North Dakota   58107-1389



                                        FOR THE DEFENDANTS



              - - - - - - - - - -

Certificate of Court Reporter - Page 34




Ronda L. Colby, RPR, CRR, RMR
U.S. District Court Reporter
220 East Rosser Avenue
Bismarck, ND   58501
701-530-2309
Proceedings recorded by digital recording, transcript produced
by computer-aided transcription.

(The above-entitled matter came before the Court, The Honorable Alice Senechal, United States District Court Magistrate Judge, presiding, commencing at 3:30 p.m., Wednesday, May 19, 2021, in the United States Courthouse, Fargo, North Dakota.  The following proceedings were had and made of record in chambers.)

---------------

THE COURT:  Hello.  This is Judge Senechal.  You are on a speaker phone in my chambers.  Lisa Clark from our clerk's office is here; and law clerk Amy Strankowski is also here.

We are recording this conference today.  Today is May 19, 2021.  It is 3:30 p.m.  Case number is 3:20-cv-121.

Let's find out who is on the line.  Who's on for the plaintiffs this afternoon, please?

MS. CLARK:  Good afternoon, Your Honor.  Melissa Clark with Fegan Scott here on behalf of plaintiff, and also from my firm on the line is Brooke Achua.

THE COURT:  Thank you.

MR. SCHNEIDER:  Your Honor, Mac Schneider on behalf of plaintiffs as well.

THE COURT:  Thank you.

MR. GOPLERUD:  Bart Goplerud in West Des Moines, Your Honor, on behalf of plaintiffs.

THE COURT:  All right.  Anyone else on behalf of plaintiffs?

And who is representing the defendants this afternoon, please?

MS. LORD:  Hello, Your Honor.  This is Angie Lord.

THE COURT:  Thank you.  Anyone else?

MR. STOCK:  Good afternoon, Your Honor.  Yes, Your Honor.  Rob Stock as well.

THE COURT:  Okay.  Anyone else?  Thank you.

MS. CLARK:  That is all for Essentia and Innovis, Your Honor.

THE COURT:  Okay.  I've reviewed the letters that both sides sent, both are dated May 17th.  I've identified several different issues that are raised in those letters, and I'd like to go through them one by one I think.

But, to summarize, I identified issues involving medical authorizations, ESI search terms, defendants' objections to some of the written discovery, adequacy of defendants' privilege log, and some question as to application of peer review privilege.  And if there are other issues that you folks want to talk about, we can deal with those as well.

But let's begin with talking about the dispute over providing medical authorizations.  I know this is something that came up initially; and I think I kicked the can down the road, and here we are today dealing with it again.

You know, my goal, in these conferences, is to try to come up with some resolution that is mutually acceptable, at

least for a short term.  Quite frankly, I do not, at this point, envision any compromise on this medical authorization issue.  But I certainly am wanting to hear from any compromise either side might propose.  If it can't be compromised, then I think it's just going to need to proceed to a written order. And if that's the route we take, the next question is whether you want to do any briefing in addition to the letters that have been submitted.

So who would like to speak for the plaintiffs on questions about medical authorizations?

MS. CLARK:  Good afternoon, Your Honor.  This is Melissa Clark.  I unfortunately think you're right that we are not likely to reach a compromise on this because it's been an issue that we've been kicking back and forth for several months now.

We think that HIPAA is quite clear, as are the state laws that Essentia has pointed to that Essentia can produce the documents that we sought without medical authorizations.  And, you know, separate and aside from that, that the medical authorizations are not only totally unnecessary; even if they were necessary in this case, they are just overbroad and invasive.

We're happy to provide supplemental briefing, there's certainly more case law on this.  I think that this is a rare instance where the statute -- the rule really speaks for

itself.  It's as clear as can be, in plaintiffs' view, but if it would assist the Court, we're happy to do a few more pages on that and bring in some other case law addressing HIPAA and addressing the authority that Essentia has cited in this letter.

THE COURT:  Thank you.

Ms. Lord.

MS. LORD:  Thank you, Your Honor.

There are a few issues on this that I want to make sure that we differentiate.  One is with respect to putative class members.  And if one were to read just the position statements that were provided to the Court, one who hasn't lived it might not realize that there has been a lot of discovery that has been produced and provided with respect to the putative class members.  There was over 2,700 pages of documents produced, including de-identified data for putative class members.

When I was looking back and getting ready for the conference today, there was de-identified data for the fluid vaccines, for the medication, for the CAM medications, including spreadsheets that had over 118,000 rows of data for 54,000 patients.  We've provided manufacturer, generic brand and manufacturer names for vaccinations and medications. There's been a plethora of de-identified data with respect to location and also dates, again, de-identified under the

de-identification provision with HIPAA.  And there's also been a plethora of financial de-identified data provided, not only charges but amounts paid and also amounts paid by third-party payers.  Again, all de-identified, but provided nonetheless, in pursuant to the de-identification provisions under HIPAA.  And so with respect to putative class members, there's been a wealth of information already produced.

Our position would be that the de-identified data that's been produced would be sufficient to allow the parties to address class certification, and at the outset there were some questions about how much would be enough and what would be sufficient.

I want the Court to be aware that this issue on medical authorizations was addressing the named plaintiffs in that the named plaintiffs have not provided medical authorizations for disclosure of their medical information.  To the extent that the putative class discovery has gone forward, like I said, there's been a wealth of de-identified information produced under the de-identified -- de-identification provisions under HIPAA.  So I think there's -- it should be separated in that regard.

With respect to the medical authorizations for the named plaintiffs, it's unclear, to me still, why the named plaintiffs would not produce an authorization for disclosure and discovery of their own information.  And even if that's

negotiating what information, or dates -- you know, we were agreeable to restricting the timeframe involved, we were open to other suggestions on limitations. Yet what we hear is an "all or nothing," and that being "nothing" that they had not be provided.

The named plaintiffs are my clients' patients. There's a -- there's an interest in protecting patient confidentiality, including for the named plaintiffs, and so the requests for medical authorizations is expected, typically, by patients and providers. And so this is a really unusual situation or circumstance, in my experience, where the named plaintiffs are not willing to provide an authorization in any form.

And I do agree that additional briefing might be helpful to the Court on this issue, and that it would be ripe for consideration.

THE COURT: All right. Let's talk about a briefing schedule. Give me just a minute. I think, given the current posture of the dispute, I would look to the defendants to do the first brief.

Could that be filed by June 1st, Ms. Lord?

MS. LORD: By June 1st?

THE COURT: Yes.

MS. LORD: Yes.

THE COURT: And, Ms. Clark, I'd like to shorten up

the response time.  Could you respond by June 8?

MS. CLARK:  Yes, Your Honor.

THE COURT:  Okay.  And I will assume that a reply brief won't be necessary.  If I think that it might be helpful after getting the two briefs, I will deal with that then.  So we will approach the authorizations question with a written order, which will come out sometime after June 8th.

You know, I try to deal with discovery matters by giving them priority, but we've had so many recent discovery disputes that I just can't give them all priority at the same time.  But I'll do my best to get something out as soon as possible after June 8th.

MS. LORD:  Thank you, Your Honor.

THE COURT:  Certainly.

Turning then to plaintiffs' letter.  Let's talk next about the search term issues, though I think Ms. Clark's letter said that the parties had not yet conferred about the details of search terms.  But go ahead, Ms. Clark, and tell me what you want to say about the search term issues that you're dealing with currently.

MS. CLARK:  Thank you, Your Honor.

As our letter notes, we just received these search terms on the 14th.  The parties haven't met and conferred.  And I have, you know, every intention to confer with defense counsel, as we have been throughout this litigation, on

good-faith issues and reasonable areas of dispute.  But the search term list is just spatially deficient and it's, frankly, unlike any I've ever seen before -- and I can say the same for the privilege log -- to where it just throws out the procedure that we anticipated in negotiating and speaking order of the ESI order, which is that defendants who know their own documents, they know the terms used at the entity and by its employees, crafted initial is the search term, and the plaintiffs can then suggest some modifications and additions. And instead we got a very bare bones list, which either was given very little care or was made in bad faith or both.

But I don't think that there's anything to meet and confer about at this point.  I think that Essentia needs to revisit this and come up with a good-faith list at which point we can have a real discussion about any modifications necessary and raise any disputes to the Court, and Essentia can move forward with any agreed-upon terms so that discovery can get moving.

I don't want to take the Court's time rehashing the letter, but as noted these are so narrow it wouldn't even pick up Essentia's own public disclosure.  It used hyper technical terms that people wouldn't use in plain language and in emails and that it didn't use to communicate to the public.  And this is four months after discovery was served and more months, you know, of discussion of what a search protocol would look like.

So this is obviously not reassuring to us about the pace of discovery, given how little that we've received so far.  And we would like Essentia to take another stab at it, and the Court to encourage Essentia to really think critically about what search terms should be and come up with something more fulsome than what they've given us so far.

THE COURT:  How about if we talk about a deadline by which counsel would confer on the search term issue.  Ms. Lord, would that be acceptable?

MS. LORD:  Yes, Your Honor.  Mr. Stock was going to address the ESI protocol today.

THE COURT:  Sure.

MR. STOCK:  Yeah.  Yes, Your Honor.  Sorry.  This is Mr. Stock.

And, yes, certainly a deadline to confer on those issues is definitely acceptable, but I think a couple comments need to be made first.

And I couldn't disagree more and, frankly, I don't appreciate plaintiffs' counsel throwing around her unilateral view of what's in good faith and bad faith.

I think defendants at all times have complied with the discovery or the order, the Court's order, regarding discovery, electronically stored information and, frankly, have done a lot of work in the background, including providing the required ESI disclosures within 30 days of the entry of the

order.  So that occurred on March 31st, at which time we provided a list of 22 custodians, including current and former employees likely to have relevant information, their job titles, their dates of employment, and extent that it wasn't apparent in their job titles, a description of their responsibilities.

We also provided a written description of any system and custodial location that was likely to house potentially relevant data.  We've provided written description -- well, in fact, we provided copies of our operative document retention policies, and we have provided a written description of the steps that we have taken to preserve likely relevant ESI, all in compliance with the Court's order.

And I think it's also important to know that we have -- we're obligated to, and interviewed all of those custodians, so almost two dozen custodians, to identify potentially responsive or relevant documents and identify potential locations where responsive documents are likely to reside.  And all of those things and -- had to be done before any search methodologies were decided on.  And we've also asked the parties or -- excuse me -- our custodians to specifically identify, in responsive documents, of which they may be aware and will produce any such relevant and responsive non-privileged documents regardless of whether those documents contain any of the search terms.

And with respect to the search methodology itself, Your Honor, and first to even know whether we could do a key word search term or whether that was a proper methodology, we first had to know kind of -- not kind of -- we needed to know the scope of what would be searched.  And that took a number of weeks because, frankly, there was a hiccup in what we were getting back as far as potential sizes of email boxes that would be imaged.  We were able to resolve that issue and then as soon as we were able to resolve that issue, I immediately sent those search terms and the recommended search terms, keyword search terms for that methodology to plaintiffs' counsel.

And the purpose of those search terms, Your Honor, has to be made with the goal of limiting the scope of review for production, minimizing the need for motion practice and facilitating production in accordance with the deadlines set by the Court.  And that's exactly what they were.  In no shape/ form whatsoever did we craft those search terms in bad faith or in an attempt to not recover documents.  And, frankly, it's the opposite.  We want to recover responsive documents.  I would never do it otherwise.  So that's why there's a process in place, Your Honor.

If plaintiffs' counsel disagrees, which clearly they do, then we'll go through the proposed search term protocols just like it's laid out in the ESI order presented by the

Court.  So the issue isn't ripe but, frankly, I thought there needed to be some clarification given the plaintiffs' allegations that she just made and made in the letter.

So whatever the Court would like to set for a deadline -- maybe by the end of next week, if that would be acceptable -- for the counsel to meet and confer, certainly I'll comply with whatever the Court orders.

THE COURT:  How about if we look at one week from today, which would be the 26th of May?  That work for you, Mr. Stock?

MR. STOCK:  Yes, Your Honor.

THE COURT:  Ms. Clark?

MS. CLARK:  Yes, Your Honor.

THE COURT:  Okay.  So I will suggest that at the end of this conference the two of you can stay on the line and find a time that works for you to have some discussion sometime between today and the 26th.

Then plaintiffs' letter raised some questions as to the adequacy of privilege logs and plaintiffs mentioned that a minute ago as well.  So, Ms. Clark, why don't you talk about that next.

MS. CLARK:  Thank you, Your Honor.

We've attached the privilege log that we've received so far to the letter, and they just don't have the detail that's required for us to assess the application of privilege.

In response, Essentia has talked a lot about the application of the peer review privilege. That may be true. There may be documents that are responsive that are protected by a peer review privilege. It's not possible, for me looking at this log, to tell you what those would be because we don't have dates, senders, recipients, subject areas for most of this, and privileges asserted on top of one another.

Essentia has said that it can't supplement the privilege logs because it would reveal information that is itself privileged. That's something I also don't understand. I looked at the case law. I don't see anything saying that peer review privilege is exempt from logging. I've looked at the peer review privilege, which exempts certain documents and information from discovery. It doesn't exempt information about the process itself, the members of the peer review organization, who the communications were to and from, when they were sent. And, again, there's this sort of overarching theme here that there are all of the reasons why Essentia doesn't have to give us information and we should just take their word for it. I'm more than happy to address with them any, you know, reasonable assertions of privilege and any reasonable disputes, I just need a privilege log that meets the requirements of Rule 26 and case law where we understand the authors, recipients, subject matter, dates they were sent, and so forth.

THE COURT:  Thank you.

Ms. Lord.

MS. LORD:  Thank you, Your Honor.

It might be worth talking a little bit about the sequence of communications here.  We had a meet and confer on April 27th, and the privilege log was due to be served in May in advance of the June 1st status conference.  And we had indicated that we would be providing that and then addressing some of the concerns about objections that had been made in response to the discovery requests after that privilege log had been provided.

With respect to the privileges asserted in the privilege log, there are specific documents that have been identified that are subject to the peer review privilege.  And to the extent that there would be original source data or information that would be provided in response to discovery requests, as I indicated, there's been a plethora of de-identified data that has been provided to plaintiffs in response to the discovery requests.

We've recognized, as in our meet and confer with counsel and through the process, that we anticipate that the ESI protocol and process, once that's been completed, that there will likely be additional documents in the form of communications and also documents.  The ESI protocol provides that documents and communications are to be produced in their

native form, which means that it -- you need to go through that imaging process to generate the documents and the communications.

And as Mr. Stock explained, the ESI -- getting the landscape addressed and figured out was something that was done. And also with the ESI disclosures, it was communicated to plaintiffs' counsel that emails through Outlook would be part of that ESI process. And so we fully expect that after that ESI process has been completed, that there will be documents that will need to be addressed and documents that we don't have specifically segregated or identified at this time. And so I want to make sure that the Court is aware of that in that context for this discussion.

There are several documents, as I said, that have been identified that are covered by the peer review quality assurance privilege. And under the peer review statutes in North Dakota, all communications or information regarding those is, in and of itself, privileged under the statutes. And so we believe that even providing any detail, such as author, date, and that type of thing, is in and of itself confidential and privileged. And even whether or not there's been a quality assurance process or quality assurance work done is covered by the statute as well.

This is an area where we had served the privilege log and rather than following through on the timeline that we had

discussed with plaintiffs' counsel with June 1st and the Position Statements being due the Friday before and having another opportunity for another meet and confer in May, it didn't -- it didn't happen when plaintiffs' counsel unilaterally requested to move the status conference up. Which we are here, but I just wanted to give the Court some prospective of why more of these issues haven't been narrowed or really fleshed out. And so it was when I received the Position Statement from plaintiffs' counsel where I see their arguments on the privilege log. And as I've said with the original source, documents or data, original source data has been produced.

If the Court believes that this issue is ripe for consideration, we would request that there be a briefing schedule for it because the peer review quality assurance privilege in North Dakota is very encompassing. It's important to the health care process and quality assurance. And the documents that have been segregated, so to speak, are covered by that privilege; and we need to make sure that we've asserted it, which we have.

I believe that Rule 26(B)(5)(a), Subsection 2, does recognize that -- with privilege, that one need not and ought not reveal information itself that is privileged or protected, and that there's not a "one size fits all" in addressing privilege.

I would be remiss if I didn't mention plaintiffs' counsel did refer to a case that Your Honor and I are familiar with having both -- you made the decision and I was one of the attorneys involved in the family's advocate decision that was cited by counsel in Footnote 6 of the Position Statement.  And I did explain this to plaintiffs' counsel before the hearing today as well.  That there were no challenges to our assertions of privilege based on peer review or even attorney/client privilege in that case.  It was a very contentious case, as the Court will recall, but there weren't any challenges on peer review privilege in that case and the parties' arguments and the Court's order were addressing communications between law firms and retained experts, which was a different issue altogether than the peer review privilege that we are addressing in this case at hand.

So if the Court finds that this issue is ripe for consideration at this time, we would request an additional briefing schedule.

THE COURT:  One question, Ms. Lord, are you saying that you would anticipate and, like, maybe need to separate out questions involving potential application of the peer review privilege from more general questions involving adequacy of the privilege log?  Are you anticipating providing a more detailed privilege log after more of the ESI work is done?

MS. LORD:  I am anticipating that there will be

documents either produced or privilege asserted, and that there will be more documents for privilege being asserted after the ESI process is complete.  And for us to be efficient and thorough, my thought is that it would be better to address the privilege log, and those issues, until after the ESI process has been done so that it's all encompassing.

THE COURT:  All right.  Thank you.

Well, I do think that the issues specific to information as to the peer review privilege on the privilege log we might as well go ahead and get that briefed.

I will just say in general, what I see in the privilege log, is pretty sparse information, and I would expect more detail would be provided.

So can we use the same schedule for briefing that we talked about as to the medical authorizations, Ms. Lord?

MS. LORD:  Yes, Your Honor.

THE COURT:  Ms. Clark, is that okay?

MS. CLARK:  Yes, Your Honor.

THE COURT:  Okay.  So we'll deal with that.

MS. LORD:  Your Honor, have you considered -- with respect to -- what I'm hearing you say is that even with respect to the peer review privilege that you'd anticipate there would need to be more detail provided?

THE COURT:  I see almost no detail on what I have received so far.  So, you know, pending a decision on the issue

that you're going to brief, I certainly, at this point, see a need for more detail on the privilege log.

MS. LORD:  Would the Court potentially consider an in camera review of the privilege log if more detail is required --

THE COURT:  Yes.

MS. LORD:  -- on the peer review privilege?

THE COURT:  Yes.  Been doing lots of that recently also.  So, yes, I would do that.

But let's first go ahead with the briefing schedule that we talked about.  And I guess, Ms. Lord, if, in the course of preparing that brief, you think it would be helpful to do some limited in camera review, we could probably do that.  And by that I mean some initial, limited, in camera review to help me get a better understanding of the issues that we're dealing with in the peer review realm.  Does that make sense?

MS. LORD:  And how would that be -- I suppose I could reach -- we could reach out to the clerk to figure out how we go about doing that for an in camera review of briefing?

THE COURT:  Sure.  Well, first you'd need to file a brief that's going to go to the plaintiffs as well.  But if there's something that you want to submit in camera, that gets submitted to our chambers' email address without copies in any other party.  We do add anything that's submitted for in camera review to the docket, but we do that so that access on the

docket is limited to Court personnel.  And that's so that we have a record of what is -- what is reviewed in camera.

MS. CLARK:  Thank you.  Your Honor, I would anticipate a request to be able to submit a reply brief on the peer review privilege.  There isn't a lot of case law in North Dakota on this, none that I'm aware of, in North Dakota on application of the peer review privilege in this context.  And so an opportunity to submit a reply brief on this important issue would be appreciated.

THE COURT:  Okay.  How about if you submit any reply brief by June 14?

MS. CLARK:  Thank you.

THE COURT:  Ms. Clark, anything else as to peer review briefing schedule or privilege log more generally?

MS. CLARK:  I don't think on that issue.  Although, and maybe this will be addressed in the briefing, but our privilege log concerns aren't limited to peer view.  I know Essentia's response is limited to peer review, but we would also expect assertions of attorney/client privilege, work product, et cetera, to have more detail than this, but that's the only other issue on the peer review and privilege log.

THE COURT:  Okay.  But for now I see the briefing focussed on the peer review issue as a fundamental issue on the scope of information to be provided in a privilege log, and there may well be other privilege log issues down the road.  As

I said, I do see what's been provided as giving very, very little information.  And Ms. Lord talked about more work being done in this area after the ESI process is completed, so I don't think we're going to resolve all of the privilege log questions at this time.

MS. CLARK:  Understood, Your Honor.

THE COURT:  All right.  Then plaintiffs also raised some issues regarding the objections that Essentia has made to written discovery.  And give me just a minute, please.  Do you want to talk about that more, Ms. Clark?

MS. CLARK:  Yes, Your Honor.  Thank you.

So as noted in the letter, we received objections and responses to the request for production and interrogatories that plaintiffs have served that I called -- because I do a lot of the discovery work -- kind of "old school" objections; where there's a group of general objections incorporated by reference, and objections apply to the extent that they apply. Nothing is specific.  There's no information about whether anything's being withheld.  I couldn't tell you today whether Essentia is going to produce a million documents or I need to move to compel because it's refusing to produce anything on the grounds of its objections.  And so we asked Essentia to provide some more detail on that.  And I spared the Court our correspondence, and I would be happy to provide that.  You know, Ms. Lord talked about unilateral shifting of dates.  To

be very clear, we asked for this repeatedly at different dates. We awaited information, supposedly forthcoming, with the privilege log, even though these issues have nothing to do with privilege.  The privilege log wasn't served on the date it was due.  And low and behold, once the Court scheduled a conference, we got a wealth of baby steps, I would say, for discovery.  And we're looking for a little bit more on these objections so that we can adequately assess them and decide if we need to tailor our requests, if they're valid, or if we need to move to compel.

We I don't think -- no, we haven't put into the record the responses and objections themselves, but there's a list of -- you know, things are vague, overbroad, not proportional, and we don't know how and why Essentia believes that to be true.  We don't know whether documents are being withheld because of those objections.  And we're entitled to that information.  Rule 34 requires it.  It has for some time. So we're asking that Essentia supplement its interrogatory and RSP responses to provide objections that comport with the rule.

THE COURT:  Did you say that you had recently gotten additional information?

MS. CLARK:  So the information I was referring to is sort of the wealth of information -- or I shouldn't say information but letters.  We have the privilege logs we've attached.  We got the search terms we attached.  I think you

know plaintiffs' view on the adequacy of those.  We also received a letter reiterating objections for about half of the requests with no additional information on the other half, and it didn't answer our questions.  I think Essentia has cabined this somehow with the privilege issue, even though it's really the lowest on the totem pole concern in terms of specificity of objections.  We want to know, when they assert an objection, if, you know -- proportionality issue, which part of it is not proportionate and why?  If it's a specificity issue or if something is vague, what's vague?  So we know how to tailor that and we know what's being repelled, and we haven't really received a supplement on that.

And, you know, as much as I will admit that we've been told more information is coming, we haven't been told what or when.  And we're four months into discovery; so we would just like a commitment as to whether or not these will be supplemented.  And if so, by when.  And if not, then, you know, we'd like to take that to the Court to resolve because there's plenty of case law holding that this is akin to waiving objections entirely.  We're not -- you know, we have a deadline in a couple of weeks for motions to amend the pleadings.  We have a settlement conference in August, and the plan seems to be let's wait to see what Essentia does and then we can fight about gaps later and try to reverse engineer what its objections meant on the front end.  But our plaintiffs are

entitled to advance their case and, you know, resolve these issues as they arise.  So, again, we're just looking for the information that the rules require.

THE COURT:  Ms. Lord.

MS. LORD:  Thank you, Your Honor.

At the rule -- we did receive a letter in April after -- in April, and so we set up the meet and confer to flesh out what are the concerns regarding the objections.  And my understanding -- I thought we had honed in on what the concerns were.  We agreed to follow-up on different areas.  And then we had been meeting for about an hour, and we could either set up another time to continue to visit or thought that a good option would be for Ms. Clark to put any remaining concerns she had about objections into correspondence, in addition to the correspondence she had sent previously, because we thought we were addressing her earlier correspondence.

She then sent a letter April 28th identifying what other concerns she had with the objections that were made.  And when we had the meet and confer, she had indicated that with respect to documents being withheld and requests for production, that she wanted to know primarily which request for production had documents withheld on the basis of privilege.  And in terms of us saying that we are working on things and we anticipate additional documents being produced, that was in the context of the ESI protocol in following through on that

protocol.

As I've said before, we anticipate that there will be additional information gathered and either produced or withheld and identified as privileged. And so that process, in and of itself, needs to be done in terms of predicting what that -- what documents will be generated from that process. It would be diffi -- we're not in a position of saying that at this time. But that is -- that was the process that we were talking about was completion of the ESI process, which is extensive.

And so we responded to her correspondence by letter dated May 5th, and again reiterated that we would be in a position of telling her which requests for production were affected by privilege after we had produced the privilege log to ensure that we weren't missing anything, basically, and to make sure that we were providing accurate information. I had not said contemporaneous with the privilege log. I had said after the privilege log was produced.

There was a disagreement, a misunderstanding, that came to light after the privilege log was not produced when Ms. Clark thought it was due. And we had a different date on when we thought it was due. In any event, we produced the privilege log and as we had indicated, not only on April 27th and in the letter dated May 5, we had said all along that we were going to further address the objection concerns after the privilege log had been produced.

And so by letter dated May 13th, I did address those, what I thought were remaining concerns, and address the objections that had been highlighted by Ms. Clark in her letter dated April 28th.  And we also identified which document requests had documents withheld on the basis of privilege at this point in time, recognizing that the ESI process could certainly generate additional documents, not only for production but also for privilege.

In preparing for today's conference, it's unclear to me if there remain concerns about the objections because we did address objections that Ms. Clark had identified as remaining to be concerns in the April 28th correspondence.  In her initial correspondence she had concerns about producing retention policies.  Well, we reminded her that those were produced March 31st along with the ESI disclosures.

There is a request for production on policies and in the context of DCP, or Dakota Clinic Pharmacy, we'd indicated that we were following up with our clients in that regard.  And I anticipate that policy -- we had asserted that Essentia policies are not applicable at Dakota Clinic Pharmacy.  We agreed to follow-up with our clients in that regard, and I anticipate that we will be supplementing that response or that production request with respect to policies.

So I believe we have been operating in good faith. We've been addressing the objections appropriately.  We've been

trying to hone in on what are the concerns, how can we address the concerns, and our target date had been June 1st.  We followed the timeline that made sense through the process.  And it wasn't Ms. Clark's requests to move the conference up that generated what was done, the ball had already been set in motion, and we followed through on everything we indicated we would be doing within the timeline we identified we'd be doing it in.

And so a long story short, the objections were appropriate.  We've addressed them.  And I believe that we have a plan in place on the ESI protocol, and now we have a plan in place on the privilege log issue, and we have a plan in place on the medical authorizations.  And however those come out, there will be additional work to be done.  But I don't see, in my view of looking at everything that's already been done, that there are any remaining issues on the objections that have been interposed, certainly with the plan that we have in place at this time.

THE COURT:  Well, it seems that plaintiffs view there being some current concerns.

So, Ms. Clark, and, Ms. Lord, how about if the two of you plan to have some further discussion about the concerns over objections and plan to have that by next Wednesday, the 26th.

If there are issues that need to come to the Court, I

need to have them in a more specific format than what's been presented to me here in this informal conference.

Does that work for you, Ms. Clark?

MS. CLARK:  Thank you, Your Honor.  If issues remain, how should we present that to the Court?  Should we do a more detailed letter attaching any responses and objections that are in dispute, or should we file briefings?

THE COURT:  Well, first, the two of you have some real-time conversation between now and the 26th.  If you feel that something needs the Court's attention at this point, then the next step would be to ask for another informal conference and could do position papers again.  Though, to the extent it's necessary -- and it probably is necessary -- to present the actual responses, you could attach those to the position papers.  And actually -- excuse me -- we have a status conference set for June 1st, so maybe we could plan to address the questions concerning the objections again on June 1st. Does that make sense?

MS. LORD:  Your Honor --

MS. CLARK:  Yes, Your Honor.

MS. LORD:  -- that would only be to the extent there are any issues that remain, or that we're not able to iron out?

THE COURT:  Yeah.  If you can work them out, I don't need to hear about them.

What else needs attention today?  Ms. Clark?

MS. CLARK:  I think that's the bulk of it, Your Honor, and I appreciate the focus on efficiency.  I'm hopeful that on June 1st we'll have little, if anything, to discuss with you.  But if that's not the case, I guess I would just like to say, for sake of the record, because I haven't responded to each individual statement that Mr. Stock or Ms. Lord have made about the progress of this litigation, but I do think the correspondence among the parties would speak for itself and the narrative just simply doesn't match my experience in terms of the efforts and the progress being made and the disputes being raised.  And we do have concerns that this case is not advancing along with the schedule.

So I'm hopeful that in the next couple of weeks we'll make big progress, but I guess I would just like to reiterate the request that if we stand on similar footing, you know, two, two and a half weeks from now, that we would like maybe some incentive for Essentia to keep things moving with some interim dates for document production and supplementation and deadlines.  Because I think part of what's happening here is we think that discovery should just be moving, and Essentia seems to be looking at the conference date as a different sort of deadline by which to make progress.  That's a concern to us and we don't want to have to reach out to you every two weeks to get information about what's going on or get documents in discovery.

So I appreciate the focus on, you know, efficiency and resolution, but I do want to make clear that we just have a -- plaintiffs have a different view of how discovery has been progressing.  And if it doesn't take a different pace, we would just ask for some additional encouragement in the form of deadlines.

THE COURT:  I know at one point we talked about scheduling periodic status conferences and we may need to move to that, that's something that we can talk about more on June 1st.

Ms. Lord, anything else for the defendants today?

MS. LORD:  Yes, Your Honor.

Ms. Clark at least mentioned an approaching deadline that -- I haven't mentioned this to Ms. Clark, but I would be interested in having an extension of it.  The motion to amend the pleadings deadline, I think, is currently set for June 1st, and we would be interested in having that extended to August 1st.

THE COURT:  Ms. Clark.

MS. CLARK:  I don't think I've ever had a defendant ask for a motion to extend plaintiffs' pleadings.  I'd have to talk to my team about the timing on that or even how to resolve this case given the nature of the subject matter, you know.  But I'm happy to talk to Ms. Lord about that after the call or later this week.

THE COURT:  Well, I expect that Ms. Lord was thinking of her own pleadings rather than yours, but maybe I'm wrong.

MS. LORD:  I think it applies to all pleadings.

THE COURT:  Oh, it does.

MS. LORD:  I think the motion is to amend all pleadings and that's why we're requesting August 1st.

THE COURT:  Yes, it does.

MS. CLARK:  I'm happy -- I will touch base with you about that this week.  And if we can agree on another date, should we just file a stipulation with the Court or inform the Court on June 1st?

THE COURT:  If you agree to a different date, you can file a stipulation.

MS. CLARK:  Okay.  Thank you, Your Honor.

THE COURT:  Sure.  Anything else?

MS. LORD:  Not from the defendants, Your Honor.  Thank you.

THE COURT:  Thank you all.  We'll talk again on June 1st.  We'll adjourn for now.

(Proceedings commenced at 4:23 p.m., that same day.)

<u>CERTIFICATE</u>

STATE OF NORTH DAKOTA    )
                         )    ss.
COUNTY OF BURLEIGH       )


          I, Ronda L. Colby, RPR, CRR, RMR, do hereby certify that the foregoing and attached typewritten pages contain an accurate transcription, to the best of my ability, of said digital recording made at the time and place herein indicated.


     Dated at Bismarck, North Dakota, on 27th of May, 2021.


                              /s/ *Ronda L. Colby*
                              _____
                              Ronda L. Colby
                              Official Court Reporter