THE UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA
EASTERN DIVISION

| | |
|---|---|
| JESSICA KRAFT, individually and as parent of minors L.K., S.K., and O.K.; SHELLI SCHNEIDER, individually and as parent of minors A.S. and W.S.; ANNE BAILEY, individually and as parent of minor D.B.; AMY LAVELLE, individual and as parent of minors Em.L.and El.L.; ELIZABETH BEATON, individually and as parent of minor M.B.; AMANDA AND TYRELL FAUSKE, individually and as parents of minors C.R.F. and C.J.F.; JENNIFER REIN, individually; and JESSICA BERG, individually and as parent of minors A.B. and S.B., individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>vs.<br><br>ESSENTIA HEALTH, INNOVIS HEALTH, LLC d/b/a ESSENTIA HEALTH, DAKOTA CLINIC PHARMACY, LLC, JOHN DOE MANUFACTURERS, and JOHN DOE DISTRIBUTOR,<br><br>        Defendants. | Case No. 3:20-CV-00121<br><br><br><br>**ESSENTIA HEALTH'S MEMORANDUM REGARDNG MEDICAL AUTHORIZATIONS** |

## I.    INTRODUCTION AND PROCEDURAL BACKGROUND

Defendant, Essentia Health ("Essentia") submits this Memorandum regarding the production of executed medical authorizations pursuant to the direction provided by the Court at the conclusion of the May 19, 2021, status conference.    As it relates to medical authorizations in the context of this putative class action, there are two issues for resolution. First, whether the named Plaintiffs should be required to produce executed medical

authorizations; and second, whether Essentia should be required to produce protected health information in the absence of executed medical authorizations.

As part of the discovery process, Essentia sought executed medical authorizations from the named Plaintiffs limited in scope to the timeframe alleged in Plaintiffs' Amended Complaint through the present. In the absence of such authorizations, Essentia also objected to the production of confidential, patient-specific documentation and information in response to Plaintiffs' discovery requests. The authorizations are necessary to permit Essentia to independently acquire the named Plaintiffs' discoverable medical records from other entities and to permit Essentia to produce the named Plaintiffs' medical records and data from Essentia, requested as part of this action. While the named Plaintiffs have thus far refused to provide executed medical authorizations to Essentia, they insist Essentia should be required to produce protected health information absent patient authorization to do so.

Essentia's approach to the discovery and production of confidential patient-specific information is consistent with applicable law. For this reason, articulated more fully below, Essentia respectfully requests that this Court require the named Plaintiffs to produce executed medical authorizations.

## II.    LAW AND ARGUMENT

### A.    Applicable state law requires the named Plaintiffs to provide Essentia with an authorization to obtain medical records.

Rule 501 of the Federal Rules of Evidence governs the application of privileges in federal court. Rule 501 provides in full:

> The law—as interpreted by United States courts in light of reason and experience—governs a claim of privilege unless any of the following provides otherwise: The United States Constitution; a federal statute; or Rules prescribed

by the Supreme Court. But in a civil case, state law governs privilege regarding
a claim or defense for which state law supplies the rule of decision.

FED. R. EVID. 501. Accordingly, "for federal cases based on diversity jurisdiction, state law

controls the existence and scope of the physician-patient privilege." *In re Baycol Products.*

*Litig.,* 219 F.R.D. 468, 469 (D. Minn. 2003). "State law, [therefore], also controls what

constitutes a waiver of the physician-patient privilege." *Filz v. Mayo Found.,* 136 F.R.D. 165,

168 (D. Minn. 1991).

North Dakota law[1] is clear that

> A party who commences an action for malpractice, error, mistake, or failure to
> cure, whether based on contract or tort, against a health care provider...or a
> health care facility...waives in that action any privilege existing under rule 503
> of the North Dakota Rules of Evidence, as to any medical records, opinions, or
> other information in the possession of any other health care provider who has
> examined or cared for the party or other person whose health or medical
> condition has been placed in controversy in the action.

N.D. CENT. CODE § 28-01-46.1; *see* N.D. R. EVID 503(d)(3); MINN. R. CIV. P. 35.03 ("If at any

stage of an action a party voluntarily places in controversy the physical, mental, or blood

condition of that party...such party thereby waives any privilege") & 35.04 ("When a party

has waived medical privilege pursuant to Rule 35.03, such party...shall provide written

authority signed by the party of whom request is made to permit the inspection of all hospital

and other medical records"); Minn. Stat. § 595.02, subd. 5 ("A party who commences an action

for malpractice, error, mistake, or failure to cure, whether based on contract or tort, against a

---

[1] As to the vertical choice of law question, it is clear that state law governs the applicable
privileges and related scope in the context of this action. Plaintiffs have asserted claims under
both North Dakota and Minnesota law. This Court need not resolve whether North Dakota or
Minnesota law controls because there is no conflict between the applicable provisions, as is
demonstrated by the citations throughout. *See Rostvet v. Lock City Transp. Co., Inc.,* No. 2:11-
CV-21, 2013 WL 11941563, at *1 (D.N.D. Nov. 7, 2013).

health care provider...waives in that any action any privilege...as to any information or opinion in the possession of a health care provider who has examined or cared for the party or other person whose health or medical condition has been placed in controversy in the action.")

The law further requires Plaintiffs at the time an action is commenced to provide "[a]ppropriate authorizations permitting access to the written medical record." N.D. CENT. CODE § 28-01-46.1; *see* MINN. R. CIV. P. 35.04. Where a party fails to satisfy this obligation, the defendant health care provider or health care facility "may use other means to obtain the records such as by subpoena or seeking a court order." N.D. CENT. CODE § 28-01-46.1. In addition, if Plaintiffs refuse to provide appropriate authorizations, "the court shall award reasonable costs incurred...in obtaining [the patient's] records, including reasonable attorney's fees." *Id.*

The purpose of the implied waiver which results as a consequence of commencing litigation and placing one's physical or mental health at issue was addressed by the North Dakota Supreme Court in *Sagmiller v. Carlsen.* 219 N.W.2d 885 (N.D. 1974). More specifically, the *Sagmiller* Court acknowledged the physician-patient privilege "was intended to inspire confidence in the patient and encourage him in making full disclosure to the physician as to his symptoms and condition." *Id.* at 894 (quoting *Booren v. McWilliams,* 26 N.D. 558, 145 N.W. 410, 414 (1914)). As explained by the *Sagmiller* Court, however, when a plaintiff puts their health at issue by commencing suit they waive the applicable physician-patient privilege because to hold otherwise would allow the privilege to be used as both a shield and a sword. *Id.* at 894-95 (quoting McCormick, Law of Evidence, Ch. 11, Waiver, s 106, at 219). In this regard, implied waiver, embodied by the requirement to produce executed medical authorizations upon commencement of an action, prevents "injustice to the defendant

4

in preparation of his defense" and is consistent with "the scope and intent of relevant discovery rules or statutes." *Id.* at 895.

The holding in *Sagmiller* is explicitly limited to malpractice cases and the North Dakota Supreme Court has not had occasion to analyze whether the commencement of other actions similarly results in an implied waiver of the physician-patient privilege. *Id.* at 897. Nor has the North Dakota Supreme Court had occasion to interpret Section 28-01-46.1 of the North Dakota Century Code. However, a court's primary goal in construing a statute is to discover the intent of the legislature. *Burlington Northern v. State*, 500 N.W.2d 615 (N.D. 1993). To determine the legislature's intent, the language of the statute is examined first. *Rocky Mountain Oil & Gas Ass'n v. Conrad*, 405 N.W.2d 279 (N.D. 1987). Where the "statute's language is clear and unambiguous, the legislative intent is presumed clear on the face of the statute." *Western Gas Resources Inc. v. Heitkamp*, 489 N.W.2d 869 (N.D. 1992), cert denied, 507 U.S. 920 (1993); *see also Schmidt v. City of Minot*, 2016 ND 175, ¶ 7, 834 N.W.2d 909 (citing N.D. CENT. CODE § 1-02-02) ("If the language of a statute is clear and unambiguous, the language may not be disregarded.").

Section 28-01-46.1 applies in "an action for malpractice, error, mistake, or failure to cure, whether based on contract or tort, against... a health care facility." N.D. CENT. CODE § 28-01-46.1; *see* MINN. R. CIV. P. 35.03 & 35.04; Minn. Stat. § 595.02, subd. 5. By its plain language, the statutory requirement to provide appropriate medical authorizations upon commencement of suit applies to more than just malpractice actions and extends to any action against a health care facility, in contract or tort, in which the plaintiff alleges malpractice, error, mistake, or failure to cure. *See Wenninger v. Muesing,* 240 N.W.2d 333 (Minn. 1976); *Younggren v. Younggren,* 556 N.W.2d 228 (Minn. Ct. App. 1996); *Howard v. Svoboda,* 877

5

N.W.2d 562 (Minn. Ct. App. 2016), opinion vacated, 890 N.W.2d 111 (Minn. 2017).  Here, section 28-01-46.1 applies.  *See also* Minn. Stat. § 595.02, subd. 5 ("For purposes of this subdivision, 'health care provider; means a physician, surgeon, dentist, or other health care professional or hospital, including all persons or entities providing health care").  Simply put, on the face of Plaintiffs' First Amended Class Action Complaint, Plaintiffs have alleged "malpractice, error, mistake, or failure to cure" against Essentia and Innovis Health, LLC. *See* Doc. ID No. 28, *First Amended Class Action Complaint,* at ¶¶ 6, 7, 8, 9, 43, 45, and 46.

Perhaps more importantly, there is no question that the named Plaintiffs' health and/or medical condition has been placed in controversy in this action, triggering the waiver of the physician-patient privilege and the statutory requirement to produce appropriate medical authorizations.  For example, Plaintiffs allege Essentia and/or Innovis Health, LLC d/b/a Essentia Health [West] sold and administered certain temperature-sensitive pharmaceutical products ("TTSPPs") to the named Plaintiffs and putative class members that might have been compromised by improper temperature storage. *Id.* at ¶¶ 1-4.  Plaintiffs claim injury as a result of paying for the allegedly affected TTSPPs "and associated medical visits without receiving the benefit of the bargain." *Id.* at ¶ 6.  Plaintiffs acknowledge that Essentia offered revaccination at no cost to them, but claim they "are entitled to refunds for visits for which they did not receive proper care." *Id.* at ¶ 7.  Plaintiffs also claim they may choose to be revaccinated elsewhere, bearing additional out-of-pocket costs in addition to the "pain and suffering" they claim will result from revaccination. *Id.* at ¶¶ 8-9.

To prevail on their claims, Plaintiffs will be required to demonstrate they were plagued with the disease the vaccinations and/or immunizations were intended to prevent, or suffered some other concrete injury as a result of the vaccination and/or immunization.  This analysis

6

is necessarily informed by their health and medical condition at the time and leading up to administration. In addition, whether and to what extent Plaintiffs were revaccinated is also an important matter at issue in this lawsuit. Further, to the extent Plaintiffs chose to be revaccinated outside of Essentia's system, representations Plaintiffs made to providers as it relates to the revaccination and its cause are relevant to the claims and defenses at issue.

Plaintiffs' contention that the requirement to produce medical authorizations under applicable state law does not apply in this action because it is procedural as opposed to substantive is premised on a misunderstanding of the *Erie* analysis, which "has evolved into a broader inquiry." *Gobuty v. Kavanagh,* No. CIV. 4-91-380, 1992 WL 117367 (D. Minn. June 1, 1992); *see also In re Baycol Products Litig.,* 219 F.R.D. 468, 471-72 (D. Minn. 2003) (applying MINN. R. CIV. P. 35.04 in a federal diversity action despite the contention that it is a procedural as opposed to substantive rule). Instead, the question is "whether the variation between litigation with the state statute enforced and without it enforced 'is substantial enough to raise equal protection problems or influence the choice of forum.'" *Gobuty v. Kavanagh,* No. CIV. 4-91-380, 1992 WL 117367 (D. Minn. June 1, 1992) (quoting *Kuehn v. Shelcore, Inc.,* 686 F.Supp. 233 (D. Minn. 1988)). "Even a non-dispositive variation which may significantly influence the choice of forum by providing a mere tactical advantage is sufficient reason to apply state law in federal proceedings." *Id.* Should this Court decline to apply the state statutory requirements to produce medical authorizations upon commencement of an action, it would incentivize all plaintiffs whose health is at issue to litigate such cases in federal as opposed to state court for the sole reason of securing a tactical advantage. *See Gobuty,* No. CIV. 4-91-380, 1992 WL 117367 (D. Minn. June 1, 1992) (holding Subdivision 5 of Section 595.02 applies in diversity actions).

**B.    Applicable state law precludes production of protected health information in the absence of patient authorization.**

While applicable state law requires the named Plaintiffs to provide Essentia executed medical authorizations, it does not permit Essentia to produce protected health information in the absence of patient authorization as to the named Plaintiffs or putative class members. The Protective Order entered by the Court in this case does not alter this conclusion as the provisions of 45 C.F.R. § 164.512 do not require or mandate disclosure. In addition, in diversity actions in which state law supplies the rule of decision, such as this one, HIPAA and its implementing regulations do not preempt a state's more stringent medical privilege. *See* FED. R. EVID. 501; *Northwestern Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 924-25 (7th Cir. 2004); *Bharadwaj v. Mid Dakota Clinic, P.C.*, No. 1:16-CV-262, 2017 WL 11591196, at *2 (D.N.D. Mar. 9, 2017).

North Dakota courts "[have] recognized the importance of the physician-patient relationship and the expectations of confidentiality which flow from that relationship." *State ex rel. Workforce Safety, & Ins. v. Altru Health Sys.*, 2007 ND 38, ¶ 18, 729 N.W.2d 113 (citing *Tehven v. Job. Serv. North Dakota*, 488 N.W.2d 48, 51 (N.D. 1992) and N.D. R. EVID. 503). The significance of physician-patient confidentiality is further recognized by Section 43-17-31(13) of the North Dakota Century Code, which provides that a violation of confidentiality between patient and physician may serve as the basis of disciplinary action. N.D. CENT. CODE § 43-17-31(13). "Courts have generally recognized a patient's right to recover damages from a physician for unauthorized disclosure of medical information" and "[t]he patient's privilege against disclosure of medical information generally extends to hospital records." *Altru*, 2007

8

ND 38, ¶ 18. Accordingly, individual healthcare providers, as well as healthcare entities, have a duty to maintain the confidentiality of patient records. *Id.*

Minnesota also recognizes the physician-patient privilege. Health records typically contain information that is protected by a medical privilege. *See* Minn. Stat. § 595.02, subd. 1(d), (g). The privilege "belongs to the patient" and, thus, "may be waived only by the patient." *Wenninger*, 240 N.W.2d 333, 335 (1976), superseded by statute on other grounds, Minn. Stat. § 595.02, subd. 5. In addition to physician-patient privilege, generally, the Minnesota Health Records Act prohibits the disclosure of patient health records absent consent or a specific authorization in law. Minn. Stat. § 144.293, subd. 2. "Specific authorization in law" does not mean Essentia is free to disclose protected health information in the absence of medical authorizations under the HIPAA exception for "healthcare operations" as Plaintiffs suggest. "Healthcare operations" is defined to include "[c]onducting or arranging for…legal services." 45 C.F.R. § 164.501. This particular provision, by its plain language, permits a covered entity to share protected health information with its counsel as part of the facility's healthcare operations and does not extend a similar exception for production of medical records to a requesting party in the context of litigation.

While Essentia maintains it needs executed authorizations from the named Plaintiffs prior to production of medical records in this action, it is even more concerning that Plaintiffs appear to suggest Essentia is free to disclose, and in fact should be required to disclose, protected health information of the unnamed putative class members. The physician-patient privilege is specific to the patient and none of the putative class members have waived the applicable privilege merely by belonging to a universe of individuals asserted by the named

9

Plaintiffs. Nor can the named Plaintiffs waive the applicable privilege for the putative class members.

In fact, even in the absence of applicable state privilege, federal courts seek to safeguard protected health information of non-parties. For example, in *Northwestern Mem'l Hosp. v. Ashcroft,* the government served a subpoena on Northwestern Memorial Hospital in Chicago for medical records of certain patients who received late-term abortions at the hospital using the intact D & E procedure. 362 F.3d 923, 924 (7th Cir. 2004). The records were intended to be used in a separate suit challenging the constitutionality of a Partial-Birth Abortion ban. The Seventh Circuit Court of Appeals upheld the district court's decision to quash the Subpoena, citing patient privacy concerns as a primary reason. *Id.* at ¶¶ 928-29. The Seventh Circuit placed significant value on "the natural sensitivity that people feel about the disclosure of their medical records," even redacted records. *Id.* As the Seventh Circuit explained, "[e]ven if all the women whose records the government seeks know what 'redacted' means, they are bound to be skeptical that redaction will conceal their identity from the world." *Id.* at 929. More importantly, the Seventh Circuit acknowledged, "[e]ven if there were no possibility that a patient's identity might be learned from a redacted medical record, there would be an invasion of privacy." *Id.* at 929. The forced disclosure would also potentially cause the hospital to lose the confidence of its patients who may then be inclined to seek treatment elsewhere. *Id.*

Consistent with its obligations under applicable state law, Essentia produced de-identified data in response to Plaintiffs' discovery requests. Essentia's de-identified production is consistent with HIPAA's "Safe Harbor" provisions to ensure that the production absolutely cannot be used to identify any individual who is the subject of the information. *See* 45 C.F.R. § 164.514; *see also In re Zyprexa Products Liab. Litig.,* 254 F.R.D. 50 (E.D.N.Y.

2008), aff'd, No. 04-MD-1596, 2008 WL 4682311 (E.D.N.Y Oct. 21, 2008); *Allen v. Woodford*, No. 05-1104, 2007 WL 309485 (E.D. Cal. Jan. 30, 2007) (both supportive of production of de-identified information as to non-parties and unnamed putative class members). To require Essentia to produce patient-specific data as to the unnamed putative class members comes at a significant cost, including the psychological cost to Essentia's patients. *See Northwestern,* 362 F.3d at 930. Not only are Plaintiffs not entitled to the discovery of patient-specific information of the unnamed putative class members, Plaintiffs failed to demonstrate why they need any additional information or data aside from what Essentia has already provided.

## III.    CONCLUSION

The named Plaintiffs have placed their health at issue in this action. Accordingly, state law, which governs the application and waiver of privileges in the context of this diversity action, requires the named Plaintiffs to provide Essentia with executed medical authorizations. The executed medical authorizations are necessary to permit Essentia to independently acquire Plaintiffs' discoverable medical records from other entities, and to produce the named Plaintiffs' protected health information from Essentia, as requested in this case. The applicable state privileges also preclude Essentia from producing patient-specific information in the absence of appropriate authorization, both as to the named Plaintiffs and the unnamed putative class members. The named Plaintiffs cannot effectuate a waiver of the unnamed putative class members' medical privilege by commencing a putative class action. Essentia produced de-identified data, which is consistent with HIPAA, state physician-patient privileges, and federal courts' approach to production for non-parties.

11

Dated this 1st day of June, 2021.

VOGEL LAW FIRM

*s/ Angela E. Lord*

BY:  Angela E. Lord (#05351)
Robert B. Stock (#05919)
Briana L. Rummel (#08399)
218 NP Avenue
PO Box 1389
Fargo, ND  58107-1389
701.237.6983
Email:    alord@vogellaw.com
rstock@vogellaw.com
brummel@vogellaw.com
ATTORNEYS FOR ESSENTIA HEALTH
AND INNOVIS HEALTH, LLC

4429007.1

12