THE UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA
EASTERN DIVISION

| | |
|---|---|
| JESSICA KRAFT, individually and as parent of minors L.K., S.K., and O.K.; SHELLI SCHNEIDER, individually and as parent of minors A.S. and W.S.; ANNE BAILEY, individually and as parent of minor D.B.; AMY LAVELLE, individual and as parent of minors Em.L.and El.L.; ELIZABETH BEATON, individually and as parent of minor M.B.; AMANDA AND TYRELL FAUSKE, individually and as parents of minors C.R.F. and C.J.F.; JENNIFER REIN, individually; and JESSICA BERG, individually and as parent of minors A.B. and S.B., individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> ESSENTIA HEALTH, INNOVIS HEALTH, LLC d/b/a ESSENTIA HEALTH, DAKOTA CLINIC PHARMACY, LLC, JOHN DOE MANUFACTURERS, and JOHN DOE DISTRIBUTOR, <br><br> Defendants. | Case No. 3:20-CV-00121 <br><br><br><br> **ESSENTIA HEALTH'S MEMORANDUM REGARDING PEER REVIEW/QUALITY ASSURANCE PRIVILEGE IN THE CONTEXT OF A PRIVILEGE LOG** |

## I.   INTRODUCTION AND PROCEDURAL BACKGROUND

Defendant, Essentia Health ("Essentia") submits this Memorandum regarding the level of detail required to assert the peer review/quality assurance privilege in a privilege log pursuant to the direction provided by the Court at the May 19, 2021, status conference. Essentia asserted the peer review/quality privilege in response to certain of Plaintiffs' discovery requests. Consistent with the Court's Order Governing Discovery of Electronically

Stored Information (Doc. ID No. 46), Essentia subsequently produced a Privilege Log. Plaintiffs took issue with Essentia's Privilege Log and Essentia supplemented its Privilege Log to provide additional detail for select documents for which additional detail can be provided. However, Essentia maintains additional detail cannot be provided for the over 200 documents subject to the peer review/quality assurance privilege, currently identified on its Privilege Log, by category. Accordingly, Essentia's Privilege Log is consistent with the applicable peer review/quality assurance privilege under state law and Rule 26(b)(5)(A)(ii) of the Federal Rules of Civil Procedure, which governs privilege logs in federal actions.

## II.     LAW AND ARGUMENT

### A.     The applicable state peer review/quality assurance statutes are broad.

Rule 501 of the Federal Rules of Evidence makes clear that "state law governs privilege regarding a claim or defense for which state law supplies the rule of decision" in civil cases. FED. R. EVID. 501. In other words, while cases premised upon federal question jurisdiction, or cases involving claims only for violation of federal law, are governed by the federal law of privileges, where state law supplies the rule of decision, "state law is to govern privilege." *Bharadwaj v. Mid Dakota Clinic, P.C.*, No. 1:16-CV-262, 2017 WL 11591196, at *2 (D.N.D. Mar. 9, 2017). Here, the Court's authority is premised upon diversity jurisdiction pursuant to 28 U.S.C.A. § 1332(d)(3) and Plaintiffs asserted claims under both North Dakota and Minnesota law. Accordingly, the Court must look to state law as to the application and scope of the applicable privilege. Both North Dakota and Minnesota recognize the peer review/quality assurance privilege.[1]

---

[1] As between North Dakota and Minnesota law, choice of law analysis is not required because there is no conflict between the two states' peer review/quality assurance statutes on these

Chapter 23-24 of the North Dakota Century Code "establishes a privilege for documents that meet the definition of 'peer review records,' and provides that those records are not subject to subpoena, civil discovery, or introduction into evidence." *Guttormson v. ManorCare of Minot ND, LLC*, No. 4:14-CV-36, 2015 WL 11147876, at *2 (D.N.D. Sept. 28, 2015); *see also* N.D. CENT. CODE § 23-34-01(1) ("Peer review records are privileged and are not subject to subpoena or discovery or introduction into evidence in any civil or administrative action."). "Peer review records are confidential and may be used by a peer review organization and the organization members <u>only</u> for conducting a professional peer review." N.D. CENT. CODE § 23-34-02(1) (emphasis added).

The protection afforded by the peer review/quality assurance statutes in North Dakota is undeniably broad, extending to "[d]ata, information, reports, documents, findings, compilations and summaries, testimony, and any other records generated by, acquired by, or given to a peer review organization as part of any professional peer review, regardless of when the record was created." N.D. CENT. CODE § 23-24-01(4)(a)(1). In addition, the peer review privilege extends to "[c]ommunications relating to a professional peer review, whether written or oral, between...peer review organization members and other individuals participating in a professional peer review." N.D. CENT. CODE § 23-34-01(4)(a)(2). "Professional peer review," in turn, is broadly defined to include "all procedures of a peer review organization or functions it performs to monitor, evaluate, and take action to review the medical care provided to patients by health care organizations or health care providers." N.D. CENT. CODE § 23-34-01(5).

---

facts. *Rostvet v. Lock City Transp. Co., Inc.*, No. 2:11-CV-21, 2013 WL 11941563, at *1 (D.N.D. Nov. 7, 2013).

Professional peer review is not limited to just those activities which may be considered "peer review" in the literal sense of the phrase. In fact, professional peer review specifically includes procedures or functions to:

> [e]valuate and improve the quality of health care; [o]btain and disseminate data and statistics relative to the treatment and prevention of disease, illness, or injury; [d]evelop and establish guidelines for medical care and the costs of medical care; [p]rovide to other affiliated or nonaffiliated peer review organizations information that is originally generated within the peer review organization for the purposes of professional peer review; [i]dentify or analyze trends in medical error, using among other things a standardized incident reporting system; and [p]rovide quality assurance.

*Id.* "Peer review organization" is also broadly defined to encompass health care organizations, including hospitals, hospital medical staff, clinics, physicians, a group of physicians, pharmacies, associations or organizations of medical professionals, as well as any combination of these entities. N.D. CENT. CODE §§ 23-34-01(3)(a) & 23-34-01(1). In addition to health care organizations, committees of health care organizations, "composed of health care providers employees, administrators, consultants, agents, or members of the care health care organization's governing body" are also included in the definition of peer review organization. N.D. CENT. CODE § 23-34-01(3)(b).

There is very little case law in North Dakota analyzing North Dakota's peer review statutes following the Legislature's substantial overhaul in 1997. *Guttormson v. ManorCare of Minot ND, LLC*, No. 4:14-CV-36 (D.N.D. July 20, 2015) (Doc. ID No. 225). What is clear, however, is that following the revisions made to North Dakota's peer review statutes in 1997, the peer review privilege is much broader in scope than it was previously. For example, then Section 23-01-02.1 limited the peer review privilege to proceedings and records of "committees mandated by law or the JCAHO standards, and to an internal quality

4

assurance/medical review committee." *Trinity Med. Ctr., Inc. v. Holum,* 544 N.W.2d 148, 155 (N.D. 1996). Section 23-01-02.1 also made a distinction between records which were confidential as opposed to privileged. As the Court in *Trinity* explained, "confidentiality addresses the obligation to refrain from disclosing information to third parties other than as part of legal process." *Id.* at 156. Section 23-01-02.1 rendered information made available to the committees encompassed by the statute confidential and only provided privilege to "the proceedings and records of" covered committees. *Id.*

In contrast, the peer review/quality assurance statutes in North Dakota today make peer review records both confidential and privileged, with very few and narrowly-defined exceptions. Without question Ch. 23-34 of the North Dakota Century Code provides a much broader definition of peer review organization, peer review record, and professional peer review than under previous law.

The protection afforded to peer review and quality assurance records under Minnesota law is equally as broad. "[T]he purpose of Minnesota's peer review statute is to promote the strong public interest in improving health care by granting certain protections to medical review organizations…and to encourage the medical profession to police its own activities with minimal judicial interference." *Larson v. Wasemiller,* 738 N.W.2d 300, 312 (Minn. 2007) (internal citations omitted). The design behind the peer review/quality assurance privilege is to ultimately improve the quality of patient care. *Id.* To that end, Minnesota law shields "data and information acquired by a review organization, in the exercise of its duties and functions, or by an individual or other entity acting at the direction of the review organization" from disclosure. Minn. Stat. § 145.64, subd. 1. In addition, "[t]he proceedings and records of a

5

review organization shall not be subject to discovery or introduction into evidence in any civil action." *Id.*

"Review organization" is as broadly defined as "peer review organization" is under North Dakota law.  In fact, "review organization" for purposes of Minnesota's peer review/quality assurance statutes encompasses wide-ranging categories of individuals and entities, including committees comprised of professionals, administrative staff, and consumer directors established by hospitals and clinics, nonprofit corporations, or any combination thereof for the purpose of, among other things, "evaluating and improving the quality of health care." Minn. Stat. § 145.61, subd. 5.

Minnesota courts have routinely reinforced the broad protections afforded by the peer review/quality assurance statutes.  For example, in *In re Fairview-Univ. Med. Ctr.*, the Complaint Review Committee, the investigative arm of the Minnesota Board of Medical Practices, served subpoenas on various health care providers as part of an administrative proceeding.  590 N.W.2d 150, 152 (Minn. Ct. App. 1999).  The subpoenas sought records of employment, privileges, and any claims or settlements for a specific physician.  The subpoenas were ultimately quashed pursuant to Minnesota's peer review/quality assurance statutes. *Id.* at 153.  The *Fairview* Court held that the statutory peer review/quality assurance privilege applied in administrative proceedings, even though the plain language of Section 145.64 appears to limit its application to "civil actions." *Id.* at 153-54.

Simply put, *Fairview* demonstrates that despite the difficulty which may result from the application of the peer review/quality assurance privilege, Minnesota courts apply and interpret the peer review/quality assurance statutes consistent with their intended purpose, ardently safeguarding the peer review/quality assurance privilege.  In addition, there is a

6

presumption "that the legislature intended to favor a public interest over a private interest." *Amaral v. Saint Cloud Hosp.,* 598 N.W.2d 379, 388 (Minn. 1999). In fact, the Court in *Amaral* denied physicians' requests to access a hospital's review organization information, citing the public interest in quality health care provided for by the peer review/quality assurance statutes. *Id.* As the *Amaral* Court explained, "[t]he provider data exception was not meant to be used as a tool for individual physicians to penetrate the wall of confidentiality that the legislature has so carefully constructed merely because the physicians are curious about what was said about them." *Id.* The sanctity of the peer review/quality assurance privilege in Minnesota is further underscored by the fact that the unauthorized disclosure of peer review records is a misdemeanor. Minn. Stat. § 145.66

**B.**    **Essentia's Privilege Log complies with Rule 26(b)(5(A)(ii) of the Federal Rules of Civil Procedure.**

Rule 26 of the Federal Rules of Civil Procedure governs when a privilege log must be produced. FED. R. CIV. P. 26. Rule 26(b)(5)(A)(ii) provides a party claiming an applicable privilege must "describe the nature of the documents, communications, or tangible things not produced or disclosed, and do so in a matter that, <u>without revealing information itself privileged or protected,</u> will enable other parties to assess the claim." FED. R. CIV. P. 26(b)(5)(A)(ii) (emphasis added). By its plain terms, Rule 26 does not require the disclosure of protected information in describing the information withheld subject to an applicable privilege. However, the relationship between the requirements of Rule 26(b)(5)(A)(ii) and the peer review/quality assurance privilege appears to be a matter of first impression.[2]

---

[2] In fact, there appears to be very little case law addressing this specific issue at all. More importantly, "because of the lack of uniformity among the various states' peer review privilege statutes, caselaw interpreting [other states'] statutes is not highly persuasive" in the

The Advisory Committee Notes provide some guidance on this point. "The rule does not attempt to define for each case what information must be provided when a party asserts a claim of privilege." FED. R. CIV. P. 26(b)(5)(A)(ii) Advisory Committee's Note to 1993 Amendment. In fact, "details concerning time, persons, general subject matter, etc., may be appropriate if only a few items are withheld;" however, the Rule also contemplates describing privileged information more broadly by category. *Id.* In addition, under certain circumstances "some of the pertinent information affecting applicability of the claim...may itself be privileged. *Id.* "[The rule provides that such information need not be disclosed." *Id.*

This is such a circumstance and Essentia described the nature of the privileged documents with as much specificity as is possible while still preserving the applicable peer review/quality assurance privilege. If Essentia were required to disclose any greater level of detail as to the information withheld subject to the peer review/quality assurance privilege, the privilege would be asserted and destroyed simultaneously. By way of example only, if

---

interpretation of peer review and quality assurance statutes. *Trinity*, 544 N.W.2d 148, at 153. This is so because "'there is extremely wide variation in the privilege granted by the states,' and that there is little consistency in the entities covered or types of information protected." *Id.* In addition, "[t]he level of detail require to identify the information being withheld on a claim of privilege without breaching the privilege is likely a matter that can only be determined on a case-by-case basis." *Zelaya v. H&F Transportation, Inc.*, 2016 WL 11583012, at *4 (W.D. Tex. 2016). For similar reasons, *Families Advocate, LLC v. Sanford Clinic N.*, relied on by Plaintiffs, is not dispositive. No. 3:16-cv-114, 2019 U.S. Dist. LEXIS 234221, at *12-14 (D.N.D. Jan. 9, 2019). The Plaintiffs in *Families Advocate, LLC* did not challenge the privilege log at issue with respect to the designations made for the peer review/quality assurance privilege. Instead, the parties' dispute related to the level of detail necessary to demonstrate the applicability of the privilege afforded to communications between defense counsel and expert witnesses. This did not require any analysis as to the peer review/quality assurance statutes at issue here.

8

Essentia were required to identify the author, recipient, date, and document description of correspondence regarding quality assurance, Essentia would be revealing information that is itself privileged under the applicable peer review statutes. *See* N.D. Cent Code § 23-34-02(1) ("Peer review records are confidential and may be used by a peer review organization and the organization members only for conducting a professional peer review."); Minn. Stat. § 145.66 ("Any disclosure...of data and information acquired by a review committee or of what transpired at a review meeting, is a misdemeanor."). Rule 26 of the Federal Rules of Civil Procedure does not require this; nor do the applicable peer review/quality assurance statutes permit such disclosure either. *See id.* Accordingly, Essentia should not be required to supplement its Privilege Log with any greater level of detail than was previously provided for those documents for which it asserted the peer review/quality assurance privilege.

The production of privilege logs as required by Rule 26(b)(5)(A)(ii) was designed to "reduce the need for in camera examination." *Id.* Consistent with the Advisory Committee's Notes, however, the need for in camera inspections cannot be eliminated entirely by the requirement to produce a privilege log as there may be situations, such as this one, where a party is unable to provide further detail due to the nature of the privilege asserted. *Id.* To the extent the Court has continued concerns regarding Essentia's Privilege Log, Essentia respectfully requests it be permitted to produce for in camera inspection only a more detailed privilege log with respect to those documents for which it claims application of the peer review/quality assurance privilege.

## III.   **CONCLUSION**

In this diversity action, privileges are governed by applicable state law. Accordingly, the peer review/quality assurance privilege, outlined by state statute, applies to prohibit the

disclosure of peer review/quality assurance information. The applicable peer review/quality assurance privilege is comprehensive and must be read and applied consistently with the requirements of the Federal Rules of Civil Procedure as they relate to the production of privilege logs. The Federal Rules require only that a party provide sufficient detail to assert an applicable privilege without revealing information that is itself privileged. Essentia fully complied with this procedure and is unable to provide additional detail for the documents for which it asserted the peer review/quality assurance privilege because to do so would reveal privileged information. Essentia, therefore, should not be required to supplement its Privilege Log with any greater level of detail than was previously provided. Alternatively, Essentia should be permitted to produce a more detailed privilege log for in camera inspection only.

Dated this 1st day of June, 2021.

**VOGEL LAW FIRM**

*s/ Angela E. Lord*

BY:   Angela E. Lord (#05351)
Robert B. Stock (#05919)
Briana L. Rummel (#08399)
218 NP Avenue
PO Box 1389
Fargo, ND 58107-1389
701.237.6983
Email:   alord@vogellaw.com
rstock@vogellaw.com
brummel@vogellaw.com
ATTORNEYS FOR ESSENTIA HEALTH
AND INNOVIS HEALTH, LLC

4429010.1

10