**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**

| | | |
|---|---|---|
| JESSICA KRAFT, INDIVIDUALLY AND AS PARENT OF MINORS L.K., S.K., and O.K.; SHELLI SCHNEIDER, INDIVIDUALLY AND AS PARENT OF MINORS A.S and W.S.; ANNE BAILEY, AS PARENT OF MINOR D.B.; AMY LAVELLE, AS PARENT OF MINORS Em.L. and El.L; ELIZABETH BEATON, INDIVIDUALLY AND AS PARENT OF MINOR M.B.; AMANDA AND TYRELL FAUSKE, INDIVIDUALLY AND AS PARENTS OF MINORS C.R.F and C.J.F.; JENNIFER REIN, INDIVIDUALLY; and JESSICA BERG, AS PARENT OF MINORS A.B. and S.B., individually and on behalf of all others similarly situated, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 3:20-CV-121<br><br>Hon. Peter D. Welte<br><br>Mag. Alice R. Senechal |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| ESSENTIA HEALTH, INNOVIS HEALTH, LLC d/b/a ESSENTIA HEALTH, DAKOTA CLINIC PHARMACY, LLC, JOHN DOE MANUFACTURERS, and JOHN DOE DISTRIBUTOR, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFFS' RESPONSE TO ESSENTIA HEALTH'S MEMORANDUM REGARDING PEER REVIEW/QUALITY ASSURANCE PRIVILEGE IN THE CONTEXT OF A PRIVILEGE LOG**

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................... 1

II.     PEER REVIEW PRIVILEGE GENERALLY ..................................................... 3

III.    ARGUMENT ......................................................................................................... 4

      A.      The Privileges shield a peer review organization's records in connection
with a professional peer review -- not the peer review itself. ............................. 4

      B.      Courts routinely require withholding parties to provide substantive detail –
about both the documents and the peer review -- to support the assertion of
privilege. ............................................................................................................... 7

      C.      The importance of additional detail is underscored by Essentia's blanket
assertion of the Privileges and overlapping assertions of contradictory privileges. ......... 11

      D.      There is no basis for an *in camera*-only production of a privilege log and
Essentia's request for one should be denied. ..................................................... 13

IV.     CONCLUSION ................................................................................................... 14

## TABLE OF AUTHORITIES

**Cases**                                                                                       **Page(s)**

*Allred v. Saunders*,
    2014 UT 43, 342 P.3d 204 (S. Ct. 2014) .................................................................. 10

*Amaral v. Saint Cloud Hosp.*,
    598 N.W.2d 379 (Minn. 1999) ............................................................................... 6

*Cornejo v. Mercy Hosp. & Med. Ctr.*,
    No. 12 C 1675, 2014 U.S. Dist. LEXIS 129586 (N.D. Ill. Sep. 15, 2014) ................... 7, 10, 11

*Earhart v. Elder*,
    No. 5:18-CV-01000, 2019 U.S. Dist. LEXIS 19427 (S.D. W.Va. Feb. 5, 2019) .................... 9

*Elkharwily v. Mayo Holding Co.*,
    No. 12-3062 (DSD/JJK), 2014 U.S. Dist. LEXIS 98380 (D. Minn. July 21, 2014) .............. 11

*Ervin v. Howard Univ.*,
    445 F. Supp. 2d 23 (D.D.C. 2006) ......................................................................... 13

*In re Fairview-Univ. Med. Ctr.*,
    590 N.W. 2d 150 (Minn. Ct. App. 1999) ................................................................. 5-6

*Justice v. Banka*,
    2014 Phila. Ct. Com. Pl. LEXIS 308 (Aug. 29, 2014) ........................................... 12

*Pal v. N.Y. Univ.*,
    06-cv-5892, 2007 U.S. Dist. LEXIS 91051 (S.D.N.Y. Dec. 5, 2007) ...................... 6

*Powers v. Mem'l Sloan Kettering Cancer Ctr.*,
    20-cv-2625, 2020 U.S. Dist. LEXIS 187204 (S.D.N.Y. Oct. 8, 2020) ...................... 9

*Trinity Med. Ctr., Inc. v. Holum*,
    544 N.W.2d 148 (N.D. 1996) ................................................................................ 4, 5

*William Beaumont Hosp. & S. Oakland Anesthesia Assocs., P.C. v. Medtronic, Inc.*,
    No. 09-CV-11941, 2010 U.S. Dist. LEXIS 39093 (E.D. Mich. Apr. 21, 2010) ...................... 8

**Statutes**

Mich. Comp. Laws § 333.20175 ................................................................................ 8

Mich. Comp. Laws § 333.21515 ................................................................................ 8

Minn. Stat. § 145.61 ................................................................................................ 3

Minn. Stat. § 145.64 ....................................................................................... 3, 5, 13

Minn. Stat. § 145.65 ............................................................................................... 3

N.D. Cent. Code § 23-34-01 ......................................................................... 4, 5, 13

N.D. Cent. Code § 23-34-02 ................................................................................... 4

N.Y. Pub. Health Law §2805-m ............................................................................. 9

Utah Code Ann. § 26-25-3 ...................................................................................... 9

Utah Code Ann. § 26-26-1 ...................................................................................... 9

W. Va. Code §30-3C-3 ............................................................................................ 8

63 P. Stat. Ann.§ 425.4 ......................................................................................... 12

735 ILCS 5/8-2101 ............................................................................................... 10

**Rules**

Fed. R. Civ. P. 26 ...................................................................................... 1, 8, 9, 10

## I.    INTRODUCTION[1]

Most states set forth a medical peer review privilege that shields from discovery certain records prepared for quality review proceedings. Essentia asks the Court to expand Minnesota's and North Dakota's peer review privileges ("Privileges") and hold, for the first time ever, that the mere *existence* of a peer review organization, the identities of its members, the existence of a professional peer review, its dates of operation and communications, and the subject matter of its inquiry and documents are all privileged. It acknowledges that no case in Minnesota or North Dakota supports this position, and it doesn't cite a single supportive case from any other court. It ignores opposing cases from other jurisdictions. And it offers no support for this approach from the plain language of either state's statutory privilege – which protect, e.g., "records" from a peer review, but not the existence of the peer review. Essentia nevertheless seeks an expansion of the Privileges to excuse it from producing a privilege log that meets the requirements of Federal Rule of Civil Procedure ("Rule") 26.

Essentia claims that "The Federal Rules require only that a party provide sufficient detail to assert an applicable privilege without revealing information that is itself privileged." Memo at 10. Not quite. The Federal Rules require more than the mere assertion of a privilege; a party must "describe the nature of the documents . . . not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Rule 26(b)(5)(A)(ii).

Despite this requirement, Essentia produced a privilege log in which it described dates of

---

[1] Plaintiffs respectfully submit this memorandum in response to Essentia Health's Memorandum Regarding Peer Review/Quality Assurance Privilege in the Context of a Privilege Log ("Memo"), ECF No. 63, and pursuant to the Court's direction at the May 19, 2021, status conference.

withheld documents as "various"; described subject matter only as "lawsuit" or "investigation"; and left senders and recipients entirely blank. **Exhibit A** (rows 1-3).[2] Essentia claims that providing "additional detail . . . would reveal privileged information." Memo, p. 10. But there's no support for that idea. The Privileges may (if applicable) protect the content and substance of the withheld documents, but not the administrative information required to assess the claim of privilege. In fact, Essentia is required to provide that information to support its privilege assertions.

The requested privilege log detail is not a merely administrative requirement. Information is necessary to determine where the privilege, if any, starts and ends. Essentia bears the burden to demonstrate (1) the withheld documents were created exclusively by or for a peer review organization in connection with a professional peer review; (2) the documents were not used for any purpose other than the professional peer review procedure; (3) the documents are not available from an "original source" (i.e., a source other than the peer review organization); and (4) the privilege has not been waived. And Essentia acknowledges that the application of the peer review privilege may be difficult. Memo, p. 6.

Plaintiffs thus respectfully request that the Court deny Essentia's request for an overbroad application of the Privileges and order it to provide (1) a privilege log identifying the documents withheld; their authors, senders, and recipients; their dates; and their subject matter; (2) enough information about the alleged professional peer review (e.g., members of the peer review organization, dates of the peer review, subject) to determine whether the withheld documents fall within the scope of that review; (3) and evidence supporting that the withheld documents exist solely for the purpose of the professional peer review, were not used for other purposes, and are

---

[2] Essentia also failed to support or provide detail regarding its assertions of other privileges and protections.

2

unavailable from other sources.

## II.   PEER REVIEW PRIVILEGE GENERALLY

Minnesota's peer review privilege shields from discovery certain "data and information acquired by a review organization, in the exercise of its duties and functions, or by an individual or other entity acting at the direction of a review organization." MINN. STAT. § 145.64 subd. 1. A "[r]eview organization" is, e.g., "a committee whose membership is limited to professionals, administrative staff, and consumer directors . . . established by . . . a hospital . . . to gather and review information relating to the care and treatment of patients for the purposes" enumerated by the statute.[3] *Id.* at § 145.61, subd. 5.

Not everything related to a professional peer review is privileged. Unlike a review organization's "data and information," "proceedings and records" are only exempt from discovery in actions "against a professional," i.e., "a person licensed . . . to practice a healing art . . . ." *Id.* at §§ 145.64, subd. 2, 145.61, subd. 2. "Guidelines" established by a peer review committee are discoverable, though they may be inadmissible in certain proceedings by or against a professional. *Id.* at § 145.65; *See also* § 145.64. And "[i]nformation, documents or records otherwise available from original sources shall not be immune from discovery or use in any civil action merely because

---

[3] Those purposes include, for example: "(a) evaluating and improving the quality of health care; (b) reducing morbidity or mortality; (c) obtaining and disseminating statistics and information relative to the treatment and prevention of diseases, illness and injuries; (d) developing and publishing guidelines showing the norms of health care in the area or medical institution or in the entity or organization that established the review organization; (e) developing and publishing guidelines designed to keep within reasonable bounds the cost of health care; (f) developing and publishing guidelines designed to improve the safety of care provided to individuals; (g) reviewing the safety, quality, or cost of health care services provided to enrollees of health maintenance organizations, community integrated service networks, health service plans, preferred provider organizations, and insurance companies; (h) acting as a professional standards review organization pursuant to United States Code, title 42, section 1320c-1 et seq."

they were presented during proceedings of a review organization . . . ." *Id.*

In North Dakota, "peer review records are confidential." N.D. CENT. CODE § 23-34-02(1).[4] "Peer review records" do not encompass all of a healthcare entity's records. Rather, "peer review records" are those that are "part of [a] professional peer review" and were used "only for conducting a professional peer review." *Id.* at §§ 23-34-01(4)(a), 23-34-02(1). Some peer review records are, in addition to being confidential, privileged and exempt from discovery. *Id.* at § 23-34-03(1)(a). Peer review "[r]ecords gathered from an original source," however, are not privileged. *Id.*

Neither privilege protects information "about" a peer review organization or committee, the existence or scope of a peer review organization or professional peer review, or its members.[5]

### III.    ARGUMENT

**A. The Privileges shield a peer review organization's records in connection with a professional peer review -- not the peer review itself.**

Essentia repeatedly notes how "broad" the Privileges are. Memo, pp. 2-6, 8. But they are not infinite nor all-encompassing. As Essentia notes, North Dakota's privilege was broadened in 1997 in response to the North Dakota Supreme Court's decision in *Trinity Med. Ctr., Inc. v. Holum,* 544 N.W.2d 148, 155 (N.D. 1996). In *Trinity*, plaintiffs advocated for privilege over a peer review

---

[4] "Records" include "Data, information, reports, documents, findings, compilations and summaries, testimony, and any other records generated by, acquired by, or given to a peer review organization as part of any professional peer review" and "communications relating to a professional peer review" between the organization's members, staff, and individuals participating in the professional peer review. *Id.* at § 23-34-01(4)(a).

[5] Essentia has not identified which state's privilege it asserts, but contends that a choice of law analysis is not required because there is no conflict "on these facts." Memo, n. 1. Plaintiffs agree that there is no conflict on the discrete issue before the Court; neither statute's privilege would encompass the detail required by a privilege log. However, the privileges do differ in some other respects, and a choice of law analysis will be appropriate if and when Essentia's substantive privilege assertions are in dispute.

4

committee's "information, data, reports, [and] records." *Id.* at 156. But the court found, *inter alia,* that the statute at the time shielded only "proceedings and records" of certain committees. *Id.* at 155-67. The court noted: "If our legislature had intended to provide a broad[er] statutory privilege . . . it could have said so." *Id.* at 155. And so, the legislature responded.

The North Dakota legislature amended the rule to shield "[d]ata, information, reports, documents, findings, compilations and summaries, testimony, and any other records . . . . " N.D. CENT. CODE § 23-34-01(4)(a)(1). But it did not—as Essentia asks this Court to do—provide for confidentiality or privilege over the existence and circumstances of the professional peer review itself or transactional information about its records. As the North Dakota Supreme Court recognized in *Trinity*, if the legislature had intended to expand the privilege in that way, "it could have said so." It did not. And there is not a single case in the nearly 25 years since the statute's amendment that supports such a broad application of the privilege.

None of Essentia's cited authority warrants the expansion of the Privileges. Essentia cites *In re Fairview-Univ. Med. Ctr.*, 590 N.W. 2d 150 (Minn. Ct. App. 1999), claiming that it applied Minnesota's privilege to "administrative proceedings, even though the plain language . . . appears to limit its application to 'civil actions.'" Memo, p. 6. That is a misconstruction of an irrelevant case. The court in *Fairview* did not read beyond the plain language of the statute to effect amorphously "broad protections," as Essentia suggests. It expressly found support in the language of the statute itself: "We need not decide whether a contested case hearing before an administrative law judge is a 'civil action' within the meaning of the statute. The first sentence of the confidentiality provision states that all data and information acquired by a review organization 'shall not be subject to subpoena or discovery.' MINN. STAT. § 145.64, subd. 1. This language is broader than the subsequent prohibition against discovery in a civil action." *Fairview-University*

5

*Med. Ctr.*, 590 N.W.2d at 53-54.

Essentia cites another case supporting "a presumption 'that the legislature intended to favor a public interest over a private interest.'" Memo, pp. 6-7 (quoting *Amaral v. Saint Cloud Hosp.*, 598 N.W.2d 379, 388 (Minn. 1999)). Essentia, a private entity, seeks to shield from discovery information related to Essentia's administration of potentially ineffective, if not unsafe, pharmaceuticals to tens of thousands of its patients—including infants, children, and cancer patients. Under no construction would granting Essentia's request "favor a public interest over a private interest."[6]

Peer review privileges "are designed to serve the strong public interest in improving the quality of health care." *Amaral*, 598 N.W.2d at 387.  In furtherance of that goal, they are intended to encourage candid and open participation in the peer review process without fear of damaging professional relationships or retaliation if that information is used in a malpractice suit. *Id.* at 387-88.[7] Essentia's proposed approach, however – shielding the mere circumstances of a professional peer review from discovery and administrative information needed to assess privilege (particularly in a case with a robust protective order providing methods to protect truly confidential information from public disclosure) – would severely undermine the interests of patient care.

---

[6] *Amaral* is factually inapplicable as well. It concerns the application of Minnesota's "provider data" exception upon two physicians' requests for information about themselves from certain of the hospitals' peer review organizations. 598 N.W.2d 379.

[7] Relying on the underlying policy of such privileges, courts have rejected the privileges' application in cases outside of the medical malpractice context. *E.g.*, *Pal v. N.Y. Univ.*, 06-cv-5892, 2007 U.S. Dist. LEXIS 91051, at *20 (S.D.N.Y. Dec. 5, 2007) ("Because any disclosure of the information will presumably be subject to a protective order, . . . the participants in the disciplinary proceedings also will continue to be assured that they may openly engage in a discussion of a physician's actions without fear of exposing themselves or their hospital to malpractice liability. While this disclosure could potentially lead to NYU's liability on a *whistleblower* claim, the Public Health and Education Law privileges are not intended to guard against this possibility.") (emphasis in original).

6

Under Essentia's construction of the privilege, a healthcare entity could unilaterally bury information about any problem under the guise of a blanket "peer review privilege." Courts have recognized that peer review privileges do not extend so far:

> Documents created in the ordinary course of business, to weigh potential liability risk, or for later corrective action by hospital staff are not privileged, even if they are later used by a committee in a peer-review process. [citation omitted] . . . **"If the simple act of furnishing a committee with earlier-acquired information were sufficient to cloak that information with the statutory privilege, a hospital could effectively insulate from disclosure virtually all adverse facts known to its medical staff**, with the exception of those matters actually contained in a patient's records." [citation omitted] Further, the Act "does not protect against disclosure of information generated before a peer-review process begins or after it ends."

*Cornejo v. Mercy Hosp. & Med. Ctr.*, No. 12 C 1675, 2014 U.S. Dist. LEXIS 129586, at *6 (N.D. Ill. Sep. 15, 2014) (citations omitted) (emphasis added).

Essentia must provide sufficient information about the withheld documents to allow Plaintiffs to assess whether the peer review privilege applies. That information must support the existence of a peer review organization and a professional peer review, and that documents were created for the purposes of that professional review and for no other purpose. That information is not privileged.

**B. Courts routinely require withholding parties to provide substantive detail – about both the documents and the peer review – to support the assertion of privilege.**

Essentia acknowledges that no Minnesota or North Dakota case supports its position. Memo, pp. 4-5. And it cites no support from any other court. Instead, it contends that other states' persuasive analyses should be disregarded because state privileges vary. Memo, n. 2. But just as Essentia claims Minnesota and North Dakota privileges share similarities, so too do they share similarities with other states' privileges. And courts considering those similar privileges require detailed privilege log submissions (along with substantive detail supporting the existence of the

privilege).[8]

Michigan law, for example, shields "the records, data, and knowledge collected" in connection with a peer review. MICH. COMP. LAWS §§ 333.20175(8), 333.21515. Still, "[i]nformation concerning the date and author of peer review documents is not protected by the peer review privilege" and must be included on a privilege log. *William Beaumont Hosp. & S. Oakland Anesthesia Assocs., P.C. v. Medtronic, Inc.*, No. 09-CV-11941, 2010 U.S. Dist. LEXIS 39093, at *20 (E.D. Mich. Apr. 21, 2010) (requiring plaintiffs, pursuant to Rule 26(b)(5), to supplement a privilege log that already contained subject matter details like: "(1) Variance Reports and accompanying investigative notes and communications, (2) a Sentinel Event Report and accompanying Materials, (3) an Anesthesia Department Quality Assurance Review and accompanying materials, (4) a Summary FDA Site Visit, (5) a Beaumont Services Company Report of a Variance Report and accompanying investigative notes and communications, and (6) Physician Credential Files.").

West Virginia law, as another example, shields "[a]ny document prepared by or on behalf of a health care provider for the purpose of improving the quality, delivery, or efficiency of health care . . ." and "[a]ll peer review proceedings, communications, and documents of a review organization and all records developed or obtained during an investigation. . .." W. VA. CODE §30-3C-3(a), (c). Still, "[a] party wishing to establish applicability of the peer review privilege . . . should submit a privilege log which identifies each document for which the privilege is claimed by name, date, and custodian; contains specific information regarding (1) the origin of each

---

[8] Essentia's suggestion that the "relationship between the requirements of Rule 26(b)(5)(A)(ii) and the peer review/quality assurance privilege appears to be a matter of first impression" with "very little case law addressing this specific issue," Memo, p. 7, is belied by these cases.

document, and whether it was created solely for or by a review committee, and (2) the use of each document, with disclosures as to whether or not the document was used exclusively by such committee; and provides a description of each document and a recitation of the law supporting the claim of privilege." *Earhart v. Elder*, No. 5:18-CV-01000, 2019 U.S. Dist. LEXIS 19427, at \*12 (S.D. W.Va. Feb. 5, 2019) (citing, *inter alia*, Rule 26(b)(5)). "The party seeking the protections of the peer review privilege bears the burden of establishing its applicability by more than a mere assertion of privilege." *Id.* at \*12.

New York provides a peer review privilege that shields, e.g., "records, documentation, or committee actions or requests." N.Y. PUB. HEALTH LAW §2805-m. Yet courts require privilege logs detailing "(i) the type of document . . . (iii) the date of document; and (iv) the author of the document, the addressees of the document, and any other recipients, and where, not apparent, the relationship of the author, addressees, and recipients to each other, . . . and the privilege asserted," as well as "further assurance" that the privilege applies, e.g., "an affidavit indicating (1) whether Defendants have an official review procedure in place, and if so, providing a description of the procedure, (2) whether withheld statements or reports were made during a review procedure and (3) whether the review procedure was conducted as part of the evaluation of an individual physician." *Powers v. Mem'l Sloan Kettering Cancer Ctr.*, 20-cv-2625, 2020 U.S. Dist. LEXIS 187204, at \*6-7 (S.D.N.Y. Oct. 8, 2020) (recognizing application of Rule 26(b)(5) and a local rule further specifying the types of information required).

Utah sets forth a privilege for a peer review privilege that shields "information, interviews, reports, statements, memoranda, or other data. . . ." compiled or created during a peer-review process. UTAH CODE ANN. §§ 26-26-1, 26-25-3. And yet, the Utah Supreme Court has "emphasize[d] that a proper privilege log must provide sufficient foundational information for

each withheld *document* or *item* to allow an individualized assessment as to the applicability of the claimed privilege." *Allred v. Saunders*, 2014 UT 43, ¶ 27, 342 P.3d 204, 211 (S. Ct. 2014) (emphasis in original). The court continued, "it would be insufficient for the Hospital to simply assert a blanket claim of privilege for *all* documents sought by the subpoena. Rather, the Hospital would need to identify each document or item withheld from discovery and provide sufficient foundational material to establish that each withheld document or item was 'created specifically as part of a request for an investigation . . . for the purpose of evaluating care provided to reduce morbidity and mortality or to improve the quality of medical care.'" *Id.* (citing Utah parallel to Rule 26).

Illinois recognizes a privilege for "information, interviews, reports, statements, memoranda, recommendations, letters of reference or other third party confidential assessments of a health care practitioner's professional competence, or other data or . . . committees of . . . hospitals . . . used in the course of internal quality control or . . . for improving patient care . . . ." 735 ILCS 5/8-2101. Still, parties withholding documents must provide a "clear[] and . . . specific description of the documents being withheld, the reason they are being withheld and the date each document was created." *Cornejo v. Mercy Hosp. & Med. Ctr.*, No. 12 C 1675, 2014 U.S. Dist. LEXIS 129586, at *4 (N.D. Ill. Sep. 15, 2014). In *Cornejo*, after defendant served plaintiffs with two deficient privilege logs and declined to submit affidavits that could establish the parameters of the peer review process, the court undertook an *in camera* review of hundreds of withheld documents and overturned the majority of the privilege assertions because the documents "appear[ed] to have been generated in the ordinary course of business" or merely "contain[ed] objective facts." *Id.* at *7-11. The court noted:

> Defendant has presented no information whatsoever concerning the
> existence of a peer-review committee, let alone who was on the

10

committee, when the committee was formed, what, if any, documents were requested by or put before the committee, or when any peer-review process began and ended. Absent such information in a privilege log or inherent in the documents themselves, or in an affidavit or some other supporting materials, the Court has no way of determining whether these documents were generated for or at the request of a peer-review or other committee within the protection of the Act, or whether they were generated in the ordinary course of business, or whether they were created before or after a peer review process began or ended.

*Id.* at \*13.[9] The documents' mere use in the quality control process did not render them privileged, they must have been generated in a manner protected by the privilege in the first place. *Id.*[10]

As supported by each of these cases and the privileges themselves, Essentia should be required to supplement its privilege log.

### C. The importance of additional detail is underscored by Essentia's blanket assertion of the Privileges and overlapping assertions of contradictory privileges.

Essentia's own privilege log—as bare as it is—calls Essentia's privilege assertions into question. In addition to the "peer review/quality assurance privilege," Essentia asserts "attorney-client privilege," "work product privilege," and "physician-patient privilege" for all of these same

---

[9] The court in *Cornejo* did not undertake an *in camera* review of the documents because the circumstances of the peer review were themselves privileged. Indeed, even the "sorely lacking" and "woefully deficient" privilege log entries in that case provided far more detail than Essentia has here, specifying, e.g.: "[c]ommunication from the Mercy Medical Staff Coordinator to Dr. Perego concerning the Credentials Committee meeting, used in the course of internal quality control and used for granting, limiting or revoking staff privileges." *Id.* at \*3-4, 14 (emphasis omitted). The court nevertheless demanded more, and only resorted to an *in camera* review of the documents when defendant failed to provide the requisite detail.

[10] There is indeed a dearth of case law regarding privilege logs for the Minnesota or North Dakota peer review privileges – perhaps because it is so universally accepted that privilege logs must provide enough detail to assess privilege assertions. However, in *Elkharwily v. Mayo Holding Co.*, No. 12-3062(DSD/JJK), 2014 U.S. Dist. LEXIS 98380, at \*11 (D. Minn. July 21, 2014), the district court affirmed the magistrate judge's approach for evaluating the applicability of Minnesota's peer review privilege involving the parties' exchange of privilege logs, allowing "an evaluation . . . as to whether the peer review privilege applies **as to specific documents**, then unresolved issues can be brought to the court," at which time *in camera* review of disputed documents may be appropriate. (Emphasis added.)

11

documents. It withholds communications with outside and in-house counsel as well as internal pharmacy documents. Using peer review documents for other purposes – e.g., damage control, legal liability assessment, patient relations, and public relations – removes them from the protections of the peer review privilege:

> **Legal counsel's significant participation altered the investigation from one of peer evaluation of medical care to perspectives of damage control and legal liability**. . . . The documents generated by the committee were not only used to evaluate the quality of care . . .  The documents were used for multiple purposes: (1) to inform the U.S. Attorney's office of potential criminal activities, (2) to notify the State Board of Medicine . . . , (3) to advise . . .  former patients. . . , (4) and finally, to the general public to minimize the public relations damage . . . . This is beyond peer review activity. No chilling effect on any actual peer review process will occur by the finding that the Defendants waived privilege. . . **When Defendants used the information originally created for peer review to consult with others to prepare a press release to advise its executives of a potential public relations catastrophe or to make legal decisions, such information lost its peer review protection.**

*Justice v. Banka*, 2014 Phila. Ct. Com. Pl. LEXIS 308, *15-17 (Aug. 29, 2014) (emphasis added).[11]

Likewise, Essentia's blanket assertion of privilege also calls the assertion's propriety into question. At the May 19 status conference, Essentia's counsel claimed to have interviewed nearly two dozen custodians to identity potentially responsive or relevant documents and to have asked those custodians to identify responsive documents of which they may be aware (i.e., to collect documents even before the application of search terms). To date, Essentia has produced only one document addressing the temperature excursion or affected pharmaceuticals – a preservation letter – and has withheld hundreds. It appears that Essentia may hold the mistaken belief

---

[11] The Pennsylvania Peer Review Protection Act, 63 P. Stat. Ann. § 425.4, shields "[t]he proceedings and records of a review committee. . . ." Like Minnesota and North Dakota privileges, "information, documents or records otherwise available from original sources are not to be construed as immune from discovery. . . ." *Id.*

12

"that *any* statement made by one of its staff members or officers that might reflect poorly on patient care cannot be discovered in litigation. That is not the case.":

> Only those statements made in a *peer review process* are non-discoverable; a physician's observations of events in the Hospital, opinions on patient care and the skills of colleagues, or documentation of problems or concerns are not privileged, except insofar as any reports of such observations, opinions, or documentation are submitted to a peer review body. However broadly a "peer review body" might be defined by the statute, there must be actual and functional elements of "peer review" being performed for the Act to apply. The statute itself supports this interpretation by defining "peer review" as a "procedure." *See* D.C. Code § 44-801(5). General observations and opinions on patient care, good or bad, that are not part of a peer review procedure merely constitute part of the normal experiences of professional life, not peer review.

*Ervin v. Howard Univ.*, 445 F. Supp. 2d 23, 26-27 (D.D.C. 2006) (emphasis in original); *see also* N.D. CENT. CODE § 23-34-01(5) (similarly limiting a "professional peer review" to particular "procedures" and "functions."); MINN. STAT. § 145.64, subd. 1 (limiting privilege to materials in exercise of certain "duties" and "functions")

With Essentia's limited privilege log, and without any additional information about the peer review "procedure" or whether the withheld documents were used for any other purpose, Plaintiffs are unable to assess the asserted privilege.

**D. There is no basis for an *in camera*-only production of a privilege log and Essentia's request for one should be denied.**

Essentia requests, in the alternative, that it be permitted to provide a more detailed privilege log for *in camera* review only.[12] That request should be denied. There is no support for the

---

[12] On June 3, 2021, after Essentia's memo was filed and before the due date for this response, the Court entered an order directing Essentia to submit a "representative sample" of documents (presumably from the various categories of documents identified on Essentia's privilege log) and a detailed privilege log for review *in camera* to "assist the court in resolving the issue." ECF No. 66.

application of privilege to administrative details regarding the withheld documents or evidence regarding the existence and scope of the professional peer review. Asking the Court to review the privilege log *in camera* asks it to undertake the complex inquiry Essentia recognizes exists, without information about the scope of the peer review, and prevents Plaintiffs from exercising their rights to assess the assertions of privilege.

An unnecessary *in camera*-only review also hides from Plaintiffs the boundaries of any actual professional peer review and would allow Essentia to make privilege assertions in depositions and testimony that Plaintiffs would be unable to assess – inevitably increasing disputes and the need for continued court oversight. If the Court is inclined allow Essentia's privilege log to remain *in camera* only, Plaintiffs request that Essentia produce all withheld documents, and affidavits supporting the purported peer review, to give the Court a more complete picture of Essentia's privilege assertions.

## IV. CONCLUSION

There is no statutory or common law support allowing a withholding party to limit its privilege log when asserting peer review privileges. To the contrary, numerous courts have required that parties provide detailed information about both the withheld documents and the nature of the peer review itself.

Plaintiffs thus respectfully request that the Court deny Essentia's request for an overbroad application of the Privileges and order it to provide a detailed privilege log and particularized facts demonstrating that the privilege applies.

Dated: June 8, 2021

/s/ Melissa Ryan Clark
Melissa Ryan Clark
Brooke A. Achua
FEGAN SCOTT LLC
140 Broadway, 46th Fl.

14

New York, NY 10005
Ph: 646.502.7910
Fax: 312.264.0100
melissa@feganscott.com
brooke@feganscott.com

Elizabeth A. Fegan
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
Ph: 312.741.1019
Fax: 312.264.0100
beth@feganscott.com

Mac Schneider
SCHNEIDER LAW FIRM
815 3rd Ave. S.
Fargo, ND 58103
Ph: 701-235-4481
Fax: 701-235-1107
mac@schneiderlawfirm.com

J. Barton Goplerud
Brian Marty
SHINDLER, ANDERSON, GOPLERUD &
WEESE, PC
5015 Grand Ridge Drive, Suite 100
West Des Moines, Iowa 50265
Ph: (515) 223-4567
Fax: (515) 223-8887
goplerud@sagwlaw.com

Counsel for Plaintiffs

15