# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

JESSICA KRAFT, INDIVIDUALLY AND )
AS PARENT OF MINORS L.K., S.K., and )
O.K.; SHELLI SCHNEIDER, )
INDIVIDUALLY AND AS PARENT OF )
MINORS A.S and W.S.; ANNE BAILEY, )
AS PARENT OF MINOR D.B.; AMY )
LAVELLE, AS PARENT OF MINORS )
Em.L. and El.L.; ELIZABETH BEATON, )
INDIVIDUALLY AND AS PARENT OF )    No. 3:20-cv-121
MINOR M.B.; AMANDA AND TYRELL )
FAUSKE, INDIVIDUALLY AND AS )
PARENTS OF MINORS C.R.F. and C.J.F.; )    Hon. Peter D. Welte
JENNIFER REIN, INDIVIDUALLY; and )
JESSICA BERG, AS PARENT OF MINORS )    Mag. Alice R. Senechal
A.B. and S.B., individually and on behalf of )
all others similarly situated, )
                       )
        Plaintiffs, )
                       )
   v. )
                       )
ESSENTIA HEALTH, INNOVIS )
HEALTH, LLC d/b/a ESSENTIA )
HEALTH, DAKOTA CLINIC )
PHARMACY, LLC, JOHN DOE )
MANUFACTURERS, and )
JOHN DOE DISTRIBUTOR, )
                       )
        Defendants. )

# PLAINTIFFS' RESPONSE TO ESSENTIA HEALTH'S MEMORANDUM REGARDING MEDICAL AUTHORIZATIONS

**TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................................................................. 1

II.   RELEVANT RULES OF LAW.......................................................................................... 3

     A.    HIPAA ................................................................................................................... 3

     B.    State Law Privileges ............................................................................................. 4

III.  ARGUMENT...................................................................................................................... 6

     A.    HIPAA authorizes Essentia to disclose PHI pursuant to the qualified
     protective order entered by this Court. ................................................................... 6

     B.    HIPAA authorizes the disclosure of putative class members' PHI. ........................ 9

     C.    State law privilege waivers are inapplicable in this case because Plaintiffs
     have not placed their medical conditions in controversy.................................... 11

     D.    Essentia's medical authorizations are not just legally baseless, they are also
     factually overbroad and invasive. ...................................................................... 14

IV.   CONCLUSION................................................................................................................. 16

# TABLE OF AUTHORITIES

**Cases**                                                                                                           **Page(s)**

*Accounts Receivable Servs., L.L.C. v. Ojika,*
No. A16-1536, 2017 Minn. App. Unpub. LEXIS 366 (Minn. Ct. App. Apr. 24, 2017) ...... 7, 8

*Auer v. City of Minot*,
178 F. Supp. 3d 835 (D.N.D. 2016) .................................................................................. 12

*In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.,*
No. 15-2666 (JNE/FLN), 2017 U.S. Dist. LEXIS 193938 (D. Minn. July 27, 2017) ........... 13

*Briggs v. Adel,*
No. CV-18-02684-PHX-EJM, 2020 U.S. Dist. LEXIS 124514 (D. Ariz. July 14, 2020) ........................................................................................................................... 10

*Chickadaunce v. Minott,*
No. 1:13-cv-01223-WTL-MJD, 2014 U.S. Dist. LEXIS 141722 (S.D. Ind. Oct. 6, 2014) ............................................................................................................................. 10

*EEOC v. Woodmen of the World Life Ins. Soc'y,*
No. 8:03CV165, 2007 U.S. Dist. LEXIS 7488 (D. Neb. Feb. 1, 2007) ............................... 15

*Evertson v. Dalkon Shield Claimants Tr.,*
No. 82-1021-MLB, 1993 U.S. Dist. LEXIS 9670 (D. Kan. June 1, 1993) ........................... 13

*Filz v. Mayo Found.*,
136 F.R.D. 165 (D. Minn. 1991) ................................................................................ 13-14

*Gobuty v. Kavanagh*,
795 F. Supp. 281 (D. Minn. 1992) .................................................................................. 13

*Hofer v. Mack Trucks, Inc.*,
981 F.2d 377 (8th Cir. 1992) .......................................................................................... 15

*Jenack v. Goshen Operations L.L.C.*,
2019 N.Y. Slip Op. 33772(U), ¶ 4 (Sup. Ct., Orange County 2019) .................................. 10

*Misc. Docket Matter No. 1 v. Misc. Docket Matter No. 2*,
197 F.3d 922 (8th Cir. 1999) .......................................................................................... 15

*Muller v. Rogers*,
534 N.W.2d 724 (Minn. Ct. App. 1995) .......................................................................... 12

*Nw. Mem'l Hosp. v. Ashcroft*,
    362 F.3d 923 (7th Cir. 2004) ...................................................................... 11, 13

*Palm v. Holocker*,
    2018 IL 123152, 433 Ill. Dec. 104, 131 N.E.3d 462 (Ill. 2019) ........................................... 12

*Sagmiller v. Carlsen*,
    219 N.W.2d 885 (N.D. 1974) ...................................................................... 6

*Smith v. Am. Home Prods. Corp. Wyeth-Ayerst Pharm.*,
    372 N.J. Super. 105, 855 A.2d 608 (Super. Ct. 2003) ........................................... 15

*Welton v. Emerson,*
    19HA-CV-09-123, 2009 Minn. Dist. LEXIS 273 (Minn. Dist. Ct. 1st Aug. 3, 2009)
    (Dakota Cnty., Aug. 5, 2009) ...................................................................... 14, 15

*Womack v. Wells Fargo Bank, N.A.*,
    275 F.R.D. 571 (D. Minn. 2011) ...................................................................... 12

**Statutes**

Minn. Stat. § 144.293 .................................................................................... 5, 7
Minn. Stat. § 595.02 ..................................................................................... 5, 6
N.D. Cent. Code § 28-01-46.1 .................................................................. 6, 15

**Rules**

45 C.F.R. § 160.103 .................................................................................... 4
45 C.F.R. § 160.202 .................................................................................... 5, 9
45 C.F.R. § 160.203 .................................................................................... 5, 7
45 C.F.R. § 164.501 .................................................................................... 9
45 C.F.R. § 164.502 .................................................................................... 3, 8
45 C.F.R. § 164.506 .................................................................................... 9
45 C.F.R. § 164.508 .................................................................................... 7
45 C.F.R. § 164.510 .................................................................................... 3
45 C.F.R. § 164.512 .................................................................................... 3, 4, 7, 10
45 C.F.R. § 164.524 .................................................................................... 3
Fed. R. Civ. P. 26 ....................................................................................... 15
Minn. R. Civ. P. 35.03 .............................................................................. 6, 14, 15
Minn. R. Civ. P. 35.04 .............................................................................. 6, 15
N.D. R. Evid. 503 ...................................................................................... 5, 8

## I.    INTRODUCTION[1]

Plaintiffs allege that defendant Essentia Health sold and administered pharmaceuticals that were stored outside the proper temperature range, i.e., subject to a "temperature excursion." *See generally*, First Amended Class Action Complaint ("Cpl."), ECF No. 28. Essentia informed its patients that this temperature issue may reduce the pharmaceuticals' effectiveness, and told affected patients (Plaintiffs and class members) they may require follow-up care, including revaccinations.[2]

Plaintiffs brought claims on behalf of themselves and a similarly situated class for breaches of express and implied warranties, violation of consumer protection laws, and unjust enrichment. They seek recovery for their and the class's economic loss, including, for example, payment for the affected medications and for the medical appointments at which they were administered. Even if Plaintiffs and class members never get the disease the pharmaceuticals were intended to treat or prevent, their claims remain: Plaintiffs and the class paid for this medical care and did not receive the benefit of the bargain.

Discovery will thus encompass, *inter alia*, information about the temperature excursion; records demonstrating that those affected medications were administered, those appointments occurred, and the amount paid; as well as representations and statements defendants made to class members. Some of this discovery will necessarily involve Plaintiffs' and the class's protected health information (PHI).

---

[1] Plaintiffs respectfully submit this memorandum in response to Essentia Health's Memorandum Regarding Medical Authorizations ("Memo"), ECF No. 62, and pursuant to the Court's direction at the May 19, 2021 status conference.

[2] *E.g., Medication Temperature Issue at Fargo, North Dakota Storage Facility*, https://www.essentiahealth.org/alerts/medication-storage-issue/?utm_source=direct-mail&utm_campaign=medical-storage-issue-fy20 (last visited June 5, 2021).

Despite negotiating the Health Insurance Portability and Accountability Act (HIPAA) qualified protective order entered in this action ("Protective Order," ECF No. 45), however, Essentia now asks this Court to shield it from participating in the discovery permitted by HIPAA and that very Order. Simultaneously, Essentia asks the Court to order Plaintiffs to execute legally unwarranted, invasive medical authorizations seeking irrelevant medical records regarding "alcohol or drug abuse . . . psychiatric/psychological problems . . . therapy records, psychological evaluations, lists of prescriptions . . . sexually transmitted disease . . . behavior and/or mental health care, alcohol and abuse treatment, HIV/AIDS, and genetics," unlimited in time, from any provider or pharmacy Plaintiffs have seen since January 2017.[3]

Essentia has explained no need for these authorizations, has not even attempted to suggest the information sought is relevant to this case, and does not contend that it is unable to obtain any actually relevant records through proper discovery channels. Instead, Essentia's arguments are based on two misconceptions: (1) that state law privileges excuse it from producing documents containing PHI (those privileges are preempted by HIPAA) and (2) that Plaintiffs have placed their medical conditions in controversy in this action (this is a purely economic case and Plaintiffs' health is not in controversy, let alone are issues like mental health, HIV, and sexually transmitted disease).

Essentia's contentions are not only wrong, they are contradictory. On one hand, Essentia

---

[3] Essentia's requests for the production of documents ("RFPs") to Plaintiffs are attached at **Exhibit A**. RFP Nos. 6 and 7 seek medical authorizations from medical providers and pharmacies. Those authorizations are appended to the RFPs. RFP Nos. 6 and 7 cross-reference Essentia's interrogatories.

Essentia's interrogatories are attached as **Exhibit B**. Interrogatory numbers 18 and 19 seek the identification of any healthcare professional that treated each Plaintiff for any reason from January 2017 to the present and each pharmacy where medications were purchased for any reason from January 2017 to the present.

contends it cannot produce documents containing PHI (even Plaintiffs' own records), because state physician-patient privileges apply. On the other hand, Essentia contends those same privileges have been waived (warranting third-party medical authorizations). This cherry-picking of privacy provisions to use privilege as a sword and a shield should be rejected. HIPAA allows Essentia to produce relevant, responsive information in discovery pursuant to a protective order, but it does not give Essentia direct, unfettered access to irrelevant medical information outside of the discovery process.

Plaintiffs respectfully request that the Court order Essentia to produce relevant, responsive documents (even if they contain PHI) pursuant to the Protective Order and deny its requests for medical authorizations, instead requiring Essentia to obtain any relevant records through the proper discovery channels.

## II.   RELEVANT RULES OF LAW

### A.  HIPAA

HIPAA prohibits a "covered entity," like Essentia, from using or disclosing PHI unless use or disclosure is permitted or required by HIPAA regulations. 45 C.F.R. § 164.502. For example, covered entities are "required to disclose" PHI to an individual upon his or her request. 45 C.F.R. § 164.502(a)(2); § 164.524(a)(1) ("an individual has a right of access to inspect and obtain a copy of [PHI] about the individual . . . ."). HIPAA also allows disclosure if an individual is informed and has an opportunity to agree or prohibit disclosure. 45 C.F.R. § 164.510.

HIPAA also sets forth "[u]ses and disclosure for which an authorization or opportunity to agree or object is *not* required." 45 C.F.R. § 164.512 (emphasis added). For example, HIPAA allows disclosures "[i]n response to an order of the Court" or "[i]n response to a discovery request" even without such an order:

> **A covered entity may disclose protected health information in the course of any judicial or administrative proceeding** . . . in response to a subpoena, discovery request, or other lawful process, that is not accompanied by an order of a court or administrative tribunal, if the covered entity receives satisfactory assurances . . . that **reasonable efforts have been made . . . to secure a qualified protective order.**

45 C.F.R. § 164.512(e)(1)(i) and (ii)(B) (emphasis added).

HIPAA defines a "qualified protective order" as an order or stipulation that (A) prohibits the parties from using or disclosing the PHI for any purpose other than the litigation or proceeding for which such information was requested, and (B) requires the return to the covered entity or destruction of the PHI, including all copies made, at the end of the litigation or proceeding. 45 C.F.R. § 164.512(e)(1)(v).

These requirements are met by the Protective Order entered in this case. Indeed, the Protective Order, as negotiated by the parties, recognizes that: "Discovery in this litigation . . . may involve the production of . . . personal health information . . . ." ECF No. 45, § A(2). The Order restricts the use of "Confidential Information and Highly Confidential Information" to "only . . . the purposes of the Litigation." *Id.* at § C(6).[4] And the Order requires destruction or return of protected material after conclusion of the litigation. *Id.* at § I(2). The Protective Order entered in this case is thus a qualified protective order and Essentia is free to produce PHI in response to discovery requests. *See* 45 C.F.R. § 164.512(e)(1)(v).

**B.  State Law Privileges**

HIPAA expressly preempts state law unless the state law is both "contrary to" and "more

---

[4] The Protective Order defines "Confidential Information" to include "Protected Health Information," which has "the same definition as set forth in 45 C.F.R. §160.103." *Id.* at § B(6), (9).

stringent" than the HIPAA requirements. 45 C.F.R. § 160.203.[5] Neither Minnesota nor North

Dakota law is contrary and more stringent.[6]

Minnesota, like many states, sets forth a physician-patient privilege:

> A licensed physician or surgeon . . . shall not, without consent of the patient, be allowed to disclose any information or any opinion based thereon which the professional acquired in attending the patient in a professional capacity, and which was necessary to enable the professional to act in that capacity.

Minn. Stat. § 595.02 subd. 1(d). The Minnesota Health Records Act (MHRA) provides that: "A

provider, or a person who receives health records from a provider, may not release a patient's

health records to a person without: a signed and dated consent from the patient or the patient's

legally authorized representative . . . [or] (2) specific authorization in law[.]" Minn. Stat. § 144.293,

subd. 2.

Similarly, North Dakota Rule of Evidence 503 articulates a general rule of physician-

patient privilege:

> A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of diagnosis or treatment of the patient's physical, mental, or emotional condition. . . .

N.D. R. Evid. 503.

Either state's physician-patient privilege may be waived if a party affirmatively puts his or

---

[5] This exception to preemption does not apply if the disclosure is "[t]o the individual who is the subject of the individually identifiable health information." § 160.202(1)(ii). In other words, even if a state law is more restrictive, HIPAA's disclosure provisions preempt that law when individuals are requesting their own information.

[6] Essentia contends that "this Court need not resolve whether North Dakota or Minnesota law controls because there is no conflict between the applicable provisions." Memo, n. 1. Plaintiffs agree in that HIPAA preempts both states' laws, and, even if state law applied, neither would excuse Essentia from producing PHI pursuant to a protective order nor would they justify the medical authorizations Essentia seeks. Should a conflict in applicable laws arise, however, Plaintiffs respectfully request an opportunity to brief choice of law issues.

her health or medical condition in controversy in the action. In Minnesota, if a party "voluntarily places in controversy the physical, mental, or blood condition of that party . . .," that privilege may be waived "with respect to the same . . . condition." Minn. R. Civ. P. 35.03; *see also* Minn. Stat. § 595.02 subd. 5. Similarly, North Dakota law states:

> A party who commences an action for malpractice, error, mistake, or failure to cure, whether based on contract or tort, against a health care provider . . . or a health care facility . . . waives in that action any privilege existing under rule 503 of the North Dakota Rules of Evidence, as to any medical records . . . for the party . . . whose health or medical condition has been placed in controversy in the action.

N.D. Cent. Code § 28-01-46.1. Just as Minnesota's waiver is limited to the "same" condition in controversy, North Dakota's waiver is limited to the "medical records, opinions, or other information that appear reasonably calculated to lead to the discovery of admissible evidence as to any element of the action or the defense of the action." *Id*.

When the privilege is waived, the waiving party must provide "[a]ppropriate authorizations permitting access to the written medical record . . . ." *Id*. *See* Minn. R. Civ. P. 35.04(b) (requiring "written authority . . . concerning the . . . condition . . . as to which privilege has been waived").

The rationale for this waiver is that a party should not be permitted to assert a medical condition as a basis for damages and at the same time assert the privilege to prevent the other party from ascertaining the truth of the claim and the nature and extent of the injury or condition. *Sagmiller v. Carlsen*, 219 N.W.2d 885, 894-95 (N.D. 1974) (noting its decision "extends only to malpractice cases"). That rationale is inapplicable here, however, in an action for purely economic loss, where the plaintiffs' health is irrelevant to the damages they seek.

## III.   ARGUMENT

### A. HIPAA authorizes Essentia to disclose PHI pursuant to the qualified protective order entered by this Court.

As noted above, HIPAA provides for disclosure of PHI where a qualified protective order

6

has been entered. On March 1, 2021, this Court entered a HIPAA-qualified protective order in this action. ECF No. 45, 45 C.F.R. § 164.512(e); *supra* § II(A). Notably, Essentia does not dispute that the Protective Order meets HIPAA's requirements.

Instead, Essentia practically ignores the order altogether. It mentions the order only once, concluding simply that it changes nothing because HIPAA does "not require or mandate disclosure." Memo, p. 8. In other words, while HIPAA *allows* Essentia to produce PHI, Essentia feels free to unilaterally decline that authorization.

Essentia's only purported basis for disregarding HIPAA's authorizations is the existence of general state law physician-patient privileges. HIPAA expressly preempts state law privileges unless they are, *inter alia*, contrary to and "more stringent" than HIPAA. 45 C.F.R. § 160.203. While Essentia concedes this, it makes no real argument that either Minnesota's or North Dakota's privilege is contrary and more stringent. *See* Memo, pp. 8-9. And they are not.

With regard to Minnesota's privilege, Essentia notes that the privilege requires "consent" or "a specific authorization in law" for disclosure of patient health records. Memo, p. 9 (citing Minn. Stat. § 144.293, subd. 2). HIPAA requires the same. *See, e.g.*, 45 C.F.R. § 164.508 (disclosure with consent); 164.512 (authorized disclosure without consent). And the Minnesota Court of Appeals has made clear that HIPAA's provisions provide the "specific authorization in law" Minnesota requires. *Accounts Receivable Servs., L.L.C. v. Ojika*, No. A16-1536, 2017 Minn. App. Unpub. LEXIS 366, at *11 (Minn. Ct. App. Apr. 24, 2017) ("[Defendants] argue that HIPAA cannot provide specific authorization in law. . . . We disagree. Nothing in the MHRA suggests that the specific authorization in law must emanate from the MHRA itself."). Because HIPAA authorizes disclosure of PHI pursuant to a qualified protective order, so too does Minnesota state

7

law. *See id.*[7] (And in any event, because Minnesota state law is no more stringent than HIPAA, it, like North Dakota law, is expressly preempted.).

Essentia also sets forth the North Dakota privilege and notes that healthcare entities "have a duty to maintain the confidentiality of patient records." Memo, pp. 8-9. Of course they do. HIPAA requires that, too. *See, e.g.,* 45 C.F.R. § 164.502. North Dakota's privilege is no more stringent. In fact, North Dakota's privilege is less restrictive; for example, it does not apply at all to communications "relevant to a breach of duty by the physician . . . ." N.D. R. Evid. 503(d)(7).

Essentia's own Notice of Privacy Practices recognizes (and informs patients) that Essentia may disclose PHI in judicial proceedings.[8] The policy notes: "We may only use or disclose your health information with your written permission **except as described in this Notice or specifically required or permitted by law.**" *Id*. (emphasis added). Essentia tells patients that "[h]ealth information may be protected by both federal and state laws" and "**[w]here a state law is more stringent, we have listed that in this Notice**." *Id.* (emphasis added). It informs patients that: "**We may disclose your health information in the course of any judicial or administrative proceeding** as required or permitted by law, including in response to a court/administrative order, subpoena or similar process" – mirroring HIPAA's language. *Id*. (emphasis added). (The policy does not identify any "more stringent" state laws in connection with that provision). In sum,

---

[7] In its memo, Essentia distinguishes an argument Plaintiffs do not make, contending that "'specific authorization in law' does not mean Essentia is free to disclose protected health information . . . under the HIPAA exception for 'healthcare operations'" because that exception applies only to disclosure to the entity's own counsel. Memo, p. 9. Even accepting this as true— the "healthcare operations" exception is only one of the several HIPAA provisions legally authorizing disclosure of PHI. The provision relevant here authorizes disclosure pursuant to a qualified protective order.

[8] *Notice of Privacy Practices (Patient)*; https://www.essentiahealth.org/about/privacy-legal-notices/policy-patient/ (last accessed 6/7/2021)

Essentia's own policies recognize that HIPAA applies.

HIPAA does not just provide a basis for disclosure in discovery, it also provides a basis for Essentia to disclose documents to its own counsel. 45 C.F.R. § 164.506 (disclosure allowed for "healthcare operations"); 45 C.F.R. § 164.501 ("healthcare operations" include "legal services."). Essentia has already represented that it has reviewed and withheld—without signed authorizations—hundreds of documents that it claims are subject to peer review privileges and, for some or all of those documents, physician-patient privilege.[9] Essentia cannot rely on HIPAA to allow its counsel to review documents containing class members' PHI, but contend that HIPAA should be ignored when that putative class's own counsel seek those same documents in discovery.

### B.  HIPAA authorizes the disclosure of putative class members' PHI.

The dispute about Plaintiffs' access to their own records is a red herring. It is well established under state and federal law that patients are entitled to their own records. *See, e.g.,* 45 C.F.R. § 160.202(1)(ii). Essentia has manufactured the "medical authorization" hurdle to avoid disclosing information about alleged class-wide wrongdoing and to justify authorizations for third-party records that have nothing to do with this case.

Essentia claims it is "concerning" that Plaintiffs contend Essentia is free to disclose PHI of unnamed putative class members. Memo, pp. 9-10. Plaintiffs do not seek the release of private medical information into the public record. Plaintiffs seek the disclosure of limited, relevant and responsive records, in discovery, pursuant to a federal court's protective order, which meets the requirements of HIPAA. Numerous courts have considered this very issue and have recognized

---

[9] *See, e.g.,* ECF No. 63 (Essentia's memorandum regarding peer review privilege, noting over 200 documents withheld); Plaintiffs' contemporaneously filed response to ECF No. 63 (attaching privilege log which asserts both peer review and physician-patient privilege for the same documents).

that HIPAA expressly permits the disclosure of putative class member information in discovery. *E.g.*, *Briggs v. Adel*, No. CV-18-02684-PHX-EJM, 2020 U.S. Dist. LEXIS 124514, at *42 (D. Ariz. July 14, 2020) (Finding that, although HIPAA's privacy protections applied to the sought-after information of plaintiffs and putative, unnamed class members, "the information is nonetheless subject to disclosure under the terms of the Protective Order already in place."); *Jenack v. Goshen Operations L.L.C.*, 2019 N.Y. Slip Op. 33772(U), ¶ 4 (Sup. Ct., Orange County 2019) ("Disclosure of PHI pursuant to [a HIPAA-compliant protective] order is expressly authorized by 45 C.F.R. § 164.512(e)(1)(i). Such an order will enable the parties to exchange information relating to all members of the putative class, including those who are not active participants in this litigation."); *Chickadaunce v. Minott*, No. 1:13-cv-01223-WTL-MJD, 2014 U.S. Dist. LEXIS 141722, at *17 (S.D. Ind. Oct. 6, 2014) (Ordering production of putative class members' records and finding defendant's request that class counsel undergo HIPAA compliance training before receiving such records "groundless" and a "red herring" because the documents were being produced pursuant to court order and stipulated protective order).

Limiting disclosure under HIPAA to only the records of named parties would make no sense. Covered entities are plainly free to disclose to an individual his or her own records without any judicial proceeding, discovery request, protective order, or court intervention; HIPAA contemplates disclosure to third parties. Refusing to allow discovery regarding putative class members would hamper Plaintiffs' ability to prove their case and support their motion for class certification. HIPAA authorizes disclosure of PHI generally, including for putative class members,

10

subject to HIPAA's conditions.[10]

**C. State law privilege waivers are inapplicable in this case because Plaintiffs have not placed their medical conditions in controversy.**

Essentia is plainly authorized to produce the discovery Plaintiffs seek without medical authorizations. *Supra*. But Essentia contends it is entitled to medical authorizations anyway—including for Plaintiffs' third-party medical providers and pharmacies. In support, Essentia cites procedural state law privilege waiver provisions that apply when a party's health is voluntarily placed "in controversy" in the action. Those provisions are irrelevant to this case.

This case is simply not about Plaintiffs' health or medical conditions. Plaintiffs allege four causes of action seeking economic damages: breach of express warranties, breach of implied warranties, violation of the consumer protection laws of Minnesota and North Dakota, and unjust enrichment. Plaintiffs seek damages for "economic loss and other injuries," "restitution," and "punitive damages, or other applicable statutory damages." Cpl., ¶¶ 95, 134, 142. Specifically, Plaintiffs allege they were "**injured by paying** for the Affected Medications and associated medical visits without receiving the benefit of the bargain." *Id*. at ¶ 6 (emphasis added). Plaintiffs claim they are "**entitled to refunds** for visits for which they did not receive proper care." *Id*. at

---

[10] Essentia's attempt to draw parallels between this case and *Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 924 (7th Cir. 2004), a decision regarding women's abortion records, is off base. The court in *Northwestern* recognized that HIPAA allows covered entities to produce medical records pursuant to a court order (including a discovery protective order, like the one entered here). *Id.* at 925. The court affirmed the decision to quash the subpoena on the basis of Fed. R. Civ. P. 45(c) for reasons specific to the facts in that case. *Id.* at 926-27. In addressing medical privacy concerns generally, Essentia quotes the court out of context, omitting the bolded text: "The natural sensitivity that people feel about the disclosure of their medical records . . . **is amplified when the records are of a procedure that Congress has now declared to be a crime.**" Memo, p. 10 (citing 362 F.3d at 929). Here, there is no contrary and more stringent state privacy law, nor is the PHI Plaintiffs seek of the sensitive or "criminal" nature at issue in *Northwestern*. In reality, it is Essentia that demands that Plaintiffs sign overbroad medical authorizations that would encompass such private matters. Plaintiffs only seek discovery relevant to this case.

¶¶ 7, 43 (emphasis added). Plaintiffs also state they "will have to bear additional **out-of-pocket costs**" should they choose to get re-vaccinated outside of Essentia Health. *Id*. at ¶¶ 8, 45 (emphasis added). These allegations do not center around Plaintiffs' physical, mental, or emotional conditions.[11]

Judge Welte recognized this in his order denying Essentia's motion to dismiss; he stated: "Plaintiffs seek to recover for their **economic loss** and other injuries. . . . ECF No. 13 ("MTD Order"), p. 4. The Court "considered and reject[ed] Essentia's argument that Plaintiffs have not suffered an injury since **there are no allegations of physical harm**. . . . It is well settled that economic harm is sufficient injury for purposes of standing . . . ." *Id.* at 5-6 (emphasis added).

Essentia, too, recognized the purely economic nature of this case in its own motion to dismiss, in which it contended:

> **Absent in Plaintiffs' Complaint are any allegations that the vaccinations Plaintiffs, or their children, received were less effective or that they contracted the disease which the particular vaccination and/or immunizations were intended to prevent.** Additionally, Plaintiffs have not alleged some other harm resulting from the administration of the Affected Medications. At best, Plaintiffs allege the Affected Medications might have been subjected to a temperature excursion, potentially rendering them less effective or potent. Moreover, **Plaintiffs' only possible measurable injury is the cost associated with the purchase of the Affected Medications and associated medical services.**

---

[11] *See, e.g., Palm v. Holocker,* 2018 IL 123152, ¶ 13, 433 Ill. Dec. 104, 109, 131 N.E.3d 462, 467 (Ill. 2019) (holding, in a personal injury action, that defendant had not placed his medical condition at issue because it had "no bearing on his liability because 'he either drove negligently or he did not'") (relying on, *inter alia*, *Muller v. Rogers*, 534 N.W.2d 724 (Minn. Ct. App. 1995) ("defendant's medical records were privileged in a wrongful death case arising out of a traffic accident because the defendant had simply denied liability and was not relying on a medical condition as part of his defense.")); *Auer v. City of Minot*, 178 F. Supp. 3d 835, 841 (D.N.D. 2016) (a civil rights plaintiff seeking damages only for "garden variety" emotional distress damages is not deemed to have waived any right to confidentiality of medical records); *Womack v. Wells Fargo Bank, N.A.*, 275 F.R.D. 571, 572 (D. Minn. 2011) (allegations of "garden variety" emotional distress do not place a mental condition in controversy).

ECF No. 5, p. 12 (emphasis added).

Now, to justify a fishing expedition into Plaintiffs' private, irrelevant medical records—and its own refusal to produce discovery—Essentia makes the disingenuous argument that "there is no question" Plaintiffs' health and/or medical condition has been placed in controversy. Memo, p. 6. Essentia's assertion that "Plaintiffs will be required to demonstrate they were plagued with the disease the vaccinations and/or immunizations were intended to prevent, or suffered some other concrete injury as a result" is only half true. *Id.* Resolution of this case does not turn on whether the affected medications failed to prevent any disease—Plaintiffs suffered a concrete injury in terms of their financial loss, as Judge Welte has already recognized. This is not to say Plaintiffs would be foreclosed from recovering expenses related to the diseases the pharmaceuticals were intended to treat or prevent, but no dispute regarding Plaintiffs' health is in controversy now. At most, Plaintiffs' transactional records regarding their receipt of and payment for the affected medications and medical services, and any other expenses related to the excursion, like those for revaccination, are relevant. Those records can be sought through discovery, and the vast majority are already in Essentia's possession.[12]

---

[12] Throughout its memo, Essentia conflates *substantive* state-law privilege with discovery *procedure*. Even if waiver had occurred here, discovery of that information should be conducted through federal discovery procedures, not state law procedure regarding medical authorizations. *In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*, No. 15-2666 (JNE/FLN), 2017 U.S. Dist. LEXIS 193938, at *5 (D. Minn. July 27, 2017) ("*Erie* and its progeny . . . require a federal court sitting in diversity jurisdiction to apply state substantive law and federal procedural law.); *Nw. Mem'l Hosp.*, 362 F.3d at 925-26 (HIPAA's standard for disclosure in judicial proceedings is "purely procedural." It "create[s] a procedure for obtaining authority to use medical records in litigation. Whether the records are actually admissible in evidence will depend among other things on whether they are privileged."); *Evertson v. Dalkon Shield Claimants Tr.*, No. 82-1021-MLB, 1993 U.S. Dist. LEXIS 9670, at *4 (D. Kan. June 1, 1993) ("[S]tate law delineates the type and scope of privileges . . . .The *method* for discovering unprivileged material . . . is entirely a matter of procedure governed by the Federal Rules of Civil Procedure") (emphasis in original). Essentia notes that *Gobuty v. Kavanagh*, 795 F. Supp. 281

No waiver occurred and no authorizations are warranted. If Essentia seeks any relevant records, it should do so through well-established discovery procedure, which would allow Plaintiffs to gather and produce those records and/or consider and object to any requests.

### D. Essentia's medical authorizations are not just legally baseless, they are also factually overbroad and invasive.

Even if Essentia were entitled to medical authorizations, Essentia is not entitled to unfettered access to Plaintiffs' past and future medical history. Essentia's authorizations seek *all* medical records, including those related to "alcohol or drug abuse . . . psychiatric/psychological problems . . . therapy records, psychological evaluations, lists of prescriptions. . . sexually transmitted disease . . . behavior and/or mental health care, alcohol and abuse treatment, HIV/AIDS, and genetics." Exhibit A.

Essentia claims the authorizations are "limited in scope to the timeframe alleged in Plaintiffs' Amended Complaint through the present." Memo, p. 2. In truth, its proposed authorizations seek *all historical* and *some future* records (extending a year after execution). Exhibit A. And Essentia seeks those records from any provider or pharmacy Plaintiffs visited from January 1, 2017, to the present. *Id.* Essentia did not even disclose this issue (and Plaintiffs thus could not have sought revaccination outside of Essentia) until April 2020.

Even when medical releases are warranted, requests for medical releases that are overbroad and unrestricted in scope must be denied:

> Here, Plaintiff's injuries involved only his neck and back, and therefore are the only medical conditions that Plaintiff has placed in controversy. He has not waived his medical privilege with regard to all other conditions that he suffers from, and therefore Defendant is not entitled to unrestricted disclosures.

(D. Minn. 1992), held that state waiver-related procedural rules regarding *ex parte* interviews (not at issue here) apply even in diversity actions. The court in *Filz v. Mayo Found.*, 136 F.R.D. 165 (D. Minn. 1991), held the opposite.

14

Accordingly, Defendant's motion to compel Plaintiff to sign unlimited medical authorizations must be denied.

*Welton v. Emerson*, 19HA-CV-09-123, 2009 Minn. Dist. LEXIS 273, at *8 (Minn. Dist. Ct. 1st Aug. 3, 2009) (Dakota Cnty., Aug. 5, 2009); *See also* Minn. R. Civ. P. 35.03 (limiting waiver to "the same" condition in controversy); *id*. R. 35.04(b) (limiting authorizations to the "condition . . . as to which privilege has been waived."); N.D. Cent. Code § 28-01-46.1 (limiting waiver to "medical records, opinions, or other information that appear reasonably calculated to lead to the discovery of admissible evidence").[13]

Fed. R. Civ. P. 26(g) prohibits unreasonable, unduly burdensome, and harassing discovery. "Some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992). Further, "even if relevant, discovery is not permitted where no need is shown, or compliance would be unduly burdensome, or where harm to the person from whom discovery is sought outweighs the need of the person seeking discovery of the information." *Misc. Docket Matter No. 1 v. Misc. Docket Matter No. 2*, 197 F.3d 922, 925 (8th Cir. 1999) (quotation omitted).

Essentia's proposed medical authorizations are not narrowly tailored to meet those limitations. A Plaintiff's history of substance abuse is not relevant to whether she paid for or received the affected medications from Essentia or paid to be revaccinated or re-treated. The same

---

[13] *See, e.g., EEOC v. Woodmen of the World Life Ins. Soc'y*, No. 8:03CV165, 2007 U.S. Dist. LEXIS 7488, at *3 (D. Neb. Feb. 1, 2007) (defendant was entitled to information about victim's mental health, but not irrelevant gynecological history); *Smith v. Am. Home Prods. Corp. Wyeth-Ayerst Pharm.*, 372 N.J. Super. 105, 135, 855 A.2d 608, 626 (Super. Ct. 2003) ("Psychotherapy notes or medical records containing patient health information irrelevant to the litigated medical condition should not be indiscriminately given merely because the patient has brought a personal injury lawsuit.").

holds true for Plaintiffs' mental health records, sensitive sexual health history, and the like.

At most, transactional information regarding Plaintiffs' receipt of and payment for the affected medications and associated medical services (which Essentia already possesses), and transactional information regarding receipt of and payment for any care related to the temperature excursion (e.g., revaccination), are at issue.[14] If Essentia is permitted to turn discovery on its head and seek medical records, in a purely economic case, directly from Plaintiffs' providers rather than from Plaintiffs—those records should, at the very least, be relevant.

## IV.   CONCLUSION

Essentia is permitted to disclose PHI pursuant to the HIPAA qualified protective order in this case. It should do so to the extent that information is contained in relevant, responsive documents. Essentia's proposed medical authorizations are an invasive overreach that are unjustified by patient privacy laws or the facts of this case. Plaintiffs have not placed their health in controversy, and the improper medical authorizations would subject Plaintiffs to irrelevant and harassing discovery.

Plaintiffs respectfully request this Court order Essentia to produce relevant, responsive PHI and deny its request for medical authorizations.

Dated: June 8, 2021                         /s/ Melissa Ryan Clark
                                            Melissa Ryan Clark
                                            Brooke A. Achua
                                            FEGAN SCOTT LLC
                                            140 Broadway, 46th Fl.

---

[14] Essentia's claim that "representations Plaintiffs made to providers as it [sic] relates to the revaccination and its cause are relevant to the claims and defenses at issue" is wrong. Memo, p. 7. It is Essentia who told patients they must be revaccinated (and, in some cases, state departments of health). The need for revaccination is not in dispute and Plaintiffs' own statements regarding that issue are irrelevant. In any event, nothing about revaccination implicates the medical information Essentia seeks or the need to circumvent discovery with authorizations.

New York, NY 10005
Ph: 646.502.7910
Fax: 312.264.0100
melissa@feganscott.com
brooke@feganscott.com

Elizabeth A. Fegan
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
Ph: 312.741.1019
Fax: 312.264.0100
beth@feganscott.com

Mac Schneider
SCHNEIDER LAW FIRM
815 3rd Ave. S.
Fargo, ND 58103
Ph: 701-235-4481
Fax: 701-235-1107
mac@schneiderlawfirm.com

J. Barton Goplerud
Brian Marty
SHINDLER, ANDERSON, GOPLERUD &
WEESE, PC
5015 Grand Ridge Drive, Suite 100
West Des Moines, Iowa 50265
Ph: (515) 223-4567
Fax: (515) 223-8887
goplerud@sagwlaw.com

Counsel for Plaintiffs

17