THE UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA
EASTERN DIVISION

| | |
|---|---|
| JESSICA KRAFT, individually and as parent of minors L.K., S.K., and O.K.; SHELLI SCHNEIDER, individually and as parent of minors A.S. and W.S.; ANNE BAILEY, individually and as parent of minor D.B.; AMY LAVELLE, individual and as parent of minors Em.L.and El.L.; ELIZABETH BEATON, individually and as parent of minor M.B.; AMANDA AND TYRELL FAUSKE, individually and as parents of minors C.R.F. and C.J.F.; JENNIFER REIN, individually; and JESSICA BERG, individually and as parent of minors A.B. and S.B., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ESSENTIA HEALTH, INNOVIS HEALTH, LLC d/b/a ESSENTIA HEALTH, DAKOTA CLINIC PHARMACY, LLC, JOHN DOE MANUFACTURERS, and JOHN DOE DISTRIBUTOR,<br><br>Defendants. | Case No. 3:20-CV-00121<br><br><br><br>**ESSENTIA HEALTH'S REPLY MEMORANDUM REGARDING PEER REVIEW/QUALITY ASSURANCE PRIVILEGE IN THE CONTEXT OF A PRIVILEGE LOG** |

Defendant, Essentia Health ("Essentia") submits this Reply Memorandum regarding the level of detail required to assert the peer review/quality assurance privilege in a privilege log pursuant to the direction provided by the Court at the May 19, 2021, status conference. Essentia maintains its Privilege Log is consistent with the requirements of Rule 26(b)(5)(A)(ii) of the Federal Rules of Civil Procedure, while at the same time preserving the peer review/quality assurance privilege under applicable state law.

The parties agree that as a starting point, Rule 26(b)(5)(A)(ii) provides a privilege log must "describe the nature of the documents, communications, or tangible things not produced or disclosed, and do so in a matter that, <u>without revealing information itself privileged or protected,</u> will enable other parties to assess the claim." FED. R. CIV. P. 26(b)(5)(A)(ii) (emphasis added). The parties also appear to agree that the contours of the peer review/quality assurance privilege at issue in this case is governed by applicable state law. Lost in Plaintiffs' analysis, however, is the fundamental principle that depending upon the privilege invoked, "some of the pertinent information affecting applicability of the claim…may itself be privileged." FED. R. CIV. P. 26(b)(5)(A)(ii) Advisory Committee's Note to 1993 Amendment. Where, as here, greater specificity would necessarily require disclosure of information protected from disclosure by the applicable privilege "[R]ule 26 provides that such information need not be disclosed." *Id.*

As Plaintiffs recognize, the peer review/quality assurance privilege provided for by both North Dakota and Minnesota law is broad. Indeed, the peer review/quality assurance privilege precludes even the discovery of records, including both oral and written communications, generated by, acquired by, or given to a peer review organization as part of any professional peer review, regardless of when the record was created. N.D. CENT. CODE §§ 23-34-01 and 23-34-02; Minn. Stat. § 145.64, subd. 1. What activities are considered peer review for purposes of this statutory protection are equally as broad and specifically include the evaluation and improvement of the quality of health care. N.D. CENT. CODE § 23-34-01(5); Minn. Stat. § 145.61, subd. 5.

What is equally as true is the fact that courts in both North Dakota and Minnesota ardently and consistently defend and uphold the sanctity of the peer review/quality assurance

2

privilege. *See Guttormson v. ManorCare of Minot ND, LLC,* No. 4:14-CV-36 (D.N.D. July 20, 2015) (Doc. ID No. 225); *Amaral v. Saint Cloud Hosp.,* 598 N.W.2d 379, 388 (Minn. 1999); *In re Fairview-Univ. Med. Ctr.,* 590 N.W.2d 150, 152 (Minn. Ct. App. 1999). Plaintiffs recognize that the relationship between the requirements of Rule 26(b)(5)(A)(ii) of the Federal Rules of Civil Procedure and the peer review/quality assurance privilege under North Dakota and Minnesota law is a matter of first impression. However, Plaintiffs suggest that the absence of case law on this issue demonstrates that the level of detail required is universally accepted. The opposite inference is more likely true, and Courts have not been called upon to analyze this issue presumably because the scope of the peer review privilege is so readily accepted that a challenge, such as the one presented here, has not been made.

Because applicable state law and the plain language of Rule 26 supports Essentia's approach to the assertion of the peer review/quality assurance privilege, Plaintiffs instead rely on case law from other jurisdictions to suggest Essentia should be required to produce a more-detailed Privilege Log.[1]  While the Federal Rules of Civil Procedure govern the procedural aspects of an action in federal court, "state law governs privilege regarding a claim or defense

---

[1] In fact, the only North Dakota or Minnesota specific case cited by the Plaintiffs which was not initially included in Essentia's Memorandum Regarding Peer review/Quality Assurance in the Context of a Privilege Log is *Elkharwily v. Mayo Holding Co.,* No. CIV. 12-3062 DSD/JJK, 2014 WL 3573674, at *1 (D. Minn. July 21, 2014). Plaintiffs citation to *Elkharwily* is misleading as the primary issue before the Court in that case was whether Minnesota's peer review/quality assurance privilege applied in the context of an action involving claims under both federal and state law. *Id.* at *3. In addition, while the Court in *Elkharwily* made reference to the production of a privilege log, the Court did not address what level of detail was required as the issue was not raised by the parties to the proceeding. Moreover, the *Elkharwily* Court acknowledged that Section 145.64 "applies 'for the benefit of the review organization.'" *Id.* (quoting *Eldeeb v. Univ. of Minn.,* 864 F.Supp. 905, 914 n. 4 (D.Minn.1994)).

3

for which state law supplies the rule of decision," in diversity actions, such as this one. FED. R. EVID. 501. What level of detail must be included in a privilege log pursuant to Rule 26(b)(5)(A)(ii), and, perhaps more importantly, what level of detail cannot be included to preserve the asserted privilege, turns on the contours of the applicable privilege pursuant to state law. Accordingly, Plaintiffs' reliance on caselaw interpreting other states' peer review statutes is misplaced.

In fact, "because of the lack of uniformity among the various states' peer review privilege statutes, caselaw interpreting [other states'] statutes is not highly persuasive" in the interpretation of peer review and quality assurance statutes. *Trinity Med. Ctr., Inc. v. Holum*, 544 N.W.2d 148, at 153. This is so because "'there is extremely wide variation in the privilege granted by the states,' and that there is little consistency in the entities covered or types of information protected." *Id.* More importantly, even where two states' statutory schemes as it relates to the peer review/quality assurance privilege are similar, a court's interpretation of a different state's law does not make that the law in either North Dakota or Minnesota.

Instead, the Court is required to examine the plain language of the statutes at issue, as interpreted by the courts in North Dakota and Minnesota, to determine whether Essentia can provide additional detail in its Privilege Log without revealing information itself privileged or protected by the peer review/quality assurance privilege. Plaintiffs cite the very narrowly-tailored exceptions to the peer review/quality assurance privilege to suggest Essentia should be required to provide additional detail, including the "original source" exception. Documents or records available from original sources are exempt from the prohibition on disclosure. N.D. CENT. CODE § 23-34-03(1)(a); Minn. Stat. § 145.64, subd. 1. This exception simply does not support Plaintiffs' position, nor does it require or permit Essentia to provide any additional

4

detail than was already included in its Privilege Log. *See Guttormson ND, LLC,* No. 4:14-CV-36, 2015 WL 11147876, at *3 (D.N.D. Sept. 28, 2015) (identifying deposition testimony based on matters within the witness's personal knowledge as an example of an "original source").

The "original source" exception merely clarifies that "documents available from other sources remain discoverable from the other sources." *In re Fairview-Univ. Med. Ctr.,* 590 N.W.2d 150, 154 (Minn. Ct. App. 1999). Plaintiffs, in essence, advance the same argument as was presented in *In re Fairview* by suggesting that under Essentia's construction of the peer review/quality assurance privilege, healthcare entities can "unilaterally bury information" under the guise of privilege. While Essentia rejects the implication that it inappropriately claimed the application of the peer review/quality assurance privilege, courts are clear that "[e]ven if health care providers are purposefully amassing original documents in review organization files, that does not make the documents any less privileged." *Id.* "[I]f a statute is clear the remedy is amendment not construction." *Id.*

There is no ambiguity in the statutory protections afforded by the peer review/quality assurance privilege as asserted in this case. Under North Dakota law, professional peer review is defined to include all procedures and functions of a peer review organization. N.D. CENT. CODE § 23-34-01(5). Peer review record includes, among other things, "information…generated by, acquired by, or given to a peer review organization as a part of any professional peer review." N.D. CENT. CODE § 23-34-01(4)(1). Similarly, Minnesota law shields the proceedings and records of a review organization from disclosure, including the "data and information acquired by a review organization, in the exercise of its duties and functions." Minn. Stat. § 145.64. To compel Essentia to disclose authors, senders, recipients, members of the peer review organization, dates of peer review, and the subject matter for the

records identified on Essentia' Privilege Log as protected by the peer review/quality assurance privilege in any greater level of detail than previously provided, would require Essentia to disclose information regarding peer review proceedings and functions, protected from disclosure by the plain language of the applicable statutes.

Plaintiffs also lack any support for the argument that the peer review/quality assurance privilege applies to the exclusion of all other privileges or that the assertion of other privileges eviscerates the peer review/quality assurance privilege. To be sure, the membership of peer review organizations is broadly defined to encompass wide-ranging categories of individuals, entities, and any combination thereof. N.D. CENT. CODE § 23-34-01; Minn. Stat. § 145.61, subd. 5. However, it is the purpose of the peer review organization, and not its membership makeup, that triggers application of the peer review/quality assurance privilege. *See id.* The assertion of other privileges in addition the peer review/quality assurance privilege does not demonstrate, as Plaintiffs imply, that the documents for which Essentia claims peer review/quality assurance protection were used for other purposes. *See* N.D. CENT. CODE § 23-34-01(1) ("Peer review records are confidential and may be used by a peer review organization and the organization members only for conducting a professional peer review."); *see also* Minn. Stat. § 145.64, subd. 1 ("[D]ata and information acquired by a review organization, in the exercise of its duties and functions, or by an individual or other entity acting at the direction of the review organization, shall be held in confidence, shall not be disclosed to anyone except to the extent necessary to carry out one or more of the purposes of the review organization").

The Federal Rules of Civil Procedure recognize that there may be circumstances in which information that supports the invocation of an applicable privilege is itself privileged. FED. R. CIV. P. 26(b)(5)(A)(ii) Advisory Committee's Note to 1993 Amendment. This is

exactly why "[t]he rule does not attempt to define for each case what information must be provided when a party asserts a claim of privilege." *Id.* If Essentia were required to disclose any greater level of detail as to the information withheld subject to the peer review/quality assurance privilege, the prohibition on discovery of peer review information would be without consequence, severely undermining the very purpose for which the peer review/quality assurance privilege was designed. *See Larson v. Wasemiller,* 738 N.W.2d 300, 312 (Minn. 2007) (explaining peer review statutes are designed "to promote the strong public interest in improving health care…and to encourage the medical profession to police its own activities with minimal judicial interference.").

Plaintiffs also suggest there is no support for production of a more detailed privilege log for in-camera review, but that is simply untrue. FED. R. CIV. P. 26(b)(5)(A)(ii) Advisory Committee's Note to 1993 Amendment. Pursuant to the Court's Order, Essentia will produce a more detailed privilege log for in-camera review contemporaneously with this Reply.

Dated this 14th day of June, 2021.

**VOGEL LAW FIRM**

*s/ Angela E. Lord*
BY:   Angela E. Lord (#05351)
      Robert B. Stock (#05919)
      Briana L. Rummel (#08399)
      218 NP Avenue
      PO Box 1389
      Fargo, ND  58107-1389
      701.237.6983
      Email:   alord@vogellaw.com
               rstock@vogellaw.com
               brummel@vogellaw.com
      ATTORNEYS FOR ESSENTIA HEALTH
      AND INNOVIS HEALTH, LLC

4443524.1

7