**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA**

Jessica Kraft, et al.,               )
                                     )
            Plaintiffs,              )
                                     )         Case No. 3:20-cv-121
     vs.                             )
                                     )         **ORDER REGARDING
Essentia Health, et al.,             )         DISCOVERY DISPUTES**
                                     )
            Defendants.              )

In this putative class action, plaintiffs allege defendant Essentia Health sold and administered injectable pharmaceuticals—time- and temperature-sensitive pharmaceutical products (TTSPPs)—that had been stored outside the proper temperature range. Plaintiffs contend storage of TTSPPs outside the proper temperature range resulted in "reduced vaccine potency and the increased risk of vaccine-preventable diseases." (Doc. 28, p. 2). Essentia's answer admits that in April 2020, it advised patients who had received certain TTSPPs that the TTSPPs may have been subjected to a temperature excursion, potentially rendering them less effective. (Doc. 30, p. 2). Essentia offered revaccination at no cost to the affected patients. Id. at 3.

Plaintiffs bring four claims: breach of express warranties, breach of implied warranties, violation of consumer protection laws, and unjust enrichment. They seek to recover for economic loss, including their payments for the affected TTSPPs and for appointments at which the TTSPPs were administered.

This order addresses discovery disputes—whether the named plaintiffs must provide signed authorizations to allow Essentia to obtain copies of their medical records and whether the Health Insurance Portability and Accountability Act (HIPAA) permits

Essentia to produce health information under a protective order but without signed authorizations from named plaintiffs or putative class members. The parties participated in an informal dispute resolution conference under Civil Local Rule 37.1. Since the issues were not resolved at that conference, the parties were authorized to file formal briefs addressing the issues.

## Background

With its requests for production of documents, Essentia asked each named plaintiff to sign authorizations to allow Essentia to obtain "individually identifiable health information," including "record[s] related to behavior/and or mental health care, alcohol and drug abuse treatment, HIV/AIDS, and genetics." (Doc. 69-1, pp. 6-7). Essentia sought signed authorizations to allow it to release the information to the law firm representing Essentia in this litigation and to allow the law firm to request the named plaintiffs' records from other facilities at which the named plaintiffs have received medical care or prescription medications. In its interrogatories, Essentia asked each named plaintiff to identify each health care facility and health care professional from whom he or she had received medical care since January 2017 and to identify each pharmacy from whom he or she had purchased medications since January 2017. (Doc. 69-2, p. 6).

Plaintiffs' requests for production of documents included a request concerning putative class members, asking for information sufficient to identify "[e]ach person or entity who paid, directly or indirectly, whether in whole or in part" for the TTSPPs at issue. (Doc. 20-1, p. 8). Essentia produced certain "de-identified" data in response to plaintiffs' discovery requests, though the parties' briefs do not identify the extent of the data that has been produced.

**Law and Discussion**

Resolution of these issues requires consideration of laws governing both physician-patient privilege and patient privacy.

**1.     Health Insurance Portability and Accountability Act (HIPAA)**

HIPAA, 42 U.S.C. §§ 1320d to 1320d-9, regulates a "covered entity's" use or disclosure of "protected health information" (PHI). PHI means "individually identifiable health information." Id. § 1320d; 45 C.F.R. § 160.103. "Health information" means any information created or received by a health care provider that relates (1) to an individual's physical or mental health or condition, (2) the provision of health care to an individual, or (3) payment for the provision of health care to an individual. Id.

There is no question Essentia is a covered entity under HIPAA. Covered entities may not use or disclose PHI except as permitted or required by federal regulations. 45 C.F.R. § 164.502. A covered entity is required to disclose PHI in limited circumstances— in response to a proper request from an individual for the individual's own PHI or when required by the Secretary of the Department of Health and Human Services. Id. § 164.502(a)(2). A covered entity is permitted to disclose PHI in several circumstances under 45 C.F.R. § 164.502(a)(1), including disclosure for "health care operations" and "pursuant to and in compliance with a valid authorization under § 164.508." Section 164.508 provides, "Except as otherwise permitted or required by this subchapter, a covered entity may not use or disclose protected health information without an authorization that is valid under this section." Section 164.508(c) details core elements and requirements for a valid authorization, but § 164.508(b)(1)(ii) does not preclude a covered entity adding other elements or requirements.

Section 45 C.F.R. § 164.512 defines circumstances under which a covered entity may use or disclose PHI without an individual providing a valid written authorization or the individual having been given an opportunity to agree or object to the use or disclosure, including disclosures in judicial and administrative proceedings:

(1) . . . A covered entity may disclose protected health information in the course of any judicial or administrative proceeding:

   (i) In response to an order of a court or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such order; or

   (ii) In response to a subpoena, discovery request, or other lawful process, that is not accompanied by an order of a court or administrative tribunal, if:

      . . .

      (B) The covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iv) of this section, from the party seeking the information that reasonable efforts have been made by such party to secure a qualified protective order that meets the requirements of paragraph (e)(1)(v) of this section.

   . . . .

   (v) For purposes of paragraph (e)(1) of this section, a qualified protective order means, with respect to protected health information requested under paragraph (e)(1)(ii) of this section, an order of a court or of an administrative tribunal or a stipulation by the parties to the litigation or administrative proceedings that:

      (A) Prohibits the parties from using or disclosing the protected health information for any purpose other than the litigation or proceeding for which such information was requested; and

      (B) Requires that return to the covered entity or destruction of the protected health information (including all copies made) at the end of the litigation or proceeding.

4

45 C.F.R. § 164.512(e)(1). Plaintiffs assert, and Essentia does not dispute, that the protective order governing this case meets requirements for a "qualified protective order" under § 164.512(e)(1)(v).[1]

Further, the governing regulations allow for use and disclosure of "de-identified" PHI under certain circumstances, stating "[h]ealth information that does not identify an individual and with respect to which there is no reasonable basis to believe that the information can be used to identify an individual is not individually identifiable health information." 45 C.F.R. § 164.514(a).

**2.     State Law Governing Medical Privilege**

Under Federal Rule of Evidence 501, "state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Here, the court has jurisdiction based on diversity of citizenship, so state law supplies the rule of decision, and state law therefore governs existence, scope, and waiver of the physician-patient privilege. In re Baycol Products Litig., 219 F.R.D. 468, 469 (D. Minn. 2003); Filz v. Mayo Found., 136 F.R.D. 165, 168 (D. Minn. 1991).

Plaintiffs make claims under both North Dakota and Minnesota law. Essentia asserts there is no conflict between the two states' laws governing medical privilege. (Doc. 62, p. 3 n.1). Plaintiffs view HIPAA as exempting privilege laws of both states and argue that neither state's law "would excuse Essentia from producing PHI pursuant to a

---

[1] At the outset of the litigation, the parties did not agree on all terms of a protective order. Among their disagreements was whether the protective order would explicitly state it is a qualified protective order under 45 C.F.R. § 164.512(e)(1)(v). Though the court did not include that explicit statement in the protective order, the court does not question that the current protective order meets all requirements of the regulation.

protective order nor . . . justify the medical authorizations Essentia seeks." (Doc. 69, p. 9 n.6). The court next addresses the law of both states on physician-patient privilege.

North Dakota Rule of Evidence 503 provides, "A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of diagnosis or treatment of the patient's physical, mental, or emotional conditions . . . ." But North Dakota law recognizes waiver of that privilege in certain litigation:

> A party who commences an action for malpractice, error, mistake, or failure to cure, whether based on contract or tort, against a health care provider . . . or a health care facility . . . waives in that action any privilege existing under rule 503 of the North Dakota Rules of Evidence, as to any medical records, opinions, or other information in the possession of any other health care provider who has examined or cared for the party or other person whose health or medical condition has been placed in controversy in the action.

N.D. Cent. Code § 28-01-46.1.

Minnesota law establishes a statutory physician-patient privilege, under which "[a] licensed physician . . . shall not, without the consent of the patient, be allowed to disclose any information or any opinion based thereon which the professional acquired in attending the patient in a professional capacity, and which was necessary to enable the professional to act in that capacity . . . ." Minn. Stat. § 595.02(1)(d). As to release of medical records, Minnesota Statutes section 144.293(2) states a provider may not release a patient's health records without "(1) a signed and dated consent from the patient or the patient's legally authorized representative authorizing the release" or "(2) specific authorization in law." Under Minnesota Rule of Civil Procedure 35.03, a party who puts his or her health condition in controversy waives the privilege with respect to

that condition and, under Rule 35.04(b), must provide written authorizations for other parties to access the waiving party's relevant medical records.

HIPAA preempts state law, unless a state law relating to privacy of PHI is "more stringent" than a HIPAA regulation. 45 C.F.R. § 160.203(b). Essentia contends HIPAA does not allow it to release the named plaintiffs' medical records without authorizations under the Minnesota provision for release pursuant to "specific authorization in law." (Doc. 62, p. 9). Plaintiffs cite Accounts Receivable Services, LLC v. Ojika, an action seeking to collect unpaid medical bills. Civ. No. A16-1536, 2017 WL 1436086 (Minn. Ct. App. Apr. 24, 2017) (unpublished). There, the defendants argued the plaintiff had improperly disclosed their health records in exhibits filed with the court. The court concluded that HIPAA permitted the disclosure to seek payment and that the HIPAA regulation constituted the "specific authorization in law" provision of Minnesota Statutes section 144.293(2). Id. at *4. As to North Dakota law, Essentia asserts a signed authorization is required for release of the named plaintiffs' records.

### 3.    Essentia's Demands for Signed Authorizations

Essentia asks that each of the named plaintiffs sign three authorizations for release of information, allowing (1) Essentia to release records to the law firm representing it in this litigation, (2) other health care providers to release records to Essentia's law firm, and (3) pharmacies to release records to Essentia's law firm.

As to releases allowing Essentia to provide records to its law firm, the court finds Essentia's position somewhat contradictory. In referring to the "healthcare operations" exception of 45 C.F.R. § 164.502(a)(1)(ii), Essentia acknowledges the plain language of that regulation "permits a covered entity to share protected health information with its counsel as part of the facility's healthcare operations." (Doc. 62, p. 9). "Healthcare

7

operations" is defined to include "conducting or arranging for . . . legal services." 45 C.F.R. § 164.501. Guidance from the Department of Health and Human Services states, "Where a covered entity is a party to a legal proceeding, such as a plaintiff or defendant, the covered entity may use or disclose protected health information for purposes of the litigation as part of its health care operations." U.S. Dep't of Health & Hum. Servs. https://www.hhs.gov/hipaa/for-professionals/faq/704/may-a-covered-entity-use-protected-health-information-for-litigation/index.html (last visited July 16, 2021). To the extent Essentia requests signed authorizations to allow disclosure of the named plaintiffs' PHI to Essentia's law firm, the court concludes HIPAA does not require such signed authorizations.

The court then considers Essentia's demand for signed authorizations to allow Essentia's law firm to obtain the named plaintiffs' records from other health care providers and pharmacies. Plaintiffs agree that if a patient places his or her health condition at issue in litigation, the patient waives the physician-patient privilege for the condition at issue. They contend Essentia has not shown it is unable to obtain relevant records through "proper discovery channels" but do not describe what they consider those proper channels to be. (Doc. 69, pp. 6, 7, 17 n.12). Plaintiffs argue Essentia takes contradictory positions in arguing that state privileges apply and that waiver of the privileges warrants signed authorizations, id. at 6-7, but the court views Essentia as arguing state law requires a party to sign authorizations when the privilege is waived.

Plaintiffs' principal argument is that their health conditions are not relevant because they seek to recover only for their economic losses. But Essentia contends the named plaintiffs have put their health conditions at issue:

8

To prevail on their claims, Plaintiffs will be required to demonstrate they were plagued with the disease the vaccinations and/or immunizations were intended to prevent, or suffered some other concrete injury as a result of the vaccination and/or immunization. This analysis is necessarily informed by their health and medical condition at the time and leading up to administration. In addition, whether and to what extent Plaintiffs were revaccinated is also an important matter at issue in this lawsuit. Further, to the extent Plaintiffs chose to be revaccinated outside of Essentia's system, representations Plaintiffs made to providers as it relates to the revaccination and its cause are relevant to the claims and defenses at issue.

(Doc. 62, pp. 6-7).

In their amended complaint, plaintiffs request "compensatory damages and any other damages allowed by law" but make no allegation they suffered any non-economic harm. (Doc. 28, p. 30). In denying Essentia's motion to dismiss, the presiding district judge noted plaintiffs' alleged economic harm was sufficient for purposes of standing. (Doc. 13, p. 6). Plaintiffs allege they "would [not] be foreclosed from recovering expenses related to the diseases the pharmaceuticals were intended to treat or prevent, but no dispute regarding Plaintiffs' health is in controversy now." (Doc. 69, p. 17).

In this court's opinion, at this time plaintiffs have not made claims putting their health conditions at issue. They are not seeking compensation for having contracted the diseases the TTSPPs were intended to prevent. Were they seeking compensation for injuries of that nature, their health conditions prior and subsequent to the TTSPP administration would be relevant, and the broad releases Essentia propounds might indeed be appropriate.

Since plaintiffs allege economic loss, the cost of care they may have received because of the alleged temperature excursions is relevant. As  plaintiffs' brief acknowledges:

At most, Plaintiffs' transactional records regarding their receipt of and payment for the affected medications and medical services, and any other

> expenses related to the excursion, like those for revaccination, are relevant. Those records can be sought through discovery, and the vast majority are already in Essentia's possession.

Id. The named plaintiffs will be required to respond to interrogatories regarding revaccinations they may have received because of the alleged TTSPP temperature excursions. The named plaintiffs will also be required to sign authorizations to allow Essentia's law firm to obtain cost information for any revaccinations the named plaintiffs may have received and for any health care associated with the revaccinations. At this time, the named plaintiffs will not be required to sign the broad releases Essentia propounded.

**4.      Plaintiffs' Demand for Disclosure Pursuant to Protective Order**

Plaintiffs seek documents and detailed data about potential members of the putative class, (Doc. 20-1, p. 8), contending the de-identified data Essentia has provided is insufficient to allow them to prove their case or to seek class certification and asserting the existing protective order allows Essentia to provide the patient-specific data they seek.

Essentia argues state law requires that it have signed authorizations to disclose the information and that the protective order does not alter state law requirements, since "provisions of 45 C.F.R. § 164.512 do not require or mandate disclosure." (Doc. 62, p. 8). In Essentia's view, the physician-patient privilege is specific to the patient, putative class members have not waived the privilege, and the named plaintiffs cannot waive privileges of putative class members.

Plaintiffs do not argue the HIPAA qualified protective order requires Essentia to disclose their PHI or that of the putative class members; rather, they argue Essentia is permitted to disclose the PHI because the protective order meets requirements of 45

C.F.R. § 164.512(e)(1)(v). Plaintiffs point to Essentia's patient privacy notice, which advises patients Essentia may disclose their PHI in judicial proceedings and which does not identify any state laws as being more stringent than HIPAA. Essentia Health, https://www.essentiahealth.org/about/privacy-legal-notices/policy-patient/ (last visited July 16, 2021).

Plaintiffs cite several cases in support of their position, though none are binding on this court, and none address the precise issues presented here. Briggs v. Adel challenged a county's "Marijuana Deferred Prosecution Program," alleging constitutional rights of putative class members were violated when their participation in the program was involuntarily extended solely because they were unable to pay required program fees. No. CV-18-02684-PHX-EJM, 202 WL 4003123 (D. Ariz. July 14, 2020). The plaintiffs sought production of program files. The defendants argued the request was not proportional to needs of the case and the case protective order allowed production without consent of program participants only "to the extent such information is otherwise discoverable." Id. at *3. The court concluded information in the program files was protected under HIPAA but could be disclosed pursuant to the case protective order after redaction of substance use disorder information required by the Public Health Services Act, 42 U.S.C. § 290dd-2(a). Additionally, the court required the parties to negotiate a sampling procedure that would provide a representative sample of the program files sufficient to prove the plaintiffs' case for class certification.

In a state court putative class action, the plaintiffs alleged the defendants provided unsafe and inadequate care to residents of a nursing home facility. Jenack v. Goshen Operations LLC, 2019 N.Y. Slip Op. 33772, 2019 WL 7500813 (N.Y. Sup. Ct. Aug. 21, 2019). The parties disputed need for an order governing production and

exchange of PHI. The court entered a protective order that complied with 45 C.F.R. § 164.512(e)(1)(i), finding the defendants had suggested no viable alternative to facilitate exchange of absent class members' PHI.

Chickadaunce v. Minott challenged Indiana's administration of the federal Medicaid waiver program. No. 1:13-cv-01223-WTL-MJD, 2014 WL 4980547 (S.D. Ind. Oct. 6, 2014). The parties stipulated to certification of a class, and the plaintiffs moved to compel production of files of certain groups of class members. Though not directly referencing requirements of 45 C.F.R. § 164.512(e)(1)(i), the court described the case's protective order as providing "more than adequate protection for the information to be produced." Id. at *7. After considering factors outlined in Federal Rule of Civil Procedure 26(b)(1), the court granted the motion to compel. Id. at *8. See also M.H. v. City of San Bernardino, No. EDCV 20-242-JGB, 2020 WL 6595013, at *4 (C.D. Cal. Sept. 25, 2020) (finding a previously-issued protective order met HIPAA requirements of a "qualified protective order" and granting a motion to compel production of PHI).

Essentia points to Northwestern Memorial Hospital v. Ashcroft, a challenge to constitutionality of a statute prohibiting certain abortion procedures, where the government subpoenaed medical records of forty-five women who had undergone the procedure. 362 F.3d 923 (7th Cir. 2004). The district court found Illinois law "more stringent" than the HIPAA regulations and quashed the subpoena. Id. at 925, 928. Though concluding state privilege law did not apply when the court's jurisdiction is based on a federal question, the appellate court affirmed, relying on concerns for patient privacy. The court described 45 C.F.R. § 164.512(e) as a purely procedural standard for obtaining authority to use medical records in litigation.

In summary, case law from other jurisdictions has held a HIPAA qualified protective order may authorize disclosure of putative class members' PHI. HIPAA does not mandate that disclosure. In each of the cases plaintiffs cite, the court balanced need for the production against other factors. Employing a similar approach, the court turns to Federal Rule of Civil Procedure 26(b)(1) to resolve the current issue.

**5.    Application of Rule 26(b)(1)**

Rule 26(b)(1) defines the scope of discovery to include any relevant and nonprivileged matter that is proportional to the needs of the case. Proportionality factors include importance of the issues at stake, amount in controversy, parties' relative access to relevant information, parties' resources, importance of the discovery in resolving the issues, and whether the burden or expense of the discovery outweighs its likely benefit.

There is no question protection of PHI is very important. Essentia asserts production of patient-specific data would involve "significant cost," including psychological cost to its patients. And plaintiffs have so far not sufficiently explained their need for patient-specific information regarding putative class members. Thus, at this time, the court cannot conclude that the benefit of plaintiffs receiving patient-specific data outweighs the burden to Essentia and its patients in producing that data.

**Conclusion**

At this time, the named plaintiffs have not put their health conditions in controversy. They have, however, put the cost of their health care in controversy insofar as it involves TTSPP vaccinations and revaccinations. The named plaintiffs will therefore be required to respond to interrogatories regarding revaccinations they may have received because of the alleged TTSPP temperature excursions and to sign

13

authorizations to allow Essentia's law firm to obtain <u>cost information</u> for any revaccinations the named plaintiffs may have received and for any health care associated with the revaccinations. The named plaintiffs will not be required to sign the broad authorizations Essentia demands. Though the existing protective order <u>may</u> allow Essentia to disclose the patient-specific data plaintiffs request, plaintiffs have not yet demonstrated that production of that data meets proportionality requirements of Rule 26(b)(1).

**IT IS SO ORDERED**.

Dated this 16th day of July, 2021.

*/s/ Alice R. Senechal*
Alice R. Senechal
United States Magistrate Judge