**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA**

| | | |
|---|---|---|
| Jessica Kraft, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 3:20-cv-121 |
| | ) | |
| vs. | ) | **ORDER REGARDING** |
| | ) | **DISCOVERY DISPUTE** |
| Essentia Health, et al., | ) | |
| | ) | |
| Defendants. | ) | |

In this putative class action, plaintiffs allege defendant Essentia Health sold and administered injectable pharmaceuticals—time and temperature sensitive pharmaceutical products (TTSPPs)—that had been stored outside the proper temperature range. Plaintiffs contend the improper storage of TTSPPs resulted in "reduced vaccine potency and the increased risk of vaccine-preventable diseases." (Doc. 28, p. 2). Essentia's answer admits that in April 2020, it advised patients who had received certain TTSPPs that the TTSPPs may have been subjected to a temperature excursion, potentially rendering them less effective. (Doc. 30, p. 2). Essentia offered revaccination at no cost to the affected patients. Id. at 3.

Plaintiffs bring four claims: breach of express warranties, breach of implied warranties, violation of consumer protection laws, and unjust enrichment. They seek to recover for economic loss, including their payments for the affected TTSPPs and for appointments at which the TTSPPs were administered.

This order addresses a discovery dispute—whether Essentia's identification of documents over which it asserts a medical peer review privilege meets requirements of Federal Rule of Civil Procedure 26(b)(5)(A)(ii). The parties participated in an informal

dispute resolution conference under Civil Local Rule 37.1. Since the issues were not resolved at that conference, the parties were authorized to file briefs addressing the issue.

### Background

With its response to plaintiffs' requests for production of documents, Essentia provided a privilege log and a supplemental privilege log. Together, the two logs include nine entries. Several entries on the two logs asserted, inter alia, "peer review/quality assurance privilege." (Doc. 57-1, pp. 5, 7). Essentia states it considers over 200 responsive documents to be subject to the peer review privilege. (Doc. 63, p. 2). For each entry asserting that privilege, the logs describe the dates of the documents as "Various; February 2020-Present," and describes the subject matter of the documents as "Investigation" or "Investigation; lawsuit." Id. The entries describe the document types as (1) "Documentation within Essentia's Pharmacy Department" or (2) "Communication and documentation within and with, or at the direction of, Essentia's Legal Department." Id. It is Essentia's position that including more detail in the privilege logs would necessarily require it to reveal information protected by the peer review privilege itself and that its logs are therefore sufficient under Rule 26(b)(5)(A)(ii).

At the court's request, (Doc. 66), Essentia submitted a representative sample of ten percent of the documents over which it claims the peer review privilege, together with a more detailed log of the documents in the representative sample and a memorandum, for the court's in camera review. The court has reviewed the documents submitted in camera, which have been added to the docket with access limited to court personnel. (Doc. 71).

2

**Law and Discussion**

Rule 26(b)(5)(A) provides:

When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:

      (i)     expressly make the claim; and

      (ii)    describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Advisory Committee notes regarding that rule explain:

The party must also provide sufficient information to enable other parties to evaluate the applicability of the claimed privilege or protection. Although the person from whom the discovery is sought decides whether to claim a privilege or protection, the court ultimately decides whether, if this claim is challenged, the privilege or protection applies. Providing information pertinent to the applicability of the privilege or protection should reduce the need for in camera examination of the documents.

The rule does not attempt to define for each case what information must be provided when a party asserts a claim of privilege or work product protection. Details concerning time, persons, general subject matter, etc., may be appropriate if only a few items are withheld, but may be unduly burdensome when voluminous documents are claimed to be privileged or protected, particularly if the items can be described by categories. A party can seek relief through a protective order under subdivision (c) if compliance with the requirement for providing this information would be an unreasonable burden. <u>In rare circumstances some of the pertinent information affecting applicability of the claim, such as the identity of the client, may itself be privileged</u>; the rule provides that such information need not be disclosed.

Fed R. Civ. P. 26 advisory committee's note to 1993 amendment (emphasis added). In

determining whether Essentia has complied with Rule 26(b)(5)(A)(ii), the court must

consider the scope of the peer review privilege Essentia asserts.

3

**1.       State Statutes Governing Peer Review Privilege**

Under Federal Rule of Evidence 501, "state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Here, the court has jurisdiction based on diversity of citizenship, so state law supplies the rule of decision, and state law therefore governs existence, scope, and waiver of any privilege. In re Baycol Prods. Litig., 219 F.R.D. 468, 469 (D. Minn. 2003); Filz v. Mayo Found., 136 F.R.D. 165, 168 (D. Minn. 1991).

Plaintiffs make claims under both North Dakota and Minnesota law. In their briefing, the parties addressed both states' laws governing medical peer review privilege. Both states have established a statutory peer review privilege. Essentia contends a choice of law analysis is not necessary because there is no conflict between the statutes of the two states "on these facts." (Doc. 63, p. 2 n.1). Plaintiffs agree there is not a conflict between North Dakota and Minnesota law but argue neither state's law protects a more detailed identification in a privilege log. (Doc. 68, p. 8 n.5). The court discusses the law of both states.

North Dakota law establishes a privilege under which "peer review records" are privileged and not subject to subpoena or discovery or introduction into evidence in any civil or administrative action, with the exception of (1) records gathered from an original source that is not a peer review organization; (2) testimony as to matters within a person's knowledge, so long as the information was not obtained by the person through participation in professional peer review; and (3) records subpoenaed by the state board of medicine. N.D. Cent. Code § 23-34-03(1). "Peer review records" are defined to include:

(1)  Data, information, reports, documents, findings, compilations and summaries, testimony, and any other records generated by, acquired by, or given to a peer review organization as part of any professional peer review, regardless of when the record was created; and

(2)  Communications relating to a professional peer review, whether written or oral, between:

    (a)  Peer review organization members;

    (b)  Peer review organization members and the peer review organization's staff; or

    (c)  Peer review organization members and other individuals participating in a professional peer review, including the individual who is the subject of the professional peer review.

Id. § 23-34-01(4)(a).

Under the statute:

"Professional peer review" means all procedures a peer review organization uses or functions it performs to monitor, evaluate, and take action to review the medical care provided to patients by health care organizations or health care providers and includes procedures or functions to:

a.  Evaluate and improve the quality of health care;

b.  Obtain and disseminate data and statistics relative to the treatment and prevention of disease, illness, or injury;

c.  Develop and establish guidelines for medical care and the costs of medical care;

d.  Provide to other affiliated or nonaffiliated peer review organizations information that is originally generated within the peer review organization for the purposes of professional peer review;

e.  Identify or analyze trends in medical error, using among other things a standardized incident reporting system; and

f.  Provide quality assurance.

Id. § 23-34-01(5).

5

The statute defines "peer review organization" to include health care organizations and committees of health care organizations that conduct professional peer review. Id. § 23-34-01(3). "Health care organization" is broadly defined in section 23-34-01(1), and plaintiffs do not contest Essentia's inclusion under that definition.

Very few reported cases address the North Dakota peer review statute, and the only state supreme court case doing so predates extensive revisions made to the statute in 1997. In the pre-1997 case, the state supreme court held the statute protected only "proceedings and records" of certain committees within a health care organization. Trinity Med. Ctr. v. Holum, 544 N.W.2d 148 (N.D. 1996). The 1997 amendment redefined peer review records to include data, information, reports, documents, findings, compilations, summaries, testimony, and any other records "generated by, acquired by, or given to a peer review organization as part of any professional peer review." N.D. Cent. Code § 23-34-01(4)(a)(1). Though recognizing the statute now provides very broad protection, plaintiffs contend it does not provide for confidentiality or privilege so broad as to warrant Essentia not providing details about withheld documents in its privilege log.

Under Minnesota law, records of a "review organization" are confidential:

Except as provided in subdivision 4, data and information acquired by a review organization, in the exercise of its duties and functions, or by an individual or other entity acting at the direction of a review organization, shall be held in confidence, shall not be disclosed to anyone except to the extent necessary to carry out one or more of the purposes of the review organization, and shall not be subject to subpoena or discovery. No person described in section 145.63 shall disclose what transpired at a meeting of a review organization except to the extent necessary to carry out one or more of the purposes of a review organization. The proceedings and records of a review organization shall not be subject to discovery or introduction into evidence in any civil action against a professional arising out of the matter or matters which are the subject of consideration by the review organization. Information, documents or records otherwise available from

6

> original sources shall not be immune from discovery or use in any civil action merely because they were presented during proceedings of a review organization, nor shall any person who testified before a review organization or who is a member of it be prevented from testifying as to matters within the person's knowledge, but a witness cannot be asked about the witness' testimony before a review organization or opinions formed by the witness as a result of its hearings. . . .

Minn. Stat. § 145.64(1)(a). "Review organization" is defined as an organization or

committee:

> whose membership is limited to professionals, administrative staff, and consumer directors . . . which is established by . . . a hospital [or] a clinic . . . to gather and review information relating to the care and treatment of patients for the purposes of . . . evaluating and improving the quality of health care. . . [or] providing quality assurance as required by . . . the Social Security Act . . . .

Id. § 145.61(5).

Plaintiffs assert neither Minnesota law nor North Dakota law protects

information about the existence and circumstances of the professional peer review itself

or transactional information about its records. (Doc. 68, pp. 8-9).

**2.    Case Law Addressing Peer Review Privilege**

Neither party cites any cases directly discussing an assertion that providing

detailed information in a privilege log cannot be accomplished without disclosing

information covered by a peer review privilege. Nor has the court's research identified

case law directly addressing the issue. Some of the cases cited by the parties are,

however, instructive.

Though not directly addressing the degree of detail required in a privilege log

asserting Minnesota's peer review privilege, in Elkharwily v. Mayo Holding Co., Civ. No.

12-3062, 2014 WL 3573674, at *3 (D. Minn. July 21, 2014), the district court stated,

"Once privilege logs are exchanged, and an evaluation can be made as to whether the

peer review privilege applies as to specific documents, then any unresolved issues can be brought to the [c]ourt on motion for a determination." Thus, it is apparent that the court expected a detailed log of the documents over which the peer review privilege was claimed.

The Utah Supreme Court discussed that state's peer review privilege in a medical malpractice case in which the plaintiff requested production of a physician's credentialing file and an "incident file." Allred v. Saunders, 342 P.3d 204 (Utah 2014). Over the peer review objection of the defendant hospital, the trial court ordered production of the credentialing file and in camera review of the incident file. The state supreme court granted a petition for interlocutory review and remanded for consideration of application of the peer review privilege. In discussing the order for in camera review, the court addressed providing a privilege log rather than ordering in camera review. Interpreting Utah's counterpart to federal Rule 26(b)(5)(A), the court stated "a sufficient privilege log must contain sufficient individualized information on all withheld documents or items in order to ensure that any non-privileged documents or items (such as patient medical records) that have made their way into a care-review or peer-review file are not shielded from discovery." Id. at 211-12.

In Earhart v. Elder, No. 5:18-CV-01000, 2019 WL 455221 (S.D.W. Va. Feb. 5, 2019), the plaintiff in a medical malpractice case requested a physician's credentialing files and documents related to the hospital's investigation of the care at issue. The hospital claimed peer review privilege, and the plaintiff asserted the hospital's privilege log was deficient. The privilege log described in that opinion is far more detailed than Essentia's privilege logs. Applying Rule 26(b)(5)(A), the court stated a party wishing to claim a peer review privilege should submit:

a privilege log which identifies each document for which the privilege is claimed by name, date, and custodian; contains specific information regarding (1) the origin of each document, and whether it was created solely for or by a review committee, and (2) the use of each document, with disclosures as to whether or not the document was used exclusively by such committee; and provides a description of each document and a recitation of the law supporting the claim of privilege.

Id. at *5. The court concluded the hospital's privilege log met that standard.

In Cornejo v. Mercy Hospital & Medical Center, another medical malpractice case, a defendant asserted documents were privileged under the Illinois Medical Studies Act. The court described the defendant's privilege log as "sorely lacking" and ordered the defendant to tender a revised privilege log which included "clearer and more specific description of the documents being withheld, the reason they are being withheld and the date each document was created." No. 12 C 1675, 2014 WL 4817806, at *1 (N.D. Ill. Sept. 15, 2014). The court also ordered that documents withheld in connection with the revised privilege log be submitted for in camera review. The court found the revised privilege log "woefully deficient" and "comprised of largely vague and uninformative descriptions of the withheld documents." Id. at * 2, 4. The court stated, "Documents created in the ordinary course of business, to weigh potential liability risk, or for later corrective action by hospital staff are not privileged, even if they are later used by a committee in a peer-review process." Id. *2. Relying on a decision of the Illinois Supreme Court, the trial court stressed that furnishing a peer review committee with non-privileged documents did not render the documents privileged.

William Beaumont Hospital v. Medtronic, Inc., was a case in which a hospital settled a medical malpractice claim and later sought contribution from the manufacturer of a medical device that had been used in treating the plaintiff in the malpractice case. No. 09-CV-11941, 2010 WL 1626408 (E.D. Mich. April 21, 2010). The

manufacturer requested certain documents from the hospital, and the hospital claimed a peer review privilege. Under Michigan's peer review statute, "records, data, and knowledge collected for or by individuals or committees assigned a professional review function in a health facility" are defined as confidential and are permitted to be used only for purposes of peer review. Id. at *2. Relying on decisions of the Michigan Supreme Court, the federal district court stated, "The fact that information is submitted to a peer review committee does not mean that it satisfies the collection requirement so as to make it privileged." Id. The court discussed adequacy of the hospital's privilege log in the context of Rule 26(b)(5), stating "when a claim of privilege is challenged, as in this case, the party withholding the records must come forward with sufficient evidence to enable the court to conclusively determine that the privilege applies." Id. at *7. The court concluded the hospital's privilege log was deficient in not identifying dates or authors of withheld documents, stating, "Information concerning the date and author of peer review documents is not protected by the peer review privilege." Id.

The federal court for the District of Columbia addressed peer review privilege in the context of a physician's claim for wrongful termination by a medical school and hospital. Ervin v. Howard Univ., 445 F. Supp. 2d 23 (D.C. 2006). The physician requested documents relating to health and safety concerns in her former department, and the defendants asserted the District of Columbia's statutory peer review privilege. The defendants argued "all communications and recollections of issues involving health and safety of patients [were] non-discoverable and that their officers . . . individually and collectively constitute[d] 'peer review' bodies." Id. at 27. The court rejected that broad claim, finding only statements made in a peer review process were non-discoverable.

10

Though none of the cases discussed above directly address an assertion that privileged information would necessarily be revealed if a more detailed privilege log were required, those cases demonstrate courts required significant log detail when a party claimed the peer review privilege. Though most of those cases interpret statutes from states other than Minnesota and North Dakota, the court nonetheless considers the cases to provide guidance on the question presented here.

Essentia cites In re Fairview-University Medical Center, 590 N.W.2d 150 (Minn. App. 1999), which centered on application of confidentiality provisions of Minnesota's peer review statute to subpoenas issued by the state Board of Medical Practice. In reaching its conclusions, the court discussed peer review organizations acquiring original source documents in an effort to shield those documents from discovery. The court concluded that practice was not prohibited by the statute, even if the practice "perpetrate[d] injustice." Id. at 154. Essentia characterizes the case as "ardently safeguarding the peer review/quality assurance privilege," despite difficulties which may result from application of the privilege. (Doc. 63, p. 6).  As plaintiffs describe, that case did not address the scope of the privilege itself, only whether the privilege applied in the administrative proceedings at issue. (Doc. 68, p. 9). But the case does demonstrate an interpretation of Minnesota law that favors health care facilities.

Essentia also cites Amaral v. Saint Cloud Hospital, which described the Minnesota peer review statute as supporting a "strong public interest in improving health care by granting certain statutory protections to medical review organizations" and favoring the public interest over private interests. 598 N.W.2d 379, 387 (1999). Plaintiffs respond that adopting Essentia's position would favor Essentia's private

11

interest rather than the interests of its patients who received the TTSPPs at issue. (Doc. 68, p. 10).

As this court has recognized, the North Dakota legislature has defined a broad peer review privilege. See Bharadjaw v. Mid Dakota Clinic, P.C., No. 1:16-cv-262, 2017 WL 11591196 (D.N.D. March 9, 2017); Guttormson v. ManorCare of Minot ND, LLC, No. 4:14-cv-36, 2015 WL 11147876 (D.N.D. Sept. 28, 2015). But the court will not interpret either North Dakota or Minnesota law as protecting the very existence of documents which may be entitled to a peer review privilege or as protecting every internal document concerning an adverse event in a health care facility. Rule 26(b)(5)(A) contemplates only rare circumstances in which a description of withheld documents cannot be accomplished without revealing privileged information. Review of the documents Essentia submitted in camera does not convince the court that Essentia cannot identify withheld documents without disclosing privileged information. Though it appears at least some of the documents submitted for in camera review will be protected by a peer review privilege, the court makes no finding as to any of those documents at this time.

Essentia will be required to provide privilege logs identifying documents over which it claims peer review privilege with at least the following information: (1) the date on which it was created, (2) identity of the person who created it and the position held by that person at the time the document was created, (3) identity of persons who received the document and their positions, (4) a description of the subject matter of the document, (5) inclusive document identification numbers, and (6) specific reference to the portion of the North Dakota or Minnesota privilege the document is asserted to

meet. The privilege log should be prepared in a manner that will allow plaintiffs to meaningfully assess the claimed privilege and minimize need for in camera review.

## Conclusion

Ultimately, application of a peer review privilege is a decision of the court. Without a more detailed privilege log, it may be necessary for the court to review each document over which Essentia claims a peer review privilege.

As to documents over which Essentia has claimed a peer review privilege to date, within **fourteen days** of today's date, Essentia must provide plaintiffs a more detailed privilege log as described above. The court is aware that Essentia's document production is not yet complete and that it will be completed on a rolling basis. With each production, Essentia must provide plaintiffs a privilege log as described above.

**IT IS SO ORDERED**.

Dated this 2nd day of August, 2021.

*/s/ Alice R. Senechal*
Alice R. Senechal
United States Magistrate Judge