THE UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA
EASTERN DIVISION

| | |
|---|---|
| JESSICA KRAFT, individually and as parent of minors L.K., S.K., and O.K.; SHELLI SCHNEIDER, individually and as parent of minors A.S. and W.S.; ANNE BAILEY, individually and as parent of minor D.B.; AMY LAVELLE, individual and as parent of minors Em.L.and El.L.; ELIZABETH BEATON, individually and as parent of minor M.B.; AMANDA AND TYRELL FAUSKE, individually and as parents of minors C.R.F. and C.J.F.; JENNIFER REIN, individually; and JESSICA BERG, individually and as parent of minors A.B. and S.B., individually and on behalf of all others similarly situated, | Case No. 3:20-CV-00121 |
| Plaintiffs, | **ESSENTIA HEALTH'S AND INNOVIS HEALTH, LLC'S OBJECTION TO AND NOTICE OF APPEAL FROM COURT'S ORDER REGARDING DISCOVERY DISPUTE (DOC. ID NO. 79)** |
| vs. | |
| ESSENTIA HEALTH, INNOVIS HEALTH, LLC d/b/a ESSENTIA HEALTH, DAKOTA CLINIC PHARMACY, LLC, JOHN DOE MANUFACTURERS, and JOHN DOE DISTRIBUTOR, | |
| Defendants. | |

## I.    INTRODUCTION

Defendants, Essentia Health and Innovis Health, LLC d/b/a Essentia Health West (collectively, "Essentia"), submit this Objection to and Notice of Appeal from Magistrate Senechal's Order Regarding Discovery Dispute (Doc. ID No. 79) which was entered in this

matter on August 2, 2021 and subsequently modified by Order dated August 4, 2021.[1]  *See*

Doc. ID No. 81, *Order Amended the August 2, 2021 Order*.  The Order Regarding Discovery

Dispute directs Essentia to provide a more detailed privilege log contrary to the applicable peer

review/quality assurance statutes.  Accordingly, the Order Regarding Discovery Dispute is

contrary to law.  Essentia, therefore, asks that this Court set aside Magistrate Senechal's Order

Regarding Discovery Dispute pursuant to Rule 72(a) of the Federal Rules of Civil Procedure

and Rule 72.1 of the United States District Court for the District of North Dakota Local Rules.

Alternatively, Essentia seeks certification of a question to the North Dakota Supreme Court.

## II.   PROCEDURAL BACKGROUND

This lawsuit was commenced in July of 2020.  (Doc. ID No. 2, *Summons Issues;* Doc.

ID No. 3, *Waiver of Service Executed)*.  Plaintiffs allege, since January of 2017, Essentia sold

and administered more than 100 temperature sensitive pharmaceutical products ("TTSPPs")

---

[1] The initial Order acknowledged that "Essentia's document production is not yet complete and that it will be completed on a rolling basis" and the Court further ordered Essentia to provide a more detailed privilege log "[w]ith each production." *Id.*  As it relates to Essentia's rolling production, at the July 27, 2021 status conference, the Court requested Essentia to complete the production of documents by August 31, 2021 with a rolling production beginning August 6, 2021, and weekly after that. (Doc. ID No. 77, *Clerk's Minutes*).  In contrast to the Court's Order Regarding Discovery Dispute, the Court's Order Governing Discovery of Electronically Stored Information, which was entered in this matter on March 1, 2021, allows a producing party 60 days after the production of documents within which to provide a privilege log.  (Doc. ID No. 46, *Order Governing Discovery of Electronically Stored Information,* at ¶ VI 3).  The Court subsequently amended its August 2, 2021 Order and clarified that Essentia is to "produce a privilege log, consistent with the requirements of the August 2nd Order, for each production within sixty days the production of documents for which a privilege is asserted." (Doc. ID No. 81, *Order Amending the August 2, 2021 Order*). Essentia's Emergency Motion to Stay the Order Regarding Discovery Dispute pending this Court's review is pending before Magistrate Senechal. (Doc. ID No. 83, *Essentia Health's Emergency Motion to Stay Court's Order Regarding Discovery Dispute (Doc. ID No. 79))*.

manufactured by John Doe Manufacturers and stored and distributed by Dakota Clinic Pharmacy, LLC (defined by the Plaintiffs as the "Affected Medications") to Plaintiffs and their children. (Doc. ID No. 28, *First Amended Class Action Complaint,* at ¶¶ 1-3). Plaintiffs allege the Affected Medications were handled and stored outside the proper temperature range and, thus, subject to one or more temperature excursions, affecting patients across Minnesota and North Dakota. *Id.* at ¶ 3. Plaintiffs asserted four separate claims for relief against Essentia, including claims for breach of express warranties, breach of implied warranties, violation of consumer protection and deceptive trade practices laws under both Minnesota and North Dakota law, and unjust enrichment. *Id.* at ¶¶ 81-142.

Essentia states that in early 2020, Innovis Health, LLC and Essentia discovered that certain TTSPPs that had been stored and maintained by Dakota Clinic Pharmacy, LLC[2] may have been subjected to a temperature excursion, potentially rendering them less effective. (Doc. ID No. 30, *Essentia Health's Answer to First Amended Complaint and Demand for Jury Trial,* at ¶ 37). Essentia admits that in or around April of 2020, patients who had received certain TTSPPs that were stored and maintained by Dakota Clinic Pharmacy, LLC were informed that TTSPPs may have been subjected to temperature excursion, potentially rendering them less effective. *Id.* at ¶ 38. Essentia denies the allegations which form the basis of Plaintiffs' claims. *Id.* at ¶¶ 81-142.

A discovery dispute arose between the parties during the course of this litigation as to what level of detail is required to assert the peer review/quality assurance privilege in a

---

[2] This Court granted Dakota Clinic Pharmacy, LLC's Motion to Dismiss without prejudice on May 13, 2021. (Doc. ID No. 56, *Order Granting Motion to Dismiss).*

privilege log.    More specifically, Plaintiffs contend that Essentia's First Supplemental Privilege Log fails to meet the requirements of Rule 26 of the Federal Rules of Civil Procedure. *See* Doc. ID No. 68-1, *Essentia's First Supplemental Privilege Log.*    Essentia's First Supplemental Privilege Log asserts the application of the peer review/quality assurance privilege and sets forth the date, document type, and subject matter, in general terms. *Id.*

Pursuant to Local Rule 37.1, the parties participated in an informal dispute resolution conference at the conclusion of which Magistrate Senechal authorized briefing on the issue. (Doc. ID No. 79, *Order Regarding Discovery Dispute*, at pgs. 1-2).    Magistrate Senechal also directed Essentia to "submit a representative sample, consisting of ten percent of the documents over which it claims peer review/quality assurance privilege, for in camera review, along with a detailed privilege log of those documents." (Doc. ID No. 66, *Order Directing in Camera Submission*).    Briefing, including Essentia's in camera submission, was completed on June 14, 2021.    (Doc. ID No. 70, *Essentia Health's Reply Memorandum Regarding Peer Review/Quality Assurance Privilege in the Context of a Privilege Log*; Doc. ID No. 71, *Essentia's Health's In-Camera Submission).*

Magistrate Senechal issued an Order Regarding Discovery Dispute, addressing this issue, on August 2, 2021. (Doc. ID No. 79, *Order Regarding Discovery Dispute*).    Magistrate Senechal recognized the broad nature of the peer review/quality assurance privilege, but nonetheless ordered Essentia to

> provide privilege logs identifying documents over which it claims peer review privilege with at least the following information:    (1) the date on which it was created, (2) identity of the person who created it and the position held by that person at the time the document was created, (3) identity of persons who received the document and their positions, (4) a description of the subject matter of the document, (5) inclusive document identification numbers, and (6) specific

4

reference to the portion of the North Dakota or Minnesota privilege the document is asserted to meet.

*Id.* at pgs. 12-13. Magistrate Senechal's decision was based on cases that do not address what level of detail may be included in a privilege log without revealing information itself privilege or protected by the peer review/quality assurance privilege and cases interpreting other states' peer review/quality assurance statutes. *Id.* at pg. 11. The Order Regarding Discovery Dispute is contrary to the plain language of the statutes at issue. For these reasons, outlined more fully below, the Order Regarding Discovery Dispute, requiring Essentia to produce a more detailed privilege log, inconsistent with the applicable peer review/quality assurance privilege, is contrary to law. Essentia, therefore, respectfully requests this Court set aside Magistrate Senechal's Order Regarding Discovery Dispute. Alternatively, Essentia seeks certification of a question to the North Dakota Supreme Court.

## III.    LAW AND ARGUMENT

### A.    Standard of Review

Rule 72(a) of the Federal Rules of Civil Procedure recognizes that non-dispositive pretrial matters, such as discovery disputes, may be decided by a magistrate judge. FED. R. CIV. P. 72(a). Rule 72(a) also provides any party the opportunity to object to a magistrate judge's order on a non-dispositive matter within fourteen days following service of a copy of the order. *Id.* Pursuant to Local Rule 72.1(D)(2), "[t]he appealing party must serve and file a written notice of appeal, which must specifically designate the order or part thereof from which the appeal is taken and the grounds for the appeal." D.N.D. CIV. L. R. 72.1(D)(2). "The district judge in the case must consider timely objections." FED. R. CIV. P. 72(a).

Rules 72(a) and 72.1 outline the procedure to appeal from/object to a non-dispositive order issued by a magistrate judge as well as the applicable standard of review. A reviewing district judge is to "modify or set aside any part of the order that is clearly erroneous or is contrary to law." FED. R. CIV. P. 72(a); *see* D.N.D. CIV. L. R. 72.1(D)(2); *Weather Modification LLC v. Brackin,* Case No. 3:20-CV-73, 2020 WL 6867080, at *1 (D.N.D. Oct. 26, 2020). "A magistrate judge's order 'is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure.'" *In re Blue Cross Blue Shield Antitrust Litig.,* No. 2:13-CV-20000-RDP, 2017 WL 11538508, at *2 (N.D. Ala. Jan. 20, 2017) (quoting *Botta v. Barnhart,* 475 F. Supp. 2d 174, 185 (E.D. N.Y. 2007)). The objecting party bears the burden of demonstrating that the ruling is contrary to law. *Jacam Chem. Co. 2013, LLC v. Shepard,* No. 1:19-CV-093, 2020 WL 6263747, at *2 (D.N.D. Aug. 18, 2020).

### B.     Rule 26(b)(5)(A) of the Federal Rules of Civil Procedure does not require the disclosure of information which is itself privileged.

As Magistrate Senechal outlined, Rule 26(b)(5)(A) requires a party claiming an applicable privilege to "describe the nature of the documents, communications, or tangible things not produced or disclosed, and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." FED. R. CIV. P. 26(b)(5)(A)(ii); Doc. ID No. 79, *Order Regarding Discovery Dispute,* at pg. 3. As the Advisory Committee Notes explain, and Magistrate Senechal emphasized, "[i]n rare circumstances some of the pertinent information affecting applicability of the claim…may itself be privileged." FED. R. CIV. P. 26 Advisory Committee's Note to 1993 Amendment; Doc. ID No. 79, *Order Regarding Discovery Dispute,* at pg. 3. "[T]he rule provides that such

6

information need not be disclosed." FED. R. CIV. P. Advisory Committee's Note to 1993 Amendment.

Magistrate Senechal's Order Regarding Discovery Dispute demonstrates that this case, premised on diversity jurisdiction, involves the intersection of the Federal Rules of Civil Procedure and applicable state substantive law on privileges. FED. R. EVID. 501; *Bharadwaj v. Mid Dakota Clinic, P.C.,* No. 1:16-CV-262, 2017 WL 11591196, at *2 (D.N.D. Mar. 9, 2017). Accordingly, what level of detail must be included in a privilege log pursuant to Rule 26(b)(5)(A)(ii) of the Federal Rules of Civil Procedure, which governs when a privilege log must be produced, and, in turn, what level of detail cannot be included to preserve the asserted privilege, turns on the contours of the applicable privilege pursuant to state law. *See* Doc. ID No. 79, *Order Regarding Discovery Dispute,* at pg. 4). Plaintiffs asserted claims under both North Dakota and Minnesota law; therefore, Magistrate Senechal analyzed the peer review/quality assurance privilege recognized by both states. (Doc. ID No. 79, *Order Regarding Discovery Dispute,* at pgs. 4-7).

C.    **The peer review/quality assurance privilege precludes the disclosure of more detailed information than is already set forth in Essentia's First Supplemental Privilege Log.**

Broadly, Chapter 23-24 of the North Dakota Century Code "establishes a privilege for documents that meet the definition of 'peer review records,' and provides that those records are not subject to subpoena, civil discovery, or introduction into evidence." *Guttormson v. ManorCare of Minot ND, LLC,* No. 4:14-CV-36, 2015 WL 11147876, at *2 (D.N.D. Sept. 28, 2015). "Peer review records are confidential and may be used by a peer review organization and the organization members only for conducting a professional peer review." N.D. CENT. CODE § 23-34-01(1).

7

"There are two prongs to the statutory definition of 'peer review record," which reinforce that the design of the peer review/quality assurance privilege is to promote "open discussions and candid self-analysis...to ensure that medical care of high quality will be available to the public." *Guttormson,* No. 4:14-CV-36, 2015 WL 11147876, at *2 (D.N.D. Sept. 28, 2015); *Trinity Med Ctr. Inc. v. Holum,* 544 N.W.2d 148, 154 (N.D. 1996) (quoting *Moretti v. Lowe,* 592 A.2d 855, 857-58 (R.I. 1991)).   Under the first prong, "[d]ata, information, reports, documents, findings, compilations and summaries, testimony, and any other records generated by, acquired by, or given to a peer review organization as part of any professional peer review, regardless of when the record was created" are protected from disclosure.  N.D. CENT. CODE § 23-24-01(4)(a)(1).   In addition, the peer review privilege extends to "[c]ommunications relating to a professional peer review, whether written or oral, between...peer review organization members and other individuals participating in a professional peer review." N.D. CENT. CODE § 23-34-01(4)(a)(2).

In turn, "professional peer review" is defined as "all procedures of a peer review organization or functions it performs to monitor, evaluate, and take action to review the medical care provided to patients by health care organizations or health care providers." N.D. CENT. CODE § 23-34-01(5).   Professional peer review is not limited to just those activities which may be considered "peer review" in the literal sense of the phrase.  In fact, professional peer review specifically

> includes procedures or functions to: [e]valuate and improve the quality of health care; [o]btain and disseminate data and statistics relative to the treatment and prevention of disease, illness, or injury; [d]evelop and establish guidelines for medical care and the costs of medical care; [p]rovide to other affiliated or nonaffiliated peer review organizations information that is originally generated within the peer review organization for the purposes of professional peer review;

8

[i]dentify or analyze trends in medical error, using among other things a standardized incident reporting system; and [p]rovide quality assurance.

*Id.*

"Peer review organization" is also broadly defined to encompass health care organizations, including hospitals, hospital medical staff, clinics, physicians, a group of physicians, pharmacies, associations or organizations of medical professionals, as well as any combination of these entities. N.D. CENT. CODE §§ 23-34-01(3)(a) & 23-34-01(1). In addition to health care organizations, committees of health care organizations, "composed of health care providers employees, administrators, consultants, agents, or members of the care health care organization's governing body" are also included in the definition of peer review organization. N.D. CENT. CODE § 23-34-01(3)(b). As Magistrate Senechal made clear, "plaintiffs do not contest Essentia's inclusion under" the definition of health care organization. (Doc. ID No. 79, *Order Regarding Discovery Dispute,* at pg. 6).

The peer review/quality assurance privilege is subject only to a few, narrowly-defined statutory exceptions. By definition, peer review records do not include original source documents. N.D. CENT. CODE § 23-34-01(4)(b). In addition, the privilege afforded to peer review records does not extend to "[r]ecords gathered from an original source that is not a peer review organization;" testimony based on personal knowledge, so long as the information was not obtained as a result of that person's participation in the peer review process, and peer review records subpoenaed by the North Dakota Board of Medicine. N.D. CENT. CODE § 23-34-03.

The peer review/quality assurance privilege under Minnesota law is similarly broad in recognition of the purpose of Minnesota's peer review statutory scheme, "to promote the

9

strong public interest in improving health care by granting certain protections to medical review organizations…and to encourage the medical profession to police its own activities with minimal judicial interference." *Larson v. Wasemiller,* 738 N.W.2d 300, 312 (Minn. 2007) (internal citations omitted). Accordingly, Minnesota law shields "data and information acquired by a review organization, in the exercise of its duties and functions, or by an individual or other entity acting at the direction of the review organization" from disclosure by subpoena or discovery. Minn. Stat. § 145.64, subd. 1. In fact, the peer review/quality assurance privilege in Minnesota precludes the disclosure of peer review information "to anyone except to the extent necessary to carry out one or more of the purposes of the review organization." *Id.* In addition, "[t]he proceedings and records of a review organization shall not be subject to discovery or introduction into evidence in any civil action against a professional arising out of the matter or matters which are the subject of consideration by the review organization." *Id.*

"Review organization" is defined as "a committee whose membership is limited to professionals, administrative staff, and consumer directors…which is established by…a hospital, a clinic…the Department of Human Services, or a nonprofit corporation that owns, operates, or is established by one or more of the above referenced entities, to gather and review information relating to the care and treatment of patients for the purposes of," among other things, "evaluating and improving the quality of health care." Minn. Stat. § 145.61, subd. 5. There is no dispute that Essentia meets this definition.

Not unlike the peer review/quality assurance statutes in North Dakota, the exceptions to the peer review/quality assurance privilege under Minnesota law are few and limited. Minnesota's peer review statutes do not preclude the discovery and disclosure of "information,

10

documents or records otherwise available from original sources." Minn. Stat. § 145.64, subd. 1. Moreover, a person who participated in a peer review proceeding can testify as to their personal knowledge, if any, but cannot be asked about testimony provided to the review organization or opinions formed as a result of the peer review proceeding. *Id.*

**D.    The Order Regarding Discovery Dispute is premised upon case law which does not address this issue, analyzes other states' peer review/quality assurance statutes, and is inconsistent with the plain language of the peer review/quality assurance statutes at issue in this case.**

Although Magistrate Senechal recognized the broad nature of the peer review/quality assurance privilege at issue, the Order Regarding Discovery Dispute requires Essentia to produce a privilege log which includes

> (1) the date on which it was created, (2) identity of the person who created it and the position held by that person at the time the document was created, (3) identity of persons who received the document and their positions, (4) a description of the subject matter of the document, (5) inclusive document identification numbers, and (6) specific reference to the portion of the North Dakota or Minnesota privilege the document is asserted to meet.

(Doc. ID No. 79, *Order Regarding Discovery Dispute*, at pgs. 12-13). The Order Regarding Discovery Dispute is not premised upon any statutory exception to the applicable peer review/quality assurance privilege. Instead, the Order Regarding Discovery Dispute is based entirely on case law which either does not address the degree of detail required in a privilege log asserting the peer review/quality assurance privilege or turns on application of peer review statutes in other states. *See e.g. Elkhawily v. Mayo Holding Co.,* Civ. No. 12-3062, 2014 WL 3573674, at *3 (D. Minn. July 21, 2014) (addressing whether Minnesota's peer review/quality assurance privilege applied in the context of an action involving claims under both federal and state law and not what level of detail is required to assert the peer review/quality assurance privilege in a privilege log as the issue was not raised by the parties); *Allred v. Saunders,* 342

11

P.3d 204 (Utah 2014) (analyzing Utah's care-review and peer-review privilege in relation to Utah's counterpart to federal Rule 26(b)(5)(A)); *Earhart v. Elder,* No. 5:18-CV-01000, 2019 WL 455221 (S.D.W. Va. Feb. 5, 2019) (analyzing West Virginia's statutory peer review privilege as interpreted by the West Virginia Supreme Court); *William Beaumont Hospital v. Medtronic, Inc.,* No. 09-CV-11941, 2010 WL 1626408 (E.D. Mich. April 21, 2010). (analyzing Michigan's peer review statutes as interpreted by the Michigan Supreme Court); *Ervin v. Howard Univ.,* 445 F. Supp. 2d 23 (D.C. 2006) (analyzing the scope of the District of Columbia's peer review privilege without relation to what level of detail is required to assert the privilege in a privilege log); *compare In re Fairview-Univ Med. Ctr.,* 590 N.W.2d 150, 152 (Minn. Ct. App. 1999) ("Even if health care providers are purposefully amassing original documents in review organization files, that does not make the documents any less privileged"); *Amaral v. Saint Cloud Hosp.,* 598 N.W.2d 379, 388 (Minn. 1999) (highlighting the presumption "that the legislature intended to favor a public interest over a private interest" in denying physicians' request to access a hospital's review organization information).

Magistrate Senechal's reliance on and reference to this collection of cases is significant with respect to Essentia's present appeal/objection. While there is very little case law interpreting North Dakota's peer review/quality assurance statutes, particularly after the Legislature's substantial revisions in 1997, the North Dakota Supreme Court has clearly articulated that "because of the lack of uniformity among the various states' peer review privilege statutes, caselaw interpreting [other states'] statutes is not highly persuasive" in the interpretation of North Dakota's peer review and quality assurance statutes. *Trinity Med. Ctr.,* 544 N.W.2d 148, at 153. The North Dakota Supreme Court's position is premised on the fact that "'there is extremely wide variation in the privilege granted by the states', and that there is

little consistency in the entities covered or types of information protected." *Id.* Even where two states' peer review/quality assurance statutes are similar, it is error to rely on a court's interpretation of a different state's law in analyzing the peer review/quality assurance privilege in either North Dakota or Minnesota.

Instead, the plain language of the applicable peer review/quality assurance statutes at issue controls. A court's primary goal in construing a statute is to discover the intent of the legislature. *Burlington Northern v. State*, 500 N.W.2d 615 (N.D. 1993). To determine the legislature's intent, the language of the statute is examined first. *Rocky Mountain Oil & Gas Ass'n v. Conrad*, 405 N.W.2d 279 (N.D. 1987); *Amaral v. Saint Cloud Hosp.*, 598 N.W.2d 379, 384 (Minn. 1999). Where the "statute's language is clear and unambiguous, the legislative intent is presumed clear on the face of the state." *Western Gas Resources Inc. v. Heitkamp*, 489 N.W.2d 869 (N.D. 1992), *cert denied*, 507 U.S. 920 (1993); *see also Schmidt v. City of Minot*, 2016 ND 175, ¶ 7, 834 N.W.2d 909 (citing N.D. CENT. CODE § 1-02-02) ("If the language of a statute is clear and unambiguous, the language may not be disregarded."); *Amaral v. Saint Cloud Hosp.*, 598 N.W.2d 379, 384 (Minn. 1999) (Courts are not free to "disregard the letter of the law under the pretext of pursuing the spirit of the law.")

There is nothing ambiguous about the peer review/quality assurance statutes at issue, or perhaps more importantly, the narrowly-defined statutory exceptions to the peer review/quality assurance privilege. Magistrate Senechal concluded that "[r]eview of the documents Essentia submitted in camera does not convince the court that Essentia cannot identify withheld documents without disclosing privileged information." (Doc. ID No. 79, *Order Regarding Discovery Dispute*, at pg. 12). Although Magistrate Senechal did not make any findings as to any of the documents Essentia submitted for in camera review, the Order

13

Regarding Discovery Dispute acknowledges that "it appears at least some of the documents submitted for in camera review will be protected by the peer review privilege." *Id.* The Order Regarding Discovery Dispute does not suggest that the details Essentia is now required to include in its privilege log to assert the peer review/quality assurance privilege fall within one of the limited statutory exceptions.

Indeed, date of creation, authors/recipients, and a more detailed description of the subject matter of the documents in question do not fall within the "original source" exception. *See Guttormson ND, LLC,* No. 4:14-CV-36, 2015 WL 11147876, at *3 (D.N.D. Sept. 28, 2015) (identifying deposition testimony based on matters within the witness's personal knowledge as an example of an "original source"); *In re Fairview-Univ. Med. Ctr,* 590 N.W.2d 150, 154 (Minn. Ct. App. 1999) (clarifying that the "original source" exception means "documents available from other sources remain discoverable from other sources."). Nor does this information constitute testimony based on personal knowledge outside of the peer review process. *See* N.D. CENT. CODE § 23-34-03; Minn. Stat. § 145.64, subd. 1. Rather, disclosure of the details contemplated by the Order Regarding Discovery Dispute would require Essentia to disclose information regarding peer review proceedings and functions, protected from disclosure by the plain language of the applicable statutes. *See* N.D. CENT. CODE § 23-34-02(1) ("Peer review records are confidential and may be used by a peer review organization and the organization members only for conducing a professional peer review."); Minn. Stat. § 145.64, subd. 1 (precluding disclosure of peer review information "to anyone except to the extent necessary to carry out or more of the purposes of the review organization.").

This is exactly why Rule 26 of the Federal Rules of Civil Procedure "does not attempt to define for each case what information must be provided when a party asserts a claim of

14

privilege." FED. R. CIV. P. 26(b)(5)(A)(ii) Advisory Committee's Note to 1993 Amendment. Essentia described the nature of the privileged documents with as much specificity as possible while preserving the applicable peer review/quality assurance privilege. If Essentia were required to disclose any greater level of detail as to the information withheld subject to the peer review/quality assurance privilege, as is contemplated by the Order Regarding Discovery Dispute, the privilege would be effectively destroyed, severely undermining the very purpose for which the peer review/quality assurance privilege was designed. Rule 26 of the Federal Rules of Civil Procedure does not require this; nor do the applicable peer review/quality assurance statues permit such disclosure either. The Order Regarding Discovery Dispute is, therefore, contrary to law. Essentia respectfully requests this Court set aside the Order Regarding Discovery Dispute.

E.    **Alternatively, Essentia moves this Court to certify a question to the North Dakota Supreme Court.[3]**

There is no dispute that what level of detail may be disclosed in asserting the peer review/quality assurance privilege is a matter of first impression. *See* Doc. ID No. 79, *Order*

---

[3] Plaintiffs asserted claims for relief under both North Dakota and Minnesota law. In its Memorandum Regarding Peer Review/Quality Assurance Privilege in the Context of a Privilege Log, Essentia explained choice of law analysis is not required because there is no conflict between the two states' peer review/quality assurance statutes as applied to this issue. (Doc. ID No. 63, *Essentia Health's Memorandum Regarding Peer Review/Quality Assurance Privilege in the Context of a Privilege Log,* at fn 1). Essentia only seeks certification of a question to the North Dakota Supreme Court given the likely choice of law analysis, if necessary. Federal courts sitting in diversity jurisdiction apply the choice of law rules of the state in which they sit. *Rostvet,* No. 2:11-CV-21, 2013 WL 11941563, at *3 (D.N.D. Nov. 7, 2013) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941)). The North Dakota Supreme Court has not articulated what choice of law scheme it employs to the law of privileges. However, courts often "apply the forum privilege to all communications" and consider the actual nature of the conflict between the forum privilege law and the foreign privilege. 23A Fed. Prac. & Proc. Evid. § 5435. In fact, where both jurisdictions recognize the privilege, the inquiry is often focused on whether the relationship is worthy of protection

15

*Regarding Discovery Dispute,* at pg. 7 ("Neither party cites any cases directly discussing an assertion that providing detailed information in a privilege log cannot be accomplished without disclosing information covered by a peer review privilege. Nor has the court's research identified case law directly addressing the issue."). In the absence of applicable state case law dispositive of this issue Essentia requests this Court to certify a question to the North Dakota Supreme Court pursuant to Rule 47 of the North Dakota Rules of Appellate Procedure.

Rule 47 permits the North Dakota Supreme Court to answer questions of law certified to it

> when requested by the certifying court and the following conditions are met: (1) questions of law of this state are involved in any proceeding before the certifying court which may be determinative of the proceeding; (2) it appears to the certifying court there is no controlling precedent in the decisions of the supreme court of this state.

N.D. R. App. 47(a). Federal district courts have "wide discretion to certify questions to state courts." *Jorgenson v. Agway, Inc.*, No. A3-00-59, 200 WL 33339633, at *2 (D.N.D. Nov. 1, 2000), certified question answered, 2001 ND 104, 627 N.W.2d 391. "Eighth Circuit courts encourage certification '[i]n the absence of controlling [state court] precedent which would enable...[a] sound decision without indulging in speculation or conjecture." *Id.* (quoting *Kulinski v. Medtronic Bio-Medicus, Inc.,* 112 F.3d 368, 371 (8th Cir. 1997)). "The North Dakota Supreme Court similarly would prefer to have federal courts...certify questions, rather than speculate upon unsettled issues of North Dakota law, leaving parties no recourse in the

---

as opposed to whether there is a conflict over details of the specific privilege at issue. *Id.* This is consistent with the legislative history of North Dakota's peer review statutes, generally, which contemplates interstate application. *See Hearing on S.B. 2403, Before the S. Human Service Comm.,* 61st Leg. Assembly (2009) (Testimony of John C. Kapsner, Counsel to North Dakota Healthcare Association).

appellate courts of the state." *Id.; see also McKenzie County v. Hodel,* 467 N.W.2d 701, 704 (N.D. 1991)(explaining a certified question from a federal court does not have to be dispositive of the issues in the case unlike a certified question from a state district court).

While this case involves analysis of Rule 26 of the Federal Rules of Civil Procedure, it turns on the scope and application of the state peer review/quality assurance statutes at issue, an issue as it relates to the detail permitted to be included in a privilege log which the North Dakota Supreme Court has not addressed. For this reason, certification is appropriate.

## IV.    CONCLUSION

While Magistrate Senechal correctly recognized that the Federal Rules of Civil Procedure only require a party to provide sufficient detail to assert an applicable privilege without revealing information that is itself privileged, the Order Regarding Discovery Dispute, which requires Essentia to produce additional details in its privilege log, is plainly inconsistent with the applicable state peer review/quality assurance privilege. The Order Regarding Discovery Dispute is based entirely on case law which does not address the issue in question and which analyzes the peer review/quality assurance statutes as interpreted by other states without regard to the plain language of the peer review/quality assurance statutes under North Dakota and Minnesota law. The Order Regarding Discovery Dispute is inconsistent with the peer review/quality assurance privilege at issue in this case and its narrowly-defined statutory exceptions. It is also inconsistent with the command of Federal Rule of Civil Procedure 26 which recognizes, that although rare, there may be circumstances in which information that supports the invocation of an applicable privilege is itself privileged. FED. R. CIV. P. 26(b)(5)(A)(ii) Advisory Committee's Note to 1993 Amendment. Essentia maintains that this is such a circumstance and, therefore, asks that this Court set aside the Order Regarding

Discovery Dispute as it is contrary to law.  Alternatively, Essentia asks that this Court certify a question to the North Dakota Supreme Court, which has not previously addressed the question at issue.

Dated this 11th day of August, 2021.

**VOGEL LAW FIRM**

*s/ Angela E. Lord*

BY:  Angela E. Lord (#05351)
Robert B. Stock (#05919)
Briana L. Rummel (#08399)
218 NP Avenue
PO Box 1389
Fargo, ND  58107-1389
701.237.6983
Email:    alord@vogellaw.com
rstock@vogellaw.com
brummel@vogellaw.com
ATTORNEYS FOR ESSENTIA HEALTH
AND INNOVIS HEALTH, LLC

4492878.1