**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA**

| | | |
|---|---|---|
| Jessica Kraft, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 3:20-cv-121 |
| | ) | |
| vs. | ) | **ORDER REGARDING** |
| | ) | **AUTHORIZATIONS FOR RELEASE** |
| | ) | **OF MEDICAL RECORDS** |
| Essentia Health, et al., | ) | |
| | ) | |
| Defendants. | ) | |

In this putative class action, plaintiffs allege defendant Essentia Health sold and administered injectable pharmaceuticals—time and temperature sensitive pharmaceutical products (TTSPPs)—that had been stored outside the proper temperature range. Plaintiffs contend the improper storage of TTSPPs resulted in "reduced vaccine potency and the increased risk of vaccine-preventable diseases." (Doc. 28, p. 2). Essentia's answer admits that in April 2020, it advised patients who had received certain TTSPPs that the TTSPPs may have been subjected to a temperature excursion, potentially rendering them less effective. (Doc. 30, p. 2).

The parties have had a series of disputes regarding discovery, including an ongoing dispute over Essentia's production of medical record information. The court addressed some aspects of the dispute in a July 16, 2021 order, (Doc. 76), but that order did not address whether Essentia is required to produce the named plaintiffs' medical records absent the named plaintiffs' signed authorizations. After review of the parties' September 13, 2021 position statements and consideration of arguments made during a September 14, 2021 status conference, this order addresses that question. Additionally,

this order addresses plaintiffs' request that Essentia provide medical record information concerning putative class members.

**1.      Medical Authorizations from Named Plaintiffs**

The court understands the current dispute to center on Essentia's responses to Plaintiffs' Request for Production of Documents No. 15. That request seeks documents and data sufficient to identify:

a.      Each person or entity who paid, directly or indirectly, whether in whole or in part, for an Affected Medication;

b.      The person who was administered the Affected Medication;

c.      The date of birth of the patient administered the Affected Medication;

d.      The Affected Medication received by the patient;

e.      The date the Affected Medication was administered;

f.      The Medical Provider who administered the Affected Medication;

g.      The entity and location where the Affected Medication was administered;

h.      The payment(s) made for the Affected Medication, whether or not made by the patient;

i.      The payment(s) made for the visit at which the Affected Medication was provided;

j.      Any refunds, credits or other remuneration provided by you to any patient, payor or guarantor relating to the Affected Medications; and

k.      any free vaccinations or other services provided by you.

(Doc. 116-4, p. 5). Essentia responded in part: "Essentia has not received medical authorizations executed by the named Plaintiffs allowing for the disclosure of patient-specific information. Upon receipt of legally-sufficient medical authorizations, Essentia will seasonably supplement this interrogatory as to the named Plaintiffs." Id. at 5-6.

2

Essentia responded to various other requests for production of documents and to various interrogatories, with an identical objection.

The July 16th order concluded federal law, the Health Insurance Portability and Accountability Act (HIPAA), 42 U.S.C. §§ 1320d to 1320d-9, permits, but does not require, a "covered entity" such as Essentia to disclose patient-specific information pursuant to a "qualified protective order" under certain circumstances. The protective order governing this case is a "qualified protective order" under 45 C.F.R. § 164.512(a)(1)(v). Under 45 C.F.R. § 164.512, when a qualified protective order is in place, a covered entity may disclose protected health information in the course of any judicial proceeding "[i]n response to an order of a court. . . provided that the covered entity discloses only the protected health information expressly authorized by such order."

Plaintiffs make claims under both North Dakota and Minnesota law. In briefing the disputes addressed in the July 16th order, Essentia argued the law of both states requires signed authorizations, notwithstanding the qualified protective order. Though HIPAA generally preempts state law relating to privacy of protected health information (PHI), it does not preempt state law that is "more stringent" than HIPAA. 45 C.F.R. § 160.203(b). The court therefore addresses whether either North Dakota or Minnesota law relating to privacy of PHI is more stringent than HIPAA.

By statute, Minnesota law provides a physician-patient privilege and prohibits release of patient medical records without a signed authorization or "specific authorization in law." Minn. Stat. § 144.293(2). In the July 16th order, this court stated a HIPAA qualified protective order may authorize a covered entity to disclose PHI of members of a putative class, though HIPAA does not mandate that disclosure. If

disclosure of PHI of putative class members is authorized under a qualified protective order, there can be no question disclosure of PHI of named plaintiffs is authorized. To the extent Essentia argues Minnesota law is more stringent than HIPAA, the court concludes it is not. And, even if a HIPAA qualified protective order does not constitute "specific authorization in law," an order of this court can provide that specific authorization.

Under North Dakota law, a party who puts his or her medical condition in issue waives the physician-patient privilege to the extent the person's medical condition is at issue in the litigation:

> A party who commences an action for malpractice, error, mistake, or failure to cure, whether based on contract or tort, against a health care provider, as defined in section 32-42-01, or a health care facility, on the person's own behalf or in a representative capacity, waives in that action any privilege existing under rule 503 of the North Dakota Rules of Evidence, as to any medical records, opinions, or other information <u>in the possession of any other health care provider</u> who has examined or cared for the party or other person whose health or medical condition has been placed in controversy in the action. The waiver must permit <u>all defendants to the action</u>, and their attorneys or authorized representatives, to examine the medical records, opinions, or other information and informally participate in a discussion with the health care provider, if the provider consents, regarding the medical records, opinions, or other information that appear reasonably calculated to lead to the discovery of admissible evidence as to any element of the action or the defense of the action. . . .
>
> Appropriate authorizations permitting access to the written medical record, informal discussion, and testimony at a deposition or trial must be provided by the party commencing the action at the time the action is commenced. If the party commencing the action fails to provide appropriate authorizations at the time the action is commenced, <u>the health care provider or health care facility may use other means to obtain the records</u> such as by subpoena or by seeking a court order.

N.D. Cent. Code § 28-01-46.1 (emphasis added).

In the briefing leading to the July 16th order, Essentia argued section 28-01-46.1 requires the named plaintiffs to provide medical authorizations, contending the statute

applies to any action against a health care facility. (Doc. 62, p. 5). Plaintiffs asserted the rationale for the section 28-01-46.1 waiver was inapplicable in this case, since it is an action for purely economic loss. (Doc. 69, p. 10). The court does not accept either interpretation of section 28-01-46.1.

Close reading of section 28-01-46.1 demonstrates it does not address a defendant health care facility providing information to a plaintiff or to a plaintiff's counsel. The statute provides for a waiver of privilege as to information "in the possession of any other health care provider," not information held by a provider who is a party to the action.[1] Further, the statute addresses access to PHI by "defendants in the action." The statute's requirement for providing appropriate authorizations addresses the health care facility, not the plaintiff, obtaining the records. This court concludes the waiver contemplated by section 28-01-46.1 does not apply to the named plaintiffs' PHI in Essentia's possession.

To the extent Essentia argues North Dakota law is more stringent than HIPAA, the court concludes it is not. As discussed above, the court concludes section 28-01-46.1 does not require that the named plaintiffs sign authorizations in order for Essentia to provide the information requested in the plaintiffs' interrogatories and requests for production of documents. That disclosure is authorized by the qualified protective order.

Essentia will be required to respond to plaintiffs' interrogatories and requests for production of documents insofar as they request PHI of the named plaintiffs without

---

[1] Of course, it has long been accepted that a plaintiff bringing a malpractice claim waives a privilege as to communications with a defendant health care provider. Sagmiller v. Carlsen, 219 N.W. 2d 885, 894 (N.D. 1974).

signed authorizations of the named plaintiffs. Because of the ways patient medical records are compiled, Essentia argued it could not produce the requested information without producing a patient's record in its entirety. To the extent required under Essentia's medical record system, the court finds the qualified protective order allows disclosure of a patient's medical record in its entirety.

**2.      PHI of Members of the Putative Class**

The July 16th order concluded the HIPAA qualified protective order "may authorize disclosure of putative class members' PHI" but further concluded plaintiffs had not yet demonstrated production of that information was proportional to the needs of the case. During the September 14th status conference, Essentia maintained that production of the information plaintiffs seek concerning putative class members would require review of individual records of the approximately 54,000 members of the putative class.

During the September 14th conference, plaintiffs specifically requested production of Essentia's communications to patients who had received the TTSPPs at issue. Essentia asserted its electronic medical records system would not allow it to search for communications other than chart-by-chart but agreed to produce the various form letters it had sent advising patients of the potential temperature excursions.

As discussed above, Essentia is **ORDERED** to respond to plaintiffs' interrogatories and requests for production of documents insofar as they request PHI of the named plaintiffs without signed authorizations of the named plaintiffs by **September 30, 2021**. It is further **ORDERED** that Essentia produce each of the various form letters it used to advise patients of the potential temperature excursions, without identifying recipients of the letters, by **September 24, 2021**.

6

Dated this 21st day of September, 2021.

/s/ Alice R. Senechal
Alice R. Senechal
United States Magistrate Judge