UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA
EASTERN DIVISION

| | |
|---|---|
| JESSICA KRAFT, individually and as a parent to minors L.K., S.K., and O.K.; SHELLI SCHNEIDER, individually and as parent to minors, A.S. and W.S.; individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ESSENTIA HEALTH, INNOVIS HEALTH, LLC d/b/a ESSENTIA HEALTH, DAKOTA CLINIC PHARMACY, LLC, JOHN DOE MANUFACTURERS, and JOHN DOE DISTRIBUTOR,<br><br>Defendants. | Court File No. 3:20-CV-00121<br><br><br>**MEMORANDUM IN SUPPORT OF DEFENDANT DAKOTA CLINIC PHARMACY, LLC'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT** |

## INTRODUCTION

[¶1]    Defendant Dakota Clinic Pharmacy, LLC ("Dakota") submits this Memorandum in support of its Motion to Dismiss the Second Amended Complaint ("SAC"). Dakota previously moved to dismiss the original complaint against Dakota on February 17, 2021. (Doc. # 37). Dakota argued it was not a "seller" under N.D.C.C. ch. 41-02, argued Plaintiffs' consumer protection law claims failed because Plaintiffs did not plead fraud with particularity, and argued Plaintiffs' unjust enrichment claim failed because Dakota did not receive any monetary benefit from Plaintiffs. Id. On May 13, 2021, the Court granted Dakota's motion to dismiss for failure to state a claim for which relief can be granted. (Doc. # 56). Plaintiffs then filed a SAC which re-alleged claims of breach of express and implied warranties, violation of the consumer protection laws of Minnesota and North Dakota, and for unjust enrichment against Defendants related to alleged temperature

1

excursions of certain vaccines Plaintiffs received. (Doc. # 91). Plaintiffs also added a cause of action for negligence. Id.

[¶2]    Plaintiffs' warranty claims against Dakota again fail because Dakota was not a "seller" under N.D.C.C. ch. 41-02 or Minn. Stat. ch. 336.  Plaintiffs' consumer protections law claims against Dakota fail for the same reason, and because Plaintiffs did not plead fraud against Dakota with particularity.  Plaintiffs' unjust enrichment claim fails because Dakota has not been enriched, as Dakota did not receive any monetary benefit from Plaintiffs in exchange for Plaintiffs receiving the vaccines. Finally, Plaintiffs' negligence claim fails because recovery is barred by the economic loss doctrine. Because Plaintiffs have failed to state claims against Dakota for which relief can be granted, Dakota once again brings this pre-Answer Motion to Dismiss, seeking dismissal of all causes of action against Dakota.

## BACKGROUND OF PLAINTIFFS' ALLEGATIONS

[¶3]    Plaintiffs allege Essentia Health and/or Innovis Health, LLC d/b/a Essentia Health (collectively "Essentia") sold and administered more than 100 time-and temperature-sensitive pharmaceutical products ("TTSPs") to Plaintiffs, their children and putative class members, which were allegedly manufactured by the John Doe Manufacturers and stored and distributed by Dakota. (Doc. # 91, ¶ 3). Plaintiffs allege these "Affected Medications" were handled and stored outside the proper temperature range and thus subject to one or more temperature excursions. Id. at ¶ 4. As alleged by Plaintiffs, they were notified by Essentia they might have received a compromised vaccine as a result of temperature excursions. Id. at ¶ 5. Plaintiffs allege that Dakota stored and distributed the TTSPs to Essentia. (Doc. # 91, ¶¶ 3, 24, 38, 41).

**LAW AND ARGUMENT**

**A.      *Motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6).***

[¶4]      Pursuant to Rule 12 of the Federal Rules of Civil Procedure, a defendant may assert a pre-Answer defense by motion, including the defense of failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6); see also Butler v. Broward Cty. Cent. Examining Bd., 367 F. App'x 991, 992 (11th Cir. 2010) (stating, under Fed.R.Civ.P. 12(a)(4)(A), the time frame for filing an answer is stayed pending the district court's disposition of the pending motion to dismiss). Rule 12(b)(6) "mandates the dismissal of a claim if there has been a failure to state a claim upon which relief can be granted." Berndsen v. N. Dakota Univ. Sys., 395 F. Supp. 3d 1194, 1196 (D.N.D. 2019) (emphasis added).

[¶5]      "To survive a motion to dismiss [under 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Usenko v. MEMC LLC, 926 F.3d 468, 472 (8th Cir.), *cert. denied sub nom.* Usenko on Behalf of SunEdison Semiconductor Ltd. Ret. Sav. Plan v. MEMC LLC, 140 S. Ct. 607, 205 L. Ed. 2d 388 (2019) (citation and quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Factual allegations must plausibly give rise to an entitlement to relief and rise beyond mere speculation. Id.

[¶6]      Here, dismissal of all counts against Dakota is appropriate, as even if all allegations in the Complaint are taken as true, Plaintiffs have failed to allege facts to support their claims for relief against Dakota.

### B.      *Plaintiffs' claim for breach of express warranties must fail as Dakota is not a "seller."*

[¶7]    Plaintiffs assert Defendants breached express warranties. Specifically, Plaintiffs allege Defendants expressly represented and warranted to the purchasers of their products, by and through statements made by Defendants in labels, publications, package inserts, and other written materials intended for consumers and the general public, that the Affected Medications were effective, fit, and proper for their intended use.

[¶8]    Plaintiffs' express warranty claim is predicated on North Dakota Century Code §§ 41-02-30 and/or 41-02-35 and Minn. Stat. § 336.2-318. Section 41-02-30(1)(a), N.D.C.C., provides any affirmation of fact or promise made **by the seller** to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise. See also Minn. Stat § 336.2-313 (stating express warranties by the seller are created by any affirmation of fact or promise made **by the seller** to the buyer….). Section 41-02-35, N.D.C.C., provides a seller's warranty, whether express or implied, extends to any person who may reasonably be expected to use, consume, or be affected by the goods and who is injured by breach of the warranty. See also Minn. Stat. § 336.2-318 (providing the same).

[¶9]    A "seller" is defined as a "person who sells or contracts to sell goods." N.D.C.C. § 41-02-03(1)(d); Minn. Stat. § 336.2-103(1)(d). A "sale" means "the passing of title from the seller to the buyer for a price." N.D.C.C. § 41-02-06; Minn. Stat. § 336.2-106(1).  There is no allegation in the SAC that Dakota is a "seller" or sold the vaccines to Plaintiffs. There is no allegation in the SAC that Dakota made any affirmation or promise to Plaintiffs. As such, Plaintiffs' claim for express warranty fails as a matter of law.

4

[¶10]   In its Order granting Dakota's Motion to Dismiss the Amended Complaint as against Dakota ("Order to Dismiss"), the Court acknowledged the Amended Complaint failed to identify what, if any, "affirmations of fact," "promises" or "descriptions of the goods" were made by Dakota as to the Affected Medications (Doc. # 56, p. 5). In the SAC, Plaintiffs attempted to correct this error by stating "Dakota distributed the Affected Medications to numerous Essentia Health clinics for administration to patients," (Doc. # 91, ¶ 250) and the "**distribution** of the Affected Medications" **was an express warranty in itself** that the Affected Medications were safe and effective for their intended use. (Doc. # 91, ¶ 251) (emphasis added). Plaintiffs further posit Dakota "expressly warranted" by virtue of its Shared Services Agreement that it would manage Innovis' inventory. (Doc. # 91, ¶ 261).

[¶11]   In its Order to Dismiss, the Court acknowledged the Amended Compliant, while alleging Dakota "stored and distributed" the Affected Medications, failed to allege that Dakota was a "seller" or engaged in a "sale" **to the Plaintiffs (or any other party**). (Doc. # 56, p. 6). The Court also acknowledged there may be instances where a distributor may be a seller under the U.C.C. and applicable state law in certain cases, but found the Amended Complaint's failure to allege what, if any, express warranties Dakota made and lack of allegations of any sale from Dakota to Plaintiffs warranted dismissal of the express warranty claims. (Doc. # 56, pp. 6-7).

[¶12]   Similarly, here, the SAC does not allege any express warranty Dakota made to Plaintiffs. The SAC does not allege Dakota is a seller or otherwise made any sale. Tellingly, this is simply because **Dakota is not a seller and did not sell the Affected Medications.** (See Doc. # 56, p. 7) ("**It is axiomatic that a party cannot be a seller if there are no allegations of a sale by that party in the complaint**.")(emphasis added). Instead, Plaintiffs now attempt to equate "distributing" the Affected Medications with making an express warranty. This argument fails,

and Plaintiffs cannot escape the fact Dakota is not a "seller" and that Dakota did not make any promises, affirmations, or descriptions to Plaintiffs regarding the affected medications.

[¶13]    Furthermore, Plaintiffs lack privity with Dakota to make a claim for breach of express warranty against Dakota. North Dakota recognizes the necessity of vertical privity between a Plaintiff and Defendant to make a recognized claim for breach of express warranty. Falcon for Import and Trade Co., v. North Central Commodities, Inc., 2004 WL 224676, *2 (D.N.D. Jan. 30, 2004).  If the Plaintiff lacks vertical privity with the defendant, the non-privity Plaintiff cannot recover any direct economic damages for a breach of an express warranty. Id. Here, there is no allegation in the SAC that Plaintiffs have any privity with Dakota. Just the opposite, Plaintiffs allege they purchased and received the vaccines directly from Essentia. Nevertheless, Plaintiffs now argue liability extends to Dakota under Durfee v. Rod Baxter Imps., Inc., 262 N.W.2d 349. (Minn. 1977) and Fode v. Capital RV Ctr., 1998 ND 65, ¶ 21, 575 N.W.2d 682.

[¶14]    Plaintiffs cite Durfee v. Rod Baxter Imps., Inc., 262 N.W.2d 349, 357-58 (Minn. 1977), for the proposition that Dakota is liable for any breach of warranty related to the Affected Medications because it profited directly and/or indirectly from the sales of the Affected Medication. (Doc. # 91, ¶ 280). In Durfee, Plaintiff-Durfee bought a lemon of a car from Horvath (a Saab dealer) which was succeeded by dealer Rod Baxter. After a series of issues, Plaintiff Durfee brought action against Rod Baxter as well as Saab-Scania (the distributor of Saabs in the U.S. at the time). The Minnesota Supreme Court determined the distributor (Saab-Scania) who profited indirectly from retail sales, must take responsibility for the solvency of its dealers[1] when its warranty is breached. Id. at 357-358. The court explained the (limited) circumstances for imputing

---

[1] At the time of the court's decision, Saab-Scania could not confirm the continued existence of Rod Baxter.

liability on Saab-Scania in this particular case, namely that **distributor-Saab-Scania specifically warranted its automobiles to increase retail sales of its automobiles** and that without extending liability to Saab-Scania, the plaintiff was without remedy because the dealership which sold the defective car was insolvent. Id.

[¶15]    Plaintiffs cite Fode v. Capital RV Ctr., 1998 ND 65, ¶ 21, 575 N.W.2d 682, for the proposition Innovis, Essentia, and Dakota Clinic Pharmacy are so closely linked in the storage and administration of TTSPPs that "they blended into a single unit" at the time the Affected Medications were administered." (Doc. # 91, pp. 50-51). In Fode, Plaintiff Fode(s) purchased an RV from Capital RV ("Capital") which was manufactured by Coachmen. Due to several issues with the RV, Plaintiff Fodes sought to revoke acceptance of the RV. The issue became whether Coachmen was a "seller" for the purposes of Plaintiff Fodes' revocation of acceptance claim. The North Dakota Supreme Court answered in the affirmative, explaining:

> Capital's sales contract with Fodes expressly said the motor home was "sold new with sportscoach" manufacturer warranty. In a provision disclaiming Capital's warranty liability, Capital's sales contract with Fodes specified "MANUFACTURER'S WARRANTY: ANY WARRANTY ON ANY NEW VEHICLE ... IS THAT MADE BY THE MANUFACTURER ONLY." Coachmen's "new recreational vehicle limited warranty" directed the buyer to take the product to "an authorized Coachmen dealer or service center" for warranty service, and Albert Fode signed a "warranty registration," which said the mobile home was warranted in the name of Capital as the dealer. These documents unambiguously passed Coachmen's warranty to Fodes and specified the product was warranted in the name of Capital as the dealer. Capital's sales contract with Fodes and Coachmen's warranty are "so closely linked both in time of delivery and subject matter, that they blended into a single unit at the time of sale.

Id. at ¶ 21 (emphasis added).

[¶16]    These cases are unavailing and provide no basis to extend liability to Dakota in this case. As the Court explained in its Order to Dismiss, express warranties are made **by a seller**. Allegations of storing and distributing the Affected Medications do not plausibly support a claim for breach of warranty. Unlike Durfee, Dakota has not made any express warranties that could potentially extend liability to Dakota as a seller. Furthermore, unlike Durfee, Dakota is not a nationwide distributor of a product that warranted the product to make a profit.  Rather, Dakota is still only a middleman storage facility that stored the TTSPs. Moreover, unlike Durfee, Plaintiffs are not trying to hold Dakota liable because the seller is insolvent or otherwise unable to provide remedy for their alleged damages.

[¶17]    In addition, unlike Fode, there is simply no warranty from Dakota somehow linked to Plaintiffs. Liability was extended to the manufacturer in Fode because the distributor and seller were so closely linked that the distributor merged into seller status. The seller's sales contract and manufacturer's warranty document blended into a single unit at the time of sale which provided a basis for liability of the manufacturer.  Dakota is not a manufacturer and did not provide any warranty.  Indeed, Plaintiffs have not identified any sales contract or warranty document from Dakota.

[¶18]    Stated simply, Plaintiffs do not allege that Dakota was a "seller."  Plaintiffs do not allege they purchased anything, including the Affected Medications, from Dakota. Indeed, Plaintiffs specifically allege Dakota only "stored and distributed" the Affected Medications on behalf of Essentia. Because Plaintiffs have not alleged Dakota is a seller or alleged with even the *slightest* of detail what express warranties Dakota made, their express warranty claim must fail as a matter of law. For these reasons, Count I of Plaintiffs' SAC against Dakota must be dismissed.

###### C.      *Plaintiffs' claim for breach of implied warranty must fail as Dakota is not a "seller."*

[¶19]   Plaintiffs next allege Defendants impliedly warranted to Plaintiffs that the Affected Medications were of "merchantable quality and safe and fit for the use for which they were intended." (Doc. # 91, ¶ 272). Plaintiffs allege Dakota made said warranties through "its management" of pharmaceutical inventory and "distributing" the Affected Medications. (Doc. # 91, ¶ 274). The warranties Plaintiffs allege have been violated are contained in the Uniform Commercial Code, as adopted by the North Dakota Legislative Assembly in N.D.C.C. ch. 41-02. Section 41-02-31, N.D.C.C., provides unless excluded or modified, a warranty the goods shall be merchantable is implied **in a contract for their sale if the seller is a merchant with respect to goods of that kind**. See also Minn. Stat. § 336.2-314 (stating a warranty that the goods shall be merchantable is implied **in a contract for their sale if the seller is a merchant with respect to goods of that kind**).

[¶20]   As with express warranties, liability for a breach of implied warranties is limited to "sellers" and specifically "sellers" who are "merchants" with respect to the goods of that kind. See e.g. Oscar Mayer Corp., 744 F. Supp. at 83 (stating liability for breach of implied warranties under the New Jersey and New York Commercial Codes is limited to sellers); Charles E. Beard, Inc. v. Cameronics Tech. Corp., 729 F. Supp. 528, 530 (E.D. Tex. 1989), aff'd sub nom. Charles E. Beard, Inc. v. McDonnell Douglas Corp., 939 F.2d 280 (5th Cir. 1991) (same as to Texas Commercial Code); Harmon v. Nat'l Auto. Parts Ass'n, 720 F. Supp. 79, 82 (N.D. Miss. 1989) (same as to Mississippi Commercial Code, explaining it would make no sense to extend liability for breach of a seller's warranty to one who is not in the position of seller); see also Arceneaux v. Lykes Bros. S.S. Co., 890 S.W.2d 191, 196 n.2 (Tex. App. 1994), writ denied (June 28, 1996)(citing string of

9

authority from states that have adopted the Uniform Commercial Code that have determined implied warranties are given only by the actual sellers of products, not by others who have played some other role in the distribution of the product).

[¶21]    For all the reasons stated in the preceding section and Dakota's original memorandum in support of its Motion to Dismiss the Amended Complaint (Doc. # 37), Dakota is not a "seller" and specifically not a "seller" who is a "merchant" with respect to the sale and administration of vaccines.  In fact, Plaintiffs do not allege Dakota is a "seller" or a "merchant." Rather, Plaintiffs merely allege Dakota assisted in the storage of the Affected Medications and distributed the Affected Medications to Essentia.

[¶22]    Accordingly, even taking everything as true in Plaintiffs' SAC, there is no allegation that Dakota is a "seller" or "merchant." Plaintiffs cannot seriously claim that Dakota, an entity it had no knowledge was even allegedly involved with the Affected Medications, provided it with an implied warranty. For these reasons, Count II of Plaintiffs' SAC, as against Dakota, must be dismissed.

> **D.    *Plaintiffs' claims for violations of consumer protection and deceptive trade practices laws fail because Dakota is not a seller, and because the claims sound in fraud, and Plaintiffs have failed to plead their claims with particularity.***

[¶23]    Plaintiffs also assert claims against Dakota for violations of North Dakota and Minnesota's consumer protection statutes. Those claims fail since Dakota is not a seller and Plaintiffs have not pled fraud with particularity.

> **i.  Plaintiffs' claim fails because the consumer fraud statutes only apply to fraudulent acts committed by a "seller" of merchandise.**

[¶24]    The North Dakota Consume Protection Act ("the Act") provides:

[1] The act, use, or employment by any person of any deceptive act or practice, fraud, false pretense, false promise, or misrepresentation, with the intent that others rely thereon <u>in connection with the sale or advertisement</u> of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is declared to be an unlawful practice. [2] The act, use, or employment by any person of any act or practice, <u>in connection with the sale or advertisement</u> of any merchandise, which is unconscionable or which causes or is likely to cause substantial injury to a person which is not reasonably avoidable by the injured person and not outweighed by countervailing benefits to consumers or to competition, is declared to be an unlawful practice.

N.D.C.C. § 51-15-02 (emphasis added). Accordingly, under the first sentence, to establish a claim under the Act Plaintiffs would need to establish three elements:

(1) An act, use, or employment by any person of any deceptive act or practice, fraud, false pretense, false promise, or misrepresentation;

(2) intent by a person that others rely on said deceptive act or practice, fraud, false pretense, false promise, or misrepresentation; and

(3) a sale or advertisement of any merchandise.

Under the second section, Plaintiffs would need to establish two elements:

(1) An act, use, or employment by any person of any unconscionable act or act which causes or is likely to cause substantial injury to a person which is not reasonably avoidable by the injured person and not outweighed by countervailing benefits to consumers or to competition act or practice;

(2) said act is in connection with the sale or advertisement of merchandise.

The second sentence was added to the Code in 2015. It was created to address situations where a **seller's conduct in advertisement and sale of merchandise** is outrageous, dishonest, unreasonable, or takes advantage of the buyer's lack of bargaining power, lack of information, or ability to understand the sales transaction, without the existence of false promises or misrepresentations currently prohibited under the statute. <u>Hearing on S.B. 2182 Before the Senate</u>

Judiciary Comm., 64th N.D. Legis. Sess. (Jan. 27, 2015) (testimony of Parrell D. Grossman, Director, Consumer Protection and Antitrust Division).[2] Unconscionable acts or practices would include such conduct as is incorporated in the definition of unconscionable, which includes any acts that are excessive, unreasonable, shockingly unfair or unjust, and not guided by conscience. Id.

[¶25]   The Minnesota Consumer Fraud Act provides:

> The act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is enjoinable as provided in section 325F.70.

Minn Stat. § 325F.69 (emphasis added).

[¶26]   Case law interpreting the acts makes clear the acts apply only to the conduct of a "seller." See Benz Farm, LLP v. Cavendish Farms, Inc., 2011 ND 184, ¶¶ 19-20, 803 N.W.2d 818, (construing the Act to apply only to the conduct of the person who sells or advertises merchandise); State v. Minnesota Sch. of Bus., Inc., 935 N.W.2d 124, 137 (Minn. 2019) (opining a Minnesota consumer fraud case requires proof the seller intended that consumer would rely on a misrepresentation). (Doc. # 56).

> The Act prohibits deceptive or fraudulent acts "in connection with the sale' of merchandise." The Act defines "sale" as "any sale, offer for sale, or attempt to sell any merchandise for any consideration. It does not define sale in terms of a purchase, offer to purchase, or attempt to purchase. Rather, **the language of the Act, and particularly the definition of "sale" applicable to the Act, focuses upon the conduct of the seller.**

---

[2] https://www.legis.nd.gov/files/resource/64-2015/library/sb2182.pdf (*last accessed on September 16, 2021).*

Benz Farm LLP, 2011 ND 184, ¶ 20 (emphasis added) (citations and quotations omitted). "Alleged misrepresentations or omissions not 'made in connection with the sale or advertisement of any merchandise' **are not actionable under the Act**." Krebsbach v. Trinity Hosps., Inc., 2020 ND 24, ¶ 30, 938 N.W.2d 133 (emphasis added).

[¶27]   Again, **Plaintiffs have not alleged Dakota was a "seller"** or engaged in a sale or advertisement to Plaintiffs. Rather, Plaintiffs assert Dakota intended for Plaintiffs to rely on "**its misleading and deceptive distribution**" in connection with the sale of those medications by Essentia. Plaintiffs' failure to allege Dakota sold anything in the SAC is not a drafting oversight. It is clear Plaintiffs recognize Dakota is not a seller, and did not engage in any sales or advertisement. Instead, Plaintiffs try to conflate "distribution" with a sale to save their claims against Dakota. Because Dakota is not seller, Dakota cannot be liable under either the North Dakota or Minnesota consumer fraud acts. For these reasons, all claims under the Act(s) must be dismissed.

### ii. Plaintiffs have failed to plead with particularity.

[¶28]   Seller status notwithstanding, Plaintiffs' claims of violations of the Minnesota Consumer Fraud Act and North Dakota Consumer Protection Law sound in fraud, and thus are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b). See Olin v. Dakota Access, LLC, 910 F.3d 1072, 1076 (8th Cir. 2018) (stating parties alleging claims under the North Dakota Consumer Protection Law must satisfy the requirements of 9(b)); see also Thunander v. Uponor, Inc., 887 F. Supp. 2d 850, 876 (D. Minn. 2012) (same as to the Minnesota Consumer Fraud Act). "In order to satisfy the pleading requirements of [Federal Rule of Civil Procedure] 9(b), 'the complaint must plead such facts as the time, place, and content of the

defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result.'" Dakota Access, LLC, 910 F.3d 1072, 1075 (8th Cir. 2018). "Particularly in cases with multiple defendants, 'the complaint should inform each defendant of the nature of his alleged participation in the fraud.'" Id. A formulaic recitation of elements of a cause of action is insufficient to survive dismissal. Id. at 1076.

[¶29]    Courts have rejected blanket, unspecific allegations of fraud or deceit. For example, in Northern Bottling, the Court explained:

> Northern has not alleged with specificity who Henry's deceived. At no point in Northern's 133-paragraph complaint does Northern identify by name a single gas station or convenience store that Henry's allegedly deceived; instead, Northern identifies them in general terms as "Northern's customers" or "various gas station and convenience stores." Although Northern identifies six outlets that Henry's allegedly transshipped to, it does not specifically allege any of these six outlets were deceived by Henry's—let alone provide the name of any individual who deceived another or whom was deceived.
> …
> the complaint also fails to state when or where Henry's allegedly deceived the outlets. Although the complaint provides when Northern learned of Henry's' transshipping, see Doc. No. 1, ¶ 95, it does not allege any date in which Henry's made representations to an outlet, either verbally or in writing; or even a single instance of an employee of Henry's visiting an outlet, speaking with an employee of an outlet, or providing an outlet with a brochure.

N. Bottling Co. v. Henry's Foods, Inc., 474 F. Supp. 3d 1016, 1021-24, 1026 (D.N.D. 2020)

[¶30]    Similarly in Olin, the court dismissed Plaintiffs' fraud claim where they failed to allege the "who" and "when" of the alleged fraud with the requisite specificity:

> The Court finds the Plaintiffs have not pled fraud with the requisite specificity. While the amended complaint adequately describes what

14

statements were made and what was obtained as a result, <u>the amended complaint does not state the names of individual or individuals who allegedly made the fraudulent statements. It is not enough simply to refer to agents or employees of Dakota Access and CLS who negotiated easement agreements with the Plaintiffs as the persons who made the misrepresentations.</u> Wivell [v. Wells Fargo Bank, N.A.], 773 F.3d [887] at 898 [ (8th Cir.2014) ] (stating Rule 9(b) requires the names of the individuals involved). The names of these individuals are required as well. <u>Id.</u>

However, other details are also missing. The allegation that the fraudulent statements were made in the context of easement negotiations around August of 2014, does not provide enough information about when the statements were made. <u>There are twenty-two individual Plaintiffs in this case. The amended complaint repeatedly refers to the Plaintiffs collectively and fails to explain when any of the individual Plaintiffs spoke to the agents or employees of the Defendants.</u> In addition, the amended complaint does not explain whether the communications were in person, by telephone, email, etc. The circumstances of the fraud must be pled with particularity. . . The Court finds that the Plaintiffs have clearly failed to specifically allege who made the fraudulent statements, when the statements were made, and to whom the statements were made in order to comply with Rule 9(b).

<u>Olin v. Dakota Access, LLC</u>, No. 1:17-cv-007, 2017 WL 4532581, at *4 (D.N.D. Oct. 10, 2017), aff'd, 910 F.3d 1072 (8th Cir. 2018).

[¶31]    Here, Plaintiffs have again failed to provide requisite detail. (<u>See</u> Doc. # 56) (stating Plaintiffs have not pleaded their North Dakota Consumer Protection Law and Minnesota Consumer Fraud Act claims by failing to properly plead the who, what, where, when and how of the alleged fraudulent conduct). As to "when," at most, Plaintiffs appear to allege such fraud occurred between "at least August 2017 and February 2020" when Dakota was responsible for maintaining, storing and distributing TTSPP inventory. (Doc. # 91, ¶ 304). Such a blanket time range is insufficient under Rule 9(b). <u>See, e.g.</u>, <u>Olin v. Dakota Access, LLC</u>, No. 1:17-cv-007, 2017 WL 4532581, at *4) ("The allegation that the fraudulent statements were made in the context

of easement negotiations around August of 2014, does not provide enough information about when the statements were made."). As to the "who," assuming *arguendo*, Plaintiffs' allegations infer misrepresentations were made to each Plaintiff and class member, Plaintiffs have wholly failed to allege the identity of any person who Dakota specifically defrauded and which of Dakota's individual agents defrauded the specific Plaintiff.  As to "what" and "how", Plaintiffs have not identified with any particularity what Dakota did to defraud each Plaintiff or how Dakota defrauded each Plaintiff.

[¶32]   Because it is clear Dakota is not a seller under the acts and Plaintiffs have otherwise failed to satisfy the pleading requirements of Rule 9(b) or the Minnesota and North Dakota consumer fraud statutes, Count III of their Complaint against Dakota cannot survive dismissal.

### E.    *Plaintiffs have failed to allege facts to support their claim for unjust enrichment against Dakota.*

[¶33]   Plaintiffs have failed to allege facts to show that Dakota was enriched and/or that Dakota's enrichment is connected with Plaintiffs' impoverishment.  Therefore, Plaintiffs' unjust enrichment claim fails as a matter of law.

[¶34]   "Unjust enrichment is a broad, equitable doctrine which rests upon quasi or constructive contracts implied by law to prevent a person from unjustly enriching himself at the expense of another." Hayden v. Medcenter One, Inc., 2013 ND 46, ¶ 14, 828 N.W.2d 775. "To recover under a theory of unjust enrichment, the plaintiff must prove: (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and the impoverishment, (4) the absence of a justification for the enrichment and impoverishment, and (5) the absence of a remedy provided by law." McColl Farms, LLC v. Pflaum, 2013 ND 169, ¶ 18, 837 N.W.2d 359, 367. A

16

determination of unjust enrichment is a conclusion of law. <u>Apache Corp. v. MDU Res. Grp., Inc.</u>, 1999 ND 247, ¶ 13, 603 N.W.2d 891, 895.

[¶35]   The North Dakota Supreme Court has explained the applicability of the doctrine, stating:

> The doctrine of unjust enrichment is invoked when a person has and retains money or benefits which in justice and equity belong to another. A person who has been unjustly enriched at the expense of another is required to make restitution to the other. <u>For a complainant to recover, it is sufficient if another has, without justification, obtained a benefit at the direct expense of the [complainant], who then has no legal means of retrieving it.</u> **The essential element in recovering under a theory of unjust enrichment is the receipt of a benefit by the defendant from the plaintiff which would be inequitable to retain without paying for its value.**

<u>Id.</u> at ¶ 14 (citations and quotations omitted) (emphasis added). "Even where a person has received a benefit from another, he is liable to pay therefor only if the circumstances of its receipt or retention are such that, <u>as between the two persons</u>, it is unjust for him to retain it." <u>Id.</u> citing Comment c., Restatement of Restitution § 1.

[¶36]   Plaintiffs' claim fails because there are no allegations Dakota obtained a benefit <u>at the direct expense of Plaintiffs</u> who have no legal means of retrieving it. There are no allegations Dakota has retained money or benefits <u>which in equity belong to Plaintiffs</u>. Plaintiffs allege any medical appointments or services they paid for were provided by Essentia. Plaintiffs allege Essentia sold and administered the Affected Medications. As to Dakota, Plaintiffs allege Dakota "was unjustly enriched as a party to the Shared Services Agreement [with Essentia] and as a party in the chain of distribution with Innovis and Essentia." (Doc. # 91, ¶ 338). "Plaintiffs and class members conferred a benefit on Dakota Clinic Pharmacy by paying [Essentia] for the Affected

Medications that were maintained and distributed by Dakota Clinic Pharmacy." (Doc. # 91, ¶ 339). Plaintiffs appear to conflate a contract between Dakota and Essentia as an avenue to obtain relief from Dakota in equity. However, <u>Plaintiffs cannot escape the fact Plaintiffs have not conferred any benefit directly on Dakota. Dakota has not retained anything of value which rightly belongs to Plaintiffs</u>. Indeed, Plaintiffs have not made such allegations.

[¶37]    Because Plaintiffs have failed to allege any facts which support the essential elements of a claim for unjust enrichment against Dakota, their claim fails as a matter of law. For these reasons, Count IV of Plaintiffs' Amended Complaint, as against Dakota, must be dismissed.

### F.    *Plaintiffs' negligence claim is barred by the economic loss doctrine.*

[¶38]    Plaintiffs allege economic losses.  Plaintiffs cannot sustain a negligence claim when their losses are economic.

[¶39]    "A cause of action for economic loss, as a result of a party not receiving what they bargained for, is a contractual obligation."  <u>Leno v. K & L Homes, Inc.</u>, 2011 ND 171, ¶ 16, 803 N.W.2d 543, 550.  Thus, the economic loss doctrine provides a plaintiff cannot recover in tort for purely economic losses.  <u>Steiner v. Ford Motor Co.</u>, 2000 ND 31, ¶ 7, 606 N.W.2d 881.  "The economic loss doctrine recognizes the distinction between the bargain expectation interests protected by contract law under the Uniform Commercial Code and the safety interests protected by tort law." <u>Id.</u>; <u>Clarys v. Ford Motor Co.</u>, 1999 ND 72, ¶ 12, 592 N.W.2d 573, 576 ("The economic loss rule is the fundamental boundary between contract law, which is designed to enforce the expectancy interests of the parties, and tort law, which imposes a duty of reasonable care and thereby encourages citizens to avoid causing physical harm to others.").

[¶40]    Most courts, like North Dakota, have adopted the economic loss doctrine and bar actions in tort when the only damage alleged is to the product itself. <u>Clarys</u>, 1999 ND 72, ¶ 9, 592

N.W.2d 573. When a defective product causes damage to itself, only the consumer's product expectations are infringed, and those interests are protected under contract principles found within the remedies provided by the U.C.C. Id. at ¶ 13. When a product injures itself, the commercial user stands to lose the value of the product, risks the displeasure of its customers who find that the product does not meet their needs, or experiences increased costs in performing a service. Id.

[¶41]   Conversely, when a defective product causes damage to persons or other property, the interest at stake is health and safety, irrespective of whether the initial purchase was a consumer or commercial transaction. Steiner, 2000 ND 31, ¶ 7, 606 N.W.2d 881. Those safety interests are protected under tort law, which allows recovery by injured plaintiffs against a seller or manufacturer of an unreasonably dangerous defective product. Id.; see N.D.C.C. ch. 28–01.3. The North Dakota Supreme Court has taken the position that tort actions under the Product Liability Act, N.D.C.C. ch. 28–01.3 are not available to any plaintiff when only the defective product has been damaged. Clarys v. Ford Motor Co., 1999 ND 72, ¶ 17, 592 N.W.2d 573, 578.

[¶42]   Here, there is no question the damages alleged are purely economic. Plaintiffs allege as a result of Dakota's negligence, they sustained "economic loss and other injuries." (Doc. # 91, ¶ 354). Specifically, throughout the SAC Plaintiffs affirm they were "injured by paying for the Affected Medications and associated medical visits without receiving the benefit of the bargain." (Doc. # 91, ¶ 7). However, Plaintiffs do not allege there has been damage to persons or other property. Furthermore, Plaintiffs have affirmed their position that they only seek economic damages in other filings in this matter. In Plaintiffs' Response to Essentia's Memorandum Regarding Medical Authorizations, Plaintiffs make explicitly clear:

- "Plaintiffs brought claims on behalf of themselves and a similarly situated class for breaches of express and implied warranties, violation of consumer protection laws, and unjust enrichment. **They**

- **seek recovery for their and the class's economic loss, including, for example, payment for the affected medications and for the medical appointments at which they were administered.**" (Doc. 69, p. 5).

- "**this is a purely economic case**" (Doc. 69, p. 5).

- "**This is "an action for purely economic loss**, where the plaintiffs' health is irrelevant to the damages they seek." (Doc. 69, p. 10).

- "This case is simply not about Plaintiffs' health or medical conditions. **Plaintiffs allege four causes of action seeking economic damages**: breach of express warranties, breach of implied warranties, violation of the consumer protection laws of Minnesota and North Dakota, and unjust enrichment. **Plaintiffs seek damages for "economic loss and other injuries," "restitution," and "punitive damages, or other applicable statutory damages**." Cpl., ¶¶ 95, 134, 142. Specifically, Plaintiffs allege they were "**injured by paying** for the Affected Medications and associated medical visits without receiving the benefit of the bargain." *Id*. at ¶ 6 (emphasis added). Plaintiffs claim they are "**entitled to refunds** for visits for which they did not receive proper care." *Id*. at ¶¶ 7, 43 (emphasis added). Plaintiffs also state they "will have to bear additional **out-of-pocket costs**" should they choose to get re-vaccinated outside of Essentia Health. *Id*. at ¶¶ 8, 45 (emphasis added). . . .

  Judge Welte recognized this in his order denying Essentia's motion to dismiss; he stated: "Plaintiffs seek to recover for their **economic loss** and other injuries. . . . ECF No. 13 ("MTD Order"), p. 4. The Court "considered and reject[ed] Essentia's argument that Plaintiffs have not suffered an injury since **there are no allegations of physical harm**. . . ."

(Doc. 69, pp. 15-16).

[¶43]   This Court has likewise recognized the losses claimed in this case are economic in other orders. (See Doc. # 109, p. 2 ("Plaintiffs assert multiple claims and seek to recover for economic loss.") Doc. # 179, p. 1 ("[Plaintiffs] seek to recover for economic loss, including their payments for the affected TTSPPs and for appointments at which the TTSPPs were administered.")

Doc. # 179, p. 1 (same). Because Plaintiffs' injuries are purely economic, their claim for negligence is barred by economic loss doctrine.  For these reasons, Plaintiffs' Count V must be dismissed.

## CONCLUSION

[¶44]   For the foregoing reasons, Defendant Dakota Clinic Pharmacy, LLC, respectfully requests this Court grant its motion in its entirety, dismissing all claims against Dakota for failure to state a claim upon which relief can be granted.

Dated this 28th day of September, 2021.

/s/ Peter W. Zuger
Peter W. Zuger (ID# 06282)
Ian R. McLean (ID#07320)
SERKLAND LAW FIRM
10 Roberts Street
P.O. Box 6017
Fargo, ND 58108-6017
Telephone: (701) 232-8957
pzuger@serklandlaw.com
imclean@serklandlaw.com
**ATTORNEYS FOR DEFENDANT**
**Dakota Clinic Pharmacy, LLC**