UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA
EASTERN DIVISION

| | |
|---|---|
| JESSICA KRAFT, individually and as a parent to minors L.K., S.K., and O.K.; SHELLI SCHNEIDER, individually and as parent to minors, A.S. and W.S.; individually and on behalf of others similarly situated,<br><br>                                       Plaintiffs,<br><br>         vs.<br><br>ESSENTIA HEALTH, INNOVIS HEALTH, LLC d/b/a ESSENTIA HEALTH, DAKOTA CLINIC PHARMACY, LLC, JOHN DOE MANUFACTURERS, and JOHN DOE DISTRIBUTOR,<br><br>                                       Defendants. | Court File No. 3:20-CV-00121<br><br><br><br>**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT DAKOTA CLINIC PHARMACY, LLC'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT** |

## INTRODUCTION

[¶1]     Defendant Dakota Clinic Pharmacy, LLC ("Dakota") submits this Reply Memorandum in support of its Motion to Dismiss the Second Amended Complaint ("SAC"). Dakota is not a "seller" and, as such, Plaintiffs' warranty and consumer fraud claims fail. Further, Plaintiffs have not alleged any facts to support an unjust enrichment claim. Finally, Plaintiffs' negligence is barred by the economic loss doctrine.

## LAW AND ARGUMENT

A.     *Plaintiffs' claim for breach of express warranties must fail as Dakota is not a "seller" and "seller" status is required for a warranty claim.*

[¶2]     Plaintiffs brought express warranty claims under N.D.C.C. ch. 41-02 and Minn. Stat. ch. 336. In their briefing, Plaintiffs assert Dakota is liable for express warranties because it "contracted with Essentia to sell pharmaceuticals to Plaintiffs" and therefore it is a seller. (See

1

Doc. # 130, citing Doc. # 91 (SAC), ¶¶ 144-154, 188-96, 248-50, 257-60, 267 of the SAC for the proposition Plaintiffs alleged Dakota contracted to sell pharmaceuticals). **Noticeably absent from the cited paragraphs is any allegation that Dakota contracted to sell pharmaceuticals to Plaintiffs.**

[¶3]    In its Order to Dismiss, the Court acknowledged that, while alleging Dakota "stored and distributed" the Affected Medications, Plaintiffs failed to allege that Dakota was a "seller" or engaged in a "sale." (Doc. # 56, p. 6). Similarly, here, the SAC does not allege Dakota is a seller or otherwise engaged in any sale. This is simply because **Dakota is not a seller and did not sell the Affected Medications.** (See Doc. # 56, p. 7) ("**It is axiomatic that a party cannot be a seller if there are no allegations of a sale by that party in the complaint**.") (emphasis added). Instead, Plaintiffs now attempt to equate storing and "distributing" the Affected Medications with making an express warranty. As this Court has already opined, Plaintiffs' argument fails. Plaintiffs cannot escape the fact Dakota is not a "seller" and that Dakota did not make any promises, affirmations, or descriptions to Plaintiffs.

[¶4]    Plaintiffs assert "seller" status is not required to be liable for warranties. Importantly, this Court has already ruled on this issue and explained the statute provides that an element of a warranty claim under N.D.C.C. § 41-02-30 is "an affirmation of fact or promise made" or "any description of the good" made "by the seller." (Doc. # 56, p. 5).

[¶5]    As to Plaintiffs argument that their claims succeed under Minnesota law, such argument likewise fails. Like North Dakota, Minnesota has a seller requirement: "Express warranties **by the seller** are created as follows: (a) Any affirmation of fact or promise **made by the seller** to the buyer which relates to the goods." Minn. Stat. § 336.2-313 (emphasis added).

[¶6]    Plaintiffs now also cite the "express warranty" definition under Minn. Stat. 325G.17 subd. 5 to try and save their claim. However, this argument also fails as Plaintiffs are clearly trying to circumvent the fact their claims are made under Minn. Stat. Ch. 336 by citing "express warranty" definitions from another chapter. Indeed, the definition Plaintiffs want to use now comes from the Minnesota Consumer Protection Act, and only applies to a limited subset of sections within that act. See Minn. Stat. § 325G.17, subd. 1 ("As used in sections **325G.17 to 325G.20**, the terms defined in this section have the meanings given them."). Plaintiffs' breach of express warranty claims, by contrast, are brought under Minn. Stat. ch. 336.

[¶7]    Nevertheless, even if the definition from § 325G.17 did apply, Plaintiffs' claim still fails. The definition of express warranty under the "CONSUMER PROTECTION; SOLICITATION OF SALES" chapter provides in relevant part:

> "Express warranty" means a written statement arising out of a consumer sale pursuant to which the manufacturer, distributor, or retailer undertakes (1) to preserve or maintain the utility or performance of the goods or provide compensation or replacement if there is a failure in utility or performance; or (2) declares that in the event of any sample or model, that the whole of the goods conforms to the sample or model.

In analyzing this statute, Minnesota courts have previously recognized "advertising and other descriptions of a product **by a seller** can, in some circumstances, create an express warranty." Masepohl v. Am. Tobacco Co., 974 F. Supp. 1245, 1253 (D. Minn. 1997) (emphasis added). Plaintiffs argue Dakota does not need to be a "seller" but can still be liable as a "maker" of a warranty under Minn. Stat. 325g.19 subd. 2. However, Plaintiffs cannot escape the fact they cannot actually point to an actual express warranty that Dakota made.

[¶8]    Moreover, broad and unspecific claims do not constitute an express warranty under Minn. Stat. 325G.17 subd. 5.[1] For example, in <u>Masepohl</u>, plaintiff brought express warranty claims against defendant-tobacco company for claims/representations cigarettes are not addictive. In finding plaintiff failed to allege a colorable claim of breach of warranty, the court in <u>Masepohl</u> explained:

> A claim that cigarettes are not addictive, even if actually made by the Distributors in advertisements or promotions, does not rise to the level of specificity required by Minnesota law or constitute a statement meant "to preserve or maintain the utility or performance of the goods or provide compensation or replacement if there is a failure in utility or performance." Minn.Stat. § 325G.17, subd. 5.

The court distinguished broad claims such as "cigarettes are not addictive" from those where there was an express warranty found. <u>Id.</u>; <u>see also</u>, <u>Johnson v. Bobcat Co.</u>, 175 F. Supp. 3d 1130, 1144 (D. Minn. 2016) (finding allegations of very specific claims and promises contained in promotional materials regarding how the loader will perform was sufficient to withstand a motion to dismiss where the loader lower capacity and speed than promised).

[¶9]    Here, Plaintiffs have wholly failed to allege any specific warranties Dakota made to them. Instead, they rely on a broad (and unsupported) assertion that Dakota's role in "distribution" of the Affected Medications is an express warranty. This claim fails. Plaintiffs cannot escape the fact Dakota is not a seller. Thus, Count I of Plaintiffs' SAC against Dakota must be dismissed.

---

[1] Plaintiffs cite an unpublished opinion out of New Jersey to support a broad claim that distributing medication is a warranty. However, as seen in the cited *Minnesota* authority—that is not the standard under Minnesota law which Plaintiffs rely on.

**B.      *Plaintiffs' claim for breach of implied warranty must fail as Dakota is not a "seller."***

[¶10]    Plaintiffs argue they have pled a plausible claim for implied warranties because Dakota is a seller. For all the reasons stated in the preceding section, in Dakota's original memorandum in support of its Motion to Dismiss the Amended Complaint (Doc. # 37), and Dakota's principal brief on this motion (Doc. # 123-1), Dakota is not a "seller". Thus, Count II of Plaintiffs' SAC, as against Dakota, must be dismissed.

**C.      *Plaintiffs' claims for violations of consumer protection and deceptive trade practices laws fail because Dakota is not a "seller" of merchandise and Plaintiffs have failed to plead their claim with particularity.***

[¶11]    Plaintiffs argue consumer protection claims can be brought against any person citing the first sentence of the Act, while wholly disregarding (1) the rest of the text of the statute and (2) express North Dakota Supreme Court interpretations of the applicability of the Act. Furthermore, Plaintiffs ignore that the North Dakota Consumer Protection Act ("the Act") provides a cause of action for fraudulent or deceptive practices in connection with the sale or advertisement of any merchandise—and they have not alleged Dakota sold or advertised anything in this case. See N.D.C.C. § 51-15-01.

[¶12]    Plaintiffs argue the Supreme Court's pronouncement that the Act is to apply to those that actually sell was actually meant to distinguish that a claim cannot be made against a purchaser. This argument is unsupported. In Benz Farm, LLP v. Cavendish Farms, Inc., 2011 ND 184, ¶¶ 19-20, 803 N.W.2d 818, the North Dakota Supreme Court construed the Act to apply only to the conduct of the person who sells or advertises merchandise. See also State v. Minnesota Sch. of Bus., Inc., 935 N.W.2d 124, 137 (Minn. 2019) (opining a Minnesota consumer fraud case

requires proof the seller intended that consumer would rely on a misrepresentation). (Doc. # 56).

The North Dakota Supreme Court repeated the same explanation in Thimjon Farms:

> The Act authorizes a private cause of action "by any person against any person who has acquired any moneys or property by means of any practice declared to be unlawful in this chapter." N.D.C.C. § 51–15–09; *see Benz Farm, LLP v. Cavendish Farms, Inc.,* 2011 ND 184, ¶ 18, 803 N.W.2d 818. **We construed the Act to apply "only to the conduct of the person who sells or advertises merchandise**." *Benz Farm, LLP,* at ¶ 20.
>
> Thimjon and Hagemeister argue First International made deceptive statements to Northern Grain by representing First International would provide future financing if Northern Grain paid down its line of credit. However, **these statements were not made to Thimjon or Hagemeister, nor were they made "in connection with the sale or advertisement of any merchandise" by First International to Thimjon or Hagemeister.** N.D.C.C. § 51–15–02. **Therefore**, the provisions of the Act creating a private cause of action are inapplicable, and **the district court properly dismissed the claim.**

Id. at ¶¶ 25-26 (emphasis added); see also Krebsbach v. Trinity Hosps., Inc., 2020 ND 24, ¶ 30, 938 N.W.2d 133 (stating alleged misrepresentations or omissions not made in connection with the sale or advertisement of any merchandise' are not actionable under the Act). Similarly, here, Plaintiffs have failed to allege Dakota made any statements or representations to them. Furthermore, even if they alleged Dakota made some "statement," they have not alleged Dakota made any sale or advertisement and thus the claim would fail on that ground as well.

[¶13] Seller or sale status notwithstanding, Plaintiffs' claims of violations of the Minnesota Consumer Fraud Act and North Dakota Consumer Protection Law fail because they are not pled with particularity. Plaintiffs have again failed to provide the requisite detail. (See Doc. # 56) (stating Plaintiffs have not pleaded their North Dakota Consumer Protection Law and Minnesota Consumer Fraud Act claims by failing to properly plead the who, what, where, when and how of the alleged fraudulent conduct). If Plaintiffs are seriously claiming Dakota "defrauded"

6

them, they would necessarily have information as to how they were specifically defrauded—a blanket assertion that the "distribution of Affected Medications" is insufficient to withstand this motion. Therefore, Count III of Plaintiffs' Complaint must be dismissed.

### D.    *Plaintiffs have failed to allege facts to support their claim for unjust enrichment against Dakota.*

[¶14]    Plaintiffs have failed to allege facts to show that Dakota was enriched and/or that Dakota's enrichment is connected with Plaintiffs' impoverishment. Plaintiffs argue (*relying on an interpretation of North Dakota's unjust enrichment elements by a New York court in an unreported decision*) that a benefit be between the two parties (here, Dakota and Plaintiffs) is not required to recover for unjust enrichment under North Dakota law.

[¶15]    The North Dakota Supreme Court has previously explained:

> For a complainant to recover, it is sufficient if another has, without justification, obtained a benefit at the direct expense of the [complainant], who then has no legal means of retrieving it. **The essential element in recovering under a theory of unjust enrichment is the receipt of a benefit by the defendant from the plaintiff which would be inequitable to retain without paying for its value.**

Apache Corp. v. MDU Res. Grp., Inc., 1999 ND 247, ¶ 14, 603 N.W.2d 891 (emphasis added); see also Zuger v. N. Dakota Ins. Guar. Ass'n, 494 N.W.2d 135, 138 (N.D. 1992) ("The essential element in recovering under a theory of unjust enrichment is the receipt of a benefit by the defendant from the plaintiff which would be inequitable to retain without paying for its value.") (emphasis added).  Moreover, this Court specifically acknowledged in its Order Granting Motion to Dismiss (Doc. # 56, pp. 11-12): "The essential element in recovering under the theory is the receipt of a benefit by the defendant from the plaintiff which would be inequitable to retain without paying for its value."

7

[¶16]   Plaintiffs allege Dakota "was unjustly enriched as a party to the Shared Services Agreement [with Essentia] and as a party in the chain of distribution with Innovis and Essentia." (Doc. # 91, ¶ 338). "Plaintiffs and class members conferred a benefit on Dakota Clinic Pharmacy by paying [Essentia] for the Affected Medications that were maintained and distributed by Dakota Clinic Pharmacy." (Doc. # 91, ¶ 339). Plaintiffs appear to conflate a contract between Dakota and Essentia as an avenue to obtain relief from Dakota in equity. However, Plaintiffs cannot escape the fact Plaintiffs have not conferred any benefit on Dakota. Dakota has not retained anything of value which rightly belongs to Plaintiffs. This sort of pass-through benefit argument is not supported by the law. Therefore, Count IV of Plaintiffs' Amended Complaint, as against Dakota, must be dismissed.

### E.      Plaintiffs' negligence claim is barred by the economic loss doctrine.

[¶17]   Plaintiffs argue the economic loss doctrine does not bar their negligence claim because the doctrine only applies to claims by "buyers" against "sellers." This argument is unsupported by North Dakota law. Leno v. K & L Homes, Inc., 2011 ND 171, ¶ 16, 803 N.W.2d 543, 550 (applying the economic loss doctrine to construction of a home); see also Chegwidden v. Evenson, 2015 ND 131, ¶ 38, 863 N.W.2d 843 (Crothers, J. concurring) (recognizing the economic loss doctrine would bar a claim for conversion where plaintiffs alleged landlord wrongfully withheld security deposit).

[¶18]   As to Minnesota, Plaintiffs rely on an interpretation of Minnesota's economic loss doctrine statute by a court in Kansas.  However, under Minnesota law, like North Dakota, a Plaintiff is "prohibited from recovering purely economic losses in tort." Thunander v. Uponor, Inc., 887 F. Supp. 2d 850, 871 (D. Minn. 2012). While the economic loss rule is codified in Minnesota, that codification does not change the prohibition that a Plaintiff cannot recover tort

damages for purely economic losses.  See id. (stating the economic loss doctrine, as codified in Minnesota, bars claims in tort for purely economic losses).  Indeed, "[t]he economic loss rule reflects that the resolution of liability for purely economic loss caused by negligence is more appropriately determined by commercial rather than tort law." Id.

[¶19]   Nor can Plaintiffs circumvent the economic loss doctrine (which would inevitably apply to bar the negligence claims against the other defendants in this case which actually sold the Affected Medications to plaintiffs) by looking at the "seller" requirement of the economic loss doctrine in a vacuum. Indeed, the explanatory editorial notes of the statute explain it is not necessary that the "seller" have sold or leased the goods directly to the buyer. Minn. Stat. § 604.101 (editorial notes). For instance, in the following illustrative example, the statute applies to all the product defect tort claims brought by any of the parties:

> Suppose, for example, that Manufacturer manufactures a device and sells it to Distributor, which then sells the device to Service Company. Service Company has a maintenance contract with Factory, and the predominant purpose of that contract is maintenance (i.e., service) and not the sale of goods. Acting under the maintenance contract, Service Company installs the device in Factory's facility. The device malfunctions, causing serious disruption to Factory's operations, and various product defect tort claims arise. If the "predominant purpose" test determined whether this statute applied to a particular buyer or seller, the statute would apply to the product defect tort claims among Manufacturer, Distributor, and Service Company but not to any product defect tort claims by Factory against the other entities.
>
> In order to create consistency within a single chain of product distribution, the statute's scope is not strictly tied to Article 2 and 2A. For instance, in the situation just described the statute applies to all the product defect tort claims brought by any of the parties.

Minn. Stat. § 604.101 (editorial notes). Thus, even a service company, because it is involved in a distribution chain, is afforded the same protection of the economic loss doctrine regardless if it actually "sold" anything.

[¶20]   Here, as Dakota has painstakingly briefed, Dakota is not a seller. Nevertheless, it should be afforded the same protection as the other selling defendants in this case to create consistency of claims. Because Plaintiffs' injuries are undisputedly purely economic, their negligence claim is barred by the economic loss doctrine. Plaintiffs' Count V must be dismissed.

## CONCLUSION

[¶21]   Dakota respectfully requests this Court grant its motion in its entirety, dismissing all claims against Dakota for failure to state a claim upon which relief can be granted.

Dated this 2nd day of November, 2021.

/s/ Peter W. Zuger
Peter W. Zuger (ID# 06282)
Ian R. McLean (ID#07320)
SERKLAND LAW FIRM
10 Roberts Street
P.O. Box 6017
Fargo, ND 58108-6017
Telephone: (701) 232-8957
pzuger@serklandlaw.com
imclean@serklandlaw.com
*ATTORNEYS FOR DEFENDANT*
*Dakota Clinic Pharmacy, LLC*