**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**

| | | |
|---|---|---|
| JESSICA KRAFT, INDIVIDUALLY AND AS PARENT OF MINORS L.K., S.K., and O.K.; SHELLI SCHNEIDER, INDIVIDUALLY AND AS PARENT OF MINORS A.S. and W.S.; ANNE BAILEY, AS PARENT OF MINOR D.B.; AMY LAVELLE, AS PARENT OF MINORS Em.L. and El.L.; ELIZABETH BEATON, INDIVIDUALLY AND AS PARENT OF MINOR M.B.; AMANDA AND TYRELL FAUSKE, INDIVIDUALLY AND AS PARENTS OF MINORS C.R.F. and C.J.F.; JENNIFER REIN, INDIVIDUALLY; and JESSICA BERG, AS PARENT OF MINORS A.B. and S.B., individually and on behalf of all others similarly situated, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | No. 3:20-CV-121 |
| | ) | |
| | ) | Hon. Peter D. Welte |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| ESSENTIA HEALTH, INNOVIS HEALTH, LLC d/b/a ESSENTIA HEALTH, DAKOTA CLINIC PHARMACY, LLC, JOHN DOE MANUFACTURERS, and JOHN DOE DISTRIBUTOR, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFFS' MOTION TO COMPEL DEFENDANTS ESSENTIA HEALTH AND INNOVIS HEALTH, LLC'S PRODUCTION OF FINANCIAL INFORMATION**

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND .............................................................................................. 3

      A.    Plaintiffs served RFPs seeking relevant financial information. ................................ 3

      B.    Essentia produced spreadsheets it created of filtered, aggregated, extrapolated, and de-identified information. ................................................................................. 4

III.  ARGUMENT .................................................................................................. 6

      A.    Database Information: Essentia should produce information regarding the Spreadsheet data, its compilation, and the Clarity database, as required by the ESI Order. ................................................................................. 6

      B.    Missing Data: The Spreadsheets omit material, relevant data and detail, which should be supplemented. ............................................................................. 7

            1.    Examples from the Spreadsheets illustrate the gaps in information. .......... 7

                  a.   The Spreadsheets omit charges and/or subcategories of charges. ........ 7

                  b.   The Payments relate in part to charges and services excluded from the Spreadsheets. ............................................................ 8

                  c.   The Admin Charges relate in part to services omitted from the Spreadsheets. ............................................................. 10

                  d.   The Spreadsheets disaggregate, omit, and reaggregate class member information in a way that renders them unusable. .................................. 10

            2.    Essentia should produce the complete, disaggregated Clarity data. ......... 11

      C.    Underlying Documents: Plaintiffs are entitled to documents supporting (or contradicting) the Spreadsheets. ................................................................ 13

      D.    Contextual Documents: Essentia should produce documents necessary to assess and make use of the information in the Spreadsheets. ......................................... 15

IV.   CONCLUSION ............................................................................................. 17

## TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*Bell v. Anthem, Inc.*,
   No. 1:15-cv-02062, 2016 U.S. Dist. LEXIS 194739 (S.D. Ind. Nov. 9, 2016) ...................... 13

*Branch v. Gov't Emps. Ins. Co.*,
   286 F. Supp. 3d 771 (E.D. Va. 2017) ................................................................. 16

*C.R. Bard v. Med. Components*,
   No. 2:12-cv-00032, 2021 U.S. Dist. LEXIS 137959 (D. Utah Apr. 16, 2021) ............... 16-17

*Donaldson Co. v. Baldwin Filters*,
   No. 09-1049, 2010 U.S. Dist. LEXIS 158857 (D. Minn. May 25, 2010) .............................. 12

*Evon v. Law Offices of Sidney Mickell*,
   No. 09-cv-0760, 2010 U.S. Dist. LEXIS 20666 (E.D. Cal. Feb. 3, 2010) ....................... 12-13

*In re MI Windows & Doors, Inc. Products Liab. Litig.*,
   No. 2:12-MN-00001, 2013 U.S. Dist. LEXIS 9468 (D.S.C. Jan. 24, 2013) .......................... 12

*Kam Hing Enters. v. Wal-Mart Stores, Inc.*,
   359 F. App'x 235 (2d Cir. 2010) ................................................................... 14-15

*Last Atlantis Cap. LLC v. AGS Specialist Partners*,
   262 F. Supp. 3d 641 (N.D. Ill. 2017) ............................................................. 15-16

*Luminara Worldwide, LLC v. Liown Elecs. Co.*,
   No. 14-3103, 2016 U.S. Dist. LEXIS 93348 (D. Minn. May 18, 2016) .............................. 14

*Mitre Sports Int'l, Ltd. v. HBO, Inc.*,
   No. 08 Civ. 9117, 2010 U.S. Dist. LEXIS 165149 (S.D.N.Y. Nov. 22, 2010) ...................... 12

*Wellin v. Wellin*,
   No. 2:13-cv-1831, 2015 U.S. Dist. LEXIS 132485 (D.S.C. Sep. 30, 2015) ......................... 12

**Rules**

Federal Rule of Civil Procedure 26 ................................................................. 1, 4, 5, 6

Federal Rule of Civil Procedure 34 ........................................................................... 1

Plaintiffs respectfully request that the Court order Essentia Health and Innovis Health, LLC (collectively, "Essentia") to produce responsive financial data, information, and documents.[1]

## I.    INTRODUCTION

In response to Plaintiffs' requests for relevant financial data and documents, Essentia produced a handful of spreadsheets it created for purposes of the litigation (the "Spreadsheets"). These Spreadsheets fall short. They are incomplete; they report limited data unilaterally selected by Essentia without discussion with Plaintiffs; and they were not produced with the necessary underlying, contextual, or confirmatory documents.

Essentia itself disavowed the Spreadsheets at the Court's early settlement conference, again during at least one discovery status conference, and in conversations with Plaintiffs. Essentia repeatedly argued that the amounts Essentia chose to report on the Spreadsheets are inflated because they partially comprise unspecified charges and services[2] Essentia contends are irrelevant to the cost of and payment for the affected pharmaceuticals or their administration.

At the outset, Essentia failed to provide Plaintiffs with requisite information about the database it used to populate the Spreadsheets or the scope of data available within it (the "Database Information"). Essentia never consulted with Plaintiffs (as required by Court order) to determine a mutually agreeable way to search, filter, and produce the information in the database, nor did it provide Plaintiffs with access to the database itself. Essentia instead made its own selections (and

---

[1] Throughout this brief, Plaintiffs use the term "documents" for ease of reference and to distinguish from the spreadsheet and database "data" at issue, but, as contemplated by Federal Rules of Civil Procedure 26 and 34, and the definition of "Documents" in Plaintiffs' requests for production (Exhibit A), "documents" include, *inter alia*, documents, data, and communications.

[2] In this brief, "services" is used broadly to include office and telehealth visits, pharmaceuticals, administrative costs, or any other services and charges related to the administration of the affected medications.

1

omissions) and left Plaintiffs with partial and admittedly ambiguous data entirely lacking in necessary context.

As a result, the Spreadsheets are incomplete and omit material information (the "Missing Data"). The Spreadsheets omit entire subcategories of charges so that the numbers within the Spreadsheets do not add up to the totals provided. The Spreadsheets report charges that Essentia claims pertain to services both relevant and irrelevant to this case, without including data from the full scope of related services. They also report payments that Essentia claims pertain to services both on and off the Spreadsheets. The Spreadsheets disaggregate class member information, omit some of it, and reaggregate it in a new way, such that it becomes too convoluted to use.

Without the missing data and detail, Plaintiffs cannot make heads or tails of the services provided and charges incurred, let alone apportion the Spreadsheets' aggregated, blended payments to those charges relevant to this case. Plaintiffs need the Missing Data – e.g., the relevant raw data from the Clarity database without Essentia's unilateral aggregation, extrapolation, and filtering – to assess damages.

In addition, once Essentia provides the complete data, Plaintiffs are entitled to test and validate it. Plaintiffs need the documents underlying and/or reflecting upon the information in Clarity to do so (the "Underlying Documents"). Essentia has not produced them.

Finally, to the extent not encompassed in the Underlying Documents, Plaintiffs need documents that support and provide context for the information on the Spreadsheets, or which would otherwise impact a damages analysis (the "Contextual Documents"). The current Spreadsheets lay out an incomplete hodgepodge of charges and payments. Essentia claims many of those amounts are inflated with unspecified amounts for unspecified services that cannot be recovered in this case. Essentia must therefore provide the billing, payment, and service records

that would allow Plaintiffs to determine what is and is not relevant, i.e., whether and how charges and payments relate to case-relevant services.

Without more, the Spreadsheets have little to no substantive meaning, let alone evidentiary value. Plaintiffs thus respectfully request that the Court order Essentia to produce the Database Information, the Missing Data, the Underlying Documents, and the Contextual Documents. Plaintiffs also request that the Court order Essentia to further meet and confer with Plaintiffs regarding the scope, methodology, and adequacy of its production from Clarity.

## II.   BACKGROUND

### A.  Plaintiffs served RFPs seeking relevant financial information.

In January 2021, Plaintiffs served requests for the production of documents (RFPs) on Essentia. The RFPs are attached as **Exhibit A**. Several of those requests seek financial documents, data, and communications, e.g.:

> **RFP No. 9**: "All documents relating to the Disclosed Temperature Excursion."
>
> **RFP No. 14**: "All Communications relating to the Temperature Excursion or Affected Medications between You or any person on your behalf and any of the following: . . . (i) any person who paid for or received an Affected Medication. . . ."
>
> **RFP No. 15**: "Documents and data sufficient to identify:
>
> (a) Each person or entity who paid, directly or indirectly, whether in whole or in part, for an Affected Medication;
>
> \*       \*       \*
>
> (h) The payment(s) made for the Affected Medication, whether or not made by the patient;
>
> (i) The payment(s) made for the visit at which the Affected Medication was provided;
>
> (j) Any refunds, credits or other remuneration provided by you to any patient, payor, or guarantor relating to the Affected Medications; and

3

(k) Any free vaccinations or other services provided by you."

Even setting aside those RFPs, Essentia was required to produce damages-related materials absent any discovery request at all. In connection with its initial disclosures, served in February 2021, Essentia was required to produce documents and information it "may use to support its claims or defenses" and "documents or other evidentiary material . . . on which each [damages] computation is based, including materials bearing on the nature and extent of the injuries suffered. . . ." Fed. R. Civ. P. 26(a)(1)(ii), (iii).

**B. Essentia produced spreadsheets it created of filtered, aggregated, extrapolated, and de-identified information.**

In response to Plaintiffs' RFPs, Essentia produced the Spreadsheets, which Essentia prepared for purposes of this litigation by unilaterally filtering information from a database. The Spreadsheets contain information Essentia has described as "aggregated," "extrapolated," and "de-identified."

The Spreadsheets cover two billing categories: (1) Professional Billing and (2) Hospital Billing.[3] **Exhibit B** is an excerpt from an example Professional Billing Spreadsheet (bearing Bates number EH000221).[4] **Exhibit C** is an excerpt from an example Hospital Billing Spreadsheet (bearing Bates number EH000164). **Exhibit D** is Essentia's responses and objections to Plaintiffs'

---

[3] There are 12 spreadsheets relevant to this dispute: three Hospital Billing Spreadsheets (one each for Flu, CAM, and Medications), three Professional Billing Spreadsheets (one each for Flu, CAM, and Medications), and six spreadsheets that overlap with and largely duplicate the aforementioned six (one set of six spreadsheets has CPT codes, for example, and the overlapping set does not, but they address the same services and amounts).

[4] The excerpts include all columns, the first 25 rows, and the last row of each example spreadsheet. At the Court's request, Plaintiffs will provide the full Excel documents by email or other means. Some of the spreadsheets have over 1,000 rows.

4

RFPs (the "Responses").[5]

The information provided in the Spreadsheets can be gleaned from the exhibits, but generally include the following information relevant to this motion:

- three subcategories of charges: (1) account administration; (2) office visit; and (3) pharmaceutical ("vaccine," "medication," or "CAM") (collectively, "Charges");

- "Total Account Charges on Day of Service," which comprises charges from the three categories listed above, as well as some unspecified charges omitted from the Spreadsheets; and

- two payment categories: (1) insurance and (2) patient ("Payments"). On Professional Billing Spreadsheets, Payments are provided for each of the three Charge subcategories. On Hospital Billing Spreadsheets, the Payments correspond to "Total Account Charges on Day of Service" and are not itemized.

The Spreadsheets aggregate information for multiple putative class members (sometimes █████████ into individual rows of services. Each row proves a total "unique patient count" reflecting the number of putative class members whose information is included in that row. Information for any given class member may be included in more than one row and/or more than one Spreadsheet (though there is no way of knowing that beyond Essentia's general representation in the Responses). Or, a class member's related information may not be on the Spreadsheets at all, except as encompassed into aggregate "Total Account Charges on Day of Service."

---

[5] Essentia produced several supplemental responses and objections. Essentia's third supplemental response is attached as it appears to encompass all objections and responses relevant to this brief.

## III.   ARGUMENT

**A. <u>Database Information</u>: Essentia should produce information regarding the Spreadsheet data, its compilation, and the Clarity database, as required by the ESI Order.**

The Court's Order Governing Discovery of Electronically Stored Information ("ESI Order") addresses the "Production of Databases and Other Structured Data." ECF No. 46, pp. 16-17. It recognizes that "[c]ertain types of databases are dynamic in nature and may contain information that [is] outside the scope of Fed. R. Civ. P. 26(b)(1)." It thus allows a party to produce database information in a reasonably usable, agreed-upon form – like an Excel spreadsheet – rather than providing direct access to the entire database. *Id.*

But the ESI Order makes clear the parties must first confer about such databases. *Id.* ("[T]he parties agree to identify the specific databases, by name, that contain the relevant and responsive information that parties will produce, and meet and confer regarding the format of production. . . ."). *Id.* The ESI Order also has several other provisions requiring the parties to meet and confer and attempt to reach an agreement regarding search methodologies, including methodologies to identify and filter ESI. *Id.* at pp. 4-5. Essentia did not comply with those provisions.

Instead, Essentia unilaterally created the Spreadsheets. Plaintiffs were not even aware the Spreadsheets were derived from a database until recently. Only after months of discussions, on the eve of the November 2021 discovery status conference, did Essentia disclose that the financial data "was extrapolated from the Clarity database by Brandon Dockendorf, Business Intelligence

6

Analyst with Essentia Health, using SQL (Structured Query Language)."[6] Essentia has not explained the queries or assumptions made to select the data or what data has been filtered out.

Plaintiffs request that the Court order Essentia to explain the data available in the Clarity database and the search methodologies Essentia used to filter and report from Clarity (e.g., the fields selected and omitted, as well as any searches, filters, and queries run), and to further meet and confer regarding production from that database.

**B. Missing Data: The Spreadsheets omit material, relevant data and detail, which should be supplemented.**

Plaintiffs' request for the Database Information (*supra*) is not just a formality or matter of procedure. It is crucial to supplementing the Spreadsheets with accurate and complete information. The current Spreadsheets are deficient.

**1. Examples from the Spreadsheets illustrate the gaps in information.**

**a. The Spreadsheets omit charges and/or subcategories of charges.**

The Spreadsheets provide "Total Account Charges on Day of Service," but omit most of the charges that make up that "Total" amount. As an example, Row 6 on Exhibit C reflects aggregated amounts related to ▮ Minnesota patients who received immunizations in 2019. That row reports the following charges and payments:

---

[6] At that November 2021 conference, Essentia denied that it had withheld this information, claiming that Essentia informed Plaintiffs about the Spreadsheets' source because Essentia's ESI disclosures (from March 2021) listed "Clarity accounting software" as a potential source of ESI. That list, wholly untethered to the Spreadsheets or RFP Responses, includes five other ESI sources as well and is hardly a good-faith response to Plaintiffs' requests for discoverable information required by the ESI Order. In fact, when Plaintiffs asked Essentia in the parties' October 2021 meet-and-confer discussion who created the Spreadsheets and where the information came from – asking specifically whether they were derived from a database – Essentia's counsel did not provide an answer (let alone point to the ESI disclosures or Clarity) and stated she would have to check with Essentia.

| Total Account Charges on Day of Service | Vaccine Charges | Admin Charges | Office Visit Charges | Insurance Total Account Payments | Patient Total Account Payments |
|---|---|---|---|---|---|
| ███████ | | | | | |

Nothing on the Spreadsheet (or any other) accounts for the $██████ difference between the Total Charges on Day of Service and the three subcategories of Charges (Vaccine, Admin, and Office Visit).

Plaintiffs need the data regarding all of the services and charges that make up Total Account Charges on Day of Service to have a complete picture of the data. They also need it to determine how much of the corresponding Payments (*infra*) are relevant to this case.

### b. The Payments relate in part to charges and services excluded from the Spreadsheets.

Supplemental data and detail are also required to understand and make use of the Payments provided on the Spreadsheets. In particular, the Hospital Billing Spreadsheets report only aggregate payments tied to Total Account Charges on Day of Service (as opposed to itemized payments for any subcategory Charge, service, or class member). And, as discussed above, that "Total" charges category substantially comprises services and charges that Essentia excluded from the Spreadsheets. According to Essentia, this makes the Payments inflated by unreported services that Essentia has deemed irrelevant, even though class members incurred them on the same day or at the same visit as case-related services.

For example, Row 10 in Exhibit C reports information related to ███ Minnesota patients who received a flu vaccine in 2019. It reports the following charges and payments:

| Total Account Charges on Day of Service | Vaccine Charges | Admin Charges | Office Visit Charges | Insurance Total Account Payments | Patient Total Account Payments |
|---|---|---|---|---|---|
| ███████ | | | | | |

Plaintiffs cannot determine from the Spreadsheets how much of the Payments Essentia

8

received ($███ from Insurance and $███ from Patients) relates to those Vaccine Charges as opposed to the other unidentified services that make up the Total Account Charges on Day of Service.

Essentia has suggested that Plaintiffs could estimate subcategory payments by applying the "Total Account" payment amounts proportionally. For example, Row 10 shows Payments totaling approximately ███ of the Total Account Charges on Day of Service. Applying that percentage, roughly $███ of the $███ in Vaccine Charges was reimbursed. Whether that suffices as a shortcut, let alone carries any evidentiary weight, requires information about the omitted services (given, for example, potential differences in insurance discounts, customary charges, and reimbursement rates, and the relationship between office visit and administrative charges to services). It also has further shortcomings stemming from the data itself. Row 11 of Exhibit C, for example, shows total payments that *exceed* total charges by over ███ This windfall calls into question the amounts and undermines Plaintiffs' ability to even roughly estimate payments without complete data.

To assess relevant damages and apportion those global payment amounts to case-related services, Plaintiffs need supplemental data about all related services, charges, and payments. That data must include amounts for services intertwined with case-specific services (e.g., those same-day services that were charged or paid together with case-specific services). That information should include CPT codes (identifying services), ICD codes (identifying the purpose of the service), and NDC numbers (identifying pharmaceuticals) to allow a determination of the services that are case-related and those that are not.

      **c.  The Admin Charges relate in part to services omitted from the Spreadsheets.**

As with "Total Account Charges on Day of Service," at least one subcategory of charges, Administration Charges, stems from *all* services on a given day, even if some of those services are, according to Essentia, unrelated to DCP-stored pharmaceuticals.[7] But again, the Spreadsheets do not make clear whether any (or how many, or how much, or which) of the Administration Charges are or are not case-related.

For example, Row 6 on Exhibit C (*supra*) reports $████ in Admin Charges. Because Essentia claims the Admin Charges for some or all of those ██ patients could (but might not) stem in part from some other, undisclosed, same-day services unrelated to a DCP-stored vaccine, Plaintiffs cannot determine how much of those Admin Charges are related to this case.[8]

Plaintiffs need the data regarding the intertwined services, charges, and payments to determine whether and how to apportion the Admin Charges (and resultant payments) to this case.

      **d.  The Spreadsheets disaggregate, omit, and reaggregate class member information in a way that renders them unusable.**

The Spreadsheets also disaggregate, omit, and reaggregate relevant class member information. This compounds the problems with the omissions and ambiguities described above.

---

[7] In its RFP responses, for example, Essentia stated:

> "Administration Charges" include administration activity for dates of service, including administration of vaccinations not stored by DCP . . . because segregating charges for administration of DCP-stored vaccinations cannot be accurately ascertained or, alternatively, would be unreasonable and would impose undue burden and expense upon Essentia.

In a meet-and-confer, Essentia said that it needed to confirm whether Office Visit Charges also include activity unrelated to DCP-stored medications; it never did.

[8] And, as with other charges, there is no way to know how much of the $████████ in Payments Essentia received for ██████ in "Total Account Charges on Day of Service" relate to the $████ in "Admin Charges," as opposed to other services and charges absent from the Spreadsheets.

Row 10 of Exhibit C, for example, reports aggregated information for ███ class members who received flu vaccines in 2019. Those class members may have received other case-related services that appear on other rows and/or other Spreadsheets. Those class members may have incurred other charges that form part of "Total Account Charges on Day of Service," but which are omitted from the Spreadsheets. Or they may have received other services that Essentia contends contributed to "Admin Charges," but which are omitted from the Spreadsheets. This format of data production eliminates Plaintiffs' ability to make use of the current Spreadsheets.

To the extent Essentia contends its amalgamation and distortion of data was necessary to protect patient information, it was not. Private health and personally identifying information (PHI and PII) may be confidentially produced pursuant to the HIPAA qualified protective order in this case. ECF Nos. 76 and 122 (prior Court orders regarding HIPAA); ECF No. 45 (Confidentiality Order). Moreover, Plaintiffs offered in their RFPs to confer with Essentia regarding the use of unique (anonymous) identifier codes, rather than the disclosure of PII. Ex. A, RFP No. 15.[9] Essentia has instead clouded the data to the point of being unusable.

### 2. Essentia should produce the complete, disaggregated Clarity data.

Essentia should provide complete, disaggregated data from the Clarity database for all excursion-related pharmaceuticals and services as well as any overlapping or intertwined services, charges, or payments. It is not enough to have the amounts Essentia contends *include* case-relevant amounts and partial information for a subset of CPT codes. Plaintiffs need contextual information to determine how to allocate Admin Charges, Total Account Charges on Day of Service, and

---

[9] Plaintiffs do not currently seek individually identifying information beyond that of the named plaintiffs, but reserve their rights to do so if and when it becomes relevant, e.g., for purposes of class notice.

11

Payments to this case. Even Essentia has argued the Spreadsheets cannot do this.

Essentia's selection of data is akin to making redactions for relevance, which is prohibited because it creates exactly the same problems that have arisen with the Spreadsheets. *See e.g., Wellin v. Wellin*, No. 2:13-cv-1831, 2015 U.S. Dist. LEXIS 132485, at *18 (D.S.C. Sep. 30, 2015) ("Even if the court determined that the specific information [the party] wishes to redact was, itself, irrelevant, there would still be reason not to allow the proposed redactions. . . ."); *In re MI Windows & Doors, Inc. Products Liab. Litig.*, No. 2:12-MN-00001, 2013 U.S. Dist. LEXIS 9468, *7 (D.S.C. Jan. 24, 2013) ("The redaction of irrelevant information, even when sparingly done, deprives plaintiffs of context for the relevant information[.]") (citations omitted); *See also Donaldson Co. v. Baldwin Filters*, No. 09-1049, 2010 U.S. Dist. LEXIS 158857, at *14 (D. Minn. May 25, 2010) ("the Federal Rules of Civil Procedure do not grant parties the power to unilaterally redact information on the basis of relevance").

"The relevant portions of a document should be 'disclosed together with such contextual information as necessary for the sections produced to be comprehensible.'" *Mitre Sports Int'l, Ltd. v. HBO, Inc.*, No. 08 Civ. 9117, 2010 U.S. Dist. LEXIS 165149, at *8 (S.D.N.Y. Nov. 22, 2010) (internal quotation and citation omitted). As explained above, supplemental, disaggregated data is necessary to determine which services, Payments, Admin Charges, and Total Account Charges on Day of Service (or portions thereof) are recoverable in this case.

Moreover, Essentia's unilateral determination of relevance is problematic in and of itself:

> [A] party should not take it upon . . . itself to decide unilaterally what context is necessary for the non-redacted part disclosed, and what might be useless to the case. It should not come as a shock to those involved in litigation, that parties may see the outcome differently.

*Evon v. Law Offices of Sidney Mickell*, No. 09-cv-0760, 2010 U.S. Dist. LEXIS 20666, n.1 (E.D. Cal. Feb. 3, 2010) (relevance omissions are particularly disfavored when "protective orders are

available to shield irrelevant, but important-to-keep-confidential information. . . .").

The Spreadsheets provide (limited) day-of-service information when at least one case-relevant service was provided that day. And they exclude other same-day services and charges that Essentia has deemed unrelated to the excursion. But the parties may disagree about whether other same-day or same-visit services are relevant to or recoverable in this case. Plaintiffs may contend, for example, that an entire visit or day of services (or some portion beyond what Essentia has provided) is recoverable so long as it was related to the administration of an Affected Medication.

Whether the data is potentially relevant or simply provides necessary context, Essentia should produce it. *Bell v. Anthem, Inc.*, No. 1:15-cv-02062, 2016 U.S. Dist. LEXIS 194739, at *9 (S.D. Ind. Nov. 9, 2016) ("What constitutes relevant information is often a matter of judgment, and even 'irrelevant information within a document that contains relevant information may be highly useful to providing context for the relevant information.'") (quoting *EEOC v. Dolgencorp, LLC*, No. 13-cv-04307, 2015 U.S. Dist. LEXIS 58994, at *6-7 (N.D. Ill. 2015)).

### C. Underlying Documents: Plaintiffs are entitled to documents supporting (or contradicting) the Spreadsheets.

Plaintiffs are also entitled to test the data Essentia has produced. They are entitled to review the source documents and data, as well as any other documents and data necessary to provide a complete picture and evaluation of damages. But Essentia has opposed Plaintiffs' request for those documents, claiming that Essentia's financial information is "data driven, not document driven" (*see* ECF No. 128) and that the data in the Spreadsheets "is the data." That does not end Essentia's discovery obligations.

Essentia unilaterally selected, filtered, aggregated, and extrapolated the information in the Spreadsheets from Clarity. Clarity itself contains information derived from and/or related to other responsive materials: e.g., medical records and medical billing records. Those documents should

13

be produced along with any other documents and records related to Essentia's relevant billing.[10]

In *Luminara Worldwide, LLC v. Liown Elecs. Co.*, No. 14-3103, 2016 U.S. Dist. LEXIS 93348 (D. Minn. May 18, 2016), for example, the plaintiff belatedly produced a spreadsheet that an expert had relied upon in forming his opinion. *Id.* at *1-2. The defendants argued that the plaintiff had "withheld the documents underlying the . . . data in the spreadsheet," and, without it, they had "no way of knowing how the data [in the spreadsheet] was gathered, summarized, and produced. . . ." *Id.* at *9. The court sanctioned the plaintiff for its belated production of the spreadsheet and failure to produce the underlying data:

> The information is directly relevant to damages, and Defendants' discovery requests were broad enough to cover this information. Although [plaintiff] claims that no underlying data exists for the spreadsheet, the Court is unconvinced. The data must have originated somewhere, whether in concrete form or within the knowledge of a relevant witness.

*Id.* at *9. The court ordered, *inter alia*, that the plaintiff produce "all documents in its possession, custody, or control that support the data on [the spreadsheet]" and awarded fees and expenses for having to bring the motion. *Id.* at *9-10.

In *Kam Hing Enters. v. Wal-Mart Stores, Inc.*, 359 F. App'x 235, 238 (2d Cir. 2010), for example, the court affirmed the district court's decision to preclude testimony on costs when defendants produced "spreadsheets [that] were summary evidence culled from underlying data that [they] had not produced" and "never produced the underlying documentation on which the

---

[10] The implication that the database stands alone without any corroborating or source information reflecting services and charges not only defies common sense, but it is belied by Essentia's ESI Disclosures, which identify four employees as having "documents relating to financial data," and by its initial disclosures, which identify the existence of "[d]ocuments and [ESI] . . . relating to financial information on charges, payments, and payors for DCP-stored product."

spreadsheet summaries were based." The court recognized that it would be prejudicial to allow the defendant to "testify to costs that plaintiff had no means of verifying or disputing. . . ." *Id.*

In addition to complete data, Plaintiffs are entitled to corroborative and source documents (e.g., documents containing the information that went into the Clarity database and/or reflecting upon Clarity's accuracy) as well as any documents containing relevant information that is absent from the database altogether.

**D.  Contextual Documents: Essentia should produce documents necessary to assess and make use of the information in the Spreadsheets.**

Even if valid, the current Spreadsheets cannot be used alone to determine the payments made for the Affected Medications or associated medical visits. Most of the dollar amounts Essentia provided on the Spreadsheets blur amounts for relevant services with unspecified amounts for irrelevant services. But Essentia has not produced any data or documents that would allow Plaintiffs to apportion those "blended" amounts to this case.[11]

Spreadsheets like those Essentia has produced – which have been extrapolated, aggregated, and are underinclusive in some regards and vaguely overinclusive in others – are an inadequate evidentiary substitute for the production of complete data and responsive documents.

In *Last Atlantis Cap. LLC v. AGS Specialist Partners*, 262 F. Supp. 3d 641, 674-77 (N.D. Ill. 2017), for example, the court recognized the potential evidentiary shortcomings with summary spreadsheets like those Essentia produced here, in that witnesses must be able to authenticate the spreadsheets (here, the information that was extrapolated from Clarity) *and* authenticate the distinct underlying data (here, the source information that went into Clarity); the exhibits must be

---

[11] Plaintiffs would be willing to confer with Essentia regarding a stipulation that <u>all</u> day-of-service charges and payments are relevant and recoverable in this case, but Essentia has already claimed those numbers are "inflated" by the services and charges it excluded from the Spreadsheets.

shown to be non-hearsay or an exception to hearsay; and summary spreadsheets that include information irrelevant to the claims call into question the relevance, reliability, and admissibility of the spreadsheets under Federal Rules of Evidence 401, 402, and 403. *See also, e.g., Branch v. Gov't Emps. Ins. Co.*, 286 F. Supp. 3d 771, 780 (E.D. Va. 2017) (information compiled by database queries may be admissible under Fed. R. Evid. 803 if "presented with minimal alterations" rather than "selective extraction"; under Fed. R. Evid. 1006, "[t]he proponent must make the originals or duplicates available [to] other parties" in order to "afford a process to test the accuracy of the chart's summarization" which "would be impossible [for the receiving party] to do . . . if she only had an explanation about the summary's compilation, and not the underlying data." (citations omitted)).

While Plaintiffs might be able to depose the Spreadsheets' creator to authenticate them as a snapshot of aggregated, cherrypicked information from Clarity, Plaintiffs lack the necessary documents to otherwise test, interpret, or use the Spreadsheets or the data in Clarity itself.

Essentia has claimed that certain information does not exist in more detail (e.g., payments for Hospital Billing are account-specific, not charge-specific) or would be too burdensome for Essentia to parse out (e.g., the allocation of Administration Charges between relevant and irrelevant services). Even if that is so, Essentia should produce the itemized data and documents that do exist, and which reflect the services billed or paid along with a case-related service, so that any blended charges or payments can be assessed and, if necessary, apportioned. *See, e.g., C.R. Bard v. Med. Components*, No. 2:12-cv-00032, 2021 U.S. Dist. LEXIS 137959 (D. Utah Apr. 16, 2021) (granting motion to compel cash-flow and budget documents underlying spreadsheets generated for the litigation; finding such documents were relevant because defendant relied on them in creating the spreadsheets, additional information might be derived from the documents,

16

and plaintiff maintained it could not understand or verify the data without the requested documents). Even if the responsive data and documents do not expressly itemize *all* relevant charges and expenses, they may inform the parties' or their experts' analyses.

## IV.   CONCLUSION

Instead of producing responsive documents and conferring with Plaintiffs regarding database information, Essentia produced self-created Spreadsheets that aggregate and omit data in a way that makes them unusable.

Without the production of missing data and responsive documents, Plaintiffs cannot tell how much of the reported charges or payments relate to this case, nor can they test or validate the information in the Spreadsheets. Accordingly, Plaintiffs request that Essentia be ordered to produce:

(1) the Database Information: information about the data available in the Clarity database and Essentia's methodology for filtering and searching that data to create the Spreadsheets;

(2) the Missing Data: disaggregated Clarity data relating to the Disclosed Temperature Excursion (e.g., relating to the Affected Medications, re-vaccination or retreatment, the related medical visits, and associated administrative charges) and any services, payments, or charges intertwined with that data;

(3) the Underlying Documents: documents underlying or otherwise validating the Spreadsheets and the Clarity data from which the Spreadsheets are derived; and

(4) the Contextual Documents: documents relating to the Disclosed Temperature Excursion – as well as documents necessary to analyze that case-related information, including documents concerning any services, charges, and payments that are intertwined with those relevant to this case (e.g., same-day services relevant to Total

17

Account Charges on Day of Service, Insurance Payments, Patient Payments, and Admin Charges, as well as Office Visit Charges to the extent Essentia now contends those charges encompass irrelevant services).

Plaintiffs also request that Essentia be directed to meet-and-confer regarding the Clarity database, in accordance with the ESI Order, to determine whether additional information should be produced.

Dated: December 3, 2021                    /s/ Melissa Ryan Clark

Melissa Ryan Clark
Brooke A. Achua
FEGAN SCOTT LLC
140 Broadway, 46th Fl.
New York, NY 10005
Ph: 646.502.7910
Fax: 312.264.0100
melissa@feganscott.com
brooke@feganscott.com

Elizabeth A. Fegan
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
Ph: 312.741.1019
Fax: 312.264.0100
beth@feganscott.com

Mac Schneider
SCHNEIDER LAW FIRM
815 3rd Ave. S.
Fargo, ND 58103
Ph: 701-235-4481
Fax: 701-235-1107
mac@schneiderlawfirm.com

J. Barton Goplerud
Brian Marty
SHINDLER, ANDERSON,
GOPLERUD & WEESE, PC
5015 Grand Ridge Drive, Suite 100
West Des Moines, Iowa 50265

18

Ph: (515) 223-4567
Fax: (515) 223-8887
goplerud@sagwlaw.com
marty@sagwlaw.com

Counsel for Plaintiffs

19