THE UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA
EASTERN DIVISION

|  |  |
|---|---|
| JESSICA KRAFT, individually and as parent of minors L.K., S.K., and O.K.; SHELLI SCHNEIDER, individually and as parent of minors A.S. and W.S.; ANNE BAILEY, individually and as parent of minor D.B.; AMY LAVELLE, individual and as parent of minors Em.L.and El.L.; ELIZABETH BEATON, individually and as parent of minor M.B.; AMANDA AND TYRELL FAUSKE, individually and as parents of minors C.R.F. and C.J.F.; JENNIFER REIN, individually; and JESSICA BERG, individually and as parent of minors A.B. and S.B., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ESSENTIA HEALTH, INNOVIS HEALTH, LLC d/b/a ESSENTIA HEALTH, DAKOTA CLINIC PHARMACY, LLC, JOHN DOE MANUFACTURERS, and JOHN DOE DISTRIBUTOR,<br><br>Defendants. | Case No. 3:20-CV-00121<br><br><br>**ESSENTIA HEALTH'S AND INNOVIS HEALTH, LLC'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL** |

## I.   INTRODUCTION AND BACKGROUND

Defendants, Essentia Health and Innovis Health, LLC d/b/a Essentia Health West (collectively, "Essentia"), submit this Memorandum in opposition to Plaintiffs' Motion to Compel Production of Financial Information, dated December 3, 2021. Essentia fulfilled its discovery obligations in producing responsive financial data. Accordingly, Plaintiffs' Motion to Compel should be denied.

Essentia has produced voluminous de-identified financial data that is directly responsive to Plaintiffs' discovery requests. Essentia has explained that the financial data produced is the financial data responsive to Plaintiffs' discovery requests in this case. Yet, Plaintiffs request the "underlying data" and refuse Essentia's invitations to take depositions to answer the Plaintiffs' questions regarding how the data was recorded in the produced spreadsheets. For the following reasons, Plaintiffs' Motion to Compel should be denied.

### A.   The Financial Data Produced by Essentia

In their Requests for Production ("RFP"), Plaintiffs requested certain financial data for the putative class related to the administration of the allegedly affected Dakota Clinic Pharmacy ("DCP")-stored immunizations and/or medications. *See* Doc. ID No. 135-2, *Exhibit A*, at pg 31. Essentia provided voluminous de-identified financial data, contained in spreadsheets, responsive to the request. *See* Doc. ID No. 135-2, *Exhibit B and Exhibit C*, at pg 35, 37.

Specifically, Essentia produced the following financial spreadsheets: Professional Billings Flu and Vaccine Putative Class with CPT Code (EH002659-EH002716); Professional Billings Flu and Vaccine Putative Class without CPT Code (EH000219-EH000220); Hospital Billings Flu and Vaccine Putative Class with CPT Code (EH000164-EH000199); Hospital Billings Flu and Vaccine Putative Class without CPT Code (EH000200-EH000202); Professional Billings CAM Putative Class with CPT Code (EH000211-EH000217); Professional Billings CAM Putative Class without CPT Code (EH000218); Hospital Billings CAM Putative Class with CPT Code (EH000158-EH000162); Hospital Billings CAM Putative Class without CPT Code (EH000163); Professional Billings Medication Putative Class with CPT Code (EH000221-EH000229); Professional Billings Medications Putative Class without

2

CPT Code (EH000230); Hospital Billings Medications Putative Class with CPT Code (EH000203-EH000209); Hospital Billings Medications Putative Class without CPT Code (EH000210).

Discernable from the titles, the financial spreadsheets cover two distinct billing categories, professional billing and hospital billing. Broadly speaking, the financial spreadsheets reflect charges, payments, unique patient counts, third-party payor data, and immunization and medication data. Based on Plaintiffs' requests in RFP No. 15, Essentia exported responsive data from its databases into the financial spreadsheets. The data is de-identified for protected-health information, but the data is itself unmodified. Essentia did not "unilaterally" filter data, but rather exported data based on Plaintiffs' own requests in RFP No. 15.

The technical process for exporting the data is complex and would likely be better described through depositions than through the meet and confer process and briefing. In fact, Essentia has repeatedly offered to make individuals available for depositions for this reason. To date, Plaintiffs have not sought to take any depositions. Thus, Essentia makes this attempt at explanation for the Court.

Electronic Medical Records ("EMR") are widely used throughout the healthcare industry. *Affidavit of Brandon Dockendorf*, at ¶ 3. The data entered into the EMR—including financial data—is stored in databases. *Id.* at ¶ 4. That data is then accessed through tools such as Structured Query Language ("SQL"), "which is coding language used to query databases." *Id.* "A query is a way to ask a database a specific question" and "return data responsive to the question posed." *Id.* Utilizing SQL to communicate with databases is not unique to Essentia,

3

but rather "is a standard and recognized business practice across healthcare systems." *Id.* at ¶ 5.

"Essentia utilizes EPIC integrated electronic databases" to store, transfer, and analyze data. *Id.* at ¶ 6. As relevant here, Essentia specifically utilizes Chronicles and Clarity databases.[1] *Id.* Chronicles stores "a patient's entire record." *Id.* at ¶ 7. Chronicles is used "by healthcare providers and other staff to enter and access individual patient data in real-time on a daily basis." *Id.* Data stored in Chronicles "is transferred nightly to Clarity" through an extract, transform, and load process. *Id.* at ¶ 8. "Clarity is an electronic relational database" designed "for reporting on large amounts of data over long periods of time." *Id.* at ¶ 9. "The data stored in Clarity is accessed using SQL." *Id.*

In this case, Brandon Dockendorf ("Dockendorf"), a Senior Business Intelligence Analyst at Essentia, generated the financial spreadsheets. *See generally id.* To do so, Dockendorf utilized SQL to access data in the Clarity database, de-identified the data, and then exported the data into the Excel spreadsheets that Essentia produced. *Id.* at ¶ 11. More specifically, the data was accessed and exported in a seven-step process. *See id.* at ¶¶ 12-14, 18-21.

First, "the pertinent patient population" was identified. *Id.* at ¶ 12. Second, once the pertinent patient population was identified, Dockendorf "queried the Clarity database, using SQL, for charge transactions" generated by the specific immunizations and medications administered to that population. *Id.* at ¶ 13. This query returned financial data. *See id.*

---

[1] In addition to Essentia's own designations for Confidential and/or Highly Confidential information, EPIC also has certain proprietary interests in its products that require protective order for discussions of its databases.

Third, Dockendorf queried the Clarity database "for CPT Codes used to bill the pertinent patient population for administration and office visits." *Id.* at ¶ 14. The unique challenges with the financial data for those charges are discussed below.

Fourth, Dockendorf queried the Clarity database for payment data in both the professional and hospital billing systems. *See id.* at ¶ 18. In the professional billing system, a matching payment exists for each charge transaction. *See id.* Thus, Dockendorf queried the database to return results for a payment transaction that matched the charges posted. *See id.* In contrast, in the hospital billing system, "payments are not apportioned to specific charges" like they are in the professional billing system. *Id.* Accordingly, for hospital billings, Dockendorf queried the database for "total payments on a patient's billing account." *Id.* The payment data for both professional and hospital billings distinguish between payments by third-party payors and patients. *See id.*

Fifth, Dockendorf "de-identified the data, again using SQL, within the Clarity database." *Id.* at ¶ 19. Specifically, he de-identified the payor, provider, service month and day, facility, and location other than state, consistent with the Safe Harbor provisions of the Health Insurance Portability and Accountability Act ("HIPAA").[2]

---

[2] De-identification was specifically necessary to prevent disclosure of information that could identify, among other things, patient "names," "geographic subdivisions smaller than a state," "dates, except for year," dates of birth, service date, "social security numbers" and "medical record numbers," and so forth. *See* 45 C.F.R. § 164.514(b)(2)(i)(A)-(K); *see also In re Zyprexa Products Liab. Litig.*, 254 F.R.D. 50 (E.D.N.Y. 2008), *aff'd*, No. 04-MD-1596, 2008 WL 4682311 (E.D.N.Y Oct. 21, 2008); *Allen v. Woodford*, No. 05-1104, 2007 WL 309485 (E.D. Cal. Jan. 30, 2007) (both supportive of production of de-identified information as to non-parties and unnamed putative class members). De-identification must prevent both direct identification and identification by information used "in combination with other information to identify an individual." 45 C.F.R. § 164.514(b)(2)(ii). For example, provider and facility

Sixth, Dockendorf "aggregated the data using standard mathematical functions." *Id.* at ¶ 20. Lastly, Dockendorf exported the data from the Clarity database to the Excel spreadsheets. *See id.* at ¶ 21.

In summary, Dockendorf queried the Clarity database, using SQL, to report existing data directly responsive to Plaintiffs' requests in RFP No. 15. *See id.* at ¶ 22. Dockendorf de-identified and aggregated the data but did not modify the data in any way. *See id.*

## B.      Procedural Background

On March 25, 2021, Essentia produced financial spreadsheets to Plaintiffs. Plaintiffs did not challenge the data, however, until after the court-ordered settlement conference on October 5, 2021. Since then, Plaintiffs have raised questions regarding the data at meet and confer conferences. Specifically, Plaintiffs have characterized Essentia's advocacy at the court-ordered settlement conference as Essentia doubting the accuracy or reliability of the data. Plaintiffs further expressed confusion regarding the differences between professional and hospital billing and suggested the data is unreliable, without explaining to Essentia the portions of the financial spreadsheets to which they refer. To date, Plaintiffs have declined to take depositions. Plaintiffs have also requested the "underlying data" for the data, despite repeated explanation that the data provided *is* the financial data.

Plaintiffs raised these issues at a status conference on November 16, 2021, and the Court ordered briefing. Plaintiffs subsequently filed a Motion to Compel Essentia's Production of Financial Information. (Doc. ID No. 135-2, *Plaintiffs' Motion to Compel*

---

name were de-identified because that information could be used to determine (among other things) a geographic subdivision smaller than state.

*Defendants Essentia Health and Innovis Health, LLC's Production of Financial Information*).

This Memorandum in opposition follows.

## II.   LAW AND ARGUMENT

### A.   Essentia fulfilled its obligations under the Federal Rules of Civil Procedures and the ESI Order.

At the outset, Plaintiffs assert that Essentia "did not comply" with provisions of the Order Governing Discovery of Electronically Stored Information ("ESI Order") entered on March 1, 2017 (Doc. ID No. 46). Specifically, Plaintiffs contend that Essentia fell short on its duties to confer about "search methodologies" and "databases." Essentia disagrees.

Although Plaintiffs rely on Section V of the ESI Order regarding Document Search Protocols to assert that Essentia failed to meet some obligation to confer with Plaintiffs about search methodologies in producing the financial data, that section is inapplicable. (Doc ID No. 46, *ESI Order*, at pgs. 4-5). Section V, titled "Document Search Protocol," specifically applies if a producing party intends to use search terms to locate responsive documents. As explained above, Essentia was not using search terms to locate responsive documents for the financial data recorded in the responsive spreadsheets. Rather, Essentia utilized SQL to access data in the Clarity database and exported data responsive to Plaintiffs' specific requests in RFP No. 15. Essentia did not search any documents or otherwise employ search methodology in gathering the financial data requested.

Plaintiffs further assert that Essentia did not follow protocol for Production of Databases and Other Structured Data. (Doc ID No. 46, *ESI Order*, *Appendix A*, pgs. 16-17). However, the sole paragraph addressing the production of databases and other structured data specifically recognizes, "Certain types of databases are dynamic in nature and may contain

7

information that [sic] outside the scope of Fed. R. Civ. P. 26(b(1).  Thus, a party may opt to produce relevant and responsive information from databases in an alternate form, such as a report or data table in static format."   Simply put, Essentia has produced relevant and responsive information from its databases in a spreadsheet in static format as allowed by the Court's ESI Order.  In any event, Essentia's obligation to comply with the procedures of the ESI Order is secondary to Essentia's obligation to timely respond to Plaintiffs' discovery requests under the Federal Rules of Civil Procedure.  (Doc. ID. No. 46, *ESI Order*, pp. 1-2). In sum, Essentia timely and appropriately fulfilled its obligations.

**B.** **The de-identified financial spreadsheets do not omit materials, relevant data, and detail, as Plaintiffs suggest, and therefore, do not require supplementation.**

Moving to Plaintiffs' substantive arguments, Plaintiffs suggest that the de-identified financial spreadsheets themselves demonstrate that they are inaccurate and/or incomplete. However, Plaintiffs apparently misunderstand the information actually provided.  The crux of Plaintiffs' argument relates to the "Total Account Charges on Day of Service," reflected in column six of Exhibit B and Exhibit C, respectively.  *See* Doc. ID No. 135-2, at pgs. 35 and 37.  Plaintiffs correctly note that the "Total Account Charges on Day of Service" does not reflect the total "Vaccine Charges," "Admin, Charges," and "Office Visit Charges."  However, the difference between the "Total Account Charges on Day of Service" and the total of the three subcategories of charges specifically delineated is evident on the face of the document. The "Total Account Charges on Day of Service include the total account charges on a particular day of service not limited to the vaccine and/or medication charges, administration charges, and office visit charges."  *Dockendorf Aff.*, at ¶ 23.

The fact that Essentia provided the "Total Account Charges on Day of Service" does not entitle Plaintiffs to the data underlying the "Total Account Charges on Day of Service" as Plaintiffs, without explanation, contend. More specifically, Plaintiffs now seek supplemental data regarding all same day services, including CPT codes, ICD codes, and NDC numbers, as well as charge and payment information separate and apart from those related to the vaccine, administration, and office visit charges at issue. In other words, Plaintiffs suggest they are entitled to discovery regarding all services rendered on the same day any member of the putative class may have received an immunization and/or medication subject to a potential temperature excursion. The fact the named Plaintiffs and putative class received other services in addition to the allegedly affected medications and/or vaccinations, as well as administration and office visit charges, demonstrates, as Essentia has already explained, that this case does not involve a transaction for the sale of goods, certainly, but that does not entitle Plaintiffs to the data underlying this information.[3]

This information is outside the scope of Plaintiffs' discovery requests and is, according to Plaintiffs, irrelevant to the matters at issue in this case. The named Plaintiffs already conceded as much in resisting Essentia's request for medical authorizations for the named Plaintiffs. As Plaintiffs argued, "[a]t most, transactional information regarding Plaintiffs' receipt of and payment for the affected medications and associated medical services . . . and transactional information regarding receipt of and payment for any care related to the

---

[3] Plaintiffs also appear to take issue with the suggestion that they could estimate subcategory payments by applying the "Total Account" payment amounts proportionally. However, this is not a reflection of any deficiencies in the data provided. Instead, this suggestion was offered in October of 2021 as analysis of the data produced.

temperature excursion . . . are at issue." (Doc. ID No. 69, *Plaintiff's Response to Essentia Health's Memorandum Regarding Medication Authorizations,* at pg. 20). That is exactly what Essentia provided specific to the named Plaintiffs and putative class in response to Plaintiffs' discovery requests.

Not only did Essentia already produce responsive information, but in any event, requiring Essentia to produce supplemental data regarding all same day services, including CPT codes, as well as charge and payment data entirely unrelated to the potential temperature excursion and/or allegedly affected medications would invade the undoubted patient privacy interests of the putative class. While it is true Essentia produced the financial spreadsheets in de-identified form, requiring Essentia to produce the data Plaintiffs now seek would result in the unnecessary disclosure of service descriptions, classification of diseases, injuries, health encounters, and inpatient procedures, and specific information regarding pharmaceuticals received by members of the putative class. As this Court previously explained as it relates to the production of patient-specific data for the putative class, the benefit of Plaintiffs receiving patient-specific data does not outweigh the burden to Essentia and its patients in producing that data, including the psychological cost to the putative class members that would result. *See* Doc. ID No. 76, *Order Regarding Discovery Dispute,* at pg. 13. Plaintiffs have not explained the need for the data they now seek related to the "Total Account Charges on Day of Service" and its production is not proportional to the needs of this case. *See* FED. R. CIV. P. 26(b)(1).

Plaintiffs also contend the de-identified financial spreadsheets include information regarding payments and charges which relate, in part, to services which were not included in the spreadsheets. Although Plaintiffs point to the Hospital Billing Spreadsheets and the administration and office visit charges as examples, the information reflected in these

spreadsheets is a function of the limitations imposed by the underlying data itself. For example, "unlike professional billing, payments are not apportioned to specific charges in the hospital billing system." *Dockendorf Aff.*, at ¶ 18. Rather, "[t]he query for the hospital billing system returned the total payments on a patient's billing account for hospital charges." *Id.* "The Clarity database was able to distinguish between third-party payor payments and patient payments for the hospital billing system," but individual payments are not allocated to specific charges in the hospital billing system. *Id.* The fact the Hospital Billing Spreadsheets include aggregate payments associated with "Total Account Charges on Day of Service," as opposed to itemized payments for any subcategory of charge or service, is not a function of what Essentia chose to produce, but instead is reflective of the data the Clarity database was able to return in response to a specific query as it relates to the hospital billing system.

Similarly, there are limitations in what data is available as it relates to the administration and office visit charges. More specifically, "[w]hen a patient receives more than one immunization and/or medication, [Essentia is] unable to determine the administration charge that corresponds to each individual immunization and/or medication." *Dockendorf Aff.*, at ¶ 16. Accordingly, the data as identified includes "administration activity for dates of service, including administration of immunizations and/or medications not stored by Dakota Clinic Pharmacy." *Id.* at ¶ 15. "The office visit charges reflect that the patient saw a provider on the date the immunization and/or medication was administered." *Id.* at ¶ 17. If, however, "the office visit only involved the immunization and/or medication administration it would not have resulted in an office visit charge" at all. *Id.* In other words, the mere fact there was an office visit charge at all necessarily means the patient received the benefit of additional provider time and resources separate and apart from the immunization and/or medication that was

11

administered.   This fact is further evidenced by the de-identified spreadsheets, which specifically provide the varying office visit levels in the "Procedure Name" column.  *See* Doc. ID No. 135-2, *Exhibit C*, at pg 37.  Again, this renders these categories over-inclusive, but it is not based on the queries posed to the Clarity database and, instead, reflects the limitations in what data is returned.

Plaintiffs further suggest Essentia disaggregated, omitted, and reaggregated putative class member information in such a way that renders the financial spreadsheets unusable.  To this end, Plaintiffs appear to suggest that putative class members may appear on more than one row in any given individual spreadsheet.  However, Essentia queried the Clarity database with specific questions based on Plaintiffs' discovery requests.  *See Dockendorf Aff.*, at ¶¶ 10-11, 22.  The Clarity database then returned data responsive to the individual query.  *See id.* at ¶ 22.  The data responsive to the queries was then de-identified in the Clarity database and exported to Excel spreadsheets.  *See id.* at ¶¶ 19, 22.  There simply was no distortion or omission as Plaintiffs suggest and the aggregation was performed within the Clarity database as a function of the data returned.  *See id.* at ¶ 20.  Moreover, the individual spreadsheets are not duplicative, meaning Essentia provided unique patient counts and an individual member of the putative class does not appear on more than one row of any given spreadsheet.  While an individual member of the putative class may appear, for example, on the Professional Billing Flu and Vaccine Putative Class With CPT Code spreadsheet and the Professional Billings CAM Putative Class With CPT Code spreadsheet, depending upon the services received, no individual member is reflected more than once on each broad spreadsheet category.

Lastly, Plaintiffs argue that Essentia's production is the functional equivalent of making redactions for relevance. However, Essentia produced de-identified data from the Clarity database that was responsive to Plaintiffs' discovery requests. Essentia did not base its queries on what it believes to be relevant. Instead, the queries were generated based on Plaintiffs' specific discovery requests. Accordingly, the cases cited by Plaintiffs regarding the impermissibility of redactions for relevance are not applicable. Dockendorf "queried the Clarity database, using SQL, to pull existing data to directly respond to Plaintiffs' discovery requests." *Id.* at ¶ 22. He "did not modify or otherwise change the data in any way." *Id.* "The data provided *is* data, obtained directly from the Clarity database." *Id.* Essentia queried the Clarity database based on Plaintiffs' discovery requests which, in turn, returned an answer comprised of responsive data. *See id.* This data was then de-identified, as outlined above, and exported to Excel spreadsheets. *See id.* at ¶¶ 19-21. Accordingly, on this basis, Plaintiffs' Motion to Compel should be denied.

C. **Plaintiffs' demand for "underlying" and "contextual" documents further demonstrates their misunderstanding of the raw data, and Essentia fulfilled its discovery obligations in providing data responsive to their requests.**

Finally, Plaintiffs demand the source "data" underlying the financial data "as well as any other documents and necessary to provide a complete picture and evaluation of damages." *See* Doc. ID No. 135-2, at pg 16. This demand further demonstrates Plaintiffs' fundamental misunderstanding of the data provided.

As explained at length above, Dockendorf utilized SQL to access the data in the Clarity database and then directly exported that data to the financial spreadsheets produced to Plaintiffs. *See Dockendorf Aff.*, at ¶ 22. The data provided *is* the data; it is the "source" data; it is *the* financial data. *See id.* Dockendorf deidentified the data and aggregated the data. *See*

13

*id.* at ¶¶ 19-20.  But the data is unmodified.  *See id.* at ¶ 22.  The data is not a summary; the data has not been changed in any way by subjective human intervention or otherwise.  *See id.* Dockendorf did not "unilaterally" "cherrypick" data but rather queried the database to return data responsive to Plaintiffs' requests.  *See id.*  Essentia has produced the financial data requested by Plaintiffs in this case.  *See id.*

Federal Rule of Civil Procedure 34(b)(2)(E) expressly provides that a party must produce ESI "in a reasonably usable form."  FED. R. CIV. P. 34(b)(2)(E).  Here, Essentia produced the financial data in a "reasonably usable form" by exporting the data from the Clarity database into easily accessible spreadsheets.  Furthermore, Essentia aggregated the data using standard mathematical functions, again to render the data usable so as to avoid hundreds of thousands of pages while still maintaining unique patient counts.  *See Dockendorf Aff.*, at ¶¶ 20, 22.

Other courts have approved of exporting raw data from databases into spreadsheets. For example, in *Honeywell International Inc. v. Forges Metals Inc.*, the plaintiff directly exported financial data from its internal accounting system into an excel spreadsheet to use as evidence for damages calculations.  No. CV-19-03730-PHX-JAT, 2021 WL 4427067, at *4-5 (D. Ariz. Sept. 27, 2021).  The defendant argued it could not challenge the damages calculations "without additional underlying evidence to verify" those calculations.  *Id.* at *4. The court rejected the defendant's argument, instead accepting that the exported data in the spreadsheet *was* the financial data and therefore the spreadsheet did not have other "independent, supporting source material."  *Id.*  The court observed the defendant did "not explain how or why it [could not] go through those same excel entries and calculate its own damages theory and compare that" to the plaintiff's calculations.  *Id.*  The court explained that

if the defendant had issues with the data in the spreadsheet, the defendant "had the opportunity to challenge [the] spreadsheet" through depositions where the creator "explained the underlying evidence [was] contained in the spreadsheet entries themselves, which were derived from [a] database." *Id.* at 5.

The same is true here. The underlying evidence, or underlying "data," responsive to RFP No. 15 is contained in the financial spreadsheets. Plaintiffs can make arguments from this data, just as Essentia has done in its advocacy of the data. Moreover, and perhaps most importantly, if Plaintiffs continue to have questions about the data produced, they ought to take depositions. Brandon Dockendorf, for example, can explain that the financial data in the financial spreadsheets *is* financial data. *See id.*

Plaintiffs also suggest they are entitled to "medical records and medical billing records" for the putative class, arguing that "Clarity itself contains information derived from and/or related to" those materials. First, this overbroad request far exceeds the scope of Plaintiffs' RFP No. 15. Second, the Court has already rejected demands by Plaintiffs for patient-specific information regarding putative class members. The colossal request is not proportionate to the needs of this case. It would come at significant cost (including psychological costs to Essentia's patients) and is unnecessary since Essentia has already produced the financial data itself. Producing unnecessary, irrelevant, and sensitive records for over 50,000 putative class members would be unduly burdensome and significantly intrude on patient-privacy interests.

A court considering a similar issue rejected production of hundreds of thousands of records. *See United States ex rel. Hockaday v. Athens Orthopedic Clinic, P.A.*, Case No. 3:15-CV-122, 2020 WL 6880835, at *3 (M.D. Ga. Nov. 23, 2020). In a case involving allegations of Medicaid and Medicare fraud, a clinic maintained its claims data in a software

15

system. *See id.* The clinic exported the raw claims data into spreadsheets—which included similar columns/categories as the financial spreadsheets here—and then produced the spreadsheets. *See id.* The plaintiff demanded the clinic to instead produce each individual claim form. The court denied the request, noting the clinic explained the process "would be unduly burdensome given that the information [had] already been produced in a reasonably usable form" consistent with Rule 34(b)(2)(E). *Id.*

So, too, here. Essentia has indeed produced the financial data that Plaintiffs would purportedly seek through the medical and billing records. Essentia has produced the data in a reasonably usable form in a fashion proportionate to the needs of this case and conscious of the privacy interests at stake.[4]

Relatedly, Plaintiffs stress "contextual" documents are necessary for further detail on the total account charges on day of service. But, for the same reasons stated above, that further detail is irrelevant, disproportionate to the needs of this case, and would unnecessarily intrude on patient privacy interests.

In short, Essentia did not "cherrypick" information from the Clarity database. Essentia instead queried the database to return data responsive to Plaintiffs' requests and produced that data in a usable format as required under Rule 34(b)(2)(E). If Plaintiffs wish to challenge the data or the process to export it, Plaintiffs ought to take depositions.

---

[4] Plaintiffs cite several cases which largely focus on the admissibility of summaries under Federal Rule of Civil Procedure 1006. Those cases are inapposite, as Essentia has not produced a "summary" within the meaning of the Rule. Essentia produced raw data, aggregated to ensure the data is reasonably usable consistent with Rule 34(b)(2)(E), and de-identified to ensure patient-privacy protections.

## III.  CONCLUSION

For the reasons outlined above, Essentia respectfully requests Plaintiffs' Motion to Compel be denied.

Dated this 22nd day of December, 2021.

**VOGEL LAW FIRM**

*s/ Angela E. Lord*

BY:  Angela E. Lord (#05351)
Robert B. Stock (#05919)
Briana L. Rummel (#08399)
MacKenzie L. Hertz (#09392)
218 NP Avenue
PO Box 1389
Fargo, ND  58107-1389
701.237.6983
Email:  alord@vogellaw.com
rstock@vogellaw.com
brummel@vogellaw.com
mhertz@vogellaw.com
ATTORNEYS FOR ESSENTIA HEALTH
AND INNOVIS HEALTH, LLC

4624713.3

17