**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**

| | | |
|---|---|---|
| JESSICA KRAFT, INDIVIDUALLY AND AS PARENT OF MINORS L.K., S.K., and O.K.; SHELLI SCHNEIDER, INDIVIDUALLY AND AS PARENT OF MINORS A.S and W.S.; ANNE BAILEY, AS PARENT OF MINOR D.B.; AMY LAVELLE, AS PARENT OF MINORS Em.L. and El.L; ELIZABETH BEATON, INDIVIDUALLY AND AS PARENT OF MINOR M.B.; AMANDA AND TYRELL FAUSKE, INDIVIDUALLY AND AS PARENTS OF MINORS C.R.F and C.J.F.; JENNIFER REIN, INDIVIDUALLY; and JESSICA BERG, AS PARENT OF MINORS A.B. and S.B., individually and on behalf of all others similarly situated, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 3:20-CV-121  Hon. Peter D. Welte |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| ESSENTIA HEALTH, INNOVIS HEALTH, LLC d/b/a ESSENTIA HEALTH, DAKOTA CLINIC PHARMACY, LLC, JOHN DOE MANUFACTURERS, and JOHN DOE DISTRIBUTOR, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO COMPEL DEFENDANT ESSENTIA HEALTH AND INNOVIS HEALTH, LLC'S PRODUCTION OF FINANCIAL INFORMATION**

# TABLE OF CONTENTS

I.  ARGUMENT .......................................................................................................1

    A.  Essentia's claim that it was entitled to unilaterally select and omit data is wrong. ......1

    B.  Essentia's opposition recognizes that relevant data is missing. ...................................3

    C.  Essentia simultaneously claims that supporting and contextual documents do not exist, and that producing them would be too burdensome...........................................5

    D.  Essentia raises false concerns about privacy to excuse production.............................6

II.  CONCLUSION .................................................................................................7

Plaintiffs respectfully submit this reply in response to Essentia Health's and Innovis Health, LLC's Memorandum in Opposition to Plaintiffs' Motion to Compel ("Opp.," ECF No 149-2) and in further support of Plaintiffs' opening motion ("Pl.'s Motion," ECF No 146-1).

Essentia has made no attempt to refute any of the myriad deficiencies Plaintiffs identified with the data produced. Instead, Essentia makes largely irrelevant (and belated) claims about *how* it produced the data it did. Many of those contentions actually support Plaintiffs' arguments that the data falls short. In this reply, Plaintiffs briefly address Essentia's primary arguments.

I.     ARGUMENT

A. **Essentia's claim that it was entitled to unilaterally select and omit data is wrong.**

Essentia claims that the ESI Order's "Document Search Protocol" does not apply to data, suggesting that Essentia was permitted to unilaterally select and omit data (rather than meet and confer with Plaintiffs). Opp., p. 7. That is not true. "Data" falls within the definition of "documents" in both Federal Rule of Civil Procedure 34 and Plaintiffs' requests for production ("RFPs").[1] Moreover, notwithstanding Essentia's use of the word "query" instead of "search," the use of structured query language is a methodology to "search" and "filter out ESI," and, as such, is governed by the ESI Order. *See* ECF No. 46, pp. 4-5.

Separately, Essentia further defends its unilateral selection and omission of data by claiming the ESI Order allows a party "to produce relevant and responsive information from databases in an alternate form." Opp., pp. 7-8. That is true. But Essentia omits the next sentence of the ESI Order, which requires the producing party to "meet and confer . . . to determine a

---

[1] *See, e.g.,* Fed. R. Civ. P. 34 (a)(1)(A) ("documents or electronically stored information" includes "data and data compilations"); *Id.*, 1970 Advisory Committee Notes ("The inclusive description of 'documents' is revised to . . . make[] clear that Rule 34 applies to electronic data compilations. . . . ."); RFPs, ECF No. 146-2, Definition ¶ 6.

1

mutually agreeable format" – among making other disclosures – "[p]rior to production in an alternate form." ECF No. 46, pp. 16-17. Essentia did not do that.

Essentia claims its obligation to comply with the ESI Order "is secondary to Essentia's obligation to timely respond to Plaintiffs' discovery requests under the Federal Rules of Civil Procedure." Opp., p. 8. That is disingenuous. Plaintiffs' RFPs were served in January 2021. Essentia produced its spreadsheets in March 2021. Essentia had ample time to meet and confer with Plaintiffs regarding the format for production. (With regard to its document-based production, Essentia did not start to propose search terms until May 2021, apparently with no concern about its timing obligations under the Federal Rules.)

Essentia suggests that Plaintiffs should take depositions "regarding how the data was recorded in the produced spreadsheets." *See, e.g.,* Opp., pp. 2-3, 6, 15. As it has done throughout discovery, Essentia attempts to shift its burdens to Plaintiffs. Plaintiffs should not be required to take a costly, time-intensive deposition to get basic information already required by Court order. Such a deposition would simply bolster already apparent deficiencies, and would serve only as a starting point for good-faith production (which production would then lead to further depositions about that data). More importantly, however, Plaintiffs seek *substantive missing data* that is clearly absent. Plaintiffs cannot reasonably be expected to seek thousands of financial data points by deposition.[2]

---

[2] Once the data is complete, Plaintiffs recognize that depositions may be warranted to authenticate and clarify the spreadsheets. For example, Essentia now claims that "an individual member of the putative class does not appear on more than one row of any given spreadsheet." Opp., p. 12. In contrast, its RFP responses state: "Unique patients may be included in more than one row. . . ." ECF No 146-5, p. 22. Once the data is complete, Plaintiffs can drill down on these discrepancies through further discovery.

**B. Essentia's opposition recognizes that relevant data is missing.**

Essentia never claims that the data is adequate to assess damages. Instead, Essentia ignores that dispositive shortcoming, and instead tries to frame the dispute as a misunderstanding about what the spreadsheets provide or how they were developed. Opp., *e.g.,* pp. 8, 13. It is not.

Essentia acknowledges (and Plaintiffs well understand) that "Total Account Charges on Day of Service" encompass "<u>total</u> charges on a particular day of services <u>not limited</u> to the vaccine and/or medication charges, administration charges, and office visit charges." *Id.* pp. 8-9 (emphasis added). *See also* Pl.'s Motion, *e.g.,* pp. 5, 7-8. As a result, Plaintiffs need information about the omitted day-of-service *charges* (those that go into aggregate daily charges) in order to determine how much of the corresponding day-of-service *payments* (which are also aggregated) relate to this case. Pl.'s Motion, *e.g.,* pp. 8-9. Essentia does not attempt to contradict this.

To some extent, Essentia claims other day-of-service charges are irrelevant, but it acknowledges that Plaintiffs seek "transactional information regarding Plaintiffs' receipt of and payment for the affected medications and associated medical services. . . and . . . regarding receipt of and payment for any care related to the temperature excursion . . ." Opp., pp. 9-10. The RFPs seek, *inter alia*, "[d]ocuments and data sufficient to identify" payments made for the medications and visits. ECF No. 146-2. To be sure, if one-to-one, itemized data were available for case-relevant charges and corresponding case-relevant payments, Plaintiffs would prefer that limited data. But Essentia claims that data does not exist.

It is insufficient for Essentia to produce the subset of data it deems relevant because that data is inextricably intertwined with other contextual – but absent – data. Plaintiffs need that context to determine the portions of charges and payments recoverable in this case. Pl.'s Motion, *e.g.,* pp. 7-13. Again, Essentia offers no contradiction or alternative (nor is Essentia permitted to direct the methodologies that Plaintiffs may use to calculate damages).

With regard to other information lacking sufficient context and detail (e.g., aggregated hospital billing payments and administrative charges), Essentia claims that the missing data "is not a function of what Essentia chose to produce, but instead is reflective of the data the Clarity database was able to return in response to a specific query as it relates to the hospital billing system." Opp., pp. 10-12.

This is exactly the problem Plaintiffs identified in their opening brief. Pl.'s Motion, *e.g.,* pp. 5-13. Essentia has not identified the queries it chose to run. But it now acknowledges the lengthy path from source information to spreadsheets: from electronic medical records (Chronicles), to an electronic relational database (Clarity), to multiple unilaterally created SQL queries, to "standard mathematical functions" for de-identification, and into Excel. In an email, Essentia's counsel also represented that a tool called Tableau was used to extract and report the data. "[T]he data was accessed and exported in a seven-step process." Opp., p. 4. Essentia apparently left it in the hands of a Senior Business Intelligence Analyst to determine what queries would be appropriate to gather data responsive to legal requests. ECF No. 149-5, ¶ 10. Those queries were limited to RFP No. 15, despite Essentia's general Rule 26 obligations to disclose damages information. *Id.*; Pl.'s Motion, pp. 3-4. And somewhere along the way, key data was omitted.

Essentia does not claim that the sought-after information does not exist, just that its own "specific query" did not gather it from the single database Essentia queried. As explained in Plaintiffs' opening motion – the queries were not good enough. They left gaps in information that make the spreadsheets unusable. As just one example, Plaintiffs need information specifying whether an aggregated "administrative charge" relates to one, or two, or several services, and the nature of those services, to determine how much of the administrative charge to allocate to this

4

case. It is not enough for Essentia to claim it did not modify the data after its seven-step process; that process itself is the improper data manipulation and omission that Plaintiffs now challenge.

### C. Essentia simultaneously claims that supporting and contextual documents do not exist, and that producing them would be too burdensome.

Essentia claims there are no documents supporting, underlying, or providing context for the data in Clarity because the Clarity data "*is* the data." Opp., p. 13-14. First, regarding the data itself, Essentia admits that the produced data originally came from Chronicles, and that even after it was exported to Clarity, Essentia further queried, deidentified, and aggregated it for this litigation in a seven-step process. *Id.* at, *e.g.,* 4-6, 12-14. Despite this, Essentia claims the data "is unmodified." *Id.* at 14. Plaintiffs do not suggest Essentia tampered with or falsified the post-query data, just that the data pull was underinclusive. Essentia also argues there was no "subjective human intervention." *Id.* But the determination of responsiveness, queries to limit data, and decisions about aggregation are each inherently subjective and were determined by a human.

Second, with regard to contextual and supporting documents, Essentia claims on one hand they do not exist, and on the other hand that requests for medical billing records are overbroad and exceed the scope of RFP No. 15 (ignoring other relevant RFPs, as identified in Plaintiffs' opening motion). Opp., p. 15. Plaintiffs cited a number of cases supporting the need for underlying, supporting, and/or contextual documentation (in addition to factual arguments stemming from the spreadsheets' shortcomings). Essentia largely ignores them, instead citing two cases of its own.[3] Opp., pp. 14-16. Both are distinguishable.

---

[3] In a footnote, Essentia claims some of the cases Plaintiffs cited are inapposite because Essentia has not produced summary data. Opp., p. 16, n. 4. As Plaintiffs have explained, that is not true. In that footnote, Essentia calls the spreadsheets "raw data" in the same sentence as noting the data was "aggregated" and "de-identified" – and in a brief discussing a seven-step process with multiple queries to filter and select data. *Id.*

In *Honeywell*, the case was subject to a Mandatory Initial Discovery Pilot (MIDP) "which expressly superseded the requirements of Rule 26(a)(1)." *Honeywell Int'l Inc. v. Forged Metals, Inc.*, No. 19-cv-03730, 2021 U.S. Dist. LEXIS 184593, at *7 (D. Ariz. Sept. 27, 2021). The court looked to the MIDP to resolve the dispute, rather than the Federal Rules applicable here. *Id.* In *Honeywell*, the plaintiff's damages calculations were based on a spreadsheet. *Id.* at *10. The defendant requested underlying documents, but did not explain "how or why" it could not perform its own damages calculation using that spreadsheet and compare it to the plaintiff's. *Id.* at *13.  The defendant had not identified anything in the spreadsheet needing additional support. *Id.* And the defendant did not challenge the spreadsheet when it had the opportunity to do so during deposition. *Id.* at *15. In contrast here, Plaintiffs challenge the spreadsheets as deficient and lacking information necessary to calculate damages. Essentia has said as much itself.

In *Athens Orthopedic Clinic*, the defendant "produced claims data for every claim" over a seven-year time period. *United States ex rel. Hockaday v. Athens Orthopedic Clinic, P.A.*, No. 3:15-CV-122, 2020 U.S. Dist. LEXIS 218553, at *8-9 (M.D. Ga. Nov. 23, 2020). The relator wanted that same data provided on government forms, rather than in a spreadsheet. *Id.* The defendant attempted to provide that information in the form requested, but the attempt did not provide a readable result. *Id.* at *9. The court agreed that printing hundreds of thousands of claim forms would be unduly burdensome, but granted relator's motion to compel evidence regarding the claims certifications that were missing from the spreadsheets. *Id.* at *9-10. Here, in contrast, Essentia has provided incomplete data – not just data in a different form – and has offered no solution to supplement it.

### D.  Essentia raises false concerns about privacy to excuse production.

Essentia claims providing the sought-after data and documents would invade patient privacy. Opp., pp. 10, 15. That is a red herring. Plaintiffs have already agreed that names of

absent class members are not required at this stage and, if such names were required, or it was more efficient to produce identified information, the HIPAA-compliant protective order in this case allows that disclosure. Pl.'s Motion, p. 11 (citing orders at ECF No. 76 and 122). This was noted in Plaintiffs' opening motion, *id.*, and Essentia did not dispute it.

Moreover, to the extent Essentia implies patient-specific, identified data is required (Plaintiffs do not believe that it is), Essentia misrepresents the Court's prior order on this issue. The Court did not rule that the need for patient-specific data is, as a matter of law, outweighed by the burden to Essentia or privacy burden to putative class members. *See* Opp., p. 10 (citing ECF No. 76, p. 13). The Court found Plaintiffs had "not yet" demonstrated a need for identified patient-specific information regarding putative class members and it could not "at [that] time" conclude the need outweighed burden. ECF No. 76, pp. 13-14. If Essentia contends the data can only be produced in identified form, the necessity for this data is well established in Plaintiffs' motion.

## II.    CONCLUSION

To the extent that Essentia is unable to produce the complete data for lack of technical expertise, without the omissions arising in its seven-step process, Plaintiffs request that the Court permit a third-party technical consultant direct access to Essentia's database to extract and anonymize the original source data for production to Plaintiffs.

Dated: December 24, 2021                 Respectfully Submitted,

                                          /s/ Melissa Ryan Clark

                                         Melissa Ryan Clark
                                         Brooke A. Achua
                                         FEGAN SCOTT LLC
                                         140 Broadway, 46th Fl.
                                         New York, NY 10005
                                         Ph: 646.502.7910

Fax: 312.264.0100
melissa@feganscott.com
brooke@feganscott.com

Elizabeth A. Fegan
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
Ph: 312.741.1019
Fax: 312.264.0100
beth@feganscott.com

Mac Schneider
SCHNEIDER LAW FIRM
815 3rd Ave. S.
Fargo, ND 58103
Ph: 701-235-4481
Fax: 701-235-1107
mac@schneiderlawfirm.com

J. Barton Goplerud
Brian Marty
SHINDLER, ANDERSON, GOPLERUD &
WEESE, PC
5015 Grand Ridge Drive, Suite 100
West Des Moines, Iowa 50265
Ph: (515) 223-4567
Fax: (515) 223-8887
goplerud@sagwlaw.com
marty@sagwlaw.com

Counsel for Plaintiffs

8