## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| JESSICA KRAFT, INDIVIDUALLY AND AS PARENT OF MINORS L.K., S.K., and O.K.; SHELLI SCHNEIDER, INDIVIDUALLY AND AS PARENT OF MINORS A.S. and W.S.; ANNE BAILEY, AS PARENT OF MINOR D.B.; AMY LAVELLE, AS PARENT OF MINORS Em.L. and El.L.; ELIZABETH BEATON, INDIVIDUALLY AND AS PARENT OF MINOR M.B.; AMANDA AND TYRELL FAUSKE, INDIVIDUALLY AND AS PARENTS OF MINORS C.R.F. and C.J.F.; JENNIFER REIN, INDIVIDUALLY; and JESSICA BERG, AS PARENT OF MINORS A.B. and S.B., individually and on behalf of all others similarly situated, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 3:20-CV-121 |
| | ) | Hon. Peter D. Welte |
| Plaintiffs, | ) ) | Mag. Alice R. Senechal |
| v. | ) ) | |
| ESSENTIA HEALTH, INNOVIS HEALTH, LLC d/b/a ESSENTIA HEALTH, DAKOTA CLINIC PHARMACY, LLC, JOHN DOE MANUFACTURERS, and JOHN DOE DISTRIBUTOR, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO COMPEL
DEFENDANTS ESSENTIA HEALTH AND INNOVIS HEALTH LLC TO APPLY
DISPUTED SEARCH TERMS**

**TABLE OF CONTENTS**

I.    INTRODUCTION AND BACKGROUND ...................................................................1

II.   LEGAL STANDARDS ............................................................................................3

      A.    The use of search terms is an iterative process that requires transparency, collaboration, and a multi-phase approach. ....................................................3

      B.    Proportionality objections require evidentiary support........................................5

III.  ARGUMENT ...........................................................................................................6

      A.    The disputed terms are narrowly tailored, reasonable, and proportionate. .............6

            1.   Half of the disputed terms have so few unique (or overall) hits that removing them would not materially impact the review. .......................................................6

            2.   The other disputed search terms are also narrowly tailored and proportionate and they should be applied. ................................................................................8

      B.    Essentia has failed to meet its burden to demonstrate the search terms are disproportionate.................................................................................18

IV.   CONCLUSION .......................................................................................................20

## TABLE OF AUTHORITIES

**Cases**

*ACI Worldwide Corp. v. MasterCard Techs., LLC,*
No. 8:14CV31, 2015 U.S. Dist. LEXIS 90445 (D. Neb. July 13, 2015) ............................... 4

*Am. Oversight v. United States GSA,*
No. 18-2419, 2020 U.S. Dist. LEXIS 68767 (D.D.C. Apr. 20, 2020) ................................... 5

*Bailey v. Brookdale Univ. Hosp. Med. Ctr.,*
No. CV 16-2195, 2017 U.S. Dist. LEXIS 93093 (E.D.N.Y. June 16, 2017) ...................... 4-5

*Brand Energy & Infrastructure Servs. v. IREX Corp.,*
No. 16-2499, 2017 U.S. Dist. LEXIS 96763 (E.D. Pa. June 21, 2017) ...................... 6, 18-19

*Emanuel v. Gap, Inc.,*
No. 19-CV-3617, 2020 U.S. Dist. LEXIS 188136 (S.D.N.Y. Oct. 9, 2020) ......................... 3

*Hall v. Rent-A-Center, Inc.,*
No. 4:16-cv-978, 2018 U.S. Dist. LEXIS 152040 (E.D. Tex. Aug. 31, 2018) ..................... 18

*In re Broiler Chicken Antitrust Litig.,*
No. 1:16-cv-08637, 2018 U.S. Dist. LEXIS 33140 (N.D. Ill. Jan. 3, 2018) .......................... 5

*Jackson v. Montgomery Ward & Co.,*
173 F.R.D. 524 (D. Nev. 1997) ...................................................................................... 5

*L-3 Communs. Corp. v. Sparton Corp.,*
313 F.R.D. 661 (M.D. Fla. 2015) ................................................................................... 5

*UnitedHealthcare of Fla., Inc. v. Am. Renal Assocs. LLC,*
No. 16-cv-81180, 2017 U.S. Dist. LEXIS 174454 (S.D. Fla. Oct. 20, 2017) ........................ 5

*Walker v. Life Ins. Co.,*
No. CV 10-09198-JVS, 2018 U.S. Dist. LEXIS 224460 (C.D. Cal. Oct. 23, 2018) ...............6

*William A. Gross Constr. Assocs. v. Am. Mfrs. Mut. Ins. Co.,*
256 F.R.D. 134 (S.D.N.Y. 2009) ................................................................................... 4

**Rules**

Fed. R. Civ. P. 26 ............................................................................... 4, 5, 7, 19

## I.    INTRODUCTION AND BACKGROUND

The process to develop search terms for Essentia Health and Innovis Health, LLC (collectively, "Essentia") has dragged out for more than eight months. *See* Declaration of Melissa Clark. Although Plaintiffs took it upon themselves to craft the majority of Essentia's first-round search terms, and those terms reduced Essentia's document pool by roughly 90%, Essentia nevertheless continues to dispute 31 search strings, raising new issues as recently as last week.

Essentia does not dispute the facial relevance of any of the disputed terms. Instead, in support of its objections, Essentia has provided only hit counts, conclusory statements that certain terms "retrieve large amounts of irrelevant documents," and a single example of a non-responsive document returned by each disputed search string. None of this information materially advanced the parties' negotiations nor did it warrant the months of delays between Plaintiffs' proposals and Essentia's responses.

In January 2021, Plaintiffs served Essentia with requests for the production of documents (RFPs). Four months later, on May 14, 2021, Essentia provided its first list of proposed search terms. That list included just four narrow search strings, one of which was duplicative of another. Plaintiffs raised concerns about the list with Essentia and the Court in connection with the May 19 status conference.

On May 26, 2021, Essentia returned with a supplemental list totaling eight search strings that suffered from the same inadequacies. Plaintiffs again raised concerns about this list with Essentia and the Court in connection with the June 1 status conference.

In the interest of advancing discovery, and despite Essentia's duty to provide a reasonable, good-faith list of search terms before Plaintiffs suggest modifications, Plaintiffs agreed to craft a search term list for Essentia. Plaintiffs sent that list on June 11, 2021.

Plaintiffs' list of search terms was designed to find a relatively small pool of initial

1

documents to get discovery off the ground. Plaintiffs noted that the creation of search terms is an iterative, collaborative process, and Plaintiffs lack insight into Essentia's responsive documents or the language it used internally. With that in mind, Plaintiffs aimed to develop a narrow, uncontroversial, preliminary set of terms that would allow for a first round of production that could guide the development of additional search terms, custodians, and relevant date ranges. The resultant hit counts reflected that Plaintiffs' initial search term list was a successful first step.

Prior to the application of search terms, Essentia's document pool had over 2.9 million documents. Plaintiffs' proposed search terms, before any narrowing or negotiation, reduced the document pool to just 255,216 documents. That alone was a meaningful reduction in the pool for review and resulted in a reasonable, proportionate quantity of documents for review at this stage given the needs of this case. Essentia should have reviewed those documents and allowed discovery to proceed.

Instead, on August 24, 2021 (after several delays and partial hit counts), Essentia objected to many of Plaintiffs' June 11 terms with little or no explanation. For most of the disputed search terms, Essentia failed to provide any counterproposals. Beyond a single example non-responsive document for each disputed term, Essentia provided little else to foster discussion or to allow Plaintiffs to further narrow the terms themselves.

Nevertheless, to advance discovery once again, Plaintiffs narrowed and modified many of their own proposals based on hit counts alone. Plaintiffs sent those proposals on September 2, 2021. Ten weeks later, on November 12, 2021, Essentia sent hit counts for some of those proposals, and noted additional searches with results to be provided as soon as Essentia was able.

On December 16, 2021, Plaintiffs asked Essentia to clarify its position on two search terms included in Essentia's November 12 hit list. Essentia did not respond. (It did provide an answer

2

regarding one of the terms when Plaintiffs followed up in January.)

On January 3, 2022, having decided not to delay this motion any further by awaiting the update promised in November, Plaintiffs wrote to Essentia notifying it of this forthcoming motion and asking whether Essentia would waive its confidentiality designations over pharmaceutical names. The next day, after hearing nothing for nearly eight weeks, Essentia responded with its "final" position on search terms. In that list, Essentia addressed four terms, rejecting two of its own proposals even though they hit upon fewer than 1,000 unique documents each. (Plaintiffs dispute them as too narrow, anyway.) In fact, nearly half of the 31 disputed terms return fewer than 1,000 unique documents.

It is simply not burdensome for Essentia to apply the terms and begin reviewing documents. Instead, a year into discovery, Essentia has produced just 130 documents and disputes reasonable search terms. Because Plaintiffs' proposed terms are reasonably tailored to seek relevant information without imposing any undue burden on Defendants, and Essentia has not provided any evidence supporting that the terms are disproportionate, Plaintiffs bring this motion to compel Essentia to apply the disputed terms.

## II.      LEGAL STANDARDS

"A magistrate judge overseeing discovery is granted broad discretion to manage the discovery process, including determinations regarding which search terms a party should apply." *Emanuel v. Gap, Inc.*, No. 19-CV-3617, 2020 U.S. Dist. LEXIS 188136, at *7 (S.D.N.Y. Oct. 9, 2020) (citation omitted).

### A.  The use of search terms is an iterative process that requires transparency, collaboration, and a multi-phase approach.

The Court's Order Governing Discovery of Electronically Stored Information ("ESI Order") requires the parties to "confer in good faith . . . to determine the mutually agreeable search

3

terms." ECF No. 46, p. 6. The ESI Order requires discussion of "any modifications or additional terms proposed by the requesting party" and requires the producing party to, *inter alia*, "provide a search term hit list or hit report" and "a general description and/or examples of some of the types of irrelevant documents that each disputed search term is returning[,]" if the proposed search recalls "an excessive number of documents" and is disputed by the producing party. *Id.*

The producing party must "meet and confer . . . to discuss in good faith any such modification[s]" for any terms it believes there exists a modification that will reduce the number of irrelevant documents returned by a search term. *Id.* at p. 7. If the producing party believes a term is "burdensome, overly broad, and/or objectionable and for which there does not appear to be any modification that would resolve such issues," the producing party shall "discuss in good faith its objections to such search terms." *Id.*

The use of search terms is a "recognized method" that requires "careful thought, quality control, testing, and cooperation with opposing counsel." *William A. Gross Constr. Assocs. v. Am. Mfrs. Mut. Ins. Co.*, 256 F.R.D. 134, 136 (S.D.N.Y. 2009). When crafted correctly, search terms are likely to yield meaningful information and "guard against redundant or disproportionate discovery." Fed. R. Civ. P. 26(b)(1), advisory committee notes to 2015 amendments.

This is a particularly iterative process that demands "cooperation between opposing counsel and transparency in all aspects of preservation and production of ESI." *ACI Worldwide Corp. v. MasterCard Techs., LLC*, No. 8:14-CV-31, 2015 U.S. Dist. LEXIS 90445, at *6 (D. Neb. July 13, 2015) (quoting *William A. Gross Constr. Assocs.*, *supra*, at 136) (internal quotation marks omitted); *see also Bailey v. Brookdale Univ. Hosp. Med. Ctr.*, No. CV 16-2195, 2017 U.S. Dist. LEXIS 93093, at *13 (E.D.N.Y. June 16, 2017) ("cooperative efforts 'between counsel regarding the production of electronically stored information allows the parties to save money, maintain

4

greater control over the dispersal of information, maintain goodwill with courts, and generally get to the litigation's merits at the earliest practicable time.'") (citation omitted); *In re Broiler Chicken Antitrust Litig.*, No. 1:16-cv-08637, 2018 U.S. Dist. LEXIS 33140, at *39 (N.D. Ill. Jan. 3, 2018) ("Developing efficient keyword search terms is an iterative process and will require transparent and cooperative efforts by both the producing and requesting Party. . . ."); *UnitedHealthcare of Fla., Inc. v. Am. Renal Assocs. LLC*, No. 16-cv-81180, 2017 U.S. Dist. LEXIS 174454, at *12-13 (S.D. Fla. Oct. 20, 2017) ("The ability to reach an agreement on topics or search terms is depend[e]nt upon the level of cooperation of the parties . . . . Search terms also have to be carefully crafted and multiple levels of searches may be required to identify truly relevant ESI.") (citation omitted).

### B.  Proportionality objections require evidentiary support.

Federal Rule of Civil Procedure 26 allows discovery of all relevant information that is proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). "If confronted with a search term they believe is overly burdensome, Defendants have an obligation not just to assert their objection, but explain the grounds for the objection and to point to evidence supporting it." *L-3 Communs. Corp. v. Sparton Corp.*, 313 F.R.D. 661, 670 (M.D. Fla. 2015). It is not enough to complain that documents return a large quantity of documents. *See Jackson v. Montgomery Ward & Co.*, 173 F.R.D. 524, 529 (D. Nev. 1997) ("[J]ust because complying with a discovery request will involve expense or may be time consuming, does not make it unduly burdensome."); *Am. Oversight v. United States GSA*, No. 18-2419, 2020 U.S. Dist. LEXIS 68767, at *22-23 (D.D.C. Apr. 20, 2020) (mere "speculation that the search terms may result in some unresponsive results is not a sufficient reason to exclude the search terms") (citations omitted).

Search terms are designed to reduce – but not eliminate – unresponsive documents from attorney review. *See Brand Energy & Infrastructure Servs. v. IREX Corp.*, No. 16-2499, 2017 U.S.

5

Dist. LEXIS 96763, at *8 (E.D. Pa. June 21, 2017) ("Despite the possibility of a number of false 'hits,' considering the claims at issue, the relevance of these terms outweighs the possibility of having to cull a high number of hits."). Likewise, a large hit count may simply mean that there are many responsive documents.

To support its objections, Essentia must provide information "regarding the asserted burden, in terms of cost or time, with running" the searches it objects to, including, for example, "evidence of the scope of such non-responsive hits, or the time it would take to exclude them during a review." *Walker v. Life Ins. Co.*, No. CV 10-09198, 2018 U.S. Dist. LEXIS 224460, at *6-7 (C.D. Cal. Oct. 23, 2018).

### III.    ARGUMENT

#### A.  The disputed terms are narrowly tailored, reasonable, and proportionate.

##### 1.  Half of the disputed terms have so few unique (or overall) hits that removing them would not materially impact the review.

For roughly half of the disputed terms, the number of unique documents is so small that including them creates little burden and removing them would have no material impact on Essentia's review; Essentia disputes them anyway. *See* **Exhibit A**, addressing search numbers 22b, 23, 24, 25, 45a, 46, 48, 56, 63, 78, 101, 115, 118, 123, and 140 (the "Low-Hit Searches").[1]

Rather than propose a handful of broad, but highly relevant search terms – like "temp!" to reach all temperature-related documents – Plaintiffs used modifiers to craft several, very narrowly tailored, case-specific strings. Search string number 24, for example, seeks **"temp!"** within 30 words of several terms commonly used to discuss temperature monitoring, auditing, compliance, and protocols:

---

[1] Of note, the ESI Order contemplates that the parties will meet and confer regarding search terms only when they return "an excessive number of documents."

log! OR track! OR report! OR document! OR read! OR data! OR record! OR audit! OR maint! OR monitor! OR responsib! OR compl! OR standard! OR requ! OR recommend! OR conting! OR guid! OR protocol! OR polic! OR procedur! OR instruct! OR SOP! OR practice! OR report! OR parameter! OR indicat!

These terms are calculated to capture topics and events at the very heart of this case, as sought in Plaintiffs' RFP numbers 6, 7, 8, 9, 10, 12, 13, and 14. *See* Plaintiffs' First Set of Requests for Production to Defendant Essentia Health ("RFPs"), **Exhibit B**.

Search string 24 hits 11,308 documents. But it hits only 335 unique documents. Thus, even eliminating the search string altogether would only remove 335 documents from the review pool (a tiny fraction of the original scope of nearly 3 million documents). Moreover, the fact that this one search string overlaps with others on more than 11,000 documents (the non-unique documents) indicates it is likely to be hitting upon responsive documents, i.e., it is contained in documents that also contain one or more other relevant search strings.

And the term itself is relevant on its face. This putative class action arises from Defendants' sale and administration of time and temperature sensitive pharmaceutical products (TTSPPs) that were stored outside of the proper temperature range. Discovery regarding Defendants' storage and handling of TTSPPs—including, *inter alia*, information about storage and handling practices and standards, TTSPP temperature ranges, temperature alerts, the Disclosed Temperature Excursion[2], and the Affected Medications—is relevant and subject to discovery.

All of the Low-Hit Searches, their respective hit counts, and the reasons for their inclusion (i.e., relevance) are outlined in Exhibit A. All of Plaintiffs' carefully crafted search strings, like String 24, seek discoverable information under Federal Rule of Civil Procedure 26(b)(1). The strings are narrowly tailored to minimize the burden on Essentia and efficiently facilitate a first-

---

[2] Capitalized terms have the same definitions as used in Plaintiffs' RFPs.

round review. And these 15 Low-Hit Searches in particular have so few unique (and/or overall) hits that there can be no legitimate argument that the terms are unduly burdensome or disproportionate to the needs of this litigation. For these reasons, and those further discussed in Exhibit A, Plaintiffs respectfully request that the Court compel Essentia to apply the Low-Hit Searches.

### 2. The other disputed search terms are also narrowly tailored and proportionate and they should be applied.

The 16 remaining disputed terms should likewise be applied because they are neither unduly burdensome nor disproportionate to the needs of this case and are tailored to yield documents central to the claims and defenses here. Each disputed term is addressed below.

---

**String 12**

Temp! **AND** (med! OR inject! OR Vaccin! OR Chemo! OR Biologic!)

---

String 12 is one that Plaintiffs already narrowed in an attempt to reach compromise. Still, Essentia proposes to exclude **"med!"** and **"inject!"** from the string.[3] Essentia claims that those two terms return unresponsive documents, including "documents that have the terms Temperature and Medicine or Medication." But those are exactly the documents Plaintiffs seek.

Essentia's website disclosing the excursion refers to a "**medication** temperature issue" at a "**medication** storage location," "affected **medications**," "**medications** being stored at

---

[3] Essentia has not provided hit counts for Plaintiffs' proposal, which Plaintiffs provided to Essentia on September 2, 2021.

Essentia ran its own, narrower version of this search using the following string: **Temp! AND (Vaccin! OR Chemo! OR Biologic!)**. That search returned 1,180 hits, 883 of which are unique. Plaintiffs' initial proposal also included the modifiers **Immun! OR Innocul! OR Rheum! OR Vial! OR Pharm! OR Shot! OR CAM! OR Toxoid! OR Drug! OR Product!**, all of which are relevant to this case and reasonable. That broader string returned 7,844 hits, 6,271 of which were unique.

temperatures outside of the range recommended by manufacturers," the time frame when "patients may have received those **medicines**," "100 different refrigerated **injectable** medications involved" (emphases added).[4] Many of the affected medications include "injectable" or "injection" in their names. Essentia spoke about the excursion using these terms and its language was not limited to "vaccine" or "chemotherapy."

There can be no dispute that temperature-related documents (regarding, e.g., temperature storage, temperature tracking, temperature policies, temperature excursions) are core to this case. Accordingly, String 12 is warranted.

---

**String 22a[5]**

temp! **w/ 30** (excurs! OR prob! OR issue! OR fail! OR incid! OR occurrence! OR situation! OR emergen! OR out! OR wrong OR deviat! OR improper! OR uncertain! OR var! OR invalid! OR alarm! OR warn! OR freez! OR froz! OR basement!)[6]

---

String 22a is needed to capture information about the temperature excursion. The string seeks documents regarding the temperature excursion using common language, e.g., problem, issue, emergency, failure, incidence, occurrence, situation, or emergency. The string seeks documents addressing temperatures that are out-of-range, wrong, or improper; temperature deviations and variances; invalid temperature recordings; frozen pharmaceuticals (the temperature excursion stems from temperatures that were too low); temperature alarms or warnings; and the

---

[4] https://www.essentiahealth.org/alerts/medication-storage-issue/?utm_source=direct-mail&utm_campaign=medical-storage-issue-fy20

[5] Plaintiffs split (and also narrowed) several strings to help the parties better assess them and identify which terms were hitting upon a greater quantity of documents. Split strings are indicated by a letter after the number (e.g., 22 was split into 22a and 22b).

[6] Essentia ran 22a with the use of "AND" as a connector, instead of "w/30." Essentia's broader search returned 10,641 hits, 3,268 of which are unique.

temperature of the basement or basement refrigerators. These terms and issues are all highly relevant to this case.

Essentia initially proposed to narrow the term to **temp! /s (excurs! OR prob! OR issue!)**. But that omits important keywords. Essentia disclosed that the temperature excursion was discovered when the temperatures of refrigerators in Essentia's basement fell so low the medications were at risk of freezing (or did freeze); such temperature deviations typically trigger an alarm. *E.g.,* ¶¶ 163-64, 204.[7] Essentia notified patients they "received vaccines exposed to out-of-range temperatures" and state and federal guidelines mandate immediate action for "out-of-range" temperatures. *E.g.,* ¶¶ 52, 125. The excursion resulted in certain vaccinations being rendered "invalid" in patient records. ¶ 67. Essentia sent notice letters informing patients of that the excursion "may have resulted in . . . flu vaccines being stored at temperatures outside of the range . . . ." (In any event, Essentia informed Plaintiffs on January 4 that it now objects to its own November proposal, which returned only 774 unique documents.[8])

Plaintiffs' proposal for String 22a should therefore be applied.

---

**String 45b**

(Chemo! OR Vial! OR Pharm! OR Shot! OR Biologic! OR CAM! OR Toxoid! OR Drug! OR Product!) **w/30** (excurs! OR prob! OR fail! OR incid! OR occurrence! OR situation! OR cold! OR freez! OR froz! OR deviat! OR invalid! OR defect! OR compromise! OR unfit OR alarm! OR efficacy OR ineffectiv! OR harmful! OR "less potent" OR potenc!)[9]

---

[7] Citations to ¶ __ refer to paragraphs of the Second Amended Complaint, ECF No. 119.

[8] Although Essentia proposed using "/s" as a connector, the actual search Essentia ran was broader, replacing "/s" with "AND."

[9] Essentia ran 45b with the use of "AND" as a connector, instead of Plaintiffs' proposal of "w/30." Essentia's broader search had 33,583 hits, 28,954 of which were unique.

The terms used in 45b are references to the categories of pharmaceuticals that Essentia has identified as comprising the Affected Medications (chemotherapy, vials, pharmaceuticals, shots, biologics, CAM, toxoids, drugs, or products). For example, Essentia refers to one of the three categories of Affected Medications as "CAM." The case concerns time- and temperature-sensitive "products," state regulations refer to pharmaceutical "products," and Essentia has referred to the Affected Medications as "product," ¶¶ 1, 134, 163 (reflecting information from Essentia's interrogatory responses). The excursion affected injectable drugs, often stored in "vials," sometimes with "vial" in the pharmaceutical name. The search string then uses highly relevant modifiers to further limit documents to those likely be case-related (e.g., regarding the excursion, problems, temperature issues, impacts to the medications' efficacy or potency). String 45b is thus relevant.

> **String 47**
>
> (Eculizumab OR Eribulin OR Etoposide OR FILGRASTIM! OR Fulvestrant OR Golimumab OR Haemophilus OR Hep! OR HIB! OR HPV OR PAPILLOMA! OR Hyaluronidase OR INFLUENZA OR Flu OR Insulin OR Interferon OR Ipilimumab OR IPV OR Latanoprost OR Leuprolide OR Lorazepam OR MANTOUX OR Mening! OR Methylergonovine) **w/30** (excurs! OR prob! OR incid! OR occurrence! OR situation! OR cold! OR freez! OR froz! OR deviat! OR invalid! OR defect! OR compromise! OR unfit OR alarm! OR effectiv! OR ineffectiv! OR harmful! OR "less potent" OR potenc!)[10]

String 47 is narrowly drawn to locate documents containing the specific names of Affected Medication (as identified by Essentia) within 30 words of terms related to temperature, storage, and handling. Plaintiffs already narrowed this string once, removing relevant terms such as issue!, fail!, warm!, ultra-cold!, and improper!. Essentia, however, has offered no suggestions.

_____

[10] Essentia did not provide hit counts for this string 47, which Plaintiffs provided on September 2, 2021. For Plaintiffs' original proposal, which was broader, Essentia reported 19,193 hits, 3,880 of which were unique.

In support of its objection to the term, Essentia produced just one sample non-responsive document that was returned by Plaintiffs' original string. But the sample document addresses storage and handling information for a vaccine (albeit not one of the Affected Medications). It identifies acceptable storage temperature ranges, a warning not to freeze the medication, and what to do in the event the medication was exposed to freezing. This document indicates that the search string is likely to gather relevant and responsive information that goes directly to storage and handling policies and procedures. String 47 should be run.

| **Strings 52a, 53a, 54a, and 55a** |
|---|
| **52a:** (Med! OR Inject! OR Vaccin! OR Immun! OR Innocul! OR Chemo! OR Rheum! OR Vial! OR Pharm! OR Shot! OR Biologic! OR CAM! OR Toxoid! OR Drug!) **w/30** (log! OR track! OR reading! OR data! OR record! OR document! OR audit! OR maint! OR monitor!)[11] |
| **53a:** (ado-Tratuzumab OR Alprostadil OR Atezolizumab OR BEVACIZUMAB OR Bleomycin OR Candida OR Carflizomib OR Carmustine OR CERTOLIZUMAB OR CETUXIMAB OR DARBEPOETIN OR Denosumab OR diphtheria OR Doxorubicin OR Dt! OR Dtap! OR Durvalumab) **w/30** (log! OR track! OR report! OR reading! OR data! OR record! OR document! OR audit! OR maint! OR monitor!)[12] |
| **54a:** (Eculizumab OR Eribulin OR Etoposide OR FILGRASTIM! OR Fulvestrant OR Golimumab OR Haemophilus OR Hep! OR HIB! OR HPV OR PAPILLOMA! OR Hyaluronidase OR INFLUENZA OR Flu OR Insulin OR Interferon OR Ipilimumab OR IPV OR Latanoprost OR Leuprolide OR Lorazepam OR MANTOUX OR Mening! OR Methylergonovine) **w/30** (log! OR track! OR report! OR reading! OR data! OR record! OR document! OR audit! |

---

[11] Essentia ran 52a with "AND" instead of "w/30" as the proximity connector. That broader search yielded 84,753 hits, 43,432 of which were unique.

[12] Essentia did not run Plaintiffs' proposal for 53a (or 53b, *infra*), which Plaintiffs proposed on September 2, 2021.

For original string 53 (which Plaintiffs later narrowed and split into (a) and (b) in September to facilitate analysis of the string and which terms might be resulting in the number of hits Essentia claimed were too high), the string returned a collective 10,800 documents, 2,564 of which were unique. String 53b is addressed below.

> OR maint! OR monitor!)[13]
>
> **55a:** (Natalizumab OR Nivolumab OR Obinutuzumab OR OMALIZUMAB OR PALIVIZUMAB OR Panitumumab OR PEGFILGRASTIM OR Pegloticase OR PENICILLIN OR PEOFILGRASTIM OR pertussis OR Pertuzumab OR Polatuzumab OR Polio! OR Proparacaine OR RABIBS OR Rabies OR Ramucirumab OR Rituximab OR Romiplostim OR TD! OR Tdap! OR Tetanus) **w/30** (log! OR track! OR report! OR read! OR data! OR record! OR document! OR audit! OR maint! OR monitor![14]

Strings 52a, 53a, 54a, and 55a are tailored to seek reporting and/or monitoring documents related to the storage and handling of Affected Medications. 52a uses categorical terms for the types of Affected Medications and 53a, 54a, and 55a use actual pharmaceutical names for the medications identified by Essentia has having been affected by the excursion. Because Plaintiffs recognize that 52a's categorical terms are more general than specific pharmaceutical names, Plaintiffs removed one of the more general modifiers in the string ("report!").

The modifiers seek documents relating to maintaining, logging, tracking, reporting, auditing, and monitoring the Affected Medications. For three years, Essentia administered improperly stored medications to patients. Defendants were supposed to maintain those medications at specific temperatures, track those medications, monitor and document their temperatures, and audit storage and safety compliance. These terms are relevant.

On November 12, 2021, Essentia proposed the following modification to String 52a: **(Vaccin! OR Immun! OR Innocul! OR Chemo! OR Rheum! OR Biologic!) /s (log! OR track! OR audit! OR maint! OR monitor!)**. This proposal excludes many terms that Essentia itself has

---

[13]Essentia did not provide a hit count for 54a (or 54b, *infra*). For original string 54, before the string was split into (a) and (b), Essentia reported a collective 42,187 hits, 9,343 of which were unique.

[14] Essentia did not provide a hit count for 55a (or 55b, *infra*). For original string 55, before the string was split into (a) and (b), Essentia reported a collective 15,363 hits, 2,358 of which were unique.

13

used and/or identified as relevant, as well as other common language terms. For example, Essentia has identified Affected Medications with "vial," "injection," and "injectable" in the name; Essentia refers to a broad category of affected medications as "CAM"; Essentia has referenced temperature "readings" of the affected refrigerators. (In any event, on January 4, Essentia informed Plaintiffs that it would not run its own November proposal; the search had only 740 unique hits.)

Plaintiffs' proposals for Strings 52a, 53a, 54a, and 55a are relevant and appropriately tailored and should be applied.

| **Strings 52b, 53b, 54b, and 55b** |
|---|
| **52b:** (Med! OR Inject! OR Vaccin! OR Immun! OR Innocul! OR Chemo! OR Rheum! OR Vial! OR Pharm! OR Shot! OR Biologic! OR CAM! OR Toxoid! OR Drug!) **w/30** (compl! OR standard! OR requ! OR conting! OR guid! OR protocol! OR polic! OR procedur! OR instruct! OR SOP! OR practice! OR occurrence! OR parameter! OR degrees or Fahrenheit OR Celsius OR °)[15] |
| **53b:** (ado-Tratuzumab OR Alprostadil OR Atezolizumab OR BEVACIZUMAB OR Bleomycin OR Candida OR Carflizomib OR Carmustine OR CERTOLIZUMAB OR CETUXIMAB OR DARBEPOETIN OR Denosumab OR diphtheria OR Doxorubicin OR Dt! OR Dtap! OR Durvalumab) **w/30** (responsib! OR compl! OR standard! OR requ! OR recommend! OR conting! OR guid! OR protocol! OR polic! OR procedur! OR instruct! OR SOP! OR practice! OR occurrence! OR parameter! OR degrees or Fahrenheit OR Celsius OR °)[16] |
| **54b:** (Eculizumab OR Eribulin OR Etoposide OR FILGRASTIM! OR Fulvestrant OR Golimumab OR Haemophilus OR Hep! OR HIB! OR HPV OR PAPILLOMA! OR Hyaluronidase OR INFLUENZA OR Flu OR Insulin OR Interferon OR Ipilimumab OR IPV OR Latanoprost OR Leuprolide OR Lorazepam OR MANTOUX OR Mening! OR Methylergonovine) **w/30** (responsib! OR compl! OR standard! OR requ! OR recommend! OR conting! OR guid! OR protocol! OR polic! OR procedur! OR instruct! OR SOP! OR practice! OR occurrence! OR parameter! OR degrees or Fahrenheit OR Celsius OR °) |
| **55b:** (Natalizumab OR Nivolumab OR Obinutuzumab OR OMALIZUMAB OR |

---

[15] Essentia ran 52b with "AND" as a connector instead of "w/30," as Plaintiffs proposed. That broader research returned 67,653 hits, 13,798 of which were unique.

[16] Essentia did not provide hit counts for 53b, 54b, or 55b. Collective hit counts for the strings before they were split are addressed *supra*.

> PALIVIZUMAB OR Panitumumab OR PEGFILGRASTIM OR Pegloticase OR PENICILLIN OR PEOFILGRASTIM OR pertussis OR Pertuzumab OR Polatuzumab OR Polio! OR Proparacaine OR RABIBS OR Rabies OR Ramucirumab OR Rituximab OR Romiplostim OR TD! OR Tdap! OR Tetanus) **w/30** (responsib! OR compl! OR standard! OR requ! OR recommend! OR conting! OR guid! OR protocol! OR polic! OR procedur! OR instruct! OR SOP! OR practice! OR occurrence! OR parameter! OR degrees or Fahrenheit OR Celsius OR °)

Strings 52b, 53b, 54b, and 55b include references to Affected Medications as identified by Essentia (whether specific pharmaceutical names, like ado-Tratuzumab OR Alprostadil OR Atezolizumab, or categorical names, like inject! and chemo!). They are tailored to seek guidelines, policies, and practices related to the storage and handling of the affected medications (and, as with all requests, discussions of related issues).[17]

For example, the CDC recommends facilities draft and maintain up-to-date storage and handling "standard operating procedures" ("SOPs") for TTSPPs.[18] Essentia's guidelines require "occurrence report[s]" for out-of-range temperatures, e.g., ¶ 143. Regulatory guidelines recommend and/or mandate "emergency" plans for pharmaceutical relocation and excursions.[19]

The Second Amended Complaint dedicates 48 paragraphs to proper pharmaceutical storage and handling guidelines. These include Essentia's own policies for storage of medications, vaccines, and specimens (¶¶ 139-43); North Dakota Board of Pharmacy temperature and storage guidelines of medications and drugs (¶¶ 130-38); North Dakota and Minnesota Department of Health practices and requirements for the safekeeping of TTSPPs (¶¶ 121-29); pharmaceutical

---

[17] Plaintiffs recognize that the categorial descriptions in 52b are broader than the specific pharmaceutical names, and thus omitted broader modifiers from that search string ("responsib!" and "recommend!").

[18] https://www.cdc.gov/vaccines/hcp/admin/storage/toolkit/storage-handling-toolkit.pdf

[19] *E.g.,* https://www.health.nd.gov/sites/www/files/documents/Files/MSS/Immunizations/Providers/2020%20Vaccine%20Mgmt%20Policy%20Final.pdf.

manufacturer storage guidelines (¶¶ 118-20); and CDC storage and handling guidelines (¶¶ 96-117).

Strings 52b, 53b, 54b, and 55b have been designed to narrowly target guidelines, practices, and policy documents and discussions relevant to the Affected Medications in this litigation. The search strings should be run.

---

**Strings 84 & 85**

**84:** (DCP OR Dakota) **/s** (servic! OR agree! OR contract! OR dut! OR responsib! OR manag! OR maint! OR outsourc! OR control! OR oversee! OR compl! OR stor! OR fridg! OR refridg! OR therm! OR frig! OR refrig! OR freez! OR basement!)[20]

**85:** (DCP OR Dakota OR pharm!) **/s** (log! OR track! OR monitor! OR report! OR record! OR secur! OR audit! OR invent! OR inspect! OR excurs! OR fail! OR breach! OR temp! OR termin! OR guid! OR protocol! OR polic! OR investig!)[21]

---

These search strings seek documents related to the pharmacy allegedly involved with the temperature excursion – Dakota Clinic Pharmacy or "DCP." String 84 seeks documents related to, e.g., DCP's roles, responsibilities, business arrangement with Essentia, and involvement in the excursion. String 85 seeks documents concerning, e.g., compliance, temperature and medication monitoring, policies and procedures, and problems.

For both strings, Essentia proposed modifications which it then rejected. Its proposal for String 84 resulted in more unique documents than Plaintiffs' search (4,455); its proposal for String 85 resulted in just 988 unique documents, but Essentia rejected it anyway. On January 4, Essentia proposed overly narrow strings **(DCP or "Dakota Clinic Pharmacy") /s (service! Or agree! Or contract!)** and **(DCP or "Dakota Clinic Pharmacy") /s (log! Or monitor!)**, which returned 314

---

[20] For String 84, Essentia ran Plaintiffs' proposal with an "AND" connector instead of "/s". Essentia's broader search string returned 16,283 hits, 3,168 of which are unique.

[21] String 85 returned 28,253 hits, 4,859 of which are unique.

and 31 unique hits respectively, and which are both too narrow, omitting key terms regarding, e.g., DCP's roles, responsibilities, and the facts underlying the excursion.

Plaintiffs' proposed strings should be applied.

---

**String 99**

(safe! OR effect! OR efficac! OR recommend! OR requ! OR prevent! OR potent! OR treat!) **w/p** (Med! OR Inject! OR Vaccin! OR Immun! OR Innocul! OR Chemo! OR Rheum! OR Vial! OR Pharm! OR Shot! OR Biologic! OR CAM! OR Toxoid! OR Drug! OR Product!)[22]

---

This search string seeks documents addressing the safety, efficacy, and intended purpose (e.g., to prevent or treat illness) of the Affected Medications as well as recommendations and requirements regarding those medications. The second half of the string ((med! OR inject! Or Vaccin!...)) contains terms used to describe the categories and types of pharmaceuticals Essentia has identified as being affected by the temperature excursion. Fewer than 10% of the hits are unique, reflecting that most of the documents returned by this term also contain other search terms, an indication of the search string's relevance. String 99 should be applied.

---

**String 138**

cold **/s** chain!

---

This search string seeks documents related to the cold chain. Plaintiffs originally sought the search string **(cold OR supply OR distribut!) /s chain!** but narrowed it in response to Essentia's objection based on hit count.[23] Essentia has offered no modifications, yet still objects to this term as modified. According to the CDC: "A cold chain is a temperature-controlled supply

---

[22] String 99 returned 92,090 hits, 7,542 of which are unique.

[23] Essentia did not provide hit counts for String 138 as modified. Plaintiffs' prior proposal had 28,225 hits, 14,137 of which were unique. Plaintiffs expect their modification to return far fewer documents.

17

chain that includes all vaccine-related equipment and procedures."[24] This case concerns Defendants' storage, handling, and distribution equipment and procedures for temperature-sensitive medications. String 138 is plainly relevant and should be applied.

### B. Essentia has failed to meet its burden to demonstrate the search terms are disproportionate.

The ESI Order imposes certain duties of cooperation on the parties, *see* ESI Order, § II, yet Essentia's approach to developing and negotiating search terms fell short of those requirements. Despite both the plain language and spirt of the ESI Order, for many of the disputed terms, Essentia offered a single non-responsive example document and made no attempt to offer modifications to narrow the string.

If Essentia opposes a term, a qualitative assessment should be made. In *Hall v. Rent-A-Center, Inc.*, No. 4:16-cv-978, 2018 U.S. Dist. LEXIS 152040 (E.D. Tex. Aug. 31, 2018), for example, defendants claimed that three disputed search strings would be burdensome, hitting on more than 17,000 documents, and argued that the information sought was publicly available. *Id.* at *20-21. The court disagreed, holding that defendants failed to show that "locating and/or producing such documents is disproportionate to the needs of this case," and granted plaintiffs' motion to compel the disputed search strings. *Id.* at *22-23.

In *Brand Energy,* defendants objected to plaintiffs' search terms comprising of current or prior iterations of plaintiffs' company names, including "Brand," "BEIS," "Gregg," "Harsco," and "Patent." 2017 U.S. Dist. LEXIS 96763, at *8. Defendants argued that the terms were overly broad and too generic, resulting in "a myriad of false hits unrelated to the Plaintiffs or [the] litigation." *Id.* In overruling defendants' objections, the court held that "the relevance of these terms outweighs

---

[24] https://www.cdc.gov/vaccines/pubs/pinkbook/downloads/vac-storage.pdf; *see also* ¶ 98.

18

the possibility of having to cull a high number of hits," which included approximately 50,000 documents. *Id*.

Defendants in *Brand Energy* additionally objected to the search term "Schedule D" as overly broad, arguing that it would "encompass any and every bid, contract, or other document with a 'Schedule D,' regardless of its relevance to this litigation." *Id*. at *11. The court disagreed, citing defendants' failure to claim that their irrelevant documents routinely contained the phrase, and if so, what percentage of the documents did. *Id*. at *11-12.

Likewise, here, Essentia objects to many of Plaintiffs' proposed search strings, claiming, without any support, that they result in "large amounts of unresponsive documents." But Essentia failed to run many of Plaintiffs' proposals, or did so with a broader proximity connector than Plaintiffs proposed. Essentia did not provide any information supporting its claim that a large amount of documents is unresponsive. In fact, many of the hit counts are objectively small. And Essentia has not claimed to have done any meaningful sampling to estimate how many of the returned documents were actually irrelevant, how many relevant documents would be missed by excluding the terms, or how the terms should be modified. Essentia offered just a single example non-responsive document for each term (some of which contradicted Essentia's claims that the terms were unwarranted). Essentia also has yet to provide any estimated cost of reviewing documents associated with those search terms with allegedly excessive hit numbers.

Any burden that Essentia may belatedly allege in its responsive brief is outweighed by the relevance of these terms to this case. *See* Fed. R. Civ. P. 26(b)(1). This is a putative class action involving more than 50,000 patients across Minnesota and North Dakota. The issues at stake include the improper administration of pharmaceuticals to tens of thousands of patients over a three-year period. The amount in controversy is many millions of dollars. This is a putative class

action brought on behalf of patients and third-party payors and the vast majority of the information is solely in the hands of defendants. Essentia is a well-resourced health system with more than 14,000 employees, 14 hospitals, 71 clinics, 20 retail pharmacies, and a research institute. And Plaintiffs' search terms are very narrowly tailored – aimed at gathering an initial pool of highly relevant documents to jumpstart discovery and further identify relevant terms and witnesses. Plaintiffs' search terms are proportional to the size, needs, and importance of this litigation.

## IV.    CONCLUSION

Plaintiffs' June 2021 proposals eliminated roughly 90% of the documents from Essentia's first-round review. And Plaintiffs' September 2021 modified proposals further meaningfully narrowed the document pool – though Plaintiffs do not know by how much because Essentia did not provide hit counts for many of Plaintiffs' proposals.

Essentia nevertheless declines to apply 31 search strings that are demonstrably relevant, narrowly tailored, and proportionate to the needs of the case. Half of those terms return fewer than 1,000 unique documents. The resources Essentia is spending – and requiring Plaintiffs and the Court to spend – on this protracted dispute (and now briefing) could be better served reviewing responsive documents and moving discovery forward.

Plaintiffs respectfully request that the Court compel Essentia to apply the disputed search terms.

Dated: January 11, 2022                  Respectfully submitted,

                                         /s/ Melissa Ryan Clark

                                         Melissa Ryan Clark
                                         Brooke A. Achua
                                         FEGAN SCOTT LLC
                                         140 Broadway, 46th Fl.
                                         New York, NY 10005
                                         Ph: 646.502.7910
                                         Fax: 312.264.0100

melissa@feganscott.com
brooke@feganscott.com

Elizabeth A. Fegan
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
Ph: 312.741.1019
Fax: 312.264.0100
beth@feganscott.com

Mac Schneider
SCHNEIDER LAW FIRM
815 3rd Ave. S.
Fargo, ND 58103
Ph: 701-235-4481
Fax: 701-235-1107
mac@schneiderlawfirm.com

J. Barton Goplerud
Brian Marty
SHINDLER, ANDERSON, GOPLERUD &
WEESE, PC
5015 Grand Ridge Drive, Suite 100
West Des Moines, Iowa 50265
Ph: (515) 223-4567
Fax: (515) 223-8887
goplerud@sagwlaw.com
marty@saglaw.com

Counsel for Plaintiffs

21