**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**

|  |  |  |
|---|---|---|
| JESSICA KRAFT, INDIVIDUALLY AND AS PARENT OF MINORS L.K., S.K., and O.K.; SHELLI SCHNEIDER, INDIVIDUALLY AND AS PARENT OF MINORS A.S. and W.S.; ANNE BAILEY, AS PARENT OF MINOR D.B.; AMY LAVELLE, AS PARENT OF MINORS Em.L. and El.L.; ELIZABETH BEATON, INDIVIDUALLY AND AS PARENT OF MINOR M.B.; AMANDA AND TYRELL FAUSKE, INDIVIDUALLY AND AS PARENTS OF MINORS C.R.F. and C.J.F.; JENNIFER REIN, INDIVIDUALLY; and JESSICA BERG, AS PARENT OF MINORS A.B. and S.B., individually and on behalf of all others similarly situated, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 3:20-CV-121<br><br>Hon. Peter D. Welte<br><br>Mag. Alice R. Senechal |
| Plaintiffs, | ) ) |  |
| v. | ) ) |  |
| ESSENTIA HEALTH, INNOVIS HEALTH, LLC d/b/a ESSENTIA HEALTH, DAKOTA CLINIC PHARMACY, LLC, JOHN DOE MANUFACTURERS, and JOHN DOE DISTRIBUTOR, | ) ) ) ) ) ) ) ) |  |
| Defendants. | ) |  |

**DECLARATION OF MELISSA CLARK IN SUPPORT OF MOTION TO COMPEL APPLICATION OF SEARCH TERMS**

I, MELISSA CLARK, declare as follows:

1.   I am an attorney with Fegan Scott LLC and counsel for Plaintiffs and the putative class in this case. I have nearly 15 years of experience litigating class actions on the plaintiffs' side.

1

2.      I also have extensive experience working on discovery issues. For example, I was part of the teams that led offensive discovery and ESI issues in the complex multidistrict litigations *In re Equifax, Inc. Customer Data Breach Litigation* (N.D. Ga.) and *In re Apple, Inc. Device Performance Litigation* (N.D. Cal.). I have also led discovery and ESI issues in several other class actions and non-class cases.

3.      I have personal knowledge of the facts stated herein.

4.      While this is not an exhaustive recount of correspondence and issues regarding Essentia Health and Innovis Health, LLC's (collectively, "Essentia") search terms, this declaration addresses the general timeline of the search term process thus far.

A.  **Plaintiffs served discovery in January 2021.**

5.      On January 26, 2021, Plaintiffs served their First Set of Requests for the Production of Documents ("RFPs") on Essentia.

6.      On March 11, 2021, Essentia served its responses and objections to Plaintiffs' RFPs.

7.      On April 16, 2021, Plaintiffs sent a letter to Essentia regarding deficiencies with those responses and objections and seeking a time to meet and confer. Among the issues Plaintiffs identified, Plaintiffs noted Essentia's general objection that the RFPs were "premature as the Parties must first comply with the requirements of the ESI Order, including . . . with respect to . . . Document Search Protocols." Plaintiffs expressed concern that Essentia was improperly delaying production because it had not yet taken steps to develop or propose a search methodology and requested that Essentia send its proposed methodology promptly.

8.      Essentia represented that it was developing search terms through a time-intensive process, including through substantive client discussions and custodial interviews.

2

**B. Four months after discovery was served, Essentia proposed four narrow search terms.**

9.    On May 14, 2021, Essentia sent its first search term list. That list had four narrow terms, one of which entirely overlapped with another. **Exhibit 1.**

10.    Plaintiffs raised concerns about those search terms by email, in their May 17, 2021 position statement, and at the May 19, 2021 discovery status conference. At the status conference, the Court encouraged the parties to stay on the line to schedule a time to further meet and confer.

11.    After the status conference, I called counsel for Essentia to schedule a time to meet and confer regarding search terms. On that call, which was fewer than 10 minutes, counsel disagreed as to who should propose a more robust set of search terms.

12.    I explained that if Plaintiffs undertook the task of developing Essentia's search terms for it, the process would be even more iterative than usual, and would require document production, and perhaps depositions, to help craft the appropriate terms.

13.    Counsel for Essentia responded that he did not know what I hoped to achieve by "threatening a litigator with more litigation" and that he did "not care."

14.    Counsel for Essentia stated that he was available on May 26, the last day by which the Court directed the parties to confer. Counsel agreed to exchange times for further discussion by email.

**C. Essentia then offered eight narrow search terms, which did not resolve the deficiencies Plaintiffs identified with the first list.**

15.    On May 26, 2021, Essentia sent a supplemental list of search terms. **Exhibit 2.** That list included eight overly narrow terms. It contained some of the same deficiencies that Plaintiffs had previously identified with the first list, as well as other deficiencies.

3

16.     Plaintiffs raised concerns about Essentia's supplemental list of search terms in a reply email that same day, on a meet and confer phone call the next day, in Plaintiffs' May 28, 2021 position statement, and at the June 1, 2021 status conference.

17.     In their position statement, Plaintiffs also noted that Essentia had previously refused Plaintiffs' requests to advance discovery by running the agreed-upon terms while negotiations continued, and asked the Court to order Essentia to do so if it did not then agree. Essentia ultimately agreed to run them.

18.     At that June 2021 conference, Essentia represented to the Court that it first learned of Plaintiffs' feedback regarding Essentia's search terms in Plaintiffs' May 28 position statement. Essentia claimed that, had it known Plaintiffs' concerns, it would have considered them in developing its supplemental list.

19.     After the conference, I emailed counsel for Essentia and noted that his representation to the Court was misleading. Some of the issues identified with the supplemental search terms had been previously identified by Plaintiffs in connection with Essentia's initial list of terms – and yet were not resolved by the supplement. Other issues arose only from the terms that were new to the supplemental list. Others were readily apparent on the face of the terms. I asked that Essentia avoid implying to the Court that it had been kept in the dark about issues the parties had in fact discussed.

20.     Recognizing the parties were at an impasse and discovery was at a standstill, Plaintiffs agreed at the status conference to propose their own list of search terms.

### D.  **Plaintiffs proposed their own list of search terms. Essentia took over a month to provide preliminary hit counts and two months to identify which terms it disputed.**

21.     On June 11, 2021, Plaintiffs provided their own proposed search term list. **Exhibit 3.** That list added approximately 60 terms to Essentia's initial list of 8. (Later, to

facilitate discussion and in light of potential document review platform character limits, some of those terms were split, resulting in a longer list). To streamline the terms for evaluation and discussion, the list included two appendices to be used with some of the strings – one of medication terms and one of medication manufacturers.

22.    On June 24, 2021, Essentia emailed Plaintiffs with broad, generalized objections to Plaintiffs' proposals. Essentia did not provide any information required by the ESI Order. Still, Essentia asked Plaintiffs to withdraw several of its proposed searches.

23.    Essentia conditioned its agreement to run the other searches – simply to obtain the preliminary hit count information required by the ESI Order (and not for substantive review) – on Plaintiffs' complete withdrawal of the 16 searches disputed in that email.

24.    Essentia claimed that the terms were "extremely overbroad and unduly burdensome" and that simply "building and running" the disputed searches – before reviewing any documents – was unduly burdensome and not proportional to the needs of the case, and Plaintiffs should therefore withdraw them. I built the searches and sent them to Essentia within two hours of Essentia's email.

25.    On July 7, 2021, Essentia began to send partial hit counts for the search terms. Essentia noted that some were returning extensive responses, but did not identify which terms.

26.    On July 15, 2021, Essentia sent a completed list of hit counts for search terms, noting its belief that many were returning an excessive number of documents. Essentia noted that it was continuing to work through the searches to provide its position regarding any modifications that would resolve the issues. It did not identify which search terms were in dispute.

27.    On July 15, 2021, Plaintiffs emailed Essentia asking for additional information required by the ESI Order – including a unique document count.

28.    On July 20, 2021, regarding unique hit counts, Essentia instead responded regarding deduplication. Plaintiffs explained that deduplication was something different. The ESI Order requires a count of "the number of unique documents returned by each search term (documents that contain a particular term and no other term on the list)[.]"

### E.  More than four months after the Court entered the ESI Order, Essentia disclosed that it was unable to provide unique hit counts. Essentia took another month to identify the search terms it disputed.

29.    Plaintiffs submitted their position statement in advance of the July 27 status conference, noting outstanding questions regarding search terms. At the status conference, Essentia disclosed for the first time that it was unable to provide unique document hit counts.

30.    Essentia sent an updated search term hit list on August 3, 2021. Essentia still did not specify which terms it found objectionable.

31.    On August 11, 2021, after meet-and-confers by the parties, Essentia informed Plaintiffs it developed a method for providing unique hit counts. Also that day, it informed Plaintiffs that the total number of collected files was 2,917,752, and the total files that hit on the proposed search terms was 255,216.

32.    On August 16, 2021, Plaintiffs submitted their position statement requesting that Essentia be ordered to identify any disputed terms.

33.    On August 24, 2021, Essentia provided its final search term hit list and objections. Essentia accepted many terms and disputed several others. Essentia provided one example non-responsive document for each of the disputed terms. For most of the disputed terms, Essentia did not offer any modifications, suggestions to narrow the terms, or reasons Essentia believed they were overbroad beyond hit counts.

**F.  The following week, Plaintiffs sent feedback regarding Essentia's disputes and new search term modifications. Four months later, Essentia provided its final responses to those proposals.**

34.    On September 2, 2021, in an attempt to resolve Essentia's disputes, Plaintiffs sent additional proposals and modifications to the search terms, including narrowed search strings and split search strings to allow the parties to better evaluate disputes. Plaintiffs also requested that Essentia run the disputed search terms that had few unique hits.

35.    On September 29, 2021, Essentia sent its initial feedback (e.g., whether it continued to object to Plaintiffs' proposals or would run modifications to determine whether it had further objections). Essentia did not provide any new hit counts at that time.

36.    On November 12, 2021, Essentia sent a partial list of searches it ran on October 20, 2021, including some corresponding hit counts and objections. Many of these searches differed from Plaintiffs' September 2 suggestions. For example, several used broader connectors, e.g., using "AND" (which would locate terms anywhere in a document), instead of connectors like "w/30" (locating terms within 30 words of one another) or "w/s" (locating terms within the same sentence). For several of Plaintiffs' proposals, Essentia did not obtain hit counts at all.

37.    Essentia stated it would provide the results of four final searches (modifications proposed by Essentia) "as soon as able."

38.    On December 16, 2021, Plaintiffs sent emails asking for clarification on search term numbers 63 and 12. Essentia did not respond (though it did respond regarding search 63 when Plaintiffs raised it again in January).

39.    Hearing nothing since Essentia's November 12 communication, with nearly four months having passed since Plaintiffs' September 2 modified search term proposals, and with several terms in dispute, Plaintiffs decided to proceed with the filing of their motion to compel.

40.     On January 3, 2022, Plaintiffs notified Essentia of their forthcoming motion and asked Essentia whether it would waive its confidentiality designations over pharmaceutical names in light of the Court's prior orders regarding sealing (Essentia agreed to do so on January 4).

41.     On January 4, 2022, Essentia sent yet another updated search term list. That list raised two new disputes related to modifications Essentia itself had proposed. Plaintiffs understood that Essentia intended to provide hit counts for those proposals, but did not understand that Essentia might withdraw its own proposals. In any event, Plaintiffs believe those proposals were too narrow. Essentia still did not provide hit counts for all of Plaintiffs' September proposals.

**G.  This process has been unnecessarily inefficient and unproductive.**

42.     In my experience, this has been an unnecessarily protracted process for obtaining basic information regarding hit counts and areas of dispute.

43.     The delays and lack of information have meaningfully impacted the parties' ability to substantively negotiate the search terms or advance document production.

44.     Plaintiffs' third-party eDiscovery vendor has informed me that it would generally be able to run 130 complex search strings on a pool of 2.9 million documents and provide a report of total and unique hit counts within 24 hours. Multiple other vendors I have worked with have also been able to provide such reports within 24 hours. This stands in contrast to the several weeks (in fact, months) Essentia took to provide counts.

45.     While some additional time might be warranted to edit search strings to comport with the requirements of a party's document review platform (e.g., change wildcards from an asterisk to an exclamation point), that is not a time-intensive process. Moreover, Plaintiffs asked Essentia several times for information about its document review platform requirements and

8

parameters (e.g., character limits, use of wildcards, syntax) so that Plaintiffs could develop terms with that information in mind. Essentia never responded.

I declare under penalty of perjury that the foregoing is true and correct.

Date: January 11, 2022                    _____/s/ Melissa Ryan Clark_____

9

# Exhibit 1

**Robert B. Stock**

Direct Dial: 701.356.6316  |  rstock@vogellaw.com

May 14, 2021

Melissa Ryan Clark
FAGAN SCOTT
140 Broadway, 46th Floor
New York, NY 10005

*Via Email  Only*
*melissa@feganscott.com*

**Re:    Kraft, et al. vs. Essentia Health, et al.**
**Case No. 3:20-cv-00121**
**Our File No.:  036304.20127**

Dear Melissa:

The purpose of this letter is to discuss document search protocols pursuant to the Court's Order Governing Discovery of Electronically Stored Information (Doc. #46) As you know, the Order provides that the parties are to meet and confer concerning search methodologies, including without limitation, the use of keyword search terms and/or the use of technology assisted review. Defendants Essentia Health and Innovis Health LLC believe the use of keyword search terms is the appropriate search methodology. To that end, Defendants propose the following search terms it intends to use to locate responsive documents:

1.    ("Dakota Clinic Pharmacy" OR "DCP") /s (pharmaceutical w/2 management w/2 services);

2.    (temperature OR temp) w/3 (excursion OR excursions);

3.    potential /s ((temperature w/2 (excursion OR excursions)); and

4.    (refrigerator OR refrigeration) w/2 ((temperature OR temp) w/2 (log OR logs)).

Please review and let me know whether you have any modifications or additional terms proposed by the Plaintiffs.



218 NP Avenue  |  PO Box 1389  |  Fargo, ND 58107-1389
Phone: 701.237.6983  |  Fax:  701.237.0847  |  Toll Free:  800.677.5024

**Fargo • Bismarck • Moorhead •Minneapolis • Grand Forks**          **www.vogellaw.com**

4418889.1

May 14, 2021
Page 2


I look forward to hearing from you soon.

Sincerely,

Robert B. Stock

RBS:dh

cc via email:  Angie Lord
               Briana Rummel
               Bart Goplerud
               Elizabeth Fegan
               Brooke Achua

# Exhibit 2

# Robert B. Stock

Direct Dial: 701.356.6316  |  rstock@vogellaw.com

May 26, 2021

Melissa Ryan Clark                                          *Via Email  Only*
FAGAN SCOTT                                        *melissa@feganscott.com*
140 Broadway, 46th Floor
New York, NY 10005

**Re:      Kraft, et al. vs. Essentia Health, et al.**
**          Case No. 3:20-cv-00121**
**          Our File No.:  036304.20127**

Dear Melissa:

This letter follows my May 14, 2021 correspondence with respect to the keyword search terms that Defendants proposed to use in locating responsive documents. Through the meet and confer process you have asked that Defendants propose additional keyword search terms as Plaintiffs felt the original set was too narrowly tailored. Although Defendants disagree with that position, in the spirit of cooperation and in an attempt to move this process forward both expeditiously and efficiently, Defendants propose the following list of keyword search terms it intends to use to locate responsive documents:

1.    ("Dakota Clinic Pharmacy" OR "DCP") /s (pharmaceutical /s (management w/2 services));

2.    (temperature OR temp) /s (excursion OR excursions);

3.    (injectable w/3 medication) /s (storage w/3 issue);

4.    (refrigerator OR refrigeration) /s ((temperature OR temp) w/2 (log OR logs));

5.    (refrigerated w/3 injectable) /s investigation;

6.    (medication OR vaccine OR vaccinations) /s (refrigeration w/3 issue);

7.    (vaccine OR vaccinations) /s storage /s temperature /s (outside /s (recommended w/3 range!)); and

8.    Former /s (distribution w/3 partner) /s stor! /s temp!.



218 NP Avenue  |  PO Box 1389  |  Fargo, ND 58107-1389
Phone: 701.237.6983  |  Fax:  701.237.0847  |  Toll Free:  800.677.5024

**Fargo • Bismarck • Moorhead •Minneapolis • Grand Forks**        **www.vogellaw.com**

4430293.1

May 26, 2021
Page 2

Please review and let up know whether you have any modifications or additional terms proposed by the Plaintiffs.

Sincerely,

Robert B. Stock

RBS:dh

cc via email:    Angie Lord
                 Briana Rummel
                 Bart Goplerud
                 Elizabeth Fegan
                 Brooke Achua

4430293.1

# Exhibit 3

**feganscott**

**FeganScott LLC**
ATTORNEYS AT LAW

140 Broadway, 46th Floor
New York, NY 10005

PHONE    347.353.1150
FAX      312.264.0100

melissa@feganscott.com

June 11, 2021

**VIA EMAIL**
Angela Lord
Robert Stock
Vogel Law Firm
218 NP Avenue
P.O. Box 1389
Fargo, ND 58107-1389
aelord@vogellaw.com
rstock@vogellaw.com

     Re:     *Kraft, et al. v. Essentia Health, et al.,* Case No. 3:20-cv-121;
                Plaintiffs' First List of Supplemental Search Terms

Dear Rob and Angie:

With this letter, Plaintiffs provide their First List of Supplemental Search Terms.

The selection and implementation of search terms is an iterative process. That is particularly true when the receiving party is charged with crafting search terms at the outset of discovery. This list is proposed without waiving Plaintiffs' right to suggest additional terms as necessary throughout discovery.

Rather than suggest fewer, broader terms -- e.g., "Dakota Clinic Pharmacy" or "vaccin!" or "temp!"-- Plaintiffs have crafted a number of much narrower search strings, including specific key words to limit most of the strings. If those search strings omit terms (including variations, common misspellings, and abbreviations) required to cull responsive and relevant documents, Essentia Health should notify Plaintiffs and add those additional terms to the string. Similarly, if Essentia Health is aware of other terms, including ways in which Essentia or others refer to the issues that are the subject of the complaint, Essentia should inform Plaintiffs and add those terms.

Some search strings overlap. That overlap may facilitate the parties' meet-and-confer regarding any disputed terms. For example, Plaintiffs have proposed the standalone term "excurs!" to gather documents containing variations of the word "excursion." Plaintiffs believe that the term is of significant importance in this case and warrants being run on its own -- particularly given



June 11, 2021
Page 2

that it is not a commonly used word. However, that term is also included in other search strings to allow the parties to assess relative hit counts if necessary.[1]

Some search strings have been split into multiple strings containing a common term (e.g., "temp!") to reduce the number of characters in each string. If Essentia disputes any search string containing multiple keywords, the string(s) should be split further to allow the parties to evaluate hit counts associated with the terms within each string.

Because there are many relevant pharmaceutical and manufacturer names (and related terms) there are two appendices containing those terms. Highlighted notes within the search strings indicate where those terms should be run.[2]

Search terms are not case sensitive.

Plaintiffs understand that Essentia Health intends to run these search terms on custodians' emails. If Essentia Health intends to use search terms for other purposes or sources, please let us know. We understand Essentia Health is not using TAR; if that changes, please let us know.

Plaintiffs have requested but not yet received information about Essentia Health's document review platform or any parameters and capabilities relevant to the use of search terms (e.g., details regarding the use of wildcards, fuzzy search, logic, syntax, character count limitations). If Essentia's platform has (or lacks) features or requirements that would impact the search, please let us know.

We also note that any search, even one of agreed-upon terms, is subject to appropriate testing and validation to ensure that the search terms were adequate.

Sincerely,

Melissa Ryan Clark

Encl.

---

[1] This duplication is not exhaustive and does not offer an alternative to the search of the "main" term. If search strings do require modification, additional terms and strings may need to be added.

[2] If Essentia prefers, it may run the terms in the appendices as standalone terms (in addition to running the other terms in those search strings). For example, rather than "Temp! AND Avastin" (and other medication terms) as contemplated by Search String No. 12, Essentia may run "Temp!" alone and "Avastin" (and the other medication terms) alone.

*Kraft, et al v. Essentia Health, et al.*, 3:20-cv-00121
Plaintiffs' First Supplemental List of Search Terms for Essentia Health

| | **Essentia Health Search Terms** |
|---|---|
| 1. | ("Dakota Clinic Pharmacy" OR "DCP") /s (pharmaceutical /s (management w/2 services)) |
| 2. | (temperature OR temp) /s (excursion OR excursions) |
| 3. | (injectable w/3 medication) /s (storage w/3 issue) |
| 4. | (refrigerator OR refrigeration) /s ((temperature OR temp) w/2 (log OR logs)) |
| 5. | (refrigerated w/3 injectable) /s investigation |
| 6. | (medication OR vaccine OR vaccinations) /s (refrigeration w/3 issue) |
| 7. | (vaccine OR vaccinations) /s storage /s temperature /s (outside /s (recommended w/3 range!)) |
| 8. | Former /s (distribution w/3 partner) /s stor! /s temp! |
| 9. | Excurs! |
| 10. | TTSPP |
| 11. | Temp! **w/10** sensitiv! |
| 12. | Temp! **AND** ([[Medication Terms]])[1] |
| 13. | Revaccin! **OR** re-vaccin! |
| 14. | Reimmuniz! **OR** re-immuniz! |
| 15. | (Repeat! OR readminist! OR re-administ! OR redo! OR Re-do! OR duplicat!) **/s** (vaccin! OR immuniz!) |
| 16. | temp! **w/ 30** (excurs! OR prob! OR issue! OR fail! OR incid! OR occurrence! OR situation! OR emergen! OR out! OR wrong OR deviat! OR improper! OR uncertain! OR var! OR invalid! OR alarm! OR warn! OR freez! OR froz! OR basement! OR 31 OR 32 OR 33 OR 34 OR 35 OR 36 OR 37 OR 38 OR 39 OR 40 OR 77) |

---

[1] References to [[Medication Terms]] refer to the list of terms in Appendix A at the end of this document. This list is intended to encompass the brand names and generic names of pharmaceuticals affected by the alleged temperature excursion. The list also includes some generic medication-related terms; those appear at the beginning of the list. Essentia should review and supplement the list if any terms are missing or in error, or if the affected pharmaceuticals have commonly used names or abbreviations not on this list.

Each of the Medication Terms (separated by "OR") should be run where [[Medication Terms]] appears in a search string. Fuzzy searches should be used for brand and generic pharmaceutical names.

| | |
|---|---|
| 17. | temp! **w/ 30** (calib! OR stabiliz! OR stabaliz! OR adjust! OR shift! OR trend! OR high! OR low! OR max! OR min! OR below OR above OR exceed! OR warm! OR cold! OR ultra-cold! OR rang! OR set! OR control! OR specific! OR effectiv! OR ineffectiv! OR harmful! OR potent OR potenc!) |
| 18. | temp! **w/ 30** (log! OR track! OR report! OR document! OR read! OR data! OR record! OR audit! OR maint! OR monitor! OR responsib! OR compl! OR standard! OR requ! OR recommend! OR conting! OR guid! OR protocol! OR polic! OR procedur! OR instruct! OR SOP! OR practice! OR report! OR parameter! OR indicat!) |
| 19. | (fridg! OR refridg! OR frig! OR refrig! OR therm! OR freez!) **w/ 30** (excurs! OR prob! OR issue! OR fail! OR incid! OR occurrence! OR situation! OR emergen! OR out! OR wrong OR deviat! OR improper! OR uncertain! OR var! OR invalid! OR alarm! OR warn! OR freez! OR froz! OR 31 OR 32 OR 33 OR 34 OR 35 OR 36 OR 37 OR 38 OR 39 OR 40 OR 77) |
| 20. | (fridg! OR refridg! OR frig! OR refrig! OR therm! OR freez!) **w/ 30** (calib! OR stabiliz! OR stabaliz! OR adjust! OR shift! OR high! OR low! OR max! OR min! OR below OR above OR exceed! OR warm! OR cold! OR ultra-cold! OR rang! OR set! OR control! OR specific! OR effectiv! OR ineffectiv! OR harmful! OR potent OR potenc!) |
| 21. | (fridg! OR refridg! OR frig! OR refrig! OR therm! OR freez!) **w/ 30** (log! OR track! OR report! OR document! OR read! OR data! OR record! OR audit! OR maint! OR monitor! OR responsib! OR compl! OR standard! OR requ! OR recommend! OR conting! OR guid! OR protocol! OR polic! OR procedur! OR instruct! OR SOP! OR practice! OR report! OR parameter! OR indicat!) |
| 22. | (fridg! OR refridg! OR frig! OR refrig! OR therm! OR freez!) **AND** (==[[Medication Terms]]==) |
| 23. | Stor! **w/ 30** (excurs! OR prob! OR issue! OR fail! OR incid! OR occurrence! OR situation! OR emergen! OR wrong OR deviat! OR improper! OR uncertain! OR var! OR invalid! OR alarm! OR warn! OR freez! OR froz! OR 31 OR 32 OR 33 OR 34 OR 35 OR 36 OR 37 OR 38 OR 39 OR 40 OR 77) |
| 24. | Stor! **w/ 30** (calib! OR stabiliz! OR stabaliz! OR adjust! OR high! OR low! OR max! OR min! OR below OR above OR exceed! OR warm! OR cold! OR ultra-cold! OR rang! OR set! OR control! OR specific! OR effectiv! OR ineffectiv! OR harmful! OR potent OR potenc!) |
| 25. | Stor! **w/ 30** (log! OR track! OR report! OR read! OR data! OR record! OR document! OR audit! OR maint! OR monitor! OR responsib! OR compl! OR standard! OR requ! OR recommend! OR conting! OR guid! OR protocol! OR polic! OR procedur! OR instruct! OR SOP! OR practice! OR report! OR parameter! OR indicat!) |
| 26. | Stor! **w/ 30** (==[[Medication Terms]]==) |

2

| | |
|---|---|
| 27. | ([[Medication Terms]]) **w/ 30** (excurs! OR prob! OR issue! OR fail! OR incid! OR occurrence! OR situation! OR warm! OR cold! OR ultra-cold! OR freez! OR froz! OR rang! OR deviat! OR improper! OR invalid! OR defect! OR compromise! OR unfit OR alarm! OR effectiv! OR ineffectiv! OR harmful! OR potent OR potenc!) |
| 28. | ([[Medication Terms]]) **w/ 30** (log! OR track! OR report! OR read! OR data! OR record! OR document! OR audit! OR maint! OR monitor! OR responsib! OR compl! OR standard! OR requ! OR recommend! OR conting! OR guid! OR protocol! OR polic! OR procedur! OR instruct! OR SOP! OR practice! OR occurrence! OR parameter! OR 31 OR 32 OR 33 OR 34 OR 35 OR 36 OR 37 OR 38 OR 39 OR 40 OR 77) |
| 29. | TMD |
| 30. | DDL |
| 31. | Dig! /s data /s log! |
| 32. | (fridg! OR refridg! OR frig! OR refrig! OR therm! OR freez! OR DCP OR "Dakota Clinic" OR pharm!) **w/30** (mov! OR relocat! OR transfer! OR transport!) |
| 33. | ([[Medication Terms]]) **AND** (mov! OR relocat! OR transfer! OR transport!) |
| 34. | investig! **/s** (excurs! OR temp! OR refridg! OR fridg! OR frig! OR refrig! OR freez! OR therm! OR storage OR DCP OR pharm! OR dispens! OR Dakota OR stor! OR distrib! OR [[Medication Terms]]) |
| 35. | out! **/s** norm! |
| 36. | out! **/s** range! |
| 37. | Improper! **/s** condition! |
| 38. | Invalid! **w/5** dose! |
| 39. | Qualit! **w/5** (control! OR assur! OR review! OR prob! OR issue! OR fail! OR incid! OR occurrence! OR situation! OR investig! OR assess!) **AND** (temp! OR excurs! OR stor!) |
| 40. | (Risk! OR potential! OR likely! OR likelihood!) **/s** (non OR not OR won't OR reduc! OR affect! OR effective! OR efficacy! OR less!) **/s** (immune OR immunity) |
| 41. | (DCP OR Dakota OR pharm! OR distrib! OR dispens!) **/s** (servic! OR agree! OR contract! OR dut! OR responsib! OR manag! OR maint! OR outsourc! OR control! OR oversee! OR compl! OR stor! OR fridg! OR refridg! OR therm! OR frig! OR refrig! OR freez! OR basement!) |
| 42. | (DCP OR Dakota OR pharm! OR distrib! OR dispens!) **/s** (log! OR track! OR monitor! OR report! OR record! OR secur! OR audit! OR invent! OR inspect! OR excurs! OR fail! OR breach! OR temp! OR termin! OR guid! OR protocol! OR polic! OR investig!) |

3

| 43. | (degree!) /p ([[Manufacturer Terms]])[2] |
|---|---|
| 44. | (inform! OR notif! OR state! OR contact! OR reach! OR call! OR offer! OR hotlin! OR "find out" OR "finds out" OR "found out") **AND** (vaccin! OR revaccin! OR re-vaccin! OR immun! OR re-immun! OR reimmun! OR chemo! OR cam! OR biolog! OR temp! OR excurs!) **AND** (public OR patient! OR carrier! OR insur! OR Innovis OR DCP OR Dakota OR board OR BOD OR legal OR lawyer! OR attorney! OR counsel OR GC OR press OR media OR news!) |
| 45. | (disclos! OR represent! OR conceal! OR quiet! OR "under wraps" OR (keep w/5 oursel!) OR announc! OR reveal! OR tell OR told OR PR OR relations OR represent!) **AND** (vaccin! OR revaccin! OR re-vaccin! OR immun! OR re-immun! OR reimmun! OR chemo! OR cam! OR biolog! OR temp! OR excurs!) **AND** (public OR patient! OR carrier! OR insur! OR Innovis OR DCP OR Dakota OR board OR BOD OR legal OR lawyer! OR attorney! OR counsel OR GC OR press OR media OR news!) |
| 46. | (inform! OR notif! OR state! OR contact! OR reach! OR call! OR offer! OR hotlin! OR "find out" OR "finds out" OR "found out") **AND** (vaccin! OR revaccin! OR re-vaccin! OR immun! OR re-immun! OR reimmun! OR chemo! OR cam! OR biolog! OR temp! OR excurs!) **AND** ([[Manufacturer Terms]]) |
| 47. | (disclos! OR represent! OR conceal! OR quiet! OR "under wraps" OR (keep w/5 oursel!) OR announc! OR reveal! OR tell OR told OR PR OR relations OR represent!) **AND** (vaccin! OR revaccin! OR re-vaccin! OR immun! OR re-immun! OR reimmun! OR chemo! OR cam! OR biolog! OR temp! OR excurs!) **AND** ([[Manufacturer Terms]]) |
| 48. | Titer! **AND** (excurs! OR Revaccin! OR re-vaccin! OR Reimmuniz! OR re-immuniz! OR vaccin! OR immun!) |
| 49. | Titer! **AND** (vaccin! OR immun!) |
| 50. | (Refund! OR reimburs! OR re-imburs! OR free! OR cost! OR charg! OR pay! OR insur!) **AND** (excurs! OR Revaccin! OR re-vaccin! OR reimmuniz! OR re-immuniz! OR vaccin! OR immun!) |
| 51. | (safe! OR effect! OR efficac! OR recommend! OR requ! OR prevent! OR potent! OR treat!) **w/p** ([[Medication Terms]]) |

---

[2] References to [[Manufacturer Terms]] refer to the list of terms in Appendix B at the end of this document. This list is intended to encompass the manufacturers of pharmaceuticals affected by the alleged temperature excursion as well as related generic terms. Essentia should review and supplement that list if any manufacturers are missing or in error, or if they have commonly used names or abbreviations not on this list.

Each of those terms (separated with "OR") should run where [[Manufacturer Terms]] appears. Fuzzy searches should be used for these terms.

| 52. | ([[Medication Terms]]) /s info! /s (statement! OR pamphlet! OR handout OR (hand! w/2 out!)) |
|---|---|
| 53. | "833-594-0376" OR "833.594.0376" OR "594-0376" |
| 54. | (Temp! OR storage OR storing OR store) **AND** (FDA OR CDC OR Center OR WHO OR "world health" OR C.F.R. OR CFR OR fed! OR USC OR U.S.C. OR USP OR U.S.P. OR pharmacopeia) |
| 55. | (keep OR kept OR maintain!) /s (degree! OR temp!) |
| 56. | (Temp! OR storage) **AND** ([[Manufacturer Terms]]) |
| 57. | CGMP **OR** GMP |
| 58. | Good /s manufactur! /s practic! |
| 59. | (Good /s stor! w/s practic!) **OR** GSP |
| 60. | (Good /s distrib! /s practic!) **OR** GDP |
| 61. | (Good /s ship! /s practic!) **OR** GSP |
| 62. | (Illegitim! OR return! OR nonsaleable! OR saleable! OR suspect! OR misbrand! OR merchantable OR unmerchantable) /s ([[Medication Terms]]) |
| 63. | Inform! /s maint! /s agree! |
| 64. | (Transaction! OR transfer!) **w/ 10** (data! OR histor! OR statement! OR information! OR log!) **w/10** ([[Medication Terms]]) |
| 65. | (cold OR supply OR distribut!) /s chain! |
| 66. | Vaccin! /s handl! |
| 67. | (Insert! OR packag! OR label! OR publication!) **w/10** ([[Medication Terms]]) |

**APPENDIX A: MEDICATION TERMS**

| | |
|---|---|
| 1. | Med! |
| 2. | Inject! |
| 3. | Vaccin! |
| 4. | Immun! |
| 5. | Innocul! |
| 6. | Chemo! |
| 7. | Rheum! |
| 8. | Vial! |
| 9. | Pharm! |
| 10. | Shot! |
| 11. | Biologic! |
| 12. | CAM! |
| 13. | Toxoid! |
| 14. | Drug! |
| 15. | Product! |
| 16. | ado-Tratuzumab |
| 17. | Alprostadil |
| 18. | Atezolizumab |
| 19. | BEVACIZUMAB |
| 20. | Bleomycin |
| 21. | Candida |
| 22. | Carflizomib |
| 23. | Carmustine |
| 24. | CERTOLIZUMAB |
| 25. | CETUXIMAB |
| 26. | DARBEPOETIN |
| 27. | Denosumab |
| 28. | diptheria |
| 29. | Doxorubicin |
| 30. | Dt! |
| 31. | Dtap! |
| 32. | Durvalumab |
| 33. | Eculizumab |
| 34. | Eribulin |
| 35. | Etoposide |
| 36. | FILGRASTIM! |
| 37. | Fulvestrant |
| 38. | Golimumab |
| 39. | Haemophilus |
| 40. | Hep! |
| 41. | HIB! |

6

| | |
|---|---|
| 42. | HPV |
| 43. | HUMAN PAPILLOMA! |
| 44. | Hyaluronidase |
| 45. | INFLUENZA |
| 46. | Flu |
| 47. | Insulin |
| 48. | Inteferon |
| 49. | Ipilimumab |
| 50. | IPV |
| 51. | Latanoprost |
| 52. | Leuprolide |
| 53. | Lorazepam |
| 54. | MANTOUX |
| 55. | Mening! |
| 56. | Methylergonovine |
| 57. | Natalizumab |
| 58. | Nivolumab |
| 59. | Obinutuzumab |
| 60. | OMALIZUMAB |
| 61. | PALIVIZUMAB |
| 62. | Panitumumab |
| 63. | PEGFILGRASTIM |
| 64. | Pegloticase |
| 65. | PENICILLIN |
| 66. | PEOFILGRASTIM |
| 67. | pertussis |
| 68. | Pertuzumab |
| 69. | Polatuzumab |
| 70. | Polio! |
| 71. | Proparacaine |
| 72. | RABIBS |
| 73. | Rabies |
| 74. | Ramucirumab |
| 75. | Rituximab |
| 76. | Romiplostim |
| 77. | TD! |
| 78. | Tdap! |
| 79. | Tetanus |
| 80. | Tocilizumab |
| 81. | Tuberc! |
| 82. | Typhoid |
| 83. | VINBLASTINE |

| 84. | Vinorelbine |
| --- | --- |
| 85. | Actemra |
| 86. | Adriamycin |
| 87. | Aranesp |
| 88. | Ativan |
| 89. | Avastin |
| 90. | Avonex |
| 91. | BEXSERO |
| 92. | Bicillin |
| 93. | BiCNU |
| 94. | Bleomycin |
| 95. | BOOSTRIX |
| 96. | Candin |
| 97. | Caverject |
| 98. | Cimzia |
| 99. | Cyramza |
| 100. | Doxil |
| 101. | Eligard |
| 102. | ENGERJX-B |
| 103. | Erbitux |
| 104. | Etoposide |
| 105. | Faslodex |
| 106. | FLUBLOK |
| 107. | FLUMIST |
| 108. | FLUZONE |
| 109. | GARDASIL |
| 110. | Gazyva |
| 111. | Halaven |
| 112. | HAVRIX |
| 113. | Humulin R |
| 114. | Imfinzi |
| 115. | Imogam |
| 116. | IMOVAX |
| 117. | INFANRIX |
| 118. | IPOL |
| 119. | Kadcyla |
| 120. | KINRIX |
| 121. | Krystexxa |
| 122. | Kyprolis |
| 123. | Latanoprost |
| 124. | Lucentis |

| | |
|---|---|
| 125. | MENACTRA |
| 126. | MENVEO |
| 127. | Methylergonovine |
| 128. | Navelbine |
| 129. | Neulast! |
| 130. | Nplate |
| 131. | Opdivo |
| 132. | PEDIARIX |
| 133. | PEDVAXHIB |
| 134. | Perjeta |
| 135. | Polivy |
| 136. | Prolia |
| 137. | Xgeva |
| 138. | Proparacaine |
| 139. | Rabavert |
| 140. | Recombivax! |
| 141. | Rituxan |
| 142. | Simponi |
| 143. | Soliris |
| 144. | Synagis |
| 145. | Tecentriq |
| 146. | TENIVAC |
| 147. | TWINRIX |
| 148. | TYPHIM |
| 149. | Tysabri |
| 150. | Vaqta |
| 151. | Vectibix |
| 152. | Vinblastine |
| 153. | Vitrase |
| 154. | Xgeva |
| 155. | Xolair |
| 156. | Yervoy |
| 157. | Zarxio |

## APPENDIX B: MANUFACTURER TERMS

| | |
|---|---|
| 1. | Manufacture! |
| 2. | Distribut! |
| 3. | Wholesal! |
| 4. | Dispens! |
| 5. | Accord |
| 6. | Akom |
| 7. | Alcorn |
| 8. | Alexion |
| 9. | Amgen |
| 10. | Amneal |
| 11. | Arbor |
| 12. | Astra! |
| 13. | Athenex |
| 14. | Auromedic! |
| 15. | Baxter |
| 16. | Biogen |
| 17. | Bluepoint |
| 18. | Breckenridge |
| 19. | Bristol |
| 20. | BMS |
| 21. | Reddy! |
| 22. | Eisai |

| | |
|---|---|
| 23. | Eli Lilly |
| 24. | Endo |
| 25. | Fresenius |
| 26. | Genentech |
| 27. | GlaxoSmithKline |
| 28. | Glenmark |
| 29. | Greenstone |
| 30. | GSK |
| 31. | Heritage |
| 32. | Hikma |
| 33. | Hollister |
| 34. | Horizon |
| 35. | J.O.M. **OR** J-O-M **OR** JOM |
| 36. | Lilly |
| 37. | Meitheal |
| 38. | Merck |
| 39. | Mylan |
| 40. | Nielsen |
| 41. | Pfizer |
| 42. | Pierre Fabre |
| 43. | Regeneron |
| 44. | Rising Pharm |
| 45. | Sagent |

| 46. | Sandoz |
|---|---|
| 47. | Sanofi |
| 48. | Sobi |
| 49. | Somerset |
| 50. | Stat-Trade |
| 51. | Sun |
| 52. | Teva |
| 53. | Tolmar |
| 54. | UCB |
| 55. | Valeant |
| 56. | Zydus |