# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA

JESSICA KRAFT, INDIVIDUALLY AND  )
AS PARENT OF MINORS L.K., S.K., and  )
O.K.; SHELLI SCHNEIDER,  )
INDIVIDUALLY AND AS PARENT OF  )
MINORS A.S and W.S.; ANNE BAILEY,  )
AS PARENT OF MINOR D.B.; AMY  )
LAVELLE, AS PARENT OF MINORS  )
Em.L. and El.L; ELIZABETH BEATON,  )
INDIVIDUALLY AND AS PARENT OF  )    No. 3:20-CV-121
MINOR M.B.; AMANDA AND TYRELL  )
FAUSKE, INDIVIDUALLY AND AS  )
PARENTS OF MINORS C.R.F and C.J.F.;  )    Hon. Peter D. Welte
JENNIFER REIN, INDIVIDUALLY; and  )
JESSICA BERG, AS PARENT OF MINORS  )
A.B. and S.B., individually and on behalf of  )
all others similarly situated,  )
    )
    Plaintiffs,  )
    )
    v.  )
    )
ESSENTIA HEALTH, INNOVIS  )
HEALTH, LLC d/b/a ESSENTIA  )
HEALTH, DAKOTA CLINIC  )
PHARMACY, LLC, JOHN DOE  )
MANUFACTURERS, and  )
JOHN DOE DISTRIBUTOR,  )
    )
    Defendants.  )

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL ESSENTIA HEALTH'S AND INNOVIS HEALTH, LLC'S PRODUCTION OF DOCUMENTS WITHHELD AS PRIVILEGED**

**TABLE OF CONTENTS**

I.      INTRODUCTION ....................................................................................................1

II.     BACKGROUND ....................................................................................................1

III.    LEGAL STANDARDS ...........................................................................................4

        A.      Privileges must be narrowly construed. ....................................................4

        B.      Essentia bears the burden of providing specific facts establishing each
                element of the asserted privileges and protections. ...................................5

IV.     CHOICE OF LAW ................................................................................................6

        A.      The peer review privileges generally. ......................................................6

                1.  Minnesota's peer review privilege. ................................................6

                2.  North Dakota's peer review privilege. ...........................................7

        B.      Under a choice of law analysis, the Minnesota peer review privilege
                should apply. ...........................................................................................8

V.      ARGUMENT ......................................................................................................13

        A.      PEER REVIEW PRIVILEGE: The privilege log indicates widespread
                application of the peer review privilege to non-privileged documents. ............13

                1.  Essentia has not met its burden to demonstrate that the withheld documents
                    are governed by the peer review privilege; the log reveals that many of the
                    withheld documents are not privileged. ...........................................13

                2.  Essentia has improperly asserted the peer review privilege over documents
                    with subject matter and recipients that are outside the scope of any peer review. 17

        B.      LEGAL PRIVILEGES: Essentia has not established that the withheld
                documents are protected by the attorney-client privilege or are work product. ...............22

                1.  Requirements of the Legal Privileges. ...........................................22

                2.  Essentia has not met its burden to establish the Legal Privileges. .................24

        C.      MEDICAL PRIVILEGES: Essentia improperly withheld documents on
                the basis of physician-patient privilege. ........................................26

VI.     CONCLUSION ...................................................................................................27

## TABLE OF AUTHORITIES

**Cases**                                                                                                                    **Page(s)**

*Afremov v. Sulloway & Hollis,*
   No. 09-03678, 2011 U.S. Dist. LEXIS 169748 (D. Minn. Dec. 2, 2011) ............................... 5

*Airheart v. Chicago and N. W. Transp. Co.*,
   128 F.R.D. 669 (D.S.D. 1989) ..................................................................................... 23

*Am. Fire & Cas. Co. v. Hegel*,
   847 F.3d 956 (8th Cir. 2017) ................................................................................... 9, 11

*Amaral v. St. Cloud Hosp.*,
   598 N.W.2d 379 (Minn. 1999) ....................................................................................... 12

*Baker v. Gen. Motors Corp.*,
   209 F.3d 1051 (8th Cir. 2000) ....................................................................................... 4

*Bharadwaj v. Mid Dakota Clinic, P.C.,*
   No. 16-cv-262, 2017 U.S. Dist. LEXIS 233609 (D.N.D. Mar. 9, 2017) ................................ 4

*Cornejo v. Mercy Hosp. & Med. Ctr.,*
   No. 12-cv-1675, 2014 U.S. Dist. LEXIS 129586 (N.D. Ill. Sept. 15, 2014) .................. 13, 16

*CSX Transp., Inc. v. Admiral Ins. Co.,*
   CASE NO. 93-132-Civ-J-10, 1995 U.S. Dist. LEXIS 22359 (M.D. Fla. July 20, 1995) ........ 5

*Degruy-Hampton v. Ochsner Clinic Found.*,
   No. 20-2417, 2021 U.S. Dist. LEXIS 114287 (E.D. La. June 18, 2021) ............................. 28

*Diversified Indus., Inc. v. Meredith*,
   572 F.2d 596 (8th Cir. 1997) ....................................................................................... 23

*Elkharwily v. Mayo Holding Co.*,
   No. 12-3062, 2014 U.S. Dist. LEXIS 195684 (D. Minn. June 2, 2014) ................................ 5

*Elliott v. Schlumberger Tech. Corp.,*
   No. 3:13-cv-79, 2017 U.S. Dist. LEXIS 229795 (D.N.D. Feb. 24, 2017) .......................... 5-6

*Ervin v. Howard Univ.*,
   445 F. Supp. 2d 23 (D. D.C. 2006) .................................................................................. 13

*Great W. Cas. Co. v. XTO Energy, Inc.,*
   No. 1:16-cv-387, 2019 U.S. Dist. LEXIS 797 (D.N.D. Jan. 3, 2019) .......................... 11, 12

*Hudock v. LG Elecs. U.S.A., Inc.*,

   No. 16-1220, 2020 U.S. Dist. LEXIS 54994 (D. Minn. Mar. 30, 2020) .............................. 12

*In re Fairview-University Med. Ctr.*,

   590 N.W.2d 150 (Minn. Ct. App. 1999) ........................................................................... 14

*In re VeroBlue Farms USA, Inc.,*

   Bankr. No. 18-01297, Adv. No. 19-09015, 2021 Bankr. LEXIS 1083 (Bankr. N.D. Iowa Apr. 22, 2021) ........................................................................................................................ 6

*Johnson v. Bd. of Pensions of the Evangelical Luthern Church*,

   No. 11-23, 2012 U.S. Dist. LEXIS 174230 (D. Minn. Sept. 5, 2012) ................................ 23

*Justice v. Banka,*

   No. 04850, 2014 Phila. Ct. Com. Pl. LEXIS 308 (Pa. Aug. 29, 2014) ................................ 13

*Kenna v. So-Fro Fabrics,*

   18 F.3d 623 (8th Cir. 1994) ................................................................................... 11, 12

*Kingman v. Dillard's, Inc.*,

   643 F.3d 607 (8th Cir. 2011) ........................................................................................ 4

*Kramer v. Ford Motor Co.*,

   No. 12-1149, 2016 U.S. Dist. LEXIS 178987 (D. Minn. Feb. 3, 2016) ........................ 11, 12

*Lawrence v. Rihm Family Cos.*,

   954 N.W.2d 597 (Minn. Ct. App. 2020) ..................................................................... 22-23

*Mitchell v. Dyncorp Int'l, LLC,*

   No. 3:11-cv-90, 2012 U.S. Dist. LEXIS 195726 (D.N.D. June 21, 2012) ........................... 11

*Morrill v. Becton, Dickinson & Co.,*

   No. 81-112C(C), 1981 U.S. Dist. LEXIS 17718 (E.D. Mo. Sept. 28, 1981) ........................ 10

*NLRB v. Npc Int'l, Inc.*,

   No. 13-0010, 2017 U.S. Dist. LEXIS 23138 (W.D. Tenn. Feb. 16, 2017) ....................... 5, 27

*Nodak Mut. Ins. Co. v. Case New Holland, LLC,*

   No. 3:14-cv-86, 2015 U.S. Dist. LEXIS 194004 (D.N.D. June 16, 2015) ........................ 6, 23

*Nodak Mut. Ins. Co. v. Wamsley*,

   2004 ND 174, 687 N.W.2d 226 ................................................................................. 9, 10

*Powers v. Mem'l Sloan Kettering Cancer Ctr.,*

   20-cv-2625, 2020 U.S. Dist. LEXIS 187204 (S.D.N.Y. Oct. 8, 2020) ............................... 16

*Quimbey v. Cmty. Health Sys. Prof'l Servs. Corp.,*
No. 14-cv-0559, 2017 U.S. Dist. LEXIS 193823 (D.N.M. Nov. 22, 2017) .......................... 16

*RTC Indus. v. Fasteners for Retail, Inc.,*
No. 17 C 3595, 2019 U.S. Dist. LEXIS 174737 (N.D. Ill. Oct. 8, 2019) .............................. 5

*St. Paul Reinsurance Co. v. Commercial Fin. Corp.,*
197 F.R.D. 620 (N.D. Iowa 2000) .................................................................................. 28

*State v. Castillo-Alvarez,*
836 N.W.2d 527 (Minn. 2013) ...................................................................................... 10

*State v. Expose,*
872 N.W.2d 252 (Minn. 2015) ........................................................................................ 5

*Trammel v. United States,*
445 U.S. 40 (1980) ........................................................................................................ 4

*Trinity Med. Ctr. v. Holum,*
544 N.W.2d 148 (N.D. 1996) ............................................................................... 5, 12, 15

*Whirlpool Corp. v. Ritter,*
929 F.2d 1318 (8th Cir. 1991) ........................................................................................ 9

**Statutes**

Minn. Stat. § 145.61 ................................................................................................. 7, 14
Minn. Stat. § 145.64 ................................................................................................. 7, 14
N.D. Cent. Code § 23-34-01 ................................................................................. 7, 8, 14
N.D. Cent. Code § 23-34-02 ........................................................................................ 8
N.D. Cent. Code § 23-34-03 ........................................................................................ 8

**Rules**

Fed. R. Civ. P. 26 ....................................................................................................... 5
Fed. R. Civ. P. 37 ...................................................................................................... 28
N.D. R. Evid. 502 ...................................................................................................... 22

## I.        INTRODUCTION

Essentia Health and Innovis Health, LLC (collectively, "Essentia") produced their first privilege log eight months ago. Since then, there have been four orders from three different courts touching upon the scope of the peer review privilege and the requirements of a privilege log. Essentia has made four attempts to serve a privilege log that complies with the Federal Rules of Civil Procedure and those court orders (with several partial iterations in each round). Ultimately, Essentia produced a log claiming a litany of blanket protections over more than 8,100 documents – an amount far surpassing the mere 130 documents Essentia has produced to date.

For the reasons discussed in this brief, Plaintiffs respectfully request that the Court order Essentia to produce the documents it has withheld on the basis of its unsupported and unfounded privilege assertions and award Plaintiffs their fees and expenses in litigating disputes over Essentia's privilege assertions.

## II.        BACKGROUND

Essentia produced its first privilege log – containing just three categorial entries – on May 11, 2021. After Plaintiffs' request for more detail, Essentia produced its first supplemental privilege log on May 17, 2021. That supplement contained just six categorical entries. Both logs lacked details about dates, senders, recipients, subject matter, and the documents withheld. The parties met and conferred, and Plaintiffs ultimately disputed the adequacy of the supplemental log with the Court.

On August 2, 2021, after briefing by the parties, the Court ordered Essentia to produce a detailed, document-by-document privilege log. ECF No. 79 (the "Privilege Log Order"). Essentia then unsuccessfully challenged the Privilege Log Order with the District Court Judge and Eighth Circuit Court of Appeals and repeatedly sought stays of the Court's order, requiring several rounds

of briefing.[1]

Even after this Court's Privilege Log Order was affirmed and Essentia exhausted its options for review, Essentia produced yet another deficient privilege log, describing subject matter with conclusory assertions that the privilege applied. Essentia refused to add detail at Plaintiffs' request, and Plaintiffs were again forced to raise Essentia's privilege log deficiencies with the Court.

On October 14, 2021, the Court again ordered Essentia to supplement its privilege log, this time ordering Essentia to "provide additional detail, specific to each document over which it claims the privilege," regarding each document's subject matter. ECF No. 129, p. 2 ("Second Privilege Log Order"). The Court noted: "In the absence of additional detail, plaintiffs might be forced to challenge the privilege claim as to every document. The court would prefer to avoid in camera review of every document over which Essentia claims peer review privilege." *Id.*

Essentia then began to produce supplemental privilege logs periodically, adding subject matter descriptions with each updated version. This motion addresses Essentia's most recent log, sent to Plaintiffs on November 30, 2021, although that log is still missing Bates numbers for certain entries.[2] **Exhibit 1**.[3]

---

[1] *See* ECF Nos. 83-84 (motion to stay Privilege Log Order); ECF Nos. 86 and 87 (objection to and notice of appeal of Privilege Log Order and corrected docket entry); ECF No. 105 (Magistrate Judge order denying Essentia's request for stay ("Stay Order")); ECF No. 106 (objection to and notice of appeal of Stay Order); ECF No. 109 (District Court Judge order denying appeal of Privilege Log Order and finding appeal of Stay Order moot); ECF No. 110 (notice of appeal to Eighth Circuit); ECF No. 111 (correction to ECF No. 110, notice of interlocutory appeal to Eighth Circuit); *In re: Essentia Health, et al*, No. 21-3045 (8th Cir.), 9/10/2021 Petition for Writ of Mandamus, 9/10/2021 Motion (Expedited) to Stay Court's Order, 9/20/21 Court's denial of petition for writ of mandamus.

[2] In this brief, Plaintiffs reference the Excel row numbers for the example privilege log entries that do not yet have Bates numbers.

[3] For certain entries, there are too many recipients to be displayed in a legible PDF of the privilege log. *E.g.,* EHPRIV000429 (over 450 recipients, including group email addresses). Plaintiffs will submit the privilege log in Excel format at the Court's request.

2

As reflected in Essentia's latest privilege log, Essentia made little effort to comply with the Court's Second Privilege Log Order. Essentia merely added additional boilerplate language to its subject-matter descriptions. For the privilege log's first 10 rows, for example, Essentia made only the following cursory changes (additions are reflected in **bold**, deletions reflected in ~~stricken-through font~~):

| Bates # | Subject Matter Description |
| --- | --- |
| EHPRIV00040 | SBAR regarding **guidance relative to** investigation and quality assurance |
| EHPRIV000029 | Memorandum regarding **guidance relative to** investigation and quality assurance |
| EHPRIV000037 | Memorandum regarding **update relative to** investigation and quality assurance |
| EHPRIV00140 | Draft SBAR regarding **update relative to** investigation and quality assurance |
| EHPRIV00111 | Draft request for guidance ~~regarding~~ **relative to** investigation and quality assurance |
| EHPRIV00229 | Document regarding **financials relative to** investigation and quality assurance |
| EHPRIV00151 | Draft spreadsheet regarding **patient data relative to** investigation and quality assurance |
| EHPRIV00062 | Draft ~~document regarding~~ **communications plan relative to** investigation and quality assurance |
| EHPRIV00116 | Memorandum regarding **update relative to** investigation and quality assurance |
| EHPRIV00107 | Draft memorandum regarding **update relative to** investigation and quality assurance |

Nevertheless, for many of the privilege log entries, it is apparent from these limited descriptions and the parties to the documents that the asserted privileges do not apply.

Despite multiple opportunities (and court orders) over the past eight months, Essentia has failed to support its privilege assertions and Plaintiffs now substantively challenge them. Plaintiffs respectfully request that the Court order that Essentia has failed to establish that its privilege assertions apply and/or has waived the asserted privileges through unjustified delay,

3

inexcusable conduct, and/or bad faith. Plaintiffs also seek their fees and costs incurred in the time spent on the privilege log contests given Essentia's willful failure to comply with the rules or the Court's orders. Plaintiffs have dedicated significant resources litigating these issues in an attempt to get to substantive discovery in the year since serving requests for the production of documents, and yet production remains stalled as a result of Essentia's obstruction.

### III.    LEGAL STANDARDS

#### A.  Privileges must be narrowly construed.

The Supreme Court recognized more than 40 years ago that "exclusionary rules and privileges contravene the fundamental principle that the public . . . has a right to every man's evidence." *Trammel v. United States*, 445 U.S. 40, 50 (1980). Accordingly, privileges "must be strictly construed and accepted only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." *Id.* (citations and internal quotations omitted).

Federal courts are cautioned against creating or expanding privileges, particularly those grounded in state law. *See Bharadwaj v. Mid Dakota Clinic, P.C.*, No. 16-cv-262, 2017 U.S. Dist. LEXIS 233609, at *6 (D.N.D. Mar. 9, 2017); *Kingman v. Dillard's, Inc.*, 643 F.3d 607, 615 (8th Cir. 2011) ("our role in diversity cases is to interpret state law, not to fashion it.") (internal quotations and citation omitted).[4]

Likewise, as the North Dakota Supreme Court stated in addressing the peer review privilege in particular: "Evidentiary privileges must be narrowly construed because they are in

---

[4] In a federal diversity action alleging only state-law claims, the peer review, attorney-client, and medical privileges are based on state law; the work product protection is based on federal common law. *See Baker v. Gen. Motors Corp.*, 209 F.3d 1051, 1057, 1059 (8th Cir. 2000).

derogation of the search for truth. . . . We must be particularly vigilant against extending the scope of the [peer review] privilege beyond that warranted by the purpose expressed in the language of the statute." *Trinity Med. Ctr. v. Holum*, 544 N.W.2d 148, 152, 154 (N.D. 1996). The same is true under Minnesota law. *See State v. Expose*, 872 N.W.2d 252, 260 (Minn. 2015) ("We have long construed evidentiary privileges narrowly.").

**B. Essentia bears the burden of providing specific facts establishing each element of the asserted privileges and protections.**

Rule 26(b)(5)(A)(ii) requires that parties withholding documents on the basis of privilege "describe the nature of the documents . . . and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."[5]

Essentia bears the burden "to establish each requisite element of the privilege or protection" it asserts. *Elkharwily v. Mayo Holding Co.*, No. 12-3062, 2014 U.S. Dist. LEXIS 195684, at *5-6 (D. Minn. June 2, 2014) (citing *In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 925 (8th Cir. 1997)) (other citations omitted). Essentia must "establish a factual basis for the privilege

---

[5] *See also, e.g., Afremov v. Sulloway & Hollis*, No. 09-03678, 2011 U.S. Dist. LEXIS 169748, at *115-16 (D. Minn. Dec. 2, 2011) ("cursory" descriptions "may be judged deficient"; "skeletal" descriptions insufficient) (citations omitted); *RTC Indus. v. Fasteners for Retail, Inc.*, No. 17 C 3595, 2019 U.S. Dist. LEXIS 174737, at *4-5 (N.D. Ill. Oct. 8, 2019) (descriptions "must be sufficiently detailed to allow the court to determine whether the discovery opponent has discharged its burden of establishing" the privilege); *CSX Transp., Inc. v. Admiral Ins. Co.*, CASE NO. 93-132-Civ-J-10, 1995 U.S. Dist. LEXIS 22359, at *11 (M.D. Fla. July 20, 1995) (conclusory descriptions do not suffice); *NLRB v. Npc Int'l, Inc.*, No. 13-0010, 2017 U.S. Dist. LEXIS 23138, at *24-26 (W.D. Tenn. Feb. 16, 2017) (descriptions like "Dr.'s notes," "Penley," "meeting on voids," "NPC," "subpoena," "employee history," "release," and "workman's comp." "are wholly inadequate to enable the Court to determine whether the items were properly withheld.") (citing *Ypsilanti Cmty. Utils. Auth. v. Meadwestvaco Air Sys. LLC*, No. 07-CV-15280, 2009 U.S. Dist. LEXIS 99707 (E.D. Mich. Oct. 27, 2009) (descriptions such as "[s]ignatures," and "Life Insurance for Joe Lackner" are "completely insufficient") and *In re Veiga*, 746 F. Supp. 2d 27, 43 (D.D.C. 2010) ("[T]he [party asserting the privilege] offers nothing in addition to an empty invocation of the relevant legal standard, asserted upon its own *ipse dixit* that these communications reflect attorney mental impressions and legal conclusions in connection with ongoing litigations.")).

through competent evidence," such as through a detailed privilege log and explanatory affidavit. *Elliott v. Schlumberger Tech. Corp.*, No. 3:13-cv-79, 2017 U.S. Dist. LEXIS 229795, at *6 (D.N.D. Feb. 24, 2017); *Nodak Mut. Ins. Co. v. Case New Holland, LLC*, No. 3:14-cv-86, 2015 U.S. Dist. LEXIS 194004, at *15 (D.N.D. June 16, 2015) (citing *Hollins v. Powell,* 773 F.2d 191, 196 (8th Cir. 1985); *In re Zurn Pex Plumbing Prods. Liab. Litig.*, No. 08-1958, 2009 U.S. Dist. LEXIS 37837 (D. Minn. May 1, 2009)).

Continual failure to support assertions of privilege may result in waiver of the privilege, particularly in cases of "unjustified delay, inexcusable conduct, or bad faith." *EEOC v. BDO USA, L.L.P.*, 876 F.3d 690, 697 (5th Cir. 2017) (citing *United States v. Philip Morris, Inc.*, 347 F.3d 951, 954 (D.C. Cir. 2003)); *see, e.g., In re VeroBlue Farms USA, Inc.*, Bankr. No. 18-01297, Adv. No. 19-09015, 2021 Bankr. LEXIS 1083, at *6 (Bankr. N.D. Iowa Apr. 22, 2021).

## IV.      CHOICE OF LAW

Essentia has asserted both the Minnesota and North Dakota peer review privileges. In prior briefs regarding privilege logging requirements, the parties agreed that a choice of law analysis was unnecessary because there were no conflicts of law on that narrow issue. The privileges do have substantive differences, however. As discussed below, Essentia has not supported the application of either state's privilege to the withheld documents. Nonetheless, if a choice of law analysis is required, Minnesota's privilege should apply.

### A. The peer review privileges generally.

#### 1. Minnesota's peer review privilege.

Minnesota's peer review privilege protects "data and information acquired by a review organization, in the exercise of its duties and functions, or by an individual or other entity acting

at the direction of a review organization. . . ." Minn. Stat. § 145.64, Subd. 1(a).[6] Such information "shall not be disclosed to anyone except to the extent necessary to carry out one or more of the purposes of the review organization. . . ." *Id.*

A "Review Organization" is "a committee whose membership is limited to professionals, administrative staff, and consumer directors . . . established by . . . a hospital, a clinic, . . . [or] an organization of professionals from a particular area or medical institution . . . to gather and review information relating to the care and treatment of patients for the purposes of" an enumerated list of safety quality assurance purposes, including, for example, "evaluating and improving the quality of health care" and "developing and publishing guidelines designed to improve the safety of care provided to individuals." *Id.* at § 145.61, Subd. 5.

"Information, documents or records otherwise available from original sources shall not be immune from discovery or use in any civil action merely because they were presented during proceedings of a review organization . . . ." *Id.* at § 145.64, Subd. 1(a).

### 2.   North Dakota's peer review privilege.

North Dakota's peer review privilege protects "Peer review records," i.e., "[d]ata, information, reports, documents, findings, compilations and summaries, testimony, and any other records generated by, acquired by, or given to a peer review organization[7] as a part of any professional peer review." N.D. Cent. Code § 23-34-01(4)(a). It also protects "[c]ommunications relating to a professional peer review" between peer review organization members, staff, and

---

[6] Minnesota law also protects "[t]he proceedings and records of a review organization . . . in any civil action against a professional arising out of the matter or matters which are the subject of consideration by the review organization." *Id.* Because this action is not "against a professional," *see id.* at § 145.61, Subd. 2, that provision is inapplicable here.

[7] "Peer review organization[s]" include, among others, hospitals, clinics, pharmacies, and certain committees. N.D. Cent. Code § 23-34-01(1), (3).

professional peer review participants. *Id.*

"Professional peer review" means "all procedures a peer review organization uses or functions it performs to monitor, evaluate, and take action to review the medical care provided to patients" including "procedures or functions to":

> a. Evaluate and improve the quality of health care;
>
> b. Obtain and disseminate data and statistics relative to the treatment and prevention of disease, illness, or injury;
>
> c. Develop and establish guidelines for medical care and the costs of medical care;
>
> d. Provide to other affiliated or nonaffiliated peer review organizations information that is originally generated within the peer review organization for the purposes of professional peer review;
>
> e. Identify or analyze trends in medical error, using among other things a standardized incident reporting system; and
>
> f. Provide quality assurance.

*Id.* at § 23-34-01(5).

"[O]riginal patient source documents" are not peer review records. *Id.* at § 23-34-01(4)(b). "Records gathered from an original source that is not a peer review organization" are not peer review records. *Id.* at § 23-34-03(1)(a). "Peer review records . . . may be used by a peer review organization . . . only for conducting a professional peer review." *Id.* at § 23-34-02(1).

### B. Under a choice of law analysis, the Minnesota peer review privilege should apply.

Both states' privileges share similarities. They both exempt from discovery certain data and information acquired by a peer review organization. Neither state's privilege extends to original source documents or documents used for something other than the peer review. And neither state's privilege protects peer review "proceedings" in a case against a healthcare entity or pharmacy.

8

The two laws differ in other regards, however. For example, Minnesota's privilege limits a peer review organization to a specific "committee," whereas North Dakota's privilege may apply more broadly to the members of a healthcare organization (so long as the shielded materials are "peer review records" part of a "professional peer review"). North Dakota's law protects peer review "records" in addition to the "data and information" that both states' laws protect. (Minnesota law only shields such "records" in actions "against a professional," i.e., a person licensed to practice pharmacy or "a healing art.") North Dakota shields information "generated by, acquired by, or given to" a peer review organization. Minnesota shields only information "acquired by" a peer review organization.

In the event that this Court finds the above sufficient to generate a conflict, a choice of law analysis reflects that the Minnesota privilege should apply.

When jurisdiction is based on diversity, the forum state's choice of law analysis applies. *Whirlpool Corp. v. Ritter*, 929 F.2d 1318, 1320 (8th Cir. 1991). North Dakota employs a two-prong choice of law analysis that considers "all of the relevant contacts which might logically influence the decision of which law to apply" and Leflar's "choice-influencing considerations," i.e., "predictability of results, maintenance of interstate and international order, simplification of the judicial task, advancement of the forum's governmental interests, and application of the better rule of law." *Am. Fire & Cas. Co. v. Hegel*, 847 F.3d 956, 959 (8th Cir. 2017); *see also Nodak Mut. Ins. Co. v. Wamsley*, 2004 ND 174, 687 N.W.2d 226, 231 (applying the *Restatement (Second) Conflict of Laws'* "most significant relationship" approach).

"[N]ot all issues arising out of a given claim need to be decided by the same state's law. . . . [T]he determination of which state's law should be applied in a case may depend on what issue is being considered." *Nodak Mut. Ins. Co.*, 2004 ND 174, ¶ 10, 687 N.W.2d 226 (internal

9

citations and quotations omitted). Here, the relevant analysis focuses on the privileges at issue.

The first step is to consider "all of the relevant contacts which might logically influence the decision of which law to apply." Those courts that consider relevant contacts (sometimes referred to as "significant contacts" or "significant relationship") find that "the state whose privilege rule applies is ordinarily that where the communication sought to be protected took place, i.e., where an oral interchange between persons occurred, where a written statement was received, or where an inspection was made of a person or thing." *See, e.g., Morrill v. Becton, Dickinson & Co.*, No. 81-112C(C), 1981 U.S. Dist. LEXIS 17718, at *8 (E.D. Mo. Sept. 28, 1981) (citing Restatement Second, § 139(1)) (applying significant contacts test, adopted by Missouri courts); *State v. Castillo-Alvarez*, 836 N.W.2d 527, 539 (Minn. 2013) ("Applying the most significant relationship approach . . . the state where a privileged communication occurs is the state with the most significant relationship to the communication unless there is a prior relationship between the parties.").

Here, Essentia is a Minnesota corporation with its principal place of business in Minnesota and Minnesota corporate headquarters. ¶ 75.[8] Defendant Innovis Health LLC is a Delaware company with its principal place of business in North Dakota. ¶ 78. Minnesota-based Essentia Health is Innovis's parent company and sole LLC member, ¶ 82, and Minnesota-based Essentia has possession, custody, and control over the documents at issue. Further, Plaintiffs reviewed each individual in the first 125 rows of Essentia's privilege log to estimate the locations of the parties to the communications in the privilege log. A majority of those

---

[8] Citations to ¶ __ refer to paragraphs of the Second Amended Complaint, ECF No. 119. The case is brought on behalf of class members from both Minnesota and North Dakota under both states' laws related to the administration of pharmaceuticals in both states, but the location of the Plaintiffs and the location of the injury are not central to the choice-of-law analysis as it concerns privilege.

individuals appear to be employees of Minnesota-based Essentia; likewise, a majority appear to be based in Minnesota.[9] The "relevant contacts" in this case are thus primarily in Minnesota.

The Leflar factors also support the application of Minnesota law. First, "[p]redictability of results plays a more important role when the claims are contractual in nature compared to tort claims." *Mitchell v. Dyncorp Int'l, LLC*, No. 3:11-cv-90, 2012 U.S. Dist. LEXIS 195726, at *19 (D.N.D. June 21, 2012) (citing *Kenna v. So-Fro Fabrics,* 18 F.3d 623, 626 (8th Cir. 1994)). Essentia, with operations in both Minnesota and North Dakota, "could anticipate being sued under either North Dakota or Minnesota law." *Kenna*, 18 F.3d at 626. But Essentia, a Minnesota corporation with Minnesota headquarters, would anticipate an increased likelihood of being subject to Minnesota laws. And with corporate offices in and communications originating from Minnesota, Essentia should reasonably expect it would be protected by Minnesota privileges. *See, e.g., Kramer v. Ford Motor Co.*, No. 12-1149, 2016 U.S. Dist. LEXIS 178987, at *9 (D. Minn. Feb. 3, 2016). Thus, this factor favors the application of Minnesota's privilege

With regard to the second and third factors, "[m]aintenance of interstate order is not an issue and the Court will have no difficulty applying the law of either state." *See Great W. Cas. Co. v. XTO Energy, Inc.*, No. 1:16-cv-387, 2019 U.S. Dist. LEXIS 797, at *13 (D.N.D. Jan. 3, 2019). If anything, "interstate order [is] aided by applying the law of the state with the most significant contacts." *Am. Fire & Cas. Co.*, 847 F.3d at 960. These factors thus support the application of Minnesota law, too.

Fourth, regarding a forum's governmental interests, both states have an interest in "protecting [their] residents who are victims of torts." *See Kenna*, 18 F.3d at 627. But "[c]onsumer-

---

[9] Plaintiffs' estimate looked at each individual's location and did not account for the prevalence of certain individuals across multiple communications. For example, Essentia's Minnesota-based Associate General Counsel was a party to nearly 80 of the first 125 entries.

protection statutes focus on the behavior of the defendant, and therefore it is appropriate to apply law from where the defendant has the most contacts" – here, that is Minnesota. *See Hudock v. LG Elecs. U.S.A., Inc.*, No. 16-1220, 2020 U.S. Dist. LEXIS 54994, at *30 (D. Minn. Mar. 30, 2020) (citation omitted).

With regard to the peer review privilege, in particular, the purpose of both states' privileges is to improve the quality of patient care through open peer review processes. *E.g., Trinity Med. Ctr.*, 544 N.W.2d at 154; *Amaral v. St. Cloud Hosp.*, 598 N.W.2d 379, 386 (Minn. 1999). With policy interests aligned, the government interest is best served by promoting predictability through applying the privilege of the state with the most significant contacts, Minnesota. *See, e.g., Kramer,* 2016 U.S. Dist. LEXIS 178987, at *9 (applying same choice-of-law analysis and adopting the parties' reasoning that it would "further[] the state's governmental interest in providing predictability on a privilege decision to [apply that state's law to] a document that belongs to" that state's corporation and was created and communicated in that state). The fourth factor thus favors Minnesota.

Finally, with regard to the last Leflar factor, "[c]ourts rarely give consideration to which state has 'the better rule of law' as sometimes different laws are just different." *Great W. Cas. Co.*, 2019 U.S. Dist. LEXIS 797, at *13. That said, with both states' explicit goals of protecting patient care through the privileges, and their direction to narrowly construe those privileges, Minnesota's narrower privilege is the better rule of law.

Accordingly, Minnesota's peer review privilege should apply.[10]

---

[10] Plaintiffs do not envision an outcome-determinative conflict with other state-law privileges, such as medical or attorney-client privileges, but should a conflict arise, Minnesota law should be applied there, too.

12

## V.    ARGUMENT

### A.  PEER REVIEW PRIVILEGE: The privilege log indicates widespread application of the peer review privilege to non-privileged documents.

Essentia has improperly made blanket assertions of peer review privilege over nearly all documents relevant to this case. The peer review privilege is not so broad.

### 1.  Essentia has not met its burden to demonstrate that the withheld documents are governed by the peer review privilege; the log reveals that many of the withheld documents are not privileged.

Essentia's position appears to be that any document created by any health care employee for any purpose – so long as it tangentially relates to an adverse event – is inherently privileged, and an invocation of the privilege itself is self-supporting. It is not:

> Only those statements made in a *peer review process* are non-discoverable; a physician's observations of events in the Hospital, opinions on patient care and the skills of colleagues, or documentation of problems or concerns are not privileged, except insofar as any reports of such observations, opinions, or documentation are submitted to a peer review body. However broadly a 'peer review body' might be defined by the statute, there must be actual and functional elements of 'peer review' being performed for the Act to apply.

*Ervin v. Howard Univ.,* 445 F. Supp. 2d 23, 26-27 (D.D.C. 2006) (emphasis in original). Documents used to advise patients, minimize public relations damage, for damage control, or to make legal decisions are beyond peer review activity and lose their peer review protection. *Justice v. Banka*, No. 04850, 2014 Phila. Ct. Com. Pl. LEXIS 308, at *15-17 (Pa. Aug. 29, 2014). "Documents created in the ordinary course of business, to weigh potential liability risk, or for later corrective action . . . are not privileged, even if they are later used . . . in a peer-review process." *Cornejo v. Mercy Hosp. & Med. Ctr.*, No. 12-cv-1675, 2014 U.S. Dist. LEXIS 129586, at *6 (N.D. Ill. Sept. 15, 2014).

Indeed, this Court has already rejected Essentia's overbroad reading of the privileges. In

13

the Privilege Log Order, the Court declined to "interpret either North Dakota or Minnesota law as protecting . . . every internal document concerning an adverse event in a health care facility." ECF No. 79, p. 12. The District Court Judge upheld that decision, ECF No. 109, and the Eighth Circuit Court of Appeals denied Essentia's petition for writ of mandamus, *In re Essentia Health, et al*, 21-3045 (8th Cir. Sept. 20, 2021). Essentia's privilege assertions ignore these rulings.

Essentia's privilege assertions also ignore the plain language of both states' statutes. The privileges make clear that they are limited to certain formal quality assurance functions. Minnesota law limits the privilege to materials in exercise of certain "duties" and "functions" by a "review organization" which is "a committee" of professionals meeting certain peer review requirements. Minn. Stat. §§ 145.64, Subd. 1 and 145.61, Subd. 5. North Dakota law limits a "professional peer review" to particular "procedures" and "functions" used to "monitor, evaluate, and take action" and limits "peer review records" to those used "only for conducting a professional peer review." N.D. Cent. Code §§ 23-34-01(5), 23-34-02(1). Neither state's privilege applies to original source documents or documents used outside of the peer review. Minn. Stat. § 145.64, Subd. 1(a); N.D. Cent. Code §§ 23-34-01(4)(b), 23-34-03(1)(a), and 23-34-02(1). Essentia has made no effort to support the existence or scope of this peer review process or identify the members of the purported peer review organization.

Both Minnesota and North Dakota courts have explicitly recognized the need to narrowly interpret these privileges. In Minnesota, "[t]he peer review statute serves 'the strong public interest in improving the quality of health care.'" *In re Fairview-University Med. Ctr.*, 590 N.W.2d 150, 153 (Minn. Ct. App. 1999) (quoting *In re Parkway Manor Healthcare Ctr.*, 448 N.W.2d 116, 118-19 (Minn. App. 1989)). "Courts should not interpret a statute to create a privilege going beyond the statute's purpose, when an equally plausible construction will create a privilege which,

14

although narrower, serves the statute's purpose." *Id.*

Likewise, the North Dakota Supreme Court stated: "Evidentiary privileges must be narrowly construed because they are in derogation of the search for truth. . . . **We must be particularly vigilant against extending the scope of the [peer review] privilege beyond that warranted by the purpose expressed in the language of the statute.**" *Trinity Med. Ctr.*, 544 N.W.2d at 152, 154 (emphasis added). The court noted that the public purpose of "open discussions and candid self-analysis in the peer review process" to facilitate quality care is not served by an overbroad application of the privilege:

> The privilege must not be permitted to become a shield behind which a physician's incompetence, impairment, or institutional malfeasance resulting in medical malpractice can be hidden from parties who have suffered because of such incompetence, impairment, or malfeasance.

*Id.* ("agree[ing] with the rationale expressed by the Supreme Court of Rhode Island in *Moretti v. Lowe*, 592 A.2d 855, 857-858 (R.I. 1991)"). Yet Essentia withholds thousands of documents relevant to an adverse event that affected tens of thousands of patients, some of which documents were shared among thousands of individuals, with only a rote assertion of privilege in support.

To meet its burden to withhold documents on the basis of peer review privilege, Essentia must establish the existence and scope of the peer review, the peer review organization, and that the documents are peer review records, e.g.:

- the dates of the peer review;

- the members of the peer review organization;

- the subject matter and scope of the peer review;

- that the withheld documents are the type of "data and information" governed by the peer review privilege;

- that the withheld documents were acquired by peer review members in the exercise of their peer review duties;

- that the withheld documents were created or provided to the peer review organization solely for the purpose of the peer review;

- that the withheld documents were *not* used for purposes other than the peer review process; and

- that the withheld documents are *not* original source documents, e.g., in Essentia's possession, custody, or control from sources outside of the peer review.[11]

Instead, Essentia's privilege log repeats a boilerplate, conclusory statement that each withheld document is "relative to investigation and quality assurance."[12] Essentia has failed to meet its burden to establish that either state's peer review privilege applies to the withheld documents.

---

[11] *Supra*, § IV.A. *See also, e.g., Quimbey v. Cmty. Health Sys. Prof'l Servs. Corp.*, No. 14-cv-0559, 2017 U.S. Dist. LEXIS 193823, at *7 (D.N.M. Nov. 22, 2017) (The party invoking the privilege "must establish that the data or information was 'generated exclusively for peer review and for no other purpose' and that the 'opinions were formed exclusively as a result of peer review deliberations.'") (citations omitted); *Powers v. Mem'l Sloan Kettering Cancer Ctr.*, 20-cv-2625, 2020 U.S. Dist. LEXIS 187204, at *6-7 (S.D.N.Y. Oct. 8, 2020) (requiring "further assurance that Defendants have properly asserted New York's peer review privilege [through] an affidavit indicating (1) whether Defendants have an official review procedure in place, and if so, providing a description of the procedure, (2) whether withheld statements or reports were made during a review procedure and (3) whether the review procedure was conducted as part of the evaluation of an individual physician."); *Cornejo v. Mercy Hosp. & Med. Ctr.*, No. 12-cv-1675, 2014 U.S. Dist. LEXIS 129586, at *5-9 (N.D. Ill. Sept. 15, 2014) (the privilege protects documents "generated specifically for the use of a peer-review committee"; it "does not protect against disclosure of information generated before a peer-review process begins or after it ends"; "Defendant bears the burden of establishing that the privilege applies . . . by submitting the withheld documents for *in camera* inspection or by submitting affidavits setting forth facts sufficient to establish the applicability of the Act to the withheld documents.").

[12] Below, Plaintiffs identify several example privilege log entries. Nearly each entry's subject matter description ends with "relative to investigation and quality assurance." To streamline Plaintiffs' citations, that boilerplate language has been omitted from the parentheticals.

**2. Essentia has improperly asserted the peer review privilege over documents with subject matter and recipients that are outside the scope of any peer review.**

The peer review privilege is limited to those documents that are part of a formal "peer review" and excludes original source documents. Essentia has not offered any support that this privilege applies or the scope of the privilege, *supra*. And the little information Essentia has provided makes clear that it has improperly and indiscriminately applied the privilege.

Essentia has asserted the peer review privilege over documents that are clearly outside of a peer review, including documents concerning fiscal impact[13], financials[14], and financial results[15], call center scripts[16], public communication plans[17], litigation[18], social media[19],

---

[13] *E.g.,* EHPRIV000379 ("Email exchange regarding potential fiscal impact and revaccination . . ."); EHPRIV000797 (same); EHPRIV001122 ("Email exchange regarding fiscal impact. . ."); EHPRIV004814 ("Screenshot regarding potential fiscal impact. . ."); EHPRIV000389 ("Screenshot regarding potential fiscal impact and revaccination . . ."); EHPRIV006130 (same).

[14] *E.g.,* EHPRIV000229 ("Document regarding financials…").

[15] *E.g.,* Row 7598 ("Spreadsheet regarding financial results. . ."); Row 7599 ("Spreadsheet regarding potential financial results. . .").

[16] *E.g.,* EHPRIV000567 ("Draft call center script. . ."); EHPRIV001036 (same).

[17] *E.g.,* Row 6481 ("Draft public communication . . ."); Row 6551 ("Document regarding draft public communication plan . . ."); 1538 ("Email exchange regarding public communications. . ."); 0692 ("Email exchange regarding public communications plan . . . ).

[18] *E.g.,* Row 6762 ("Email exchange regarding relevant communications and documentation relative to investigation and quality assurance, as well as class litigation"); EHPRIV000150 ("Draft memorandum regarding update relative to investigation and quality assurance, as well as class litigation"); EHPRIV000444 ("Email exchange regarding medication storage relative to investigation and quality assurance, as well as class litigation").

[19] *E.g.,* Row 6986 ("Document regarding social media data. . ."); Row 7079 ("Screenshot from social media . . ."); Row 6429 ("Screenshot from social media relative to investigation and quality assurance and class litigation"); EHPRIV000727 ("Screenshot of social media post regarding class litigation"); EHPRIV000687 (same).

17

correspondence to patients and payers[20], patient notification[21], media statements[22], unspecified training videos[23], training for revaccination[24], and training for patient data[25].

Essentia asserted privilege over documents shared with individuals who are plainly outside of any peer review organization (notwithstanding that Essentia has failed to establish the existence of or identify the members of a peer review organization in the first place). Parties to the documents include various third-party public relations (PR) consultants,[26] an unnamed individual with a Minnesota public school email address,[27] "Amgen Medical Information,"[28] an

---

[20] *E.g.,* EHPRIV000987 ("Email exchange regarding documentation of patient correspondence. . ."); EHPRIV001136 ("Email exchange regarding patient correspondence regarding potential temperature excursion. . ."); EHPRIV000668 ("Draft correspondence to payers. . ."); EHPRIV000984 ("Email exchange regarding patient correspondence. . .").

[21] *E.g.,* EHPRIV001134 ("Draft patient notification letters. . ."); EHPRIV000682 ("Email exchange regarding patient notification letters and communications . . .").

[22] *E.g.,* EHPRIV006111 ("Email exchange regarding draft media statement on medication storage and revaccination. . .); Row 6641 ("Email exchange regarding draft media statement . . . "); EHPRIV006364 ("Draft media statement. . ."); Row 6500 (same); Row 6529 (same); EHPRIV006365 ("Screenshot from draft media statement. . . ").

[23] *E.g.,* EHPRIV002867 (Email exchange regarding training videos. . . ").

[24] *E.g.,* Row 7217 ("Email exchange regarding notice of Teams Meeting for training on revaccination. . . "); EHPRIV003828 ("Email regarding training and revaccination . . .").

[25] *E.g.,* Row 7154 ("Email exchange regarding training for patient data . . ."); Row 7198 (same).

[26] *E.g.,* EHPRIV000732, EHPRIV001201, Row 7364, EHPRIV000021, EHPRIV000107 (asserting attorney-client, work product, and peer review over communications with "Consultants," including Spencer Girouard, David Baldridge, Amy Bollinger, Ken Fields, and Holly O.).

Despite its burden to support its privilege assertions, Essentia has refused to respond to Plaintiffs' requests for information about these "Consultants" and for the last name of "Holly O."

A Google search for Spencer Girouard, however, identifies an account supervisor at FleishmanHillard, a PR and marketing agency. Ken Fields, David Baldridge, and Amy Bollinger appear to be SVPs and Partners at FleischmanHillard.

[27] Rows 7432 and 7433 (asserting peer review).

[28] *E.g.,* EHPRIV000147 (asserting peer review and work product).

18

individual with "Oncology Supply,"[29] individuals with "ND Government"[30] and "MN

Government,"[31] an individual with "MDH" (presumably Minnesota Department of Health)[32] and

the Minnesota Department of Health,[33] unidentified callers who left voicemails,[34] and documents

with senders and recipients listed merely as "Unknown"[35].

Essentia has improperly asserted privilege over information which appears to be original

and patient source information, like patient data[36], medication data[37], and financial data[38] (in

addition to the categories of withheld data described above).

Essentia has improperly asserted privilege over documents created years before the

---

[29] *E.g.,* EHPRIV005633, EHPRIV005644, EHPRIV005634, EHPRIV005635, EHPRIV005636 (asserting peer review).

[30] *E.g.,* EHPRIV001912, EHPRIV001913, EHPRIV001911, EHPRIV001910, EHPRIV001861, EHPRIV001904 (asserting peer review and medical patient).

[31] *E.g.,* EHPRIV005348, EHPRIV005367, EHPRIV005448 (asserting peer review).

[32] *E.g.,* EHPRIV004410, EHPRIV005911, EHPRIV006248 (asserting peer review).

[33] *E.g.,* EHPRIV006905, EHPRIV006975, EHPRIV004515 (asserting peer review and/or medical patient).

[34] *E.g.,* EHPRIV003898 ("Email exchange with voicemail about patient data . . ."); EHPRIV003751 ("Email exchange regarding voicemail concerning patient data . . ."); EHPRIV003757 (same); EHPRIV003752 ("Voicemail recording regarding patient data . . ."); EHPRIV003899 (same); EHPRIV003917 (same).

[35] *E.g.,* EHPRIV000008, EHPRIV000004, EHPRIV004406, EHPRIV007645, EHPRIV005630 (asserting attorney-client, work product, and/or peer review).

[36] *E.g.,* EHPRIV000047("Spreadsheet regarding patient data . . ."); EHPRIV000053 (same) EHPRIV000130 (same); 6763 ("Email exchange regarding patient data imports. . ."); EHPRIV000921 ("Spreadsheet regarding patient data related to revaccination. . .").

[37] *E.g.,* EHPRIV000134 ("Spreadsheet regarding vaccine data…"); EHPRIV001105 (same); EHPRIV005646 ("Spreadsheet regarding medication data. . ."); EHPRIV002814 ("Screenshot of vaccination data . . .").

[38] *E.g.,* EHPRIV000043 ("Spreadsheet regarding fiscal data. . . "); EHPRIV000404 ("Screenshot regarding fiscal data and revaccination. . . "); EHPRIV000042 ("Spreadsheet regarding medication and fiscal data. . ."); EHPRIV000287 ("Screenshot with fiscal data. . . ); Row 7544 ("Spreadsheet regarding potential financial results…"); Row 7562 (same).

temperature excursion started (in 2017), let alone when it was discovered such that a professional peer review regarding the excursion could have possibly begun (in 2020).[39]

Even for the thousands of documents with subject matter descriptions so generic it is impossible to tell what the withheld document concerned (e.g., "memorandum regarding update . . ."), it is often apparent from sender and recipient information that the peer review privilege was inappropriately applied. For example:

**EHPRIV0004346** is a May 5, 2021 document created by "Holly O." – who appears to be a third-party consultant – and Innovis's Chief Medical Officer, Operations Administrator, and Operations Manager. It was sent to the "Innovis Listserv." That listserv has so many people that Essentia had to attach a 21-page, single-spaced exhibit to its privilege log reflecting the over 4,000 recipients of that message. *See* **Exhibit 2** (Exhibits A-D to Essentia's privilege log). The document is described only as "Memorandum regarding update on investigation and quality assurance." Still, Essentia has withheld it on the basis of attorney-client privilege, work product, North Dakota peer review privilege, and Minnesota peer review privilege. Essentia improperly asserted privilege over multiple documents shared with this listserv.[40]

**EHPRIV00429** is an April 6, 2020 email from an Innovis Health Executive Assistant to over 450 recipients (including several group email addresses). The recipients include a range of employees – nursing, security, billing, financial, technical, human resources, chaplaincy, home

---

[39] *E.g.,* EHPRIV001383 (3/19/2013 "Spreadsheet with patient data regarding revaccination . . ."); EHPRIV001440 (same); EHPRIV005482 (3/19/2013 "Spreadsheet of patient data regarding revaccination. . ."); EHPRIV000886 (6/4/2014 "Screenshot regarding medication data . . .); EHPRIV007367 (10/4/17 "Action plan example . . . "); Row 7400 (11/14/2017 "Document regarding temperature monitoring . . .") EHPRIV001202 (1/4/2018 "PowerPoint regarding medication refrigeration . . .").

[40] *E.g.*, EHPRIV004346, EHPRIV001855, EHPRIV003430, Row 6895, Row 7208 (attaching recipient supplements as exhibits to privilege log).

healthcare, pharmacy, telehealth, nutrition services, supply chain logistics, and others. It is an "Email exchange regarding memorandum regarding update relative to investigation and quality assurance." There is no indication it is part of a peer review (or related to attorney advice), yet Essentia has withheld it on the basis of attorney-client privilege, work product, North Dakota peer review privilege, and Minnesota peer review privilege.

**EHPRIV000116** was created on April 2, 2020, by third-party consultant "Holly O." and Essentia's Senior Director of Marketing and Communications. It was shared with nearly 20 other individuals, including other third-party consultants, an office manager, a media relations specialist, a communications director, a communications manager, a marketing director, a marketing manager, and an online reputation specialist. This document appears based on its widespread dissemination, recipients, pre-litigation timing, and involvement of third parties to be a PR communication. Yet Essentia claims this document is a "Memorandum regarding update relative to investigation and quality assurance" and is subject to attorney-client privilege, work product privilege, and the peer review privileges.

**EHPRIV000185** was created on April 24, 2020, by Essentia's Program Manager - Process Excellence. These "meeting notes regarding agenda update relative to investigation and quality assurance" were shared with more than 30 other individuals. To be sure, those individuals include executives and employees in pharmacy, nursing, and quality. But recipients also include marketing, communications, patient relations, risk management, finance, and operations employees. Essentia has claimed attorney-client privilege, work product, and peer review privileges.

**EHPRIV000260** was created on February 25, 2020, by the Director of Nursing, Pharmacy Operations Manager, Former VP Pharmacy, and Director Acute Care Pharmacy. It was shared

with unidentified "Essentia Health West Market Colleagues." It is described only as a "Draft memorandum regarding investigation and quality assurance." There is no indication that this document was created by or for a professional peer review, no attorney appears on this entry, it pre-dates the filing of this case by several months, and yet attorney-client privilege, work product, and peer review privileges are claimed.

**EHPRIV000285** is a May 5, 2020 "email exchange regarding investigation and quality assurance" between an Operations Administrator and Labor Productivity Manager. Again, there is no indication this document was part of a professional peer review, no attorney appears in the entry, and it pre-dates the filing of this case. Still, attorney-client privilege, work product, and peer review privileges are claimed.

These examples are in no way an exhaustive list of improper privilege assertions. These deficiencies pervade Essentia's privilege log. Because Essentia has not provided support for the application of the peer review privileges, and because the privilege log entries bely those assertions of privilege, the withheld documents should be produced.

**B. LEGAL PRIVILEGES: Essentia has not established that the withheld documents are protected by the attorney-client privilege or are work product.**

Essentia asserts the attorney-client privilege/or work product protection ("Legal Privileges") in nearly all of its privilege log entries.[41] Essentia has not met its burden to establish that the Legal Privileges apply.

**1. Requirements of the Legal Privileges.**

The Minnesota attorney-client privilege applies to certain confidential communications

---

[41] The majority of Essentia's 8,100 entries assert both Legal Privileges and Peer Review Privileges. For roughly 130 entries, Essentia asserts only Legal Privileges.

relating to the request for legal advice. *Lawrence v. Rihm Family Cos.*, 954 N.W.2d 597, 602 (Minn. Ct. App. 2020). The North Dakota privilege applies to certain confidential communications "made for the purpose of facilitating the rendition of professional legal services." N.D. R. Evid. 502(b).

A communication is not privileged simply because it was made by or sent to a lawyer. *Johnson v. Bd. of Pensions of the Evangelical Luthern Church*, No. 11-23, 2012 U.S. Dist. LEXIS 174230, at *10-12 (D. Minn. Sept. 5, 2012) (citations omitted). The document's "primary purpose" must be "to gain or provide legal advice" *Id.* (recognizing that lawyers often "serve as legal advisors as well as business consultants" and documents principally involving "the performance of non-legal functions by an attorney are not protected").

The Eighth Circuit's test for determining whether documents are work product, i.e., were prepared in anticipation of litigation, is as follows:

> [Whether] in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation. But the converse of this is that even though litigation is already in prospect, there is no work product immunity for documents prepared in the regular course of business rather than for purposes of litigation.

*Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 604 (8th Cir. 1997).

"[T]he mere possibility or even the likely chance of litigation does not trigger the protection of the doctrine." *Airheart v. Chicago and N. W. Transp. Co.*, 128 F.R.D. 669, 671 (D.S.D. 1989). And as with the attorney-client privilege, "[l]awyer involvement in an investigation is not necessarily sufficient by itself to cloak an entire investigation with work product protection." *Nodak Mut. Ins. Co.,* 2015 U.S. Dist. LEXIS 194004, at *16 (citing *Diversified Indus.,* 572 F.2d at 603-04).

23

## 2.    Essentia has not met its burden to establish the Legal Privileges.

Essentia has asserted Legal Privileges over documents having nothing to do with legal advice or legal services. Some of the documents do not appear to have any attorney sender or recipient at all.[42] Some plainly concern PR issues, not legal ones.[43] Some of the emails include third-party PR consultants as recipients.[44] Essentia asserted Legal Privileges over screenshots of social media posts shared by marketing employees with more than a dozen other Essentia employees,[45] including on chains with no attorney participants,[46] and emails regarding "storage" – an issue at the heart of this case in an email apparently unrelated to legal advice – sent by Essentia's VP of Finance[47].

In many entries, Essentia makes no attempt to explain how the document is subject to any

---

[42] *E.g.*, EHPRIV000347 ("Email exchange regarding draft memorandum with update relative to investigation and quality assurance" between three employees with communications, marketing, and media titles – and no one identified as an attorney.).

[43] *E.g.,* EHPRIV000253 ("Email exchange regarding communication plan relative to investigation and quality assurance," sent by Essentia's Senior Director Marketing Communications to several non-attorney Essentia employees and Associate General Counsel); *see also* EHPRIV000251 (Email exchange regarding public communication plan. . ."); EHPRIV000271 (same); EHPRIV003648 (same), EHPRIV003647 (same).

[44] *E.g.,* EHPRIV000248 ("public communications" email with third-party consultants); EHPRIV000062 ("Draft communications plan . . ." created by and exchanged with third-party consultants); EHPRIV000107 ("Draft memorandum regarding update . . ." drafted by and exchanged with third-party consultants); EHPRIV001801 ("Email exchange regarding draft patient notification letters. . ." shared with third-party consultants).

[45] *E.g.,* EHPRIV000687 ("Screenshot of social media post regarding class litigation"); EHPRIV000688 (same); EHPRIV001129 (same); EHPRIV000690 (same).

[46] *E.g.,* EHPRIV000727 ("Screenshot of social media post regarding class litigation" sent by a Communications Director to several employees, but no attorneys, *See also* EHPRIV001266 ("Screenshot of social media post regarding class litigation") sent from Online Reputation Specialist to several non-attorney employees; Row 6429 ("Screenshot from social media. . ." from Communications Director to several non-attorney employees); Row 7079 ("Screenshot from social media . . ." shared among communications, marketing, and media employees, but no attorneys).

[47] *E.g.,* EHPRIV000258 ("Email exchange regarding storage . . ." from Essentia's VP of Finance to several non-attorney recipients and Associate General Counsel).

Legal Privilege. **EHPRIV002867**, for example, is a May 29, 2020 "Email exchange regarding training videos . . . ." Essentia's Senior Clinical Applications Analyst is listed as the sole sender and the sole recipient. Essentia asserted Legal Privileges and peer review privileges.

For some documents, Essentia used the same generic subject-matter description for entries asserting Legal Privileges as it used in entries that do not.[48]

Fewer than 10 of the thousands of entries asserting Legal Privileges even make conclusory contentions that the withheld document concern "legal advice."[49] Even those fall short. **Row 6861** for example is an April 9, 2020, email from Essentia's communications director. No attorney recipient is listed. Other marketing and communications employees are listed as parties to the document, as are third-party consultants. Yet Essentia claims it is subject to the Legal Privileges because it is an "Email exchange regarding media relative to legal advice as well as investigation and quality assurance."

Other entries mention "litigation," but equally fail to support assertions of Legal Privileges. For example, **EHPRIV0000149** is a July 14, 2020 memorandum exchanged only between third-party consultant "Holly O." and Essentia's Senior Director of Marketing. No attorney recipient is listed and nothing reflects that it relates to legal advice. Essentia has withheld it because it is a "Memorandum regarding update relative to investigation and quality assurance, as well as class litigation."

**EHPRIV000150** is a July 14, 2020 memo created by third-party consultant "Holly O."

---

[48] *Compare, e.g.,* EHPRIV000346 (no assertion of attorney-client privilege) *with* EHPRIV000422 (assertion of both attorney-client privilege and work product); both documents' subject-matter descriptions are identical: "Email exchange regarding patient data and revaccination relative to investigation and quality assurance."

[49] *E.g.,* EHPRIV000985, EHPRIV000758, EHPRIV001157, EHPRIV000674, Row 6713, Row 6853, Row 6861.

and Essentia's Senior Director Marketing with a similar subject matter description. It was sent to 11 people – including Essentia employees in communications, marketing, media relationships, and online reputation – but no attorneys. Nevertheless, Essentia has withheld it as a "Draft memorandum regarding update relative to investigation and quality assurance, as well as class litigation." None of this supports the assertion of privilege.

**EHPRIV000611** is an April 2, 2020 "Draft document regarding internal communications and notifications plans relative to investigation, quality assurance and class litigation" created by third-party consultant Spencer Girouard and sent to third-party consultant David Baldridge along with Essentia's Senior Director of Marketing and Communications. Essentia asserts the Legal Privileges and both states' peer review privilege. But nothing suggests any of those protections should apply.

Essentia's assertions of Legal Privileges are unfounded and the withheld documents should be produced.

### C. MEDICAL PRIVILEGES: Essentia improperly withheld documents on the basis of physician-patient privilege.

For more than 1,500 entries, Essentia has asserted a "physician/patient" or "medical patient" privilege. As with the other privilege log assertions, there is no detail supporting the privilege. In any event, medical information, including protected health information (PHI), may be confidentially produced pursuant to the HIPAA-compliant protective order in this case. ECF No. 45 (protective order); ECF No. 122 (Court's order finding that protective order meets the requirements of HIPAA and permits the disclosure of PHI). Also, Plaintiffs have had a longstanding offer to confer with Essentia regarding the use of anonymous identifiers in lieu of PHI. Physician-patient privileges thus do not offer a basis to withhold documents in this case.

26

## VI.        CONCLUSION

Plaintiffs request that the Court order the production of the withheld documents and award Plaintiffs their fees and costs incurred with respect to Essentia's repeated privilege assertions. Essentia has repeatedly failed to meet its burden to establish that the privileges apply and significantly delayed this litigation.

Plaintiffs have responded to at least four briefs on this issue, drafted a fifth brief that was mooted by the Eighth Circuit's denial of Essentia's petition, and addressed privilege issues with the Court in several position statements and status conferences over the past several months.[50] The Court has already undertaken an in camera review of a sample of withheld documents. Plaintiffs have briefed comprehensive range of case law explaining what a withholding party must demonstrate to establish the peer review privilege.

At best, Essentia continues to conceal information based on a construction of the privilege that is unsupported by any court or statute and which Essentia can no longer contend is in good faith. At worst, Essentia has made extraordinary efforts over the last year to intentionally conceal relevant information it knows it must produce.

Essentia should now produce the withheld documents. *See, e.g., NLRB v. Npc Int'l, Inc.*, No. 13-0010, 2017 U.S. Dist. LEXIS 23138, at *25 (W.D. Tenn. Feb. 16, 2017) ("When a party supplies an inadequate privilege log . . . [t]he court can (1) provide the party another chance to submit a more detailed log; (2) deem the inadequate log a waiver of the privilege; (3) conduct an

---

[50] These efforts are in addition to those Plaintiffs undertook in the meet-and-confer process with Essentia and, more recently, to analyze a parade of confusion when Essentia initially filed a notice of appeal, then notice of interlocutory appeal, then petition for writ of mandamus, then dismissal of its own appeal, along with an expedited motion to stay – all to seek mandamus review of an order, which request was so unwarranted it was summarily rejected by the Eight Circuit Court of Appeals before an answering brief was filed.

in camera inspection of the withheld documents; or (4) conduct an in camera inspection of a subset of the withheld documents. . . . Courts have generally found that waiver is appropriate where 'unjustified delay, inexcusable conduct, or bad faith are present.'") (internal quotations and citations omitted); *see also Degruy-Hampton v. Ochsner Clinic Found.*, No. 20-2417, 2021 U.S. Dist. LEXIS 114287, at *11 (E.D. La. June 18, 2021).

Plaintiffs respectfully request that the Court order Essentia to produce the documents it has withheld as privileged. In the alternative, Plaintiffs request that the Court undertake an in-camera review of those documents. Plaintiffs further request their fees and costs in responding to Essentia's privilege assertions and bringing this motion. *See, e.g., St. Paul Reinsurance Co. v. Commercial Fin. Corp.*, 197 F.R.D. 620, 646 (N.D. Iowa 2000) ("pursuant to Federal Rule of Civil Procedure 26(g), as a sanction for continued assertions of privileges without substantial justification, the London Insurers shall pay CFC's reasonable attorneys' fees and expenses incurred in bringing and arguing CFC's motion to compel."); *see also,* Fed. R. Civ. P. 37(a)(3)(B)(iv), (a)(4), (a)(5).

Dated: January 24, 2022                          Respectfully submitted,

                                   /s/ Melissa Ryan Clark
                                   Melissa Ryan Clark
                                   Brooke A. Achua
                                   FEGAN SCOTT LLC
                                   140 Broadway, 46th Fl.
                                   New York, NY 10005
                                   Ph: 646.502.7910
                                   Fax: 312.264.0100
                                   melissa@feganscott.com
                                   brooke@feganscott.com

                                   Elizabeth A. Fegan
                                   FEGAN SCOTT LLC
                                   150 S. Wacker Dr., 24th Floor
                                   Chicago, IL 60606
                                   Ph: 312.741.1019

28

Fax: 312.264.0100
beth@feganscott.com

Mac Schneider
SCHNEIDER LAW FIRM
815 3rd Ave. S.
Fargo, ND 58103
Ph: 701-235-4481
Fax: 701-235-1107
mac@schneiderlawfirm.com

J. Barton Goplerud
Brian Marty
SHINDLER, ANDERSON, GOPLERUD &
WEESE, PC
5015 Grand Ridge Drive, Suite 100
West Des Moines, Iowa 50265
Ph: (515) 223-4567
Fax: (515) 223-8887
goplerud@sagwlaw.com
marty@saglaw.com

Counsel for Plaintiffs

29