UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA
EASTERN DIVISION

| | |
|---|---|
| JESSICA KRAFT, individually and as parent of minors L.K., S.K., and O.K.; SHELLI SCHNEIDER, individually and as parent of minors A.S. and W.S.; ANNE BAILEY, individually and as parent of minor D.B.; AMY LAVELLE, individual and as parent of minors Em.L.and El.L.; ELIZABETH BEATON, individually and as parent of minor M.B.; AMANDA AND TYRELL FAUSKE, individually and as parents of minors C.R.F. and C.J.F.; JENNIFER REIN, individually; and JESSICA BERG, individually and as parent of minors A.B. and S.B., individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>vs.<br><br>ESSENTIA HEALTH, INNOVIS HEALTH, LLC d/b/a ESSENTIA HEALTH, DAKOTA CLINIC PHARMACY, LLC, JOHN DOE MANUFACTURERS, and JOHN DOE DISTRIBUTOR,<br><br>        Defendants. | Case No. 3:20-CV-00121<br><br><br>**ESSENTIA HEALTH'S AND INNOVIS HEALTH, LLC'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DEFENDANTS TO APPLY DISPUTED SEARCH TERMS** |

## I.    INTRODUCTION AND BACKGROUND

Defendants, Essentia Health and Innovis Health, LLC d/b/a Essentia Health West (collectively, "Essentia"), submit this Memorandum in opposition to Plaintiffs' Motion to Compel Essentia to apply 31 disputed search strings, totaling at least 152,061 additional unique resources. Essentia fulfilled its obligations under the Court's Order Governing Discovery of Electronically Stored Information ("ESI Order") and requiring application of the 31 disputed

4657709.1

search strings as Plaintiffs propose would be unduly burdensome and disproportionate to the needs of the case.  Accordingly, Plaintiffs' Motion to Compel should be denied.

### A.    The Court's ESI Order

On March 1, 2021, the Court entered its ESI Order.  (Doc. ID No. 46).  Consistent with that Order, Essentia interviewed various custodians to identify potentially responsive and/or relevant documents and identify locations where responsive documents are likely to be stored. *Declaration of Robert B. Stock*, at ¶ 4.  To that end, Essentia made the required ESI Disclosures, identifying 21 various record custodians.  *Id.* at ¶ 5.  Essentia also identified "various systems for electronic communications and ESI storage."  *Id.*  Following Essentia's initial ESI Disclosures, Essentia also agreed to include three additional record custodians and expand the timeframe for record collection for certain of the record custodians.  *Id.*  Pursuant to the ESI Order, Essentia collected documents from the custodians and locations as identified in its ESI Disclosures and subsequent agreement to supplement.  *Id.* at ¶ 6.  This work resulted in the imaging of 2,917,752 total files.  *Id.*

In addition to requiring the disclosure of record custodians and locations of potentially relevant documents, the ESI Order also carefully outlines a Document Search Protocol.  "The parties are to meet and confer concerning search methodologies, including without limitations, the use of keyword search terms and/or the use of technology assisted review."  (Doc. ID No. 46, *ESI Order*, at Section V. I.).  Importantly, the purpose of the meet and confer process is "to establish search methodologies with the goal of limiting the scope of review for production, minimizing the need for motion practice, and facilitating production in accordance with the deadlines set by the Court or agreed upon by the parties."  *Id*. at Section V.6 (emphasis added).

4657709.1

Consistent with its obligations under the ESI Order, Essentia conferenced, in good faith, with Plaintiffs "to determine mutually agreeable search terms" before employing the same. *Id.* at Section V.7(a)-(b); *see also Stock Decl.*, at ¶¶ 8-14.  Plaintiffs' suggestion that Essentia was non-responsive, uncooperative, or derelict in its duties under the ESI Order are belied by the record in this case.  Instead, the record demonstrates that Essentia extensively collaborated with Plaintiffs throughout the search-term process, attempting to reach compromise where possible and clearly articulating its position on those search terms that remained in dispute.

**B.    Search String Development**

**1.    Timeline**

On May 14, 2021, Essentia submitted four proposed search strings to Plaintiffs. *Stock Decl.*, at ¶ 8.  Plaintiffs objected and then raised the issue with the Court at the May 19, 2021, Status Conference.  *See id.* at ¶ 9; *see also* Dist. Ct. Docket ("DCD") No. 57.  Consistent with the ESI Order, the Court ordered the parties to confer.  *See* DCD No. 57.  Despite Plaintiffs' contention to the contrary, Essentia expanded its proposed search strings to include eight total searches on May 26, 2021.  *Stock Decl.*, at ¶ 12; *see also Clark Decl.*, at Ex. 2.  Importantly, Essentia's eight search strings were crafted based on its "custodial interviews and review of initial documents obtained from the identified record custodians."  *Stock Decl.*, at ¶ 11.  Plaintiffs asserted the search strings were unreasonable but agreed to allow Essentia to review. *Stock Decl.*, at ¶ 14.  Essentia confirmed on June 24, 2021, that it had begun to review the 5,951 unique resources recalled by its eight search strings.  *Id.* at ¶¶ 13, 15.

In the meantime, Plaintiffs sent 138 proposed searches for Essentia to build and run. On June 24, 2021, Essentia informed Plaintiffs that those searches were overbroad and unduly burdensome.  *Id.* at ¶ 17; Essentia Ex. 1.  Essentia requested Plaintiffs to withdraw the searches

4657709.1

for medication and manufacturer terms, noting that even building the search strings for those searches was disproportionate to the needs of the case.[1] *Stock Decl.*, at ¶ 17; Essentia Ex. 1. At the status conference that same week, Essentia agreed to provide a hit list for Plaintiffs' proposed searches, consistent with the ESI Order. *Stock Decl.*, at ¶ 19; DCD No. 72.

On July 7, 2021, Essentia provided Plaintiffs a hit list in a detailed spreadsheet ("an early generation of the comprehensive spreadsheet" showing the parties' final positions at Essentia Exhibit 2[2]). *See Stock Decl.*, at ¶¶ 16, 20. Essentia also explained that "limitations of the E-Discovery search platform being used required modification to some of Plaintiffs' proposed searches." *Id.* at ¶ 21; *see also* Essentia Ex. 3. Namely, "Essentia explained that the platform only allows application of one numerical connector per search."[3] *Stock Decl.*, at ¶ 21; *see also* Essentia Ex. 3. In other words, Essentia would be required to "build and run a search with the first connector, and then build and run another separate search with the second connector to apply to the results from the first search, and so on and so forth." *Stock Decl.*, at ¶ 21. That process would have been extremely burdensome and disproportionate to the needs of the case.[4] *Id.* As a solution, Essentia explained that it would use "and" and "or" connectors

---

[1] Plaintiffs imply that building the searches simply means typing them into a search bar. However, the process is much more onerous, time intensive, and expensive than that. Essentia's vendor has a complex technical process for both building and running searches, regardless of who drafts the initial search strings. *See Stock Decl.*, at ¶ 18.

[2] Pursuant to the Court's instructions, Essentia has also provided an electronic copy of the comprehensive spreadsheet at Essentia Exhibit 2 via email.

[3] "A numerical connector is a search function that requires search terms to appear within a specified number of terms of each other." *Stock Decl.*, at ¶ 21. This limitation arises when more than one numerical connector arises in a search, as well as when one numerical connector is required to apply to numerous terms connected by other connectors like "or" and "and."

[4] For example, Essentia estimated that one of the Plaintiffs' requested searches would have required over 900 additional searches be created to achieve Plaintiffs' proposed search string. *See Stock Decl.*, at ¶ 21; Essentia Ex. 3. Needless to say, such an endeavor would have been a time-consuming and costly process with little return. *Stock Decl.*, at ¶ 21.

4

where necessary. *Id.* at ¶ 21-22; *see also* Essentia Exs. 3-4. Repeatedly throughout their brief and supporting exhibits, Plaintiffs criticize Essentia for not using certain numerical connectors. However, Plaintiffs knew of the limitation—and solution—since July 2021. *See Stock Decl.*, at ¶ 21-22; *see also* Essentia Exs. 3-4.

On July 15, 2021, Essentia provided an updated hit list for Plaintiffs' proposed searches. *See Stock Decl.*, at ¶ 23. At the July 27, 2021, Status Conference, Essentia indicated "it would provide a final hit list for all the searches when the final list of custodians was complete" and that it was working to determine the unique hit count for individual searches. *Id.* at ¶ 24; *see also* DCD No. 77. In the interim, Essentia continued to send updates to and communicate with Plaintiffs. *See, e.g.*, *Stock Decl.*, at ¶ 25. On August 3, 2021, Essentia sent Plaintiffs an updated hit list and offered to meet and confer. *See id.*

On August 24, 2021, Essentia sent another detailed spreadsheet, now with unique counts for each search string. *See id.* at ¶ 26, *see also* Essentia Ex. 2. The spreadsheet also included Essentia's objections to 33 searches as recovering excessive numbers of non-responsive documents with either suggested modifications or the position that no modification could resolve the issue. *See Stock Decl.*, at ¶ 26; Essentia Ex. 2. At the same time, Essentia provided Plaintiffs an example of non-responsive documents from each of those searches.[5] *Stock Decl.*, at ¶¶ 26-27; Essentia Ex. 5. For the first time in their present Motion to Compel, Plaintiffs complain that Essentia only provided one such example for each search. *See Stock Decl.*, at ¶ 27. Importantly, nothing more is required of Essentia under the ESI Order.

---

[5] Should the Court request, Essentia is willing to provide the example non-responsive documents to the Court for in-camera review.

4657709.1

On September 2, 2021, Plaintiffs responded to Essentia's objections "by either proposing modified searches or requesting to 'keep' searches the same." *Stock Decl.*, at ¶ 28; *see also* Essentia Ex. 2. Plaintiffs did not raise any issues with the search terms at the September 14, 2021, Status Conference. *See* DCD No. 116. On September 29, 2021, Essentia informed Plaintiffs that it completed review of the resources from its eight search strings and "that it was reviewing the uncontested searches while negotiations continued regarding the disputed search strings." *Stock Decl.*, at ¶ 30.

On October 13, 2021, Plaintiffs represented to the Court that they had Essentia's final position on search terms and would bring a motion to compel further searches that month. *See* DCD No. 128. Instead, on October 26, Plaintiffs requested updated data on the searches from Essentia. *Stock Decl.*, at ¶ 31. Essentia provided that data on November 12, 2021, outlining results from modified searches and proposing additional modifications. *Id.* at ¶ 32; Essentia Exs. 2, 6. Essentia indicated it agreed to review resources recalled by some additional modified searches. *Stock Decl.*, at ¶ 32, Essentia Exs. 2, 6. In December, Plaintiffs indicated they had no issues to discuss at a status conference with the Court. *Stock Decl.*, at ¶ 33; Essentia Ex. 7.

On January 4, 2022, Essentia sent the final updated spreadsheet to Plaintiffs, showing the results of the November 12, 2021, modifications. *Stock Decl.*, at ¶ 34; Essentia Exs. 2, 8. The next day, Essentia informed Plaintiffs that it objected to three additional searches/modified searches and provided an example of non-responsive resources from each. *Stock Decl.*, at ¶ 35. Again, Plaintiffs never indicated that those examples were inadequate until now. *See id.* At the January 11, 2022, Status Conference, Plaintiffs indicated they were going to bring the present motion and did so that day. *See id.* at ¶ 37.

6

### 2.    The Iterative Process

After development of its initial eight search strings, Essentia continued to confer with Plaintiffs regarding their 138 proposed search strings.  To do so, Essentia exchanged various iterations of a comprehensive spreadsheet reflecting: (1) the search number/title; (2) the search terms proposed; (3) the actual search terms applied (accounting for platform limitations, such as numerical connectors); (4) the total number of resources recalled by the search; and (5) the total number of recalled resources "unique"[6] to that particular search.  *See* Essentia Ex. 2.

As negotiations progressed, the spreadsheets included (1) Essentia's objections by search; (2) Essentia's suggested modifications for certain searches; (3) Plaintiffs' response to Essentia's objections/proposed modifications; and (4) Plaintiffs' own proposed modifications. *See id.*    Some searches underwent numerous exchanges, with both sides proposing modifications, as Essentia attempted to tailor the searches to recall responsive documents in a manner proportionate to the needs of the case. *See id.* (Search 84).  For other searches, Essentia stood on its objection because no modification could render the search proportionate. Similarly, for many searches, Plaintiffs offered no proposed modification.  *See id.* (Search 23).

The Plaintiffs' implication that Essentia left them in the dark throughout this process is simply not true. The parties exchanged numerous iterations of the spreadsheet as part of the collaborative process, each time providing additional detailed information.  The final form of the spreadsheet demonstrates that Essentia was actually very transparent and informative with respect to the status of each of the disputed search strings.  *See id.*

---

[6] "A resource is 'unique' to a search if that resource is *only* responsive to that specific search and no other searches in the system."  *Stock Decl.*, at ¶ 13.

Moreover, despite Plaintiffs' assertions to the contrary, Essentia did run all 138 searches Plaintiffs originally proposed. *See id.*; *see also Stock Decl.*, at ¶ 38. To be sure, Essentia declined to build and run additional modified searches, explaining as early as August 2021 that no further modification would make those searches proportionate. *See* Essentia Ex. 2. Essentia was clear in its communications with Plaintiffs. Furthermore, Essentia maintained many objections (rather than build and run modified searches) on October 20, 2021—that is, a week after Plaintiffs represented to the Court that they were bringing a motion to compel the searches by the end of the month. *See id.*; *see also Stock Decl.*, at ¶ 31. It would make little sense for Essentia to expend time and expense for modified searches that were not going to cure the issue of recalling voluminous non-responsive documents, particularly when Plaintiffs indicated they were going to bring a motion. When Plaintiffs later requested, Essentia did propose and run additional modified searches on November 12, 2021, and agreed to review some of those modified searches. *Stock Decl.*, at ¶¶ 31-32.

### 3.     The Work Performed

Plaintiffs suggest Essentia neglected its discovery obligations, absconding from document review and production. Not so. As noted above, "Essentia ran all of the Plaintiffs' 138 originally proposed searches." *Stock Decl.*, at ¶ 38. Further, Essentia "reviewed all unique resources recalled in response to 116 total search strings, including its eight search strings." *Id.* at ¶ 39.[7]

Presently, only 31 searches remain in dispute, with Essentia having reviewed modified versions of four of those searches (and with one remaining search containing zero unique

---

[7] As shown in Essentia Exhibit 2, 47 of the 116 searches recalled no unique resources and, thus, did not require individual review by Essentia.

resources).  *Id.* at ¶ 45; Essentia Ex. 2.  For those disputed searches, Essentia performed qualitative sampling of each search to determine that it returned an excessive number of non-responsive documents.  *Stock Decl.*, at ¶ 46.  More specifically, "the E-Discovery search platform identifies 'hit ratings' on a percentage basis for each resource recalled by a particular search."  *Id.*  That "hit rating" shows "the percentage of the search terms from a string that hit on a particular document (ranging anywhere from 100 percent to single digit percentages)."  *Id.*  Essentia reviewed numerous documents "from each 'hit rating' percentage (from the 100-percent ratings, down to the single digits), checking for responsiveness of resources at every level."  *Id.*  For each of these disputed strings, nearly all of these sampled resources were non-responsive.  *Id.*  Thus, Essentia objected.  However, Essentia agreed and did, in fact, review over 79 percent of the total searches proposed by both parties.  In all, those searches encompassed 10,622 uniquely responsive resources.  *Id.* at ¶ 39.

Importantly, the total unique resource count "is underinclusive of the total number of resources that Essentia reviewed."  *Id.* at ¶ 40.  More specifically, in reviewing resources uniquely responsive to specific search strings, "Essentia also reviewed *related* resources (e.g., parents and children)."  *Id.*  For example, if an email (the parent) includes an attachment (the child), Essentia reviewed the entire family for responsiveness to Plaintiffs' discovery requests, even if only the email included the search terms.  *Id.*  This process is required pursuant to the ESI Order.  The unique resource count does not include families.  In other words, the unique resource count is not reflective of related resources, which also require review.  *Id.*

Essentia's review of its eight search strings illustrates this phenomenon.  The original eight search strings proposed by Essentia returned 5,951 unique resources.  *Id.* at ¶ 41.  But Essentia's privilege log includes 8,146 resources from those eight searches, indicating an

4657709.1

approximate 30 percent increase in the original 5,951 returned resources. *Id.* Furthermore, the 8,146 resources listed on Essentia's privilege log would not include any non-responsive documents, further increasing the number of resources actually reviewed. *Id.*

The eight search strings crafted by Essentia "recalled the core responsive documents in this case." *Id.* at ¶ 42. Those first eight searches resulted in identification of over 8,100 responsive resources reflected on Essentia's privilege log. Having completed review of all 116 searches, Essentia anticipates that the remaining 108 search strings, crafted by Plaintiffs, will only result in approximately 850 additional responsive documents to be included in a supplemental privilege log. *Id.* "That is, Essentia's eight search strings account for over 90 percent of the responsive, but privileged, resources in this case." *Id.* In addition, "Essentia anticipates review of Plaintiffs' 108 search strings will only result in the production of a single document in stark contrast to Essentia's prior production." *Id.* at ¶ 43.

## C.    Burden Related to 31 Disputed Search Strings

Reviewing the vastly non-responsive resources in the 31 disputes searches would come at a great cost to Essentia. Collectively, the disputed searches (without modification) encompass 152,061 unique resources. *Id.* at ¶ 48; *see also* Essentia Ex. 2. Based on its prior review of the 116 searches, Essentia estimates this review alone would take in excess of 5,069 hours, at a cost of over $1,150,663 in attorneys' fees. *Stock Decl.*, at ¶ 48. This amount is grossly understated, as it does not account for related documents, as discussed above. Such time and expense are not proportional to the needs of the case, considering Essentia's custodial interviews, collection, and review of its original eight search strings recalled the core responsive documents in this case. Furthermore, the remaining 31 disputed search strings are recalling excessive non-responsive documents.

10

4657709.1

## II.    LAW AND ANALYSIS

### A.    Application of the disputed search terms is overly broad, unduly burdensome, and not proportionate to the needs of the case.

The scope of discovery is well defined by the Federal Rules of Civil Procedure.  More specifically,

> [p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

FED. R. CIV. P. 26(b)(1).  Proportionality, as a limitation on discovery, was designed to address and correct overdiscovery and protect against redundant or disproportionate discovery by encouraging "judges to be more aggressive in identifying and discouraging discovery overuse."  FED. R. CIV. P. 26(b)(1), Committee Notes on Rules 2015 Amendment.  Analysis of the proportionality factors here demonstrates that application of the disputed search terms would be overly broad, unduly burdensome and disproportionate to the needs of the case.

"[T]he first proportionality factor looks at whether the issues at stake implicate broader 'public policy spheres, such as employment practices, free speech, and other matters [that] may have importance far beyond the monetary amount involved."  *Lawson v. Spirit AeroSystems, In*c., No. 18-1100-EFM-ADM, 2020 WL 3288058, at *11 (D. Kan. June 18, 2020), aff'd, No. 18-1100-EFM, 2020 WL 6939752 (D. Kan. Nov. 24, 2020) (quoting FED. R. CIV. P. 26(b)(1) Advisory Committee Notes to the 2015 Amendments).  Although Plaintiffs appear to suggest that this case implicates issues broader than the alleged damages at issue, reduced to simplest terms this is a putative class action between private parties by which the

11

4657709.1

Plaintiffs seek money damages. "This factor weighs against the need for far-reaching discovery measures." *Id*.

The second factor requires comparison of the cost of discovery at issue against the amount in controversy. *Id*. To that end, Plaintiffs suggest the 31 disputed search terms are not disproportionate to the needs of the case because "many millions of dollars" are in controversy. However, "[t]he fact that a plaintiff seeks millions in relief does not give him or her license to conduct fishing expeditions that run up the cost of discovery." *Id*. at *12. Indeed, "monetary stakes are only one factor, to be balanced against other factors." FED. R. CIV. P. 26(b)(1), Advisory Committee Notes to the 2015 Amendments. As outlined above, the estimated cost to review just the unique resources recalled in response to the disputed search terms is over $1.1 million. This figure, of course, does not account for the discovery work already performed by Essentia, including its custodial interviews, document collection and storage, and the resources expended to review the resources recalled in response to the 116 total search strings Essentia has already reviewed. *See Lawson,* at *11 (demonstrating this factor includes consideration of discovery resources already expended). This is simply not a case in which Essentia has refused to engage in discovery on the subject matter at issue.

As part of the proportionality assessment, Courts also consider relative access to information. In undertaking this analysis, "courts look for 'information asymmetry'—a circumstance in which one party has very little discoverable information while the other party has vast amounts of discoverable information." *Lawson*, at *12 (quoting *Oxbow Carbon & Minerals LLC v. Union Pac. R.R. Co*., 322 F.R.D. 1, at 8 (D.D.C. 2017). To date, Essentia has produced in excess of 3,500 pages in discovery, including voluminous de-identified financial data, reflective of charges, payments, patient counts, third party payor data, and medication

12

data by unique patient counts as it relates to the putative class.  In addition, Essentia has identified more than 8,000 responsive, but privileged, documents on its privilege log. Considering the state of discovery, there is no information asymmetry here.

Plaintiffs argue Essentia is a well-resourced health system and impliedly suggest that consideration of these resources weighs in favor of compelling application of the disputed search terms.  However, "consideration of the parties' resources does not foreclose discovery requests addressed to an impecunious party, nor justify unlimited discovery requests addressed to a wealthy party." *Id*.  Instead, courts are required to apply the proportionality factors "in an even-handed manner that will prevent use of discovery to wage a war of attrition or as a device to coerce a party, whether financially weak or affluent." *Id*.  More importantly, any resource consideration must be tempered by the burden-benefit analysis of the discovery sought.

"In analyzing the importance of the discovery in resolving the issues in the case, the court looks to whether the discovery seeks information on issues 'at the very heart of [the] litigation.'" *Lawson*, at *19 (citations omitted).  "A party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them."  FED. R. CIV. P. 26(b)(1), Advisory Committee Notes to the 2015 Amendments.  The final factor the court must consider in the proportionality analysis is "whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1). The last two factors are best analyzed in this case by reviewing the disputed search terms by category.

**B.    The "Low-Hit" Searches**

Plaintiffs characterize half the disputed searches as "Low-Hit Searches," arguing that these searches encompass a "unique number of [resources]" that is "so small that [Essentia

4657709.1

reviewing them] creates little burden and removing them would have no material impact on Essentia's review." *Plaintiffs' Memorandum in Support*, p. 6.  Essentia disagrees with Plaintiffs' characterization and Plaintiffs' compartmentalized view of this "iterative" process.

Collectively, these supposed "Low-Hit Searches" encompass 5,750 unique resources—that is, nearly as many resources as were recalled by Essentia's original eight searches.  As that figure does not reflect related documents, it is likely much higher.  Moreover, for many of the "low-hit" searches, Plaintiffs have disbanded search terms from larger searches (*see, e.g.*, Searches 22b & 45a).  Plaintiffs cannot simply splice searches and then deem them "low-hit."

Equally important, these searches are not sufficiently tailored to target responsive documents.[8]  Instead, these searches recall documents that are not responsive to Plaintiffs' discovery requests and that have no bearing on the material issues in this case.  To the extent the search terms are relevant, the information they seek has already been targeted by more appropriately tailored searches that Essentia has already performed.

### C.    The "High-Hit" Searches

The "High-Hit Searches" (accounting for 146,311 of the unique resources still at issue)[9] are even more problematic for numerous reasons.  Even assuming *in arguendo* that these searches seek relevant information, to require review of the excessive number of non-responsive resources in the "high-hit" searches would be disproportionate to the needs of this case because Essentia has already reviewed responsive resources recalled by more appropriately tailored searches targeting largely the same content.  Courts often recognize that

---

[8] Like Plaintiffs, Essentia has specifically addressed the issues with each search in an Exhibit to this brief.  *See* Essentia Ex. A.
[9] Not factoring in additional "related resources," review of these unique resources alone would cost approximately $1,107,086.

4657709.1

proportionality considerations outweigh the need to review such broad searches when the party has already reviewed searches better tailored to net documents related to the issues. *See, e.g.*, *Maint. Enters., LLC v. Orascom E&C USA, Inc.*, No. 3:16-cv-00014-SMR-CFB, 2018 WL 6380781, at *5 (S.D. Iowa Mar. 30, 2018); *Todero v. Blackwell*, No. 1:17-cv-01698-TWP-MJD, 2018 WL 10602396, at *1-2 (S.D. Ind. April 5, 2018).  Here, Plaintiffs have "failed to show the proposed [high-hit searches are] tailored to identifying ESI that is revealing of [the issues in this case] and not already captured by other, undisputed search" strings. *Kemps LLC v. IPL, Inc.*, No. 19-0753-CV-W-BP, 2020 WL 12688372, at *6 (W.D. Mo. Nov. 6, 2020).[10]

First, Plaintiffs' broad **Search 12** recalled 6,271 unique, but predominantly non-responsive, resources.  Essentia modified that search to recall 883 unique resources.[11] Although Essentia reviewed the resources in the more appropriately tailored search, Plaintiffs insist a broader search with the terms "Temp!" and "Med!" because Essentia spoke about the potential temperature excursion using similar language.  But the searches that Essentia did perform (including modified Search 12) already returned the documents that are "core to this case."  More specifically, Essentia already reviewed resources recalled by at least eight searches targeting "temperature-related documents" that Plaintiffs purportedly seek with Search 12.[12]  In fact, five of those searches specifically included the word "Temp!" and lists

---

[10] Additionally, that Essentia would have to manually review each of these resources in order to assess privileges is another fact the Court may consider when determining whether compel the application of these broad searches. *See, e.g.*, *Am. Mun. Power, Inc. v. Voith Hydro, Inc.*, 2018 WL 11009363, at *1 (S.D. Ohio June 4, 2018).

[11] Even these resources were largely non-responsive, but Essentia reviewed them given the reduced burden. *See Todero*, 2018 WL 10602396, at *2 (considering that modified searches recovered irrelevant documents).

[12] *See, e.g.*, **Search 2** (temperature and excursion); **Search 7** (vaccinations and storage temperature); **Searches 13-18** (Temp! and specific medications/vaccinations).  For full search terms, see Essentia Exhibit 2.

4657709.1

of specific medications/vaccinations.[13]    Plaintiffs' proposed Search 12 unsurprisingly recovered an excessive number of non-responsive documents given its terms.  For example, "temperature" and "medication" often arise together when a patient has a fever and is administered medication, which has nothing to do with Plaintiffs' discovery or this case.

Second, Plaintiffs' **Search 22a** searches for "temp!" in connection with 20 terms like "excurs!" and "issue!"  Even after Essentia narrowed this search, the resources recalled were excessively non-responsive.[14]    That outcome is predictable since Essentia already captured resources for these terms through 11 similar, but more tailored, searches.[15]  Plaintiffs' proposed Search 22a returned 10,641 resources with only a small portion (3,268) being uniquely responsive, which indicates that the other resources were likely already captured.

Third, Plaintiffs' **Search 45b** recalled over 28,954 unique resources that, even after modification, are excessively non-responsive.  That outcome is unsurprising given the breadth of the search:

> (Chemo! OR Vial! OR Pharm! OR Shot! OR Biologic! OR CAM! OR Toxoid! OR Drug! OR Product!) AND (excurs! OR prob! OR fail! OR incid! OR occurrence! OR situation! OR cold! OR freez! OR froz! OR deviat! OR invalid! OR defect! OR compromise! OR unfit OR alarm! OR efficacy OR ineffectiv! OR harmful! OR "less potent" OR potenc!).

It is not hard to imagine why **Search 45b** results in non-responsive documents in a hospital system that assesses the "potency" of "chemo," or warns against the "harmful" side effects of "drugs."  Once again, many of the 116 more-tailored searches that Essentia ran and

---

[13] *See* **Searches 13-18** (*supra* n.12).

[14] It bears repeating here that Essentia addressed in July 2021 Plaintiffs' recurrent complaints about numerical connectors, which Plaintiffs continuously bring up here.

[15] *See*, *e.g.*, **Search 2** (*supra* n.12); **Modified Search 12d**; **Searches 13-18** (*supra* n.12); **Searches 116-17** ("Temp!" or "storage" with specific manufacturers/distributors).

4657709.1

reviewed targeted responsive documents that Plaintiffs assert this overbroad, unduly burdensome search is necessary to retrieve.[16]  In particular, **Search 28** specifically searched words like "freez!" in connection to words like "CAM!" or "Biologic."  Review of 28,954 excessively non-responsive documents is not proportionate where searches appropriately tailored to the facts of this case have already captured relevant documents.[17]

Similarly, **Search 47** (which recalled 3,880 unique resources) includes the name of specific medications like "flu" or "insulin" in connection to numerous terms such as "effectiv!," "harmful!", and "situation!"  Essentia objected to this search as recalling excessive numbers of non-responsive documents without any apparent modification to resolve the issue.  Of course, terms like "flu" and "harmful" are often discussed together on topics that have nothing to do with this case or Plaintiffs' discovery requests.  Likewise, **Search 99** includes terms like "safe!" or "potent!" with general medication terms, broadly recalling another 7,542 unique resources.  The searches identified in footnotes 15 and 16, already target the resources that Plaintiffs seek to recover with these unreasonably broad and burdensome searches.

**Searches 52a, 53a, 54a, and 55a** present more of the same issues; they searched both general (52a) and specific (53a-55a) medication names with terms like "log!" or "data!".  Essentia has met its burden in reviewing documents related to these terms through more carefully tailored, narrow searches.[18]  Likewise, **Searches 52b, 53b, 54b, and 55b** include

---

[16] *See* **Searches 26-27** (terms like "freez!" with terms like "ineffective!" or "practice!"); **Searches 29-34** (terms like "freez!" with specific medications); **Searches 35-44** ("Stor!" and terms like "freez!," "cold!," "CAM!," or specific medications); **Searches 49-51** (specific medications with "invalid!" or "deviat!"); **Searches 57-58** (specific medications with terms like "occurrence!").

[17] Reviewing the resources in this search alone would likely cost over $219,000.

[18] *See, e.g.,* **Search 3** (searching for medication with storage); **Search 4** (searching for refrigeration with temperature and log); **Search 6** (medication or vaccine with refrigeration

17

4657709.1

both general (52b) and specific (53b-55b) medication names with terms like "degree!" or "standard!," which is already captured by tailored searches.[19] Yet, Plaintiffs seek to have Essentia review over 57,000 resources[20] encompassed by these searches. In light of the work Essentia has already performed and the non-responsiveness of the resources that remain in these searches, that request is vastly disproportionate to the needs of this case.

Plaintiffs' proposed **Searches 84 and 85** broadly use terms for Dakota Clinic Pharmacy with terms such as "service!" or "log!" Essentia conferred with Plaintiffs several times regarding these searches, eventually tailoring searches that returned 314 and 31 unique resources, respectively. Essentia has reviewed those documents. Plaintiffs insist that Essentia should review the broader versions of these searches, but that review is not proportionate to the needs of the case when the broader searches return excessive numbers of non-responsive documents and Essentia has already reviewed more tailored searches[21] relating to DCP (that also returned largely non-responsive documents, if on a smaller, less burdensome, scale).

Thus, in all, the need to review these broad but redundant searches cannot outweigh the burden to Essentia from reviewing broad searches, untethered to the facts of this case, when it has already reviewed resources recalled by more carefully tailored searches.

---

issue); **Searches 13-18** (*supra* n.12); **Searches 26-44** (*supra* n.16); **49-51** (*supra* n.16); **Search 131-37** (transaction/transfer with terms like "log!" as well as general and specific medications).
[19] *See, e.g.*, **Search 37** ("Stor!" with terms like "standard!" and "SOP!"); **Searches 57-58** (specific medication names with words like "standard!" and "SOP!"); **Searches 86-87** (degree with manufacturer names); **Search 27** (fridge with terms like "standard!" and "SOP!").
[20] Such review would cost Essentia in excess of $431,000.
[21] Essentia reviewed other searches in addition to the Essentia's modified 84 and 85 that targeted DCP resources. *See* **Searches 1, 8, 62, 70, 88, and 89**.

4657709.1

Finally, Plaintiffs' **Search 138** broadly searches for all documents with "cold /s chain!" Even putting aside relevancy problems at this time, courts routinely deem disproportionate searches that include only broad standalone terms without additional terms to tie the search to the particular case. *See, e.g.*, *No Spill, LLC v. Scepter Canada, Inc.*, No. 18-cv-2681-HLT-KGG, 2021 WL 4860556, at *8 (D. Kan. Oct. 19, 2021) (rejecting overbroad standalone search terms); *Ramos v. Whole Hemp Co. LLC*, No. 19-cv-03268-CMA-KMT, at *3 (D. Colo. Oct. 6, 2020) (rejecting overly broad term). Plaintiffs insist this search is necessary because this case deals with medication storage issues. But Essentia has searched for terms like "cold" and "storage" and "excursion" to yield resources that are actually relevant to this case and responsive to Plaintiffs' discovery requests. *See* Essentia Ex. 2. Plaintiffs' proposed search is simply too broad and untethered to the materials facts at issue.

The "high-hit" searches are not only overbroad and disproportionate to the needs of the case, but many also include irrelevant terms. *See Ramos*, 2020 WL 5946152, at *1. For example, searches like **Searches 52a-55a, Searches 52b-55b, Search 99**, and, particular, **Search 138** target information about proper pharmaceutical storage and handling guidelines. But Essentia's storage and handling procedures are irrelevant to this case; the potential temperature excursion at issue took place at DCP facilities. DCP was responsible for the storage and monitoring of pharmaceuticals at issue in this case. Yet, almost all of the disputed searches (excluding those that specifically include DCP as a term) target documents about Essentia's storage and monitoring of vaccines which is, frankly, irrelevant.[22] The proposed

---

[22] Essentia has repeatedly held this position, which is reflected in its objections to Plaintiffs' Request for Production No. 6.

4657709.1

search strings must not only be proportional to the needs of this case, but relevant. Plaintiffs "may not use discovery as a fishing expedition." *Ramos*, 2020 WL 5946152, at *1. For these reasons, Essentia respectfully requests the Court deny Plaintiffs' Motion to Compel.

## III.   CONCLUSION

For the reasons outlined above, Essentia respectfully requests the Court deny Plaintiffs' Motion to Compel Defendants to apply disputed search terms in its entirety.

Dated this 25 day of January, 2022.

**VOGEL LAW FIRM**

*/s/ Robert B. Stock*

BY:   Angela E. Lord (#05351)
Robert B. Stock (#05919)
Briana L. Rummel (#08399)
MacKenzie L. Hertz (#09392)
218 NP Avenue
PO Box 1389
Fargo, ND  58107-1389
701.237.6983
Email:   alord@vogellaw.com
rstock@vogellaw.com
brummel@vogellaw.com
mhertz@vogellaw.com
ATTORNEYS FOR ESSENTIA HEALTH
AND INNOVIS HEALTH, LLC

20

4657709.1