UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA
EASTERN DIVISION

| | |
|---|---|
| JESSICA KRAFT, individually and as parent of minors L.K., S.K., and O.K.; SHELLI SCHNEIDER, individually and as parent of minors A.S. and W.S.; ANNE BAILEY, individually and as parent of minor D.B.; AMY LAVELLE, individual and as parent of minors Em.L.and El.L.; ELIZABETH BEATON, individually and as parent of minor M.B.; AMANDA AND TYRELL FAUSKE, individually and as parents of minors C.R.F. and C.J.F.; JENNIFER REIN, individually; and JESSICA BERG, individually and as parent of minors A.B. and S.B., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ESSENTIA HEALTH, INNOVIS HEALTH, LLC d/b/a ESSENTIA HEALTH, DAKOTA CLINIC PHARMACY, LLC, JOHN DOE MANUFACTURERS, and JOHN DOE DISTRIBUTOR,<br><br>Defendants. | Case No. 3:20-CV-121<br><br><br>**DECLARATION OF ATTORNEY ROBERT B. STOCK IN SUPPORT OF ESSENTIA'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL APPLICATION OF DISPUTED SEARCH TERMS** |

I, ROBERT B. STOCK, declare as follows:

1.    I am an attorney with the Vogel Law Firm and counsel for Defendants, Essentia Health and Innovis Health, LLC d/b/a Essentia Health West (collectively, "Essentia").

2.    I have personal knowledge of the facts stated herein.

3.      This declaration does not exhaustively recount the correspondence and issues regarding the search-term process with Plaintiffs, but it does provide a general timeline thus far.

**A.      Timeline and Correspondence**

4.      Consistent with this Court's Order Governing Discovery of Electronically Stored Information ("ESI Order"), in March 2021, Essentia interviewed various custodians in order to identify responsive and relevant documents, as well as to identify likely storage locations for such documents.

5.      Essentia then made the required ESI Disclosures, identifying 21 record custodians, as well as various systems for electronic communications and ESI storage. Essentia later agreed to supplement that list to include three additional record custodians and to expand the timeframe for record collection for some of those custodians.

6.      Pursuant to the ESI Order, Essentia then collected documents from those custodians in those locations, which resulted in the imaging of 2,917,752 total files.

7.      Consistent with the Document Search Protocol contained in the ESI Order, Essentia then began the time-intensive process to develop search methodologies to assist in review, using the information collected from record custodians.

8.      On May 14, 2021, Essentia submitted four proposed search strings to Plaintiffs. *See Declaration of Melissa Clark, Ex. 1.*

9.      Plaintiffs objected to Essentia's proposed search strings and raised that issue to the Court at the May 19, 2021, Status Conference. *See* Dist. Ct. Docket ("DCD") No. 57.

10.     The Court ordered the parties to confer, consistent with the ESI Order. *Id.*

11.     Essentia expanded its proposed searches to include a total of eight search strings, again basing those eight search strings on custodial interviews and review of initial documents obtained from the identified record custodians.

12.     On May 26, 2021, Essentia provided those eight search strings to Plaintiffs. *See Clark Decl., Ex. 2.*

13.     Essentia's eight search strings recalled 5,951 unique resources. A resource is "unique" to a search string if that resource is only responsive to that specific search and no other searches in the system.

14.     Plaintiffs responded that the proposed list was unreasonable but agreed to allow Essentia to move forward with review.

2

15. On June 24, 2021, Essentia confirmed to Plaintiffs that it was in process of reviewing the resources recalled by Essentia's eight search strings. **Essentia Ex. 1.**

16. Plaintiffs had also provided Essentia their own proposed search strings, which eventually amounted to 138 additional searches. A true and accurate copy of a comprehensive spreadsheet repeatedly exchanged between the parties is attached to the Declaration as **Essentia Ex. 2.** That spreadsheet shows data on Essentia's eight searches and Plaintiffs' 138 searches. The spreadsheet further reflects the parties' positions on various dates throughout the meet and confer process, including August 24, 2021, September 2, 2021, October 20, 2021, and November 12, 2021, and January 3, 2022.

17. On June 24, 2021, Essentia objected to those searches as overbroad and unduly burdensome. Essentia specifically requested Plaintiffs to withdraw certain searches with medication and manufacturer terms because even building those search strings was disproportionate to the needs of the case. **Essentia Ex. 1.**

18. Building and running search strings in the E-Discovery review platform employed by Essentia requires more than simply typing out the search strings and copying them into a search bar. The technical process is time intensive and expensive.

19. At the June 29, 2021, Status Conference, Essentia advised the Court that the search-term process was ongoing, and it agreed to provide a hit list for Plaintiffs' proposed searches, consistent with the ESI Order. *See* DCD No. 72.

20. On July 7, 2021, Essentia emailed Plaintiffs the hit list for their proposed searches in a detailed spreadsheet. **Essentia Ex. 3.** That spreadsheet is an early generation of the comprehensive spreadsheet provided at **Essentia Ex. 2**.

21. In the July 7, 2021, email, Essentia also explained that limitations of the E-Discovery search platform being used required modification to some of Plaintiffs' searches. Specifically, Essentia explained that the platform only allows application of one numerical connector per search. A numerical connector is a search function that requires search terms to appear within a specified number of terms of each other. If a search includes more than one numerical connector, Essentia is required to build and run a search with the first connector, and then build and run another separate search with the second connector to apply to the results of the first search, and so on and so forth. For example, one of Plaintiffs' proposed searches would have required an estimated 900 additional searches to be created to achieve this single proposed search string. Repeatedly building and running searches within searches would be extremely time-consuming and expensive. As a solution, Essentia informed Plaintiffs that it would run searches with "and" and "or" connectors.

3

22. On July 9, 2021, Essentia again explained to Plaintiffs the numerical-connector limitation, and the solution with "and" and "or" connectors. **Essentia Ex. 4.** Thus, Plaintiffs have been well-informed of this issue and the solution since early July 2021.

23. On July 15, 2021, Essentia provided Plaintiffs another updated hit list for their proposed searches.

24. At the July 27, 2021, Status Conference, Essentia advised that it would provide a final hit list for all the searches when the final list of custodians was complete. *See* DCD No. 77. Essentia further advised that it was working with its E-Discovery vendor to provide a unique hit count for individual searches. *See id.*

25. On August 3, 2021, Essentia provided Plaintiffs another updated hit list for the proposed searches and offered to confer regarding unique hit counts for individual searches.

26. On August 24, 2021, Essentia emailed, *see* **Essentia Ex. 5**, Plaintiffs a comprehensive spreadsheet outlining Essentia's eight search strings and Plaintiffs' 138 search strings, *see* **Essentia Ex. 2.** That spreadsheet reflects the unique hit counts for each individual search, as well as Essentia's objections to 33 searches as recalling excessive numbers of non-responsive documents. *Id.* The spreadsheet further reflects either proposed modifications to those searches by Essentia, or Essentia's position that no modification could resolve the issue. *Id.*

27. In its August 24, 2021, correspondence, Essentia also provided Plaintiffs an example of non-responsive documents from each of the searches to which Essentia objected. **Essentia Ex. 5.** Plaintiffs did not request additional examples.

28. On September 2, 2021, Plaintiffs responded to Essentia's objections to their proposed searches by either proposing modified searches or requesting to "keep" searches the same. **Essentia Ex. 2.**

29. Plaintiffs did not raise issues with the search terms at the September 14, 2021, Status Conference. *See* DCD No. 116.

30. Essentia informed Plaintiffs on September 29, 2021, that it had completed review of the resources from Essentia's eight search strings and that it was reviewing resources from other uncontested searches while negotiations continued regarding the contested search strings.

31. On October 13, 2021, Plaintiffs advised the Court that they had Essentia's final position on the search terms and that Plaintiffs were going to bring a motion to compel application of further search terms by the end of the month. DCD

4

No. 128. Instead, on October 26, 2021, Plaintiffs requested updated data related to the search terms.

32. On November 12, 2021, Essentia emailed Plaintiffs, *see* **Essentia Ex. 6**, an updated version of the comprehensive spreadsheet outlining results from modified searches and proposing additional modifications, *see* **Essentia Ex. 2**. Essentia agreed to review resources recalled by some additional modified searches. **Essentia Ex. 6.**

33. In December, Plaintiffs advised that they had no issues to raise at a status conference with the Court, failing once again to raise issues with disputed search strings. *See* DCD No. 137; **Essentia Ex. 7**.

34. On January 4, 2022, Essentia emailed, *see* **Essentia Ex. 8**, Plaintiffs the final updated comprehensive spreadsheet with the results of the November 12, 2021, modifications, *see* **Essentia Ex. 2**. Essentia noted that Plaintiffs had yet to respond to four modified searches proposed by Essentia. **Essentia Ex. 8.**

35. The next day, Essentia noted that it had objected to three of Plaintiffs' proposed modified searches and provided an example of non-responsive documents for each. Again, Plaintiffs did not indicate that those examples were inadequate.

36. This correspondence and the final form of the comprehensive spreadsheet, *see* **Essentia Ex. 2**, demonstrate that Essentia has been very transparent, informative, and responsive with respect to the status of each search string, whether contested or uncontested.

37. At the January 11, 2021, Status Conference, Plaintiffs advised that they were going to bring the present Motion to Compel, which they did the next day.

**B.   The Work Performed**

38. Essentia ran all of Plaintiffs' 138 originally proposed searches.

39. Essentia has reviewed all unique resources recalled in response to 116 total search strings, including its eight search strings. Those searches encompassed 10,622 uniquely responsive resources.

40. The number of uniquely responsive resources is underinclusive of the total number of resources that Essentia reviewed. In reviewing the resources uniquely responsive to each search, Essentia also reviewed *related* resources (e.g., parents and children), which are not included in the unique resource count. For example, if an email included an attachment, Essentia reviewed the entire family for responsiveness to Plaintiffs' discovery requests even if only the email included the search terms.

5

41.   Essentia's eight search strings illustrates the underinclusive nature of the unique document count.  While those eight searches recalled 5,951 unique resources, Essentia's privilege log includes 8,146 resources from those searches (an approximate 30 percent increase).  Moreover, the privilege log does not include non-responsive resources or documents produced, further increasing the number of resources Essentia actually reviewed for its eight searches.

42.   Essentia's original eight searches also recalled the core responsive documents in this case.  Essentia identified over 8,100 responsive resources from those eight searches, as reflected in its privilege log.  Having completed review, Essentia anticipates that the remaining 108 uncontested search strings crafted by Plaintiffs will only result in approximately 850 additional responsive documents to include in a supplemental privilege log.  That is, Essentia's eight search strings account for over 90 percent of the responsive, but privileged, resources in this case.

43.   Likewise, Essentia anticipates that its review of Plaintiffs' 108 search strings will only result in the production of a single document in stark contrast to Essentia's prior production.

44.   Essentia has produced to Plaintiffs more than 3,500 pages in discovery thus far.

45.   Now, only 31 search strings remain in dispute.  Essentia has reviewed modified versions of four of those 31 search strings.  *See* **Essentia Ex. 2.**

46.   For each of the disputed search strings, Essentia qualitatively sampled the resources to determine that the search recalled an excessive number of non-responsive documents.  More specifically, the E-Discovery search platform identifies "hit ratings" on a percentage basis for each resource recalled by a particular search.  The "hit rating" represents the percentage of the search terms from a string that hit on a particular document (ranging anywhere from 100 percent to single digit percentages).  To qualitatively sample resources from each disputed search string, Essentia reviewed numerous resources from each "hit rating" percentage (from the 100-percent ratings, down to the single digits), checking for responsiveness of resources at every level.  Essentia objected to the search strings when its sampling revealed that nearly all of the resources were non-responsive.

47.   The 31 disputed search strings encompass (vastly non-responsive) 152,061 unique resources.  *See* **Essentia Ex. 2**.  Reviewing these largely non-responsive resources would come at great cost to Essentia.

48.   Based on its prior review of 116 uncontested searches, Essentia estimates that reviewing the 152,061 unique resources alone would take in excess of 5,096 hours.  Taking the average attorney rate for review, this would cost over

$1,150,663 in attorneys' fees.  This amount grossly understates the total cost of review, as it does not factor for review of related documents, as discussed above.

I declare under penalty of perjury that the foregoing is true and correct.

Dated this 25th day of January, 2022.

/s/ Robert B. Stock

Robert B. Stock (#05919)
rstock@vogellaw.com
Vogel Law Firm
218 NP Avenue
PO Box 1389
Fargo, ND  58107-1389
Telephone:  701.237.6983

7