**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA**

| | | |
|---|---|---|
| Jessica Kraft, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 3:20-cv-121 |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| Essentia Health, et al., | ) | |
| | ) | |
| Defendants. | ) | |

In this putative class action, plaintiffs allege defendants Essentia Health and Innovis Health LLC (collectively, Essentia) sold and administered injectable pharmaceuticals—time and temperature sensitive pharmaceutical products (TTSPPs)—that had been stored outside the proper temperature range. Plaintiffs contend the improper storage of TTSPPs resulted in "reduced vaccine potency and the increased risk of vaccine-preventable diseases." (Doc. 28, p. 2). Essentia's answer admits that in April 2020, it advised patients who had received certain TTSPPs that the TTSPPs may have been subjected to a temperature excursion, potentially rendering them less effective. (Doc. 30, p. 2). During the time in question, the TTSPPs were stored at defendant Dakota Clinic Pharmacy (DCP).

Plaintiffs allege only economic loss, seeking to recover costs of health care they received related to TTSPPs. They move to compel Essentia to produce certain financial information, contending the form in which Essentia has responded to discovery requests does not allow plaintiffs to estimate damages of members of a putative class. (Doc. 146). Essentia responds that it has produced voluminous de-identified financial data directly responsive to plaintiffs' discovery requests. Essentia further responds that plaintiffs have declined Essentia's invitation to take depositions to address questions about the

process Essentia used for compilation and production of the data at issue. (Doc. 154). In their reply, plaintiffs maintain their position that Essentia has not provided sufficient relevant data and that the depositions Essentia suggests would not provide the needed data. Plaintiffs suggest a third-party consultant be permitted to "extract and anonymize the original source data." (Doc. 155, p. 9).

## Background

Plaintiffs' requests for production of documents to Essentia included requests for "All documents relating to the Disclosed Temperature Excursion" and for all associated communications between Essentia and "any person who paid for or received an Affected Medication." (Doc. 146-2, p. 8). In their Request for Production of Documents No. 15, plaintiffs made a more detailed request for the following concerning putative class members:

Documents and data sufficient to identify:

> a. Each person or entity who paid, directly or indirectly, whether in whole or in part, for an Affected Medication;
>
> . . .
>
> h. The payment(s) made for the Affected Medication, whether or not made by the patient;
>
> i. The Payment(s) made for the visit at which the Affected Medication was provided;
>
> j. Any refunds, credits or other remuneration provided by you to any patient, payor or guarantor relating to the Affected Medications; and
>
> k. Any free vaccinations or other services provided by you.

Id. at 9.[1]

Plaintiffs' Requests for Production of Documents included the following "instruction":

> All documents that exist in electronic format are to be produced in their native format, or in another mutually agreeable format that provides Plaintiffs with all metadata associated with such electronic documents and allows Plaintiffs to search and organize such electronic documents in a manner that is as effective and efficient as that enjoyed by the producing party. Even if an alternative format is agreed to by the parties for some documents, (i) all excel spreadsheets, powerpoint presentations, or any other document containing embedded data, instructions, or notes should be produced in native format; and (ii) any document which contains color should be produced in color regardless of production format.

Id. at 6.

In response to plaintiffs' requests, Essentia produced twelve spreadsheets covering two billing categories: Professional Billing and Hospital Billing. (Doc. 154, p. 3). Plaintiffs describe the twelve spreadsheets as including

> three Hospital Billing Spreadsheets (one each for Flu, [Clinic Administered Medications (CAM)], and Medications), three Professional Billing Spreadsheets (one each for Flu, CAM, and Medications), and six spreadsheets that overlap with and largely duplicate the aforementioned six (one set of six spreadsheets has [Current Procedural Terminology (CPT)]

---

[1] Plaintiffs also assert Federal Rule of Civil Procedure 26(a)(1)(A)(ii) and (iii) required that Essentia produce information related to damages without any discovery request. (Doc. 146-1, p. 7). Because Essentia is not seeking damages, this court does not accept plaintiffs' interpretation of requirements for initial disclosures. See Fed R. Civ. P. 26 advisory committee's note to 1993 amendment ("A party claiming damages or other monetary relief must, in addition to disclosing the calculation of such damages, make available the supporting documents for inspection and copying as if a request for such materials had been made under Rule 34") (emphasis added); Bakambia v. Schnell, No. 0:20-cv-1433, 2021 WL 4933093, at *5 (D. Minn. Oct. 22, 2021); United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO-CLC v. EaglePicher Techs., LLC, No. 3:14-cv-05057, 2017 WL 5899722, at *1 (W.D. Mo. Feb. 28, 2017).

codes, for example, and the overlapping set does not, but they address the same services and amounts).

(Doc. 146-1, p. 7 n.3). The spreadsheets include (1) categories of charges—account administration, office visit, and pharmaceutical type, (2) total account charges on day of service, and (3) categories of payments—patient and insurance. Id. at 8.

Essentia describes the spreadsheet data as having been extrapolated from its Clarity database using "Structured Query Language" (SQL). (Doc. 154, pp. 9-10). With its response to the motion, Essentia filed an affidavit of a Senior Business Intelligence Analyst describing databases Essentia uses to store electronic medical records and describing the process Essentia used to compile the spreadsheet data. The affidavit states that Essentia utilizes two EPIC integrated electronic databases, "Chronicles" and "Clarity," for "storing, transferring, and analyzing data." (Doc. 154-1, p. 2). Further, the affidavit explained:

> Chronicles is an electronic database that houses a patient's entire record, including both medical and financial information. Chronicles is utilized by healthcare providers and other staff to enter and access individual patient data in real-time on a daily basis.
>
> Certain data from Chronicles is transferred nightly to Clarity by way of the extract, transform, and load ("ETL") process.
>
> Clarity is an electronic relational database that is designed for reporting on large amounts of data over long periods of time. The data stored in Clarity is accessed using SQL.

Id. at 2 (paragraph numbers omitted). The affidavit describes SQL as a coding language used as a tool to query databases and describes a query as "a way to ask a database a specific question to return data responsive to the question posed." Id.

The affidavit explains the process Essentia used to gather the data reflected in the spreadsheets:

4

Broadly, I accessed this data from Clarity using SQL, de-identified the data, and then extracted the data to Excel spreadsheets.

First, the pertinent patient population was defined as those receiving specific types of immunizations or medications, administered for a selected date range, at specific Essentia facilities.

Second, I queried the Clarity database, using SQL, for the charge transactions that were generated by the immunizations or medications administered to the pertinent patient population. This query returned financial information regarding the allegedly impacted immunizations and/or medications.

Third, I queried the Clarity database, using SQL, for CPT codes used to bill the pertinent patient population for administration and office visits.

Notably, administration charges create a unique challenge when a patient received more than one immunization and/or medication that were both stored by Dakota Clinic Pharmacy and stored by other facilities. The administration charges identified in the data include administration activity for dates of service, including administration of immunizations and/or medications not stored by Dakota Clinic Pharmacy.

When a patient receives more than one immunization and/or medication, we are unable to determine the administration charge that corresponds to each individual immunization and/or medication.

The office visit charges reflect that the patient saw a provider on the date the immunization and/or medication was administered. In addition, if the office visit only involved the immunization and/or medication administration it would not have resulted in an office visit charge.

Fourth, I further queried the Clarity database, using SQL, for professional billing payment transactions and payments made to the patient's billing account balance in the hospital billing system. The query for the hospital billing system returned the total payments on a patient's billing account for hospital charges. The Clarity database was able to distinguish between third-party payor payments and patient payments for the hospital billing system. However, unlike professional billing, payments are not apportioned to specific charges in the hospital billing system.

Fifth, I de-identified the data, using SQL, within the Clarity database.

Sixth, the data was aggregated using standard mathematical functions.

Lastly, the data responsive to the queries was exported to Excel spreadsheets.

> To summarize, I queried the Clarity database, using SQL, to pull existing data to directly respond to Plaintiffs' discovery requests. I did not modify or otherwise change the data in any way. The data provided is data, obtained directly from the Clarity database. No underlying documents exist from which the Clarity data was derived.

> The Total Account Charges on Day of Service include the total account charges on a particular day of service not limited to the vaccine charges, administration charges, and office visit charges.

Id. at 2-3 (paragraph numbers omitted).

Plaintiffs contend the spreadsheets are incomplete, report limited data unilaterally selected by Essentia, and were not produced with the necessary underlying, contextual, or confirmatory documents. (Doc. 146-1, p. 4). More specifically, plaintiffs argue (1) Essentia did not comply with a court order requiring conferral on a mutually agreeable methodology for database searching; (2) the numbers within the spreadsheets' subcategories do not add up to the totals provided for a category; (3) the data has been disaggregated and reaggregated in a manner that makes it "too convoluted to use"; (4) Essentia has not produced underlying documents plaintiffs need to test and validate the data; (5) without billing, payment, and service records, plaintiffs are not able to determine what charges and payments are related to services relevant to the case. Id. at 4-5. Plaintiffs posit examples of problems they perceive in the spreadsheets Essentia has produced: (1) the spreadsheets aggregate information in a manner resulting in plaintiffs being unable to determine whether a member of the putative class is included in more than one row or more than one spreadsheet; (2) lines of the spreadsheets list "Total Account Charges on Day of Service," but the amount given as the total is greater than the sum of the individual charges listed in the line; (3) the Hospital Billing spreadsheets do not include itemized payments for subcategory charges, services, or class members, such that plaintiffs cannot determine whether

6

payments received from insurers or patients relate to charges relevant to the litigation; (4) the data in the spreadsheets is not sufficient for plaintiffs to estimate payment amounts; (5) amounts identified as "Admin Charges" include all services performed on a given day, including other charges not at issue in the litigation. Id. at 8-14.

Essentia's response describes the process it used to prepare the spreadsheets and attributes some of plaintiffs' concerns to certain limitations in its database: (1) in its professional billing system, a matching payment exists for each charge, but in the hospital billing system, payments are not apportioned to specific charges; (2) if a patient received more than one medication or immunization on a given date, the administration charge attributable to each medication cannot be determined; (3) if a patient's office visit involved only an immunization or medication administration, no charge was made for an office visit; (4) the "Total Account Charges on Day of Service" includes charges other than those related to TTSPPs and so may be different from the sum of the subcategories listed on the spreadsheets; and (5) administration charges may have included charges for medications or immunizations other than the TTSPPs involved in this case. (Doc. 154, pp. 6-12).

Plaintiffs request that Essentia be ordered to produce four categories of information, which plaintiffs describe as:

(1) the Database Information: information about the data available in the Clarity database and Essentia's methodology for filtering and searching that data to create the Spreadsheets;

(2) the Missing Data: disaggregated Clarity data relating to the Disclosed Temperature Excursion (e.g., relating to the Affected Medications, re-vaccination or retreatment, the related medical visits, and associated administrative charges) and any services, payments, or charges intertwined with that data;

(3) the Underlying Documents: documents underlying or otherwise validating the Spreadsheets and the Clarity data from which the Spreadsheets are derived; and

(4) the Contextual Documents: documents relating to the Disclosed Temperature Excursion – as well as documents necessary to analyze that case-related information, including documents concerning any services, charges, and payments that are intertwined with those relevant to this case (e.g., same-day services relevant to Total Account Charges on Day of Service, Insurance Payments, Patient Payments, and Admin Charges, as well as Office Visit Charges to the extent Essentia now contends those charges encompass irrelevant services).

(Doc. 146-1, pp. 20-21).[2] Additionally, plaintiffs ask that Essentia be ordered to meet and confer regarding the "scope, methodology, and adequacy of its production from Clarity." Id. at 21.

## Law and Discussion

Federal Rule of Civil Procedure 34(b)(2)(D) and (E) addresses production of electronically stored information:

(D) *Responding to a Request for Production of Electronically Stored Information.* The response may state an objection to a requested form for producing electronically stored information. If the responding party objects to a requested form—or if no form was specified in the request—the party must state the form or forms it intends to use.

(E) *Producing the Documents or Electronically Stored Information.* Unless otherwise stipulated or ordered by the court, these procedures apply to producing documents or electronically stored information:

(i) A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request;

---

[2] Plaintiffs cite Lumina Worldwide, LLC v. Liown Electronics Co. Ltd., Civ. No. 14-3103, 2016 WL 6914995, at *3-4 (D. Minn. May 18, 2016), where the court required the plaintiff to disclose documents underlying data in a spreadsheet that supported the plaintiff's damages claim. Plaintiffs also cite Kam Hing Enterprises, Inc. v. Wal-Mart Stores, Inc., 359 F. App'x 235, 238 (2d Cir. 2010), in which the Second Circuit affirmed a district court order precluding testimony on cost calculations because the defendant had not produced underlying cost data to support summary data on spreadsheets. Neither case involved facts substantially similar to those of this case.

8

(ii) If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms; and

(iii) A party need not produce the same electronically stored information in more than one form.

When Rule 34(b) was amended in 2006, the Advisory Committee provided extensive notes concerning form of production of ESI:

Rule 34(b) provides that a party must produce documents as they are kept in the usual course of business or must organize and label them to correspond with the categories in the discovery request. The production of electronically stored information should be subject to comparable requirements to protect against deliberate or inadvertent production in ways that raise unnecessary obstacles for the requesting party. Rule 34(b) is amended to ensure similar protection for electronically stored information.

The amendment to Rule 34(b) permits the requesting party to designate the form or forms in which it wants electronically stored information produced. The form of production is more important to the exchange of electronically stored information than of hard-copy materials, although a party might specify hard copy as the requested form. Specification of the desired form or forms may facilitate the orderly, efficient, and cost-effective discovery of electronically stored information. The rule recognizes that different forms of production may be appropriate for different types of electronically stored information. Using current technology, for example, a party might be called upon to produce word processing documents, e-mail messages, electronic spreadsheets, different image or sound files, and <u>material from databases</u>. Requiring that such diverse types of electronically stored information all be produced in the same form could prove impossible, and even if possible could increase the cost and burdens of producing and using the information. The rule therefore provides that the requesting party may ask for different forms of production for different types of electronically stored information.

<u>The rule does not require that the requesting party choose a form or forms of production. The requesting party may not have a preference. In some cases, the requesting party may not know what form the producing party uses to maintain its electronically stored information, although Rule 26(f)(3) is amended to call for discussion of the form of production in the parties' prediscovery conference</u>.

The responding party also is involved in determining the form of production. <u>In the written response to the production request that Rule 34</u>

<u>requires, the responding party must state the form it intends to use for producing electronically stored information if the requesting party does not specify a form or if the responding party objects to a form that the requesting party specifies. Stating the intended form before the production occurs may permit the parties to identify and seek to resolve disputes before the expense and work of the production occurs. A party that responds to a discovery request by simply producing electronically stored information in a form of its choice, without identifying that form in advance of the production in the response required by Rule 34(b), runs a risk that the requesting party can show that the produced form is not reasonably usable and that it is entitled to production of some or all of the information in an additional form.</u> Additional time might be required to permit a responding party to assess the appropriate form or forms of production.

If the requesting party is not satisfied with the form stated by the responding party, or if the responding party has objected to the form specified by the requesting party, the parties must meet and confer under Rule 37(a)(2)(B) in an effort to resolve the matter before the requesting party can file a motion to compel. <u>If they cannot agree and the court resolves the dispute, the court is not limited to the forms initially chosen by the requesting party, stated by the responding party, or specified in this rule for situations in which there is no court order or party agreement.</u>

If the form of production is not specified by party agreement or court order, the responding party must produce electronically stored information either in a form or forms in which it is ordinarily maintained or in a form or forms that are reasonably usable. Rule 34(a) requires that, if necessary, a responding party "translate" information it produces into a "reasonably usable" form. Under some circumstances, the responding party may need to provide some reasonable amount of technical support, information on application software, or other reasonable assistance to enable the requesting party to use the information. The rule does not require a party to produce electronically stored information in the form it which it is ordinarily maintained, as long as it is produced in a reasonably usable form. <u>But the option to produce in a reasonably usable form does not mean that a responding party is free to convert electronically stored information from the form in which it is ordinarily maintained to a different form that makes it more difficult or burdensome for the requesting party to use the information efficiently in the litigation.</u> If the responding party ordinarily maintains the information it is producing in a way that makes it searchable by electronic means, the information should not be produced in a form that removes or significantly degrades this feature.

. . . .

Whether or not the requesting party specified the form of production, Rule 34(b) provides that the same electronically stored information ordinarily need be produced in only one form.

10

Fed R. Civ. P. 34 advisory committee's note to 2006 amendment (emphasis added).

### 1. ESI Order

In addition to Rule 34(b), the court considers its Order Governing Discovery of Electronically Stored Information, which was entered early in the litigation and which includes the following provision relevant to this dispute:

> **PRODUCTION OF DATABASES AND OTHER STRUCTURED DATA**
>
> Generally, databases should be produced in a mutually agreeable data exchange format. Certain types of databases are dynamic in nature and may contain information that [is] outside the scope of Fed. R. Civ. P. 26(b)(1). Thus, a party may opt to produce relevant and responsive information from databases in an alternate form, such as a report or data table in static format. Prior to production in an alternate form, the parties agree to identify the specific databases, by name, that contain the relevant and responsive information that parties will produce, and meet and confer regarding the format of production to determine a mutually agreeable format.

(Doc. 46, pp. 16-17). Plaintiffs allege Essentia did not confer with them about the intended form of data production and contend Essentia therefore did not comply with the ESI Order. Essentia argues the ESI Order allowed it to opt to produce its databases in a spreadsheet in static format. Further, Essentia contends its "obligation to comply with the procedures of the ESI Order is secondary to Essentia's obligation to timely respond to Plaintiffs' discovery requests under the Federal Rules of Civil Procedure." (Doc. 154, p. 8). It is not clear whether Essentia intends that statement to refer to its time to respond to the discovery requests or to some asserted difference between its obligations under the Rules and its obligations under the ESI Order. This court does not view the parties' obligation to comply with the ESI Order as "secondary" to the Rules; rather, the court views the ESI Order as delineating methods the parties are to use in responding to discovery requests in compliance with the Rules.

**2.    Court's Previous Order**

An earlier order addressed a dispute about plaintiffs' requests for production of information sufficient to identify each person or entity who paid for any part of the TTSPPs at issue. Essentia objected, arguing that it could provide only de-identified data[3] without signed authorizations of its patients. Plaintiffs asserted patient data need not be de-identified because the existing protective order is a "qualified protective order" under the federal Health Insurance Portability and Accountability Act (HIPAA). The court concluded the existing order is a qualified protective order under HIPAA and authorizes, but does not mandate, Essentia's disclosure of patient-specific information that has not been de-identified. But when the earlier order was issued, the court found plaintiffs had not yet demonstrated that production of the data requested met proportionality requirements of Federal Rule of Civil Procedure 26(b)(1). (Doc. 76, pp. 13-14).

Citing to that earlier order, Essentia argues that the benefit to plaintiffs of production of the detailed information plaintiffs now request is not outweighed by the burdens to Essentia and its patients, including the psychological harm resulting from violation of patient privacy interests of members of the putative class. (Doc. 154, p. 11). Essentia argues plaintiffs now seek data unrelated to the TTSPPs in order to understand the "Total Account Charges on Day of Service" data. Id. at 10. Essentia characterizes plaintiffs' current motion as a "colossal request . . . not proportionate to the needs of this case." Id. at 15.

Plaintiffs reply that they are not requesting patient names at this time even though the existing HIPAA-qualified protective order would authorize disclosure of

---

[3] Essentia's de-identification of patient data included removal of patient names, payor and provider names, days and months of service, names of facilities at which the services were provided, and facility locations other than state. (Doc. 154, p. 6 and n.2).

patient names. (Doc. 155, pp. 8-9). But, if it is necessary for Essentia to provide patient-specific data in order to produce all of the data plaintiffs need to estimate damages of the putative class, plaintiffs have now shown need for that data. Whether the request now meets proportionality requirements of Rule 26 is discussed in the conclusion below.

### 3.    Data in Reasonably Usable Form

If a request for production of data does not specify the form in which the requesting party seeks production, Rule 34(b)(2)(E) requires that data be produced either in the form in which it is ordinarily maintained or in a "reasonably usable form." Comments to the Rule, the ESI Order, and the "instructions" of plaintiffs' requests for production of documents all contemplated communication between the parties prior to production of Essentia's responses. That did not happen.

In summary, Essentia states it has produced information "reflective of the data the Clarity database was able to return in response to specific query" and that it has not altered or "cherrypick[ed]" the data. (Doc. 154, pp. 11, 16). Essentia insists the spreadsheet data "*is* the data; it is the 'source' data; it is *the* financial data."[4] Id. at 13.

---

[4] Essentia cites Honeywell International Inc. v. Forged Metal Inc., No. CV-19-03730, 2021 WL 4427067, at *4-5 (D. Ariz. Sept. 27, 2021), in which the court did not require the plaintiff to produce documents supporting a spreadsheet when the spreadsheet was the underlying information on which the plaintiff's damages calculations relied, the defendant had the ability to calculate its own damages theory based on the spreadsheet, no unproduced purchase orders or other documents had been identified, and the defendant had the opportunity to challenge the spreadsheet during a deposition. Essentia also cites United States ex rel. Hockaday v. Athens Orthopedic Clinic, P.A., No. 3:15-cv-122, 2020 WL 6880835, at *3 (M.D. Ga. Nov. 23, 2020), in which the plaintiff requested claims data on government claim forms, the defendant attempted to export claims data on to the forms but it did not produce a readable result, the defendant exported claims data into a spreadsheet, and the only means to acquire each form was for the defendant to print each individual form for hundreds of thousands of claims. The court concluded the spreadsheet was in a reasonably useable form but required the defendant to produce evidence regarding the claims certifications. Neither case involved facts substantially similar to those of this case.

Because of the manner in which Essentia maintains its data, Essentia acknowledges the spreadsheet data is over-inclusive in some respects. The spreadsheets may be under-inclusive in other respects.

Essentia contends plaintiffs should take depositions if they wish to challenge the data or the process Essentia used to export the data. Plaintiffs respond that they should not be required to expend time and money to get the "basic information" they seek and that they could not reasonably be expected to obtain "*substantive missing data*" involving "thousands of financial data points" through depositions. (Doc. 155, p. 4). Though deposition questioning might provide more detail on how Essentia searched and produced the disputed data, a deposition would likely not be an efficient method of securing the additional data plaintiffs need to estimate damages of the putative class.

Notwithstanding the spreadsheet data being the data, plaintiffs have identified various ways in which that data is not sufficient to allow them to reasonably estimate damages of the putative class. The court agrees with plaintiffs' assessment: the spreadsheet data is not in a reasonably usable form.

### Conclusion

In considering the factors of Rule 26(b)(a), the court concludes plaintiffs have shown the importance of obtaining additional information to estimate damages of the putative class. The amount in controversy is significant and the issues in the case cannot be resolved without additional information about estimated damages. As to relative access to relevant information, plaintiffs have no direct access to Essentia's databases. The court recognizes, however, the burden to Essentia in providing additional data for all members of the putative class would be very significant. And it might be possible to

provide the necessary data to plaintiffs without providing all of the patient information that comprises the "Total Account on Day of Services Charges."

A remedy is in order. But the court will seek comments from the parties prior to ordering a specific remedy. Potential remedies might include one or more of the following: (1) the parties stipulating to a method for calculating damages of the putative class, (2) informal discussions between technical consultants plaintiffs may have retained and Essentia's business intelligence analysts, (3) a third-party technical consultant being allowed access to Essentia's database, (4) use of a court-appointed expert or special master, (5) Essentia providing more detailed data of a representative sample of members of the putative class, or (6) another remedy designed by the parties.

The parties are directed to confer, **within five business days of the date of this order**, to discuss the potential remedies the court has outlined as well as any other method that might be used to provide the additional information plaintiffs need to estimate damages of the putative class. The court encourages the parties to design a mutually acceptable resolution, but if they are not able to do so, the court will determine an appropriate remedy. The court will schedule a status conference shortly after expiration of the five-day period to discuss a remedy.

**IT IS SO ORDERED**.

Dated this 1st day of February, 2022.

/s/ Alice R. Senechal
Alice R. Senechal
United States Magistrate Judge

15