UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA
EASTERN DIVISION

| | |
|---|---|
| JESSICA KRAFT, individually and as parent of minors L.K., S.K., and O.K.; SHELLI SCHNEIDER, individually and as parent of minors A.S. and W.S.; ANNE BAILEY, individually and as parent of minor D.B.; AMY LAVELLE, individual and as parent of minors Em.L. and El.L.; ELIZABETH BEATON, individually and as parent of minor M.B.; AMANDA AND TYRELL FAUSKE, individually and as parents of minors C.R.F. and C.J.F.; JENNIFER REIN, individually; and JESSICA BERG, individually and as parent of minors A.B. and S.B., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ESSENTIA HEALTH, INNOVIS HEALTH, LLC d/b/a ESSENTIA HEALTH, DAKOTA CLINIC PHARMACY, LLC, JOHN DOE MANUFACTURERS, and JOHN DOE DISTRIBUTOR,<br><br>Defendants. | Case No. 3:20-CV-00121<br><br>**ESSENTIA HEALTH'S AND INNOVIS HEALTH, LLC'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS WITHHELD AS PRIVILEGED** |

## I.    **INTRODUCTION**

Defendants, Essentia Health and Innovis Health, LLC d/b/a Essentia Health West (collectively, "Essentia"), submit this Memorandum in opposition to Plaintiffs' Motion to Compel Essentia to produce documents withheld as privileged. Essentia complied with this Court's previous Orders requiring it to produce additional detail in its supplemental privilege

VLF-4671527v1

logs.  As it stands, Essentia's supplemental privilege logs demonstrate the applicability and validity of the privileges asserted.  There is no basis on this record to require disclosure of documents which Essentia has withheld as privileged.

Essentia also opposes Plaintiffs' baseless request for this Court to award Plaintiffs' their fees and costs incurred in bringing the present motion.  Essentia has acted in good faith, not only preserving the applicable privileges, but also working to comply with the Court's Orders and seeking guidance from the Court when necessary.  This is simply not a case where Essentia ignored Plaintiffs' discovery requests and therefore waived any objections to the same.  *Cf. Cargill, Inc. v. Ron Burge Trucking, Inc.*, 284 F.R.D. 421 (D. Minn. 2012).  Nor is it a case where Essentia wholly failed to timely produce any privilege log, like many of the cases on which Plaintiffs rely.  *See RightCHOICE Managed Care, Inc. v. Hosp. Partners, Inc.*, 489 F. Supp. 3d 907, 914-15 (W.D. Mo. 2020) (no privilege log until four months after the deadline for fact discovery); *In re VeroBlue Farms USA, Inc.*, No. 18-01297, 2012 WL 1583150, at *2 (Bankr. N.D. Iowa April 22, 2021) (no privilege log for over a year).

What is more, many courts in this circuit have expressed skepticism about whether waiver is an available—let alone appropriate—remedy for deficiencies in privilege logs.  *See City of Pontiac Gen. Emp. Retirement Sys. v. Wal-Mart Stores, Inc.*, No. 5:12-cv-5162, 2016 WL 7638495, at *3 (W.D. Ark. Sept. 28, 2016); *see also Bores v. Domino's Pizza, LLC*, No. 05-2498, 2007 9735903, at *37 (D. Minn. Jan. 25, 2007) (waiver of privilege is "too draconian of a sanction").  Regardless, neither that draconian sanction nor fees are appropriate here, as Essentia has produced over 8,100 detailed entries on a privilege log in a good-faith attempt to comply with existing law and the Court's orders.

VLF-4671527v1

Accordingly, Essentia respectfully requests that this Court deny Plaintiffs' Motion to Compel Essentia to produce documents withheld as privileged. Alternatively, should the Court require additional information, Essentia respectfully requests that the Court undertake an in-camera review of the documents identified in Essentia's supplemental privilege logs.

## II.  **FACTUAL AND PROCEDURAL BACKGROUND**

As this Court is well-versed, a discovery dispute arose between the parties during the course of this litigation as to what level of detail is required to assert the peer review/quality assurance privilege in a privilege log. Following briefing on this issue, including Essentia's in-camera submission of a representative sample of documents for which it claimed application of the peer review/quality assurance privilege, this Court issued its Order Regarding Discovery Dispute on August 2, 2021. (Doc. ID No. 79, *Order Regarding Discovery Dispute*). The Court recognized the broad nature of the peer review/quality assurance privilege and also indicated, but did not find, that "it appears at least some of the documents submitted for in camera review will be protected by a peer review privilege." *Id.* at p. 12. The Court, nonetheless, required Essentia to provide a more detailed privilege log for those documents for which it claims application of the peer review/quality assurance privilege, including the following:

> (1) the date on which it was created, (2) identity of the person who created it and the position held by that person at the time the document was created, (3) identity of persons who received the document and their positions, (4) a description of the subject matter of the document, (5) inclusive document identification numbers, and (6) specific reference to the portion of the North Dakota or Minnesota privilege the document is asserted to meet.

*Id.* at pp. 12-13.

Essentia appealed the Order Regarding Discovery Dispute on August 2, 2021, and Judge Welte affirmed the Order on September 7, 2021. (Doc. ID No. 109, *Order*). Essentia

VLF-4671527v1

filed a Petition for Writ of Mandamus with the Eighth Circuit Court of Appeals, seeking review of The Court's Order. The Eighth Circuit Court of Appeals declined to accept Essentia's Petition for Writ of Mandamus on September 20, 2021. Essentia then produced supplemental privilege logs, including the detail identified by the Court's Order Regarding Discovery Dispute.

Subsequently, "[d]uring an October 13, 2021, status conference, [P]laintiffs raised an issue of adequacy of Essentia's subject matter descriptions." (Doc. ID No. 129, *Order Regarding Privilege Logs,* at pg. 1). The Court acknowledged that Essentia "had used the same subject matter descriptions it used in logs provided for in camera review in connection with the August 2, 2021 Order." *Id.* The Court also acknowledged its earlier Order did not specifically address the subject matter descriptions. *Id.* at pg. 2. The Court's October 14, 2021, Order required Essentia to "provide additional detail, specific to each document over which it claims the privilege." *Id.*

In compliance with the Court's October 14, 2021 Order, and consistent with the Court's Order Governing Electronic Discovery in this case, Essentia again produced supplemental privilege logs, including more detailed subject matter descriptions on a rolling basis. Essentia produced its most recent supplemental privilege log on February 4, 2022. Despite Essentia's supplemental privilege logs, and the detail contained therein, Plaintiffs suggest Essentia failed to comply with the Court's October 14, 2021 Order and that the subject matter descriptions demonstrate the asserted privileges are not applicable. However, contrary to Plaintiffs' argument, the opposite is quite true. Essentia resists Plaintiffs' present Motion as its supplemental privilege logs demonstrate both that it complied with the Court's Orders and that the documents identified in its supplemental privilege logs are, indeed, privileged.

## III.    LAW AND ARGUMENT

### A.    Essentia's Privilege Log complies with Rule 26(b)(5)(A)(ii) of the Federal Rules of Civil Procedure and this Court's Orders.

Rule 26 of the Federal Rules of Civil Procedure governs when a privilege log must be produced.  FED. R. CIV. P. 26.  Rule 26(b)(5)(A)(ii) provides a party claiming an applicable privilege must "describe the nature of the documents, communications, or tangible things not produced or disclosed, and do so in a matter that, without revealing information itself privileged or protected, will enable other parties to assess the claim."  FED. R. CIV. P. 26(b)(5)(A)(ii).  By its plain terms, Rule 26 does not require the disclosure of protected information in describing the information withheld subject to an applicable privilege.[1]

"The rule does not attempt to define for each case what information must be provided when a party asserts a claim of privilege."  FED. R. CIV. P. 26(b)(5)(A)(ii) Advisory Committee's Note to 1993 Amendment.  In fact, "details concerning time, persons, general subject matter, etc., may be appropriate if only a few items are withheld;" however, the Rule also contemplates describing privileged information more broadly by category.  *Id.*  In

---

[1] The relationship between the requirements of Rule 26(b)(5)(A)(ii) and the peer review/quality assurance privilege is a matter of first impression.  However, the North Dakota Supreme Court is scheduled to address the intersection of North Dakota's equivalent of the Rule and North Dakota's peer review/quality assurance statutes on February 24, 2022.  *See St. Alexius Medical Center, a North Dakota Corporation, d/b/a CHI St. Alexius Health Bismarck v. The Honorable Pam Nesvig, Judge of the Court, South Central Judicial District, et. al,* Docket No. 20220005.  In that case, the District Court required the disclosure of the date of creation, identity of the creator, and their position, the identify of the recipients, and their position.  *See McKibbage v. Daniel Dixon, M.D. et. al.,* Case No. 08-2019-CV-00640, Doc. ID No. 322, *Order on Motion to Compel,* at ¶ 5.  The District Court in *McKibbage* did not, however, require the disclosure of detailed subject matter descriptions, finding that the "[t]he disclosure of this information is prohibited by law." *Id.* at ¶ 6.  In that case, the District Court opined, "[m]ost certainly disclosure of the general subject is a violation of even the most basic 'summary' and is prohibited by law." *Id.*

5

addition, under certain circumstances "some of the pertinent information affecting applicability of the claim…may itself be privileged."  *Id*. "[T]he rule provides that such information need not be disclosed." *Id*.

Despite Plaintiffs' assertion to the contrary, Essentia's supplemental privilege logs comply with the dictates of Rule 26(b)(5)(A)(ii) and this Court's prior Orders, as outlined below.  More specifically, review of Essentia's supplemental privilege logs demonstrate that Essentia described the documents withheld as privileged with sufficient detail to allow Plaintiffs to assess the claim without revealing information which is itself privileged.   In addition, Essentia's supplemental privilege logs, on their face, support the invocation of the privileges asserted.

> **B.**     **A choice-of-law analysis is unnecessary, but dictates that North Dakota law governs.**

"All evidentiary privileges asserted in federal court are governed, in the first instance, by Federal Rule of Evidence 501." *North Dakota v. United States*, 64 F. Supp. 3d 1314, 1329 (D.N.D. 2014).  Under Rule 501, federal common law generally governs claims of privilege.  However, "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." FED. R. EVID. 501.  Thus, while Essentia's claims of work product are governed by federal law,[2] its claims of peer-review, attorney-client, and physician-patient privilege are governed by state law. *See USI Ins. Servs. LLC v. Bentz*, No. 1:18-cv-255, 2021 WL 4165376, at *2 (D.N.D. Sept. 13, 2021).

---

[2] The work-product doctrine is not a substantive privilege under Rule 501 and, therefore, is governed by federal law. *See generally Baker v. Gen. Motors Corp.*, 209 F.3d 1051 (8th Cir. 2000).

VLF-4671527v1

Essentia has asserted its privileges under both North Dakota and Minnesota law.  A choice-of-law analysis is not required between North Dakota and Minnesota law because no conflict exists between the two states' laws on privilege on these facts.  That is, both states' laws support Essentia's claims of privilege.  However, Plaintiffs assert that "*if* a choice of law analysis is required Minnesota's privilege should apply."  (Doc. ID No. 161, *Pls.' Mem. in Supp.*, at p. 6) (emphasis added).  Essentia disagrees.  Although Essentia maintains that no conflict exists, North Dakota law should govern if the Court finds choice-of-law analysis is necessary.[3]

This Court "must apply the forum's conflict of laws rules."  *Pritchard-Keang Nam Corp. v. Jaworski*, 751 F.2d 277, 281 n.4 (8th Cir. 1984).  However, no North Dakota case law has articulated the choice-of-law rule for privileges.  *See* 23A FED. PRAC. & PROC. EVID. § 5435 (noting most jurisdictions have yet to address choice of law for privileges).  Thus, this Court must predict the approach that North Dakota courts would take.

Plaintiffs assert that North Dakota would adopt the Restatement's "most significant relationship" approach, seemingly because North Dakota relies on the Restatement in other contexts.  *See* Doc. ID No. 161, *Pls. Mem. in Supp.*, at pp. 9-12; *see also* Restatement (Second) of Conflict of Laws § 139 (1988).  However, the Restatement's approach to privileges has "serious conceptual flaws" that make it unlikely a North Dakota court would follow it.  23A FED. PRAC. & PROC. EVID. § 5435.  First, "the only relationship the Restatement recognizes as significant is geographic," which is "seldom sufficient" particularly when, like

---

[3] "Plaintiffs do not envision an outcome-determinative conflict with other state-law privileges such as medical or attorney-client privileges . . . ."  (Doc. ID No. 161, *Pls.' Mem. in Supp.*, at p. 12 n.10).  Essentia agrees and thus focuses much of its choice-of-law analysis below on peer-review privilege.

here, the privileges involve an entity engaged in interstate business. *Id.* That is, the Restatement incorrectly assumes that communications occur only in one state, when, like here, they often cross state lines. *See id.* Second, the Restatement focuses only on the situation where one state recognizes a privilege and the other does not, overlooking the more likely conflict between two states that both honor the privilege but differ in scope. *See id.*

Given these limitations, courts often "apply the forum privilege to all communications." *Id.*; *see also Simon v. G.D. Searle & Co.*, 816 F.2d 397 (8th Cir. 1987) (applying law of forum); *Bartholomew v. Avalon Capital Gr., Inc.*, 278 F.R.D. 441, 447 (D. Minn. 2011) (collecting Eighth Circuit cases that apply the law of the forum or the laws of both states where similar); *Filz v. Mayo Found.*, 136 F.R.D. 165, 167 n.3 (D. Minn. 1991) (same); *accord Hatfill v. N.Y. Times Co.*, 459 F. Supp. 2d 462, 465 (E.D. Va. 2006) (collecting cases applying the law of the forum absent choice-of-law guidance); *In re A.H. Robins Co.*, 107 F.R.D. 2 (D. Kan. 1985) (employing the law of the forum in a multidistrict proceeding). There is good reason to believe North Dakota would do the same.

This approach makes sense, given that many jurisdictions follow the general rule that the forum controls the admissibility of evidence. *See Jaworski*, 751 F.2d at 281 n.4 ("[T]he general rule is that the law of the forum governs admissibility of evidence."); *Crowe v. Booker Transp. Servs., Inc.*, No. 11-690-CV-FJG, 2013 WL 394184, at *5 (W.D. Mo. Jan. 30, 2013) (same); *Union Planters Nat'l Bank of Memphis v. ABC Records, Inc.*, 82 F.R.D. 472, 474 (W.D. Tenn. 1979) (same). Additionally, applying the forum's law is consistent with the legislative history of North Dakota's peer-review statutes. More specifically, the provisions were amended in 2009 to allow statistical information sharing between peer review and other entities outside of North Dakota. *Hearing on S.B. 2403, Before the S. Human Servs. Comm'n*,

8

61st Leg. Assem. (2009) (Testimony of John C. Kapsner, Counsel to N.D. Healthcare Association). The definition was changed from "peer review committee" to "peer review organization" to more closely align North Dakota's approach to Minnesota's and to recognize the expanded scope of entities that conduct peer review as well as to recognize the fact that peer review can cross state lines. *Id.*

Thus, it is unlikely a North Dakota court would follow the Restatement approach, given its flaws and that North Dakota's legislative history anticipates interstate application. That is particularly true where, as here, most of the communications at issue are not isolated to one state. However, even when assessing the "most significant relationship" under the Restatement, North Dakota law governs. The bulk of Plaintiffs' claims are brought under North Dakota substantive law, and many of the putative class members are North Dakota residents. Similarly, the potential temperature excursion allegedly occurred in North Dakota, with many of the communications, therefore, discussing the same. Moreover, as noted above, many of the communications at issue span across more than one state, including North Dakota. Thus, while a choice-of-law analysis is unnecessary, it dictates that North Dakota law applies.

C.   **Essentia's supplemental privilege logs demonstrate applicability of peer review/quality assurance privilege.**

1.   **Peer review/quality assurance privilege under applicable North Dakota Law.**

Broadly, Chapter 23-34 of the North Dakota Century Code "establishes a privilege for documents that meet the definition of 'peer review records,' and provides that those records are not subject to subpoena, civil discovery, or introduction into evidence." *Guttormson v. ManorCare of Minot ND, LLC*, No. 4:14-CV-36, 2015 WL 11147876, at *2 (D.N.D. Sept. 28, 2015). "Peer review records are confidential and may be used by a peer review organization

9

VLF-4671527v1

and the organization members only for conducting a professional peer review." N.D. CENT. CODE § 23-34-01(1).

"There are two prongs to the statutory definition of 'peer review record," which reinforce the design of the peer review/quality assurance privilege to promote "open discussions and candid self-analysis…to ensure that medical care of high quality will be available to the public." *Guttormson*, No. 4:14-CV-36, 2015 WL 11147876, at *2; *Trinity Med Ctr. Inc. v. Holum*, 544 N.W.2d 148, 154 (N.D. 1996) (quoting *Moretti v. Lowe*, 592 A.2d 855, 857-58 (R.I. 1991)), *superseded by* N.D. CENT. CODE § 23-34.  Under the first prong, "[d]ata, information, reports, documents, findings, compilations and summaries, testimony, and any other records generated by, acquired by, or given to a peer review organization as a part of any professional peer review, regardless of when the record was created" are protected from disclosure. N.D. CENT. CODE § 23-34-01(4)(a)(1).  In addition, the peer review privilege extends to "[c]ommunications relating to a professional peer review, whether written or oral, between…peer review organization members and other individuals participating in a professional peer review." N.D. CENT. CODE § 23-34-01(4)(a)(2).

In turn, "professional peer review" is defined as "all procedures of a peer review organization or functions it performs to monitor, evaluate, and take action to review the medical care provided to patients by health care organizations or health care providers." N.D. CENT. CODE § 23-34-01(5).  Professional peer review is not limited to just those activities which may be considered "peer review" in the literal sense of the phrase.  In fact, professional peer review specifically

> includes procedures or functions to:  [e]valuate and improve the quality of health care; [o]btain and disseminate data and statistics relative to the treatment and prevention of disease, illness, or injury; [d]evelop and establish guidelines for

10

VLF-4671527v1

medical care and the costs of medical care; [p]rovide to other affiliated or nonaffiliated peer review organizations information that is originally generated within the peer review organization for the purposes of professional peer review; [i]dentify or analyze trends in medical error, using among other things a standardized incident reporting system; and [p]rovide quality assurance.

*Id.*

"Peer review organization" is also broadly defined to encompass health care organizations, including hospitals, hospital medical staff, clinics, physicians, a group of physicians, pharmacies, associations or organizations of medical professionals, as well as any combination of these entities. N.D. CENT. CODE §§ 23-34-01(3)(a) & 23-34-01(1). In addition to health care organizations, committees of health care organizations, "composed of health care providers employees, administrators, consultants, agents, or members of the care health care organization's governing body," are also included in the definition of peer review organization. N.D. CENT. CODE § 23-34-01(3)(b). As the Court previously made clear, "plaintiffs do not contest Essentia's inclusion under" the definition of health care organization. (Doc. ID No. 79, *Order Regarding Discovery Dispute*, at pg. 6).

The peer review/quality assurance privilege is subject only to a few, narrowly defined statutory exceptions. By definition, peer review records do not include original source documents. N.D. CENT. CODE § 23-34-01(4)(b). In addition, the privilege afforded to peer review records does not extend to "[r]ecords gathered from an original source that is not a peer review organization;" testimony based on personal knowledge, so long as the information was not obtained as a result of that person's participation in the peer review process, and peer review records subpoenaed by the North Dakota Board of Medicine. N.D. CENT. CODE § 23-34-03.

11

## 2.    Peer review/quality assurance privilege under applicable Minnesota law.

The peer review/quality assurance privilege under Minnesota law is similarly broad in recognition of the purpose of Minnesota's peer review statutory scheme, "to promote the strong public interest in improving health care by granting certain protections to medical review organizations…and to encourage the medical profession to police its own activities with minimal judicial interference." *Larson v. Wasemiller*, 738 N.W.2d 300, 312 (Minn. 2007) (internal citations omitted).    Accordingly, Minnesota law shields "data and information acquired by a review organization, in the exercise of its duties and functions, or by an individual or other entity acting at the direction of the review organization" from disclosure by subpoena or discovery.    Minn. Stat. § 145.64, subd. 1.    In fact, the peer review/quality assurance privilege in Minnesota precludes the disclosure of peer review information "to anyone except to the extent necessary to carry out one or more of the purposes of the review organization." *Id*.    In addition, "[t]he proceedings and records of a review organization shall not be subject to discovery or introduction into evidence in any civil action against a professional arising out of the matter or matters which are the subject of consideration by the review organization." *Id*.

"Review organization" is defined as "a committee whose membership is limited to professionals, administrative staff, and consumer directors…which is established by…a hospital, a clinic…the Department of Human Services, or a nonprofit corporation that owns, operates, or is established by one or more of the above referenced entities, to gather and review information relating to the care and treatment of patients for the purposes of," among other

12

VLF-4671527v1

things, "evaluating and improving the quality of health care."  Minn. Stat. § 145.61, subd. 5. There is, again, no dispute that Essentia meets this definition.

Not unlike the peer review/quality assurance statutes in North Dakota, the exceptions to the peer review/quality assurance privilege under Minnesota law are few and limited. Minnesota's peer review statutes do not preclude the discovery and disclosure of "information, documents or records otherwise available from original sources."  Minn. Stat. § 145.64, subd. 1.  Moreover, a person who participated in a peer review proceeding can testify as to their personal knowledge, if any, but cannot be asked about testimony provided to the review organization or opinions formed as a result of the peer review proceeding.  *Id*.

### 3.    Peer review/quality assurance privilege as applied to Essentia's supplemental privilege logs.

Plaintiffs suggest, without citation, that neither state's peer review/quality assurance privilege protects peer review records in a case against a healthcare entity or pharmacy. Plaintiffs' lack of citation is telling because such suggestion could not be further from the truth and demonstrates Plaintiffs' fundamental misunderstanding of the privilege at issue.  Plaintiffs rely, almost exclusively, on caselaw from other jurisdictions, interpreting other state's peer review/quality assurance statutes.  This reliance is misguided.  Caselaw interpreting other states' statutes "is not highly persuasive" given "the lack of uniformity among the various states' peer review privilege statutes."  *Trinity*, 544 N.W.2d at 153.  This is so because "'there is extremely wide variation in the privilege granted by the states,' and that there is little consistency in the entities covered or types of information protected."  *Id*.  To be sure, even where two states' peer review/quality assurance statutes are similar, it is error to rely on a

13

VLF-4671527v1

court's interpretation of a different state's law in analyzing the peer review/quality assurance privilege in either North Dakota or Minnesota.

Recognizing, as they must, that the plain language of the statutes at issue control, Plaintiffs, in fleeting fashion, argue that Essentia made no effort to support the existence or scope of the applicable privilege, which is patently false. Similarly, although Plaintiffs also suggest that both Minnesota and North Dakota Courts have "explicitly recognized the need to narrowly interpret" the peer review/quality assurance privileges, the cases cited by the Plaintiffs on this point demonstrate the plain language of the applicable peer review/quality assurance statutes at issue governs. *See Burlington N. v. State,* 500 N.W.2d 615 (N.D. 1993); *Rocky Mount. Oil & Gas Ass'n v. Conrad*, 405 N.W.2d 279 (N.D. 1987); *Amaral v. Saint Cloud Hosp.,* 598 N.W.2d 379, 384 (Minn. 1999) (Courts are not free to "disregard the letter of the law under the pretext of pursuing the spirit of the law."). Here, there is nothing ambiguous about the peer review/quality assurance statutes at issue, or perhaps more importantly, the narrowly defined statutory exceptions to the peer review/quality assurance privilege.

And yet, Plaintiffs rely heavily on *Trinity* in an effort to somehow demonstrate Essentia's assertions of the peer review/quality assurance statutes are overboard. Important, and absent in Plaintiffs' analysis, is the fact that North Dakota's peer review statutes were substantially overhauled in 1997, after *Trinity* was decided. *Guttormson v. ManorCare of Minot ND, LLC*, No. 4:14-CV-36 (D.N.D. July 20, 2015) (Doc. ID No. 225). Indeed, the 1997 amendments were passed in direct response to the *Trinity* decision, which was described as a "very narrow and strict statutory interpretation to those [peer review] provisions." *Hearing on S.B. 2301*, *Before the S. Human Servs. Comm'n*, 1997 Leg. Assem. (Testimony of Sen. Lee).

14

As was explained at the time, "if [the *Trinity*] interpretation remains without correction, health care professionals will not be able to candidly participate in" the peer review process for fear of disclosure in later litigation. *Id*. "The consequence will be reduced quality of care." *Id*.

The revisions made to North Dakota's peer review statutes in 1997, no doubt, served only to broaden the scope of the privilege. For example, at the time *Trinity* was decided, Section 23-01-02.1 limited the peer review privilege to proceedings and records of "committees mandated by law or the JCAHO standards, and to an internal quality assurance/medical review committee." *Trinity*, at 155. Section 23-01-02.1 also made a distinction between records that were confidential as opposed to privileged. As the Court in *Trinity* explained, "confidentiality addresses the obligation to refrain from disclosing information to third parties other than as part of legal process." *Id*. at 156. Section 23-01-02.1 rendered information made available to the committees encompassed by the statute confidential and only provided privilege to "the proceedings and records of" covered committees. *Id.* In contrast, the peer review/quality assurance statutes in North Dakota today make peer review records both confidential and privileged and do not limit the privilege to a few narrow specifically delineated committees. *See* N.D. CENT. CODE § 23-34-01. In addition, the statutory amendments redefined peer review records to include data, information, reports, documents, findings, compilations, summaries, testimony, and any other records "generated by, acquired by, or given to a peer review organization as part of any professional peer review." N.D. CENT. CODE § 23-34-01(4)(a)(1).

Despite the undisputed breadth of the peer review/quality assurance privilege and the plain language of the statutes, which define the scope of the applicable privilege, Plaintiffs

15

VLF-4671527v1

contend Essentia was required to disclose the following information in order to establish application of the peer review/quality assurance privilege:

> the dates of the peer review, the members of the peer review organization, the subject matter and scope of the peer review, that the withheld documents are the type of "data and information" governed by the peer review privilege, that the withheld documents were acquired by peer review members in the exercise of their peer review duties, that the withheld documents were created or provided to the peer review organization solely for purposes of the peer review, that the withheld documents were not used for purposes other than the peer review process, and that the withheld documents are not original source documents, e.g., in Essentia's possession, custody, or control from sources outside of the peer review.[4]

(Doc. ID No. 161, *Memorandum in Support of Plaintiffs' Motion to Compel Essentia Health's and Innovis Health, LLC's Production of Documents Withheld as Privileged*, at pgs. 19-20). In other words, Plaintiffs believe that in order to appropriately assert the peer review/quality assurance privilege Essentia is required to disclose information which is protected from disclosure by the peer review/quality assurance privilege itself. The information Plaintiffs seek is beyond that which is required by this Court's Orders, the Federal Rules of Civil Procedure, and what the peer review/quality assurance statutes permit.

---

[4] This further demonstrates Plaintiffs' fundamental misunderstanding of the peer review/quality assurance privilege. As the Court in *In re Fairview-Univ. Med. Ctr.* explained, the "original source" exception means "documents available from other sources remain discoverable form other sources." 590 N.W.2d 150, 154 (Minn. Ct. App. 1999). "This was the case under the [pre-1997 North Dakota law] and it remains the case under" the law today. *Hearing on S.B. 2301*, *Before the S. Human Servs. Comm'n*, 1997 Leg. Assem. (Testimony of Nancy Willis, V.P. of N.D. Healthcare Ass'n). North Dakota law protects peer review records "generated by, acquired by, or given to a peer review organization as part of any professional peer review, regardless of when the record was created." N.D. CENT. CODE § 23-34-01(4)(a)(1) (emphasis added). An example of an original source is the individual plaintiff patient's personal medical record. *Hearing on S.B. 2301*, *Before the S. Human Servs. Comm'n*, 1997 Leg. Assem. (Testimony of Nancy Willis, V.P. of N.D. Healthcare Ass'n).

This Court previously required Essentia to include the following information in its privilege logs:

> (1) The date on which each document was created, (2) the identity of the person who created each document and the position held by that person at the time the document was created, (3) the identity of persons who received the document and their positions, (4) a description of the subject matter of the document, (5) inclusive document identification numbers, and (6) specific reference to the privilege asserted.

(Doc. ID No. 79, *Order Regarding Discovery Dispute,* at pp. 12-13).  Subsequently, the Court required Essentia to "provide additional detail, specific to each document over which it claims the privilege."  (Doc. ID No. 129, *Order Regarding Privilege Logs,* at p. 2).  As is evident from the face of Essentia's supplemental privilege logs, that is exactly what Essentia provided. In addition, that is all that is required of it under Rule 26 of the Federal Rules of Civil Procedure.  *See* FED. R. CIV. P. 26(5)(A)(ii) ("[D]escribe the nature of the documents, communications, or tangible things not produced or disclosed-and do so in a matter that, without revealing information itself privileged or protected, will enable other parties to assess the claim.").  Instead, Plaintiffs suggest Essentia was required to go beyond the dictates of the discovery rules, and this Court's Orders, by disclosing, for example, the date of and subject matter and scope of the peer review.  The additional details Plaintiffs seek are protected from disclosure by the peer review/quality assurance privilege.  *See* N.D. CENT. CODE §§ 23-34-01(4)(a)(1) and (a)(2).

Plaintiffs also contend that Essentia has asserted the peer review privilege over documents clearly outside the protection of the statutes based on the subject matter descriptions provided, including those related to fiscal impact and revaccination, draft communication plans, call center scripts, draft patient notification letters and related correspondence, and

17

patient data.   However, "professional peer review" is broadly defined to include "all procedures of a peer review organization or functions it performs to monitor, evaluate, and take action to review the medical care provided to patients by health care organizations or health care providers." N.D. CENT. CODE § 23-34-01(5).  Peer review includes the evaluation and improvement of health care, the collection and disbursement of data relative to care and treatment, work in conjunction with other peer review organizations, identification and analysis of medical errors, and quality assurance.  *Id.*  The subject matter descriptions that Plaintiffs take issue with are directly reflective of the peer review process and statutorily defined and protected peer review activities.

Plaintiffs similarly suggest that the information included on Essentia's supplemental privilege logs also demonstrates the documents were shared with individuals outside of the peer review organization.  Yet, "peer review organization" is broadly defined to encompass health care organizations, including hospitals, hospital medical staff, clinics, physicians, a group of physicians, pharmacies, associations or organizations of medical professionals, as well as any combination of these entities.  N.D. CENT. CODE §§ 23-34-01(3)(a) & 23-34-01(1). In addition to health care organizations, committees of health care organizations, "composed of health care providers employees, administrators, consultants, agents, or members of the care health care organization's governing body" are also included in the definition of peer review organization.  N.D. CENT. CODE § 23-34-01(3)(b).  Importantly, "[c]ommunications relating to a professional peer review, whether written or oral, between…peer review organization members and other individuals participating in a professional peer review" are protected from disclosure.  N.D. CENT. CODE § 23-34-01(4)(a)(2) (emphasis added).

18

Again, inconsistent with the statutory privileges, Plaintiffs argue the peer review privilege cannot apply to documents with a creation date beyond the discovery of the potential temperature excursion. It is clear both that peer review can, and does occur, even in the absence of a triggering event, and that "[d]ata, information, reports, documents, findings compilations and summaries, testimony, and any other records generated by, acquired by, or given to a peer review organization as part of any professional peer review, regardless of when the record was created" are protected from disclosure. N.D. CENT. CODE § 23-34-01(4)(a)(1).

Put simply, Plaintiffs advance an interpretation of the applicable peer review statutes that is unequivocally inconsistent with the plain language of the peer review/quality assurance privilege in an effort to compel the production of documents identified on Essentia's supplemental privilege logs that are plainly protected from disclosure. Plaintiffs also ask this Court to go further than what the Federal Rules of Civil Procedure and this Court's prior Orders require. In providing more detailed subject matter descriptions, in addition to date, creator, recipient, unique document identifiers, and citation to the privileges asserted, Essentia fully complied with its discovery obligations. This level of detail also demonstrates the applicability of the peer review/quality assurance privilege without revealing any additional information for which disclosure is prohibited by law.

**D.**   **Essentia's supplemental privilege logs demonstrate applicability of the attorney-client privilege and work-product doctrine.**

North Dakota law affords a client the privilege "to refuse to disclose and to prevent any other person from disclosing a confidential communication made for the purpose of facilitating

19

the rendition of professional legal services." N.D. R. EVID. 502(b).[5] Further, the privilege applies not only to communications made between the client and lawyer, but also between client representatives and lawyer representatives. *See id.*; *see also* N.D. R. EVID. 502(a)(4)-(5).

The work-product doctrine protects both "ordinary work product and opinion work product." *Baker*, 209 F.3d at 1054; *see also* FED. R. CIV. P. 26(b)(3)(A)-(B) (protecting "documents and tangible things" prepared in anticipation of litigation as well as mental impressions and legal theories by both attorneys and other representatives). "Ordinary work product includes raw factual information" and is not discoverable absent substantial need. *Baker*, 209 F.3d at 1054. "Opinion work product includes counsel's mental impressions, conclusions, opinions or legal theories" and enjoys "almost absolute immunity." *Id.* The work-product doctrine "functions not merely and (perhaps) not mainly to assist the client in obtaining complete legal advice but in addition to establish a protected area in which the lawyer can prepare his case free from adversarial scrutiny." *Lamar Adv. of S.D., Inc. v. Kay*, 267 F.R.D. 568, 575 (D.S.D. 2010) (quoting *In re Special Sept. 1978 Grand Jury (II)*, 640 F.2d 49, 62 (7th Cir. 1980)).

---

[5] Like Plaintiffs, Essentia believes no outcome-determinative conflict exists between North Dakota and Minnesota law on attorney-client privilege, as Minnesota law similarly provides that "[a]n attorney cannot . . . be examined as to any communication made by the client to the attorney or the attorney's advice given thereon in the course of professional duty; nor can any employee of the attorney be examined as to the communication or advice." Minn. Stat. Ann. § 595.02, subd. 1(b); *see also Energy Policy Adv. v. Ellison*, 963 N.W.2d 485, 499 (Minn. Ct. App. 2021) (noting the privilege protects "confidential communication[s] relating to the seeking or giving of legal advice"). But if the Court finds a conflict exists, North Dakota law should govern for the same reasons stated above.

20

VLF-4671527v1

Here, Plaintiffs' issues with Essentia's legal privileges fall into three broad categories: (1) Essentia does not "explain how the document[s] are subject to any Legal Privilege" on its privilege log, (2) "[s]ome of the documents do not appear to have any attorney sender or recipient," and (3) certain documents "concern PR issues" with some including "third-party PR consultants as recipients." Essentia addresses each of these issues in turn.

First, Plaintiffs seemingly criticize Essentia for not providing legal analysis in each privilege log entry as to the basis of the privilege. That is not required. The purpose of the entries "is not to reflect what [Essentia's] logic is [behind asserting privilege] but to reflect what the documents say and to do so accurately." *Heartland Bank v. Heartland Home Finan., Inc.*, 335 F.3d 810, 816 (8th Cir. 2003). Essentia has done so here.

For example, Plaintiffs assert that Essentia has not met its burden in establishing privilege for a communication that Essentia's VP of Finance sent to numerous members of Essentia's Legal Department regarding "storage." *See* Doc. ID No. 161, *Pls.' Mem. in Supp.*, at p. 24 n.47. But Essentia's VP of Finance specifically sent that email to counsel, in part, to seek legal advice regarding the investigation and storage, which Essentia's supplemental privilege logs accurately state. In each entry, Essentia's supplemental privilege logs reflect the creators and recipients of the documents. The logs accurately describe the communications in a way that allows the Court, and Plaintiffs, to the assess the privileges. Essentia has met its burden.

Second, Plaintiffs assert that certain documents are not privileged because they do not appear to have an attorney sender or recipient. But, again, that is not required. Instead, "[t]he general rule of privilege stated in subdivision (b) [of Rule 502] is intended to encompass all communications necessarily made in the performance of legal services, not just those made

21

between a client and his attorney." N.D. R. EVID. 502, Explanatory Note. Rule 502 specifically protects communications involving attorney and client representatives.

This Court recently acknowledged in *Bentz* that an attorney does not need to be a party to a communication for it to be privileged. 2021 WL 4165376, at *4. Not unlike the Plaintiffs in this case, the party seeking disclosure argued that the privilege log did not identify an attorney included in the communications at issue. *Id.* at *2. After in-camera review, the Court acknowledged that no attorney was a party to the communication but held that some of the individuals included "are properly designated a 'client' and/or a 'representative of a client'" and that the communications were, therefore, protected by the attorney-client privilege. *Id.* at *4. So, too, here. Although counsel is not copied on every single exchange, Essentia's supplemental privilege logs demonstrate that the individuals included in those communications are client or client representatives. For example, management-level employees or others integrally involved with Essentia's Legal Department (who directly participated in communications and plans with counsel) exchanged communications pertaining to the investigation and legal advice on issues ranging from training to drafting memoranda on the class litigation.

Finally, Plaintiffs argue that certain documents are not entitled to legal privileges because they deal with PR issues and because some include third-party consultants. More specifically, Plaintiffs contend that some communications "plainly concern PR issues, not legal ones," and therefore are not privileged. Plaintiffs are wrong. These communications were exchanged to "facilitate[e] the rendition of professional legal services to the client" and are privileged. N.D. R. EVID. 502(b).

22

Although not necessary for privilege, counsel is included on each of the so-called plainly PR documents Plaintiffs identify. (Doc. ID No. 161, *Pls.' Mem. in Supp*, at p. 24 n.43). As Essentia's supplemental privilege logs reflect, these communications with counsel involve legal strategy or advice, or the expectation thereof, either in response to public communications regarding the class litigation or the investigation. Some seek legal advice for dealing with public communications or the media, which is a protected attorney function. *See, e.g.*, *Grand Canyon Skywalk Dev. LLC v. Cieslak*, No. 2:15-cv-1189, 2015 WL 4773585, at *15 (D. Nev. Aug. 13, 2015) (collecting cases recognizing that public communications strategy "is an important element in the preparation or presentation of a party's claim or defense"). Numerous courts have explained that communications like these are privileged because they consist of information sent to counsel "in order to keep them apprised of ongoing" issues and developments "with the expectation that the attorney will respond in the event that the matter raises important legal issues." *In re Buspirone Antitrust Litig.*, 211 F.R.D. 249, 254 (S.D.N.Y. 2002); *see also In re Johnson & Johnson Powder Prods. Mktg., Sale Pracs., & Prodc. Litig.*, MDL No. 3738, 2021 WL 3144945, at *5 (D.N.J. July 26, 2021) (collecting cases); *In re CV Therapeutics, Inc. Secs. Litig.*, No. C-03-3709, 2006 WL 1699536, at *5 (N.D. Cal. June 16, 2006) (same).

These communications remain privileged even if they include a third-party consultant. The Eighth Circuit has recognized that consultant communications may be privileged, holding no "principled basis" exists to distinguish a consultant's "role from that of an employee." *In re Bieter Co.*, 16 F.3d 929, 935 (8th Cir. 1994).[6] The Court instead noted that a consultant's

---

[6] In that case, the Eighth Circuit analyzed Proposed Federal Rule of Evidence 503, which is the functional equivalent of North Dakota Rule of Evidence 502.

VLF-4671527v1

involvement in a dispute makes them "precisely the sort of person with whom a lawyer would wish to confer confidentially in order to understand [the company's] reasons for seeking representation." *Id.* at 938; *see also Tr. of Elec. Workers Local No. 26 Pen. Tr. Fund v. Tr. Fund Advs., Inc.*, 266 F.R.D 1, 8 (D.D.C. 2010) (noting the fact that individuals "were consultants, rather than employees, is irrelevant to the analysis").

Consistent with the Eighth Circuit, numerous courts have similarly applied privilege to communications with consultants. *See, e.g.*, *FTC v. GlaxoSmithKline*, 294 F.3d 141, 148 (D.C. Cir. 2002) (finding privileged communications with "public relations and government affairs consultants"); *Grand Canyon Skywalk Dev. LLC v. Cieslak*, No. 2:15-cv-1189, 2015 WL 4773585, at *15 (D. Nev. Aug. 13, 2015) (same for public-relations consultant) (collecting cases); *In re Copper Market Antitrust Litig.*, 200 F.R.D. 213, 219-20 (S.D.N.Y. 2001). Those courts recognize the importance of allowing counsel "to provide confidential legal advice to the consultant so that he can perform his duties on behalf of the client in accordance with that legal advice." *Cieslak*, 2015 WL 4773585, at *15.

For example, in *Copper*, a company facing antitrust allegations retained a public-relations firm to assist with public and internal communications. 200 F.R.D. 213. Because "[t]he legal ramifications and potential adverse use of such communications were material factors in the development of the communications," the consultants sought and were privy to legal advice "concerning the scandal and attendant litigation." *Id.* at 219. Accordingly, the Court deemed the consultants client representatives and the communications privileged. *Id.*

Here, Essentia similarly retained consultants to assist with both internal and public communications. Those consultants are client representatives who were privy to and had authority to act on legal advice from Essentia's Legal Department while they acted in the scope

24

of their contract with Essentia. Throughout the coordinated effort, the consultants received confidential communications involving Essentia's Legal Department on issues regarding the potential temperature excursion and surrounding circumstances. There is no "principled basis" to treat these consultants differently than Essentia employees. *Bieter*, 16 F.3d at 938. Indeed, the development of communications focused on potential "legal ramifications" and related issues, making it critical for the consultants to have access to legal advice. *Copper*, 200 F.R.D. at 219. On these facts, the consultants are appropriately considered client representatives and the relevant communications are entitled to the legal privileges.[7]

Additionally, Plaintiffs point out that Essentia designated a creator of many documents, "Holly O.," as a consultant. Essentia has since discovered that "Holly O." is simply an internal template name, which Essentia has updated in its supplemental privilege logs. Thus, the issues with third-party consultants are not implicated as to "Holly O."

### E.    Essentia's supplemental privilege logs demonstrate applicability of the physician-patient privilege.

Finally, Essentia's supplemental privilege logs adequately identify the application of physician-patient privilege, where communications would reveal protected-health information ("PHI"). Essentia has done so by including "Privileged – Medical Patient" in its identification of applicable privileges.

Plaintiffs assert that physician-patient privilege "does not offer a basis to withhold documents in this case" because a protective order is in place and because Plaintiffs have

---

[7] The Court may also determine that consultant acted as attorney representatives. *See, e.g.*, *In re Grand Jury Subpoena*, 265 F. Supp. 2d 312, 326-30 (S.D.N.Y. 2003); *see also* N.D. R. EVID. 502(a)(5).

offered to use anonymous identifiers. (Doc. ID No. 161, *Pls.' Mem. in Supp.*, at p. 26). While this Court recently suggested Plaintiffs could potentially show the need for further financial data that may disclose PHI, the Court previously held that Plaintiffs have not shown their need for such PHI outweighs the cost to Essentia, including psychological costs to their patients. *See* Doc. ID No. 76, p. 13. That remains true in this context. Moreover, the communications that include PHI are also protected by other privileges, like peer-review privilege, such that those communications remain protected even if the Court were to find that anonymous identifiers could be used for PHI. Thus, Essentia has again met its burden that these communications are privileged.

## IV.    CONCLUSION

As is demonstrated by Essentia's supplemental privilege logs, and further reinforced above, Essentia complied with the Federal Rules of Civil Procedure and this Court's Orders in disclosing the subject matter descriptions for documents for which it asserts applicable privileges. On this record, Plaintiffs' Motion to Compel Essentia Health's and Innovis Health, LLC's Production of Documents Withheld as Privileged should be denied.

Although, as Plaintiffs highlight, the production of privilege logs, as outlined by Rule 26(b)(5)(A)(ii), was designed to "reduce the need for in camera examination," consistent with the Advisory Committee's Notes, the need for in-camera inspections cannot be eliminated entirely. FED. R. CIV. P. 26(b)(5)(A)(ii). Accordingly, to the extent the Court needs information in addition to that provided in Essentia's supplemental privilege logs and above, Essentia respectfully requests the Court undertake an in-camera review to confirm application of the privileges Essentia asserted.

26

VLF-4671527v1

Dated this 7th day of February, 2022.

**VOGEL LAW FIRM**

*s/ Angela E. Lord*

BY:   Angela E. Lord (#05351)
Robert B. Stock (#05919)
Briana L. Rummel (#08399)
MacKenzie L. Hertz (#09392)
218 NP Avenue
PO Box 1389
Fargo, ND  58107-1389
701.237.6983
Email:   alord@vogellaw.com
rstock@vogellaw.com
brummel@vogellaw.com
mhertz@vogellaw.com
ATTORNEYS FOR ESSENTIA HEALTH
AND INNOVIS HEALTH, LLC

4666119.2