## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA

JESSICA KRAFT, INDIVIDUALLY AND          )
AS PARENT OF MINORS L.K., S.K., and      )
O.K.; SHELLI SCHNEIDER,                   )
INDIVIDUALLY AND AS PARENT OF            )
MINORS A.S and W.S.; ANNE BAILEY,        )
AS PARENT OF MINOR D.B.; AMY             )
LAVELLE, AS PARENT OF MINORS             )
Em.L. and El.L; ELIZABETH BEATON,        )
INDIVIDUALLY AND AS PARENT OF            )          No. 3:20-CV-121
MINOR M.B.; AMANDA AND TYRELL            )
FAUSKE, INDIVIDUALLY AND AS              )
PARENTS OF MINORS C.R.F and C.J.F.;      )          Hon. Peter D. Welte
JENNIFER REIN, INDIVIDUALLY; and         )
JESSICA BERG, AS PARENT OF MINORS        )
A.B. and S.B., individually and on behalf of   )
all others similarly situated,            )
                                          )
         Plaintiffs,                      )
                                          )
   v.                                     )
                                          )
ESSENTIA HEALTH, INNOVIS                  )
HEALTH, LLC d/b/a ESSENTIA               )
HEALTH, DAKOTA CLINIC                     )
PHARMACY, LLC, JOHN DOE                   )
MANUFACTURERS, and                        )
JOHN DOE DISTRIBUTOR,                     )
                                          )
         Defendants.                      )


## REPLY MEMORANDUM IN FURTHER SUPPORT OF PLAINTIFFS' MOTION TO COMPEL ESSENTIA HEALTH'S AND INNOVIS HEALTH, LLC'S PRODUCTION OF DOCUMENTS WITHHELD AS PRIVILEGED

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................. 1

II.     ARGUMENT........................................................................................................ 2

      A.      Minnesota law applies to conflicts of state privilege law. ..................................... 2

      B.      Essentia has not supported its blanket application of the peer review
      privilege. ......................................................................................................... 3

      C.      Essentia has not supported its assertion of attorney-client privilege or work
      product. ........................................................................................................... 7

      D.      No documents should be withheld on the basis of physician-patient
      privilege. ......................................................................................................... 9

      E.      Plaintiffs should be awarded their fees and expenses. ........................................... 9

## I.  INTRODUCTION

Essentia's brief ("Opp.") offers no more support for its privilege assertions than its boilerplate privilege log does. Regarding peer review, Essentia rejects Eighth Circuit law regarding the appropriate choice-of-law analysis and contends a different rule should apply for policy reasons. It largely disregards the law that applies (Minnesota's) and makes no claim that it has established the "committee" that Minnesota requires. It paints an untenably broad picture of North Dakota's peer review statute – one that this Court has already rejected. And it ignores nearly all of Plaintiffs' exemplar challenges in favor of categorical arguments that the peer review privilege applies to all employees' documents and communications (including with third parties), on any date (including predating the excursion), on all issues related to patient care (somehow including PR and reputation management, others' social media posts, and financials). In other words, according to Essentia, healthcare organizations are nearly entirely immune from discovery.

With regard to attorney-client privilege, Essentia wrongly suggests that assertions of privilege are self-supporting. It is also mistaken in its contentions that the privilege extends to communications with third-party consultants unnecessary to the provision of legal advice. Essentia does not address work product beyond reciting the standard. And as to physician-patient privilege, Essentia ignores that it can redact identifying information or produce it pursuant to this case's protective order. In short, Essentia's privilege assertions remain unsupported and unfounded.

As far as a resolution, Essentia contends that waiver is too draconian of a sanction for its failed privilege assertions and inadequate privilege logs. But waiver is only a secondary reason to order the production. The primary reason is that Essentia has not met its burden to establish that the privileges apply, and further, Essentia's privilege log suggests they do not.

Essentia's preferred resolution, however, is for the Court to ignore Essentia's burden and

1

self-contradicting privilege log, and review over 8,100 documents itself.[1] This tasks the Court with an extensive review for nuanced privileges, particularly regarding peer review, where Essentia has failed to provide the most basic requisite information supporting the boundaries of that privilege.

Essentia says little about Plaintiffs' request for fees and costs, aside from conclusory statements that it acted in good faith. Plaintiffs should not have to bear the costs of multiple rounds of negotiations, analysis, and briefing regarding privilege assertions that remain unsupported or have never had any legal basis. Plaintiffs respectfully request that the Court order Essentia to produce the withheld documents and award Plaintiffs' privilege-related fees and costs.

## II.    ARGUMENT

### A.  Minnesota law applies to conflicts of state privilege law.

In its choice of law argument, Essentia rejects the "significant relationships" test because it is grounded in the Restatement. Opp., pp. 6-7. But the test Plaintiffs applied (which includes several factors beyond significant relationships) was derived from Eighth Circuit precedent specifically undertaking an analysis of North Dakota's choice of law considerations. Plaintiffs' brief ("Mtn."), p. 9 (citing, *e.g., Am. Fire & Cas. Co. v. Hegel*, 847 F.3d 956, 959 (8th Cir. 2017)).

Essentia ignores this case and instead relies on Wright & Miller's Federal Practice and Procedure in citing policy reasons as to why the Restatement's approach is flawed when applied to privilege issues. Opp., pp. 7-8 (proposing that the forum state's privilege law apply instead). Flawed or not, Eighth Circuit precedent dictates the choice of law analysis applicable here.

None of Essentia's cited authority supports departing from that analysis in the privilege context. Opp., p. 8 (citing *Simon v. G.D. Searle & Co.*, 816 F.2d 397 (8th Cir. 1987) (noting privileges are determined by state law; undertaking no choice-of-law analysis); *Bartholomew v.*

---

[1] Essentia has recently produced nearly 1,000 additional entries, with more to come.

*Avalon Capital Gr., Inc.*, 278 F.R.D. 441, 447 (D. Minn. 2011) (Eighth Circuit has applied the law of the forum state or both states <u>when there is no conflict</u>); *Filz v. Mayo Found.*, 136 F.R.D. 165, 167, n.3 (D. Minn. 1991) (noting standards for choice-of-law analysis, but applying the law agreed upon by the parties); *Hatfill v. N.Y. Times Co.*, 459 F. Supp. 2d 462, 465 (E.D. Va. 2006) (forum's conflict-of-law rules apply, not necessarily its privilege rules); *In re A.H. Robins Co.*, 107 F.R.D. 2 (D. Kan. 1985) (no choice of law analysis; the parties agreed which state's law applied)).

As to the choice-of-law inquiry outlined by the Eighth Circuit, Essentia does not dispute the facts underlying Plaintiffs' analysis, which properly focuses on issues relevant to privilege (like the locations of the withheld communications). Mtn., pp. 8-12. That analysis determined Minnesota law applies. *Id.* Essentia instead focuses on factors relevant to the wrongdoing, but largely irrelevant to the privilege-related choice-of-law analysis. Even still, its contentions miss the mark. For example, Essentia notes the excursion occurred in North Dakota, but that ignores where the medications were administered, where decisions were made, where its Shared Services Agreement with Dakota Clinic Pharmacy was entered, and where wrongful billing occurred. Essentia claims the "bulk" of Plaintiffs' claims are under North Dakota law, but the complaint includes one consumer fraud act claim under Minnesota law and another under North Dakota law. ECF No. 119, Count III. As further explained in Plaintiffs' opening brief, Minnesota law applies.

**B. Essentia has not supported its blanket application of the peer review privilege.**

Regarding peer review, Essentia does not refute Plaintiffs' authority or explain how its documents fit within the language of the statute. It again asks the Court to adopt a novel and unsupported construction of the privilege, and conclusorily claims its documents fall within it.

At the outset of its argument, Essentia misrepresents to the Court that "Plaintiffs suggest, without citation, that neither state's [privilege] protects peer review records in a case against a healthcare entity or pharmacy." Opp., p. 13. According to Essentia, this is "telling" and

3

"demonstrates Plaintiffs' fundamental misunderstanding of the privilege at issue." *Id.* In truth, Plaintiffs expressly acknowledge that "North Dakota's peer review privilege protects 'Peer review records.'" Mtn., p. 7. In contrast, Minnesota's privilege shields "data and information," and only protects "records" in an "action against a professional," not a healthcare entity or pharmacy. *Id.* at 7, 9 (citing Minn. Stat. § 145.61, Subd. 2).[2]

The problem is, even if North Dakota law applied, Essentia has not established that the withheld documents are "records" at all. "Records" are materials that a "peer review organization" came into possession of "as part of a[] professional peer review." N.D. CENT. CODE § 23-34-01(1), (4)(a), (5). Essentia has not identified the "professional peer review" purportedly governing the withheld documents,[3] let alone has it overcome the "original source" exception, *infra*.

Minnesota limits its privilege to peer-review-specific data and information, too, in part through its provisions defining the scope of a peer review organization. As Essentia recognizes, Minnesota limits a peer review organization to a "committee" of "limited" individuals "established" by a healthcare organization "to gather and review information" relating to patient care "for the purposes of . . . evaluating and improving the quality of health care." Opp., pp. 12-13. But Essentia never identifies any members of that "committee." Instead, it falsely concludes

---

[2] Essentia appears to have confused Plaintiffs' statement of the law regarding "proceedings" – which neither state's privilege shields in this case, Mtn., p. 8; *see also id*. at n.6 – as a statement regarding "records." It appears it is Essentia who fundamentally misunderstands the privileges and the important nuance between the categories of information they do and do not protect.

[3] In its brief, Essentia cited an unpublished and unattached state court decision regarding logging peer review in a medical malpractice case. Opp., n.1. Essentia failed to mention that the decision rejects Essentia's construction of North Dakota's privilege as encompassing all of a hospital's communications. The court held that defendants must not only disclose who created each document, but each person's "**position for peer review**." Exhibit A, ¶ 5 (emphasis added). Nor does Essentia mention that the Presiding Judge of the North Dakota South Central Judicial District required the same, and also <u>expressly adopted this Court's order</u> regarding privilege logs – including requiring subject matter descriptions – in another case in which Essentia's law firm is defense counsel. *Nagle v. The Bone and Joint Center, P.C.*, No. 19-cv-01908, Exhibit B, ¶¶ 9, 12.

4

"[t]here is . . . no dispute that Essentia meets this definition." *Id.* Plaintiffs plainly contend that Essentia must identify that committee and its members to support its privilege assertions but has failed to do so. Mtn., *e.g.,* pp. 7, 14-15, 18 (citing Minnesota's definition of peer review organization and noting Essentia's failure to identify the members of its peer review organization).

As to Essentia's disclosure of documents with third parties (e.g., PR consultants, a public-school employee, and unidentified individuals), Essentia claims that peer review organizations can be "committees of health care organizations" that include "consultants and agents" under North Dakota law. Opp., p. 18. But again, Essentia has not identified any such committee or its members.

Instead, Essentia suggests that all of a healthcare organization's patient-care-related documents and communications (construed so broadly as to include PR, financials, and social media) are inherently privileged. In other words, Essentia contends it is always a peer review organization, permanently engaged in a professional peer review, and is thus virtually immune from discovery – even in actions of wrongdoing against the healthcare entity.[4]

In reality, the privilege does not extend to documents created in Essentia's ordinary course of business or to every communication regarding an adverse event. *See* Mtn., pp. 6-8, 13-22. In fact, it does not even extend to all peer review documents. Minnesota Statute section 145.65, for example, makes "guidelines" inadmissible in certain proceedings by or against professionals, recognizing that guidelines are discoverable and otherwise admissible. Documents a peer review organization "gathered from" or that are "available from" original sources are also discoverable.

As the Minnesota Supreme Court has noted, healthcare organizations *are* the original

---

[4] That construction contradicts the express purpose and intent of both states' statutes. *Trinity Med. Ctr. v. Holum*, 544 N.W.2d 148, 154 (N.D. 1996) ("The privilege must not be permitted to become a shield behind which [wrongdoing] can be hidden from parties who have suffered. . . ."); Minn. Stat. § 145.67 ("Nothing contained in [the privilege] shall be construed to relieve any person of any liability [incurred] to a patient as a result of furnishing health care to such patient.").

source of documents that they create or use apart from a professional peer review:

> [T]he [peer review] statute allows disclosure and discovery of any information--such as incident reports, patient charts, records, billing information, and general medical error and safety information--available from an original source. . . . Thus, **it is only documents originally created by the peer review organization that are truly off-limits**. . . . **[I]t is not uncommon for a large portion of the peer review documents to be considered discoverable**. . . ."

*Larson v. Wasemiller*, 738 N.W.2d 300, 315 (Minn. 2007) (Anderson, J., concurring) (emphasis added) (internal quotations and citations omitted). *See, e.g., McKee v. St. Paul Eye Clinic, P.A.*, No. A14-0681, 2015 Minn. App. Unpub. LEXIS 376, at *18-19 (Apr. 20, 2015) (nurse's incident report, drafted pursuant to her training and not at the direction of a peer review organization, was a discoverable "original source" document). In other words, Essentia cannot shield its own documents by passing them through a peer review organization.

In sum, even peer review documents that have sources or purposes independent of the professional peer review (e.g., policies, financials, patient data, social media posts, legal, PR, business reporting – even for adverse events) must be produced. *See also* Mtn., pp. 13, 16, n.11.

Essentia does not address the timing of its professional peer review, or Plaintiffs' challenges to documents predating the excursion or the discovery of the excursion. It instead cites North Dakota's language shielding documents "regardless of when the record was created." Opp., p. 10. But the same provision also requires that such documents be "part of any professional peer review," and Essentia has not addressed when that peer review occurred.

Essentia has not carried its burden to support the application of the peer review privilege by selecting North Dakota law without support, looking to North Dakota's broader definition of "peer review organization," ignoring that North Dakota restricts its privilege to records from a "professional peer review," and concluding that every Essentia employee's documents and communications are entitled to a blanket protection. It should produce the withheld documents.

6

### C. Essentia has not supported its assertions of attorney-client privilege or work product.

Plaintiffs do not demand "legal analysis in each privilege log entry" (Opp., p. 21), but bare assertions of privilege are not self-supporting. *See, e.g., MSTG, Inc. v. AT&T Mobility LLC*, No. 08-cv-7411, 2011 U.S. Dist. LEXIS 5533, at *12 (N.D. Ill. Jan. 20, 2011) ("[E]ven if the entries contained such self-evident signs of being privileged, [the withholding party] still has the burden of demonstrating that they meet the standards required for the privileges it relies on."); *Reinhard v. Dep't of Homeland Sec.*, No. 18-1449, 2019 U.S. Dist. LEXIS 115282, at *38 (D.D.C. July 11, 2019) ("The fact that the attorneys are not the direct recipients thus gives the Court some doubt about its legal purpose. More is thus needed . . . .") (citation omitted).[5] Essentia must provide enough non-conclusory support to establish the privilege applies. *See* Fed. R. Civ. P. 26(b)(5)(A).

Essentia has not done so. It cites one example email "regarding storage" between its Finance VP and individuals Essentia now characterizes as its "Legal Department" (despite including its Former VP of Pharmacy and Chief Medical Officer). Opp., p. 21. The entry makes no mention of legal advice or litigation. Mtn., n.47 (EHPRIV000258). Tellingly, Essentia now says this email was "in part" to seek legal advice. Opp., p. 21. That falls short. *E.g., In re Polaris, Inc.*, 967 N.W.2d 397 (Minn. 2021) (legal advice must be "predominate" and "primary" purpose).

Moreover, Essentia's belated explanation regarding a single entry does nothing to support the thousands of others that also have no reference to legal advice or litigation (let alone a description demonstrating the privilege applies), some of which copy hundreds or thousands of employees. Essentia's rote recitation of the word "investigation" in each entry is insufficient for a

---

[5] Bizarrely, Essentia cites *Heartland Bank v. Heartland Home Fin., Inc.*, 335 F.3d 810 (8th Cir. 2003), contending that its entries need not reflect Essentia's "logic," but only "what the documents say and to do so accurately." Opp., p. 21. Essentia does not disclose "what the documents say." And *Heartland* did not involve privilege logs. It addressed an evidentiary log which tracked consumer confusion about the names of two banks involved in a trademark dispute. *Id.* at 811-16.

7

number of reasons, including that employees' statements in the course of an investigation—even those made to counsel—are not privileged. *Pearson v. Rohn Indus.*, No. A15-0477, 2015 Minn. App. Unpub. LEXIS 1174, at *20-21 (Dec. 21, 2015) (citing *Leer v. Chi., Milwaukee, St. Paul & Pac. Ry. Co.*, 308 N.W.2d 305, 309 (Minn. 1981)).

Regarding non-attorney communications, Essentia notes that an attorney need not be a party to a communication for it to be privileged. Opp., p. 22. But the communication does need to be between "those necessarily involved in the performance of legal services" and "made to facilitate the rendition of legal services." N.D. R. EVID. 502, Explanatory Note; *SI Ins. Servs. LLC v. Bentz*, No. 18-cv-255, 2021 U.S. Dist. LEXIS 172736 (D.N.D. Sep. 13, 2021). "The threshold inquiry . . . is . . . whether the contested document embodies a communication in which legal advice is sought or rendered." *Polaris*, 967 N.W.2d 397 (citation omitted). Again, Essentia has not established this. It claims without support that "management-level employees or others integrally involved with Essentia's Legal Department" exchanged documents protected by the privilege. Opp., p. 22. In truth, Essentia withheld documents sent to non-management employees, entire listservs of thousands of employees, and third parties. Mtn., pp. 20-26 (citing examples).

Finally, Essentia claims the documents it exchanged with outside PR consultants are privileged. But communications with a PR firm—even those with counsel or which "were created because of the prospect of litigation . . . [and] may have helped counsel shape their legal strategy— are not privileged unless "counsel was reliant on [the PR firm's] expertise in order to give appropriate legal advice." *Pemberton v. Republic Servs.*, 308 F.R.D. 195, 202 (E.D. Mo. 2015). Neither Essentia's privilege log nor its brief supports "the critical element" that its PR firm "implement[ed] a specific legal strategy that required the use of a public relations consultant." *Universal Standard Inc. v. Target Corp.*, 331 F.R.D. 80, 92 (S.D.N.Y. 2019). *See also McNamee*

8

*v. Clemens*, No. 09 CV 1647, 2013 U.S. Dist. LEXIS 179736, at *20 (E.D.N.Y. Sep. 17, 2013) (PR services "aimed at protecting [defendant's] public image and reputation" are not privileged.). Indeed, Essentia's own authority makes clear that the privilege does not apply here.[6]

### D. No documents should be withheld on the basis of physician-patient privilege.

Essentia claims it need not produce physician-patient documents because Plaintiffs have not shown a substantial need for PHI. Opp., pp. 25-26. Identifying information may be redacted.

### E. Plaintiffs should be awarded their fees and expenses.

Essentia opposes Plaintiffs' request for fees and costs incurred in bringing the instant motion to compel. Opp., p. 2. To be clear, Plaintiffs request their fees and costs associated with the privilege contest in its entirety, including all of the disputes that the parties have gone through simply to obtain Essentia's November 2021 privilege log (which is both deficient in detail and grossly overapplies every privilege it asserts) and bringing this motion. Mtn., pp. 1, 28. Plaintiffs have expended over 1,000 hours on issues related to Essentia's privilege logs and assertions.

Essentia's implication that it worked diligently in this process is belied by the procedural

---

[6] *E.g., Canyon Skywalk Dev. LLC v. Cieslak*, No. 15-cv-01189, 2015 U.S. Dist. LEXIS 107457, *23-24 (D. Nev. Aug. 13, 2015) (collecting cases that do *not* extend the privilege to PR consultants; noting cases doing so in fact-specific circumstances, e.g., in "high profile cases" where PR "strategy is an important element in the preparation of presentation of a party's claim or defense" like the target of a grand jury investigation countering inaccurate PR that might influence prosecutors to bring charges; extending privilege to PR firm that provided services only for "legal dispute" and not "general" PR); *In re Buspirone Antitrust Litig.*, 211 F.R.D. 249, 253 (S.D.N.Y. 2002) (addressing privilege waiver following disclosure to non-legal, but "key business personnel"; no consultant issues were addressed); *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 2738, 2021 U.S. Dist. LEXIS 138589, at *1158-59 (D.N.J. July 26, 2021) (defendant's PR communications related to "plaintiffs' aggressive effort to promote their litigation claims in the media" and which "could impact [defendant's] defense" were privileged); *In re CV Therapeutics, Inc. Sec. Litig.*, No. 03-3709, 2006 U.S. Dist. LEXIS 41568, at *20-21 (N.D. Cal. June 16, 2006) (privilege may apply if consultant is retained for legal purposes, "involved in the giving of legal advice," and communication "was made for a legal purpose"); *FTC v. Glaxosmithkline*, 294 F.3d 141, 352 (D.C. Cir. 2002) (consultants were functional equivalents of full-time employees with "information needed by attorneys in rendering legal advice"); *In re Copper Mkt. Antitrust Litig.*, 200 F.R.D. 213, 220 (S.D.N.Y. 2001) (same).

9

history on this issue, the log it produced, and its conduct overall, which has dragged out and multiplied the proceedings in nearly every aspect of discovery. Even construed in the best of lights—i.e., suspending disbelief and treating Essentia's initial request that this federal court craft new law on a state court privilege as nonfrivolous, and assuming that at least some documents are privileged—that does not excuse Essentia's continued failure to produce (or support its privilege assertions over) thousands of documents after multiple court orders and the litany of authority cited by Plaintiffs regarding the scope of the peer review privilege and how to establish that it applies.[7]

Essentia tries to excuse one of its earlier failures to support its assertions by noting the Court did not explicitly address the inadequacy of Essentia's subject matter descriptions in its sample privilege log. Opp., p. 4. Regarding its continued failures, Essentia argues the Court has not explicitly required "the date of and subject matter and scope of the review." *Id.* at 17. There is ample authority addressing what a subject matter description must contain and how privilege assertions must be supported, particularly for peer review. *See generally* Mtn. Essentia has duties to comply in good faith and efficiently, and to conduct its own research regarding its obligations—not wait for a drawn-out dispute and a Court directive on each basic discovery principle.

Even if Essentia had acted in good faith, its conduct was not in accordance with the requirements of Federal Rules of Civil Procedure 1, 11(b)(2), or 26(g)(1)(b)(i). Essentia should bear the cost of nearly nine months of protracted litigation that has only served to delay the analysis and production of over 98% of the relevant documents in this case.

---

[7] As just one anecdote evincing Essentia's indiscriminate assertions, Essentia now discloses that one of the "consultants" in several privilege log entries, "Holly O.," was actually an "internal template name" and not a person at all. Opp., p. 25. Plaintiffs asked about this name at least twice in September 2021. Essentia never responded. Essentia asserted privilege over documents shared with a name even Essentia could not identify—and waited five months to disclose accurate information to Plaintiffs via a brief to the Court—yet it insists its assertions are in good faith and adequately supported.

10

Dated: February 14, 2022      Respectfully submitted,

  /s/ Melissa Ryan Clark

Melissa Ryan Clark
Brooke A. Achua
FEGAN SCOTT LLC
140 Broadway, 46th Fl.
New York, NY 10005
Ph: 646.502.7910
Fax: 312.264.0100
melissa@feganscott.com
brooke@feganscott.com

Elizabeth A. Fegan
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
Ph: 312.741.1019
Fax: 312.264.0100
beth@feganscott.com

Mac Schneider
SCHNEIDER LAW FIRM
815 3rd Ave. S.
Fargo, ND 58103
Ph: 701-235-4481
Fax: 701-235-1107
mac@schneiderlawfirm.com

J. Barton Goplerud
Brian Marty
SHINDLER, ANDERSON, GOPLERUD &
WEESE, PC
5015 Grand Ridge Drive, Suite 100
West Des Moines, Iowa 50265
Ph: (515) 223-4567
Fax: (515) 223-8887
goplerud@sagwlaw.com
marty@saglaw.com

Counsel for Plaintiffs

11