# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| JESSICA KRAFT, INDIVIDUALLY AND AS PARENT OF MINORS L.K., S.K., and O.K.; SHELLI SCHNEIDER, INDIVIDUALLY AND AS PARENT OF MINORS A.S and W.S.; ANNE BAILEY, AS PARENT OF MINOR D.B.; AMY LAVELLE, AS PARENT OF MINORS Em.L. and El.L; ELIZABETH BEATON, INDIVIDUALLY AND AS PARENT OF MINOR M.B.; AMANDA AND TYRELL FAUSKE, INDIVIDUALLY AND AS PARENTS OF MINORS C.R.F. and C.J.F.; JENNIFER REIN, INDIVIDUALLY; and JESSICA BERG, AS PARENT OF MINORS A.B. and S.B., individually and on behalf of all others similarly situated, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 3:20-CV-121  Hon. Peter D. Welte |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| ESSENTIA HEALTH, INNOVIS HEALTH, LLC d/b/a ESSENTIA HEALTH, DAKOTA CLINIC PHARMACY, LLC, JOHN DOE MANUFACTURERS, and JOHN DOE DISTRIBUTOR, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**PLAINTIFFS' RESPONSE TO ESSENTIA HEALTH'S AND INNOVIS HEALTH, LLC'S MEMORANDUM REGARDING THE IMPACT OF THE NORTH DAKOTA SUPREME COURT'S DECISION IN 2022 ND 65**

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.   ARGUMENT...................................................................................................... 4

      A.    *McKibbage* is irrelevant because it applied North Dakota peer review privilege law. Minnesota privilege law applies in this case.................................................. 4

      B.    The Court's prior Orders properly determined the applicable privilege logging requirements, even if *McKibbage* did apply. ........................................................ 6

            1.    *McKibbage* found dates irrelevant, not privileged. Dates are relevant here. ... 6

            2.    *McKibbage* found author and recipients irrelevant when the privilege had been established by other custodial information. Here, Essentia's privilege assertions could not be assessed without that information. ................................... 7

            3.    The information in *McKibbage* did not fall within exceptions to the peer review privilege. The information here does. ........................................................ 10

            4.    *McKibbage* did not hold that subject matter descriptions were privileged. ... 12

      C.    *McKibbage* has no bearing on the substantive assessment of peer review privilege in this or any other case. ................................................................... 12

III.  CONCLUSION.................................................................................................. 14

Plaintiffs respectfully submit this response to the memorandum of defendants Essentia Health and Innovis, Health LLC d/b/a/ Essentia Health West (collectively, "Essentia") regarding the impact of the North Dakota Supreme Court's decision in *St. Alexius Medical Center, a North Dakota Corporation, d/b/a CHI St. Alexius Health Bismarck v. The Honorable Pam Nesvig, Judge of the Court, South Central Judicial District; Kevin McKibbage, et al.*, 2022 ND 65 (N.D. 2022) ("*McKibbage*") (ECF No. 178, "Memorandum" or "Memo").

## I.    INTRODUCTION

On March 17, 2022, the North Dakota Supreme Court issued a decision – *McKibbage* – addressing the level of detail required under Rule 26[1] to enable parties to assess claims of the North Dakota peer review privilege. Essentia now relies on *McKibbage* in asking this Court to vacate two prior orders regarding privilege logs (ECF Nos. 79 and 129, the "Orders") and to deny Plaintiffs' substantive challenge to Essentia's privilege claims (ECF Nos. 160 and 172, the "Motion to Compel"). Both requests are misguided.

First, *McKibbage* is wholly inapplicable to this case: *McKibbage* addresses the North Dakota peer review privilege, but Minnesota law applies here. Essentia's requests should be denied for that reason alone.

Second, even if *McKibbage* did apply, it is distinguishable and so limited in scope that it does not impact the Court's Orders. Nor does its narrow decision regarding privilege logs have any bearing on the substantive privilege analysis in this or any other case.

In *McKibbage*, the court undertook a fact-specific relevance analysis to balance the disclosure requirements of the North Dakota Rules of Civil Procedure with the protections of the

---

[1] *McKibbage* applied North Dakota Rule of Civil Procedure 26(b)(5)(A), which mirrors Federal Rule of Civil Procedure 26(b)(5)(A), in requiring that withheld information be described "in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."

North Dakota peer review privilege. *McKibbage*, ¶¶ 11, 13. Ultimately, the court required that the withholding party, a medical center referred to as "CHI," disclose only as much information as was necessary to enable the assessment of the privilege claim. *Id.* at ¶¶ 19-20.

More specifically, the court held that CHI did not need to disclose the withheld documents' authors and recipients because that information was not needed to assess privilege under the facts of that case. *Id.* at ¶¶ 16-20. CHI had already identified the specific committees that created the documents (e.g., "Credentials Committee," "Medical Executive Committee," "Peer Review Committee") and had "provided information on the committees. . . ." *Id.* at ¶¶ 16, 18. It had also provided enough information about the documents to establish that they were peer review "records" belonging to a "peer review organization," i.e., that the privilege applied. *Id.* at ¶ 18.

As a result, the court concluded that more detail was not required by Rule 26 or the privilege:

> We conclude **CHI adequately described the nature of the documents, enabling McKibbage to assess CHI's claim of privilege. The disclosure of the authors and recipients of the documents and their respective positions would not add to McKibbage's assessment, and is beyond the scope of information required by the legislature to be disclosed under the medical peer review privilege.** We therefore reverse the district court order requiring CHI to disclose the identity of the persons who created the documents and their positions, and the identity of the persons who received the document and their positions.

*Id.* at ¶ 20 (emphasis added).

Essentia misconstrues this decision as a holding that author and recipient information is always privileged. *McKibbage* does not say that. Earlier in the decision, the court did note that the author and recipient information sought in that particular case "falls within the privilege itself." *Id.* at ¶ 19. But the court did so only after its factual findings that such information would "not assist [plaintiff] in further assessing CHI's claim of privilege" and after concluding that CHI had

established the elements of the privilege, including by providing information about the committees that CHI identified as record custodians. *See id*.

Similarly, with regard to dates, the court found that "the disclosure of document dates will not assist other parties in assessing a peer review privilege claim" and reversed the order requiring their disclosure. *Id.* at ¶ 15. Again, the court did not hold that dates are privileged. *See id.*

In sum, the court determined that detail about a peer review that goes beyond that required to assess the privilege need not be disclosed under Rule 26.

This case does not present the same facts that were material to the outcome in *McKibbage*. Here, Essentia had not produced any custodial information at the time of the Orders – providing no information supporting the existence or scope of a professional peer review, let alone that the withheld documents belonged to one. And here, where Essentia has withheld years of information shared with thousands of individuals, dates help inform the privilege assessment.

Moreover, nothing in *McKibbage* bears upon the inclusion of subject matter descriptions in privilege logs, which Essentia also seeks to undo. And *McKibbage* also did not touch upon the substantive assertions of privilege that Plaintiffs challenged in their Motion to Compel.

The parties' arguments on this issue need not be considered in a vacuum. Essentia has already produced several iterations of privilege logs which reflect the impact of the Court's Orders. *E.g.*, ECF No. 161-1. It is clear from those logs that they do not contain privileged information. Essentia's log identifies thousands of employees. *See*, *e.g.*, ECF No. 161-2. The inclusion of authors and recipients reveals no more privileged information than a company organizational chart. The subject matter descriptions are so general they do not even reach the level of information voluntarily provided in *McKibbage*. The dates span several years and reflect no peer review information.

3

Even if this information could somehow be deemed privileged had it been derived from privileged documents, the logs demonstrate that the documents themselves do not meet the basic requirements of the peer review privilege. That was apparent from Essentia's first categorial privilege log, which asserted blanket privilege over legal documents with outside counsel and pharmacy "documentation" couched as "investigation" – and that is further supported by Essentia's more detailed privilege log, which identifies thousands of non-peer-review documents.

Even if North Dakota law applied, *McKibbage* would not alter the privilege analysis here.

## II.   ARGUMENT

Essentia's reliance on *McKibbage* is misplaced. It is inapplicable, its facts are distinguishable, and its holding has no bearing on Plaintiffs' substantive privilege challenge.

### A. *McKibbage* is irrelevant because it applied North Dakota peer review privilege law. Minnesota privilege law applies in this case.

*McKibbage* is irrelevant because it applies inapplicable state law. In *McKibbage*, the parties agreed that North Dakota's peer review privilege applied. ¶ 8. Here, Minnesota law applies under the conflict of law analysis outlined by the Eighth Circuit for matters in which North Dakota is the forum state. ECF No. 161, § IV; ECF No. 172, § II. A.[2] That outcome is based in part on the facts that Essentia is a Minnesota-based company and most of the parties to the withheld communications are based in Minnesota. *Id.* Plaintiffs addressed that analysis in their Motion to Compel, *id.*, and incorporate that argument here by reference.

In a footnote, Essentia now suggests "it is possible that both [states'] privileges are applicable. . . in which case it is the most restrictive of the states' privileges which controls what level of detail need [sic] and may be included in a privilege log asserting the same." Memo, n.2.

---

[2] The parties previously agreed that a choice-of-law assessment was unnecessary for administrative logging issues because no conflict exists. But Essentia now claims *McKibbage* renders certain transactional information privileged, which, if accepted, would conflict with Minnesota law.

4

Essentia cites legislative testimony from a lawyer who was, at the time, with the Vogel Law Firm, Essentia's own outside counsel. *Id.* (citing Hearing on S.B. 2403, Before the S. Human Servs. Comm'n, 61st Leg. Assem. (2009) (Testimony of John C. Kapsner, Counsel to N.D. Healthcare Association)). As much as the parties might like, the opinion of a party's own law firm does not constitute authority. But in any event, Mr. Kapsner's testimony does not support Essentia's position; it says nothing at all about applying multiple privileges (let alone the "most restrictive" privilege), choice or conflict of law issues, or privilege logs.[3]

Courts routinely undertake choice-of-law analyses to determine which state's privilege law to apply, and do not simply apply all states' privileges or "the most restrictive" privilege when those laws conflict. *E.g., In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*, No. 15-2666, 2017 U.S. Dist. LEXIS 141023, at *8 (D. Minn. Aug. 30, 2017) (choice-of-law for the crime-fraud exception); *Kramer v. Ford Motor Co.*, No. 12-1149, 2016 U.S. Dist. LEXIS 178987, at *7 (D. Minn. Feb. 3, 2016) (choice-of-law for the attorney-client privilege); *Moore Eye Care, P.C. v. Chalam*, No. 20-5943, 2021 U.S. Dist. LEXIS 239247, at *12 (E.D. Pa. Dec. 15, 2021) (choice-of-law for peer review privilege). Additionally, given that federal courts favor liberal discovery, and both states' courts have cautioned against construing their privileges too broadly,[4] it would be contrary to each jurisdiction's express policy (in addition to law) to forgo a choice of law analysis and apply the privilege that Essentia believes would conceal the most information.

---

[3] https://www.ndlegis.gov/files/resource/61-2009/library/sb2403.pdf, pp. 39-40 of the PDF.

[4] *See, e.g., Trammel v. United States*, 445 U.S. 40, 50 (1980) (Privileges "must be strictly construed and accepted only to the very limited extent that . . . excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.") (citations and internal quotations omitted); *Trinity Med. Ctr. v. Holum*, 544 N.W.2d 148, 152, 154 (N.D. 1996) ("Evidentiary privileges must be narrowly construed because they are in derogation of the search for truth. . . . We must be particularly vigilant against extending the scope of the [peer review] privilege . . . ."); *State v. Expose*, 872 N.W.2d 252, 260 (Minn. 2015) ("We have long construed evidentiary privileges narrowly.").

Because Minnesota law applies, *McKibbage* does not alter the privilege analysis here.

**B. The Court's prior Orders properly determined the applicable privilege logging requirements, even if *McKibbage* did apply.**

Even if North Dakota law applied, the Orders should still stand because they properly determined the appropriate privilege log disclosures under the facts of this case.

**1. *McKibbage* found dates irrelevant, not privileged. Dates are relevant here.**

In *McKibbage*, the court found that "the dates of the documents [we]re irrelevant to the determination of the peer review privilege" in that case. *McKibbage*, ¶ 14. The court did not, as Essentia suggests (Memo, *e.g.*, pp. 14-15) hold that dates are privileged. Rather, the court stated: "Because the peer review privilege applies regardless of record date, the disclosure of document dates will not assist other parties in assessing a peer review privilege claim." *McKibbage*, ¶ 15. This case is different.

Plaintiffs recognize that North Dakota's peer review applies to "[p]eer review records . . . regardless of when the record was created." N.D.C.C. § 23-34-01(4)(a)(1). For the privilege to apply, however, the documents must be "peer review records" in the first place, i.e., "part of any professional peer review." *Id.* Documents created before or after that "professional peer review" – i.e., for another purpose – are not privileged. *See id.*

In this case, the documents' dates reflect upon whether the withheld documents are peer review records at all (or, for example, they are litigation, public relations, or ordinary course of business documents). The fact that the dates here, unlike in *McKibbage*, "assist parties in assessing a peer review privilege claim," is evident in Plaintiffs' reference to the documents' timing in Plaintiffs' Motion to Compel. *E.g.*, ECF No. 161, p. 16, 19-20, 22; ECF No. 172, p. 1.

By way of example, Essentia claims it discovered the temperature excursion in February 2020, yet it has withheld documents going at least as far back as 2013. ECF No. 161-1 (privilege

log). The dates of the withheld documents provide one reference point to help assess whether the documents were generated as part of a "professional peer review" and stem from "procedures" or "functions" to "monitor, evaluate, [or] take action to review" medical care, N.D.C.C. § 23-34-01(5). Certainly, no monitoring, evaluation, or action to review the excursion could have occurred before Essentia learned of it.[5]

Accordingly, because the dates are relevant to the privilege assessment, the Court properly required their inclusion in the privilege log, even under *McKibbage*. Moreover, as Essentia recognizes, the law of the case doctrine applies – and the Orders should stand – unless a controlling "contrary decision" arises that "clearly demonstrates the law of the case is wrong." Memo, pp. 6, 9, 12. *McKibbage*'s fact-specific findings do not "clearly demonstrate" the Orders are "wrong" and do not warrant an exception to the doctrine.

**2. *McKibbage* found author and recipients irrelevant when the privilege had been established by other custodial information. Here, Essentia's privilege assertions could not be assessed without that information.**

As with *McKibbage*'s determination regarding dates, its decision regarding authors and recipients turned on specific facts that are not present here. *McKibbage* was a medical malpractice case involving a single plaintiff. *See McKibbage*, ¶ 2. Here, in contrast, the case involves roughly 50,000 patients' treatment over three years at multiple medical centers. Because Essentia has indiscriminately withheld thousands of documents from that time period (and years earlier), the resulting privilege assessment concerns correspondence with thousands of individuals (including third parties). The information needed to assess the privilege is thus different here.

In *McKibbage*, CHI "identified privileged documents," identified and "provided information on the committees that generated the documents," and "adequately described the

---

[5] Dates are also relevant to assess the attorney-client privilege and work product doctrine which Essentia has also asserted over most of the documents withheld as peer review privileged.

nature of the documents, enabling [plaintiff] to assess CHI's claim of privilege." *McKibbage*, ¶¶ 3, 16, 18, 20. The information CHI provided demonstrated that the documents "fall under 'peer review records'" and were "in the hands of 'peer review organizations.'" *Id.* at ¶ 18. In other words, it was already apparent that the withheld documents were privileged. *See id.* The court denied the disclosure of additional information because it would "not assist [plaintiff] in further assessing CHI's claim of privilege." ¶ 19 (citing N. D. R. Civ. P. 26(b)(5)(A)), ¶ 20.

In dicta, the court noted that additional recipient and author information "falls within the privilege itself," *id.* at ¶ 19, but that did not form part of the court's holding, *see id.* at ¶ 20, and it was a fact-specific determination made after the court found that CHI had already provided enough information – including custodial information – to establish the privilege, *see id.* at ¶ 18.[6] It follows that further detail in *McKibbage* would be derived from privileged records generated by a peer review organization as part of a peer review.

Those facts are not present here. Prior to the Orders, Essentia provided no information to enable the privilege assessment, let alone enough to establish the privilege. Essentia's earlier privilege log described three categories of purported peer review documents: "Documentation within Essentia's Pharmacy Department," "Communications with the Vogel Law Firm and documentation prepared at the request and/or direction of Vogel Law Firm," and "Communication and documentation [with] . . . Essentia's Legal Department." ECF No. 68-1. It described those

---

[6] The dictum regarding the application of the privilege to the particular facts present in *McKibbage* is not binding on this court or any other. *Bakke v. St. Thomas Pub. Sch. Dist.*, 359 N.W.2d 117, 120 (N.D. 1984) (Declining to apply the court's prior reasoning because, although the decision "may appear to control this case," it was "clearly distinguishable" and "inapplicable to the facts of this case. Any comment in an opinion which is not essential to the determination of the case and which is not necessarily involved in the action is dictum and not controlling in subsequent cases.").

documents as concerning "Lawsuit" (which is plainly outside of the scope of a "peer review") and "Investigation" (which says too little to tell). *Id.*

Essentia did not identify peer review organization "committees," let alone describe a "peer review organization" in a way that would allow Plaintiffs to assess the privilege. Instead, it opted to treat all Essentia employees and the third parties with which they communicated as the "peer review organization." To be sure, a "peer review organization" can include a "health care organization." But there was (and still is) nothing to suggest those many individuals were acting as part of a "professional peer review" when they created or received the documents or that their documents are "peer review records." Thus, more was and is needed to allow the parties to assess Essentia's privilege claims.[7]

Essentia would have the Court read *McKibbage* as holding that, as a matter of law, author and recipient information is always privileged. It does not go that far. And looking to the purpose and intent of the peer review privilege illustrates why. The privilege was designed to foster open discussions and candid self-analysis:

> [T]he primary purpose of the peer review privilege was to encourage physician participation in the peer review process. Concerns were expressed that physicians would be unwilling to serve on quality assurance committees, and would not feel free to openly discuss the performance of other doctors practicing in the hospital, without **assurance that <u>their discussions</u> in committee would be confidential and privileged**. It was this purpose to encourage frank and open physician participation, and the resulting improvement in patient care, which underlies the privilege.

*Trinity Med. Ctr. v. Holum*, 544 N.W.2d 148, 154-55 (N.D. 1996) (citation omitted) (emphasis added). While the privilege was later expanded in North Dakota to eliminate the need for

---

[7] To the extent that there was any question that additional detail would invade the privilege, the Court conducted an in-camera review of a sample of documents and subsequently found that Essentia could "identify withheld documents without disclosing privileged information." ECF No. 79, p. 12. That remains true.

predefined "committees," the purpose of the statute is and always has been to protect "discussion" in peer review, not the identities of peer review members (or committees, or organizations) or the mere fact that a peer review occurred.

*McKibbage* might, for example, support the assertion of privilege over the identities of peer review witnesses in a malpractice case, obtainable only from peer review records, after the privilege is established through adequate description of the record custodians among other information (though Plaintiffs would disagree with such a reading). But it would be absurd to suggest that the mere identities of Essentia's employees (Essentia having deemed its entire business the "peer review organization") are privileged. And without any other information to assess the boundaries of the "professional peer review" claimed, the Orders appropriately required Essentia to disclose author and recipient information, and those Orders should stand.

No reading of *McKibbage* would allow Essentia to comply with Rule 26 by claiming the peer review privilege provides blanket protection to all Essentia documents at any time for any purpose. Even if author and recipient information were privileged as a matter of law, Essentia must still establish that the peer review organization obtained the withheld documents as part of its peer-review "function" or "purpose." CHI did so by describing the "committees that generated the documents" and "provid[ing] information on" those committees, in addition to providing information about the documents themselves. *See McKibbage*, ¶¶ 16, 18. Essentia must do at least the same.

### 3. The information in *McKibbage* did not fall within exceptions to the peer review privilege. The information here does.

*McKibbage* is distinguishable in other material ways, too. For example, *McKibbage* concerned documents "generated" by peer review committees. *See* ¶¶ 16, 18. CHI argued that the additional detail plaintiff sought was "information obtained through peer review." *See* Ex. A

10

(CHI's opposition to the motion to compel in the matter below), ¶ 2. The plaintiff did not contend that the disputed information fell within any exception to North Dakota's peer review privilege. *McKibbage*, ¶ 10 (citing N.D.C.C. § 23-34-03(1)). And CHI had voluntarily agreed to describe original source documents. Ex. A, ¶ 4.

Plaintiffs here have argued that, to the extent the documents are "peer review records" at all, they are original source documents. ECF No. 161, *e.g.*, pp. 7, 8, 14, 16, 19; ECF No. 172, *e.g.*, pp. 4-6; *See* N.D.C.C. § 3-34-03(1)(a) (peer review "[r]ecords gathered from an original source that is not a peer review organization" are excepted from the privilege); Minn. Stat. § 145.64 ("Information, documents or records otherwise available from original sources shall not be immune from discovery."). Thus, the privilege log information was, at most, derived from non-privileged original source information, and it is not protected.

Likewise, *McKibbage* did not note any dispute regarding whether the document custodians were members of "peer review organizations" acting in a peer review, whether the documents were generated as part of a "professional peer review," or whether the types of documents withheld were "records." *See generally McKibbage*; *see also id.* at ¶ 18 (finding that these elements of the privilege were established). But here, each of those elements of the privilege is in dispute. ECF No. 161, *e.g.*, § V.A.; ECF No. 172, *e.g.*, § II. B. Thus, while the additional information sought in *McKibbage* may have amounted to extraneous detail that could only be obtained from the substance of records already demonstrated as privileged, the same cannot be said here.

Unlike in *McKibbage*, Plaintiffs here did not seek detail from peer review records after the privilege was established. The applicability and scope of the privilege are in dispute, and Essentia must produce enough detail to allow the parties and the Court to assess its claims.

#### 4. *McKibbage* did not hold that subject matter descriptions were privileged.

Notably, while Essentia seeks to vacate the Court's prior Orders in their entirety, the court in *McKibbage* did *not* hold, or even find in that case, that subject matter descriptions are privileged. It did not undertake any analysis of subject matter descriptions at all.[8]

And Essentia cannot argue in good faith that the boilerplate subject matter descriptions in its privilege log (e.g., "Draft request for guidance relative to investigation and quality assurance"; "Memorandum regarding update relative to investigation and quality assurance." ECF No. 161-1) reveal any privileged information.[9] They say nothing about the peer review at all.

The Court's Orders requiring Essentia to produce subject matter descriptions should stand.

#### C. *McKibbage* has no bearing on the substantive assessment of peer review privilege in this or any other case.

On January 24, 2022, Plaintiffs substantively challenged Essentia's privilege assertions in their Motion to Compel. ECF No. 161 (addressing peer review, attorney-client privilege, work product, and physician-patient privilege). Essentia now contends that motion should be denied based on *McKibbage.* Memo, pp. 12-14. But *McKibbage* did not address the substantive scope or

---

[8] The lower court decision found that subject matter descriptions beyond those which CHI already provided were prohibited because North Dakota defines peer review "records" to include "summaries." *McKibbage v. Dixon, et al.*, No. 19-cv-00640 (attached at ECF No. 172-1), ¶ 6 (quoting N.D.C.C. § 23-34-01(4)). However, "summaries" in the possession of a peer review organization and generated as part of a peer review, are not the same as privilege log descriptions *about* withheld records, which CHI did provide. Indeed, another North Dakota decision expressly required the production of subject matter descriptions. *Nagle v. The Bone and Joint Center, P.C.*, No. 19-cv-01908 (attached at ECF No. 172-2), ¶¶ 9, 12. There is no intervening decision (let alone a controlling one) that has held otherwise.

[9] For this same reason, Essentia's requests that its logs be destroyed or sealed should be denied. Essentia's privilege logs, after nearly a year of litigation about them, provide less informative subject matter descriptions than those which CHI voluntarily produced in *McKibbage. E.g.*, *McKibbage*, ¶ 18 (e.g., "Credentials Committee regular monthly meeting minutes."). Clearly, subject matter descriptions are not privileged; the court in *McKibbage* quoted some of them in its publicly available decision.

12

application of the North Dakota peer review privilege at all (let alone does it address any of the other privileges Plaintiffs challenge). It has no bearing on Plaintiffs' Motion to Compel.

In attempting to stretch *McKibbage* to apply to Plaintiffs' privilege challenges, Essentia argues that it would be unfair to allow Plaintiffs to use Essentia's privilege logs to challenge the peer review privilege because the logs are themselves privileged. Memo, p. 12. As explained above, that is not so. Nevertheless, Essentia seems to suggest that a proper privilege log would not have provided enough information to assess the privilege (which defies Fed. R. Civ. P. 26); Plaintiffs would therefore not have challenged Essentia's privilege claims (which is not true), and the inquiry would start and end with Essentia's unilateral interpretation of the privilege (which is wholly unreasonable). The privilege is designed to protect certain documents, not foster gamesmanship.

Essentia's claims that the logs are privileged are contingent not only upon its misreading of *McKibbage*, but on all of the underlying documents being substantively privileged. They are not. The logs show Essentia has withheld legal, financial, public relations, ordinary course of business, and original source documents. Essentia cannot now shield those documents by hiding information about them.[10]

Even if the logs were privileged, Plaintiffs may use that information to challenge the privilege. *E.g., Stinson v. City of N.Y.*, 10 Civ. 4228, 2014 U.S. Dist. LEXIS 145612, at *10-11 (S.D.N.Y. Oct. 10, 2014) ("Plaintiffs may rely on any information learned prior to notification of the inadvertent disclosure [of privileged information] for the purposes of litigating the privilege

---

[10] Failure to support privilege assertions can result in waiver of the entire privilege. *See* discussion in ECF No. 161, pp. 6, 27-28. Even if the log information were privileged, "waiver" of that transactional information is a reasonable remedy for Essentia's objectively deficient privilege logs served nearly a year ago (*e.g.*, ECF No. 68-1) and its overbroad misapplication of the privilege since.

claim."); *In re Keurig Green Mt. Single Serve Coffee Antitrust Litig.*, No. 14-md-2542, 2019 U.S. Dist. LEXIS 77286, at *23 (S.D.N.Y. May 7, 2019) ("no law or rule of professional responsibility prohibits a party from using inadvertently produced material to challenge the assertion of a privilege or other protection"); Fed. R. Civ. P. 26(b)(5)(B) (A party who is in receipt of allegedly privileged information "may promptly present the information to the court under seal for a determination of the claim.").

At most, a less detailed privilege log would further shift the burden to the Court, requiring it to evaluate privilege challenges without the parties' respective positions and analysis. And, should the Court undertake an in-camera review, less complete logs would require the Court to undertake a document-by-document analysis of the parties to and subject of thousands of documents. (At the very least, if *McKibbage* is read as broadly as Essentia would like, Essentia should continue to provide detailed privilege logs to the Court).

Essentia also claims that *McKibbage* "explained in greater detail" the North Dakota peer review statute and that Plaintiffs' view "is based on an erroneous interpretation." Memo, p. 12. That is not true. Essentia merely quotes excerpts of *McKibbage* that quote the privilege statute without analysis. *Id.* at 13-14. That statutory language has been addressed at length in the parties' prior briefing. Essentia then argues the privilege in a way that *McKibbage* does not touch upon. *E.g., id.* at 13 (quoting *McKibbage*'s statement that a "peer review organization . . . includes a committee" and then arguing that it "is also much broader," which *McKibbage* does not say.).

*McKibbage*'s fact-specific findings regarding the privilege logs in that case are of no import to the substantive privilege assertions and challenges here.

## III.    CONCLUSION

*McKibbage* is inapplicable because it applies North Dakota law and Minnesota law applies here. Even were *McKibbage* to apply, it is a fact-specific decision that is distinguishable from this

14

case. And Essentia's own privilege logs demonstrate that the Orders did not result in the disclosure of privileged information. Accordingly, Essentia's requests should be denied.

However, should the Court agree with Essentia and find that (1) North Dakota law applies and (2) *McKibbage* was not dependent on the facts of that case; its holding was not centered on Rule 26 disclosure requirements; sender, recipient, and/or date information is privileged as a matter of law in North Dakota; *McKibbage* "clearly demonstrates" this Court's prior decisions are "wrong"; and Essentia's privilege logs reveal privileged information: Essentia should, in future privilege logs, be permitted to describe the custodians of the withheld documents in a way that demonstrates the privilege applies without necessarily revealing authors and recipients. Essentia cannot merely rest on the documents belonging to a "healthcare organization" as a "peer review organization"; it must provide information about the documents and organization to support that the documents were "generated by, acquired by, or given to a peer review organization as part of any professional peer review."

Plaintiffs anticipate that this alternative approach could spark new litigation about the sufficiency of Essentia's descriptions and the boundaries of the privilege. Thus, should the Court extend *McKibbage* to this dispute, Plaintiffs would propose that Essentia also be required to provide a detailed privilege log, with an explanatory affidavit supporting the existence and scope of the professional peer review and its records, to the Court for its in-camera review and assessment.

Dated: April 15, 2022                              Respectfully submitted,

                                                                /s/ Melissa Ryan Clark
                                                             Melissa Ryan Clark
                                                             Brooke A. Achua
                                                             FEGAN SCOTT LLC
                                                             140 Broadway, 46th Fl.
                                                             New York, NY 10005

Ph: 646.502.7910
Fax: 312.264.0100
melissa@feganscott.com
brooke@feganscott.com

Elizabeth A. Fegan
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
Ph: 312.741.1019
Fax: 312.264.0100
beth@feganscott.com

Mac Schneider
SCHNEIDER LAW FIRM
815 3rd Ave. S.
Fargo, ND 58103
Ph: 701-235-4481
Fax: 701-235-1107
mac@schneiderlawfirm.com

J. Barton Goplerud
Brian Marty
SHINDLER, ANDERSON, GOPLERUD &
WEESE, PC
5015 Grand Ridge Drive, Suite 100
West Des Moines, Iowa 50265
Ph: (515) 223-4567
Fax: (515) 223-8887
goplerud@sagwlaw.com
marty@saglaw.com

Counsel for Plaintiffs

16