# EXHIBIT A

STATE OF NORTH DAKOTA

COUNTY OF BURLEIGH

DISTRICT COURT

SOUTH CENTRAL JUDICIAL DISTRICT

Case Type: Medical Malpractice

--------------

--------------

CASE TITLE:

Kevin McKibbage,

Plaintiff,

vs.

Daniel Dixon, M.D., The Bone & Joint Center, P.C., and St. Alexius Medical Center, a North Dakota Corporation, d/b/a CHI St. Alexius Health Bismarck,

Defendants.

--------------

Court File #08-2019-CV-00640

**DEFENDANT ST. ALEXIUS MEDICAL CENTER D/B/A CHI ST. ALEXIUS HEALTH BISMARCK'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY**

--------------

## INTRODUCTION

[¶1] Defendant St. Alexius Medical Center, a North Dakota Corporation, d/b/a CHI St. Alexius Health Bismarck ("St. Alexius") submits this Memorandum in response to Plaintiff's Motion to Compel. The crux of Plaintiff's Motion is that St. Alexius did not provide the level of detail required to assert the peer review/quality assurance privilege in its privilege log regarding documents it believes to be privileged under North Dakota's peer review privilege statute North Dakota Century Code section 23-34-03.

[¶2] North Dakota's peer review statute expressly prohibits the discovery of information obtained through peer review, and therefore Plaintiff cannot compel the information sought.

[¶3] Consistent with the requirements of N.D. R. Civ. P. 26(b)(5)(A)(ii), a privilege log can only describe the documents and information withheld "without revealing information itself privileged or protected." *Id.* at (b)(5)(A)(ii). The level of detail Plaintiff is seeking with regards to any and all content in essence would breach the very privilege asserted.

[¶4] While St. Alexius maintains its privilege log is consistent with the requirements of N.D. R. Civ. P. 26(b)(5)(A), and thus this information is not required to be disclosed by Rule 26, St. Alexius agrees to produce an amended privilege log that describes original source documents as well as a description of the types of privileged materials contained therein, and has been working with in-house counsel for St. Alexius to provide the same.

### Exhibits Cited Herein[1]

Ex. 8   N. Johnson Signature Page and Attachment
Ex. 9   December 21, 2021 Correspondence from Attorney McAlpine to Attorney Conlin
Ex. 10  June 1, 2021 Correspondence from Attorney Sogge to Attorneys Conlin and Cunningham

## I.      Factual Background

[¶5] Plaintiff Kevin McKibbage brought claims of medical malpractice against Defendants in this matter. (*See generally* Pl.'s Compl.) Plaintiff alleges that Defendant Daniel Dixon, M.D. was negligent in his care and treatment of Plaintiff. Dr. Dixon was employed by Defendant The Bone & Joint Center, P.C. ("Bone & Joint") at the time of Plaintiff's care. (*Id.*) Plaintiff claims that Bone & Joint is liable for Dr. Dixon's negligence. (*Id.*) Plaintiff also brought claims against St. Alexius as a result of Dr. Dixon's alleged negligence. (*Id.*)

[¶6] Defendant St. Alexius has denied Plaintiff's claims and responded to written discovery raising peer review privilege to protected information while simultaneously producing thousands of pages of documents including medical, imaging and billing records, preference cards, staff bylaws, and audit trail amongst others production. (*See* Pl.'s Ex. 1 Def. St. Alexius' Resp. to Pl.'s First Set of Discovery Requests.)

[¶7] Upon demand of Plaintiff, St. Alexius then prepared a formal Privilege Log describing the protected information and listing the privileges claimed. (*See* Pl.'s Ex. 3, Def, St. Alexius' Privilege Log.)

[¶8] On July 1, 2021, Plaintiff took the deposition of St. Alexius' Director of Risk Management and Patient Safety, Nicolette Johnson. (*See* Pl.'s Ex. 6, Excerpts of Depo. Trans. of N. Johnson).

[¶9] On September 11, 2021, counsel spoke by phone at which time counsel for St. Alexius provided Plaintiff's counsel with the date of a telephone call that occurred between St. Alexius and Bone and Joint which goes to Plaintiff's alleged motivation behind this motion. (*See* Declaration of Jessie L. Sogge).

[¶10] On October 6, 2021, St. Alexius served Nicolette Johnson's depositions signature page in a related matter with an attachment which also provided the date of that call as well as additional information sought. (Declaration of Jessie L. Sogge Ex. 8, N. Johnson Signature Page and Attachment). While this signature page was produced after Plaintiff's motion was filed, Plaintiff's counsel was informed that the date of the call – which was already verbally provided a month ago - and other information would be supplemented in this manner. (*See* Declaration of Jessie L. Sogge).

[¶11] Plaintiff alleges that the purpose of his motion to compel is to determine the date that St. Alexius became aware of any concerns with the professional competency of Dr. Dixon. (*See* Pl.'s Brief in Support of Pl.'s Mot. to Compel Discovery From St. Alexius, pp. 2-3.) Further, Plaintiff would like to have this Court believe that St. Alexius has not adequately responded to discovery, or provided any information Plaintiff has requested regarding the purpose of this motion. However, the record proves otherwise.

[¶12] St. ALexius has requested voluntary dismissal from this matter on multiple occasions. (*See* Exs. 8, 9 and 10). Plaintiff is now using this motion as a bargaining chip in response to St. Alexius' request for dismissal in an attempt to obtain non-discoverable, privileged information.

---

[1] All exhibits are attached to the Declaration of Jessie L. Sogge.

## II.  Legal Arguments

### a.  Peer Review Records are Absolutely Privileged

[¶13] North Dakota's peer review/quality assurance privilege is broad and precludes discovery of records, communications, discussions, and other information generated by, acquired by, or given to a peer review organization as part of any professional peer review, regardless of when the record was created. N.D. Cent. Code §§ 23-34-01-23-34-03. The peer review privilege extends to "[c]ommunications relating to a professional peer review, whether written or oral, between ... peer review organization members and other individuals participating in a professional peer review." N.D. Cent. Code § 23-34-01(4)(a)(2).

[¶14] The activities considered peer review for purposes of the statutory protection are equally broad and include the evaluation and improvement of the quality of health care. N.D. Cent. Code § 23-34-01(5). Additionally, the membership of peer review organizations is broadly defined to encompass wide-ranging categories of individuals, entities, and any combination thereof. *Id.* at §§ (3)(a) & (1). The peer review protection is triggered by the purpose of the activities of the organization/committee, and not by its membership makeup. *See id.* The peer review privilege is only subject to a few, narrowly-defined statutory exceptions. *See* N.D. Cent. Code § 23-34-03(1)(a)-(c).

[¶15] North Dakota courts fervently uphold the peer review privilege in a broad range of cases. *See Soentgen v. Quain & Ramstad Clinic, P.C.,* 467 N.W.2d 73, 79-80 (N.D. 1991) (finding peer review statements privileged in defamation and wrongful discharge suit). In fact, every state in the country recognizes a medical peer review privilege.

### b.  The Purpose of the Privilege is Defeated if Parties Do Not Adhere to Its Strict Application.

[¶16] Medical peer review processes used by facilities such as St. Alexius provide one of the few ways by which hospitals can discover and investigate potential patient safety and care issues. However, the effectiveness of peer review proceedings depends upon the willingness of the participants to engage in candid discussions of the shortcomings of the system and the healthcare providers involved - providers who often are colleagues of those participating in the review. The candor necessary for effective peer review would suffer greatly absent the peer review/quality assurance privileges broadly afforded to healthcare facilities like St. Alexius. *See, e.g., Cruger v. Love*, 599 So. 2d 111, 114-15 (Fla. 1992) ("privilege afforded to peer review committees is intended to prohibit the chilling effect of the potential public disclosure of statements made to or information prepared for and used by the committee in carrying out its peer review function"); *Sun Health Corp. v. Myers*, 70 P.3d 444, 447 (Ariz. Ct. App. 2003) ("The confidentiality of peer review committee proceedings is essential to achieve complete investigation and review of medical care. Because review by one's peers within a hospital is not only time consuming, unpaid work, [and] likely to generate bad feelings and result in unpopularity, it is imperative to preserve the peer review privilege.") (internal citations and quotations omitted).

[¶17] In surveying its own state's law, the North Dakota Supreme Court found that "concerns were expressed that physicians would be unwilling to serve on quality assurance committees, and would not feel free to openly discuss the performance of other doctors practicing in the hospital, without assurance that their discussions in committee would be confidential and privileged. It was this purpose to encourage frank and open physician participation, and the resulting improvement in patient care, which underlies the privilege." *Trinity Medical Ctr. v. Holum*, 544 N.W.2d 148, 155 (N.D. 1996).

      **c. St. Alexius will Submit a More Detailed Privilege Log Containing Original Source Materials and Privileged Document Types, but The Exceptions to the Peer Review Privilege Does Not Require Additional Detail Beyond What St. Alexius Has or Plans to Provide**

[¶18] One exception to the peer review/quality assurance privilege is for documents gathered from an original source. N.D. Cent. Code Ann. § 23-34-03(1)(a). The "original source" exception does not necessarily mean that St. Alexius must produce these documents, only that they are discoverable from the original source. *See* merely clarifies that "documents available from other sources remain discoverable from the other sources." *In re Fairview-Univ. Med. Ctr.*, 590 N.W.2d 150, 154 (Minn. Ct. App. 1999) (stating that Minnesota's "original source" exception merely clarifies that "documents available from other sources remain discoverable from the other sources.") Plaintiff, in essence, brings the same argument presented in *In re Fairview* by suggesting that St. Alexius would be allowed to essentially hide and bury information by asserting its peer review privilege. St. Alexius denies that it improperly asserted the peer review privilege. Further, courts are clear that "[e]ven if health care providers are purposefully amassing original documents in review organization files, that does not make the documents any less privileged." *Id.*

[¶19] The information Plaintiff seeks including the date of creation, authors/recipients, and a detailed description of the subject matter of the documents in question do not fall within the peer review privilege exceptions. *See* N.D. Cent. Code § 23-34-03. Disclosure of these details would require disclosure of peer-review protected materials and information. Thus, this information is not discoverable under the plain meaning of the statute. *See* N.D. Cent. Code § 23-34-02(1).

      **d. Alternatively, St. Alexius Seeks In Camera Review**

[¶20] Alternatively, St. Alexius proposes an in camera review by the Court of a more detailed privilege log/the records to confirm the peer review privilege applies.

## Conclusion

[¶21] "Peer review records are privileged and are <u>not</u> subject to subpoena or discovery or introduction into evidence in any civil or administrative action", with very limited exception. *See* N.D. Cent. Code § 23-34-03 (emphasis added).

[¶22] Plaintiff has been aware of St. Alexius' position to maintain its listed privileges with regards to the information he seeks to compel throughout this litigation. (*See* St. Alexius' Written Discovery Responses and Privilege Log). Plaintiff is also aware of the code that warrants this information privileged and non-discoverable. Further, St. Alexius has produced discovery that is not privileged. Yet, Plaintiff is now using this motion in an attempt to compel protected information as part of what appears to be a fishing expedition.

[¶23] Based on these submissions together with arguments by counsel at the hearing, St. Alexius respectfully requests Plaintiff's motion be denied in its entirety.

QUINLIVAN & HUGHES, P.A.

Dated:  October 6, 2021

By:    /s/    Jessie L. Sogge
Paul E. Darsow #06266
Jessie L. Sogge #Po2440
Attorneys for Defendant
St. Alexius Medical Center
PO Box 1008
St. Cloud, MN 56302-1008
(320) 251-1414
jsogge@quinlivan.com
pdarsow@quinlivan.com

1545977