UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA
EASTERN DIVISION

| | |
|---|---|
| JESSICA KRAFT, individually and as parent of minors L.K., S.K., and O.K.; SHELLI SCHNEIDER, individually and as parent of minors A.S. and W.S.; ANNE BAILEY, individually and as parent of minor D.B.; AMY LAVELLE, individual and as parent of minors Em.L. and El.L.; ELIZABETH BEATON, individually and as parent of minor M.B.; AMANDA AND TYRELL FAUSKE, individually and as parents of minors C.R.F. and C.J.F.; JENNIFER REIN, individually; and JESSICA BERG, individually and as parent of minors A.B. and S.B., individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>vs.<br><br>ESSENTIA HEALTH, INNOVIS HEALTH, LLC d/b/a ESSENTIA HEALTH, DAKOTA CLINIC PHARMACY, LLC, JOHN DOE MANUFACTURERS, and JOHN DOE DISTRIBUTOR,<br><br>        Defendants. | Case No. 3:20-CV-00121<br><br><br>**ESSENTIA HEALTH'S AND INNOVIS HEALTH, LLC'S OBJECTION TO AND NOTICE OF APPEAL FROM COURT'S ORDER (DOC. ID NO. 181)** |

I.    **INTRODUCTION**

Defendants, Essentia Health and Innovis Health, LLC d/b/a Essentia Health West (collectively, "Essentia"), respectfully submit this Objection to and Notice of Appeal from Magistrate Judge Alice R. Senechal's Order (Doc. ID No. 181) entered on May 9, 2022 ("the May 9th Order"), denying in part and holding in abeyance in part Plaintiffs' Motion to Compel Production of Documents Withheld as Privileged ("Motion to Compel") (Doc. ID No. 161).

The May 9th Order improperly determined that North Dakota law does not apply to Essentia's assertion of the peer review/quality assurance privilege.  Moreover, the May 9th Order declined to vacate prior orders requiring Essentia to provide a detailed privilege log in violation of applicable peer review/quality assurance statutes, contrary to the North Dakota Supreme Court's recent decision in *St. Alexius Medical Center, a North Dakota Corporation, d/b/a CHI St. Alexius Health Bismarck v. The Honorable Pam Nesvig, Judge of the Court, South Central Judicial District; Kevin McKibbage, Daniel Dixon, M.D.; and The Bone & Joint Center, P.C.*, 2022 ND 65.  Accordingly, the Order is erroneous and contrary to law.  Essentia, therefore, asks that this Court set aside the May 9th Order pursuant to Federal Rule of Civil Procedure 72(a) and Local Rule 72.1.  Alternatively, Essentia seeks certification to the North Dakota Supreme Court of the novel choice-of-law question at issue.

## II.    BACKGROUND

The Court is well-familiar with the history of this case.  In July 2020, Plaintiffs commenced this lawsuit, alleging that Essentia sold and administered certain temperature sensitive pharmaceutical products that were handled and stored outside the proper temperature range at a North Dakota facility for which Innovis contracted with Dakota Clinic Pharmacy, LLC ("DCP") for pharmaceutical management services.  (*See* Doc. ID No. 119, *Second Amended Class Action Complaint*; Doc. ID No. 104, *Essentia Answer to Second Amended Class Action Complaint*).  Importantly, Innovis's principal place of business is Fargo, North Dakota, and its contract with DCP is governed by North Dakota law.  Essentia Health is a Minnesota non-profit corporation and the sole member of Innovis.

During discovery, Essentia has asserted that many documents are protected from disclosure pursuant to the peer review/quality assurance privilege, among other privileges.  A

discovery dispute initially arose over what level of detail is required to assert the peer review/quality assurance privilege in a privilege log.  On August 2, 2021, Magistrate Judge Senechal issued an Order Regarding Discovery Dispute, which recognized that the relevant inquiry turns on the applicable state substantive privilege and acknowledged the broad nature of the peer review/quality assurance privilege.  (Doc. ID No. 79, at pg. 4).  The Court required Essentia to provide a more detailed privilege log, including:

> (1) the date on which it was created, (2) identity of the person who created it and the position held by that person at the time the document was created, (3) identity of persons who received the document and their positions, (4) a description of the subject matter of the document, (5) inclusive document identification numbers, and (6) specific reference to the portion of the North Dakota or Minnesota privilege the document is asserted to meet.

*Id.* at pgs. 12-13.

Essentia appealed that Order, which this Court affirmed on September 7, 2021.  (Doc. ID No. 109).  Essentia filed a Petition for Writ of Mandamus with the Eighth Circuit, which that Court declined to accept on September 20, 2021.  Accordingly, Essentia produced supplemental privilege logs with the additional detail.

Plaintiffs subsequently challenged the adequacy of Essentia's subject matter descriptions.  On October 14, 2021, Magistrate Judge Senechal acknowledged that the prior Order did not specifically address subject matter descriptions and ordered Essentia to "provide additional detail, specific to each document over which it claims the privilege."  (Doc. ID No. 129, at pg. 2).  Essentia again complied.

On January 24, 2022, Plaintiffs moved to compel Essentia to produce the documents withheld as privileged.  (Doc. ID No. 160).  Plaintiffs again challenged the sufficiency of Essentia's supplemental privilege logs and also claimed that the detailed subject matter

3

descriptions demonstrate the asserted privileges are not applicable. Essentia opposed the motion. (Doc. ID No. 169). In its supplemental privilege logs, Essentia claimed privilege under both North Dakota and Minnesota law. In their respective briefing, both parties asserted that a choice-of-law analysis was unnecessary as both North Dakota and Minnesota law demanded the same outcome. However, if an outcome determinative conflict arose requiring a choice-of-law analysis, Essentia argued that North Dakota law governed the application of privilege under any choice-of-law framework. Plaintiffs, on the other hand, argued that Minnesota law would apply.

While Plaintiffs' Motion to Compel was still pending, the North Dakota Supreme Court issued its decision in *McKibbage*, which confirmed the breadth of protection offered by the peer review/quality assurance privilege. 2022 ND 65. As part of discovery in that medical-malpractice case, CHI, a healthcare entity, produced a privilege log, asserting application of the peer review/quality assurance privilege. 2022 ND 65, at ¶ 3. Expressly citing Magistrate Judge Senechal's decision in this case, McKibbage sought to compel the disclosure of additional information, including creation dates, the identity and titles of the authors and recipients, and more detailed subject matter descriptions. *Id*. at ¶ 12. Ultimately, the state District Court required the disclosure of all the requested information except detailed subject matter descriptions. *See McKibbage v. Daniel Dixon, M.D. et. al*., Case No. 08-2019-CV-00640, Doc. ID No. 322, *Order on Motion to Compel*, at ¶ 5. The state District Court opined that "[m]ost certainly disclosure of the general subject is a violation of even the most basic 'summary' and is prohibited by law." *Id*. ¶ 6. CHI petitioned the North Dakota Supreme Court

4

to vacate the Order as inconsistent with the statutory peer review/quality assurance privilege and requirements of North Dakota Rule of Civil Procedure 26.[1]  *Id*. at ¶ 8.

On appeal, the North Dakota Supreme Court recognized that the lower court followed Magistrate Judge Senechal's decision on the very same issues.  *Id*. at ¶ 12.  The North Dakota Supreme Court distinguished its approach, stating, "[t]he federal court's analysis, particularly that of the Magistrate Judge, focused on other federal court rulings on peer review privilege claims, and in particular relying on Rule 26, Fed. R. Civ. P., instead of the substance of the underlying state-based peer review privileges." *Id*. at ¶ 13.  The North Dakota Supreme Court took "the opposite approach, looking first to the words of the peer review statute, and then determining how they apply to the procedure established by N.D. R. Civ. P. 26." *Id*.

Recognizing "the peer review privilege applies regardless of record date, [and thus] the disclosure of document dates will not assist other parties in assessing a peer review privilege claim," the North Dakota Supreme Court held disclosure of document date is not required.  *Id*. at ¶ 15.  In addition, the North Dakota Supreme Court held that the identities and titles of authors and recipients do not assist other parties, or the Court, in assessing the assertion of the peer review/quality assurance privilege and, indeed more importantly, is the very type of "information the legislature has determined falls within the privilege itself."  *Id*. at ¶ 19.

---

[1] The fact the North Dakota Supreme Court analyzed the peer review statutes under the North Dakota Rules of Civil Procedure, as opposed to the federal analog, is of no consequence.  The pertinent portions of Federal Rule of Civil Procedure 26 are identical to North Dakota's Rule. *Compare* FED. R. CIV. P. 26(b)(5)(A)(ii) *with* N.D. R. CIV. P. 26(b)(5)(A)(ii).  Indeed, the Federal Advisory Committee Notes provide that under certain circumstances, like here, "some of the pertinent information affecting applicability of the claim…may itself be privileged." FED. R. CIV. P. 26(b)(5)(A)(ii) Advisory Committee's Note to 1993 Amendment.  "[T]he rule provides that such information need not be disclosed." *Id*.

Accordingly, the North Dakota Supreme Court reversed the District Court's Order requiring the disclosure of such details, finding such information is protected. *Id*. at ¶ 20. The North Dakota Supreme Court did not explicitly address more detailed subject matter descriptions as contemplated by Magistrate Judge Senechal's Orders because the state District Court in *McKibbage* found this information was protected. However, if disclosure of dates, authors, and recipients is prohibited by the peer review/quality assurance statute, the North Dakota Supreme Court undoubtedly would find detailed subject matter descriptions are similarly protected. *See* N.D. CENT. CODE § 23-34-01(4)(A)(1).

The North Dakota Supreme Court's decision in *McKibbage* directly impacted Magistrate Judge Senechal's previous Orders, including those dated August 2, 2021 (Doc. ID No. 79) and October 14, 2021 (Doc ID No. 129), requiring disclosure of privileged information, including date of creation, identity or title of creators and recipients, and more detailed subject matter descriptions. The decision was also relevant to Plaintiffs' pending Motion to Compel.

Magistrate Judge Senechal requested supplemental briefing to address the impact of *McKibbage*. Essentia requested vacation of the August 2, 2021, and October 14, 2021, Orders requiring disclosure of information prohibited by the applicable statutory peer review/quality assurance privilege, as well as denial of Plaintiffs' Motion to Compel. (Doc. ID No. 78). Essentia further requested that Plaintiffs immediately destroy Essentia's supplemental privilege logs and not use them for any purpose. Essentia also requested that all references to privileged information in the record be sealed to prevent further public dissemination. Finally, Essentia requested a stay of Essentia's continued obligation to produce supplemental privilege logs while the issue was pending before the Court.

On May 9, 2022, Magistrate Judge Senechal issued the Order addressing Plaintiffs' Motion to Compel and the supplemental briefing on *McKibbage*. (Doc ID No. 181). The May 9th Order determined that *McKibbage* had no impact on this case because Minnesota law—rather than North Dakota law—governed Essentia's privilege assertions and because *McKibbage* was otherwise distinguishable. *Id.* The May 9th Order, therefore, denied Essentia's requests. *Id.* at pg. 29. The May 9th Order found no choice-of-law analysis was necessary for the remaining privileges asserted[2] because no conflict exists. *Id.* The May 9th Order ultimately concluded that at least some in-camera review is necessary to rule on the merits of Essentia's privilege assertions and stayed further production of supplemental privilege logs until that process is complete. *Id.* at pgs. 31-32. The Order directed both Plaintiffs and Essentia to each select up to fifty documents from the supplemental privilege logs for in-camera review, with instructions to select documents representative of larger number of documents so that the Court may apply its rulings on the samples to other withheld documents.

The May 9th Order is erroneous. The conclusion that only Minnesota law—and not North Dakota law—governs the applicability of the peer review/quality assurance privilege is contrary to the law and ought to be reversed. That conclusion improperly evades application of the peer review/quality assurance privilege as explained in *McKibbage* and allows continued

---

[2] Essentia has also asserted physician-patient privilege, attorney-client privilege, and the work-product doctrine. The work-product doctrine is governed by federal common law. As for the other privileges, Essentia generally agrees that no outcome determinative conflict exists between Minnesota and North Dakota law. However, North Dakota law ought to apply if a conflict arises for the same reasons explained herein for the peer review/quality assurance privilege.

disclosure of information that is in and of itself privileged.  Accordingly, Essentia respectfully requests this Court reverse the May 9th Order's conclusion that North Dakota law does not govern Essentia's claims of peer review/quality assurance privilege.  Alternatively, Essentia requests this Court certify to the North Dakota Supreme Court the novel choice-of-law question for privileges presented here.  Lastly, Essentia asks this Court limit the scope of any ruling that may be made on the merits of Essentia's privilege claims based on samples of documents.

## III.    LAW AND ARGUMENT

### A.    Standard of Review

Federal Rule of Civil Procedure 72(a) recognizes that a magistrate judge may decide non-dispositive pretrial matters.  FED. R. CIV. P. 72(a).  Rule 72(a) permits any party to object to a magistrate judge's order on a non-dispositive matter within fourteen days.  *Id.*  Pursuant to Local Rule 72.1(D)(2), "[t]he appealing party must serve and file a written notice of appeal, which must specifically designate the order or part thereof from which the appeal is taken and the grounds for the appeal."  D.N.D. CIV. L. R. 72.1(D)(2).  "The district judge in the case must consider timely objections."  FED. R. CIV. P. 72(a).

On an appeal from/objection to a non-dispositive order issued by a magistrate judge, the reviewing district judge must "modify or set aside any part of the order that is clearly erroneous or is contrary to law."  FED. R. CIV. P. 72(a); D.N.D. CIV. L. R. 72.1(D)(2); *see also Weather Modification LLC v. Brackin,* Case No. 3:20-CV-73, 2020 WL 6867080, at *1 (D.N.D. Oct. 26, 2020).  A magistrate judge's order is "contrary to law" when it "fails to apply or misapplies relevant statutes, case law, or rules of procedure."  *Shank v. Carleton Coll.*, 329 F.R.D. 610, 613 (D. Minn. 2019).  The objecting party bears the burden of demonstrating that

the ruling is contrary to law. *Jacam Chem. Co. 2013, LLC v. Shepard,* No. 1:19-CV-093, 2020 WL 6263747, at *2 (D.N.D. Aug. 18, 2020).

> **B.    A choice-of-law analysis is unnecessary but clearly dictates that North Dakota law governs Essentia's claims of peer review/quality assurance privilege**.

Essentia asserted its claims to peer review/quality assurance privilege under both North Dakota and Minnesota law.  Essentia maintains its position that a choice-of-law analysis is unnecessary because no outcome-determinative conflict exists between North Dakota and Minnesota law on the application of peer review/quality assurance privilege on these facts. That is, both states' laws support Essentia's claims of peer review/quality assurance privilege. Furthermore, Essentia reiterates its position that more than one state's statutory privilege ought to be applicable.  That is, both North Dakota and Minnesota's statutory schemes for peer review/quality assurance privilege ought to apply to the documents Essentia has withheld as privileged.

However, *if* a choice-of-law analysis is required, as Magistrate Judge Senechal determined, then North Dakota law governs the application of the peer review/quality assurance privilege in this case.  Accordingly, the May 9th Order is "contrary to the law" because it "fail[ed] to apply or misapplie[d] relevant [North Dakota] statutes [and] case law," choosing instead to apply Minnesota law. *Shank*, 329 F.R.D. at 613.

Analysis of the law of privilege presents both vertical and horizontal choice-of-law issues.  Essentia does not object to the May 9th Order's determination of vertical choice of law. "All evidentiary privileges asserted in federal court are governed, in the first instance, by Federal Rule of Evidence 501." *North Dakota v. United States*, 64 F. Supp. 3d 1314, 1329 (D.N.D. 2014).  Rule 501 provides that "in a civil case, state law governs privilege regarding

9

a claim or defense for which state law supplies the rule of decision." FED. R. EVID. 501. Thus, the May 9th Order appropriately concluded that Essentia's claim of peer review/quality assurance is governed by state law. *See USI Ins. Servs. LLC v. Bentz*, No. 1:18-cv-255, 2021 WL 4165376, at *2 (D.N.D. Sept. 13, 2021).

However, the May 9th Order errs in the horizontal choice-of-law conclusion that only Minnesota, rather than North Dakota, law governs Essentia's assertions of privilege. First, the May 9th Order incorrectly predicted that North Dakota would not determine that application of privilege is governed by the law of the forum. Second, even if the May 9th Order correctly predicted that North Dakota would instead adopt an interest-based choice-of-law rule for application of privilege, the conclusion that Minnesota law would govern under that test is respectfully incorrect in this case. Essentia addresses each in turn.

While Rule 501 clearly provides that state law applies, it is silent on which state's law governs. To make that determination, this Court "must apply the forum's conflict of laws rules." *Pritchard-Keang Nam Corp. v. Jaworski*, 751 F.2d 277, 281 n.4 (8th Cir. 1984). However, as recognized by Magistrate Judge Senechal, (Doc ID No. 181, at pg. 20), North Dakota has not articulated a choice-of-law rule for privileges. *See* 23A Fed. Prac. & Proc. Evid. § 5435 (noting most jurisdictions have yet to address choice of law for privileges). Thus, this Court must predict the approach the North Dakota Supreme Court would take.

Magistrate Judge Senechal agreed with Plaintiffs that the North Dakota Supreme Court would adopt an "interest-based" test. (Doc. ID No. 181, at pg. 21). However, that test—often referred to the Second Restatement's approach—has "serious conceptual flaws" when applied to a privilege assessment. 23A Fed. Prac. & Proc. Evid. § 5435; *see also* Restatement (Second) of Conflict of Laws § 139 (1988). Thus, it is unlikely that North Dakota would adopt it.

10

First, "the only relationship [that approach] recognizes as significant is geographic," which is "seldom sufficient" particularly when, like here, the privileges involve an entity engaged in interstate business. 23A Fed. Prac. & Proc. Evid. § 5435. That is, the interest-based test incorrectly assumes that communications occur only in one state, when, like here, they often cross state lines. *See id.* Second, that test focuses only on the situation where one state recognizes a privilege and the other does not, overlooking the more likely conflict between two states that both honor the privilege but differ in scope. *See id.*

Given these limitations, courts often "apply the forum privilege to all communications." *Id.*; *see also Simon v. G.D. Searle & Co.*, 816 F.2d 397 (8th Cir. 1987) (applying law of forum); *Whatley v. Merit Distrib. Servs.*, 191 F.R.D. 655, 659-60 (S.D. Ala. 2000) (same); *Valencia v. Colo. Cas. Ins. Co.*, 2007 WL 5685148, at *11 (D.N.M. Dec. 6, 2007) (same); *accord Hatfill v. N.Y. Times Co.*, 459 F. Supp. 2d 462, 465 (E.D. Va. 2006) (collecting cases applying the forum law); *In re A.H. Robins Co.*, 107 F.R.D. 2 (D. Kan. 1985) (employing the forum law in an MDL). There is good reason to believe North Dakota would do the same.

This approach makes sense, given that the forum generally controls the admissibility of evidence. *See Jaworski*, 751 F.2d at 281 n.4 ("[T]he general rule is that the law of the forum governs admissibility of evidence."); *Crowe v. Booker Transp. Servs., Inc.*, No. 11-690-CV-FJG, 2013 WL 394184, at *5 (W.D. Mo. Jan. 30, 2013) (same); *Union Planters Nat'l Bank of Memphis v. ABC Records, Inc.*, 82 F.R.D. 472, 474 (W.D. Tenn. 1979) (same). Additionally, applying the forum's law is consistent with the legislative history of North Dakota's peer-review statutes, which anticipates interstate application of the privilege. In 2009, statutory amendments allowed statistical information sharing between peer review and other entities outside of North Dakota. *Hearing on S.B. 2403, Before the S. Human Servs. Comm'n*, 61st

11

Leg. Assem. (2009) (Test. of John C. Kapsner, Counsel to N.D. Healthcare Ass'n). The definition was changed from "peer review committee" to "peer review organization" to more closely align North Dakota's approach to Minnesota's, as well as to recognize the expanded scope of entities that conduct peer review and that peer review can cross state lines. *Id.*

The May 9th Order found that North Dakota would not apply the forum privilege because North Dakota has adopted the Second Restatement's interest-based approach in other contexts. However, due to the shortcomings noted above, jurisdictions have rejected that approach for privileges even when adopting it in other contexts. For example, the May 9th Order dismissed Essentia's reliance on a Tennessee case applying the forum's privilege law because Tennessee later recognized a shift toward the Second Restatement's approach *for tort claims*. Yet, no state court in Tennessee has yet extended that approach *to privileges*, and some federal district courts in Tennessee have continued to hold the forum's privilege law should control in a choice-of-law inquiry *for privileges*. *See Bowman v. Interstate Realty Corp.*, No. 2:15-mc-00024-STA-cgc, 2015 WL 5797748, at *2 (W.D. Tenn. Oct. 1, 2015) (collecting cases finding the same for compelled testimony); *Oreck Mfg. Co. v. Acor*, No. 06-1232-TA, 2007 WL 9710006, at *1 (W.D. Tenn. Sept. 12, 2007) (same for withheld documents).

The May 9th Order further relies on a state survey to opine that a minority of states continue to apply the forum approach.[3] (Doc. ID No. 181, at pg. 13); *see also* Symeon C. Symeonides, *Choice of Law in the American Courts in 2020: Thirty-Fourth Annual Survey*,

---

[3] The May 9th Order characterizes Essentia's requested rule as the First Restatement's "territorial approach." However, it is worth noting that "[t]he original Restatement had no provision dealing with privileges." 23A Fed. Prac. & Proc. Evid. § 5435. Thus, some rely on the original Restatement for applying the forum law, while others have cited doctrines like *Lexi Fori*, public policy, or simply the limitations of the Second Restatement's approach.

69 Am. J. Comp. L. 177, 195 (2021). However, that survey considered choice-of-law approaches for only torts and contracts, *not* privileges. *See* Symeonides, 69 Am. J. Comp. L. at 195, available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3758978. And even that survey shows that many states take divergent choice-of-law approaches depending on the substantive issue, including North Dakota which takes different approaches for torts and contracts. *See id.* Accordingly, it would not be unusual for North Dakota to similarly adopt a choice-of-law approach specific to privileges as well, especially given the unique challenges outlined above and the North Dakota Supreme Court's recent decision in *McKibbage*. Thus, a prediction that North Dakota would not apply its own law in assessing an assertion of the peer review/quality assurance privilege is unsound and, with all due respect, incorrect.

However, assuming *in arguendo* that North Dakota would adopt an interest-based test for privileges, the May 9th Order is in error in concluding that test does not demand application of North Dakota law. That is, even under an interest-based test, North Dakota law governs. Indeed, the bulk of Plaintiffs' claims are brought under North Dakota substantive law, and many of the putative class members are North Dakota residents, facts which Plaintiffs do not dispute and Magistrate Judge Senechal recognized. Similarly, the potential temperature excursion allegedly occurred in North Dakota, with many of the communications, therefore, discussing the same. In addition, Innovis has its principal place of business in North Dakota, and it employs healthcare providers in North Dakota with reasonable expectation that their conduct and participation in professional peer review will be protected by or subject to the North Dakota peer review/quality assurance privilege. Moreover, as noted above, many of the communications at issue span across more than one state, including North Dakota.

The May 9th Order dismissed these factors in favor of Minnesota law largely because Essentia is "headquartered and incorporated in Minnesota." (Doc. ID No. 181, at pg. 23). Magistrate Judge Senechal concluded peer review would be conducted in Minnesota, "[r]egardless of where a particular sender or recipient of a document was located," therefore, centering the parties' relationship in Minnesota. *Id.* at pgs. 23-24. Essentia respectfully disagrees. The May 9th Order has a disconnect in the nature of the entities involved. Although Essentia Health is a Minnesota non-profit corporation, Innovis has its principal place of business in North Dakota. Accordingly, it is unsound to treat all the Essentia entities as "headquartered" in Minnesota and wrong to assume that peer review would not be conducted under North Dakota law.

Indeed, North Dakota is a focus of the contacts and relationships in this matter. Notably, even the underlying agreement between Innovis and DCP that provided for storage of pharmaceuticals by DCP dictates governance by North Dakota law.

A decision by a federal district court in Arizona further demonstrates that the May 9th Order misplaced its reliance on the fact that one of the entities involved is incorporated in Minnesota. That case applied the interest-based test in another matter involving interstate communications and claims. *See In re Bard Filters Prod. Liab. Litig.*, MDL No. 15-2641, 2016 WL 3970338 (D. Ariz. July 25, 2015). There, in-house lawyers were at company headquarters in New Jersey, but the subject of the litigation involved alleged injuries from product defects and alleged conduct in Arizona. *Id.* at *3. The Court recognized that relying on the place a communication is received is "problematic" when electronic communications— like those in this case—are often simultaneously received by "many people in many states." *Id.* at *2. The Court decided that a more useful contact was the fact that the communications

14

focused on "activities in Arizona" where the alleged torts occurred. *Id.* at \*3. The Court explained that "lawyers advise clients on the clients' activities and issues, not the lawyers' activities and issues." *Id.* Because those clients' issues were in Arizona, the parties' relationship was "centered" in Arizona, meaning Arizona privilege law applied. *Id.* at \*4; *accord Danklef v. Wilm. Med. Ctr.*, 429 A.2d 509, 512 (Del. 1981) (applying Delaware peer-review privilege as an operation occurred there).

The same is outcome is warranted here. Although Essentia Health is headquartered in Minnesota, Innovis has its principal place of business *in North Dakota*, provides healthcare services *in North Dakota*, and is the contracting party with DCP for pharmaceutical storage *in North Dakota*. Moreover, the subject of this litigation is a potential temperature excursion that allegedly occurred *in North Dakota*. Thus, the privileged communications have a focus on activities *in North Dakota*. In other words, the parties' relationship was centered *in North Dakota*. *See Bard Filters*, 2016 WL 3970338, at \*3-4. The May 9th Order errs in finding otherwise.

The choice-influencing considerations similarly require application of North Dakota law. Considering the factors of government interest and better rule of law, the Second Restatement itself recognizes that the forum law must govern if application of another state's law would be contrary to the forum's public policy. *See* Restatement (Second) of Conflict of Laws § 139(1). Here, North Dakota's peer review/quality assurance privilege is grounded in strong public policy to ensure the availability of high-quality healthcare, a policy that was most recently upheld by a unanimous North Dakota Supreme Court in *McKibbage*. Indeed, as explained by Magistrate Judge Senechal, the North Dakota legislature has repeatedly amended the statute to broaden its scope, (Doc. ID No. 181, at pgs. 5-6), including in response to a North

Dakota Supreme Court decision that threatened to dilute the privilege. *See Trinity*, 544 N.W.2d 148; *see also Bard Filters*, 2016 WL 3970338, at \*4, n.4 (considering similar amendment to a privilege statute as evidence of strong public policy). Thus, North Dakota public policy demands application of the privilege afforded under the North Dakota statutory scheme.

As for the remaining factors, predictability supports application of North Dakota law. *See Nodak Mut. Ins. Co. v. Wamlsey*, 687 N.W.2d 226, 231 (N.D. 2004). Parties would expect application of North Dakota's peer review/quality assurance privilege to communications exchange in both North Dakota and Minnesota that center around a North Dakota event, resulting in substantially North Dakota claims and Plaintiffs. Similarly, as noted above, the North Dakota healthcare providers in this matter would reasonably expect application of North Dakota peer review/quality assurance privilege. Maintenance of interstate order similarly requires that North Dakota law apply, particularly given North Dakota's intent for its privilege to apply interstate. Finally, simplification of the judicial task favors North Dakota law. *See* 23A Fed. Prac. & Proc. Evid. § 5435 (applying the law of the forum is less difficult); *see also Fioretti v. Mass. Gen. Life. Ins. Co.*, 53 F.3d 1228, 1234 n.21 (11th Cir. 1995) (same).

In total, the relevant considerations reasonably require application of North Dakota law, including the recent decision in *McKibbage*. Thus, the May 9th Order that only Minnesota law applies under a choice-of-law analysis is contrary to the law and ought to be reversed. Essentia therefore respectfully requests this Court order application of the North Dakota peer review/quality assurance privilege; vacation of the August 2, 2021, and October 14, 2021, Orders; destruction of the supplemental privilege logs and prohibition of their use; and sealing of privileged information in the record.

Finally, it is worth noting that the May 9th Order suggested that *McKibbage* is distinguishable from this case, even if North Dakota law applies.  However, the North Dakota Supreme Court expressly addressed the federal decision and determined that the opposite approach—and conclusion—was warranted.  2022 ND 65, at ¶ 13.

> **C.**     **Alternatively, Essentia moves this Court to certify a question to the North Dakota Supreme Court.**

There is no dispute that North Dakota, like most states, has not yet articulated a choice-of-law rule for privileges.  Thus, Essentia requests this Court to certify a question to the North Dakota Supreme Court pursuant to North Dakota Rule of Appellate Procedure 47.

Rule 47 permits the North Dakota Supreme Court to answer certified questions if

> (1) questions of law of this state are involved in any proceeding before the certifying court which may be determinative of the proceeding; (2) it appears to the certifying court there is no controlling precedent in the decisions of the supreme court of this state.

N.D. R. APP. 47(a).  Federal district courts have "wide discretion to certify questions to state courts."  *Jorgenson v. Agway, Inc.*, No. A3-00-59, 200 WL 33339633, at *2 (D.N.D. Nov. 1, 2000), certified question answered, 2001 ND 104, 627 N.W.2d 391.  The Eighth Circuit encourages certification as opposed to "indulging in speculation or conjecture."  *Kulinski v. Medtronic Bio-Medicus, Inc.,* 112 F.3d 368, 371 (8th Cir. 1997).  The North Dakota Supreme Court similarly prefers federal courts to certify questions of unsettled issues.  *Id.*

Furthermore, the North Dakota Supreme Court has stressed that a certified question from a federal court need not be dispositive of a case altogether.  *See McKenzie Cty. v. Hodel,* 467 N.W.2d 701, 704 (N.D. 1991).  Instead, the Court has emphasized that a "less stringent standard" applies because absent certification, a federal court must "speculate upon unsettled issues of North Dakota law," leaving the parties without "recourse in the appellate courts of

17

this State." *Id.* That concern is even more realized in a case involving questions of privilege. If this Court does not certify the question to the North Dakota Supreme Court and wrongly predicts the application of state law, Essentia may be forced to disclose privileged documents with no effective recourse following such disclosure. Accordingly, Essentia respectfully asserts that certification is appropriate.

**D.    The merits of Essentia's privilege assertions may not be rejected in their entirety based on sample documents.**

Finally, the May 9th Order determined that in-camera review by the Court is necessary to determine the merits of Essentia's privilege claims. As part of that process, Magistrate Judge Senechal has ordered the parties to each select up to fifty documents for in-camera review. (Doc. ID No. 181, at pgs. 31-32). It is unclear what is contemplated in using sample documents as part of review, but the Order directs the parties to "select documents that are representative of larger numbers of documents so that the court's determinations can be applied to other withheld documents." *Id.* at pg. 31.

At this juncture, it is notable that ordering disclosure of documents other than those actually reviewed would be improper. The Eighth Circuit has cautioned that "district courts should be highly reluctant to order disclosure without conducting an in camera review of allegedly privileged materials." *In re BankAmerica Corp. Secs. Litig.*, 270 F.3d 639, 644 (8th Cir. 2001). And other courts have held that ordering disclosure based on a sample is "clearly not fair," particularly where the party challenging the privilege has the opportunity to select "documents it deem[s] to be most vulnerable to challenge." *Am. Nat'l Bank & Tr. Co. v. Equitable Life Assur. Soc.*, 406 F.3d 867, 880 (7th Cir. 2005).

18

Accordingly, Essentia respectfully requests this Court limit the scope of rulings based on review of sample documents.

## IV.   CONCLUSION

For the foregoing reasons, Essentia respectfully requests this Court set aside the May 9th Order as contrary to law.  Alternatively, Essentia asks that this Court certify a question to the North Dakota Supreme Court on the novel choice-of-law issue.

Dated this 23rd day of May, 2022.

**VOGEL LAW FIRM**

*/s/ Angela E. Lord*

BY:   Angela E. Lord (#05351)
Robert B. Stock (#05919)
Briana L. Rummel (#08399)
MacKenzie L. Hertz (#09392)
218 NP Avenue
PO Box 1389
Fargo, ND  58107-1389
701.237.6983
Email:   alord@vogellaw.com
rstock@vogellaw.com
brummel@vogellaw.com
mhertz@vogellaw.com
ATTORNEYS FOR ESSENTIA HEALTH
AND INNOVIS HEALTH, LLC

4760150.6