**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**

| | |
|---|---|
| Jessica Kraft, individually and as parent to minors L.K., S.K., and O.K.; Shelli Schneider, individually and as parent of minors A.S. and W.S.; Anne Bailey, as parent of minor D.B.; Amy Lavelle, individually and as parent of minors Em.L. and El.L.; Elizabeth Beaton, Amanda Fauske, individually and as parent of minors C.R.F. and C.J.F.; Tyler Fauske, individually and as parent of minors C.R.F. and C.J.F.; Jennifer Rein, individually; Jessica Berg, individually and as parent of minors A.B. and S.B., individually and on behalf of all other similarly situated, | **ORDER GRANTING MOTION TO DISMISS**<br><br>Case No. 3:20-cv-121 |
| Plaintiffs, | |
| vs. | |
| Essentia Health, Innovis Health, LLC d/b/a Essentia Health, Dakota Clinic Pharmacy, LLC, John Doe Manufacturers, and John Doe Distributor, | |
| Defendants. | |

Before the Court is Defendant Dakota Clinic Pharmacy, LLC's ("Dakota Clinic") motion to dismiss the Plaintiffs' second amended complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), filed on September 28, 2021. Doc. No. 123. The Plaintiffs filed a response on October 19, 2021 (Doc. No. 130), and Dakota Clinic filed its reply on November 2, 2021. Doc. No. 132. For the reasons below, the motion to dismiss is granted.

## I.    **BACKGROUND**

The factual background, which the Court must accept as true for the purposes of this motion, is taken from the Plaintiffs' second amended complaint. Doc. No. 91. This motion is Dakota Clinic's second motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). After the Court granted Dakota Clinic's first motion to dismiss without prejudice (Doc. No. 56),[1] Plaintiffs amended their complaint for a second time. Dakota Clinic now moves to dismiss the second amended complaint. For these reasons, the Court is quite familiar with the facts of this case, and as such, provides a summary of the allegations as to Dakota Clinic as alleged in the second amended complaint.

This is an action brought by the Plaintiffs, individually and on behalf of their minor children, alleging that since as early as January 2017, Defendants Essentia Health ("Essentia") and Innovis Health, LLC ("Innovis") sold and administered more than 100 time and temperature sensitive pharmaceutical products ("TTSPPs"), which were manufactured by John Doe Manufacturers and distributed to Essentia and Innovis by Dakota Clinic. Doc. No. 91 ¶ 3. The second amended complaint continues with the primary allegations that the TTSPPs were handled and stored outside the proper temperature ranges and as a result were compromised by temperature excursions (referred to as the "Affected Medications"). Id. ¶ 4. The Plaintiffs claim they were exposed to the Affected Medications and seek to recover damages for "economic loss and other injuries." Id. ¶¶ 269, 297. The Plaintiffs further seek any damages permitted by law. Id. at 63.

---

[1] The Court previously denied a motion to dismiss filed by Defendant Essentia Health. See Doc. No. 13.

Specifically, as to Dakota Clinic, the Plaintiffs allege Dakota Clinic distributed the TTSPPs and Affected Medications to Essentia and Innovis. Id. ¶ 3. The Plaintiffs further allege the Affected Medications were compromised by improper temperature storage by Dakota Clinic. Id. ¶ 4.

## II.    LAW AND ANALYSIS

As noted above, Dakota Clinic moves for dismissal of the second amended complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). The Plaintiffs respond that their second amended complaint sufficiently pleads all claims against Dakota Clinic.

### A.    Rule 12(b)(6) Standard

Federal Rule of Civil Procedure 8(a) requires a pleading only to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Nevertheless, a complaint may be dismissed for "failure to state a claim upon which relief can be granted," and a party may raise that defense by motion. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A plaintiff must show that success on the merits is more than a "sheer possibility." Id.

> Plausibility is established when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Threadbare recitals supported by conclusory statements, however, do not suffice to meet the plausibility requirement.

Brookins Hybrid Drive Sys., LLC v. M.A.C., Inc., 3:12-CV-101, 2013 WL 12086636, at *2 (D.N.D. May 2, 2013). A complaint does not need detailed factual allegations, but it must contain more than labels and conclusions. Bell Atl. Corp. v. Twombly, 551 U.S. 544, 555 (2007).

The Court must accept all factual allegations in the complaint as true, except for legal conclusions or "formulaic recitation of the elements of a cause of action." Iqbal, 556 U.S. at 681.

The determination of whether a complaint states a claim upon which relief can be granted is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. "[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." Wilson v. Ark. Dep't of Hum. Servs., 850 F.3d 368, 371-72 (8th Cir. 2017). The burden is on the moving party to prove that no legally cognizable claim for relief exists.

**B.      Breach of Express Warranties**

The Plaintiffs' first claim against Dakota Clinic is for breach of express warranties under North Dakota Century Code chapter 41-02 and Minnesota Statutes chapter 336. Dakota Clinic argues the express warranty claims fail because the Plaintiffs (1) have not sufficiently pleaded that Dakota Clinic is a "Seller" under North Dakota or Minnesota law, and (2) law have not sufficiently pleaded that Dakota Clinic made any express warranties. The Plaintiffs disagree and respond that Dakota Clinic expressly warranted the Affected Medications through their distribution to Essentia, as well as the labeling, and packaging associated with the medications. The Plaintiffs also argue they have plausibly alleged Dakota Clinic is a "Seller," and in the alternative, that there is no requirement that Dakota Clinic be a "Seller" to support their claims. Finally, the Plaintiffs argue that any warranties made to Essentia extend to them as third-party beneficiaries.

North Dakota has codified the Uniform Commercial Code ("U.C.C.") express warranty provisions in North Dakota Century Code section 41-02-30, which state in relevant part:

1.      Express warranties by the seller are created as follows:

   a.      Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

      b.     Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(Emphasis added). Minnesota's U.C.C. statute contains identical language regarding express warranties. Minn. Stat. § 336.2-313(1)(a)-(b). In turn, to support a claim for breach of express warranties, the plaintiff must plausibly allege "an affirmation of fact or promise made" or "any description of the goods" made "by the seller" to the buyer. Id.

          1.    <u>Dakota Clinic is not a "Seller" under North Dakota or Minnesota Law.</u>

The parties disagree whether Dakota Clinic is a "Seller" under North Dakota or Minnesota law. Whether Dakota Clinic is a "Seller" is of significance because it relates to Dakota Clinic's ability to warranty the Affected Medications. Under North Dakota and Minnesota law, "Seller" is defined as "a person who sells or contracts to sell goods." N.D. Cent. Code § 41-02-03(1)(d); Minn. Stat. § 336.2-103(1)(d). Additionally, a "'sale' consists in the passing of title from the seller to the buyer for a price." N.D. Cent. Code § 41-02-06(1)(d); Minn. Stat. § 336.2-106(1).

To remedy the deficiencies the Court noted in the first motion to dismiss, the Plaintiffs added several allegations to the second amended complaint and allege Dakota Clinic was responsible for ordering, purchasing, storage, inventory, and distribution of the affected medications. Doc. No. 91, ¶¶ 152, 196, 310-13. The Plaintiffs further allege:

> Dakota Clinic warranted the quality of the Affected Medications to consumers through its management of Innovis's clinic pharmaceutical inventory (including, but not limited to, its responsibilities for compliance with all local, state, and federal laws regulating the Affected Medications) and by distributing the Affected Medications to be administered to consumers.

> Dakota Clinic distributed the Affected Medications to numerous Essentia Health clinics for administration to patients.

> Dakota Clinic's distribution of the Affected Medications for administration to consumers was itself an express warranty that the Affected Medications were safe

and effective for their intended use and would conform to the representations in their labeling and packaging.

Doc. No. 91, ¶¶ 249-51. Noticeably absent from second amended complaint and response to the instant motion is an allegation that Dakota Clinic sold or contracted to sell any of the Affected Medications to anyone—which is the standard under North Dakota and Minnesota law. In turn, even when viewed in the light most favorable to the Plaintiffs, the second amended complaint does not plausibly allege that Dakota Clinic is a "Seller."

2.      The Plaintiffs have not alleged Dakota Clinic made an express warranty.

Moreover, even setting aside that Dakota Clinic is not a "Seller," the Plaintiffs have not plausibly alleged any express warranty was made under North Dakota or Minnesota law. As noted above, an express warranty can be made by a "Seller" in two ways:

(1)     An affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(2)     Giving a description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

N.D. Cent. Code § 41-02-30; Minn. Stat. § 336.2-313(1)(a)-(b). For Dakota Clinic to have expressly warranted the Affected Medications, they must have communicated, "an affirmation of fact or promise" or "any description of the goods."

Here, the Plaintiffs have not alleged any specific warranties Dakota Clinic made to them. Instead, they advance an argument that Dakota Clinic expressly warranted the Affected Medications through its "Shared Services Agreement" with Essentia, distribution of the Affected Medications, as well as labels, publications, package inserts, and other written materials associated with the Affected Medications. Doc. No. 91 ¶¶ 240, 242. Even when taking these facts as true, there is no specific promise, affirmation, or description of the product made by Dakota Clinic to

the Plaintiffs. In fact, as alleged in the second amended complaint, there does not appear to have been any direct communication between any Plaintiff and Dakota Clinic. Given these facts, no express warranty could have been communicated by Dakota Clinic to any Plaintiff, and as a result, there is no plausible claim for breach of express warranty.

        3.      <u>The Plaintiffs' Claim under Minn. Stat. § 325G.17.</u>

Next, the Plaintiffs argue that even if Dakota Clinic were not a "Seller" under the commercial statutes of North Dakota and Minnesota, the Minnesota consumer protection statute sets forth its own express warranty provision that applies to Dakota Clinic's distribution of the Affected Medications. Under Minnesota Statutes section 325G.17, subd. 5:

> Express warranty means a written statement arising out of a consumer sale pursuant to which the <u>manufacturer, distributor, or retailer undertakes</u> (1) to preserve or maintain the utility or performance of the goods or provide compensation or replacement if there is a failure in utility or performance; or (2) declares that in the event of any sample or model, that the whole of the goods conforms to the sample or model. It is not necessary to the creation of an express warranty that formal words such as "warrant" or "guarantee" be used or that a specific intention to make a warranty be present, but an affirmation merely of the value of the goods or a statement purporting to be merely an opinion or commendation of the goods does not create a warranty.

(Emphasis added). Curiously, the second amended complaint cites only to Minnesota Statutes chapter 336 in relation to its breach of express warranties claim. Doc. No. 91 ¶¶ 239-269. However, even setting this tension aside, the claim cannot survive.

In applying Minnesota Statutes section 325G.17, Minnesota courts recognize that broad and unspecific warranty claims are insufficient to create an express warranty. <u>See</u> <u>Masepohl v. Am. Tobacco Co.</u>, 974 F. Supp. 1245, 1253 (D. Minn. 1997). To create an express warranty under Minnesota Statutes section 325G.17, specificity as to the alleged written statement creating the warranty is necessary. <u>See e.g., Johnson v. Bobcat Co.</u>, 175 F. Supp. 3d 1130, 1144 (D. Minn. 2016). Here, the second amended complaint provides no detail as to the substance of alleged

statements made by Dakota Clinic regarding the Affected Medications. Broadly asserting "Defendants made statements in labels, publications, package inserts, and other written materials intended for consumers and the general public, that the Affected Medications were effective, fit, and proper for their intended use" is vague and conclusory unless the actual written statement or substance of the statement is alleged. Because the alleged written statements are too broad and conclusory to create an express warranty under Minnesota Statutes section 325G.17, and because section 325G.17 was not properly raised in the second amended complaint, the claim must be dismissed.

4.    <u>Third-Party Beneficiary Statutes</u>.

Finally, the Plaintiffs attempt to use the U.C.C.'s third-party beneficiary statute to save their express warranty claim. Beyond the express warranty provisions noted above, North Dakota law also extends a seller's warranty to third-party beneficiaries of express or implied warranties. This section of the North Dakota Century Code states:

> A <u>seller's</u> warranty, whether express or implied, extends to any person who may reasonably be expected to use, consume, or be affected by the goods and who is injured by breach of the warranty. A seller may not exclude or limit the operation of this section with respect to injury to the person of an individual to whom the warranty extends.

N.D. Cent. Code § 41-02-35 (emphasis added). Similarly, Minnesota Statues section 336.2-318 provides:

> A <u>seller's</u> warranty whether express or implied extends to any person who may reasonably be expected to use, consume or be affected by the goods and who is injured by breach of the warranty. A seller may not exclude or limit the operation of this section.

(Emphasis added). A plain reading of these statutes indicate they only apply to a seller's warranty. And, as discussed at length above, the second amended complaint does not allege that Dakota

Clinic sold anything or engaged in any sale. Therefore, the third-party beneficiary statutes do not save the Plaintiffs' express warranties claim as to Dakota Clinic.

On the facts alleged in this amended complaint, as to Dakota Clinic and the express warranties claim, the Plaintiffs' second amended complaint does not contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678. Thus, Dakota Clinic's motion to dismiss the Plaintiffs' express warranties claim is granted.

### C.      Breach of Implied Warranties

Dakota Clinic next moves to dismiss the Plaintiffs' breach of implied warranties claim, again pointing to the lack of any allegation that it is a "Seller." The Plaintiffs allege Defendants impliedly warranted to the Plaintiffs that the Affected Medications were of "merchantable quality and safe and fit for the use for which they were intended—specifically, as consumer medication." (Doc. No. 91, ¶ 272). North Dakota codified the U.C.C.'s implied warranties, the warranty of merchantability and warranty of fitness for a particular purpose, in North Dakota Century Code sections 41-02-31 and 41-02-32.  Those statutes provide:

> 1.      Unless excluded or modified (section 41-02-33), a warranty that the goods shall be merchantable is implied in a contract for their sale if the <u>seller</u> is a merchant with respect to goods of that kind[.]
>
> \*\*\*
>
> If the <u>seller</u> at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the <u>seller's</u> skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.

N.D. Cent. Code §§ 41-02-31(1), 41-02-32 (emphasis added). Likewise, Minnesota also recognizes implied warranties in contract if the seller is a merchant with respect to goods of that kind. <u>See</u> Minn. Stat. § 336.2-314(1) ("[A] warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.").

As with express warranties, Minnesota and North Dakota statutes provide that an implied warranty may be made only by a "Seller." As discussed at length, the second amended complaint has described Dakota Clinic as an entity that distributed the Affected Medications, and not as a "Seller" under North Dakota or Minnesota law. As with the express warranty claim, that is not a sufficient allegation to sustain a claim for a breach of implied warranty. Accordingly, Dakota Clinic's motion to dismiss the Plaintiffs' breach of implied warranties claim is also granted.

### D.      North Dakota Consumer Protection Law and Minnesota Consumer Fraud Act

Dakota Clinic also moves to dismiss the Plaintiffs' claims under the North Dakota Consumer Protection Law and the Minnesota Consumer Fraud Act. Dakota Clinic claims that the Plaintiffs' consumer protection claims should be dismissed because Dakota Clinic is not a "Seller" and the Plaintiffs have not pleaded fraud with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure. Doc. No. 123. The Court agrees.

The North Dakota Consumer Protection Law is codified at North Dakota Century Code section 51-15-02 and states in relevant part:

> The act, use, or employment by any person of any deceptive act or practice, fraud, false pretense, false promise, or misrepresentation, with the intent that others rely thereon in connection with the sale or advertisement of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is declared to be an unlawful practice[.]

N.D. Cent. Code § 51-15-02 (emphasis added). The Minnesota Consumer Fraud Act provides similar consumer protection related to the purchase of goods. The Minnesota Consumer Fraud Act is codified at Minnesota Statutes section 325F.69, subdivision 1 and states:

> The act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is enjoinable as provided in section 325F.70.

Minn. Stat. § 325F.69, subd. 1. As discussed below, the Plaintiffs fail to state a legally cognizable claim under either statute.

        1.    <u>Application of Consumer Statutes to Dakota Clinic.</u>

The Plaintiffs argue consumer protection claims can be brought against any person, and there is no requirement for Dakota Clinic to have engaged in a sale for either statute to apply. While the statutes do provide that a claim may be brought against any "person," and person can be interpreted broadly to apply to Dakota Clinic, the Plaintiffs have ignored the remainder of each statute. North Dakota Century Code section 51-15-02 requires the fraudulent conduct to be in relation to the sale or advertisement of merchandise. Likewise, Minnesota Statutes section 325F.69 requires the fraudulent conduct to be in relation to a sale of merchandise. The Plaintiffs have not plausibly alleged Dakota Clinic engaged in the sale or advertisement of any merchandise. Accordingly, neither North Dakota Century Code section 51-15-02 nor Minnesota Statutes section 325F.69 is applicable.

        2.    <u>Fraud must be plead with particularity.</u>

Further, a heightened pleading standard applies when a complaint alleges fraud. <u>See</u> Fed. R. Civ. P. 9(b). North Dakota's Consumer Protection Law and Minnesota's Consumer Fraud Act sound in fraud and are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b). <u>See</u> <u>Olin v. Dakota Access, LLC</u>, 910 F.3d 1072, 1076 (8th Cir. 2018) (stating parties alleging claims under the North Dakota Consumer Protection Law must satisfy the requirements of Rule 9(b)); <u>see also</u> <u>Baker v. Best Buy Stores, LP</u>, 812 N.W.2d 177, 182 (Minn. Ct. App. 2012) (noting parties alleging fraud under the Minnesota Consumer Fraud Act the "circumstances constituting fraud . . . shall be stated with particularity."). Under Federal Rule of Civil Procedure 9(b), a party alleging fraud or mistake "must state with particularity the

circumstances constituting fraud or mistake." Thus, to satisfy Rule 9(b), the party alleging fraud "must typically identify the 'who, what, where, when, and how' of the alleged fraud." <u>BJC Health Sys. v. Columbia Cas. Co.</u>, 478 F.3d 908, 917 (8th Cir. 2007) (quoting <u>United States ex rel. Costner v. URS Consultants, Inc.</u>, 317 F.3d 883, 888 (8th Cir. 2003)). When there are multiple defendants, the plaintiff is required to specify which defendant made each of the alleged misrepresentations in the complaint in order to give each defendant adequate notice of the particular fraudulent acts or statements alleged. <u>Trooien v. Mansour</u>, 608 F.3d 1020, 1030 (8th Cir. 2010) (<u>citing Parnes v. Gateway 2000, Inc.</u>, 122 F.3d 539, 550 (8th Cir. 1997)).

Here, even when all the allegations are taken as true, the Plaintiffs have failed to specifically plead the alleged fraud and provide the required detail of the misrepresentation as it relates to Dakota Clinic. The Plaintiffs' fraud allegation distilled to its simplest form is that Dakota Clinic was aware of the storage temperature issue with the Affected Medications prior to distribution. In turn, the labeling and packaging associated with the Affected Medications communicating the medications were effective and proper for their intended use was fraudulent. While these claims are certainly concerning, they do not allege specific fraudulent action sufficient to sustain a claim upon which relief can be granted.

Even when accepting the alleged misrepresentation as true, a plaintiff must plead facts as to the place and time of each defendant's fraudulent conduct to state a plausible claim. <u>See Olin</u>, 910 F.3d at 1075. The Plaintiffs' second amended complaint lacks any specificity as to the time or place of Dakota Clinic's alleged fraud or misrepresentations. The second amended complaint also fails to identity which employee(s) of Dakota Clinic allegedly engaged in any fraud. The allegations of fraud in the second amended complaint are too vague and unspecific as to Dakota Clinic's conduct to survive a motion to dismiss.

The Plaintiffs have not pleaded their North Dakota Consumer Protection Law and Minnesota Consumer Fraud Act claims against Dakota Clinic with the particularity required by Federal Rule of Civil Procedure 9(b). As a result, Dakota Clinic's motion to dismiss these claims is granted.

### E.    Negligence

Dakota Clinic next moves to dismiss the Plaintiffs' negligence claim arguing the claim is barred by the economic loss doctrine, and because the damages and injuries alleged are purely economic, they are appropriately sought under contract law. The Plaintiffs respond that the economic loss doctrine only applies to sellers of a product, and that if Dakota Clinic is not a "Seller" as they claim, then the economic loss doctrine cannot apply.

Minnesota law recognizes that purely economic injuries must be brought as contract claims. Under the economic loss doctrine:

> [A] plaintiff is prohibited from recovering purely economic losses in tort. Economic losses occur when there is no personal injury and no physical harm to other property. The economic loss rule reflects that the resolution of liability for purely economic loss caused by negligence is more appropriately determined by commercial rather than tort law. Contract law applies to damage to the product or service itself and purely economic loss arising from the failure of the product or service to perform as expected.

Thunander v. Uponor, Inc., 887 F. Supp. 2d 850, 871 (D. Minn. 2012) (citations and quotations omitted). Similarly, North Dakota law recognizes the "distinct functions served by tort and contract law," and applies the economic loss doctrine when a plaintiff pleads allegations of only monetary injury. Clarys v. Ford Motor Co., 1999 ND 72, ¶ 10, 592 N.W.2d 573, 575.

Dakota Clinic argues the economic loss doctrine forecloses any claim by the Plaintiffs, in tort, for purely economic injury. The Court agrees. While the economic loss doctrine does apply to buyers and sellers in North Dakota and Minnesota, application of the doctrine in both states

implicates any situation where the alleged injury suffered in relation to a tort claim is purely economic. See Leno v. K & L Homes, Inc., 2011 ND 171, ¶ 17, 803 N.W.2d 543; see also Thunander, 887 F. Supp. 2d at 871. As a result, the Plaintiffs have failed to plead a cognizable claim for negligence under North Dakota or Minnesota law, and the negligence claim is dismissed.

### F.    Unjust Enrichment

Lastly, Dakota Clinic argues the Plaintiffs have failed to plausibly plead an unjust enrichment claim. Doc. No. 123. As the North Dakota Supreme Court has explained:

> Unjust enrichment is a broad, equitable doctrine which rests upon quasi or constructive contracts implied by law to prevent a person from unjustly enriching himself at the expense of another. To recover under a theory of unjust enrichment, the plaintiff must prove: (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and the impoverishment, (4) the absence of a justification for the enrichment and impoverishment, and (5) the absence of a remedy provided by law. The theory may be invoked when a person has and retains money or benefits which in justice and equity belong to another. For a complainant to recover, it is sufficient if another has, without justification, obtained a benefit at the direct expense of the complainant, who then has no legal means of retrieving it. The essential element in recovering under the theory is the receipt of a benefit by the defendant from the plaintiff which would be inequitable to retain without paying for its value.

McDougall v. AgCountry Farm Credit Servs., PCA, 937 N.W.2d 546, 553 (N.D. 2020) (citation omitted). "Claims for relief may be sought under different or alternative theories. Although a party is generally not entitled to an equitable remedy if there is an adequate remedy at law, a party may seek relief and proceed on both types of claims and the legal claims will generally be resolved first." McColl Farms, LLC v. Pflaum, 837 N.W.2d 359, 367 (N.D. 2013) (citation omitted). "The essential element in recovering under the theory is the receipt of a benefit by the defendant from the plaintiff which would be inequitable to retain without paying for its value." Thimjon Farms P'ship v. First Int'l Bank & Tr., 837 N.W.2d 327, 336 (N.D. 2013) (emphasis added) (quoting Hayden v. Medcenter One, Inc., 828 N.W.2d 775, 781 (N.D. 2013)). While not addressed by either

party, Minnesota also requires a direct relationship between the parties and no other available remedy in a claim for unjust enrichment. See Southtown Plumbing, Inc. v. Har-Ned Lumber Co., 493 N.W.2d 137, 141 (Minn. Ct. App. 1992).

Even accepting the allegations in the second amended complaint as true, the Plaintiffs fail to plausibly plead a claim of unjust enrichment against Dakota Clinic. There are no allegations as to what, if any, benefit Dakota Clinic received specifically from the Plaintiffs. In their second amended complaint, the Plaintiffs allege:

> Dakota Clinic Pharmacy was unjustly enriched as a party to the Shared Services Agreement and as a party in the chain of distribution with Innovis and Essentia.

> Plaintiffs and class members conferred a benefit on Dakota Clinic Pharmacy by paying for the Affected Medications that were maintained and distributed by Dakota Clinic Pharmacy.

> As part of the Shared Services Agreement, Dakota Clinic Pharmacy provided "management of Innovis's clinic pharmaceutical inventory, including but not limited to maintenance of Innovis's formulary, management of ordering and purchasing, periodic inspection of storage areas, security of stored pharmaceuticals, controlled substance recordkeeping, conduct of periodic audits and all other actions required for compliance with all local, state and federal laws regulating or otherwise applicable to the pharmaceuticals, [Dakota] or Innovis's clinic."

> As compensation for these services, Innovis paid Dakota Clinic Pharmacy an annualized fee of $250,000.

Doc. No. 91, ¶¶ 338-41. This type of chain of distribution argument in relationship to unjust enrichment has been previously rejected by North Dakota and Minnesota courts. See Apache Corp. v. MDU Res. Grp., Inc., 1999 ND 247, ¶ 15, 603 N.W.2d 891, 895; Southtown Plumbing, Inc., 493 N.W.2d at 141. The second amended complaint makes clear that the Plaintiffs' payment for the Affected Medication was to Essentia and not Dakota Clinic. Accordingly, the unjust enrichment claim fails because there is no plausible allegation Dakota Clinic received a benefit at the direct expense of the Plaintiffs. In turn, the claim must be dismissed.

### G.      Dismissal with Prejudice

A district court, in its discretion, may dismiss a pleading for failure to state a claim with or without prejudice. See Orr v. Clements, 688 F.3d 463, 465 (8th Cir. 2012). Dismissal with prejudice may be warranted if amending the pleading would be futile. See Pet Quarters, Inc. v. Depository Tr. & Clearing Corp., 559 F.3d 772, 782 (8th Cir. 2009). A dismissal with prejudice is also appropriate when a plaintiff has shown "persistent pleading failures" despite receiving an opportunity to amend. See Michaelis v. Neb. State Bar Ass'n, 717 F.2d 437, 438–39 (8th Cir. 1983); see also Milliman v. Cty. of Stearns, No. CIV. 13-136 DWF/LIB, 2013 WL 5426049, at *16 (D. Minn. Sept. 26, 2013).

Here, the complaint has been amended twice, yet the Plaintiffs have failed to plausibly allege a single cause of action against Dakota Clinic. The facts make clear that Dakota Clinic distributed the Affected Medications to Essentia. Should there have been a physical injury to a patient because of alleged negligent distribution, there is no doubt tort liability could attach to Dakota Clinic. However, the Plaintiffs pleaded claims sounding in contract,[2] and the Plaintiffs only contracted with Essentia. It appears that no number of amendments to the complaint can change this basic set of facts. In turn, it is appropriate to dismiss the second amended complaint with prejudice as it applies to claims against Dakota Clinic.

### III.   CONCLUSION

For the reasons discussed above, Dakota Clinic's motion to dismiss (Doc. No. 123) is **GRANTED**. The second amended complaint against Dakota Clinic is hereby **DISMISSED** with prejudice.

---

[2] The Court acknowledges that the Plaintiffs asserted negligence in the second amended complaint but notes that purely economic injuries cannot be remedied in tort.

**IT IS SO ORDERED**.

Dated this 27th day of May, 2022.

/s/ Peter D. Welte
Peter D. Welte, Chief Judge
United States District Court