# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Jessica Kraft, et al.,<br><br>　　　　　Plaintiffs,<br><br>　vs.<br><br>Essentia Health, et al.,<br><br>　　　　　Defendants. | **ORDER**<br><br>Case No. 3:20-cv-121 |

Before the Court is an objection and notice of appeal from court's order (Doc. No. 181) filed by Defendants Essentia Health and Innovis Health, LLC, d/b/a Essentia Health West, (collectively, "Essentia") on May 23, 2022. Essentia appeals United States Magistrate Judge Alice R. Senechal's May 9, 2022, order regarding a discovery dispute (the "May 9 Order"). Docs. No. 188, 190. On May 31, 2022, Plaintiffs Jessica Kraft, et al. ("Plaintiffs"), filed a response in opposition. Doc. No. 193. For the following reasons, Essentia's appeal is denied.

## I.   BACKGROUND

The Court is quite familiar with the allegations and claims in this case. Indeed, this is the second appeal from a discovery dispute this Court has addressed. In short, Plaintiffs brought this putative class action alleging that Essentia sold and administered injectable pharmaceuticals—time and temperature sensitive pharmaceutical products—that had been stored outside the proper temperature range.[1] See Doc. No. 92. Plaintiffs assert multiple claims and seek to recover for economic loss. Id.

This case is still in discovery. Plaintiffs served various discovery requests on Essentia, including requests for production of documents. As part of its response to these discovery requests,

---

[1] Plaintiffs first filed their complaint on July 10, 2020. Doc. No. 1. On January 25, 2021, Plaintiffs filed their amended complaint. Doc. No. 28. Plaintiffs then filed a second amended complaint on August 16, 2021. Doc. No. 92.

1

Essentia asserted various privileges to several documents, including "the peer review/quality assurance privilege."[2] Doc. No. 57-1, pp. 5, 7. Under Federal Rule of Civil Procedure 26(b)(5)(A)(ii), a party withholding documents on the basis of privilege must describe the withheld documents with enough detail to "enable other parties to assess the claim" but need not reveal "information itself privileged or protected."

As Judge Senechal fittingly explained, "[s]triking this balance has proved difficult." Doc. No. 181. By way of review, Judge Senechal issued a discovery order on August 2, 2021, addressing the sufficiency of Essentia's privilege and supplemental privilege log (the "August 2 Order"). Doc. No. 79. Pursuant to the August 2 Order, Essentia was directed to produce a more specific privilege log that included:

> (1) the date on which it was created, (2) identity of the person who created it and the position held by that person at the time the document was created, (3) identity of persons who received the document and their positions, (4) a description of the subject matter of the document, (5) inclusive document identification numbers, and (6) specific reference to the portion of the North Dakota or Minnesota privilege the document is asserted to meet.

Id., p. 12-13. Essentia appealed the August 2 Order to this Court, and it was affirmed. Doc. No. 109. Essentia then filled an interlocutory appeal and sought a writ of mandamus in the United States Court of Appeals for the Eighth Circuit, both of which were dismissed and denied respectively. Doc. No. 113.

With the first appeal resolved, discovery continued. During a status conference, Plaintiffs argued, among other things, that the privilege log provided by Essentia contained insufficient detail as to the subject matter descriptions. Doc. No. 128. Recognizing the August 2 Order did not include a specific directive regarding the level of detail required as to the subject matter descriptions, Judge

---

[2] For ease of reference, the Court refers to "the peer review/quality assurance privilege" as "peer review privilege."

2

Senechal issued an order on October 14, 2021, directing Essentia to "provide additional detail, specific to each document over which it claims the privilege." Doc. No. 129. Essentia complied. See Doc. No. 161-1.

Still unsatisfied with Essentia's supplemental privilege log, Plaintiffs filed a motion to compel production of documents withheld as privileged on January 24, 2022 (the "Motion to Compel") and requested sanctions. Doc. No. 161. In that motion, Plaintiffs argued that Essentia failed to establish that any of the withheld documents are privileged. See id. In response, Essentia argued it "complied with this Court's previous Orders requiring it to produce additional detail in its supplemental privilege logs" and that there is no basis on this record to require disclosure of the documents that Essentia has withheld as privileged. Doc. No. 169. Essentia further argued, in the alternative, that the Court should conduct an in-camera review of the documents identified in Essentia's supplemental privilege log "should the Court require additional information." Id.

After briefing on the Motion to Compel was concluded but before the Court issued an order, the North Dakota Supreme Court issued a decision in St. Alexius Medical Center v. McKibbage, 2022 ND 65, 971 N.W.2d 878. In that case, St. Alexius Medical Center challenged a state district court's order that compelled disclosure of allegedly privileged information, under North Dakota's peer review privilege, on a privilege log. Considering McKibbage, Judge Senechal ordered supplemental briefing. Doc. No. 175.

In its supplemental brief, Essentia argued that the Court's August 2 Order and October 14 Order "requiring the disclosure of additional details in Essentia's privilege logs for documents for which Essentia asserted application of the [peer review privilege] are inconsistent with the North Dakota Supreme Court's decision in McKibbage." Doc. No. 178, p. 2. Without formally moving, Essentia asked that the Court, given McKibbage:

3

> vacate its August 2, 2021, and October 14, 2021, Orders, order Plaintiffs' destruction of Essentia's supplemental privilege logs, precluding their further use in this case or otherwise, and seal any reference to the privileged information contained in Essentia's supplemental privilege logs already filed or of record to prevent further dissemination of such privileged information. Essentia also seeks a stay of this Court's August 2, 2021, and October 14, 2021, Orders as they relate to the requirement to produce supplemental privilege logs pursuant to the Court's Order Governing Discovery of Electronically Stored Information.

Id. Plaintiffs argued that McKibbage is inapplicable because this case is governed by Minnesota's peer review privilege law, not North Dakota's peer review privilege. Doc. No. 180, p. 3.

With the supplemental briefing concluded, Judge Senechal issued the May 9 Order, which resolved the motion to compel, as well as issues raised by the parties as to the impact of McKibbage. Doc. No. 181. In the May 9 Order, Judge Senechal conducted a thorough choice of law analysis and ultimately found that Minnesota's (rather than North Dakota's) peer review privilege applied. Id. Thus, Judge Senechal determined that that McKibbage did not apply and was distinguishable. Id. Additionally, as to the motion to compel, Judge Senechal found "it necessary to conduct in-camera review to determine whether documents Essentia has withheld are privileged under Minnesota's peer review privilege or under any other asserted privilege." Id., p. 32. She invited the parties to each select up to fifty (50) of the documents listed on Essentia's privilege log for the Court's review, with Plaintiffs selecting their documents by May 23, 2022, and Essentia selecting its documents by June 13, 2022.[3] Id. Judge Senechal also denied Plaintiffs' motion to compel, to the extent that Plaintiffs' requested the Court order Essentia to disclose all documents over which it had claimed privilege, and denied Plaintiffs' request for an award of fees and costs incurred in connection with that dispute. Id., p. 31. Essentia appealed.

---

[3] Judge Senechal also granted Essentia's motion for stay to the extent that Essentia "will not be required to produce additional supplemental privilege logs until the court's in camera review process has been completed" and held in abeyance "all other matters not addressed in the court's conclusion pending the completion of the in camera review process." Doc. No. 181, p. 32.

4

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 72(a) and District of North Dakota Civil Local Rule 72.1(B), a magistrate judge is permitted to hear and determine non-dispositive matters in a civil case. Any party may appeal the determination to the district court judge assigned to the case who "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); see also D.N.D. Civ. L. R. 72.1(D)(2). "A district court conducts an 'extremely deferential' review of a magistrate judge's ruling on a nondispositive issue." Carlson v. BNSF Ry. Co., No. 19-CV-1232, 2021 WL 3030644, at *1 (D. Minn. July 19, 2021). As such, a magistrate judge's decision will not be disturbed unless the "clearly erroneous" or "contrary to law" standards are met. See Fed. R. Civ. P. 72(a); see also Jones v. City of Elkhart, Ind., 737 F.3d 1107, 1115 (7th Cir. 2013). A magistrate judge's finding is clearly erroneous when, although there may be some evidence to support it, the reviewing court, after considering the entirety of the evidence, is "left with the definite and firm conviction that a mistake has been committed." Dixon v. Crete Med. Clinic, P.C., 498 F.3d 837, 847 (8th Cir. 2007) (quoting United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948)). "A decision is contrary to law when a court fails to apply or misapplies relevant statutes, case law or rules of procedure." Shank v. Carleton Coll., 329 F.R.D. 610, 613 (D. Minn. 2019). The burden of showing a ruling is clearly erroneous or contrary to law rests with the party filing the appeal. Marks v. Struble, 347 F. Supp. 2d 136, 149 (D.N.J. 2004).

## III. LEGAL DISCUSSION

As part of its argument that the May 9 Order is "erroneous and contrary to law," Essentia raises several issues on appeal. Doc. No. 188. Essentia first argues that the May 9 Order "improperly determined that North Dakota law does not apply to Essentia's assertion of [the peer

5

review privilege]." Id. Essentia next asserts that, contrary to the North Dakota Supreme Court's recent decision in McKibbage, "the May 9 Order declined to vacate prior orders requiring Essentia to provide a detailed privilege log in violation of applicable [peer review statutes]." Id. Finally and alternatively, Essentia seeks certification of the choice-of-law issue to the North Dakota Supreme Court. Id.

### A.      Choice of Law

Essentia's first argument presents a choice of law issue—namely whether North Dakota's peer review privilege (as opposed to or in addition to Minnesota's peer review privilege) applies. Pursuant to Federal Rule of Evidence 501, "state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501. Here, the Court has jurisdiction based on diversity of citizenship, and as such, state law provides the rule of decision and governs the existence and scope of any privilege. In re Baycol Prod. Litig., 219 F.R.D. 468, 469 (D. Minn. 2003) (citation omitted). Because Rule 501 is silent as to which state's law governs,[4] the Court will apply the forum's choice of law rules. See Wellin v. Wellin, 211 F. Supp. 3d 793, 800 (D.S.C. 2016), order clarified, No. 2:13-CV-1831-DCN, 2017 WL 3620061 (D.S.C. Aug. 23, 2017).

A choice of law analysis, however, is only necessary if the laws of two states (here, North Dakota and Minnesota) conflict. Essentia maintains its position that "no outcome-determinative conflict exists between North Dakota and Minnesota law on the application of [peer review

---

[4] The parties do not dispute the applicable North Dakota and Minnesota statutory authority pertaining to each state's respective peer review privilege. Thus, the Court incorporates by reference the relevant North Dakota and Minnesota statutes relied on by Judge Senechal in the May 9 Order. See Doc. No. 181 pp. 4-11 (citing N.D. Cent. Code § 23-34-01; N.D. Cent. Code § 23-34-03; Minn. Stat. § 145.61(5); Minn. Stat. § 145.64).

privilege] on these facts," and accordingly a choice-of-law analysis is unnecessary. Doc. No. 188. The Court disagrees.

As explained by Judge Senechal, North Dakota's and Minnesota's peer review privilege statues have differing definitions of "peer review organization" sufficient to generate a conflict. Doc. No. 181, pp. 15-16. Chiefly, North Dakota's more expansive definition of peer review organization, among other things, creates a sufficient outcome determinative conflict between it and Minnesota's narrower definition. See id., pp. 14-17. After independently reviewing the applicable statutes and considering Judge Senechal's rigorous analysis, the Court is not "left with the definite and firm conviction that a mistake has been committed" nor is it convinced that the relevant statutes, case law, or rules of procedure were misapplied. As such, the Court finds that Essentia has not met its burden to show that Judge Senechal's conclusion is erroneous or contrary to law.

Having established a sufficient conflict, the next step of the analysis requires the Court to determine which state's law applies. The Court has independently and carefully reviewed and considered the authority cited by the parties and Judge Senechal. To that end, all parties appear to agree that North Dakota case law has not specifically addressed which choice-of-law methodology courts should apply when specifically analyzing privilege laws. In the absence of any controlling authority, the Court is not persuaded that Judge Senechal's prediction that the North Dakota Supreme Court would apply an interest-based choice of law approach,[5] as articulated in Nodak

---

[5] As recognized by Judge Senechal, "The North Dakota Supreme Court refers to its choice of law rule as the 'significant contacts test,' though it also considers choice-influencing considerations." Doc. No. 181, p. 21 n.15 (quoting Daley, 587 N.W.2d at 161). Judge Senechal refers to this method as an "interest-based" choice of law rule. See Doc. No. 181, p. 21. For the purposes of this appeal and to maintain clarity, the Court will also refer to North Dakota's choice of law methodology as an "interest-based" choice of law rule.

Mut. Ins. Co. v. Wamsley, 2004 ND 174, 687 N.W.2d 226, when analyzing privilege laws is erroneous or contrary to law. Indeed, while North Dakota has not yet decided what choice of law methodology applies in privilege cases, the Court agrees with Judge Senechal that cases such as Issendorf v. Olson, 194 N.W.2d 750 (N.D. 1972) (applying North Dakota's significant contacts test in a case involving contributory negligence and assumption of the risk), Daley v. Am. States Preferred Ins. Co., 1998 ND 225, ¶ 11, 587 N.W.2d 159 (reviewing the evolution of North Dakota's significant contacts test and applying this method in a case involving no-fault benefits), Wamsley, 2004 ND 174, ¶ 9 (applying North Dakota's significant contacts test in addressing whether coverage under insurance policies could be stacked), Am. Fam. Mut. Ins. Co. v. Farmers Ins. Exch., 504 N.W.2d 307, 311 (N.D. 1993) (applying North Dakota's significant contacts test in a case involving which states no-fault law should apply to determine the availability of subrogation), support the proposition that North Dakota would likely apply an interest-based approach. Therefore, without any binding authority to the contrary, "[t]here is little reason to think the North Dakota Supreme Court would reverse course and apply a choice of law rule for privileges that is no longer applies in other contexts." Doc. No. 181, p. 20.

Essentia next argues that even "assuming *in arguendo* that North Dakota would adopt an interest-based test for privileges, the May 9th Order is in error in concluding that the test does not demand application of North Dakota law." Doc. No. 188, p. 13. Again, the Court disagrees. True enough, as Essentia emphasizes and Judge Senechal acknowledged, the majority of Plaintiffs are North Dakota residents (but include some Minnesota residents) and the majority of the claims arise under North Dakota law (but include some claims arising under Minnesota law). Doc. No. 181, p. 24. Yet, even with Innovis having its principal place of business in North Dakota, the fact of the matter is that Essentia contends that it (and not a more limited committee or entity) is the relevant

peer review organization under either North Dakota or Minnesota law. And Essentia is a Minnesota entity that is "headquartered and incorporated in Minnesota." Id., p. 23. As the relevant peer review organization, Essentia is claiming the privilege. Applying the interest-based choice of law methodology to these contacts, along with the contacts highlighted by Judge Senechal in the May 9 Order, the Court finds Judge Senechal's conclusion that the Minnesota's peer review privilege applies is not erroneous or contrary to law. In particular, the Court agrees that the first choice-influencing consideration, predictability of results, weighs in favor of applying Minnesota law. As Essentia is claiming the peer review privilege, it should reasonably expect to be subject to privilege laws of the state in which it is headquartered and incorporated (Minnesota). Similarly, the fourth choice-influencing factor, advancement of the forum's governmental interest, also weighs in favor of Minnesota law. While both Minnesota and North Dakota have a "strong public interest in improving health care by granting certain protections to medical review organizations," see Larson v. Wasemiller, 738 N.W.2d 300, 312 (Minn. 2007); Trinity Med. Ctr., Inc. v. Holum, 544 N.W.2d 148, 154 (N.D. 1996), North Dakota has a lesser interest in applying its peer review privilege to an entity centered in another state. Indeed, the Court notes that in applying Minnesota's peer review privilege law (instead of North Dakota's) to the discovery dispute, Essentia is not wholly deprived of the peer review privilege. Rather, Essentia is still entitled to, and protected by, Minnesota's peer review privilege. For these reasons, the Court finds that Judge Senechal's conclusion that Minnesota's peer review privilege applies not erroneous or contrary to law. Additionally, because Minnesota's (rather than North Dakota's) privilege law applies, Judge Senechal's decision to not vacate the August 2 Order and October 14 Order, both of which address

the privilege logs in this case, is also not erroneous or contrary to law.[6] See Doc. No. 181, pp. 28-29.

As a final note, the Court questions whether this appeal is premature. The Court recognizes that Essentia disagrees with decision that Minnesota's peer review privilege applies and understands preserving the issue on appeal. Nevertheless, the May 9 Order does not order disclosure of any documents; rather, it orders an in-camera review to determine whether the documents Essentia has withheld are, in fact, privileged under Minnesota's peer review privilege or under any other asserted privilege. So, to date, no actual disclosure of any withheld documents has been ordered, and the substantive peer review privilege has yet to be applied to any documents. And it is entirely possible no documents that have been withheld will be ordered to be produced. Generally, the Court would prefer to address any ordered disclosure of allegedly privileged documents (and the applicable peer review privilege statute) in one order and only after allegedly privileged documents have actually been compelled to be produced.

The Court has considered all other arguments raised by Essentia and addressed them to the extent it deems necessary. For the reasons articulated above, the Court finds that the May 9 Order is not erroneous or contrary to law. Accordingly, the Court declines to set aside the May 9 Order.

**B.     Certification to the North Dakota Supreme Court**

Beyond the appeal, Essentia alternatively argues that the question of which choice-of-law methodology North Dakota would apply when analyzing conflict of law issues regarding privilege

---

[6] The Court also finds that the factual distinctions between this case and McKibbage, as noted by Judge Senechal, are highly persuasive. Doc. No. 181, p. 28.

is a novel issue and that the Court should certify the question to the North Dakota Supreme Court. See Doc. No. 188, p. 17.

Under North Dakota Rule of Appellate Procedure 47, the North Dakota Supreme Court may answer certified questions of law "when two conditions are met: (1) the legal question 'may be determinative of the proceeding,' and (2) 'there is no controlling precedent.'" Blasi v. Bruin E&P Partners, LLC, 2021 ND 86, ¶ 6, 959 N.W.2d 872; N.D. R. App. P. 47. As explained by the Eighth Circuit:

> Whether a federal court should certify a question to a state court is a matter of discretion. See Perkins v. Clark Equip. Co., 823 F.2d 207, 209 (8th Cir. 1987). As the D.C. Circuit has stated: "The most important consideration guiding the exercise of this discretion ... is whether the reviewing court finds itself genuinely uncertain about a question of state law...." Tidler v. Eli Lilly & Co., 851 F.2d 418, 426 (D.C. Cir. 1988). We have expressly held that without a "close" question of state law or the lack of state sources, a federal court should determine all the issues before it. Perkins, 823 F.2d at 209.

Johnson v. John Deere Co., a Div. of Deere & Co., 935 F.2d 151, 153-54 (8th Cir. 1991).

Here, the certification question largely turns on whether the present issue—which choice-of-law methodology North Dakota would apply when analyzing conflict of law issues regarding privilege—may be determinative of the proceeding. Importantly, an answer either for or against Essentia would not be determinative of this proceeding. Even *assuming arguendo* that North Dakota courts would apply the methodology as argued by Essentia and, under this methodology, North Dakota's peer review privilege applied, the next steps of discovery still continue. And again, as noted above, the May 9 Order does not compel Essentia to disclose anything. Rather, the May 9 Order simply invites the parties to select and submit a certain number of documents to the Court for in-camera review to determine whether Minnesota's peer review privilege even applies. Accordingly, whether Essentia is successful on its appeal or not, discovery continues, the underlying case continues, and the certification would not materially advance the ultimate

11

termination of the litigation. Accordingly, the Court declines to exercise its discretion to certify a question to the North Dakota Supreme Court under the facts and circumstances presented in this case. Essentia's motion for certification is, thus, denied.

## IV. <u>CONCLUSION</u>

The Court has carefully reviewed the May 9 Order, the briefs, the applicable law, and the entire record. The Court finds that the May 9 Order is not erroneous or contrary to law. Accordingly, Essentia's appeal (Docs. No. 188, 190) is **DENIED**.

**IT IS SO ORDERED**.

Dated this 8th day of July, 2022.

*/s/ Peter D. Welte*
Peter D. Welte, Chief Judge
United States District Court