**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA**

JESSICA KRAFT, INDIVIDUALLY AND
AS PARENT OF MINORS L.K., S.K., and
O.K.; SHELLI SCHNEIDER,
INDIVIDUALLY AND AS PARENT OF
MINORS A.S. and W.S.; ANNE BAILEY,
AS PARENT OF MINOR D.B.; AMY
LAVELLE, AS PARENT OF MINORS
Em.L. and El.L.; ELIZABETH BEATON,
INDIVIDUALLY AND AS PARENT OF
MINOR M.B.; AMANDA AND TYRELL
FAUSKE, INDIVIDUALLY AND AS
PARENTS OF MINORS C.R.F. and C.J.F.;
JENNIFER REIN, INDIVIDUALLY; and
JESSICA BERG, AS PARENT OF MINORS
A.B. and S.B., individually and on behalf of
all others similarly situated,

    Plaintiffs,

v.

ESSENTIA HEALTH, INNOVIS HEALTH,
LLC d/b/a ESSENTIA HEALTH,
DAKOTA CLINIC PHARMACY, LLC,
JOHN DOE MANUFACTURERS, and
JOHN DOE DISTRIBUTOR,

          Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. 3:20-CV-121

Hon. Peter D. Welte

Mag. Alice R. Senechal

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' SECOND MOTION TO COMPEL
ESSENTIA TO APPLY DISPUTED SEARCH TERMS**

# Table of Contents

I.    INTRODUCTION & BACKGROUND ............................................................................ 1

    A.    In January 2022, Plaintiffs moved to compel Essentia's application of 31 disputed terms. ........................................................................................................ 1

    B.    In February 2022, the Court ordered Essentia to Review the Low-Hit Terms and provide hit counts for the others. ...................................................................... 2

    C.    Essentia sent multiple hit reports in the following months; some had wrong information, and none fully complied with the February Order. ............................ 2

    D.    The new hit counts demonstrated that the vast majority of Plaintiffs' search proposals are reasonable, and have been all along. ............................................... 4

    E.    Essentia now disputes 11 terms, but 7 of them were agreed-to or Court-ordered. ...................................................................................................................... 5

II.    ARGUMENT ................................................................................................................. 6

    A.    Essentia disputes search terms that are narrowly tailored and which return a reasonable and proportionate number of unique documents. .............................. 6

    B.    Essentia disputes search terms that the Court already ordered it to Review. ........... 8

    C.    Essentia disputes terms it previously agreed to Review and has rejected Plaintiffs' reasonable proposals. ......................................................................... 9

    D.    Essentia should pay attorneys' fees Plaintiffs incurred in briefing the search term disputes. ...................................................................................................... 12

III.   CONCLUSION ............................................................................................................. 15

Plaintiffs move to compel Essentia Health and Innovis Health, LLC d/b/a Essentia Health (collectively, "Essentia") to apply five disputed search terms and sample documents related to six others. Plaintiffs also seek an order awarding Plaintiffs attorneys' fees they incurred in bringing this motion and their prior motion to compel regarding search terms.

## I.    INTRODUCTION & BACKGROUND

### A.    In January 2022, Plaintiffs moved to compel Essentia's application of 31 disputed terms.

On January 11, 2022, after eight months of search term discussions, Plaintiffs moved to compel Essentia to apply 31 disputed search terms. ECF Nos. 157 and 158 (the "January Motion"). That motion divided the disputed terms into two categories: 15 "Low-Hit Terms" with fewer than 1,000 unique hits each, and 16 "Higher-Hit Terms" with more than 1,000 unique hits each. *See id.*

At the time, Essentia had not provided hit counts for some of the modified, narrowed proposals Plaintiffs had made four months earlier. Essentia had also not provided hit counts for many of Plaintiffs' original proposals; it had instead run broader versions of the terms. Essentia claimed that its discovery vendor was unable to use multiple numerical connectors in a single search, and Essentia had therefore substituted broader proximity connectors (e.g., "AND" for "w/30"). Essentia objected to the quantity of documents those broader searches generated.

Plaintiffs noted that numerical connectors are routinely used, and none of the searches contained the type of connectors that Essentia claimed were problematic. Plaintiffs argued that it was unreasonable for Essentia to unilaterally expand search terms – with no valid basis for doing so – and then complain that those terms recalled too many documents. Plaintiffs also argued that their proposals were reasonable, and they had gone to great lengths to advance discovery despite Essentia's lack of cooperation. Plaintiffs thus asked that Essentia be directed to move forward with the searches.

**B. In February 2022, the Court ordered Essentia to Review the Low-Hit Terms and provide hit counts for the others.**

On February 25, 2022, the Court granted Plaintiffs' motion to compel as to the 15 Low-Hit Terms and directed Essentia to Review[1] them. ECF No. 173 (the "February Order"), p. 11. Those terms were thus resolved.

Regarding the Higher-Hit Terms, the Court recognized that Essentia's explanation for failing to run Plaintiffs' proposals was unsupported. It directed Essentia to provide the number of unique hits for the Higher-Hit Terms, "as modified by Plaintiffs," within 30 days (i.e., March 27, 2022). *Id.* It also directed Plaintiffs to consider modifications and prioritization, noting, for example, one term that appeared to have over 100,000 unique document hits. The Court denied Plaintiffs' motion as to the Higher-Hit Terms "without prejudice to plaintiffs filing a later motion after the steps described above have been completed." *Id.* at 11-12.

**C. Essentia sent multiple hit reports in the following months; some had wrong information, and none fully complied with the February Order.**

Somehow, after the February Order, Essentia's vendor was finally able to run the numerical connectors that Plaintiffs originally proposed. Still, it took more than two months after the Court's deadline for Essentia to provide a purportedly reliable hit report. Through that process, Plaintiffs discovered that the original hit counts Essentia reported in and after July 2021 – which the parties relied on for several months of negotiations and which were briefed in the January Motion – were wrong.

On March 25, 2022, Essentia sent a hit report, but noted that it intended to re-run 10 additional searches. On April 6, 2022, Plaintiffs had not heard from Essentia, and followed up on the status of the complete list. On April 12, 2022, Essentia sent the updated list. *See* **Exhibit A**.

---

[1] In this brief, Plaintiffs use the term "Review" to mean to apply a search term to Essentia's document pool, review all documents returned by that term, and produce all responsive documents.

2

However, that list had problems. Despite running narrower search terms, Essentia reported much higher hit counts. Essentia made no mention of this when sending the hit reports. On April 13, 2022, Plaintiffs asked Essentia (1) to explain the increased hit counts, (2) whether it agreed to run any of the terms it previously disputed, and (3) to confirm it was complying with the Court's order to review the Low-Hit Terms, as Essentia had included some of those terms in its report. On May 2, 2022, having received no response, Plaintiffs reached out again to ask for an update.

On May 5, 2022, Essentia responded that the higher hit counts arose because (1) it applied the search terms to the "entire seed set while previous hit counts excluded documents that we had already reviewed; and (2) the use of the wildcard on some of the search strings was not consistently created on the first run of the search strings." Essentia followed: "We have remedied that issue and will provide new hit numbers as soon as possible." Essentia also confirmed that it "ha[d] reviewed the 'low hit' search strings as ordered by the Court."

On June 1, 2022, Essentia provided the "new search term hit results after correctly applying" the connectors and wildcards. *See* **Exhibit B**.[2] Although the February Order required Essentia to run the "modified" searches at issue in the January Motion (*see* Order pp. 10-11), Essentia instead ran earlier versions for the June report, ignoring interim modifications and

---

[2] In its July 2022 position statement, Essentia represented to the Court that it "did in fact run those [high-hit] searches and provided Plaintiffs those results on March 25, 2022" and "had already complied with the Court's order" on March 25. Both Essentia's correspondence and the reports themselves make clear that Essentia did not provide a complete or accurate list until June (and even then, it reported on original terms, not the modified versions).

Only one of the 11 currently disputed terms appeared in Essentia's March report (Search 138). In its April report, Essentia added just one more currently disputed term (Search 52). Both reports omitted multiple modified Higher-Hit Searches, e.g., Searches 12 and 84. And the hit counts those reports provided were wrong. For example, Essentia reported nearly 175,000 unique hits for Search 52 in April. *See* Ex. A. In June, it reported just 3,043. *See* Ex. B. In March and April, Essentia reported 5,196 unique hits for the narrowed version of Search 138. *See* Ex. A. In June, it reported just 1,743 unique hits for the original, broader version of that term. *See* Ex. B.

bringing the parties back to where they should have been when Essentia first reported hit counts in summer 2021. Plaintiffs eventually learned that Essentia had re-run all of the original search terms, and intended to dispute some previously resolved terms, because its hit reports going as far back as July 2021 were inaccurate.

Given the delays in receiving these hit counts, Plaintiffs decided to move forward with the June results.

**D. The new hit counts demonstrated that the vast majority of Plaintiffs' search proposals are reasonable, and have been all along.**

The June report revealed that many of the terms Essentia previously disputed as recalling too many documents actually had few or no unique documents at all when run correctly. For example, Essentia previously claimed Search 48 had 622 unique hits; it now reports 0. Essentia previously claimed Search 54 had over 9,000 unique hits; it now reports 203. Essentia previously claimed Search 45 returned over 53,000 unique hits; it now reports 304.

As another example, the February Order stated that the Court was "unlikely" to "order that Essentia review documents in a search string such as #52, which identified 110,123 unique resources." February Order, p. 11. At the time of the January Motion, Plaintiffs had already narrowed Search 52, and that modified term had 57,230 unique hits with Essentia's use of the "AND" connector. But the original term, when run correctly and with the numerical connector Plaintiffs originally proposed, has only 3,043 unique hits – a reasonable number for that search.

Of the 31 terms at issue in the January Motion, 24 have fewer than 1,000 unique hits when run correctly. Only *one* previously disputed term (Search 63) now has over 20,000 unique hits – and Essentia had claimed that term had only 547 unique hits at the time of the January Motion.[3]

---

[3] Essentia has not explained why some hit counts fell by thousands while other rose by thousands once its wildcard anomaly was resolved.

4

Had Essentia provided an accurate hit count for this term in 2021, Plaintiffs would have discussed appropriate modifications. Indeed, if Essentia had provided accurate hit counts a year ago, the parties may not have needed to resort to motion practice to resolve any search terms at all.

**E.  Essentia now disputes 11 terms, but 7 of them were agreed-to or Court-ordered.**

Essentia now disputes 11 terms. Just four of those disputed terms were Higher-Hit Terms left open by the February Order. The other seven terms were resolved several months ago, either because Essentia agreed or was ordered to Review them; still, Essentia now opposes them anyway.

Despite Essentia's countless delays and inaccuracies, its continued resistance to collaboration, and its decision to now re-open resolved terms, Plaintiffs offered a compromise.

First, Plaintiffs prioritized for Review the five disputed terms with the fewest unique hits. Those terms return fewer than 10% of the disputed unique documents. Plaintiffs also offered to narrow the largest of those terms. Second, Plaintiffs asked that Essentia sample fewer than 1% of the documents from the remaining six terms (2,000 of roughly 273,000) so that the parties could confer further regarding those terms. Essentia refused those proposals and offered no reasonable alternative.[4]

Plaintiffs have already agreed to modify seven of the 11 searches (some, after Essentia does a sample review); but the other four terms are narrowly tailored, have low hit counts, and are proportionate as-is. Plaintiffs thus bring this motion.

---

[4] Essentia did ask whether Plaintiffs would consider reverting to their prior modified proposals. Plaintiffs explained that approach would not work given the tack Essentia has taken.

Only four of the disputed searches have prior modifications. For one, Search 12, Plaintiffs have already proposed a new modification. For Searches 52, 84, and 138, Essentia never provided accurate hit counts for the modified versions. In fact, the original terms now have *lower* hit counts than the modified versions because of Essentia's wildcard error and use of the broader connector.

And the accurate counts for the original terms are now far lower than the counts Essentia initially reported (e.g., Search 52 has 3,043 unique hits, not 110,123). The terms are proportionate and no longer warrant modification.

## II.    ARGUMENT

Essentia opposes 11 searches: four that the February Order left open; two that the Court already directed Essentia to Review; and five that Essentia agreed to Review in 2021. Plaintiffs propose that Essentia Review the five narrower searches and sample the six broader searches. Plaintiffs also seek attorneys' fees incurred in bringing this motion and the January Motion.

### A.  Essentia disputes search terms that are narrowly tailored and which return a reasonable and proportionate number of unique documents.

There are only four searches that the February Order left open and which remain in dispute: **Searches 12, 52, 84, and 138.** Those terms and their current unique hit counts are as follows:

| Search No. | Search Term | Unique Hits |
|---|---|---|
| 12 | Temp* AND (Med* OR Inject* OR Vaccin* OR Immun* OR Innocul* OR Chemo* OR Rheum* OR Vial* OR Pharm* OR Shot* OR Biologic* OR CAM* OR Toxoid* OR Drug* OR Product*) | 19,005 |
| 52 | (Med* OR Inject* OR Vaccin* OR Immun* OR Innocul* OR Chemo* OR Rheum* OR Vial* OR Pharm* OR Shot* OR Biologic* OR CAM* OR Toxoid* OR Drug* OR Product*) w/ 30 (log* OR track* OR report* OR read* OR data* OR record* OR document* OR audit* OR maint* OR monitor* OR responsib* OR compl* OR standard* OR requ* OR recommend* OR conting* OR guid* OR protocol* OR polic* OR procedur* OR instruct* OR SOP* OR practice* OR occurrence* OR parameter* OR 31 OR 32 OR 33 OR 34 OR 35 OR 36 OR 37 OR 38 OR 39 OR 40 OR 77) | 3,043 |
| 84 | (DCP OR Dakota OR pharm* OR distrib* OR dispens*) w/30 (servic* OR agree* OR contract* OR dut* OR responsib* OR manag* OR maint* OR outsourc* OR control* OR oversee* OR compl* OR stor* OR fridg* OR refridg* OR therm* OR frig* OR refrig* OR freez* OR basement*) | 3,061 |
| 138 | (cold OR supply OR distribut*) w/30 chain* | 1,743 |

Plaintiffs request that Essentia Review **Searches 52, 84, and 138**. Each is very targeted to the facts of this case and has a reasonable and proportionate number of unique hits. The quantity of hits is especially low given that each of the searches reaches multiple core topics. For example, Search 84 seeks documents related to: (1) agreements and contracts between DCP and Essentia,

6

(2) pharmaceutical distribution and dispensing agreements and oversight, (3) the allocation of responsibilities between DCP and Essentia, and (4) DCP's maintenance of refrigerators, freezers, medication storage, and thermometers, among other issues. In other words, Plaintiffs could have broken these lengthier search strings out into multiple searches to give the appearance of lower individual hit counts, but that would not actually impact the overall search.

Essentia should Review Searches 52, 84 and 138, which are tailored to seek relevant information and total fewer than 8,000 of the roughly 300,000 unique documents in dispute.[5]

In August 2021, Essentia reported that **Search 12** returned 6,271 unique documents. In September 2021, Plaintiffs offered to modify Search 12, but Essentia never provided a hit count for that modification, even after the February Order directed it to do so. Instead, in June 2022, Essentia provided a new hit count for the original search, this time reporting more than three times the number of unique documents that Essentia initially claimed – roughly 19,000 – apparently as a result of Essentia's wildcard issue.

As explained in the January Motion, this term is highly relevant. Temperature guidelines and records for the Affected Medications are at the heart of the case. Essentia previously complained that the inclusion of words like "med!" and "inject!" would return "documents that have the terms Temperature and Medicine or Medication." ECF No. 163-2, p. 57. But Plaintiffs noted that those are exactly the documents Plaintiffs seek.[6]

---

[5] Essentia previously claimed these three searches accounted for nearly 132,000 unique documents. **Exhibit C** is a table of the disputed terms with the unique hit counts Essentia reported in August 2021 and June 2022.

[6] For example, Essentia's public statement regarding the excursion discusses a "medication temperature issue" at a "medication storage location," "affected medications," "medications being stored at temperatures outside of the range recommended by manufacturers," the time frame when "patients may have received those medicines," and "100 different refrigerated injectable medications involved." Many of the Affected Medications include "injectable" or "injection" in their names.

Nonetheless, in light of the new hit count, Plaintiffs offered to change the connector "AND" to "w/250" to ensure references to "temperature" appear close to references to the Affected Medications. Essentia never responded to that proposal.

Essentia should Review Search 12 as modified. Even if the unique hit count still approaches 19,000 documents after narrowing the proximity connector, that is a proportionate quantity of documents in a multimillion-dollar case involving medications administered to thousands of patients, with Essentia possessing the vast majority of responsive information.

**B. Essentia disputes search terms that the Court already ordered it to Review.**

Essentia also objects to two search terms that the February Order resolved: Searches 24 and 63.[7]

**Search 24** was a Low-Hit Term. *See* ECF No. 158-2, p. 3 (335 unique hits reported). This term has remained unchanged since Plaintiffs proposed it in June 2021. Essentia has reported just 335 unique documents for this term since it first provided such counts in August 2021. The Court ordered Essentia to Review that search. *See* February Order, p. 11.

Now, Essentia refuses to run Search 24. It claims the term's unique hit count is higher because Essentia has applied the term to a larger pool of documents and because it resolved a previously undisclosed error with its use of wildcards, which caused Essentia to miss thousands of documents for multiple terms.

But Search 24's new unique hit count is only 2,840 documents. And the search is plainly relevant to this case. It seeks documents about temperature logging, requirements, contingencies,

---

[7] Notwithstanding its objections, Essentia has repeatedly represented, including as recently as its July 2022 position statement, that it "timely completed the review of the resources recalled by those 'low-hit' searches."

and parameters, for example, all of which target documents about Essentia's years of failing to properly maintain, monitor, or document medication temperatures:

| Search No. | Search Term | Unique Hits |
|---|---|---|
| 24 | temp* w/ 30 (log* OR track* OR report* OR document* OR read* OR data* OR record* OR audit* OR maint* OR monitor* OR responsib* OR compl* OR standard* OR requ* OR recommend* OR conting* OR guid* OR protocol* OR polic* OR procedur* OR instruct* OR SOP* OR practice* OR report* OR parameter* OR indicat*) | 2,840 |

The relevance of this term far outweighs any burden associated with reviewing 2,840 unique documents.[8] Essentia should be ordered to Review it.

Essentia disputes another term the Court ordered it to run - **Search 63**. *See* ECF No. 158-2, p. 6 (547 unique hits previously reported). Although plagued by the same inequity of Essentia unilaterally refusing to run a Court-ordered term after resolving its own discovery mistakes, Plaintiffs recognize its new hit count is substantial, and have proposed a compromise for that term; it is addressed in Section C, below.

### C. Essentia disputes terms it previously agreed to Review and has rejected Plaintiffs' reasonable proposals.

Finally, Essentia disputes six terms, **Searches 63 through 68**, which were previously resolved. Essentia previously agreed to run **Searches 64-68**. Those terms were not in dispute at the time of the January Motion. **Search 63** was a Low-Hit Term, and the Court directed Essentia to Review it in the February Order. *See* February Order, p. 11. Thus, these searches were entirely resolved in February 2022 and should have been Reviewed by Essentia. (In fact, Essentia repeatedly represented to Plaintiffs and the Court that it completed its Review of those terms.)

---

[8] If anything, Essentia's hit count error prejudiced Plaintiffs in having to repeatedly negotiate, brief, and present to the Court search term issues that were based on incorrect information, and which resulted from errors that concealed thousands of potentially relevant documents until now.

Now, however, Essentia disputes these terms. It claims that its vendor used wildcards improperly and missed thousands of documents, and now that this "anomaly" is resolved, the hit counts for these searches are too high.

The six terms seek documents related to the relocation of Affected Medications. Five of the terms use specific drug names that Essentia has identified as Affected Medications, and one uses categorical names that Essentia has identified as Affected Medications. These searches are relevant because Essentia contends it discovered the excursion when the Affected Medications (and the refrigerators that stored them) were relocated from one part of the building to another. Those terms and their respective unique hit counts are as follows:

| Search No. | Search Term | Unique Hits |
|---|---|---|
| 63 | (Med* OR Inject* OR Vaccin* OR Immun* OR Innocul* OR Chemo* OR Rheum* OR Vial* OR Pharm* OR Shot* OR Biologic* OR CAM* OR Toxoid* OR Drug* OR Product*) AND (mov* OR relocat* OR transfer* OR transport*) | 77,715 |
| 64 | (ado-Tratuzumab OR Alprostadil OR Atezolizumab OR BEVACIZUMAB OR Bleomycin OR Candida OR Carflizomib OR Carmustine OR CERTOLIZUMAB OR CETUXIMAB OR DARBEPOETIN OR Denosumab OR diptheria OR Doxorubicin OR Dt* OR Dtap* OR Durvalumab) AND (mov* OR relocat* OR transfer* OR transport*) | 21,184 |
| 65 | (Eculizumab OR Eribulin OR Etoposide OR FILGRASTIM* OR Fulvestrant OR Golimumab OR Haemophilus OR Hep* OR HIB* OR HPV OR PAPILLOMA* OR Hyaluronidase OR INFLUENZA OR Flu OR Insulin OR Inteferon OR Ipilimumab OR IPV OR Latanoprost OR Leuprolide OR Lorazepam OR MANTOUX OR Mening* OR Methylergonovine) AND (mov* OR relocat* OR transfer* OR transport*) | 13,736 |
| 66 | (Natalizumab OR Nivolumab OR Obinutuzumab OR OMALIZUMAB OR PALIVIZUMAB OR Panitumumab OR PEGFILGRASTIM OR Pegloticase OR PENICILLIN OR PEOFILGRASTIM OR pertussis OR Pertuzumab OR Polatuzumab OR Polio* OR Proparacaine OR RABIBS OR Rabies OR Ramucirumab OR Rituximab OR Romiplostim OR TD* OR Tdap* OR Tetanus) AND (mov* OR relocat* OR transfer* OR transport*) | 59,323 |

| | | |
|---|---|---|
| 67 | (Tocilizumab OR Tuberc* OR Typhoid OR VINBLASTINE OR Vinorelbine OR Actemra OR Adriamycin OR Aranesp OR Ativan OR Avastin OR Avonex OR BEXSERO OR Bicillin OR BiCNU OR Bleomycin OR BOOSTRIX OR Candin OR Caverject OR Cimzia OR Cyramza OR Doxil OR Eligard OR ENGERJX-B OR Erbitux OR Etoposide OR Faslodex OR FLUBLOK) AND (mov* OR relocat* OR transfer* OR transport*) | 43,911 |
| 68 | (FLUMIST OR FLUZONE OR GARDASIL OR Gazyva OR Halaven OR HAVRIX OR Humulin R OR Imfinzi OR Imogam OR IMOVAX OR INFANRIX OR IPOL OR Kadcyla OR KINRIX OR Krystexxa OR Kyprolis OR Latanoprost OR Lucentis OR MENACTRA OR MENVEO OR Methylergonovine OR Navelbine OR Neulast* OR Nplate OR Opdivo) AND (mov* OR relocat* OR transfer* OR transport*) | 57,179 |

Despite Essentia's belated objection to these terms, resulting from a problem that arose from Essentia's own discovery failures, Plaintiffs agreed to a process to narrow them. Plaintiffs proposed that (1) Essentia take a statistically significant random sample of documents returned by just two of the six terms (proposing that Essentia review 1,000 documents from Search 63 and 1,000 documents from Search 65); (2) Essentia provide information about the results of that sample review (e.g., the % of responsive documents) and produce sample irrelevant documents to Plaintiffs; and (3) the parties use that information to determine whether Searches 63 through 68 need to be narrowed and, if so, the best way to do that.

This proposal is consistent with the ESI Order, which contemplates the exchange of example documents in meet-and-confer discussions and validation of any search methodology, which will necessarily involve sampling like Plaintiffs propose. ECF No. 46, pp. 6-7.

Essentia refused, and instead proposed that Plaintiffs modify these previously resolved terms without any further information from Essentia.[9] Plaintiffs ask that the Court order Essentia to engage in the sampling and meet-and-confer process Plaintiffs propose.

---

[9] Prior to the July 2022 status conference, Plaintiffs understood that Essentia agreed to sample these terms (although with an unspecified number of documents and in an unspecified way). Essentia later claimed Plaintiffs misunderstood, and it would not agree to sampling.

11

**D. Essentia should pay attorneys' fees Plaintiffs incurred in briefing the search term disputes.**

Plaintiffs' counsel has spent significant time litigating Essentia's search terms. While some negotiation regarding search terms is to be expected, much of this time was necessitated because of Essentia's delays, errors, lack of transparency, and unwillingness to move forward reasonably with discovery. Some of these issues, and Essentia's misrepresentations to the Court regarding this process, are identified in prior declarations (ECF Nos. 158-1 and 167-2), as well as prior position statements and briefs.

At the outset of discovery, Essentia failed to craft a good-faith list of search terms and instead shifted that burden onto Plaintiffs. Once Plaintiffs undertook that task, Essentia unnecessarily broadened the terms and then complained about their breadth. It refused to run its own proposed terms – just eight of them – while the parties negotiated others (it agreed only after Plaintiffs asked the Court to order Essentia to do so). It took months to simply identify which terms it disputed. It claimed Plaintiffs should withdraw 16 proposed terms because they were too burdensome to "build" for the search platform, though Plaintiffs did so within two hours. It provided little explanation for disputing the terms – in most cases, providing a single example of an irrelevant document and offering no proposed modification. And it frequently thwarted progress by delaying its responses to Plaintiffs' inquiries and waiting to provide its position on issues until Court status conferences.

In addition to its substantive unwillingness to collaborate, Essentia's participation in this process has been plagued with delays and technical issues. It has provided multiple series of partial, inaccurate, and incomplete reports for basic hit counts, repeatedly requiring Plaintiffs to identify problems Essentia either missed or failed to disclose, redo work, and start from scratch. It has repeatedly claimed an inability to perform basic search tasks, including a now-resolved inability

to provide unique hit counts required by the ESI Order (and which Essentia agreed to provide), a now-resolved inability to use numerical connectors, and a now-resolved "anomaly" in its application of wildcards. And it has not been transparent about these issues. It has instead provided reports with missing information, altered hit counts, or amended search terms, which Plaintiffs have then had to discover and inquire about.

Now, a year after Essentia provided its initial hit counts and after one fully briefed and decided motion to compel, Essentia has disclosed that many of the hit counts it did originally provide in 2021 were inaccurate (as were counts Essentia provided in March and April 2022). Essentia either failed to recognize this or concealed it until Plaintiffs noted inconsistent hit counts. And it continued to misrepresent to the Court that it had timely complied with orders to provide accurate and complete hit counts.

Plaintiffs have no confidence that Essentia has applied search terms accurately, and will have to rely on a to-be-determined search validation method that Essentia refused to negotiate at the outset of this case.

Moreover, as discussed above, now that Essentia's various issues have been corrected, it is clear that many of the terms Essentia has disputed for the last year never warranted any discussion at all. Many returned fewer than 50 unique documents when run as Plaintiffs proposed – and some returned none.[10] Many of the terms that Essentia disputed for purportedly returning thousands of documents actually had much smaller hit counts once run as Plaintiffs proposed. *Supra*.

---

[10] *E.g.,* Searches 46 (0 hits), 47 (16 hits), 48 (0 hits), 55 (13 hits), 56 (3 hits), 101 (2 hits), 115 (36 hits), 123 (32 hits), and 140 (10 hits).

In sum, a year of negotiations (including Plaintiffs' numerous attempts to narrow search terms without meaningful collaboration from Essentia), repeated arguments in position statements and at status conferences, and the January Motion could have been substantially reduced, if not entirely mooted, had Essentia simply run the terms as Plaintiffs initially proposed. Essentia has never offered an explanation as to why it did not do so.

Despite all of this, Plaintiffs have repeatedly sought to resolve these issues and have made reasonable offers of compromise that would vastly reduce the review burden on Essentia. Essentia simply refuses, offering no middle-ground alternative. Plaintiffs informed Essentia that it would seek fees if forced to bring this motion. Plaintiffs also offered to rest on the parties' previously submitted position statements rather than re-brief these issues. Still, Essentia insisted on motion practice.

Essentia has not accepted or made reasonable proposals, has unilaterally refused to apply search terms subject to the February Order or engage in the processes identified in the ESI Order, and has wasted the parties' and the Court's resources with delays, disputes based on incorrect information, and motion practice on issues that should have been resolved among the parties.

Accordingly, Plaintiffs respectfully request that the Court order Essentia to pay the attorneys' fees incurred in briefing their motions to compel search terms. *See, e.g.*, Fed. R. Civ. P. 37(a)(5)(A) ("If the motion [to compel] is granted . . . the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.") and (C) ("If the motion is granted in part and denied in part, the court . . . may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion."); *see also* 37(b)(2)(A) (outlining various sanctions "For Not Obeying a Discovery

14

Order"). (Notably, Plaintiffs have expended extensive time beyond these briefs analyzing piecemeal, incomplete, and incorrect hit reports; attempting to craft and modify search terms without Essentia's meaningful participation; and engaging with Essentia and the Court).

### III.    CONCLUSION

Plaintiffs respectfully request that the Court order Essentia to:

- Apply **Searches 12 (as modified in this brief), 24, 52, 84, and 138** to Essentia's document pool, review the documents returned by those searches, and produce responsive documents.

- Review 1,000 randomly selected documents returned by **Search 63** and 1,000 randomly selected documents returned by **Search 65**. Produce responsive documents derived from those samples, identifying them to Plaintiffs as having been returned by those searches. Provide Plaintiffs with statistics regarding how many responsive documents were identified in each sample. Provide Plaintiffs at least 10 examples of irrelevant documents from each search, with a goal toward selecting examples that are representative of categories of irrelevant documents so that the parties can assess ways to exclude such categories of documents. Propose modifications for **Search Terms 63 through 68** based on its sample review (if Essentia continues to believe an unreasonable number of unresponsive documents are being returned by the searches). And engage in an efficient and good-faith meet-and-confer process with Plaintiffs to modify these terms, if necessary.

- Pay the attorneys' fees Plaintiffs incurred in connection with the January Motion and this motion.

Dated: August 2, 2022                        Respectfully submitted,

                                                          /s/ Melissa Ryan Clark

15

Melissa Ryan Clark
Brooke A. Achua
FEGAN SCOTT LLC
140 Broadway, 46th Fl.
New York, NY 10005
Ph: 646.502.7910
Fax: 312.264.0100
melissa@feganscott.com
brooke@feganscott.com

Elizabeth A. Fegan
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
Ph: 312.741.1019
Fax: 312.264.0100
beth@feganscott.com

Mac Schneider
SCHNEIDER LAW FIRM
815 3rd Ave. S.
Fargo, ND 58103
Ph: 701-235-4481
Fax: 701-235-1107
mac@schneiderlawfirm.com

J. Barton Goplerud
Brian Marty
SHINDLER, ANDERSON, GOPLERUD &
WEESE, PC
5015 Grand Ridge Drive, Suite 100
West Des Moines, Iowa 50265
Ph: (515) 223-4567
Fax: (515) 223-8887
goplerud@sagwlaw.com
marty@sagwlaw.com

Counsel for Plaintiffs

16