UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA
EASTERN DIVISION

| | |
|---|---|
| JESSICA KRAFT, individually and as parent of minors L.K., S.K., and O.K.; SHELLI SCHNEIDER, individually and as parent of minors A.S. and W.S.; ANNE BAILEY, individually and as parent of minor D.B.; AMY LAVELLE, individual and as parent of minors Em.L. and El.L.; ELIZABETH BEATON, individually and as parent of minor M.B.; AMANDA AND TYRELL FAUSKE, individually and as parents of minors C.R.F. and C.J.F.; JENNIFER REIN, individually; and JESSICA BERG, individually and as parent of minors A.B. and S.B., individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>vs.<br><br>ESSENTIA HEALTH, INNOVIS HEALTH, LLC d/b/a ESSENTIA HEALTH, DAKOTA CLINIC PHARMACY, LLC, JOHN DOE MANUFACTURERS, and JOHN DOE DISTRIBUTOR,<br><br>    Defendants. | Case No. 3:20-CV-00121<br><br><br>**ESSENTIA HEALTH'S AND INNOVIS HEALTH, LLC'S BRIEF ADDRESSING DOCUMENTS SELECTED FOR IN CAMERA REVIEW** |

## I.   INTRODUCTION

Defendants, Essentia Health and Innovis Health, LLC d/b/a Essentia Health West (collectively, "Essentia"), submit this Brief Addressing Documents Selected for In Camera Review pursuant to this Court's request at the August 16, 2022, Status Conference (Doc ID No. 209). Essentia reiterates its request that this Court either find that the documents selected by both parties

1

are privileged, or, alternatively, that a Special Master should be appointed to comprehensively review the contested documents.

## II.    PROCEDURAL BACKGROUND

On June 23, 2022, Essentia submitted an in-camera brief addressing, in detail, how the relevant privileges apply to selected documents, pursuant to the Court's May 9, 2022, Order (Doc. ID No. 181).  At the Status Conference, on August 16, 2022, the Court determined the parties ought to have the opportunity to respond to each other's differing interpretations of the scope of the relevant privileges.  Accordingly, Essentia submits this brief to explain the scope of the substantive privileges and to rebut any of the Plaintiffs' misinterpretations regarding the same. Through this brief, importantly, Essentia *does not* describe, in detail, those privileges' application to the specific documents at issue, as it did in its in-camera submission, because doing so would require Essentia to disclose information that is itself privileged.

## III.    LAW AND ARGUMENT

Essentia previously briefed the substantive privileges at issues in this case.  *See, e.g.*, Doc ID # 169, *Essentia's Memorandum in Opposition to Plaintiffs' Motion to Compel Production of Documents Withheld as Privileged*.  Essentia incorporates that briefing by reference and supplements it only as necessary here.[1]

### A.    Peer Review/Quality Assurance Privilege

Minnesota's peer review/quality assurance privilege "serves 'the strong public interest in improving the quality of health care.'"  *In re Fairview-Univ. Med. Ctr.*, 590 N.W.2d 150, 153 (Minn. Ct. App. 1999) (citations omitted).  In particular, its purpose is to ensure that necessary

---

[1] Due to the Court's choice-of-law decision, which is currently on review before the Eighth Circuit pursuant to Essentia's Petition for Writ of Mandamus, Essentia tailors its briefing to Minnesota privileges.  However, Essentia has also asserted privileges under North Dakota law.

4852483.3

discussions for improvements in patient care can take place without fear of litigation.  *See id.*  In

relevant part, Minnesota's statute broadly provides that:

> [D]ata and information acquired by a review organization, in the exercise of its duties and functions, or by an individual or other entity acting at the direction of a review organization, shall be held in confidence, shall not be disclosed to anyone except to the extent necessary to carry out one or more of the purposes of the review organization, and shall not be subject to subpoena or discovery. No person … shall disclose what transpired at a meeting of a review organization except to the extent necessary to carry out one or more of the purposes of a review organization. The proceedings and records of a review organization shall not be subject to discovery or introduction into evidence in any civil action against a professional arising out of the matter or matters which are the subject of consideration by the review organization. Information, documents or records otherwise available from original sources shall not be immune from discovery or use in any civil action merely because they were presented during proceedings of a review organization, nor shall any person who testified before a review organization or who is a member of it be prevented from testifying as to matters within the person's knowledge, but a witness cannot be asked about the witness' testimony before a review organization or opinions formed by the witness as a result of its hearings. For purposes of this subdivision, records of a review organization include Internet-based data derived from data shared for the purposes of the standardized incident reporting system … and reports submitted electronically….

Minn. Stat. Ann. § 145.64, subd. 1 (emphasis added).

From these broad statutory protections, Plaintiffs somehow deduce that the "data and

information" acquired by a review organization in the exercise of its functions are only "sometimes

privileged."  (*See Pls.' Confid. Br. Pursuant to May 9, 2022 Order Regarding Pls.' Privilege

Challenges* (hereinafter "*Pls. Br.*"), at 2).[2]  Of course, however, the statutory privilege is not so

laissez-faire but instead provides that such information "*shall* be held in confidence, *shall not* be

disclosed, … and *shall not* be subject to subpoena or discovery."  Minn. Stat. § 145.64, subd. 1

(emphasis added).  Nevertheless, from this unsubstantiated starting point, Plaintiffs then seek to

whittle down the privilege until it is, in practice, meaningless.  The Court should reject Plaintiffs'

---

[2] Plaintiffs' brief is not yet available on the Court's docket.

unduly narrow interpretation of Minnesota's peer review/quality assurance privilege, which contradicts its purpose, the plain statutory language, and the application accepted in countless cases. In support, Essentia addresses, in turn, several missteps in the Plaintiffs' analysis.

First, Plaintiffs assert that they "cannot conceive of *any* document" here "that would be protected by the peer review privilege" because they sued organizations/entities rather than a professional. (*Pls.' Br.*, at 1). More specifically, Plaintiffs latch onto one sentence in the statute's confidentiality section that provides, "The proceedings and records of a review organization shall not be subject to discovery or introduction into evidence in any civil action against a professional…." Minn. Stat. § 145.64, subd. 1. However, in doing so, Plaintiffs ignore the full scope of the statutory privilege, reaching an untenable conclusion.

Importantly, as set forth in greater detail in Essentia's in-camera briefing, Essentia asserts its privilege under the broad provision that all "data and information acquired by a review organization, in the exercise of its duties and functions, or by an individual or other entity acting at the direction of a review organization" is privileged. *Id.* Notably, this provision does not limit its protections to actions against "professional[s]." *Id.* Indeed, this is the applicable provision.

Plaintiffs, however, posit that all "'data and information' acquired by a review organization become its 'proceedings and records,'" which Plaintiffs contend "are discoverable." (*Pls.' Br.*, at 6). Plaintiffs' interpretation is a non-sequitur. The provision about professionals on which Plaintiffs rely targets a review organization's practices and documentation assessing a particular professional's work.[3] *See id.* In any event, that provision does not consume the remainder of the

---

[3] Notably, Essentia does not concede that the professional provision is inapplicable under these circumstances, particularly given that this case involves challenges to storage and administration of pharmaceuticals, which necessarily involves *professionals*.

4

statute's confidentiality section. Plaintiffs' interpretation would render meaningless the broad protections afforded to "data and information" and effectively destroy the privilege in any action where a party sues an organization/entity rather than a professional, including oft-brought vicarious liability actions that are based on a professional's alleged negligence for which their employer may be liable. In other words, Plaintiffs' interpretation violates two black-letter rules: (1) that a statute should be interpreted "to give effect to all of its provisions," *Baker v. Ploetz*, 616 N.W.2d 263, 269 (Minn. 2000), and (2) that a statute should not be interpreted contrary to its plain meaning or purpose, "taking care to 'avoid absurd results,'" *Frandsen v. Ford Motor Co.*, 801 N.W.2d 177, 181 (Minn. 2011) (citations omitted).

The Minnesota Court of Appeals has already rejected Plaintiffs' view that the professional provision consumes the whole confidentiality section. *Fairview*, 590 N.W.2d at 153. The Court cautioned that there is no need to resort to the limiting language in the professional provision when the first provision applies because that "first sentence … states that all data and information acquired by a review organization" is privileged. *Fairview*, 590 N.W.2d at 153. In reaching that conclusion, the Court rejected a "less plausible" reading of the statute that attempted to narrow the privilege. *See id.* at 154. The same is true here. The first sentence applies and is not limited by the professional provision.

Perhaps unsurprisingly, no case that Essentia can identify has ever adopted the Plaintiffs' interpretation. Rather, countless cases have applied the Minnesota privilege in actions that involve only organizations/entities. *See, e.g.*, *Hennen v. Select Med. Corp.*, No. 27-CV-18-18206, 2019 WL 4885567 (Minn. Dist. Ct. Sept. 9, 2019) (applying both the data-and-information and the proceedings-and-records provisions in a medical malpractice action against two entities and no professionals); *Shellum v. Fairview Health Servs.*, No. 27-CV-16-267, 2018 WL 5792170 (Minn.

5

Dist. Ct. Aug. 24, 2018) (acknowledging the privilege in a medical malpractice against one entity and no professionals); *Elkharwily v. Mayo Holding Co.*, No. 12-3062, 2014 WL 3573674, at *3 (D. Minn. July 21, 2014) (affirming conclusion that the privilege applied to documents in an employment dispute against one entity and no professionals); *Damgaard v. Avera Health*, No. 13-2192, 2014 WL 12599853 (D. Minn. June 9, 2014) (applying the privilege, while citing both provisions, in a medical malpractice action against two entities and no professionals); *In re Fairview*, 590 N.W.2d 150 (applying the privilege, while citing both provisions, in an action involving motions to quash against the Complaint Review Committee of the Minnesota Board of Medical Practices and not against any professionals).

Furthermore, to Plaintiffs' point that the statute provides some exceptions to the privilege, that fact only further demonstrates the privilege applies, subject only to *specific, narrowly defined exceptions*. *See, e.g.*, Minn. Stat. § 145.65 (specific framework for "guidelines"). It does not demonstrate, as Plaintiffs suggest, that the statutory intent is for any exceptions to devour the general rule of privilege.

Second, Plaintiffs argue that "what transpire[s] at a meeting of a review organization" is "not privileged." [Pls.' Br., at 3]. Candidly, Essentia is unsure how Plaintiffs arrive at this conclusion. The statute plainly provides, "No person described in section 145.63 shall disclose what transpired at a meeting of a review organization except to the extent necessary to carry out one or more of the purposes of a review organization." Minn. Stat. § 145.64. Section 145.63 includes any "person who is a member or employee, director, or officer of, who acts in an advisory capacity to, or who furnishes counsel or services to, a review organization." Accordingly, the statutory privilege plainly protects what transpires at review organization meetings. Neither of the authorities that Plaintiffs cite address meetings, so, again, Essentia questions where Plaintiffs

6

4852483.3

derive their contrary conclusion, which this Court should reject.  (*Pls.' Br.*, at 3 (citing *Kalish v. Mt. Sinai Hosp.*, 270 N.W.2d 783, 786 (Minn. 1978) (addressing guidelines under a separate section); *Levitin v. Nw. Cmty., Hosp.*, No. 13 C 5553, 2014 WL 5510949 (N.D. Ill. Oct. 31, 2014) (applying Illinois law))).

Third, Plaintiffs discuss that "[g]uidelines," which are separately addressed under Minn. Stat. § 145.65, are "admissible" but not necessarily undiscoverable.  Because Essentia cannot elaborate about the specific documents without revealing privileged information, Essentia merely reiterates the points that it made in its in-camera briefing that § 145.65 is irrelevant here.  That Section applies to "establish[ed]" policies, which are not at issue.  *Id.*; *see also Kalish*, 279 N.W.2d 783 (catheter policy); *Damgaard v. Avera Health*, 108 F. Supp. 3d 689 (D. Minn. 2015) (hospital policies); *Shellum*, 2019 WL 2262246, at *7 ("written hospital policies").  Instead, at most, this case involves documents that represent materials created in reaction to the potential temperature excursion and that are necessary for patient care.

Fourth, Plaintiffs address the privilege's exception for original-source documents.  "Information, documents or records otherwise available from original sources [are not] immune from discovery or use in any civil action merely because they were presented during proceedings of a review organization."  Minn. Stat. § 145.64, subd. 1.  Essentia has not asserted privilege over original-source documents.  It is worth noting, however, that Plaintiffs, again, overstate this exception.  By misrepresenting a concurring opinion as binding authority from the Minnesota Supreme Court, Plaintiffs quote, out of context, that "only documents originally created by the peer review organization … are truly off-limits."  *Larson v. Wasemiller*, 738 N.W.2d 300, 315 (Minn. 2007) (Anderson, J., concurring).  Plaintiffs stretch this quote beyond its logical limits to argue that they are entitled to discovery, directly from a review organization, of any document that

4852483.3

has or is connected to some other original source.  Not so.  Privileged materials "available from other sources remain discoverable *from the other sources*," but they are not discoverable from a review organization itself.  *Fairview*, 590 N.W.2d at 154 (emphasis added).

A federal court in Minnesota explained original-source documents in *Damgaard*, 2014 WL 12599853, relying on the same authorities that Plaintiffs misconstrue.  In that case, the plaintiff sought discovery of documents related to a physician's credentialing, and the defendants objected on peer-review grounds.  *See id.* at *4. The plaintiff challenged the privilege, arguing that "documents obtainable from independent sources are not immune from discovery under Minnesota law." *Id.*  The court rejected the plaintiff's challenge.  In doing so, the court dismissed the same interpretation that Plaintiffs advocate for here: that an otherwise privileged document is discoverable from a review organization if "obtainable from an 'independent source.'"  *Id.* at *8 n.2.  In short, the court held that "regardless of where documents are [otherwise] located, as long as the locations are statutory review organizations, the documents are not discoverable."  *Id.*

This Court should reach the same logical outcome here.  Indeed, due to the privilege's importance, Minnesota courts have recognized that even if this exception would somehow allow providers to "purposefully amass[] original documents in review organization files, that does not make the documents any less privileged."  *Id.*[4]

In a similar vein as their arguments regarding original-source documents, Plaintiffs further argue that "ordinary course of business documents" and information "shared outside of the peer

---

[4] Plaintiffs argue that the concurring opinion in *Larson* overruled *Fairview*.  Essentia disagrees. Cases, like *Damgaard*, have echoed the same principles, even after *Larson*.  *See Damgaard*, 2014 WL 12599853, at 9 (quoting *Larson* concurrence and explaining that plaintiff would simply have to seek the documents from their original source, not the review organization); *see also Van v. Obstetrics & Gynecology Assocs., P.A.*, 2018 WL 2739459 (Minn. Dist. Ct. 2018) (same conclusion).

8

review committee or used for other purposes is not privileged."[5] (*Pls.' Br.*, at 5).  Plaintiffs have created these nonexistent exceptions to the broad statutory privilege, without any support under Minnesota law.  Thus, although it is doubtful that the documents at issue would satisfy these fabricated exceptions, Essentia finds it necessary to disabuse the record of their existence.  To be sure, the only Minnesota authority cited by Plaintiffs is *McKee v. St. Paul Eye Clinic, P.A.*, 2015 WL 1757833 (Minn. Ct. App. April 20, 2015).  Yet, that unpublished Minnesota Court of Appeals case mentioned nothing of an "ordinary course of business" exception.  Instead, that case cited the original-source exception but determined that an incident report was discoverable because there was "no evidence that [a] peer-review committee ever acquired" it.  *Id.* at *7.

As for information shared or used outside a review organization, Plaintiffs cite no Minnesota authorities to support their position.  Furthermore, it is not clear what Plaintiffs mean by this argument.  One of the many purposes of a review organization is to "improv[e] the quality of health care."  Minn. Stat. § 145.61, subd. 5(a).  With that, information a review organization gathers may be used to effectuate quality improvement, such as through communications with governing entities.  Such communications are in itself privileged.[6]

---

[5] Plaintiffs also repeatedly state that "[i]information obtained or created for investigations, crisis management, press and public relations, and financial, legal, and other business purposes, is not peer review material." (*Pls.' Br.*, at 9).  However, that broad statement contradicts the plain-language definitions of peer-review functions.  *See* Minn. Stat. § 145.61, subd. 5 (outlining functions like "obtaining and disseminating statistics and information relative to the treatment and prevention of diseases, illness and injuries"; "reviewing the safety, quality, or cost of health care services"; "reviewing, ruling on, or advising on [various] controversies, disputes or questions").

[6] Plaintiffs also assert, without citation, "Essentia and Innovis *are* the original sources, and must produce their documents even if they also obtained them in their purported role as a peer review 'committee.'"  Plaintiffs seemingly suggest that if they sue and seek discovery from a non-profit corporation, the defendant corporation cannot assert the privilege.  This makes no sense and is unsupported by the statutes or Minnesota cases.  *Cf.* Minn. Stat. § 145.61, subd. 5 (definition of review organization).

Fourth, Plaintiffs express some difficulty in identifying the relevant groups that meet the statutory definition of review organization. *See Pls.' Br.*, at 8; *see also* Minn. Stat. § 145.61, subd. 5 (defining review organization). However, Essentia outlined, at length, in its in-camera briefing the groups that constitute review organizations/committees. *See Essentia's In Camera Brief Addressing Documents Selected for In Camera Review*, at 4-6. Essentia cannot repeat that information and detail here without disclosing information that itself privileged. Plaintiffs also include a parenthetical citation from another extra-jurisdictional authority that suggests Essentia should provider "further assurance" of that structure through an affidavit. (*Pls.' Br.*, at 8). Upon request of the Court, Essentia would provide such an affidavit for in-camera review.

Lastly, Plaintiffs carve out a final nonexistent exception to Minnesota's peer review/quality assurance privilege, contending that the privilege should only apply in defamation and malpractice litigation and not in cases involving other claims. (*Pls.' Br.*, at 7-8). As might be expected, Plaintiffs' made-up exception finds no support under Minnesota law, as is evidenced by the fact that Plaintiffs resort to citing cases from other jurisdictions. This Court should decline Plaintiffs' invitation to create an exception that is neither embraced by nor consistent with Minnesota's broad statutory privilege. Rather, the Court need look only to those Minnesota courts that have applied the protection outside the context of defamation or malpractice litigation. *See, e.g.*, *Fairview*, 590 N.W.2d 150 (subpoena issue); *Elkharwily*, 2014 WL 3573674, at *3 (employment dispute). To be sure, Plaintiffs' interpretation contradicts the plain language of the statute, which does in some instances limits its application to, for example, civil actions but never carves out all causes of action other than defamation or malpractice. *See, e.g.*, Minn. Stat. § 145.64, subd. 1 (noting "civil action"). To adopt Plaintiffs' view would only encourage litigants to pursue claims other than defamation or malpractice so that they could root out privileged information.

10

Finally, it is worth noting that if the Court were to adopt any of the Plaintiffs' narrow interpretations of Minnesota's peer review/quality assurance privilege, that would itself warrant revisiting the Court's earlier choice-of-law decision. Indeed, an important component of a choice-of-law analysis is whether another state's law offends the public policy of the forum state. *See* Restatement (Second) of Conflict of Laws, § 139(1) (applying the forum's law that has the most significant relationship unless it "would be contrary to the strong public policy of the forum"); *accord Woodmont Co. v. LaSalle Shopping Ctr., LLC*, 2020 WL 2857164, at *8 (D.N.D. June 2, 2020) (noting in the context of choice-of-law clauses that North Dakota rejects "application of another state's law" if it "thwarts North Dakota public policy"). If Plaintiffs' interpretation of Minnesota law is correct, North Dakota law would necessarily govern as such a limited privilege would offend North Dakota public policy, which embraces broad protections under the peer review/quality assurance privilege. *See generally St. Alexius Med. Ctr. v. Nesvig*, 2022 ND 65, 971 N.W.2d 878 (broadly applying the privilege).

Accordingly, Essentia respectfully requests this Court reject the Plaintiffs' misconstruction of the peer review/quality assurance privilege and determine that the documents selected for in camera review are protected by that privilege.

### B.      Attorney-Client Privilege & Attorney Work Product

On the issues of attorney-client privilege and the work-product doctrine, only a few points are notable in addition to Essentia's prior briefing. First, any communication with a "professional legal advisor" is presumptively "for the sake of legal advice" absent some "clear[]" showing otherwise. *Kobluk v. Univ. of Minn.*, 574 N.W.2d 436, 442 (Minn. 1998) (citations omitted) (noting a "mere assertion that counsel's advice…was of nonlegal character" is insufficient).

11

4852483.3

Second, it is a bedrock principle of Minnesota law that the attorney-client privilege shields not only communications between the attorney and client, but also between the attorney's agents and the client's agents. *See Brown v. Saint Paul City Cy. Co.*, 62 N.W.2d 688, 700 (Minn. 1954); *see also Fagen, Inc. v. Exergy Dev. Gr. of Id., LLC*, 2015 WL 12977507, at *4 (D. Minn. June 1, 2015) (applying Minnesota law) ("The attorney-client privilege extends to both the client's agents and the attorney's agents."). In the same vein, the privilege extends to contractors or consultants acting as client or attorney representatives. *See In re Bieter*, 16 F.3d 929, 936-37 (8th Cir. 1994) (federal common law); *Stan Koch & Sons Trucking, Inc. v. Am. Interstate Ins. Co.*, 2020 WL 2111349, at *5-6 (D. Minn. May 4, 2020) (finding Minnesota law would likely follow the same approach). Finally, Minnesota law shields both materials "prepared at the direction of [an] attorney," *In re Death of VanSlooten*, 424 N.W.2d 576, 577 (Minn. Ct. App. 1988), and "preliminary drafts of a document, exchanged between a client and a lawyer," even if "the final version is published to a third party," *Klobuk*, 574 N.W.2d at 438.

Further, in response to Plaintiffs' briefing, Essentia simply stresses that the attorney-client privilege and work-product doctrine also apply to many of the documents that Plaintiffs challenge as not covered by the peer review/quality assurance privilege. For example, Plaintiffs challenge many documents that are identified as draft documents, such as call center scripts. Yet, cases such as *Klobuk*, 574 N.W.2d at 438, and *VanSlooten*, 424 N.W.2d at 577, anticipate application of privilege to such drafts.

As it relates specifically to the work-product doctrine, Plaintiffs suggest that Essentia's claims necessarily fail as to "documents created years before the [potential] excursion was even discovered," presumably because Plaintiffs think that means the documents could not have been created in anticipation of litigation. (*Pls.' Br.*, at 15). "The work-product immunity is not lost,

12

however, if the document was not prepared in anticipation of the *present* litigation so long as it was prepared in anticipation of some litigation by a party to the present litigation." *Lumbar v. PPG Indus., Inc.*, 168 F.R.D. 641, 645 (D. Minn. 1996) (emphasis added) (quoting *W. Trails, Inc. v. Camp Coast to Coast, Inc.*, 139 F.R.D. 4, 9 (D.D.C. 1991)).  Accordingly, the date of creation does not carry the significance propounded by Plaintiffs.

### C.   Physician-Patient Privilege

Essentia maintains its prior position regarding the physician-patient privilege.

### D.   Special Master

The documents selected only scratch the surface of those documents included on the supplemental privilege logs.  If the Court cannot fully sustain Essentia's privilege assertions based on this sample review, Essentia respectfully requests that a Special Master be retained to more thoroughly review and analyze all of the documents at issue.  *See Am. Nat'l Bank & Tr. Co. of Chi. v. Equitable Life Assur. Soc. of U.S.*, 406 F.3d 867, 880 (7th Cir. 2005) (recognizing review through a special master as an appropriate process).

### E.   Certification

Finally, if the Court is inclined to adopt Plaintiffs' narrow, and novel, interpretations of Minnesota's peer review/quality assurance privilege, Essentia would request this Court certify the questions regarding the scope of that privilege to the Minnesota Supreme Court.  *See* Minn. Stat. § 480.065.  In particular, certification regarding whether the professionals provision is meant to consume the remainder of the confidentiality section; whether the original-source exception means that privileged documents are discoverable from a review organization; whether Minnesota would recognize the nonexistent exceptions to the privilege that Plaintiffs fabricated; and whether Minnesota would limit the privilege's application to actions involving malpractice and defamation

13

4852483.3

claims. These issues not only involve novel (unsupported) arguments by Plaintiffs, but they also implicate important policy concerns for Minnesota. *See Hatfield v. Bishop Clarkson Mem. Hosp.*, 701 F.2d 1266, 1267 (8th Cir. 1983) ("[W]hen the state law is in doubt especially on the underlying public policy aims, it is in the best administration of justice to afford the litigants a consistent final judicial resolution by utilizing the certification procedure." (citations omitted)).

## IV.     CONCLUSION

For the foregoing reasons, Essentia respectfully requests this Court uphold Essentia's claims to privilege. Alternatively, Essentia asks this Court employ a Special Master to perform more comprehensive review.

Dated this 24th day of August, 2022.

**VOGEL LAW FIRM**

*/s/ Angela E. Lord*

BY:   Angela E. Lord (#05351)
Robert B. Stock (#05919)
Briana L. Rummel (#08399)
MacKenzie L. Hertz (#09392)
218 NP Avenue
PO Box 1389
Fargo, ND  58107-1389
701.237.6983
Email:    alord@vogellaw.com
rstock@vogellaw.com
brummel@vogellaw.com
mhertz@vogellaw.com
ATTORNEYS FOR ESSENTIA HEALTH AND
INNOVIS HEALTH, LLC

4852483.3