**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA**

| | | |
|---|---|---|
| JESSICA KRAFT, INDIVIDUALLY AND AS PARENT OF MINORS L.K., S.K., and O.K.; SHELLI SCHNEIDER, INDIVIDUALLY AND AS PARENT OF MINORS A.S. and W.S.; ANNE BAILEY, AS PARENT OF MINOR D.B.; AMY LAVELLE, AS PARENT OF MINORS Em.L. and El.L.; ELIZABETH BEATON, INDIVIDUALLY AND AS PARENT OF MINOR M.B.; AMANDA AND TYRELL FAUSKE, INDIVIDUALLY AND AS PARENTS OF MINORS C.R.F. and C.J.F.; JENNIFER REIN, INDIVIDUALLY; and JESSICA BERG, AS PARENT OF MINORS A.B. and S.B., individually and on behalf of all others similarly situated, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 3:20-CV-121<br><br>Hon. Peter D. Welte<br><br>Mag. Alice R. Senechal |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| ESSENTIA HEALTH, INNOVIS HEALTH, LLC d/b/a ESSENTIA HEALTH, DAKOTA CLINIC PHARMACY, LLC, JOHN DOE MANUFACTURERS, and JOHN DOE DISTRIBUTOR, | ) ) ) ) ) ) ) | |
| Defendants. | | |

**PLAINTIFFS' RESPONSE TO
ESSENTIA HEALTH'S AND INNOVIS HEALTH, LLC'S
BRIEF ADDRESSING DOCUMENTS SELECTED FOR IN CAMERA REVIEW
(ECF NO. 210)**

**Table of Contents**

I.      INTRODUCTION ............................................................................................... 1

II.     ARGUMENT...................................................................................................... 1

    A.      Essentia has failed to produce evidence establishing the existence and scope
of a peer review committee or its peer review. ................................................... 1

    B.      Essentia ignores the bulk of the peer review statute to craft a blanket privilege
that does not exist................................................................................................ 3

        1.      Proceedings and records are discoverable. They are not privileged
in cases like this one. ............................................................................... 3

        2.      Data and information are sometimes privileged. But that is a narrow
category of information Essentia has not shown applies. ............................ 5

        3.      Original source documents are discoverable. Essentia must produce
them........................................................................................................... 9

        4.      What transpires at a meeting is discoverable. Some individuals have
a duty of confidentiality, but there is no privilege. .................................. 11

        5.      Guidelines are discoverable. They are never privileged. They are
inadmissible in certain cases, but not this one. ........................................ 12

    C.      Essentia continues to fail to support its assertions of attorney-client privilege
and work product. ............................................................................................. 13

    D.      This issue does not meet the requirements to certify a question............................ 15

## Table of Authorities

**Cases**

*Adams v. Rizzo*,
831 N.Y.S.2d 351 (Sup. Ct. 2006) ..................................................................... 12

*Beccara v. Dialysis Ctrs. of Am.-Illinois, Inc.*,
2020 IL App (1st) 190099-U ............................................................................... 8

*Claypool v. Mladineo*,
724 So. 2d 373 (Miss. 1998) ........................................................................... 7-8

*Cobb Cty. Kennestone Hosp. Auth. v. Martin*,
430 S.E.2d 604 (Ga. Ct. App. 1993) ................................................................. 11

*Damgaard v. Avera Health*,
108 F. Supp. 3d 689 (D. Minn. 2015) .......................................................... 12, 13

*Damgaard v. Avera Health*,
No. 13-2192, 2014 U.S. Dist. LEXIS 192894 (D. Minn. June 9, 2014) ........................ 2, 4, 10

*Doe v. Gillespie*,
867 F.3d 1034 (8th Cir. 2017) ............................................................................ 6

*Elkharwily v. Mayo Holding Co.*,
No. 12-3062, 2014 U.S. Dist. LEXIS 98380 (D. Minn. July 21, 2014) ................................... 4

*Fagen, Inc. v. Exergy Dev. Gr. of Id., LLC*,
12-2703, 2015 WL 12977507 (D. Minn. June 1, 2015) ............................................. 13

*Hennen v. Select Med. Corp.*,
No. 27-CV-18-18206, 2019 WL 4885567 (Minn. Dist. Ct. Sept. 9, 2019) .............................. 4

*In re Bieter Co.*,
16 F.3d 929 (8th Cir. 1994) .............................................................................. 13

*In re Death of VanSlooten*,
424 N.W.2d 576 (Minn. Ct. App. 1988) ................................................................ 13

*In re Fairview-University Med. Ctr.*,
590 N.W.2d 150 (Minn. Ct. App. 1999) ........................................................... 4, 5, 10

*In re Peer Review Action*,
749 N.W.2d 822 (Minn. Ct. App. 2008) ................................................................. 2

*IntegraMed Am., Inc. v. Patton*,
298 F.R.D. 326 (D.S.C. 2014) ........................................................................... 11

*Iverson v. United States*,
973 F.3d 843 (8th Cir. 2020) .............................................................................. 6

*roaJones v. Jones*,
   94 Va. Cir. 134 (Cir. Ct. 2016) ................................................................................ 13

*Klaine v. S. Ill. Hosp. Servs.*,
   47 N.E.3d 966 (Ill. 2016) ........................................................................................ 12

*Kobluk v. Univ. of Minnesota*,
   574 N.W.2d 436 (Minn. 1998) ........................................................................... 13, 14

*Larson v. Wasemiller*,
   738 N.W.2d 300 (Minn. 2007) ......................................................................... 7, 8, 10

*Manthe v. Vanbolden*,
   No. 5-90-0085, 1991 U.S. Dist. LEXIS 6759 (N.D. Tex. Jan. 3, 1991) ...................................11

*Phillips v. Messerli & Kramer, P.A.*,
   No. 08-4419, 2009 U.S. Dist. LEXIS 33438 (D. Minn. Apr. 20, 2009) ................................ 15

*Powell v. Cmty. Health Sys.*,
   312 S.W.3d 496 (Tenn. 2010) ................................................................................ 11

*Raines v. Safeco Ins. Co. of Am.*,
   637 F.3d 872 (8th Cir. 2011) ................................................................................. 10

*Roach v. Springfield Clinic*,
   623 N.E.2d 246 (Ill. 1993) ..................................................................................... 11

*Shellum v. Fairview Health Servs.*,
   No. 27-CV-16-267, 2018 WL 5792170 (Minn. Dist. Ct. Aug. 24, 2018) ................................ 4

*Stan Koch & Sons Trucking, Inc., v. Am. Interstate Ins. Co.*,
   No. 18-cv-2945, 2020 U.S. Dist. LEXIS 78017 (D. Minn. May 4, 2020) ..............................14

*State ex rel. Wheeling Hosp., Inc. v. Wilson*,
   782 S.E.2d 622 (2016) ............................................................................................ 7

*Virmani v. Novant Health, Inc.*,
   259 F.3d 284 (4th Cir. 2001) ..................................................................................12

**Statutes**

Minn. Stat. § 145.61 ........................................................................................... 1, 2, 5
Minn. Stat. § 145.62 .................................................................................................. 1
Minn. Stat. § 145.63 ............................................................................................. 1, 11
Minn. Stat. § 145.64 ........................................................................................... *passim*
Minn. Stat. § 145.65 ........................................................................................... *passim*
Minn. Stat. § 145.66 ............................................................................................. 1, 11
Minn. Stat. § 480.065 .............................................................................................. 15

## I.  INTRODUCTION

Plaintiffs' briefs have laid out the plain language of Minnesota's peer review statute.[1] To be sure, there is some nuance. The statute is not a blanket privilege that shields all of a hospital's documents, or even those regarding adverse events. Rather, it restricts its protections to certain committees acting in certain functions. And it provides different tiers of protection depending on the category of information and how it will be used. But in general, the statute speaks for itself, providing considerable structure when viewed holistically. *See* Minn. Stat. §§ 145.61-145.66.

Essentia's view is different. It claims that a single introductory sentence (regarding "data and information") "is the [only] applicable provision." It construes that sentence as protecting all of its communications, among other documents. And it disregards Plaintiffs' discussion of the statute as a whole (and their attempt to apply it in the dark, to the thousands of documents Essentia has withheld with bare descriptions and no evidentiary support) as fabrication and misconstruction.

However, statutory provisions cannot be divorced from one another in the way that Essentia would like. Nor can a single sentence be construed to subsume the rest of the statute, rendering its exceptions, limitations, and context meaningless. The privilege is simply not as broad as Essentia claims. And Essentia has not shown that it protects the withheld documents.

## II.  ARGUMENT

### A.  Essentia has failed to produce evidence establishing the existence and scope of a peer review committee or its peer review.

Essentia has not established the foundational requirement of the privilege: the existence of the peer review committee and the scope of its review. Data and information are only privileged when "acquired by a review organization, in the exercise of its duties and functions, or by an

---

[1] *See, e.g.,* ECF Nos. 161 (motion to compel) and 172 (reply), and Plaintiffs' 6/2/2022 confidential brief, shared with Essentia on 8/17/2022 ("Pls.' Br."), incorporated here by reference.

individual or other entity acting at the direction of a review organization. . . ." Minn. Stat. § 145.64, Subd. 1(a). A "review organization" is a limited committee established for a specific, enumerated purpose:

> "Review organization" means . . **a committee whose membership is limited** to professionals, administrative staff, and consumer directors. . . which is **established** . . . **to gather and review information** relating to the care and treatment of patients **for the purposes of** [for example] **evaluating and improving the quality of health care**. . . .

145.61, subd. 5 (emphasis added).

Essentia claims to have established those "groups" in its in-camera briefing, but that it "cannot repeat that information in detail here without disclosing information that itself [sic] privileged." ECF No. 210 ("Br."), p. 10. But Essentia has *never* pointed to any Minnesota law that shields information about the membership of the committee or the scope of its investigation.[2] Peer review committees simply do not operate anonymously – they correspond directly with witnesses, the subjects of the review, and third parties.[3] Essentia's withheld documents include correspondence with thousands of Essentia employees (including employees of Essentia entities other than Innovis) and various third parties. Essentia must establish the existence of the committee and scope of its review, with evidence, and Plaintiffs should be permitted to view that evidence and respond.[4]

---

[2] Essentia references detail in its in-camera briefing several times. Br., *e.g.,* pp. 4, 7, 10. While it is appropriate for privileged information to remain confidential, Essentia's legal analysis and information about the peer review organization should be disclosed.

[3] *See, e.g., In re Peer Review Action*, 749 N.W.2d 822, 826 (Minn. Ct. App. 2008) (discussing policies setting forth the individuals who conduct a peer review inquiry; discussions between those individuals and the subject-physician; and letter from peer review committee to physician under investigation).

[4] *See, e.g., Damgaard v. Avera Health*, No. 13-2192, 2014 U.S. Dist. LEXIS 192894, at *15 (D. Minn. June 9, 2014) (court required evidence; defendants submitted affidavits from Chief Administrative Officer and Credentialing Coordinator; plaintiff's counsel responded).

**B. Essentia ignores the bulk of the peer review statute to craft a blanket privilege that does not exist.**

Minnesota's peer review statute spans six sections with several subdivisions and clauses defining the statute's scope. It protects certain documents by confidentiality, privilege, and/or inadmissibility – distinct protections are not interchangeable. It has provisions governing data and information, proceedings and records, original source materials, and guidelines – each of which also has its own discrete meaning. And it has exceptions and limitations based on the intended use of the materials, allowing disclosure in some contexts, or by some individuals, and not others.

Essentia disregards these intricacies, focusing on a single introductory sentence to the exclusion of the rest of the statute. But the statute does not provide a blanket privilege shielding all of Essentia's business activities. If Essentia proves that its withheld documents belong to a peer review committee acting in the exercise of its duties and functions, it must also demonstrate that the documents fall within a privileged category of documents, taking into account the statute as a whole. Ultimately, the peer review statute provides limited, if any, protections for the types of documents Essentia has withheld in cases against a healthcare entity, like this one.

**1. Proceedings and records are discoverable. They are not privileged in cases like this one.**

Section 145.65 of the Minnesota Statute addresses the "Confidentiality of Records of Review Organization[s]." In addition to certain confidentiality protections, it sets forth a privilege, applicable only in actions against professionals, for peer review "proceedings and records":

> The **proceedings and records** of a review organization **shall not be subject to discovery** or introduction into evidence **in any civil action against a professional** arising out of the matter or matters which are the subject of consideration by the review organization.

3

Minn. Stat. § 145.65 (emphasis added).[5] This action is not against a professional, so that privilege does not apply. *See id.* and Pls.' Br., pp. 3, 6-7.

Rather than accept this plain language, Essentia claims that "[t]he Minnesota Court of Appeals has already rejected Plaintiffs' view that the professional provision consumes the whole confidentiality section." Br., p. 5 (citing *In re Fairview-University Med. Ctr.*, 590 N.W.2d 150, 153 (Minn. Ct. App. 1999)). That is a strawman that misconstrues both Plaintiffs' view and *Fairview*.

First, Plaintiffs do not claim that the "professional provision" "consumes" the "confidentiality section." Rather, the provision creates a limited privilege for certain documents in in certain cases. Essentia asks the Court to ignore the language restricting that privilege to actions "against a professional." But if the legislature had intended the privilege for "proceedings and records" to apply in all matters, it would have left that additional restrictive language out. Indeed, it is absent from other areas of the statute.

Essentia notes "countless cases have applied the Minnesota privilege in actions that involve only organizations/entities." Br., pp. 5-6. But none of its cited cases supports the application of the "proceedings and records" privilege to an entity.[6]

---

[5] Essentia refers to this as the "professional provision" of the "confidentiality section," Br., pp. 4-5, 13, so Plaintiffs use the same terms.

[6] *Hennen v. Select Med. Corp.*, No. 27-CV-18-18206, 2019 WL 4885567 (Minn. Dist. Ct. Sept. 9, 2019) (denying deposition testimony regarding the use of terminology in a peer review file); *Shellum v. Fairview Health Servs.*, No. 27-CV-16-267, 2018 WL 5792170 (Minn. Dist. Ct. Aug. 24, 2018) (making no mention of the professional provision and addressing the admissibility of guidelines under § 145.65); *Elkharwily v. Mayo Holding Co.*, No. 12-3062, 2014 U.S. Dist. LEXIS 98380 (D. Minn. July 21, 2014) (making no mention of the professional provision; the caption also reflects several professional defendants); *Damgaard*, 2014 U.S. Dist. LEXIS 192894 (quoting the professional provision generally but shielding documents acquired by the organization, not its proceedings and records); *Fairview*, 590 N.W.2d 150 (quoting the professional provision but noting the court need not resolve the parties' dispute regarding whether that provision applied because a different provision did).

Second, *Fairview* does not contradict the fact that the "proceedings and records" privilege is limited to "civil actions against a professional." Rather, it rejected the idea that those limitations apply to other discrete aspects of the statute. *Fairview*, 590 N.W.2d at 153-54 (The court rejected the argument that peer review documents are never privileged in an "administrative action." Though the "proceedings and records" sentence is restricted to a "civil action," the sentence shielding "data and information acquired by" a committee is "broader" and has no such limitation. The committee sought information acquired by the review organization, not its records.).

Nothing supports the application of the "proceedings and records" privilege to this action.[7]

### 2. Data and information are sometimes privileged. But that is a narrow category of information Essentia has not shown applies.

Although the "proceedings and records" privilege is inapplicable here, other parts of the statute are not limited in the same way. For that reason, Essentia focuses on the confidentiality section's introductory sentence, which discusses "data and information acquired by a review organization":

> Except as provided in subdivision 4, **data and information acquired by a review organization**, **in the exercise of its duties and functions,** or by an individual or other entity acting at the direction of a review organization, shall be held in confidence, shall not be disclosed to anyone except to the extent necessary to carry out one or more of the purposes of the review organization, and **shall not be subject to subpoena or discovery**.

Minn. Stat. § 145.64 (emphasis added).

Essentia contends that "this is the [only] applicable provision." *See* Br., p. 4. But "basic rules of statutory interpretation" require consideration of the "entire text, in view of its structure

---

[7] Essentia suggests the privilege may still apply because this case "involves challenges to storage and administration of pharmaceuticals, which necessarily involves *professionals*." Br., n.3 (emphasis in original). That is silly. All business activities involve professionals. If the privilege's restriction to actions "against a professional" was expanded to actions "involving a professional," the limitation would lose all meaning. Moreover, the statute expressly defines what a "professional" is – and healthcare entities are not included. Minn. Stat. § 145.61, Subd. 2.

and of the physical and logical relation of its many parts," and "the complete provision in the context of the statute as a whole." *Doe v. Gillespie*, 867 F.3d 1034, 1043 (8th Cir. 2017) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 167 (2012)).[8]

While the terms "data and information" may seem broad when examined in a vacuum, in the context of the statute, they are in fact a limited category of material, distinct from, e.g., "proceedings and records," "guidelines," "what transpired at a meeting," and "original source materials." *See* Minn. Stat. §§ 145.64, 145.65. That context is crucial. *Iverson v. United States*, 973 F.3d 843, 847-48 (8th Cir. 2020) ("A word in a statute may or may not extend to the outer limits of its definitional possibilities. Interpretation . . . depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities. . . .") (citations and quotations omitted).

Indeed, the remainder of the statute makes clear that the confidentiality section's introductory sentence is not absolute and all-encompassing. The "data and information" privilege does not apply to a peer review committee's proceedings and records (except in civil cases against a professional). Minn. Stat. § 145.64, Subd. 1(a). It does not apply to original source materials. *Id.* at § 145.64, Subd. 1(a). It does not apply to a review organization's guidelines. *Id.* at § 145.65. It does not apply to peer review materials when requested by professionals seeking information about their medical staff privileges. *Id.* at § 145.64, Subd. 2. It does not apply to a peer review member's or witness's personal knowledge, even if obtained from the peer review process (though it does preclude questions "about the witness's testimony" or "opinions formed" by the witness as a result

---

[8] Indeed, the very introductory sentence Essentia relies on, in language that Essentia omits from its brief, *begins* with an exception tied to another provision (though it is not relevant to this case). Minn. Stat. §145.65(a) ("**Except as provided in subdivision 4,** data and information . . .") (emphasis added).

of committee hearings). *Id.* at § 145.64, Subd. 1(a). And it does not apply to data released for incident reporting. *Id.* and *id.* at Subd. 4. Exceptions to privileges, including peer review privileges, are commonplace.[9]

Still, Essentia suggests these provisions "whittle down the privilege until it is, in practice, meaningless." Br., p. 3. Perhaps in some ways they do. Minnesota Supreme Court Justice Barry Anderson, with Justice Paul Anderson joining, analyzed the privilege's limited force, writing explicitly "to express [his] concern that [Minnesota's] peer review statute may not be fulfilling the intended purpose and to encourage the legislature to revisit this important issue." *Larson v. Wasemiller*, 738 N.W.2d 300, 313-16 (Minn. 2007) (Anderson, J., concurring) ("*Wasemiller*"). He noted that the "confidentiality and privilege protections . . . may ultimately be of little consequence because the statute allows disclosure and discovery of any information . . . available from an original source." *Id.* at 314. Despite the privileges' weaknesses and the Justices' encouragement to act, the statute has not been amended.

And the privilege still provides robust protection for materials generated by a peer review in actions against professionals. That it does not provide such strong protections for business records, or in a case against a healthcare entity, is not of Plaintiffs' invention – it is a direct result of peer review privileges' plain language and intended purpose:

> The statutes were never intended to shield hospitals from potential liability. The confidentiality and non-discovery of the peer review proceedings were designed to advance the quality of health care by ensuring medical professionals would engage in self-evaluation of their peers. In short, the statute was designed to allow the medical profession to "weed out the bad apples."

---

[9] *E.g., State ex rel. Wheeling Hosp., Inc. v. Wilson*, 782 S.E.2d 622, 631 (2016) ("[T]he privilege allows some documents that are considered during the peer review process to be disclosed, provided they come within the provision's noted exceptions.").

*Claypool v. Mladineo*, 724 So. 2d 373, 386-89 (Miss. 1998) (requiring disclosure of original source information and documents as well as the identities "of all present during the medical peer review committee proceedings. . . ."). *See also, e.g., Beccara v. Dialysis Ctrs. of Am.-Illinois, Inc.*, 2020 IL App (1st) 190099-U, ¶¶ 27-28 (The privilege "was never intended to shield hospitals from potential liability" and "not every piece of information a hospital staff acquires is shielded from discovery, even if it is acquired by a peer-review committee . . . . The privilege does not apply to all information used for internal quality control or peer review . . . ."). "[W]hatever suggested improvements" Essentia might wish upon the statute, "the place to address these issues is in the executive and legislative branches of our government," not these proceedings. *Wasemiller*, 738 N.W.2d at 316.

The line between a committee's own "proceedings and records" and the "data and information" it acquired can be difficult to draw in the abstract.[10] Theoretically, a review committee could acquire information from a third party, and that information might be privileged. But once a review committee incorporates third-party information into its own records, that information would lose protection in cases against non-professionals. Plaintiffs acknowledge that this renders the privilege weak in cases like this one. But again, that is consistent with the privilege's purpose – to foster open communication about physicians without threats of defamation and malpractice claims. *See* Pls.' Br., pp. 1, 7-8 (citing cases).[11]

---

[10] Essentia's rote privilege descriptions and claim that all of its employees are peer review committee members do not aid that analysis.

[11] It is also consistent with other aspects of the statute, which craft strong protections for the inner workings of the peer review in actions involving a professional (who might be the subject of or source for the review), and weak protections for independent facts that exist beyond the peer review, like personal knowledge, guidelines, and original source material.

In any event, much of this is an academic exercise in light of the source of that "acquired" data and information: Essentia, who must produce them as the original source. *Infra*.

### 3. Original source documents are discoverable. Essentia must produce them.

As Essentia recognizes, the confidentiality section includes an exception for "original source" materials – which are not privileged:

> Information, documents or records otherwise available from original sources shall not be immune from discovery or use in any civil action merely because they were presented during proceedings of a review organization . . . .

Minn. Stat. § 145.64.

Essentia attempts to move past this exception by claiming that it simply "has not asserted privilege over original-source documents." Br., pp. 7-8. That contention can only be based on Essentia's incorrect view that all of the thousands of employees and third parties on the privilege log are peer review members, constantly working in a peer review function, such that all company documents and communications are generated by or for the review committee. That suggestion has no legal basis, and it has already been rejected by this Court. *See* ECF No. 79, p. 12.[12]

Next, Essentia disputes whether original source documents may be discovered directly from the peer review committee. Two justices of the Minnesota Supreme Court have suggested that they can:

> [O]nly documents **originally created by the peer review organization** . . . are truly off-limits. . . [I]t is not uncommon for a large portion **of the peer review documents** to be considered discoverable . . . [T]his . . prevents hospitals faced with a malpractice suit from hiding incriminating information by funneling it through the peer review committee.

---

[12] Though they address the scope of the statute and its exceptions, Plaintiffs anticipate that the majority, if not all, of the withheld documents are ordinary course of business documents that were never created for or presented to a peer review committee as part of a peer review, and thus do not fall within the peer review statute at all.

*Wasemiller*, 738 N.W.2d at 315.[13] Some other jurisdictions take the same view. Pls.' Br. n.5.

In any event – this issue has little, if any, practical import here. This is not a situation where a peer review committee has acquired documents from an unknown third-party original source, whose participation in the process defendants seek to shield. <u>Essentia and Innovis (and their employees) *are* the original sources of the withheld documents and information.</u>

Essentia largely ignores this fact, claiming in a footnote that Plaintiffs make this assertion without citation (which is not true[14]) and that Plaintiffs suggest that a "defendant corporation cannot assert the privilege" (which is also not true – though it cannot assert the privilege over its records as a whole). Br., n.6.

The peer review statute "**protects the work product** of the [peer review] organization" but it "**allows disclosure and discovery of . . . incident reports, patient charts, records, billing information, and general medical error and safety information**" as well as "**similar quality assurance measures**. . . ." *Wasemiller*, 738 N.W.2d at 315 (emphasis added) (citations omitted). Essentia must produce those documents and communications, even if they relate to adverse events

---

[13] Essentia relies on an earlier intermediary court decision to argue that original source documents are discoverable only from the original source. Br., pp. 7-8 (citing *Fairview*, 590 N.W2d at 154). "Absent controlling [state] Supreme Court authority, a federal court sitting in diversity must attempt to predict what that court would decide if it were to address the issue," *Raines v. Safeco Ins. Co. of Am.*, 637 F.3d 872, 875 (8th Cir. 2011), not what a lower court might have done nearly 25 years ago.

Essentia's citation to *Damgaard*, 2014 U.S. Dist. LEXIS 192894, is also unavailing. That decision considered whether documents generated by a peer review organization were discoverable from the peer review organization because the documents were *subsequently* provided to an "independent" source (an insurance company). It did not address discoverability of documents generated by an original source.

[14] Pls.' Br., p. 5 (citing cases). *See also,* ECF No. 161, n.11 (same).

and even if they were subsequently provided to a peer review committee. *See id.*; Pls.' Br., p. 5;

ECF No. 161, p. 13; ECF No. 172, pp. 5-6.[15]

### 4. What transpires at a meeting is discoverable. Some individuals have a duty of confidentiality, but there is no privilege.

"Essentia is unsure" how Plaintiffs reached the conclusion that "what transpire[s] at a

meeting of a review organization" is not privileged. Br., p. 6. The statute says:

> **No person** described in section 145.63 [peer review members, employees, officers, directors, and advisors] **shall disclose what transpired** at a meeting of a review organization except to the extent necessary to carry out one or more of the purposes of a review organization.

Minn. Stat. § 145.64 (emphasis added). This provision furthers the goals of Section 145.63, which

provides immunity to peer review members for their peer review work unless it was motivated by

malice or bad faith. Notably, it does *not* bar disclosure by peer review subjects, witnesses,

participants, or others acting at the peer review's direction. *See id.* and § 145.64.[16]

---

[15] *See also, e.g., Roach v. Springfield Clinic*, 623 N.E.2d 246, 250 (Ill. 1993) ("What the law actually protects is not information of a hospital's medical staff [even if used for the purposes set forth in the statute], but information of *committees* of licensed or accredited hospitals or their medical staffs . . . .") (citation and quotation omitted); *Cobb Cty. Kennestone Hosp. Auth. v. Martin*, 430 S.E.2d 604, 605 (Ga. Ct. App. 1993) ("[H]ospital medical records and information within the knowledge of the infection rate nurse" are "original sources."); *Powell v. Cmty. Health Sys.*, 312 S.W.3d 496, 499-500 (Tenn. 2010) (information created "in the regular course of the hospital's business" not privileged; hospital's "infection control director was the 'original source' of the information"); *IntegraMed Am., Inc. v. Patton*, 298 F.R.D. 326, 331 (D.S.C. 2014) (doctor's letter initiating peer review at hospital, even if part of the peer review record, was discoverable); *Manthe v. Vanbolden*, No. 5-90-0085, 1991 U.S. Dist. LEXIS 6759, at *10 (N.D. Tex. Jan. 3, 1991) (a document is "not ipso facto . . . protected" "simply because [it] appears in the [committee's] files. . . .").

[16] Essentia has not established that the thousands of individuals on its privilege log were involved with a peer review at all – let alone that they are the peer review members, employees, officers, or directors described in Minn. Stat. § 145.63. People outside of that scope have no confidentiality obligation. *See id.* at § 145.64. An overbroad reading of these provisions would subject those thousands of individuals to potential misdemeanor liability for disclosure. *See id.* at § 145.66.

11

Prohibitions against disclosure create requirements of <u>confidentiality</u>, not privilege. *Klaine v. S. Ill. Hosp. Servs.*, 47 N.E.3d 966, 970 (Ill. 2016) ("confidentiality, discoverability, and admissibility are distinct concepts"); *Damgaard v. Avera Health*, 108 F. Supp. 3d 689, 699 (D. Minn. 2015) ("discoverability and admissibility, of course, are entirely separate issues, with the former far broader than the latter"); *Virmani v. Novant Health, Inc.*, 259 F.3d 284, 287 n.4 (4th Cir. 2001) ("There is an important distinction between privilege and protection of documents, the former operating to shield the documents from production in the first instance, and the latter operating to preserve confidentiality when produced. . . . An appropriate protective order can alleviate problems and concerns regarding . . . confidentiality. . . . A court likewise can protect the identities of third parties, i.e., the patients and the other physicians who were the subjects of prior peer reviews. . . ."); *Adams v. Rizzo*, 831 N.Y.S.2d 351, 351 (Sup. Ct. 2006) ("statutory privileged communications are confidential, but not all forms of confidential information is [sic] privileged.").

### 5. Guidelines are discoverable. They are never privileged. They are inadmissible in certain cases, but not this one.

Essentia recognizes that "guideline[s] established by a review organization" are discoverable, though it claims that none of its withheld documents fall into this category. *See* Br., p. 7 (citing Minn. Stat. § 145.65). It is Essentia who chose to describe hundreds of its withheld documents as "guidelines" or "guidance" while asserting the privilege. Now, Essentia claims those documents are somehow different, because they are "materials created in reaction to the potential temperature excursion and that are necessary for patient care." *Id.* That is exactly the type of guideline the statute contemplates.[17]

---

[17] Of course, Plaintiffs do not believe all of the withheld guidelines and guidance were prepared by a peer review organization at all.

If the withheld guidelines had *not* been established for the purpose of patient care, they would fall outside of the statute entirely. *See Damgaard*, 108 F. Supp. 3d at 699 n.10 ("In order to fall within the peer-review statute" in the first place, the policy must have been created as part of a process "established to 'gather and review information relating to the care and treatment of patients **for the purposes of . . . developing and proposing guidelines designed to improve the safety of care provided to individuals**.'") (quoting Minn. Stat. § 145.61, subd. 5) (emphasis added). *See, e.g., Jones v. Jones*, 94 Va. Cir. 134, 137 (Cir. Ct. 2016) (Policies, procedures, protocols, guidelines, rules, regulations, and recommendations that others are expected to follow were never intended to be confidential and are not privileged or otherwise protected.).

### C. Essentia continues to fail to support its assertions of attorney-client privilege and work product.

Although the Court requested briefing on the peer review statute, Essentia also addressed the attorney-client privilege and work product. Br., pp. 11-13. Plaintiffs thus briefly respond.

Regarding attorney-client privilege, Essentia argues the privilege can be extended to agents, consultants, and draft documents. That can be true, e.g., when legal advice is the primary purpose of the confidential communication and the agent is, in effect, an employee of the client or attorney. *In re Bieter Co.*, 16 F.3d 929, 937-38 (8th Cir. 1994). However, none of Essentia's cited authority supports the application of the privilege to the documents withheld here. *See, e.g., Fagen, Inc. v. Exergy Dev. Gr. of Id., LLC*, 12-2703, 2015 WL 12977507, at *4 (D. Minn. June 1, 2015) (waiver of privilege as to communications with counsel extended to communications with local counsel who acted as agent); *In re Death of VanSlooten*, 424 N.W.2d 576, 577 (Minn. Ct. App. 1988) (privilege applied to client's notes about his defense, written at the direction of his attorney); *Kobluk v. Univ. of Minnesota*, 574 N.W.2d 436, 438 (Minn. 1998) (privilege applied to drafts of letters exchanged between a client and his lawyer for the purpose of obtaining legal advice).

13

Nor do Essentia's privilege assertions support that the privilege applies. Essentia cites draft "call center scripts" as an example. Br., p. 12. Call center scripts predominately serve a business purpose, not a legal one. Moreover, there is no indication these scripts were drafted by or at the direction of an attorney for the purpose of providing legal advice. And they were shared with numerous employees in communications, patient relations, and operations, as well as third-party public relations consultants, and on emails with no attorney involvement.

In fact, Essentia's authority demonstrates that Essentia has not met its burden here. *See, e.g., Stan Koch & Sons Trucking, Inc., v. Am. Interstate Ins. Co.*, No. 18-cv-2945, 2020 U.S. Dist. LEXIS 78017, at *22-24 (D. Minn. May 4, 2020) (Requiring detailed declarations stating "whether the communication was made for the purpose of seeking [or providing] legal advice . . . identify[ing] each individual who authored or received the communication by name, title, and his or her job responsibilities insofar as they were pertinent to the communication, and . . . stat[ing] specifically why each was included in the communication [and] how that related to the seeking or providing of legal advice.").[18]

As to work product, Essentia argues that documents created years before the excursion could have been prepared in anticipation of some other litigation. Br., pp. 12-13. That does not explain, let alone support, Essentia's work product assertions over a "PowerPoint regarding medication refrigeration," a document "regarding temperature monitoring" sent to 50+ individuals and medical centers, and a "PowerPoint regarding clinics and immunization," Pls.' Br., p. 15, nor

---

[18] Essentia ignores that it bears the burden to establish that the privileges apply. For example, it claims that the "'mere assertion that counsel's advice . . . was of nonlegal character' is insufficient." Br., p. 11 (quoting *Kobluk,* 574 N.W.2d at 442). A "mere assertion" is insufficient to overcome *evidence* that the privilege applies, which Essentia has yet to provide. *See Kobluk, id.* (analyzing the content of the withheld documents, their exchange between lawyer and client, and the record regarding their purpose).

any other withheld document. Essentia has never pointed to any other litigation for which these materials were prepared.

Essentia's continued assertions that documents with third parties *could be* protected, documents with no attorney participant *could be* protected, or documents created before the excursion *could be* protected are legally true, but they do not establish that *these* individuals or *these* documents fall within the privilege or work product protection.[19]

### D. This issue does not meet the requirements to certify a question.

A question may be certified to the Minnesota Supreme Court "if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling appellate decision, constitutional provision, or statute of this state." Minn. Stat. § 480.065, Subd. 3. The peer review statute is controlling. Thus, a question may not be certified.[20]

Dated: September 9, 2022

Respectfully submitted,
/s/ Melissa Ryan Clark
Melissa Ryan Clark
Brooke A. Achua
FEGAN SCOTT LLC
140 Broadway, 46th Fl.
New York, NY 10005

---

[19] Essentia requests that a special master be retained to review its privilege assertions. Br., p. 13. The Court invited the parties to select documents for in-camera review that are representative of broader categories of documents, presumably so that the Court may offer further guidance. While Plaintiffs agree that the 100 example documents are the tip of the iceberg in terms of Essentia's overbroad privilege assertions, retention of a special master is, at the very least, premature and would unnecessarily create an additional layer of litigation, cost, and delay. At no point should Plaintiffs be required to bear the cost of a good-faith privilege review of Essentia's documents.

[20] Furthermore, many of the "issues" Essentia claims warrant certification (Br., pp. 13-14) are not even arguments that Plaintiffs make. And if Plaintiffs' construction of the privilege creates "nonexistent," "fabricated," "novel," and "unsupported" provisions, as Essentia claims (*id.*), there can be no real contention that the Court will be "genuinely uncertain" about a "close question of law" – the "most important consideration" in deciding whether to certify a question if the statutory requirements are met. *Phillips v. Messerli & Kramer, P.A.*, No. 08-4419, 2009 U.S. Dist. LEXIS 33438, at *3-4 (D. Minn. Apr. 20, 2009) (citations and quotation marks omitted).

Ph: 646.502.7910
Fax: 312.264.0100
melissa@feganscott.com
brooke@feganscott.com

Elizabeth A. Fegan
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
Ph: 312.741.1019
Fax: 312.264.0100
beth@feganscott.com

Mac Schneider
SCHNEIDER LAW FIRM
815 3rd Ave. S.
Fargo, ND 58103
Ph: 701-235-4481
Fax: 701-235-1107
mac@schneiderlawfirm.com

J. Barton Goplerud
Brian Marty
SHINDLER, ANDERSON, GOPLERUD &
WEESE, PC
5015 Grand Ridge Drive, Suite 100
West Des Moines, Iowa 50265
Ph: (515) 223-4567
Fax: (515) 223-8887
goplerud@sagwlaw.com
marty@sagwlaw.com

Counsel for Plaintiffs

16