UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA
EASTERN DIVISION

| | |
|---|---|
| JESSICA KRAFT, individually and as parent of minors L.K., S.K., and O.K.; SHELLI SCHNEIDER, individually and as parent of minors A.S. and W.S.; ANNE BAILEY, individually and as parent of minor D.B.; AMY LAVELLE, individual and as parent of minors Em.L. and El.L.; ELIZABETH BEATON, individually and as parent of minor M.B.; AMANDA AND TYRELL FAUSKE, individually and as parents of minors C.R.F. and C.J.F.; JENNIFER REIN, individually; and JESSICA BERG, individually and as parent of minors A.B. and S.B., individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>vs.<br><br>ESSENTIA HEALTH, INNOVIS HEALTH, LLC d/b/a ESSENTIA HEALTH, DAKOTA CLINIC PHARMACY, LLC, JOHN DOE MANUFACTURERS, and JOHN DOE DISTRIBUTOR,<br><br>    Defendants. | Case No. 3:20-CV-00121<br><br><br>**ESSENTIA HEALTH'S AND INNOVIS HEALTH, LLC'S BRIEF ADDRESSING REVIEW ORGANIZATION STRUCTURE PURSUANT TO THE COURT'S ORDER (DOC. ID NO. 225)** |

I.    **INTRODUCTION**

Defendants, Essentia Health and Innovis Health, LLC d/b/a Essentia Health West (collectively, "Essentia"), submit this Brief Addressing Review Organization Structure, pursuant to the Court's Order (Doc. ID No. 225). Essentia submits simultaneously with this Brief a Declaration by Frank M. Modich, Associate General Counsel for Essentia, setting forth the structure of Essentia's review organizations. (*See Declaration of Frank M. Modich Regarding*

1

*Review Organization Structure Pursuant to the Court's Order (Doc. ID No. 225)*).   Based on Modich's Declaration, this Brief, Essentia's prior briefing on the substantive privileges, and the in-camera submissions regarding the same,[1] Essentia respectfully requests this Court find the committees within Essentia's peer review/quality assurance structure meet the definition of "review organization" under Minnesota law and that the peer review/quality assurance applies to the documents withheld as privileged.  *See* Minn. Stat. § 145.61, subd. 5.

## II.      PROCEDURAL BACKGROUND

On June 23, 2022, Essentia submitted an in-camera brief addressing how the relevant privileges apply to documents selected for in-camera review, pursuant to the Court's May 9, 2022, Order (Doc. ID No. 181).  At a Status Conference, on August 16, 2022, the Court determined the parties ought to have the opportunity to respond to each other's differing interpretations of the scope of the relevant privileges.  (*See* Doc. ID No. 209).  Thus, on August 24, 2022, Essentia submitted a brief outlining its interpretation and offering to submit an affidavit in support of its privilege claims for in-camera review. (*See* Doc. ID No. 210, *Essentia's Brief Addressing Documents Selected for In Camera Review*, at 10).

On January 13, 2023, the Court issued its Order Regarding In Camera Review.  (*See* Doc. ID No. 225).  As part of that Order, the Court determined that Essentia's peer review/quality assurance structure is not privileged and ordered Essentia to "disclose the structure and identify

---

[1] (*See, e.g.*, Doc. ID No. 169, *Essentia's Memorandum in Opposition to Plaintiffs' Motion to Compel Production of Documents Withheld as Privileged*); *Essentia's June 23, 2022, In Camera Brief Addressing Documents Selected for In Camera Review* (submitted to the Court by email and not publicly filed); Doc. ID No. 210, *Essentia's Brief Addressing Documents Selected for In Camera Review*; Doc ID No. 213, *Essentia's Sur-Response Addressing Documents Selected for In Camera Review*).

the positions within the asserted structure of those who created and received the documents over which Essentia claims peer review privilege." *Id.* at 11.  In particular, the Court ordered Essentia to submit evidence "that its asserted peer review organization[s] meet[] the statutory definition." *Id.* at 52.

Accordingly, simultaneously with this Brief, Essentia submits a Declaration by Modich, Associate General Counsel for Essentia, attesting to Essentia's peer review/quality assurance structure and functions.  (*See Modich Decl.*).[2]

## III.    LAW AND ARGUMENT

Essentia previously briefed the substantive privileges at issues in this case.  (*See, e.g.*, Doc. ID No. 169, *Essentia's Memorandum in Opposition to Plaintiffs' Motion to Compel Production of Documents Withheld as Privileged*); *Essentia's June 23, 2022, In Camera Brief Addressing Documents Selected for In Camera Review* (submitted to the Court by email and not publicly filed); Doc. ID No. 210, *Essentia's Brief Addressing Documents Selected for In Camera Review*; Doc ID No. 213, *Essentia's Sur-Response Addressing Documents Selected for In Camera Review*). Essentia incorporates that briefing by reference here.[3]

---

[2] Although Essentia maintains its position that the information regarding its peer review/quality assurance structure is privileged under both Minnesota and North Dakota law, Essentia submits evidence and briefing pursuant to the Order of the Court. *Cf. St. Alexius Med. Ctr. v. The Honorable Pam Nesvig, Judge of the Court, South Centra Judicial District; Kevin McKibbage; Daniel Dixon, M.D.; and The Bone & Joint Ctr. P.C.*, 2022 ND 65 (finding similar information privileged under North Dakota law).  Accordingly, Essentia submits such information without waiving the privileges asserted.  Essentia also takes this opportunity to again request the Court apply North Dakota law if its finds that Minnesota law does not protect Essentia's peer review/quality assurance structure because North Dakota public policy would demand protection of the information under those circumstances.

[3] While Essentia maintains its other privilege assertions, this briefing focuses only on the peer review/quality assurance privilege, for which its review-organization structure is relevant.

### A.      Statutory Definition of "Review Organization"

Under Minnesota law, "data and information acquired by a review organization, in the exercise of its duties and functions, or by an individual or other entity acting at the direction of a review organization, shall be held in confidence, shall not be disclosed to anyone except to the extent necessary to carry out one or more of the purposes of the review organization, and shall not be subject to subpoena or discovery." Minn. Stat. Ann. § 145.64, subd. 1. Minnesota law further protects the "proceedings and records of a review organization." *See id.*

Minnesota's statutory framework defines "review organization." *See id.* § 145.61, subd. 5. As relevant here, that definition includes any:

> "committee whose membership is limited to professionals, administrative staff, and consumer directors, … which is established by one or more of the following: a hospital, a clinic, a nursing home, an ambulance service or first responder service regulated under chapter 144E, one or more state or local associations of professionals, an organization of professionals from a particular area or medical institution, a health maintenance organization as defined in chapter 62D, a community integrated service network as defined in chapter 62N, a nonprofit health service plan corporation as defined in chapter 62C, a preferred provider organization, a professional standards review organization established pursuant to United States Code, title 42, section 1320c-1 et seq., a medical review agent established to meet the requirements of section 256B.04, subdivision 15, the Department of Human Services, or a nonprofit corporation that owns, operates, or is established by one or more of the above referenced entities, to gather and review information relating to the care and treatment of patients for the purposes of [numerous peer review/quality assurance functions].

Minn. Stat. § 145.61, subd. 5 (emphasis added); *see also id.*, subd. 5(a)-(q) (listing peer review/quality assurance functions). "Professional[s]" include those "licensed or registered to practice a healing art" under various chapters, such as physicians, pharmacists, and nurses, *id.*, subd. 2, and "administrative staff" include "the staff of a hospital, clinic, nursing home, nonprofit health service plan corporation, or health maintenance organization," *id.*, subd. 4a.

4

As set forth below, Essentia's peer review/quality assurance structure includes various committees that meet the definition of "review organization" under Minnesota law. *Id.*, subd. 5. Accordingly, Minnesota's peer review/quality assurance privilege applies. *See id.* § 145.64.

### B.      Essentia's Peer Review/Quality Assurance Structure

Frank Modich's Declaration, submitted simultaneously with this Brief, establishes that Minnesota's peer review/quality assurance privilege is applicable. (*See Modich Decl.*). As noted above, Minnesota law protects, among other things, "data and information acquired by a review organization" or "by an individual or other entity acting at the direction of a review organization." Minn. Stat. § 145.64, subd. 1; *see also id.* (protecting review organization's proceedings and records). Accordingly, the question at issue is whether Essentia has identified review organizations, as that term is defined in Minnesota's peer review/quality assurance statutory framework. It has.

The statutory definition of "review organization" includes "committee[s]": (1) established by a hospital or clinic, or "a nonprofit corporation that owns [or] operates … one or more" of those entities, (2) with "membership limited to professionals, administrative staff, and consumer directors," and (3) formed to "gather and review information relating to the care and treatment of patients for the purposes of" peer review/quality assurance functions. Minn. Stat. § 145.61, subd. 5. Modich's Declaration identifies various committees and evidences that these committees satisfy the statutory requirements to appropriately be considered a "review organization." (*See Modich Decl.*).

5

With respect to the first requirement, Modich's Declaration provides that "[b]oth Essentia Health and Innovis Health, LLC are non-profit entities" and that they "own, operate, and maintain healthcare facilities, such as hospitals and clinics." (*Modich Decl.*, at ¶ 5). Modich's Declaration further provides that "Essentia leadership established" the committees at issue. (*Id.* at ¶¶ 12, 18, 24, 33, 37, 41, 45, 49, 53). Regarding the second requirement, Modich states in his Declaration that membership of the various committees has always been limited to professional and administrative staff of Essentia. (*See id.* at ¶¶ 13, 19, 26, 30, 34, 38, 42, 46, 50, 54). Supporting that statement, Modich provides the members of each committee and their titles, for the relevant timeframe. (*See id.* at ¶¶ 14, 15, 20, 21, 26, 30, 34, 38, 42, 46, 50, 54). Finally, as it relates to the third requirement, Modich generally provides, without revealing the privileged nature of the work, the peer review/quality assurance functions that each committee performs. (*See id.* ¶¶ 16, 22, 27, 31, 35, 39, 43, 47, 51, 55).

In sum, Modich's Declaration evidences that Essentia established committees, whose membership is limited to professionals and administrative staff of Essentia, to "gather and review information relating to the care and treatment of patients for" peer review/quality assurance purposes. Minn. Stat. § 145.61, subd. 5.[4] That is, Essentia has established committees within its peer review/quality assurance structure that meet the definition of "review organization," such that the peer review/quality assurance privilege applies. The committees include:

---

[4] Modich's Declaration addresses both the review organizations identified in Essentia's in-camera briefing, which were identified based on the documents selected for in-camera review, and other review organizations relevant to the documents withheld as privileged.

- The West Market Storage Committee (1) was established by Essentia leadership; (2) membership is limited to Essentia professionals and administrative staff; and (3) formed to gather and review information about patients' care to evaluate, improve, and obtain information about that care as it "relates to the potential temperature excursion." (*Modich Decl.*, at ¶¶ 12-16); Minn. Stat. § 145.61, subd. 5(a).

- The Olive Committee (1) was established by Essentia leadership; (2) membership is limited to Essentia professionals and administrative staff; and (3) formed to gather and review information about patients' care to evaluate, improve, and obtain information about that care as it relates to the management and collection of data for the potentially impacted patient population. (*Modich Decl.*, at ¶¶ 18-22); Minn. Stat. § 145.61, subd. 5(a).

- The Patient Relations and Risk Management Committee (1) was established by Essentia leadership; (2) membership is limited to Essentia professionals and administrative staff; and (3) formed to gather and review information about patients' care to evaluate, improve, and obtain information about that care and adverse events; review patients' and providers' disputes and questions; and "maintain a standardized incident reporting system." (*Modich Decl.*, at ¶¶ 24-27); Minn. Stat. § 145.61, subd. 5(a), (c), (j), (q). It includes a subcommittee that performs the same peer review/quality assurance functions specifically for data relating the potential temperature excursion. (*Modich Decl.*, at ¶¶ 29-31); Minn. Stat. § 145.61, subd. 5(a), (c), (j), (q).

- The Essentia System Quality Committee (1) was established by Essentia leadership; (2) membership is limited to Essentia professionals and administrative staff; and (3) formed to gather and review information about patients' care to evaluate and improve that care and reduce morbidity and mortality. (*Modich Decl.*, at ¶¶ 33-35); Minn. Stat. § 145.61, subd. 5(a)-(c).

- The Essentia Clinical Practice Committee (1) was established by Essentia leadership, (2) membership is limited to Essentia professionals and administrative staff; and (3) formed to gather and review information about patients' care to evaluate and improve that care and reduce morbidity and mortality in the clinical setting. (*Modich Decl.*, at ¶¶ 37-39); Minn. Stat. § 145.61, subd. 5(a)-(c).

- The Clinical Alerts Subgroup (1) was established by Essentia leadership; (2) membership is limited to Essentia professionals and administrative staff; and (3) formed to gather and review information about patients' care and data in the clinical setting to evaluate and improve that care and reduce morbidity and mortality. (*Modich Decl.*, at ¶¶ 41-43); Minn. Stat. § 145.61, subd. 5(a)-(c).

- The One Essentia Fridge Project Committee (1) was established by Essentia leadership; (2) membership is limited to Essentia professionals and administrative staff; and (3) formed to gather and review information about patients' care to evaluate and

7

improve that care, reduce adverse events, develop recommendations, and maintain standardized reporting as it relates to temperature monitoring across the Essentia system. (*Modich Decl.*, at ¶¶ 45-47); Minn. Stat. § 145.61, subd. 5(a)-(g), (q).

- The Immunization Clinic Transition Committee (1) was established by Essentia leadership; (2) membership is limited to Essentia professionals and administrative staff; and (3) formed to gather and review information about patients' care to evaluate and improve care and access to care and to review the cost of care as it relates to immunizations in the clinical setting. (*Modich Decl.*, at ¶¶ 49-51; Minn. Stat. § 145.61, subd. 5(a)-(c), (g).

- The IM Pharmacy Prioritization & Project Partnering Committee (1) was established by Essentia leadership; (2) membership is limited to Essentia professionals and administrative staff; and (3) formed to gather and review information about patients' care to evaluate and improve that care; to evaluate the cost of care; and to review patients' and providers' questions and disputes, all as it relates to pharmaceutical care. (*Modich Decl.*, at ¶¶ 53-55); Minn. Stat. § 145.61, subd. 5(a)-(c), (g), & (j).[5]

Accordingly, Essentia respectfully submits that these committees meet the definition of "review organization" under Minnesota law and the peer review/quality assurance applies. *See* Minn. Stat. § 145.61, subd. 5.

In addition to ordering that Essentia disclose the structure of its review organizations, as Essentia set forth above, the Court also requested that Essentia "identify the positions of those who created and received the documents over which Essentia claims peer review privilege." (Doc. ID No. 225, *Order Regarding In Camera Review*, at 11).

To comply with that request, Essentia has identified the members of each committee during the relevant timeframe. (*See Modich Decl.*, at ¶¶ 14, 15, 20, 21, 26, 30, 34, 38, 42, 46,

---

[5] Greater detail about the peer review/quality assurance functions of each of these committees is provided in Essentia's in-camera briefing and is apparent from the documents submitted for in-camera review. *See Essentia's June 23, 2022, In Camera Brief Addressing Documents Selected for In Camera Review* (submitted to the Court by email and not publicly filed). Given that the committees' specific work is privileged, Essentia provides no additional detail here.

50, 54).  From there, Essentia's supplemental privilege logs specifically set forth the creator(s) and recipient(s) of each document.  (*See, e.g.*, Doc. ID No. 161-1, *Exhibit 1*, *Essentia's Supplemental Privilege Log*).  Essentia further identifies in its supplemental privilege logs the titles of the creators and recipients of each document, thereby "identify[ing] the positions of those who created and received the documents over which Essentia claims peer review privilege."  (Doc. ID No. 225, *Order Regarding In Camera Review*, at 11; Doc ID No. 161-1, *Exhibit 1*, *Essentia's Supplemental Privilege Log*).

Finally, it is worth noting that the peer review/quality assurance privilege may apply to a document even if it was not created or received by a committee member.  As noted above, the privilege applies to "data and information acquired by a review organization" *and* by those "acting at the direction of a review organization."  Minn. Stat. § 145.64, subd. 1; *see also id.* (protecting the "proceedings and records" of a review organization).  In his Declaration, Modich provides that committee members delegated committee work to others to perform at the committees' direction.  (*See Modich Decl.*, at ¶¶ 11, 17, 23, 28, 32, 36, 40, 44, 48, 52, 56).  The supplemental privilege logs further reflect the identities of those individuals who performed committee work at the direction of committee members.[6]

In sum, Essentia's various committees meet the definition of "review organization" under Minnesota law.  Those committees were established by Essentia leadership, composed of only Essentia professionals and administrative staff, and formed to perform peer

---

[6] Essentia's in-camera briefing explains the nature of the committee work done at the direction of the committees.  Essentia does not provide the specifics of that committee work here, which is privileged.  *See* Minn. Stat. § 145.64, subd. 1.

review/quality assurance functions.  In addition, the committees delegated committee work to others, as needed, to perform such work at the direction of the committees.  Accordingly, Essentia has shown that its peer review/quality assurance structure satisfy the requirements for application of the peer review/quality assurance privilege.

## IV.    CONCLUSION

For the foregoing reasons, Essentia respectfully requests this Court find that Essentia has shown its committees meet the definition of "review organizations" under Minnesota law and that the peer review/quality assurance applies to the documents withheld as privileged.

Dated this 23rd day of January, 2023.

**VOGEL LAW FIRM**

*/s/ Briana L. Rummel*

BY:   Angela E. Lord (#05351)
      Robert B. Stock (#05919)
      Briana L. Rummel (#08399)
      MacKenzie L. Hertz (#09392)
      218 NP Avenue
      PO Box 1389
      Fargo, ND  58107-1389
      701.237.6983
      Email:   alord@vogellaw.com
               rstock@vogellaw.com
               brummel@vogellaw.com
               mhertz@vogellaw.com
      ATTORNEYS FOR ESSENTIA HEALTH AND
      INNOVIS HEALTH, LLC