UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA
EASTERN DIVISION

| | |
|---|---|
| JESSICA KRAFT, individually and as parent of minors L.K., S.K., and O.K.; SHELLI SCHNEIDER, individually and as parent of minors A.S. and W.S.; ANNE BAILEY, individually and as parent of minor D.B.; AMY LAVELLE, individual and as parent of minors Em.L.and El.L.; ELIZABETH BEATON, individually and as parent of minor M.B.; AMANDA AND TYRELL FAUSKE, individually and as parents of minors C.R.F. and C.J.F.; JENNIFER REIN, individually; and JESSICA BERG, individually and as parent of minors A.B. and S.B., individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>vs.<br><br>ESSENTIA HEALTH, INNOVIS HEALTH, LLC d/b/a ESSENTIA HEALTH, DAKOTA CLINIC PHARMACY, LLC, JOHN DOE MANUFACTURERS, and JOHN DOE DISTRIBUTOR,<br><br>        Defendants. | Case No. 3:20-CV-00121<br><br><br>**DECLARATION OF FRANK M. MODICH REGARDING ATTORNEY-CLIENT PRIVILEGE AND WORK PRODUCT DOCTRINE PURSUANT TO THE COURT'S ORDER (DOC. ID NO. 225)** |

I, FRANK M. MODICH, declare as follows:

1.      I am Associate General Counsel at Essentia Health.  I have served in Essentia's Legal and Regulatory Services ("LRS") department since January of 2012.

2.      I have personal knowledge of many of the facts stated herein.  Those matters that are not within my personal knowledge have been assembled or relayed by authorized agents or employees of Essentia Health and Innovis Health, LLC d/b/a Essentia Health West (collectively, "Essentia").

3.  In my position, I render legal services myself and am otherwise familiar with the rendition of legal services at Essentia.

4.  Given my role within Essentia, I am bound by various privileges. However, the Court has expressed that this declaration is necessary to sustain the claims of attorney-client privilege and work-product protection. Accordingly, I offer this testimony as a requirement of the Court without waiving any of the privileges asserted.

5.  I am familiar with the present lawsuit as well as the underlying events relevant to this lawsuit, including when Essentia first identified the potential temperature excursion with respect to temperature-sensitive pharmaceutical products ("TTSPPs").

6.  From the time it first identified the potential temperature excursion, Essentia anticipated potential litigation and recognized the need to involve the LRS department.

7.  As a result, Essentia's LRS department, including myself, actively rendered legal services in response to the potential temperature excursion from the time it was first discovered.

8.  During the relevant timeframe, the members of Essentia's LRS department included:

    a.  Michael Watters, Chief Legal Officer, Essentia Health

    b.  Myself, Associate General Counsel, Essentia Health

    c.  Joshua Muro, Assistant General Counsel I, Essentia Health

    d.  Shawn Pearson, Former Assistant General Counsel II-Labor and Employment, Essentia Health

    e.  Chelsey Jonason, Assistant General Counsel I, Essentia Health

    f.  Brianne Matlock, Assistant General Counsel II, Essentia Health

    g.  Carol Trombley, Assistant General Counsel II, Essentia Health

    h.  Jessica Bradley, Former Assistant General Counsel II, Essentia Health

    i.  Lindsey Croasdale, Assistant General Counsel I, Essentia Health

    j.  Jennifer Ziemann, Former Senior Paralegal, Essentia Health

2

k.  Tammy Lamirande, Senior Paralegal, Essentia Health

l.  Dawn LaPointe, Paralegal, Essentia Health

m.  Debra Carlson, Director of Contract Administration, Essentia Health

n.  Theresa Pearson, Contract Representative, Essentia Health

o.  Tammy Ledoux, Contract Representative, Essentia Health

p.  Idril Faith, Paralegal II, Essentia Health

q.  Melissa Little, Legal Practice Administrator, Essentia Health

r.  Karen Sirois, Program Manager – Workers Compensation, Essentia Health

s.  Lynne Bordson, Workers Compensation Associate, Essentia Health

t.  Katherine Markovich, Workers Compensation Specialist, Essentia Health

u.  Susan Shelgren, Workers Compensation Associate, Essentia Health

v.  Teresa Rick, Policy Associate, Essentia Health

w.  Jessica Fetzer, Risk Manager, Interim Director Risk Management, Essentia Health

x.  Janice Schlaht, Patient Relations Associate, Essentia Health

y.  Sherry Jensen, Patient Relations Associate, Essentia Health

z.  Linda Bjornson, RN, Senior Patient Relations Specialist, Essentia Health

aa. Ann Bertoch, RN, Senior Patient Relations Specialist, Essentia Health

bb. Mary Langner, RN, Senior Patient Relations Specialist, Essentia Health

cc. Candice Moore, RN, Director of Patient Relations and Risk Management, Essentia Health

dd. Laurie Tahtinen, RN, Program Manager – Risk Data, Essentia Health

3

ee. Andrew Verant, RN, Senior Patient Relations Specialist, Essentia Health

ff. Megan Solem-Ritter, RN, Senior Patient Relations Specialist, Essentia Health

gg. Betsy Verant, RN, Senior Patient Relations Specialist, Essentia Health

hh. Ashanti Halli, RN, Senior Patient Relations Specialist, Essentia Health

ii. Julie Rollin, RN, Senior Patient Relations Specialist, Essentia Health

jj. Marlys Olson, Insurance and Claims Manager, Essentia Health

kk. Elizabeth Munson, Paralegal, Essentia Health

ll. Andrea Koop, Risk Management Assistant, Essentia Health

mm.  La Sheenlaruba Tyacke, Patient Relations Associate, Essentia Health

nn. Kimberly Nelson, Patient Relations Associate, Essentia Health

oo. Ann Sovil, Patient Relations Associate, Essentia Health

pp. Debbie Nelson, Patient Relations Associate, Essentia Health

9. Given the volume of the project, in addition to the members of Essentia's LRS department themselves, the LRS department also communicated with, and delegated tasks to, other agents and employees of Essentia to perform functions in furtherance of the rendition of legal services. The identities of the individuals communicated with and to whom work was delegated are reflected in the supplemental privilege logs.

10. Importantly, it is commonplace in the healthcare context for the LRS department to work in tandem, or simultaneously, with peer review/quality assurance committees in response to concerns about patient care. In those situations, the LRS department's primary purpose is to render legal services, while the peer review/quality assurance committees fulfill peer review/quality assurance functions.

11. This case has been no different. The predominant purpose of the LRS department's involvement, and communications, in this matter was for the rendition of legal services, even where it worked in conjunction with other groups, such as peer review/quality assurance committees.

4

**Attorney-Client Privilege**

12. Members of Essentia's LRS department, and those working at its direction, as identified on the supplemental privilege logs, exchanged information and communications to render legal services.

13. The predominant purpose of those communications was not for business advice. Rather, it was for the rendition of legal services, in response to possible or actual litigation from the potential temperature excursion. That was the predominate purpose of the LRS department's exchange of information and communications, even where other departments addressed other concerns (such as peer review/quality assurance concerns).

14. I drew on my legal training and applied legal principles when exchanging such information and communications in connection with the potential temperature excursion. Other members of the LRS department did the same.

15. I also drew on my legal training and applied legal principles in directing other Essentia employees and/or agents to act in furtherance of rendition of legal services, as reflected on the supplemental privilege logs. Other members of the LRS department did the same.

**Work Product**

16. Essentia immediately anticipated possible litigation from the potential temperature excursion upon its discovery. As such, its LRS department immediately became involved in the response to the potential temperature excursion, well before this lawsuit was filed in July of 2020.

17. In particular, members of Essentia's LRS department, and those acting at its direction,[1] as identified in supplemental privilege logs, gathered raw factual

---

[1] Essentia's LRS department believed that the work-product doctrine, like the attorney-client privilege, would extend to those acting at the direction of counsel. *See Fair Isaac Corp. v. Experian Info. Sols. Inc.*, No. CV 06-4112 (ADM/JSM), 2008 WL 11348223, at *4 (D. Minn. Nov. 3, 2008), *objections overruled sub nom. Fair Isaac Corp. v. Experian Info. Sols. Inc.*, No. CIV 06-4112 ADM/JSM, 2009 WL 161247 (D. Minn. Jan. 22, 2009) (citing *Maloney v. Sisters of Charity Hosp.* 165 F.R.D. 26, 30 (W.D.N.Y. 1995), to recognize that "statistical information and analysis prepared by [an] employee at [an] attorney's direction" to evaluate potential claims "constituted work product"); *Microsoft Corp. v. Ion Techs. Corp.*, No. CV 05-1935 (JNE/SRN), 2006 WL 8444989 (D. Minn. June 23, 2006) (applying work-product doctrine to documents collected by investigator acting at attorney's direction); *see also United States v. Ary*, 518 F.3d 775 (10th Cir. 2008) (citing *United States v. Nobles*, 422 U.S. 225, 238-39 (1975)) (recognizing work-product protections apply to "materials prepared by an attorney's agent, if the agent acts at the attorney's direction in creating the documents").

information in anticipation of or preparation for litigation related to the potential temperature excursion.

18. For example, members of the LRS department, and those acting at its direction, gathered data regarding the potentially impacted TTSPPs and the potentially impacted patient population to evaluate possible claims.

19. The LRS department gathered, and directed others to gather, such information because of anticipated or actual litigation.

20. In addition, members of the Essentia LRS department, and those acting at its direction, as identified in the supplemental privilege logs, documented the LRS department's mental impressions, conclusions, opinions, and legal theories, because of anticipated or actual litigation.

21. The Court has posed some questions regarding document-creation dates as it relates to the work-product doctrine.

22. First, the Court has observed some instances in which the supplemental privilege logs reflect a document "creation date" that differs from a date referenced in a document itself. The creation date reflected on the supplemental privilege logs is derived from the document's metadata and, therefore, does not reflect later modification dates. As a result, in some cases, that date may differ from a later date typed into a document.

23. Second, the Court observed that some documents identified on the supplemental privilege log predate the potential temperature excursion. In some cases, those documents were later modified and therefore reflect work product created in anticipation of or because of this litigation. In other cases, work product was created in anticipation of or because of other litigation.

**Third-Party Consultants**

24. With respect to the communications with third-party consultants, the LRS department identified legal risks in communications about the potential temperature excursion with both patients, specifically, and the public, generally. Accordingly, given the public and press interest in the potential temperature excursion, the LRS department expressly authorized retention of the consultants to assist in the communications.

25. The consultants acted as the functional equivalent of Essentia employees in assisting with those communications for the LRS department's approval.

26. The LRS department's primary purpose in its involvement with those communications was to render legal services. In particular, the LRS department proposed, reviewed, and approved such communications to ensure they did not

6

raise legal concerns. After the present lawsuit was filed, the LRS department further ensured that such communications were consistent with its litigation position.

27. In addition, the communications and drafts exchanged with the consultants contained the mental impressions and opinions of members of Essentia's LRS department, created because of anticipated or actual litigation.

28. I declare the foregoing is true under the penalty of perjury.


Dated this 2nd day of February, 2023.

Frank M. Modich