THE UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA
EASTERN DIVISION

| | |
|---|---|
| JESSICA KRAFT, individually and as parent of minors L.K., S.K., and O.K.; SHELLI SCHNEIDER, individually and as parent of minors A.S. and W.S.; ANNE BAILEY, individually and as parent of minor D.B.; AMY LAVELLE, individual and as parent of minors Em.L.and El.L.; ELIZABETH BEATON, individually and as parent of minor M.B.; AMANDA AND TYRELL FAUSKE, individually and as parents of minors C.R.F. and C.J.F.; JENNIFER REIN, individually; and JESSICA BERG, individually and as parent of minors A.B. and S.B., individually and on behalf of all others similarly situated, | Case No. 3:20-CV-00121 |
| Plaintiffs, | **ESSENTIA HEALTH'S AND INNOVIS HEALTH, LLC'S REPLY TO PLAINTIFFS' RESPONSE BRIEF REGARDING ESSENTIA'S PEER REVIEW ORGANIZATION STRUCTURE** |
| vs. | |
| ESSENTIA HEALTH, INNOVIS HEALTH, LLC d/b/a ESSENTIA HEALTH, DAKOTA CLINIC PHARMACY, LLC, JOHN DOE MANUFACTURERS, and JOHN DOE DISTRIBUTOR, | |
| Defendants. | |

Defendants Essentia Health and Innovis Health, LLC d/b/a Essentia Health West (collectively, "Essentia"), submit this Reply in order to correct and clarify representations in Plaintiffs' Response Brief Regarding Essentia's Peer Review Organization (Doc. ID No. 232-2). For the reasons stated herein, as well as in previous briefing, Essentia respectfully requests that the Court find it has established that its review organizations meet the statutory definition under Minn. Stat. § 145.61, subd. 5.

Importantly, under Minnesota law a "review organization" is defined as any

> committee whose membership is limited to professionals, administrative staff, and consumer directors, … which is established by one or more of the following: a hospital, a clinic, a nursing home, an ambulance service or first responder service regulated under chapter 144E, one or more state or local associations of professionals, an organization of professionals from a particular area or medical institution, a health maintenance organization as defined in chapter 62D, a community integrated service network as defined in chapter 62N, a nonprofit health service plan corporation as defined in chapter 62C, a preferred provider organization, a professional standards review organization established pursuant to United States Code, title 42, section 1320c-1 et seq., a medical review agent established to meet the requirements of section 256B.04, subdivision 15, the Department of Human Services, or a nonprofit corporation that owns, operates, or is established by one or more of the above referenced entities, to gather and review information relating to the care and treatment of patients for the purposes of [numerous peer review/quality assurance functions].

Minn. Stat. § 145.61, subd. 5 (emphasis added); *see also id.*, subd. 5(a)-(q) (listing peer review/quality assurance functions).    Professionals are defined to include physicians, pharmacists, nurses, in addition to others, and administrative staff encompasses "the staff of a hospital, clinic, nursing home, nonprofit health service plan corporation, or health maintenance organization." *Id*. at subd. 2 and subd. 4a.

Within the confines of this statutory framework, the Court ordered Essentia to "disclose the structure and identify the positions within the asserted structure of those who created and received the documents over which Essentia claims peer review privilege." (Doc. ID No. 225, at 11). To that end, Essentia submitted the Declaration of Frank M. Modich, Associate General Counsel for Essentia, attesting to Essentia's peer review/quality assurance structure as it relates to the various documents identified on Essentia's supplemental privilege logs at issue. (Doc. ID No. 227).

On its face, the Declaration discloses the structure and identifies the positions within the asserted structure as it relates to those individuals who sent and/or received documents

protected by the peer review/quality assurance privilege.  To be sure, as the Declaration evidences, "[w]hen Essentia identified the potential temperature excursion, Essentia established numerous committees…to gather and review information relating to the care and treatment of patients of purposes of numerous peer review/quality assurance functions." *Id*. at ¶ 7.  "In addition, numerous committees that Essentia established before the potential temperature excursion gathered and reviewed information, which is relevant here, for peer review/quality assurance purposes." *Id*. at ¶ 8.  The Declaration goes on to provide specific details regarding numerous committees, including their membership makeup, and also attests to the fact that committee work was delegated to others as the work and requisite skill set demanded.  *See e.g.* Doc. ID No. 227, at ¶¶ 12-17.  At the 30(b)(6) deposition, which was necessarily limited in scope by this Court's Order to "*the structure* of Essentia's review organization," Modich testified consistently.  (Doc. ID No. 225, at 53) (emphasis added).

What is evident, however, upon review of the limited-scope 30(b)(6) deposition transcript and Plaintiffs' Response Brief Regarding Essentia's Peer Review Organization Structure, is that Plaintiffs' argument is one of *application* as opposed to determining whether Essentia sufficiently demonstrated the structure of the asserted review organizations themselves.  The Court authorized Plaintiffs to "request deposition testimony under Rule 30(b)(6) concerning the structure of Essentia's review organization" -- a much more limited inquiry than Plaintiffs intended to undertake.  (Doc. ID No. 225, at 53).  Indeed, Plaintiffs designated much broader topics for the deposition, including "Essentia's assertions of privilege in this action." (*See* Exhibit B to Plaintiffs' Response Brief Regarding Essentia's Peer Review Organization Structure).  As a result, Essentia objected before the deposition, noting that this topic, in particular, sought information that was privileged and beyond that authorized by the

Court's Order.    (*See* Ex. C to Pls.' Response Br. regarding Essentia's Peer Review Organization Structure, Essentia's Objection).

Ultimately, Plaintiffs agreed to limit the deposition's scope to the structure of Essentia's review organizations.    Yet, during the course of the limited-scope 30(b)(6) deposition, Plaintiffs repeatedly attempted to explore privileged information and information beyond Essentia's review organization structure.  In fact, most, if not all, of the areas of inquiry with which Plaintiffs take issue now go to *application* of the asserted privilege, as opposed to the establishment of a review organization structure under Minnesota law.

For example, Plaintiffs inquired about the specific data and information gathered by the review organizations at issue, which, of course, is privileged.  *See* Minn. Stat. § 145.64, subd. 1 ("[D]ata and information acquired by a review organization … shall be held in confidence."). Similarly, Plaintiffs inquired about the review organizations' specific work, which is again privileged and beyond the deposition's authorized scope.  In this regard, many of Plaintiffs' questions were objected to and the deponent was instructed not to answer, a practice which is expressly authorized by Rule 30(c)(3) of the Federal Rules of Civil Procedure.  *See* FED. R. CIV. P. 30(c)(3) (authorizing a person to "instruct a deponent not to answer" when "necessary to preserve a privilege" or "enforce a limitation ordered by the court").  In many ways, Plaintiffs sought to convert a limited-scope deposition authorized by this Court to inquire as to Essentia's review organization structure into a much broader deposition to instead test the designated witness's knowledge regarding the substance of the privileged documents and direct application of the peer review/quality assurance privilege, a task which this Court has indicated is instead to be completed by the appointment of a Special Master.

4

With this context at the forefront, Plaintiffs now suggest Essentia has not established that its review organizations satisfy the statutory definition under Minnesota law.  However, Plaintiffs very clearly conflate Essentia's demonstration of review organizations that meet the statutory definition under Minnesota law with the *application* of the peer review/quality assurance privilege to the documents specifically identified on Essentia's privilege logs.  For example, Plaintiffs requested the deponent to identify on the privilege log, comprised of thousands of entries, specific communications made by specific review organizations.  This inquiry sought information that was neither within the authorized scope of the deposition – the structure of Essentia's review organizations – nor reasonably answerable in that context.

As another example, it is undisputed that the review organizations identified in the Modich Declaration are composed of members who are professionals or administrative staff, which is all that Minn. Stat. § 145.61, subd. 5 requires.  Yet, Plaintiffs repeatedly asked the deponent detailed questions about each member and their role for the various review organizations.  Again, that information has no bearing on whether Essentia's review-organization structure meets Minnesota's statutory definition, such that Plaintiffs' questions served no purpose other than to confuse the issues.

In addition, Plaintiffs spent significant time inquiring as to what delegation was made, by whom, when, and why.  While the peer review/quality assurance privilege under Minnesota law expressly extends to "data and information acquired by a review organization…<u>or by an individual or other entity acting at the direction of a review organization</u>," delegation necessarily assumes the existence of a review organization in the first place.  Minn. Stat. § 145.64, subd. 1 (emphasis added).  In other words, any inquiry regarding delegation informs *application* of the privilege, but does not in any way negate the *existence* of the privilege under

Minnesota law.  Similarly, it is undisputed that the peer review/quality assurance privilege requires that peer review information be held in confidence and disclosed only "to the extent necessary to carry out one or more of the purposes of a review organization." *Id*.  Yet, Plaintiffs suggest Essentia failed to "establish the application or scope of the privilege" based on inquiry regarding delegation to others and dissemination of information consistent with the confines of the peer review/quality assurance statute.  Again, very clearly, Plaintiffs' argument is one of *application* that must necessarily be informed by review of the documents at issue. Put simply, this argument is unrelated to the question presented at this juncture—whether Essentia demonstrated the existence of review organizations as that term is defined under Minnesota law—the answer to which is yes.

Finally, throughout their briefing, Plaintiffs have unleashed a barrage of complaints about Essentia's review-organization structure.[1]  However, it has never been more apparent that Plaintiffs' position regarding the evidence necessary to establish a review organization simply cannot be reconciled with the actual requirements under Minnesota law or the realities of healthcare.  To illustrate, Plaintiffs levy criticism such as that (1) not all of Essentia's review organizations have policies or standards for creation or oversight, (2) Essentia does not "maintain lists" of all review organizations, and (3) Essentia does not have a standard process for "terminating a committee."  (Doc. ID No. 232-2, Pls.' Response Br., at 1-2).  Importantly, however, Minn. Stat. § 145.61, subd. 5, which sets forth the definition of a review organization, does not require any of Plaintiffs' desired procedures.

---

[1] The declaration of named-Plaintiff, Jessica Berg, is immaterial.  (*See* Exhibit E to Pls.' Response Br.).  Berg largely questions committees, to which she was not a member.

In other words, it is evident that Plaintiffs desire a rigid universe in which peer review/quality assurance can only be performed if a specific leader expressly establishes a formal committee, with an official roster, for a very limited purpose, with inflexible meeting and documentation requirements, to end with an explicit conclusion. Simply put, that rigid universe is not required under Minnesota law; nor ought it be when quality assurance in healthcare is at stake. In other words, the rigid universe that Plaintiffs advocate is not how peer review/quality assurance is conducted, and, importantly, that is not how it is defined under Minnesota law. Instead, Plaintiffs seek to impose additional requirements on Essentia as a hurdle to demonstrating the existence of a review organization, requirements that simply are not required and would be inconsistent with the plain language of the peer review/quality assurance privilege under Minnesota law.

As reflected in Minn. Stat. § 141.61, subd. 5, the peer review/quality assurance privilege embraces and protects the information "gather[ed] and review[ed]" by a committee of "professionals" and "administrative staff," established by a healthcare organization, like Essentia, for peer review/quality assurance functions. A committee meets the definition of review organization for purposes of the peer review/quality assurance privilege whether it is established by a specific leader (as Plaintiffs prefer) or the leadership of the healthcare entity in general (as is often the case). A committee meets the definition of review organization for purposes of the peer review/quality assurance privilege whether it has a consistent, official roster (as Plaintiffs prefer) or membership of professionals and administrative staff that evolves according to the groups' needs (as is often the case). A committee meets the definition of review organization for purposes of the peer review/quality assurance privilege when it "gather[s] and review[s] information relating to the care and treatment of patients" for any of

7

the numerous peer review/quality assurance functions recognized by statute.  A committee meets the definition of review organization for purposes of the peer review/quality assurance privilege whether those functions are performed in routine meetings with systematic documentation (as Plaintiffs prefer) or in whatever format is necessary to appropriately respond to developing situations (as is often the case).  Here, the Declaration of Frank M. Modich, as well as the relevant portions of the limited-scope 30(b)(6) deposition transcript, demonstrate that Essentia's review organizations meet the statutory definition as that term is defined in Minn. Stat. § 145.61.

As a red herring, Plaintiffs assert that "[t]he boundaries of Essentia's [review organizations] were drawn with its outside counsel for the purposes of this litigation, not for peer review."  (Doc. ID No. 232-2, *Pls.' Response Br.*, at 1).  That assertion is patently incorrect.  It is belied not only by the declaration of Frank M. Modich, Associate General Counsel for Essentia Health, ("Modich Declaration"), (Doc. ID No. 227), and Essentia's Rule 30(b)(6) testimony, but also by the documents submitted for in-camera review.  It should not be lost on the parties or this Court that in many ways the documents for which Essentia has asserted the peer review/quality assurance privilege inform the analysis.  Indeed, many of the documents themselves demonstrate: (1) the review organizations involved, (2) their purpose, and (3) their members.  (*See, e.g.*, *In Camera Submissions*, EHPRIV000155, 161, 2001).

Although Essentia appreciates that Plaintiffs cannot review the documents at issue, such documents demonstrate and support that Essentia did not *post hoc* manufacture review organizations and members.  This analysis underscores a much larger point and that is that the documents identified on Essentia's privilege logs, together with Modich's Declaration and

limited-scope 30(b)(6) testimony, all evidence review organizations, as that term is defined under Minn. Stat. § 145.61, subd. 5. Essentia, therefore, appreciates the Court's appointment of a Special Master to review the documents for which it has asserted an applicable privilege.

Accordingly, at this juncture, Essentia respectfully requests the Court determine Essentia's asserted review organizations meet the statutory definition and respectfully requests this Court task the Special Master with further review contemplated by the Court's Order Regarding In Camera Review. To that end, the parties would agree to the appointment of Retired Magistrate Judge Karen Klein. Judge Klein has expressed her willingness to serve as Special Master to review documents for a determination of the legitimacy of the assertion of privilege in this case.

Dated this 10th day of April, 2023.

**VOGEL LAW FIRM**

*/s/ Robert B. Stock*
BY:  Angela E. Lord (#05351)
     Robert B. Stock (#05919)
     Briana L. Rummel (#08399)
     MacKenzie L. Hertz (#09392)
     218 NP Avenue
     PO Box 1389
     Fargo, ND  58107-1389
     701.237.6983
     Email:   alord@vogellaw.com
              rstock@vogellaw.com
              brummel@vogellaw.com
              mhertz@vogellaw.com
     ATTORNEYS FOR ESSENTIA HEALTH
     AND INNOVIS HEALTH, LLC

5082980.3