UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA
EASTERN DIVISION

JESSICA KRAFT, individually and as parents of minors, L.K., S.K., and O.K., SHELLI SCHNEIDER, individually and as parent of minors, A.S. and W.S.; ANNE BAILEY, individually and as parent of minor, D.B; AMY LAVELLE, individually and as parent of minors Em.L. and El.L; ELIZABETH BEATON, individually and as parents of minors, C.R.F. and C.J.F.; JENNIFER REIN, individually; and JESSICA BERG, individually and as parent of minors, A.B. and S.B., and on behalf of all others similarly situated,

Plaintiffs,

vs.

ESSENTIA HEALTH, INNOVIS HEALTH, LLC, d/b/a ESSENTIA HEALTH, DAKOTA CLINIC PHARMACY, LLC, JOHN DOE MANUFACTURERS, and JOHN DOE DISTRIBUTOR,

Defendants.

Case No. 3:20-CV-00121

**REPORT AND RECOMMENDATION OF SPECIAL MASTER**

The Court has appointed the Special Master in this matter to conduct an *in camera* review of the documents claimed as privileged by Defendants Essentia Health and Innovis Health, LLC (hereafter "Essentia") in this matter. At the time the Special Master accepted the appointment, she was not aware of the volume of documents claimed to be privileged. It appears Essentia claims privilege to over 8700 documents, entailing over 17,000 pages.

Magistrate Judge Senechal has entered at least five orders relating to Essentia's privilege log. Those orders have criticized the lack of specificity in the log, suggested overbreadth in

Essentia's privilege claims, and have limited the scope of Essentia's peer review/quality assurance privilege claims. Despite several comments by Magistrate Judge Senechal in her orders indicating that Essentia's claims of privilege are overly broad, it appears Essentia has taken no steps to pare down its privilege log in response to the Court's observations. The Magistrate Judge's October 3, 2023 and November 7, 2023 orders both directed Essentia to review the Court's rulings and standards, produce to plaintiffs the documents for which Essentia no longer claims a privilege, and submit the documents for which Essentia continues to assert a privilege to the Special Master for *in camera* review.

To the Special Master's knowledge, Essentia has not narrowed any of its privilege claims in response to the Court's directive, leaving it to the Court and the Special Master to impose a narrower and more appropriate field of privilege through an incredibly laborious *in camera* review process. The Special Master recognizes that Essentia has been ordered to pay for her time in conducting the *in camera* review, but the gargantuan task of reviewing all the listed documents is definitely unappealing. Essentia seems to prefer paying for review by the Special Master to engaging in its own narrowing exercise.

Since her appointment, the Special Master has reviewed several hundred documents, as time has permitted. Reviewing all the documents will take at least several more months, if not longer, and the Special Master is convinced she would see little that is new and different. The Special Master has encountered much repetition in the claimed documents reviewed to date, and most of the documents reviewed do not fit within the parameters of privilege that the Court has outlined in its previous orders. The documents with a valid entitlement to privilege are like proverbial needles in a haystack. Rather than continue to review documents with predictable conclusions and further significant delay, the Special Master elects to make a Report and

2

Recommendation to the Court at this stage to request that Essentia be required to pare down its claims of privilege to cover only those documents that fall within the parameters of privilege that the Court has previously approved.  Alternatively, Essentia should be deemed to have waived its claims of privilege and ordered to produce all the documents to plaintiffs.

The Special Master will now address categories of documents according to the type of privilege claimed by Essentia.

### Physician-Patient Privilege

Essentia has been overly inclusive in its definition of privileged patient information. Many of the documents listed by Essentia as privileged patient records are emails between Essentia employees, often with attached screenshots, about billing/coding questions concerning patients involved in the temperature excursion.  In all but a very few instances, these documents do not contain any identifying information about individual patients.  The few documents that contain patient names, photos, and/or patient numbers do qualify as privileged,[1] although as Magistrate Judge Senechal has already indicated, such documents may be subject to disclosure under the governing qualified protective order.  Even if not subject to disclosure under the qualified protective order, those documents without photos may be subject to production in redacted form with no identifying information.

Essentia's approach in claiming privilege seems to be that any document referring to one or more patients, even anonymously or collectively, is protected patient information.  Often the claim of patient privilege is combined with a claim of work product and quality assurance.   In nearly every instance, none of the three privileges applies to the documents in question.  Essentia

---

[1] See, e.g., EHPRIV000008, 000818, 000871 and 000880.

should be required to pare down its claim of physician-patient privilege/patient identifying information to only those documents that include information identifying a particular patient.

**Third-Party Consultants**

Essentia retained third-party public relations consultants to assist with communications, both external and internal, shortly after the temperature excursion occurred.  The second declaration of Associate General Counsel Frank Modich explains that the consultants served as the "functional equivalent" of Essentia employees with respect to the communications.  He asserts that Essentia's Legal and Regulatory Services ("LRS") Department "proposed, reviewed and approved" communications made by the consultants "to ensure they did not raise legal concerns."  Decl. of Frank Modich, Feb. 2, 2023, Doc. 228, at 6-7.  Modich states the LRS Department's "primary purpose in its involvement with these communications was to render legal services."  Id. at 6.

Magistrate Judge Senechal has addressed the protection of communications with third-party consultants in her January 13, 2023 and October 3, 2023 orders.  The January 13, 2023 order recognized that in order for communications involving a third-party consultant to be protected by attorney-client privilege, the consultant must serve as the "functional equivalent" of employees of the client organization and the retention of the consultant must have been "in furtherance of a legal purpose rather than a business purpose."  Jan. 13, 2023 Order, Doc. 225, at 38, 43.  The October 3, 2023 order noted that Frank Modich's second declaration did address the "functional equivalent" issue, but the Court did not make a finding on the issue and emphasized that "[w]hether any of Essentia's communications with public relations consultants are privileged is dependent on the predominant purpose of the communication."  Oct. 3, 2023 Order, Doc. 242, at 22.

4

The Magistrate Judge indicated that the factors listed in In re Polaris, Inc., 967 N.W.2d 397, 409-11 (Minn. 2021), should be considered in reaching that determination.  Oct. 3, 2023 Order, Doc. 242, at 22.  The Polaris court identified the factors relevant to determine the predominant purpose of a communication to include:

> (1) The purpose of the communication, (2) the content of the communication, (3) the context of the communication, (4) the recipients of the communication, and (5) whether legal advice permeates the document or whether privileged matters can be redacted.

967 N.W.2d at 410.  The burden of proving attorney-client privilege, of course, remains on the the party asserting it.  Id. at 409.

After reviewing a number of documents, the Special Master advised the parties that insufficient detail had been provided regarding the communications with the third-party consultants in order to determine the functional equivalency and predominant purpose inquiries.  Thereafter, Essentia submitted a third declaration of Frank Modich.  In that declaration, Modich states the retention of the third-party consultants was specifically authorized by the LRS Department.  He further states the consultants "served as an extension of the Marketing and Communications Department . . . [and] their retention and work was necessary in furtherance of the rendition of legal services."  Decl. of Frank M. Modich, Feb. 28, 2024, at 2.

The Special Master finds that Essentia has failed to prove its entitlement to attorney-client privilege for any of the communications between the public relations consultants and Essentia employees, including LRS Department employees.  Despite Frank Modich's conclusory statements about the consultants' "furtherance" of legal services, he acknowledges the consultants "served as an extension of the Marketing and Communications Department."  Id. Further, the content of the communications does not appear to be legal in nature.  Rather, the consultants were crafting communications to be sent to patients, Essentia employees, and the

5

Essentia board of directors in an apparent attempt to tamp down potential alarm about the news of the temperature excursion. LRS employees were copied on the drafts, but no legal input or content is apparent. If any legal advice is "reflected" in the communications, as claimed by Mr. Modich, it is well-disguised. While the Special Master finds no basis to quibble with Essentia's claim that the consultants operated as the functional equivalent of Essentia employees, the record does not support a finding that the predominant purpose of the communications to and from the consultants was legal in nature. Instead, the communications appear to be purely efforts to manage the public relations fallout from the temperature excursion, rather than to request or provide legal advice. The communications are not entitled to attorney-client privilege or work product protection.

### Work Product and Attorney-Client Privilege

According to Frank Modich, "[f]rom the time it first identified the potential temperature excursion, Essentia anticipated potential litigation and recognized the need to involve the LRS department." Frank Modich Decl. Feb. 2, 2023, Doc. 225, at 2. Consistent with that representation, Essentia has taken the position that nearly everything its personnel and consultants did or said after discovery of the temperature excursion was discovered anticipated litigation and is entitled to work product protection. The Special Master does not know the volume or nature of documents Essentia has produced to the plaintiffs, but the number and type of documents withheld by Essentia under a claim of work product protection indicates that its definition of work product is grossly over-inclusive.

The same holds true for attorney-client privilege. Those documents seeking or receiving specific legal advice from in-house counsel are entitled to attorney-client privilege, as are communications with outside counsel. However, Essentia personnel routinely included LRS

6

employees on the distribution list of their communications involving the temperature excursion. Essentia claimed a quality assurance privilege along with work product protection and/or attorney-client privilege for many group emails and meeting minutes. The quality assurance privilege applies only if the group involved in the distribution chain was approved by the Court as a peer review committee. Those documents that do not qualify for peer review protection do not necessarily qualify for attorney-client privilege or work product protection simply because LRS personnel were included in the distribution list.

While any mishap that occurs at a health care provider may raise the specter of potential litigation, generalized fear of ultimate litigation does not give rise to a wholesale protection of documents relating to the event as work product. Likewise, inclusion of in-house counsel in the distribution of a document does not necessarily create a confidential attorney-client communication entitled to attorney-client privilege. It is understandable that LRS employees were copied on communications about the temperature excursion. Presumably, if the tone or content of the communication raised legal red flags, the LRS attorneys would have weighed in. Their response or other input appears to have occurred only rarely. To the extent they did weigh in or were specifically asked for legal input, the documents reflecting such communications are entitled to attorney-client privilege and/or work product protection. But, routine inclusion of in-house attorneys on communications that do not appear to seek or receive legal advice or to refer to the potential of litigation does not give rise to attorney-client privilege or work product protection.

For example, many of the meeting notes contained on the privilege log between Documents EHPRIV000154 and EHPRIV000227 are claimed as work product, among other claimed privileges. Document EHPRIV000154 contains meeting notes distributed to the Chief

7

Legal Officer, to Associate General Counsel, and a host of others.  The Special Master finds no reference is made in the document to legal issues or potential litigation, so it does not qualify for either attorney-client privilege or work product protection.  However, documents such as EHPRIV000155 and EHPRIV000156,[2] which are similar in content and distribution to EHPRIV000154, but which do include reference to litigation-related topics and/or legal advice, qualify for work product protection and/or attorney-client privilege, though production with redactions may be appropriate.

The Special Master recommends that Essentia be directed to pare down its claims of work product and attorney-client privilege.  Only those documents that can fairly be said to be seeking or receiving legal advice should be claimed as attorney-client privileged, and only those documents addressing expected or actual litigation are entitled to work product protection.  Essentia should keep in mind that a claim of work product may be overcome by demonstrated need for the documents.  Plaintiffs may have no source of information about the temperature excursion other than Essentia's records.  Consequently, work product documents that do not also qualify for attorney-client privilege or peer review protection may potentially be susceptible to production based on plaintiffs' need.

**Peer Review/Quality Assurance**

The Magistrate Judge has ruled that Minnesota law applies to the peer review issue.  The Court rejected Essentia's position that the entire Essentia system is a peer review organization, and it held that under Minnesota law only specific committees maintained for peer review purposes will qualify for the privilege.  After the Court issued its ruling on choice of law, Essentia submitted an affidavit of Frank Modich identifying the committees it maintains.  The

---

[2] See also EHPRIV000178, 000181, 000197, 000199, 000211, 000214, 000219, 000222, 000223, 000224, 000225, 000226 and 000227.

Court then found only four of those committees qualify as peer review organizations: Patient Relations and Risk Management Committee, Essentia System Quality Committee, Essentia Clinical Practice Committee, and Clinical Alerts Subgroup.

When the Special Master began her review of the claimed privileged documents, none of the peer review/quality assurance claims listed on Essentia's privilege log identified a particular committee. That lack of identification was consistent with Essentia's position, rejected by the Magistrate Judge, that the entire Essentia organization is a peer review organization. Essentia had not modified its privilege log to remove documents it had claimed as peer review/quality assurance protected that were not derived from one of the four approved committees, and it had not specified which claimed peer review documents relate to which committee.

In order to ferret out the peer review/quality assurance claims by Essentia that do not qualify for protection, the Special Master met with counsel and requested that Essentia update its privilege log to identify those documents related to the committees the Court found to qualify for peer review/quality assurance protection. Essentia did so, and the resulting updates show that most of the documents for which Essentia asserts a peer review/quality assurance privilege are not related to the committees the Court has found to qualify for the protection.

The documents identified as originating from or on behalf of the four approved peer review committees do not, for the most part, seem topically distinguishable from other documents that do not relate to those committees. Nevertheless, at this time the Special Master recommends that the Court accept Essentia's claim of privilege as to documents listed for the approved peer review committees, with one exception. The Magistrate Judge accepted the Patient Relations and Risk Management Committee as a peer review organization, but she did not accept the Subcommittee of Patient Relations and Risk Management Committee as meeting

9

the statutory requirements for a peer review committee, since it was organized specifically in response to the temperature excursion. It is not clear whether Essentia's claim of privilege for the Subcommittee of Patient Relations and Risk Management is still included in its listing of documents attributable to the Patient Relations and Risk Management Committee.

Essentia should now be directed to revise its privilege log to eliminate any claim of peer review/quality assurance privilege for any committee other than the four the Magistrate Judge has approved. The revisions should also clarify that any Patient Relations and Risk Management Committee documents claimed as privileged do not include documents attributable to the Subcommittee of Patient Relations and Risk Management, which was not approved by the Court as a qualifying peer review committee. Any documents with a claim of quality assurance privilege that are not attributable to one of the four approved peer review committees should be produced to plaintiffs.

### Conclusion and Recommendation

Due to the overwhelming size of Essentia's privilege log and the demonstrated overinclusiveness of its claims of privilege, **IT IS RECOMMENDED** that Essentia be required to submit a new privilege log that eliminates the overinclusive listing in all categories. This would require no more than the Court has already directed Essentia to do, although the Special Master recognizes it will take some time for Essentia to legitimately complete this task. While this recommendation applies to every type of privilege claimed by Essentia, **IT IS RECOMMENDED** in particular that Essentia be required to eliminate all peer review/quality assurance privilege claims that are not attributable to one of the four peer review committees approved by the Court. Further, Essentia should be required to clarify that it no longer claims a

10

privilege for documents relating to the Subcommittee of Patient Relations and Risk Management.

**IT IS FURTHER RECOMMENDED** that to the extent Essentia no longer claims a privilege to documents previously listed on its log, Essentia be required to produce those documents to the plaintiffs.

Once plaintiffs have had an opportunity to review the produced documents and review the revised privilege log, **IT IS FURTHER RECOMMENDED** that plaintiffs be required to advise Essentia to what extent they still challenge Essentia's claims of privilege. If the parties are unable in good faith to resolve the privilege issues at that point, plaintiffs should so advise the Court. At that point a determination can be made whether further *in camera* review by the Special Master is necessary.

Dated: July 9, 2024.

Karen Klein
Special Master

11