# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

Case No. 3:20-cv-00121

Jessica Kraft, et al.,                )
                                      )
                    Plaintiffs,       )
                                      )
        vs.                           )
                                      )
Essentia Health, et al.,              )
                                      )
                    Defendants.       )
_____

TRANSCRIPT OF DIGITAL RECORDING

OF

TELEPHONIC STATUS CONFERENCE

Taken at:
Quentin N. Burdick U.S. Courthouse
655 First Avenue North
Fargo, North Dakota 58102

October 4, 2024

BEFORE THE HONORABLE ALICE R. SENECHAL
UNITED STATES DISTRICT COURT MAGISTRATE JUDGE

Carolyn Taylor Pekas, RPR
655 First Avenue North
Fargo, ND 58102
701-297-7013
Proceedings recorded by digital recording.
Transcript produced by computer-aided transcription.

2

                    A P P E A R A N C E S

         FOR THE PLAINTIFFS:
            Elizabeth A. Fegan, Esq.
            Mike von Klemperer, Esq.
            FEGAN SCOTT LLC
            150 South Wacker Drive, 24th Floor
            Chicago, Illinois 60606
            312.741.1019
            beth@feganscott.com
            mike@feganscott.com

            J. Barton Goplerud, Esq.
            SHINDLER, ANDERSON, GOPLERUD & WEESE P.C.
            5015 Grand Ridge Drive, Suite 100
            West Des Moines, Iowa 50265
            515.223.4567
            goplerud@sagwlaw.com


         FOR THE DEFENDANTS
            Bryce D. Riddle, Esq.
            BASSFORD REMELE
            100 South Fifth Street, Suite 1500
            Minneapolis, Minnesota 55402.
            612.376.1624
            briddle@bassford.com


                            -  -  -

Certificate of Transcriber:   Page 16

(The above-entitled matter came before the Court, the Honorable Alice R. Senechal, United States District Court Magistrate Judge, presiding, commencing at approximately 10:00 a.m., Friday, October 4, 2024, with all parties appearing telephonically.  The following telephonic proceedings were had and made of record by digital recording:)

THE COURT:  This is Judge Senechal.  You are on a speakerphone in my chambers, and we are recording the conference.

Sarah Lien from the clerk's office is here.  My law clerk, Claire Thompson, is here as well.

Today is October 4, 2024.

The case number is 3:20-cv-121.

Who's on the line for the Plaintiffs this morning, please?

MS. FEGAN:  Good morning, Your Honor.  This is Elizabeth Fegan for Plaintiffs.

THE COURT:  Thank you.

Anyone else for Plaintiffs?

MR. GOPLERUD:  Good morning, Your Honor.  Bart Goplerud is also present.

THE COURT:  Anyone else?

MR. VON KLEMPERER:  Good morning, Your Honor.  Mike von Klemperer for the Plaintiffs.

THE COURT:  Anyone else?

(No audible response.)

THE COURT:  And how about for Defendants?

MR. RIDDLE:  Good morning, Your Honor.  Bryce Riddle on behalf of Defendants, and I'm the only one on our side that will be joining this morning.

THE COURT:  All right.  Well, thank you.

I know that during our conference on September 13 I said I would be getting you a written order, and other cases have intervened, and that hasn't quite happened, but I will try to get that done very soon after this conference today.

But, Mr. Riddle, perhaps you could start by summarizing what's happened as far as document production subsequent to that September 13th conference.

MR. RIDDLE:  Certainly, Your Honor.  In the last week, we have produced approximately 2,100 documents.  Our team is currently in the process of reviewing and producing the remainder of that.  That is approximately 50 percent of the documents that were at issue pursuant to the Special Master's report and recommendation for the documents that were withheld on the basis of privilege.

I will also note that last week the parties met and conferred with regards to a couple of issues that had arisen at the September 13th status conference.  During that time, we spoke about three main issues, which were decoupling parents and children documents, redacting date and month of service,

and redacting MRNs.

Briefly, to touch upon the -- the parties were in agreement and came to an agreement with regards to decoupling. The Plaintiffs -- excuse me.  The Defendants will not be decoupling any of the documents, and we will be preserving the parent-child relationship going forward, so we were able to come to an agreement there.

Then we also had discussions with regards to the date and month of service redactions and the MRN redactions.  We had told Plaintiffs' counsel that we would take this back to our side and figure out what was possible and whether anything could be done there, and I can represent to the Court that we did go back to our ESI vendor to discuss the feasibility as to overlaying unique identifiers with respect to MRNs, and we were told that that isn't something that they could do.  They don't really have the capability to do so.  So we are still somewhat unable to figure out a way forward absent remaining -- or keeping everything redacted as it should be pursuant to HIPAA.

I will let Plaintiffs chime in here at this point, but that is the general update with regards to production efforts since our last status conference.

THE COURT:  And how about redaction of dates of service?

MR. RIDDLE:  We haven't come to an agreement there, Your Honor.  We -- the Defendants really don't believe that

this is something that is going to really help Plaintiffs in any way.  There's -- the basic issue with this is that we don't think it's going to enable Plaintiffs to identify particular vaccination or medication being stored at a DCP location on a particular date or that it was stored at a particular temperature, so we still would like to leave those date and month of services redacted at this time given that we don't think that this -- it's really going to move the ball one way or the other in this case.

THE COURT:  Thank you.

Who would like to speak for Plaintiffs?

MS. FEGAN:  Thank you, Your Honor.  This is Elizabeth Fegan.

We did have a good meet and confer.  Mr. Riddle is correct that -- that we came to an agreement that -- that parent-child relationships would remain and -- and documents would not be decoupled.

With respect to the redaction of time and date, we ask that -- first of all, we think that it should be produced, but second of all, we asked whether Essentia was going to raise any time-based defenses either to class certification or on the merits, because that would obviously inform our position as to -- well, it would inform our position as to whether we would, you know, further press that that date and time be produced.

I do think that it's relevant in two ways.  First, as -- as we noted last time, it's relevant if they're going to say that particular time, you know, there wasn't a temperature excursion or particular medications were not affected.  It's important for us to be able to tie those back.  But second of all, it's relevant to the overall story that we will present either at classification and/or at trial in terms of the communications that were being made to patients at particular times, you know, and -- and being able to tie those to -- to the records of -- of when people were receiving the medications or seeing their physicians.

So we continue to think that there's no basis to redact time and date.  We don't understand why a protective order wouldn't otherwise protect that information.

With respect to not replacing the medical record numbers with other anonymized numbers, we asked for exemplars of what Essentia was referring to, because they continue to claim that they don't think it's -- it's relevant or that we'd be able to tie what it is that they're producing to -- to either data or other information.

There -- there was the production made.  I don't know if exemplars are in there.  I was -- I was hopeful that those exemplars would come, you know, by email or in our discussions directly so that we could further our meet and confer.

My understanding is that the reason that the other

mitigation-based numbers are not possible is because the Defendant is taking screenshots of information from a database as it comes to producing the database information, but again, without those exemplars, it's very difficult for us to see or understand why this is not possible.

And, again, it may be, at the end of the day, both in terms of the class certification and trial, we want to be able to demonstrate for a particular class member, who's otherwise anonymized, but that we can see their information or track their records through, with a litigation number, you know, the story and the trajectory and use those exemplars to show that -- that -- what was happening with -- with class members.

So, again, it's -- it's difficult -- since our last conversation, these two issues are -- are -- remain in Essentia's lap, so to speak, that they make suggestions in order to -- to move this issue forward, but we're still -- we have -- we have not moved them further forward than that.

THE COURT:  Can you confirm, Ms. Fegan, that from Plaintiffs' standpoint the decoupling issue has been addressed satisfactorily?

MS. FEGAN:  Yes.  Based on Defendants' representations and -- obviously, subject to our review, but based on the representations of Essentia, that has been resolved.

THE COURT:  Thank you.

9

Mr. Riddle --

MR. RIDDLE:  And if I can respond to that, Your Honor?

THE COURT:  Yes, please respond, but I just want to make sure I understand if you know --

MR. RIDDLE:  Sure.

THE COURT:  -- at this point how many documents --

MR. RIDDLE:  (Indiscernible.)

THE COURT:  Just a minute, please.

MR. RIDDLE:  Go ahead.  I'm sorry, Your Honor.

THE COURT:  Do you know how many documents will still be claimed as privileged?

MR. RIDDLE:  Not at this time, Your Honor.  The lion's share of what is remaining is attorney-client and work product designations, which we are currently working through.

It's difficult to tell what will be withheld in that, and that's where I expect most of any documents would still maintain privilege -- or we would claim privilege over.

What I can say is the overwhelming majority if not all of the medical patient privileged documents, for example, have been produced in redacted form, but they are being produced at this point, so I can't really answer that at this point as to what will continue to be withheld as privileged.

THE COURT:  So it's too early to know whether we might be looking to have the Special Master do additional work?

MR. RIDDLE: At this point, I would agree with that.

THE COURT: Okay. Then why don't you go ahead and respond regarding the medical record issues, Mr. Riddle.

MR. RIDDLE: Okay. So just to put kind of a -- a finer point and also eliminate any broader issue here, as Plaintiffs know, the temperature logs that have been provided to Plaintiffs weren't necessarily complete; and because they weren't complete, there is no real way for Essentia to definitively say that any of the stored products were maintained in the proper temperature zone or whether or even if a temperature excursion occurred.

On top of that, we don't really know what DCP products were stored in those affected refrigerators during particular periods of time and then provided to Essentia for administration.

Now, on top of that, Essentia wasn't necessarily scanning these DCP products at the time of administration, so there's no way to connect the administration of a particular medication that was stored in a DCP refrigerator to a particular patient at a given date or time; and because of this, we don't think that providing the month or date of service is going to add anything because there's no way to use that data to tie it to any of the affected products in the first place.

Now, on top of that, you know, this is -- the

information they're seeking here is PHI that is protected by HIPAA; and because of that, we're not willing to just voluntarily give up this information.

With regards to the MRN issue, Beth, I'm happy to get you some exemplars, but I can tell you that I -- I think you're going to agree that they're -- it's not as big of an issue here as what you guys are probably thinking.

Now, I can say we did produce these documents rather than giving you exemplars simply because after speaking with our ESI vendor, it wasn't feasible.  We were told it wasn't feasible, and there's really no way for us to go forward in providing overlays that would track a specific MRN across the entire production volume or amount of discovery and documents.

So in light of that, you know, if -- if this was something that was possible and that was workable, we would have come back to you and had further discussions, but we are kind of in a situation here where the discovery line -- the deadline -- substantial completion deadline, excuse me, is coming up, and we wanted to get this to you as soon as possible, so we did produce what we had and what we had reviewed in light of the fact that we were told this isn't feasible.

You know, similarly, because of that issue with the DCP tents (phonetic), we -- we don't think that providing those MRNs is going to advance anything as well, and it would really

just come at a great cost for Essentia to explore other avenues to do so given that we already have an ESI vendor in place and everything is housed in their -- their programs.

So for those reasons, you know, we don't really think that this moves the needle with providing that information; and coupled with the fact that it's HIPAA protected, we would -- we prefer to keep it protected and redacting as we have -- we've done so far.

THE COURT:  Ms. Fegan?

MS. FEGAN:  Yes.

THE COURT:  What -- what would you like to see happen next?  Are you looking for involvement from the Court at this point, or are you anticipating further discussion with defense counsel?  Tell me what you --

MS. FEGAN:  I guess I --

THE COURT:  -- believe is needing to happen next.

MS. FEGAN:  Twofold, Your Honor.  With respect to the redaction of time and date, I don't think it's -- you know, neither Mr. Riddle nor Essentia has -- has agreed that they will not raise any date-based or time-based defenses; and based on that, Your Honor, and pursuant to HIPAA, we -- we do ask that the Court enter an order compelling the Defendant to not redact or to disclose the times and dates of service.

With respect to the medical record numbers, we will look at the production that was made and come back to the

Court.  I would like to leave that open.

I -- I will note, I think as I did last time, that any expense here that's been incurred is because Essentia didn't consult with us on this issue up front, and this has, in every medical case or pharmaceutical case I've ever been in, never been an issue.  So the fact that Essentia chose to do it and chose to do it again after consulting with us and us asking for an exemplar before they went through the process of doing this is not a reason alone not to -- not to produce this information, but -- but we will look at what has been produced and come back to the Court on that issue.

THE COURT:  Mr. Riddle, can you respond as to the time-based defense question?

MR. RIDDLE:  Well, for the reasons that we previously -- that I -- that I had also just stated, we would seek an order that denies that because this really doesn't move the needle one way or the other.

Essentia preserves all rights to raise any defense applicable and available to it in this lawsuit, and, you know, we just -- we just really don't see the relevance or the necessity of providing this information in light of the facts of this case.  There's no way to tie date and time to a specific medication or vaccination that was stored in a DCP fridge at a particular date or time, so this really doesn't assist Plaintiffs one way or the other with obtaining that

information.

THE COURT:  Okay.  I think that I would like to see some very brief briefs to address the issue before I issue an order.  I understand Plaintiffs take the position that the things that are now in question are addressed by the protective order, but I want to take some time to look at that protective order more closely and to consider the issues a bit more thoroughly.

So I would like to see briefs filed in as short a time period as possible, and I think, from what I've heard so far, it would be most logical for Plaintiffs to do the opening brief.

Ms. Fegan, would you agree with that?

MS. FEGAN:  Yes, Your Honor.  Thank you.

THE COURT:  And how soon could you get that done?

MS. FEGAN:  Is seven days okay with the Court?  Next Friday?

THE COURT:  Next Friday, the 11th?  Certainly.

And how long would Defendants want to respond?

MR. RIDDLE:  We would request an equal amount of time to respond, Your Honor, so would an additional seven days, so the 18th, be acceptable?

THE COURT:  Yes.

Then what else needs attention?

Ms. Fegan, what else needs attention this morning?

MS. FEGAN:  I think that that is it, Your Honor.

THE COURT:  Mr. Riddle?

MR. RIDDLE:  I would agree with that, Your Honor.

THE COURT:  Okay.  Well, there's progress.  That's good to hear.

Does anyone else want to raise anything today?

(No audible response.)

THE COURT:  I will plan to get an order out just as soon as I can after October 18th; and if there's need to set another status conference, then we'll do that.

I thank you all.  We can adjourn.

MS. FEGAN:  Thank you, Your Honor.

THE COURT:  You're welcome.

MR. RIDDLE:  Thank you, Your Honor.

(End of recording.)

16

COURT REPORTER'S CERTIFICATE

I hereby certify that I transcribed the preceding fifteen (15) pages from a digital recording made at the time and place herein indicated to the best of my ability;

That I was not present at the time said recording was prepared;

That I have broken the transcript into separate conversations to the best of my ability.

__/s/ Carolyn Taylor Pekas_____
Carolyn Taylor Pekas, RPR

Dated this 9th day of October, 2024.