**feganscott**

**FeganScott LLC**
ATTORNEYS AT LAW
1763 Columbia RD NW, Ste.100
Washington, DC 20009
PHONE   202.921.0002
FAX     312.264.0100
mike@feganscott.com

April 18, 2025

<u>**VIA EMAIL**</u>
The Honorable Alice R. Senechal
United States District Court for the District of North Dakota
NDD_J-Senechal@ndd.uscourts.gov

Re: *Kraft, et al. v. Essentia Health, et al.,* No. 20-cv-121; Plaintiffs' Position Statement

Dear Magistrate Judge Senechal:

Plaintiffs respectfully submit this statement in advance of the April 21, 2025 status conference.

### 1. <u>Background</u>

Plaintiffs served Essentia with a Rule 30(b)(6) deposition notice on March 24, 2025, designating 20 topics for inquiry. **Ex. A** (Notice). The parties engaged in a lengthy meet and confer by video conference on April 2, and then exchanged several letters and emails. **Ex. B** (Essentia Apr. 8 Ltr.); **Ex. C** (Pls.' Apr. 10 Ltr.); **Ex. D** (Pl.'s Apr. 11 Email); **Ex. E** (Essentia Apr. 14 Ltr.).

As reflected in the correspondence, Plaintiffs clarified, narrowed, or entirely withdrew several topics. For instance, Topic 1(a) calls for testimony about "documentation reflecting the [Temperature] Excursion" at issue in the case. **Ex. A** at 5. Plaintiffs clarified that this topic seeks testimony concerning the refrigerator temperature logs and "any other formal documentation of the excursion, e.g., an internal investigative report or a report to a federal or state health agency." **Ex. C** at 1. Plaintiffs clarified the scope and relevance of Topics 1(c), 1(d), 1(i), 1(k), 1(l), 2, 4, 8, and 11-19. **Ex. C**. Plaintiffs entirely withdrew Topics 5-7 and 20. **Ex. C** at 4; **Ex. D**.

For its part, Essentia has designated five individuals to address a subset of the noticed topics. **Ex. E** at 1-2. They are scheduled to testify on April 23-24 and May 1. However, despite Plaintiffs' efforts to clarify, narrow, and withdraw certain topics, on April 14, Essentia informed Plaintiffs it would not designate a witness to address a wide range of topics: "the following topics remain in dispute: 1(c); 1(d); 1(i); 1(k); 1(l) to the extent it goes beyond topic 1(a) above; 2; 8; 11; 12; 13 as it relates to Dakota Clinic Pharmacy ("DCP") or goes beyond communications in response to the potential temperature excursion; 14; 15; 16; 17; and 18." **Ex. E** at 2.

### 2. <u>Legal Standard</u>

As this Court has already held, "[a] discovery request is relevant unless the information sought can have no possible bearing on the claims or defenses of the case." ECF No. 277, at 3 (Discovery Order) (quoting *Lynch v. Experian Info. Sols., Inc.*, 569 F. Supp. 3d 959, 963 (D. Minn. 2021)).

"A Rule 30(b)(6) deposition serves a unique function—it is the sworn corporate admission that is binding on the corporation." *Murphy v. Kmart Corp.*, 255 F.R.D. 497, 506 (D.S.D. 2009).

**FeganScott.com**



Indeed, it is the "favored" method of obtaining information from a corporation and ensures the corporation's position "can be fully and fairly explored." *Id.* at 506-07. The failure to present an adequately prepared witness constitutes a failure to appear under Rule 37(d)(1)(A)(i) and may subject the receiving entity to sanctions under Rule 37(d)(3). *See Cooley v. Target Corp.*, No. 20-cv-2152 (DWF/DTS), 2021 U.S. Dist. LEXIS 253610, at *11 (D. Minn. Sept. 17, 2021). "[T]he failure to produce a prepared witness 'is not excused on the ground that the discovery sought was objectionable, unless the party failing to act has a pending motion for a protective order under Rule 26(c).'" *Id.* (quoting Fed. R. Civ. P. 37(d)(2)). A protective order is appropriate only for "good cause," which requires "showing that disclosure will work a clearly defined and serious injury to the party seeking disclosure." *Murphy*, 255 F.R.D. at 502 (D.S.D. 2009). Moreover, "the injury must be shown with specificity." *Id.*

### 3. <u>Argument</u>

"It is not up to [Essentia] to determine what discovery [Plaintiffs] need[]." *Id.* at 507. Yet that is exactly what Essentia is attempting to do, hamstringing Plaintiffs by permitting questioning only on topics it unilaterally deems relevant and that comport with its own theories and view of the case. Blaming others for the temperature excursion has emerged as one of Essentia's core defenses in this case. *See* **Ex. C** at 2 (discussing the relevance of certain topics in light of Essentia's "blame-DCP" defense). Plaintiffs are entitled to probe this theory, particularly given, e.g., (a) Essentia's legal obligation to ensure medications are properly stored; (b) Essentia's 49% ownership stake (the largest membership stake) in DCP and its role in management; (c) Essentia's provision of staff to DCP; (d) Essentia's possession of the refrigerators in question; and (e) DCP has publicly identified as an Essentia-affiliated pharmacy. *See e.g.*, **Ex. J** (EH000120).

**Topics 1(k) and (l)** inquire into the refrigerators involved in the excursions at issue and the logs used to manually monitor their temperatures. These topics directly relate to the circumstances of the excursions at issue. Yet, incredibly, Essentia refuses to designate a witness for these topics, arguing that only DCP can address these issues because they are to blame for the excursions. However, its attempt to blame DCP is precisely what makes these topics essential. Similarly important, **Topic 1(i)** seeks to determine if Essentia blames anyone else beyond Dakota Pharmacy. Yet Essentia refuses to designate a witness to address this essential topic as well.

Essentia likewise refuses to designate witnesses for **Topics 1(c), 1(d), 2, 8 and 14** on the same basis. **Topic 1(c) and Topic 8** inquire into Essentia's policies related to the storage and monitoring of temperature-sensitive medications. **Topic 2** seeks testimony on prior temperature excursions at Essentia, including the prior excursion discussed in paragraphs 200-204 after which Essentia purportedly "put measures in place so this does not occur again." **Topic 14** inquires into Essentia's actions after the excursion—expressly in response to the temperature excursion at issue here, Essentia appears to have overhauled its entire refrigeration infrastructure and practices. *See* **Ex. C** at 3 (citing evidence that the overhaul was prompted by the DCP excursion); **Ex. F** at 1



(EH025946). This overhaul also considered the availability and use of automated temperature monitoring equipment, addressed in **Topic 1(d)**. *See* **Ex. F** at 3-4.

Essentia's understanding of appropriate medication storage and monitoring practices, its policies regarding the same, and any attempts to implement or change those procedures as excursions were discovered are relevant to a host of issues in this case. These include, for example, Plaintiffs' negligence claim (the standard of care and Essentia's duty to Plaintiffs), Plaintiffs' consumer protection claims, which allege that Essentia engaged in unfair, deceptive, fraudulent, and unconscionable trade practices, and the damage to the Plaintiffs for receiving adulterated medications. Put simply, Essentia's argument that these topics may only be presented to DCP, not only entirely ignores their close relationship and Essentia's duty to ensure the safety of its products, but it also assumes that only facts that support its own theories and defenses are discoverable.

**Topics 11-13** inquire into Essentia's representations to patients and marketing about the safety and efficacy of the affected medications. These topics go directly to Plaintiffs' breach of warranty and consumer protection claims. Plaintiffs have served RFPs for related documents (**Ex. G** at RFPs 22-30) and are awaiting Essentia's responses. Plaintiffs proposed deferring these topics until Essentia completes its production of responsive documents, **Ex. C** at 3, but Essentia has, instead, simply refused to designate a witness.

**Topics 15-17** are straightforward: Plaintiffs simply seek to establish that Essentia's interrogatory responses are full and complete, and determine where responsive information, such as the list of Affected Medications provided in response to Interrogatory No. 3, came from. *See* **Ex. H** at 2-5. Similarly straightforward, **Topic 18** seeks to flesh out the highly generic descriptions of the witnesses Essentia identified in its initial disclosures, so that Plaintiffs can understand the role of each in the temperature excursion (including Essentia's response to the excursion). *See* **Ex. I** at 2-4. Courts have recognized these are appropriate topics for a 30(b)(6) deposition. *See Pflughoeft v. Kan. & Okla. R.R., L.L.C.*, No. 22-1177-TC-RES, 2023 U.S. Dist. LEXIS 155807, at *38 (D. Kan. Sept. 1, 2023) ("The [Rule 30(b)(6)] deposition testimony will allow Plaintiff to clarify or otherwise probe Defendants' interrogatory responses.").

### 4. <u>Conclusion</u>

For the foregoing reasons, Plaintiffs respectfully request that Essentia be ordered to produce a witness or witnesses to address the disputed topics.

Respectfully,

*[signature]*

Michael von Klemperer
Of Counsel