# EXHIBIT A

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| JESSICA KRAFT, INDIVIDUALLY AND AS PARENT OF MINORS L.K., S.K., and O.K.; SHELLI SCHNEIDER, INDIVIDUALLY AND AS PARENT OF MINORS A.S. and W.S.; ANNE BAILEY, AS PARENT OF MINOR D.B.; AMY LAVELLE, AS PARENT OF MINORS Em.L. and El.L.; ELIZABETH BEATON, INDIVIDUALLY AND AS PARENT OF MINOR M.B.; AMANDA AND TYRELL FAUSKE, INDIVIDUALLY AND AS PARENTS OF MINORS C.R.F.  and C.J.F.; JENNIFER REIN, INDIVIDUALLY; and JESSICA BERG, AS PARENT OF MINORS A.B. and S.B., individually and on behalf of all others similarly situated, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 3:20-CV-121 <br><br> District Judge Peter D. Welte <br> Magistrate Judge Alice R. Senechal |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| ESSENTIA HEALTH, INNOVIS HEALTH, LLC d/b/a ESSENTIA HEALTH, JOHN DOE MANUFACTURERS, and JOHN DOE DISTRIBUTOR, | ) ) ) ) ) ) | |
| Defendants. | ) ) ) ) | |

## PLAINTIFFS' NOTICE OF DEPOSITION TO ESSENTIA HEALTH PURSUANT FED. R. CIV. P. 30(B)(6)

PLEASE TAKE NOTICE that pursuant to Federal Rules of Civil Procedure 30(b)(1) and 30(b)(6), Plaintiffs, by and through their undersigned attorneys, will take the oral videotaped deposition of Defendant Essentia Health regarding the topics set forth in Appendix A below.

The deposition will take place at the following time and place and shall continue until completed:

**Deponent:** Essentia Health via corporate representative(s)

**Date:** April 9, 2025 (or as otherwise mutually agreed)

**Location:** Duluth, Minnesota (or as otherwise mutually agreed)

**Time:** 9:30 a.m. Central Time until completed

The deposition shall be recorded by stenographic and audiovisual means and taken before a person authorized by law to administer oaths, pursuant to Fed. R. Civ. P. 28, unless otherwise agreed by the parties.

Plaintiffs request that Essentia give Plaintiffs prompt written notification of the name, address, telephone number, and job title of the person(s) so designated to testify and the matters on which the person(s) will testify.

Dated: March 24, 2025

Respectfully served,

By: /s/ *Michael von Klemperer*
Michael von Klemperer
Ashali P. Chimata
FEGAN SCOTT LLC
1763 Columbia Road NW
Suite 100
Washington, D.C. 20009
Ph: 202.921.0002
Fax: 312.264.0100
mike@feganscott.com
ashali@feganscott.com

Elizabeth A. Fegan
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
Ph: 312.741.1019
Fax: 312.264.0100
beth@feganscott.com

Scott Haider (#07533)
SCHNEIDER LAW FIRM
815 3rd Ave. S.
Fargo, ND 58103
Ph: 701-235-4481
Fax: 701-235-1107
scott@schneiderlawfirm.com

J. Barton Goplerud
Brian Marty
SHINDLER, ANDERSON,
GOPLERUD & WEESE, PC
5015 Grand Ridge Drive, Suite 100
West Des Moines, Iowa 50265
Ph: (515) 223-4567
Fax: (515) 223-8887
goplerud@sagwlaw.com
marty@sagwlaw.com

*Attorneys for Plaintiffs*

3

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing was served via email, on March 24, 2025, to the following, Counsel for Defendants:

Angela E. Lord
Briana L. Rummel
VOGEL LAW FIRM
218 NP Ave.
PO Box 1389
Fargo, ND 58107-1389
Ph: 701.237.6983
alord@vogellaw.com
brummel@vogellaw.com

Christopher R. Morris
Bryce D. Riddle
Bassford Remele, P.A.
100 South 5th St., Suite 1500
Minneapolis, MN 55402
Ph: 612.333.3000
cmorris@bassford.com
briddle@bassford.com

*Attorneys for Defendants Essentia Health and Innovis Health, LLC*

*/s/ Michael von Klemperer*
Michael von Klemperer

4

## <u>APPENDIX A</u>
## DEFINITIONS

1. To the extent not otherwise defined, all terms should be given their commonsense definitions and interpretations.

2. "Affected Medications" means the TTSPPs subject to the Temperature Excursion.

3. "Essentia", "You," and "Your," means Essentia Health and Innovis Health LLC d/b/a Essentia.

4. "Innovis" means Innovis Health LLC d/b/a Essentia.

5. "Temperature Excursion" and "Excursion" means the Temperature Excursion at Dakota publicly disclosed by Essentia in or about April 2020.

6. "TTSPP" means a time and temperature sensitive pharmaceutical product.

## DEPOSITION TOPICS

1. The Temperature Excursion, including:

   a. Any documentation reflecting the Excursion,

   b. The notification(s) Essentia sent to patients about the Excursion, including how Essentia determined who would receive a notification,

   c. Policies and practices regarding temperature monitoring,

   d. The availability of automated temperature monitoring systems whether utilized or not,

   e. How and when Essentia learned of the Excursion,

   f. Dakota Clinic Pharmacy's role in and responsibility for the Excursion,

   g. Essentia's role in and responsibility for the Excursion, including its oversight of Dakota Clinic Pharmacy,

   h. Innovis's role in and responsibility for the Excursion, including its oversight of Dakota Clinic Pharmacy,

   i. Any other entity's role in and responsibility for the Excursion,

j.  Essentia's response to the Excursion, including what steps were taken, who the key decision makers were regarding that response, the decision(s) to offer patients refunds, revaccination, or neither, and what documents exists regarding that response,

k.  The refrigerators involved, including their purchase, breakdown, and maintenance request history,

l.  The refrigerator temperature logs, including the obligation to keep accurate logs,

m. The Affected Medications, including any documentation regarding the Affected Medications,

n.  The patients who received an Affected Medication, including any documentation reflecting the identity and number of patients who received an Affected Medication,

o.  Essentia's claim that not all patients who received notification of the Temperature Excursion received a medication that was actually subject to a temperature exclusion, including any documents related to this claim.

2.  Any prior temperature excursions at Essentia facilities, including but not limited to the excursion discussed in paragraphs 200-204 of the Second Amended Complaint, and the "measures" Essentia allegedly put in place "so this does not occur again," after that excursion.

3.  Any and all data in Essentia's possession, custody, or control, whether or not produced, reflecting:

a.  Essentia's ability to track the Affected Medications from receipt to administration, including its storage in a refrigerator involved in the Temperature Excursion, and Essentia's ability to determine which patients received a particular dose of the Affected Medications stored in one of these refrigerators,

b.  The amount paid by or on behalf of all Plaintiffs and Class Members for the Affected Medications,

c.  The amount Essentia, Innovis, and/or Dakota Clinic Pharmacy paid by for the Affected Medications, and the entities they paid,

d.  Any contract, invoice, or other documentation that identifies the price Essentia, Innovis, or Dakota Clinic Pharmacy paid for any Affected Medication,

2

e.   The entity responsible for monitoring temperatures of the refrigerators in which Affected Medications were stored,

f.   The list price for uninsured patients for each Affected Medication throughout the class period, including any documentation that identifies such list prices.

4.   The pharmaceutical efficacy of medications exposed to a temperature excursion in general and the efficacy of the Affected Medications after being exposed to the Temperature Excursion specifically.

5.   FDA and CDC regulations, recommendations, and guidance on (a) the storage and monitoring of vaccines and the Affected Medications within a specified temperature range, (b) documenting the same, and (c) what to do in the event of a temperature excursion.

6.   The North Dakota Department of Health and North Dakota Board of Pharmacy's regulations, recommendations, and guidance on (a) the storage and monitoring of vaccines and the Affected Medications within a specified temperature range, (b) documenting the same, and (c) what to do in the event of a temperature excursion.

7.   The Minnesota Department of Health and Minnesota Board of Pharmacy's regulations, recommendations, and guidance on (a) the storage and monitoring of vaccines and the Affected Medications within a specified temperature range, (b) documenting the same, and (c) what to do in the event of a temperature excursion.

8.   All of Your policies concerning the safety, efficacy, and administration of medications to patients in general, and the Affected Medications specifically, including policies related to the storage and monitoring of medications, including the Affected Medications.

9.   The legal relationship between Essentia and Dakota Clinic Pharmacy, and the nature of that relationship in practice, including any documents reflecting or defining that relationship, and any indemnity or other agreements between Essentia and Dakota Pharmacy related to the Temperature Excursion.

10.  The legal relationship between Essentia and Innovis Health, and that nature of that relationship in practice, including any documents reflecting or defining that relationship.

11.  All warranties, promises, statements, or representations, whether express or implied, made to Essentia's patients about the safety and efficacy of the care they will receive generally, and to Essentia's patients who received the Affected Medications concerning the safety or efficacy of the medications specifically.

12.  All warranties, promises, statements, or representations, whether express or implied, made to Dakota Clinic Pharmacy's patients about the safety and efficacy of the care they will receive

3

generally, and to Essentia's patients who received the Affected Medications concerning the safety or efficacy of the medications specifically.

13. Any marketing or other outreach to patients, consumers, or the general public by Essentia or Dakota Clinic Pharmacy related to the Affected Medications, offering services in which the Affected Medications may be administered (e.g., chemotherapy), or offering vaccinations, including any documentation reflecting that marketing or other outreach, and the personnel or entities involved in that marketing or other outreach.

14. Any efforts to replace refrigerators or implement temperature surveillance systems, including how Essentia determined which refrigerators were high or low priority for replacement.

15. Essentia's responses to Plaintiffs' First Set of Interrogatories, including all supplemental responses.

16. Essentia's responses to Plaintiffs' Individual Sets of Interrogatories (served December 6, 2024), including all supplemental responses.

17. Essentia's responses to Jennifer Rein's 1st, 2nd, and 4th Interrogatory (served December 6, 2024), including all supplemental responses.

18. The subject matter of discoverable information for all Essentia or Innovis employees identified on Your initial disclosures, including any supplements, including any role these individuals had in the Temperature Excursion or Essentia's response to it.

19. The following sets of data: EH000158, EH000163, EH000164, EH000200, EH000203, EH000210, EH000211, EH000218, EH000219, EH000221, EH000230, EH002659, EH003029, EH003030, EH003031, EH003626-EH003631, EH003635-EH003637, EH052463-EH052472, including the database from which they were extracted, any data fields available in that database that were omitted from production, and the definition of each data field included within them.

20. The services and charges contained within the itemized billing statements for the named Plaintiffs produced by Essentia Health (EH005193 through and including EH006104) and the services and charges contained within the financial spreadsheets for the named Plaintiffs, such as EH003635-EH003637, including why charges for several Affected Medications and related services are reflected in the billing statements but not the financial spreadsheets.

4