# EXHIBIT J

## SHARED SERVICES AGREEMENT

This agreement ("Agreement") is made and entered into as of August __1__ , 2017 ("Effective Date") by and between Innovis Health, LLC, a Delaware limited liability company dba Essentia Health West ("Innovis"), and Dakota Clinic Pharmacy, LLC, a North Dakota limited liability company ("DCP").

## RECITALS

A.    Innovis and DCP are parties to that certain Lease of even date herewith pursuant to which DCP operates a pharmacy business and related activities in premises leased from Innovis in its hospital and clinic building at 1702 South University Drive, Fargo, North Dakota (the "Premises").

B.    Innovis and DCP desire to obtain certain services from each other in connection with their respective operations.

C.    Each party is fully qualified to provide the services requested by the other.

D.    The parties wish to enter into an agreement whereby DCP will obtain staffing and administrative services from Innovis and Innovis will obtain clinic pharmaceutical management services from DCP pursuant to the terms and conditions herein.

## AGREEMENT

1.    Provided Services.    Beginning on the Effective Date, Innovis will provide the staffing, accounting and other administrative services set forth in **Exhibit A** (the "Staffing and Administrative Services") and DCP will provide the clinic pharmaceutical management services set forth in **Exhibit A** (the "Pharmaceutical Management Services"). Both the Staffing and Administrative Services and the Pharmaceutical Management Services shall be performed pursuant to specific standards and time lines also set forth in **Exhibit A**.

2.    Payment for Services.  For services rendered by each party to the other as more fully described in **Exhibit A**, Innovis and DCP shall compensate each other pursuant to the payment terms set forth in **Exhibit A**.

3.    Federal, State or Other Exclusions.  DCP represents and warrants that, to the best of DCP's knowledge after inquiry, neither DCP and if applicable, none of DCP's employees, subcontractors or agents have ever (a) been convicted of, or indicted for, a crime related to health care, or listed by a federal agency as debarred, excluded, or otherwise ineligible for participation in a federally–funded health care program (or notified of such action); or (b) otherwise engaged in conduct for which a person or entity can be so convicted, indicted or listed.  DCP shall not permit any person who has been so convicted, indicted, listed or notified to provide Services under this Agreement. DCP agrees to notify Innovis immediately in the event that DCP becomes aware of any such conviction, indictment, listing or notification pertaining to DCP, DCP's employees, subcontractors or agents arising during the term of this Agreement or the three (3) year period following termination or expiration of this Agreement. Upon receipt of such notice by Innovis or if Innovis

Confidential Information - Subject to Protective Order                          EH000120

otherwise becomes aware of such conviction, indictment, listing or notification, Innovis shall have the right to terminate this Agreement immediately, if the agreement is still in effect. DCP agrees to indemnify Innovis and hold it harmless from all liabilities, damages, penalties, and losses (including, without limitation, reasonable attorney's fees) arising from DCP's misrepresentation of the foregoing information or failure to provide notification required under this section. This section shall survive the termination or expiration of this Agreement.

4.    Corporate Compliance.  Essentia Health, the parent corporation of Innovis, has in place a Code of Conduct ("Code"), the goal of which is to ensure that all federal, state, local laws and regulations are followed. It includes a commitment to uphold a high standard of ethical and legal business practices and to prevent misconduct. Through the implementation of this Agreement, each party acknowledges the commitment to corporate compliance and agrees to conduct all transactions which occur pursuant to this Agreement in accordance with the underlying philosophy and objectives of the Code.  Any compliance violations will be considered a breach of this Agreement.  As part of its obligations under this Agreement, DCP must access **Essentia** Health's **website** http://www.essentiahealth.org/for_vendors.html  to review the Code, its updates, certain notices of applicable federal and state laws as a condition of its continued participation under this Agreement and associated policies. By signing this Agreement, DCP represents and warrants that it has accessed the information described in the preceding sentence.

5.    Relationship.  The parties to this Agreement are at all times performing as independent contractors. Nothing in this Agreement as to the respective roles of the parties under this Agreement shall constitute or be construed as the creation of an employment relationship, partnership, or joint venture between Innovis and DCP or any of their agents or employees.

6.    Compliance.    Both parties shall comply with, and shall cause their employees, subcontractors and agents to comply with, applicable state and federal laws and regulations including but not limited to the Health Insurance Portability and Accountability Act of 1996 and regulations promulgated thereunder, the Occupational Safety and Health Administration regulations, and legal standards relating to the interaction of personnel in the workplace.

7.    **Affirmative Action.  Both parties shall abide by the requirements of 41 CFR §§ 60-1.4(a), 60-300.5(a), 60-741.5(a) and 29 CFR Part 471, Appendix A to Subpart A with respect to affirmative action program and posting requirements, and that these requirements are incorporated herein. These regulations prohibit discrimination against qualified individuals based on their status as protected veterans or individuals with disabilities, and prohibit discrimination against all individuals based on their race, color, religion, sex, or national origin. Moreover, these regulations require that covered prime contractors and subcontractors take affirmative action to employ and advance in employment individuals without regard to race, color, religion, sex, national origin, protected veteran status or disability.**

8.    Confidentiality.  During the course of providing services hereunder, DCP may have access to or become acquainted with confidential medical information regarding Innovis's patients. DCP shall maintain the confidentiality of such medical information in accordance with applicable state and federal laws, rules and regulations. During the course of

EH Purchased Services Agreement 04/18/2017

2

Confidential Information - Subject to Protective Order

providing services hereunder, Innovis and/or DCP may also have access to or become acquainted with confidential information relating to the other party's business.  DCP and Innovis acknowledge and understand the importance to the other party of maintaining such information and agree never to use or disclose such information except as necessary to carry out their respective obligations under this Agreement. Upon termination of this Agreement, DCP agrees to immediately return to Innovis, and Innovis agrees to immediately return to DCP, all copies of data, records or other tangible documents which contain, embody or disclose, in whole or in part, any confidential information regarding the other party, its patients, or any general confidential information. The provisions of this section 8 shall survive the termination of this Agreement.

9.    Indemnification.  Each party (the Indemnifying Party) shall indemnify the other party (the Party Indemnified) against all liability or loss, and against all claims or actions based upon or arising out of damage or injury (including death) to persons or property caused by or sustained in connection with the performance of this agreement by the Indemnifying Party or by conditions created thereby, or based upon any violation by the Indemnifying Party of any statute, ordinance, code, or regulation, and the defense of any such claims or actions, including reasonable attorneys' fees.

10.    Insurance.  Each party shall, at its expense, carry liability insurance and if required for the provision of Services hereunder, professional liability insurance, or shall provide self-insurance covering its acts and omissions under this Agreement, with limits of at least $1 million per claim and $3 million aggregate. Each party shall, upon request, provide the other party with a certificate or certificates evidencing such insurance.

11.    Term and Termination.  This Agreement shall continue in effect for one (1) year from the Effective Date, and shall automatically renew indefinitely unless and until terminated by either party by giving at least sixty (60) days' written notice to the other.  Notwithstanding the foregoing, Innovis may, on sixty (60) days' written notice to DCP, discontinue obtaining from DCP some or all of the services listed in Exhibit A. In the event such notice is given with respect to some but not all services listed in Exhibit A, Innovis and DCP shall negotiate an appropriate reduced annualized fee to DCP for the reduced services within the sixty (60) day notice period.

12.    Access to Records.  To the extent required by applicable law, each party agrees that for a period of four (4) years after it has furnished Services under this Agreement, it shall make available, upon written request of the Secretary of the Department of Health and Human Services (the "Secretary"), or upon request of the Comptroller General of the United States (the "Comptroller"), or any of their duly authorized representatives, this Agreement and any of its books, documents and records that are necessary to certify the nature and extent of the costs for the services for which that the other party seeks reimbursement.  Each party further agrees that if it carries out any of its duties under this Agreement through a sub-contract with a value or cost of Ten Thousand Dollars ($10,000) or more over a twelve (12) month period with a related organization, such subcontract shall contain a clause requiring the subcontractor, for a period of four (4) years after carrying out such duties, to make available, upon written request of the Secretary or Comptroller, or any of their duly authorized representatives, the subcontract and any of its books, document and records that are necessary to verify the nature and extent of the cost of the goods or services it has provided.

EH Purchased Services Agreement 04/18/2017

3

Confidential Information - Subject to Protective Order

EH000122

13.    Notices. All notices, requests and other communications that a party is required or elects to give shall be in writing and shall be delivered personally, by certified mail or via recognized overnight courier service, to the other party at its address set forth below, or to such other address as such party may designate by notice pursuant to this section. Notice shall be effective when received if delivered by hand, or on the date shown on the return receipt, if by certified mail or courier service.

If to Innovis:                                              With a copy to:

Innovis Health, LLC                                   Office of General Counsel
Attn: CFO                                                 Essentia Health
3000 32nd Avenue South                           502 East Second Street
Fargo, ND 58103                                       Duluth, MN 55805

If to DCP:                                                 With a copy to:

Dakota Clinic Pharmacy, LLC
Attn: President
1702 South University Drive
Fargo, ND 58103

14.    Governing Law. This Agreement shall be governed and construed in accordance with the laws of the state of North Dakota, without regard to the choice of law principles thereof.

15.    No Assignment. Neither party may assign this Agreement without the prior written consent of the other.

16.    Entire Agreement. This Agreement constitutes the entire contract between the parties with respect to the subject matter hereof. It may be executed in any number of counterparts, each of which will be deemed to be the original. No amendment to this Agreement or any exhibit shall be effective unless in writing and signed by both parties.

17.    Consent to Amendment. The parties agree to amend this Agreement as necessary to comply with any changes in applicable laws and regulations.

18.    No Waiver. The waiver by either party of a breach of any provision of this Agreement will not be deemed a waiver of any subsequent breach of the same or a different provision.

19.    Severability. If any provision of this Agreement is illegal, invalid, or unenforceable under present or future laws effective during the term of this Agreement, that provision shall be fully severable. The remaining provisions shall remain in effect, and this Agreement shall be construed and enforced as if the illegal, invalid or unenforceable provision had never been a part of this Agreement.

20.    Binding Effect. This Agreement shall be binding upon and inure to the benefit of Innovis and its successors, and DCP and its successors.

21.    Section Headings. Section headings are provided solely for the convenience of the parties and shall not affect the interpretation of this Agreement.

EH Purchased Services Agreement 04/18/2017                                                    4

Confidential Information - Subject to Protective Order                      EH000123

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the Effective Date set forth above.

**Innovis Health, LLC**

By: _____

Print name: _West President_

Title: _C. Glasser MD_

Date: _8/14/17_

**Dakota Clinic Pharmacy, LLC**

By: _____

Print name: _ROBERT HASKELL_

Title: _owner / manager_

Date: _8-8-17_

EH Purchased Services Agreement 04/18/2017                                                    5

## EXHIBIT A
## SERVICES AND COMPENSATION

### *To be provided by Innovis*

Administrative Services:   During the term of this Agreement, Innovis shall keep and maintain the books and records of DCP's pharmacy business, and shall furnish such other routine accounting, finance, and human resources services as are mutually agreed upon by the parties. As compensation for such services, DCP shall pay to Innovis $1,650 per month, payable in advance on the first day of each month concurrent with DCP's rent payment. The monthly payment amount shall increase by ten percent (10%) on the 5th anniversary of the Effective Date and shall further increase by ten percent (10%) every five (5) years thereafter for so long as the Agreement remains in effect.

Staffing Services:    During the term of this Agreement, Innovis shall employ and furnish to DCP all pharmacists, technicians and clerical staff needed to operate DCP's pharmacy business. In consideration thereof, DCP shall pay to Innovis monthly an amount equal to the full cost of all salaries, benefits, taxes and other employment-related expenses incurred by Innovis in employing such personnel. Innovis shall invoice DCP monthly for such costs and DCP shall pay each invoice upon receipt.

### *To be provided by DCP*

Pharmaceutical Management Services: During the term of this Agreement, DCP shall furnish to Innovis, through pharmacists and technicians otherwise staffing DCP's pharmacy business, management of Innovis's clinic pharmaceutical inventory, including but not limited to maintenance of Innovis's formulary, management of ordering and purchasing, periodic inspection of storage areas, security of stored pharmaceuticals, controlled substance recordkeeping, conduct of periodic audits and all other actions required for compliance with all local, state and federal laws regulating or otherwise applicable to the pharmaceuticals, DCP or Innovis's clinic. As compensation for such services, Innovis shall pay to DCP an annualized fee of $250,000, payable in equal monthly installments on or before the 15th day of every month.

EH Purchased Services Agreement 04/18/2017

6

Confidential Information - Subject to Protective Order                    EH000125