**feganscott**

**FeganScott LLC**
ATTORNEYS AT LAW
1763 Columbia RD NW, Ste.100
Washington, DC 20009
PHONE  202.921.0002
FAX    312.264.0100
mike@feganscott.com

April 29, 2025

**Via Email**

The Honorable Alice R. Senechal
U.S. Courthouse
655 1st Avenue North, Suite 440
Fargo, ND 58102-4952
ndd_J-Senechal@ndd.uscourts.gov

> Re:    *Kraft, et al. vs. Essentia Health, et al.*
>        Docket No. 3:20-cv-00121-PDW-ARS
>        Plaintiffs' Updated Position Regarding Rule 30(b)(6) Dispute

Dear Judge Senechal:

Plaintiffs would like to address three issues during tomorrow's conference: (1) the remaining disputed Rule 30(b)(6) topics, (2) the evasive and obstructionist testimony and preparation of Essentia's witnesses, and (3) an agreed upon extension of the case schedule.

**First**, **Topics 1(c); 1(d); 1(i); 1(k); 2; 8;** and **14** remain in dispute.[1]

**Topics 1(c), 1(d), 2, 8, and 14** all concern a central theme: Essentia's temperature monitoring policies and practices, before, during, and after the temperature excursion at issue. As discussed in Plaintiffs' April 18 letter (at pp. 2-3), Essentia's policies and practices are relevant to a host of claims and issues in this case, and there is no legitimate basis for Essentia's refusal to designate a witness to address them. Essentia's effort to distance itself from DCP despite a web of close ties and interdependent operations[2] is not a basis to deny discovery into Essentia's conduct— it highlights just how important this discovery is. Plaintiffs should not be denied discovery necessary to challenge one of Essentia's core defenses.

Essentia's refusal to present a witness on these topics is also premised on a host of false

---

[1] Following the conference on April 21, Plaintiffs withdrew **Topics 16 and 17**, and narrowed **Topic 15** to cover just three interrogatories: Essentia's responses to Interrogatories 3-5, including the process of compiling, and source for, the data provided, and the fullness and completeness of the responses. Essentia agreed to the topic as narrowed.

**Topics 11-13** remain deferred pending Essentia's production of related documents. Essentia responded to the related document requests on the evening of April 28 and concurrently produced a handful of related documents. Plaintiffs' review of the responses and documents is underway, but, on initial review, Essentia's production appears far from complete.

[2] *See, e.g.*, **Ex. J** at 7 (ECF 284-11) ("Innovis shall keep and maintain the books and records of DCP's pharmacy business;" "Innovis shall employ and furnish to DCP all pharmacists, technicians and clerical staff needed to operate DCP's pharmacy business").

**FeganScott.com**

![feganscott logo]

premises. For instance, Essentia argues that "What steps Essentia took within its own organization to implement and/or modify temperature monitoring systems within Essentia's facilities has nothing to do with DCP's monitoring and practices with the two refrigerators at its pharmacy." Essentia's Apr. 18, 2025 Ltr. at 2 (ECF 284-12). Not so. After the excursion, Essentia conducted its first "system-wide inclusive inventory of refrigeration assents and monitoring . . . to evaluate gaps or best practice[s]." **Ex. F** at 1 (ECF 284-7). This system-wide assessment was conducted *expressly* as a result of the "temperature excursion for the refrigeration of medications via a distributor partner," i.e., DCP. *Id.* The assessment was conducted by Al Hurley, Essentia's COO, who noted the direct connection between the excursion and his work, and highlighted that his recommendations were approved by Essentia's most senior leadership:

> As you are probably aware, the West market had an unfortunate refrigeration excursion issue. As a bi-product of that, Dr. Herman required that I lead the review, recommendation and -implementation of the refrigeration equipment and monitoring for Essentia-wide. The findings and recommendations were prepared by teams from pharmacy, lab and all market facilities. Brad and Sheila Hart also reviewed and approved of the plan. The plan was presented and approved by Dr. Herman and Jodi directly (SBAR attached).

**Ex. K** at 1.

Mr. Hurley is already scheduled to testify in his individual capacity on May 22. Essentia should designate (and prepare him) to address these disputed topics as well.

**Topic 1(i)** seeks testimony on whether Essentia places blame on any entity beyond DCP for the temperature excursion. Essentia has no legitimate objection to this topic. Essentia cannot be permitted to hide the ball and conduct trial by surprise when it suddenly names a new responsible party at trial. Conversely, if it agrees there is no other entity to blame, it should testify to that fact.

**Topic 1(k)** concerns the refrigerators involved in the excursion, including their purchase, breakdown, and maintenance history. While Essentia claims only DCP can address this topic, the argument is belied by Essentia's own documents and testimony from Essentia's Rule 30(b)(6) witness, who explained that Essentia investigated these very issues, but was not prepared to address the topic. **Ex. L**, Modich Rough Tr. at 68:23-70:17 (Apr. 24, 2025) (reviewing a related email and testifying that Essentia investigated the refrigerator purchase and maintenance history but not recalling any details).

Much of this investigation appears to have been conducted by Maari Loy, who is scheduled to testify on May 9. *See* **Ex. M** at 1. Ms. Loy could likewise be designated (and prepared) to address this topic on behalf of Essentia.



**Second**, the Rule 30(b)(6) witnesses that testified last week were heavily coached to provide evasive answers on sensitive topics, leading witnesses to provide dozens of non-responsive answers, feign ignorance of common words (like "responsibility" and "healthcare") and then refuse to testify based on that feigned ignorance. Plaintiffs' counsel was forced to repeat questions again and again in an effort to obtain responsive testimony, in many instances without success. Many yes or no questions were met with lengthy, meandering answers that did not come close to answering the question. Plaintiffs were forced to lodge non-responsive objections almost twenty times during Mr. Kaufenberg's testimony alone. Similarly problematic, Essentia's counsel lodged numerous speaking objections, effectively coaching its witnesses how to answer (or avoid answering) in real time. Highlighted roughs from Essentia designees Tony Kaufenberg and Frank Modich containing only some of the most egregious examples are attached. *See* **Ex. N**, Kaufenberg Rough Tr. at 25:24-26:8, 34:5-40:6, 68:3-71:22, 127:13-133:21, 134:15-135:9 (Apr. 23, 2025); **Ex. L**, Modich Rough Tr. at 76:6-78:6 (Apr. 24, 2025). This conduct both prevented Plaintiffs from obtaining responsive testimony and consumed an extensive amount of Plaintiffs' limited deposition time.

Plaintiffs are awaiting final drafts from last week's depositions and reserve the right to move for sanctions and other appropriate relief for Essentia's conduct, including re-convening the depositions to obtain answers to unanswered questions at Essentia's expense. However, Plaintiffs' most immediate concern is the conduct of Essentia's witnesses and counsel during the many depositions scheduled to occur in the next several weeks. Plaintiffs ask the Court to admonish Essentia to cease and desist from obstructionist witness coaching (before and during the deposition). In addition, Plaintiffs request that Essentia's witnesses be informed of their obligation to answer the question asked "fully and fairly" and of the potential consequence for failing to do so, including a second deposition at Essentia's expense. *See, e.g.*, *Wood v. Paccar, Inc.*, No. 19-cv-1010-LRR, 2020 U.S. Dist. LEXIS 28116, at *26, *30 (N.D. Iowa Feb. 19, 2020) (ordering second depositions of fact witness exhibiting "reluctance to simply answer the questions posed" and unprepared Rule 30(b)(6) witness with order that witnesses "fully and fairly answer questions posed").

**Third**, fact discovery is currently scheduled to conclude on May 16, 2025. While the parties have made strides to schedule remaining depositions, given the number of plaintiffs and the number of relevant Essentia witnesses and third-parties, the parties agree that a five-week extension of the fact discovery deadline and all subsequent deadlines is appropriate.

Plaintiffs look forward to addressing the foregoing topics with the Court tomorrow.



April 29, 2025
Page 4

Sincerely,

Michael von Klemperer
Of Counsel

FeganScott.com