## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA

JESSICA KRAFT, INDIVIDUALLY AND )
AS PARENT OF MINORS L.K., S.K., and )
O.K.; SHELLI SCHNEIDER, )
INDIVIDUALLY AND AS PARENT OF )
MINORS A.S. and W.S.; ANNE BAILEY, )
AS PARENT OF MINOR D.B.; AMY )
LAVELLE, AS PARENT OF MINORS )
Em.L. and El.L.; ELIZABETH BEATON, )
INDIVIDUALLY AND AS PARENT OF )    No. 3:20-CV-121
MINOR M.B.; AMANDA AND TYRELL )
FAUSKE, INDIVIDUALLY AND AS )
PARENTS OF MINORS C.R.F. and C.J.F.; )    Hon. Peter D. Welte
JENNIFER REIN, INDIVIDUALLY; and )    Mag. Judge Alice R. Senechal
JESSICA BERG, AS PARENT OF MINORS )
A.B. and S.B., individually and on behalf of )
all others similarly situated, )
           )
        Plaintiffs, )
           )
     v. )
           )
ESSENTIA HEALTH, INNOVIS )
HEALTH, LLC d/b/a ESSENTIA )
HEALTH, )
           )
        Defendants. )
           )

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL DEFENDANT TO DESIGNATE RULE 30(B)(6) WITNESSES FOR DEPOSITION

**Table of Contents**

I.      INTRODUCTION ................................................................................................... 1

II.     BACKGROUND ..................................................................................................... 1

        A.      The Claims and Defenses at Issue ............................................................... 1

        B.      The Disputed Notice .................................................................................... 4

III.    LEGAL STANDARD............................................................................................. 6

IV.     ARGUMENT.......................................................................................................... 8

V.      CONCLUSION..................................................................................................... 15

**Table of Authorities**

**Cases**                                                                 **Page(s)**

*Am. Med. Ass'n v. Stenehjem*,
  No. 1:19-cv-125, 2021 U.S. Dist. LEXIS 269522 (D.N.D. Sept. 1, 2021) .............................7, 8

*Beganovic v. Tyson Fresh Meats, Inc.*,
  No. 22-cv-2052-LTS-KEM, 2023 U.S. Dist. LEXIS 234785 (N.D. Iowa May 12, 2023) .........7

*Bjerk v. Anderson*,
  911 N.W.2d 343 (N.D. 2018) ......................................................................................4

*Cooley v. Target Corp.*,
  No. 20-cv-2152 (DWF/DTS), 2021 U.S. Dist. LEXIS 253610 (D. Minn. Sept. 17, 2021) ........8

*Gen. Dynamics Corp. v. Selb Mfg. Co.*,
  481 F.2d 1204 (8th Cir. 1973) ...................................................................................8

*Gowan v. Mid Century Ins. Co.*,
  309 F.R.D. 503 (D.S.D. 2015) ....................................................................................7

*Kraft v. Essentia Health*,
  No. 3:20-cv-121, 2024 U.S. Dist. LEXIS 238467 (D.N.D. Nov. 21, 2024) ................................7

*Linseth v. Sustayta*,
  No. 1:21-cv-173, 2022 U.S. Dist. LEXIS 202568 (D.N.D. Nov. 7, 2022) .............................7, 8

*Lynch v. Experian Info. Sols., Inc.*,
  569 F. Supp. 3d 959 (D. Minn. 2021) .......................................................................7

*Mehner v. Panera, LLC*,
  No. 22-cv-168, 2023 U.S. Dist. LEXIS 159920 (D. Neb. Sept. 11, 2023) ...............................14

*Murphy v. Kmart Corp.*,
  255 F.R.D. 497 (D.S.D. 2009) .......................................................................... *passim*

*Pansy v. Borough of Stroudsburg*,
  23 F.3d 772 (3d Cir. 1994) .........................................................................................8

*Powell v. WestRock CP, LLC*,
  No. 2:23-cv-2085, 2024 U.S. Dist. LEXIS 20725 (W.D. Ark. Feb. 6, 2024) ..........................11

*Praus v. Mack*,
  626 N.W.2d 239 (N.D. 2001) .....................................................................................4

*Richmond v. Nodland*,
  501 N.W.2d 759 (N.D. 1993) .....................................................................................4

*Sentis Grp., Inc. v. Shell Oil Co.*,
  763 F.3d 919 (8th Cir. 2014) ........................................................................1, 2, 9, 10

*Tierney v. BNSF Ry. Co.*,
   No. 23-cv-477-WMC, 2024 U.S. Dist. LEXIS 135872 (W.D. Wis. July 31, 2024) .................12

*White v. Union Pac. R.R. Co.*,
   No. 09-1407-EFM-KGG, 2011 U.S. Dist. LEXIS 16950 (D. Kan. Feb. 22, 2011) ..................14

**Statutes**

Minn. Stat. § 325F.69 ..........................................................................................................4

N.D. Cent. Code § 51-15-02 ...............................................................................................4

**Rules**

Fed. R. Civ. P. 26 ............................................................................................................7, 8

Fed. R. Civ. P. 30 .................................................................................................... *passim*

Fed. R. Civ. P. 37 ..............................................................................................................8

**Other**

21 C.F.R. § 205.50 ..............................................................................................................2

## I.    INTRODUCTION

Essentia Health is a defendant in this case. Dakota Clinic Pharmacy is not. Plaintiffs noticed a Rule 30(b)(6) deposition to obtain *Essentia's* knowledge and *Essentia's* positions on core disputed issues, including its policies and practices on temperature monitoring of temperature sensitive pharmaceuticals before, during, and after the temperature excursion at issue here, as well as details regarding the two Essentia-owned and maintained refrigerators that stored those very pharmaceuticals. These topics are relevant to almost every element of almost every claim Plaintiffs assert against Essentia as well as numerous Essentia defenses.

Yet, incredibly, Essentia refuses to designate a witness to address these topics. Its basis? Essentia is not to blame—Dakota Clinic is—so discovery into Essentia's own knowledge and practices isn't relevant. But if a defendant could declare entire lines of inquiry off limits because they do not support its own theory of the case, few cases would proceed to trial on the merits. Thankfully, that is not the standard in federal court. *See Sentis Grp., Inc. v. Shell Oil Co.*, 763 F.3d 919, 926 (8th Cir. 2014) (a party "cannot, by their sole insistence, declare evidence undiscoverable and irrelevant merely because it does not fit into their own theory of the case").

The fact is, the disputed topics far surpass the minimum threshold for relevance, and Essentia has not and cannot come close to meeting its burden of demonstrating the serious prejudice that would result if the inquiry is permitted. Accordingly, Plaintiffs respectfully request that the Court grant this motion and order Essentia to prepare and present a witness or witnesses fully prepared to address Topics 1(c), 1(d), 1(k), 2, 8, and 14.

## II.    BACKGROUND

### A.  The Claims and Defenses at Issue

Since at least September 2017, Essentia sold and administered more than 100 temperature sensitive pharmaceuticals that were subject to temperature excursions to Plaintiffs, their children,

and putative class members. Pls.' Second Am. Compl. ("SAC"), ECF 119. The Affected Medications included a wide range of products, including chemotherapy drugs, seizure medication, and vaccines. *Id.* Beginning on April 6, 2020, Essentia notified approximately 50,000 patients that pharmaceutical products they received were compromised by excursions starting as early as September 2017 by an unnamed distributor. *Id.* In its Answer to Plaintiffs' original complaint, Essentia identified the distributor as DCP, in which Essentia holds a 49 percent membership stake. Essentia's Answer to Pls.' Compl., ECF 17.

Ensuring that medications are stored at proper temperatures is a shared responsibility among all entities in the distribution chain of prescription drugs, including manufacturers, distributors, pharmacies, and healthcare providers. *See, e.g.*, 21 C.F.R. § 205.50; **Ex. A** (CDC Guidance). The Affected Medications were stored in two Essentia-owned refrigerators on Essentia property at 1702 University Drive in Fargo, North Dakota. **Ex. B** at 80:9-80:24, 214:24-216:9 (Morris Rough Dep. Tr.). Essentia provided the temperature monitoring system ElectroWatchman used in these two fridges. *Id.* at 49:21-25, 224:12-225:10. Essentia was responsible for the maintenance of the refrigerators and was regularly alerted that the fridges failed to maintain proper temperatures and required frequent attention from Essentia's maintenance staff. *Id.* at 62:21-66:9. Solely to comply with a North Dakota law that required pharmacies to be majority pharmacist owned, Essentia (through its subsidiary and co-defendant Innovis Health LLC) created DCP to manage the stock in the two fridges. *Id*. at 138:21-140:6; **Ex. D,** § 10.4 (DCP Operating Agreement) ("absent such laws, Innovis would own and operate all such pharmacies"). Essentia owns 49 percent of DCP, and, should North Dakota law ever change, Essentia also retains the right to purchase the remaining 51 percent. **Ex. C** at 63:4-17 (Modich Rough Dep. Tr.); **Ex. D,** § 10.4 (DCP Operating Agreement) (noting that if law changes, "Innovis may purchase all of the

2

Membership Interests of the Pharmacist Members"). Essentia publicly identifies DCP as Essentia-owned. **Ex. E** at 1 (List of Essentia-Owned Pharmacies). DCP cannot make any legally significant business decisions without Essentia's approval. **Ex. D** at §§ 4.8, 4.9; **Ex. B** at 122:23-131:17, 130:4-134:14. Essentia directly employs, pays, provides benefits to, and even performs performance reviews of DCP personnel. *See* DCP Shared Servs. Agreement, at 6, ECF 284-11 ("Innovis shall employ and furnish to DCP all pharmacists, technicians, and clerical staff needed to operate DCP's Pharmacy"); **Ex. B** at 151:17-23, 152:18-153:25, 154:19-155:24, 179:23-181:10, 158:18-159:6, 160:17-23; **Ex. F** at 26-49, 72-88 (Essentia personnel file for Laura Morris). In February 2020, Essentia moved its fridges[1] to the 1702 University Drive basement, where they remain to this day. **Ex. G** at 74:9-16, 145:16-146:18 (Kaufenberg Dep. Tr.). Laura Morris, the DCP owner that Essentia repeatedly identified as the person most knowledgeable on the disputed topics,[2] identified Essentia's failure properly to maintain or replace the refrigerators as the primary cause of the excursion at issue. *See* **Ex. B** at 63:16-66:9, 91:14-94:6, 196:16-197:16.

Plaintiffs bring five claims against Essentia and its subsidiary Innovis: breach of express and implied warranties (Counts I-II), violation of Minnesota and North Dakota consumer protection and deceptive practices law (Count III), unjust enrichment (Count IV), and negligence (Count V). SAC, ECF 119. As most relevant here, Plaintiffs' breach of warranty claims require a showing that Essentia made assurances, or omitted material facts, in marketing and administering the affected medications. Plaintiffs allege they were deceived into believing the medications were

---

[1] Because Essentia owned the fridges, it did not compensate DCP when it moved them. **Ex. B** at 251:12-252:7.

[2] *See, e.g.*, Essentia's Apr. 18, 2025 Position Paper, ECF 284-12 at 2 ("Plaintiffs are deposing DCP's President and pharmacist-owner, Laura Morris, under subpoena, on May 8, 2025, in this litigation. Several of the disputed topics identified in the notice are topics for DCP" including Topic 1(k)); **Ex. H** at 12:5-12, 14:22-15:7 (Apr. 30, 2025, Status Conf. Tr.) ("Ms. Morris, who is the current president, is having her deposition taken in May" and could address Topic 1(c)).

safe and effective.

Plaintiffs' consumer protection claims require a showing that a defendant engaged in a deceptive act or practice, fraud, misrepresentation, or unconscionable conduct. N.D. Cent. Code § 51-15-02; Minn. Stat. § 325F.69. Again, Plaintiffs allege they were deceived into believing the medications were safe and effective.

Plaintiffs' negligence claim requires a showing of duty, breach, causation, and damages. *Bjerk v. Anderson*, 911 N.W.2d 343, 347 (N.D. 2018). A wide variety of evidence is relevant to demonstrating these elements. For instance, the existence of a duty turns on a variety of factors, including foreseeability of harm to the plaintiff, closeness of connection between defendant's conduct and the injury suffered, moral blame for the defendant's conduct, and the burden on defendant of imposing the duty. *Id.*at 350. And demonstrating a breach of duty (or the "standard of care") requires a comparison of a defendant's conduct against the "degree of skill, care, diligence and knowledge commonly possessed and exercised by a reasonable, careful, and prudent" professional in the same field. *See Richmond v. Nodland*, 501 N.W.2d 759, 761 (N.D. 1993). Breach can also be demonstrated by comparing a defendant's conduct to the relevant statutory and regulatory requirements. *See Praus v. Mack*, 626 N.W.2d 239, 250 (N.D. 2001).

Essentia has denied each of Plaintiff's claims in full and has asserted 27 affirmative defenses. Essentia's Answer to SAC, ECF 103. Several of these defenses blame others for the temperature excursion at issue and/or claim Essentia lacks responsibility. *E.g., id.,* ¶¶ 362-63. In both deposition testimony and interrogatory responses, Essentia identifies DCP as the sole entity to blame for the excursion at issue. Minute Entry, ECF 288; Def.'s Supp. Answers to Pl. Anne Bailey and D.B.'s Second Set of Interrog., at 5-7, ECF 284-9; **Ex. C** at 75:14-76:4.

### B.  The Disputed Notice

On March 24, 2025, Plaintiffs served Essentia with a Rule 30(b)(6) deposition notice,

4

designating 20 topics. Pls.' R. 30(b)(6) Notice, ECF 284-2. The history of the parties' meet and confer efforts has been extensively addressed in prior letters to the Court and during the April 21, 2025 and April 30, 2025 hearings. *See* Apr. 21, 2025 Minute Entry & Exhibits, ECF 284, 284-1, 284-12; Apr. 30, 2025 Minute Entry & Exhibits, ECF 288, 288-1, 288-6; *see also* **Ex. H** (April 30, 2025 Status Conf. Tr.).  The disputed topics at issue here are:

- Topic 1(c): Policies and practices regarding temperature monitoring;

- Topic 1(d): The availability of automated temperature monitoring systems whether utilized or not;

- Topic 1(k): The refrigerators involved, including their purchase, breakdown, and maintenance history;

- Topic 2: Any prior temperature excursions at Essentia facilities, including, but not limited to, the excursion discussed in paragraphs 200-204 of the Second Amended Complaint, and the "measures" Essentia allegedly put in place after that excursion;

- Topic 8: All of Essentia's policies concerning the safety, efficacy, and administration of medications to patients in general, and the Affected Medications specifically, including policies related to the storage and monitoring of medications, including the Affected Medications; and

- Topic 14: Any efforts to replace refrigerators or implement temperature surveillance systems, including how Essentia determined which refrigerators were high or low priority for replacement.

Pls.' R. 30(b)(6) Notice, ECF 284-2.[3]

---

[3] Plaintiffs requested the consideration of disputed Topics 11-13 be deferred while they awaited receipt of documents responsive to related requests for production. Essentia has since responded

As this dispute is pending, Plaintiffs have conducted several depositions, including of Essentia employees Kristin Luttio, Maari Loy, and Suzanne Zeltinger. All three did little to prepare for their depositions and did not know or failed to remember information on vital topics that was surely within Essentia's possession. *E.g.*, **Ex. I** at 39:9-21, 44:3-18, 54:24-55:11, 77:13-21, 94:15-95:14, 101:18-102:12 (Loy Rough Dep. Tr.). Plaintiffs also deposed DCP owner Laura Morris. Several more depositions are scheduled for the coming weeks, including Essentia executive Al Hurley and the named Plaintiffs.

On the day this motion was due, Essentia emailed Plaintiffs stating in full:

> In light of Laura Morris's deposition last week, we are working with Essentia to review Topic 1(k) outlined in the 30(b)(6) Deposition Notice. We will provide you further update once next steps have been determined.

**Ex. J** (Essentia May 14, 2025 Email to Pls.). Plaintiffs immediately responded, noting that the motion was due that very day and asking Essentia to confirm it would in fact be presenting a witness on Topic 1(k) or Plaintiffs would be forced to assume it remained in dispute. *Id.* (Pls.' May 14, 2025 Email to Essentia). Essentia did not respond prior to the filing of this motion.

## III.    LEGAL STANDARD

"A Rule 30(b)(6) deposition serves a unique function—it is the 'sworn corporate admission that is binding on the corporation.'" *Murphy v. Kmart Corp.*, 255 F.R.D. 497, 506 (D.S.D. 2009). The rule prevents "'bandying' by which various organizational officers or agents, while being deposed, disclaim knowledge of facts clearly known by some other officer or agent of the

---

to those requests and produced some documents. However, the responses and production appear to be deficient. The parties met and conferred on these responses on May 6. Essentia's counsel was unable to address many of Plaintiffs' concerns during that call and promised written follow-up after she conferred with her client. Plaintiffs continue to await receipt of that information.

Topic 1(i) was resolved during the April 30th conference. *Id.* **Ex. H** at 19:7-21:16. All other topics have had designees or have been withdrawn, narrowed, or otherwise resolved.

organization." *Id.* at 504. Thus, it requires the organization to designate and prepare a person to "answer fully, completely, [and] unevasively" on the noticed topics. *Id.* Indeed, it is the "favored" method of obtaining information from a corporation and ensures the corporation's position "can be fully and fairly explored." *Id.* at 506-07 (comparing Rule 30(b)(6) deposition to other discovery mechanisms). Depositions of individuals or other parties are no substitute because they serve different purposes and do not satisfy the central purpose of the Rule 30(b)(6) deposition—obtaining the corporate party's binding admission. *See Murphy*, 255 F.R.D. at 506; *Am. Med. Ass'n v. Stenehjem*, No. 1:19-cv-125, 2021 U.S. Dist. LEXIS 269522, at \*12 (D.N.D. Sept. 1, 2021) (rejecting argument that deposition of individuals under Rule 30(b)(1) is sufficient given different purpose of Rule 30(b)(6)).

Plaintiffs are entitled to discover information that is relevant to any party's claims or defenses and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). "A discovery request is relevant unless the information sought can have no possible bearing on the claims or defenses of the case." *Kraft v. Essentia Health*, No. 3:20-cv-121, 2024 U.S. Dist. LEXIS 238467, at \*5-6 (D.N.D. Nov. 21, 2024) (quoting *Lynch v. Experian Info. Sols., Inc.*, 569 F. Supp. 3d 959, 963 (D. Minn. 2021) (Senechal, M.J.). This is an "extremely broad" standard—"[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation" so "either party may compel the other to disgorge whatever facts he has in his possession." *Linseth v. Sustayta*, No. 1:21-cv-173, 2022 U.S. Dist. LEXIS 202568, at \*4 (D.N.D. Nov. 7, 2022) (quoting *Gowan v. Mid Century Ins. Co.*, 309 F.R.D. 503, 508 (D.S.D. 2015); 8 Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE §§ 2007, 3637 (1970)).

"After the party seeking discovery makes a threshold showing of relevance, the burden shifts to the party resisting discovery 'to establish the requested information falls outside the broad

scope of relevance.'" *Kraft*, 2024 U.S. Dist. LEXIS 238467, at *6 (quoting *Beganovic v. Tyson Fresh Meats, Inc.*, No. 22-cv-2052-LTS-KEM, 2023 U.S. Dist. LEXIS 234785, at *12 (N.D. Iowa May 12, 2023)). In the context of a Rule 30(b)(6) deposition, the resisting party has the burden of demonstrating "good cause" sufficient for the issuance of a protective order under Rule 26(c). *Cooley v. Target Corp.*, No. 20-cv-2152 (DWF/DTS), 2021 U.S. Dist. LEXIS 253610, at *11 (D. Minn. Sept. 17, 2021) (citing Fed. R. Civ. P. 37(d)(2)). This requires a "particular and specific demonstration" of the "clearly defined and serious injury" that would result from disclosure. *Murphy*, 255 F.R.D. at 502 (quoting *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994)); *see also Gen. Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1212 (8th Cir. 1973); *Am. Med. Ass'n v. Stenehjem*, No. 1:19-cv-125, 2021 U.S. Dist. LEXIS 269522, at *9 (D.N.D. Sept. 1, 2021) (requiring the same). The "the relative hardship" to the opposing party in being denied the discovery must also be considered. *Gen. Dynamics Corp.*, 481 F.2d at 1212.

## IV.    ARGUMENT

The Court should compel Essentia to designate and prepare one or more witnesses to testify on Topics 1(c), 1(d), 1(k), 2, 8, and 14. Plaintiffs are entitled to know what Essentia knew, when it knew it, and what its policies and practices were before, during, and after the excursion at issue. These are questions central to a host of claims and defenses in this case and far exceed the "extremely broad" standard for relevance. *See Linseth*, 2022 U.S. Dist. LEXIS 202568, at *4.

Essentia has not, and cannot, come close to meeting its burden of demonstrating a clearly defined and serious injury if the inquiry is permitted. Despite sending two letters to Plaintiffs and two position statements to the Court, Defendants have failed to cite any case that supports their position. Nor have they offered even a modicum of evidence that they would suffer any prejudice. Essentia's red herring defense that only DCP can or should address the disputed topics has neither a legal basis nor factual support. Plaintiffs are entitled to explore *Essentia's* positions and

*Essentia's* knowledge. Essentia cannot "declare evidence undiscoverable and irrelevant merely because it does not fit into [its] own theory of the case." *Sentis Grp., Inc.*, 763 F.3d at 926 ("[I]t matters not for the purpose of discovery which side's theory of the case might be proven correct. What matters is that each side is entitled to pursue intelligible theories of the case"); *Murphy*, 255 F.R.D. at 507 (rejecting challenge to Rule 30(b)(6) deposition and explaining, "[s]imply put, it is not up to Kmart to determine what discovery Mr. Murphy needs").

On the other hand, if Plaintiffs are precluded from obtaining Essentia's official position on the disputed topics, Essentia will be permitted to continue to hide the ball, offer up uninformed and forgetful individual witnesses, and surprise Plaintiffs at summary judgment or trial with positions and evidence that, despite being in the corporation's possession, it refused to disclose during discovery.

**Topics 1(c)** and **8** seek testimony on Essentia's policies and practices regarding (a) temperature monitoring and storage of medication, and (b) Essentia's policies concerning the safety and administration of medications to patients. Essentia's understanding of proper medication storage and monitoring practices and its policies regarding the same are relevant to a host of issues in this case, including but not limited to, the existence and scope of Essentia's duty, whether Essentia complied with the appropriate standard of care, whether Essentia complied with relevant statutory and regulatory requirements, whether the harm to Plaintiffs was foreseeable, and whether Essentia's conduct was fraudulent, deceptive, and/or unconscionable. Essentia's policies regarding the administration of the Affected Medications are likewise centrally relevant. There is no dispute that the Affected Medications were administered by Essentia personnel at Essentia facilities. Plaintiffs are entitled to testimony concerning the policies governing that administration. This information is relevant regardless of Essentia's legal relationship with DCP.

9

Essentia resists by arguing that only DCP policies and practices are at issue. This improperly assumes that only evidence fitting Essentia's theory of the case is discoverable. *See Sentis Grp., Inc.*, 763 F.3d at 926. Essentia is not entitled to assert the validity of its own defense and then declare all contrary evidence off limits. *See id.* Moreover, Plaintiffs may pursue discovery from any available source including, obviously, the parties to the lawsuit. As explained, *Essentia's* knowledge and *Essentia's* positions, policies, and practices are relevant to a host of issues. *See Murphy*, 255 F.R.D. at 506-07 (explaining that Rule 30(b)(6) deposition is the "favored" method to obtain full, complete, and non-evasive position of corporate defendant).

Essentia's argument that only DCP's policies and practices are at issue is also factually dubious, and Plaintiffs are entitled to probe and obtain Essentia's testimony on the basis for the assertion. Ms. Morris testified that DCP's policies *did not* govern the fridges in question. **Ex. B** at 35:3-36:22. Ms. Morris did not know whether Essentia's policies did or not. *Id.* But Essentia owns the refrigerators at issue. *Id.* at 80:9-80:24. Essentia was responsible for their maintenance and upkeep. *See id.* at 62:21-66:9. DCP asked Essentia to replace the fridges because they were old and untrustworthy, but Essentia failed to do so. *Id.* at 91:14-94:1. Essentia was responsible for the temperature monitoring system at issue. *Id.* at 224:12-225:10. The fridges were (and still remain) on Essentia property. *Id.* at 35:3-36:22, 37:23-38:9 (Morris testified that the "back room" where the two fridges were kept was not a part of DCP's lease with Essentia and entirely separate from the front retail space which housed DCP's inventory); **Ex. G** at 74:9-16, 145:16-146:18; **Ex. K** at 2 (Morris Email to state Bd. of Pharm.). Essentia mandates that DCP follow its policies. *See* Shared Services Agreement, ¶ 4, ECF 284-11 (mandating that DCP comply with Essentia Code of Conduct). Essentia, through its subsidiary and co-defendant Innovis, employs all DCP personnel. *See* Shared Servs. Agreement, at 6, ECF 284-11 ("Innovis shall employ and furnish to DCP all

pharmacists, technicians and clerical staff needed to operate DCP's pharmacy business"); **Ex. B** at 151:17-23, 152:18-153:25, 154:19-155:24, 179:23-181:10, 158:18-159:6, 160:17-23. Those personnel, in turn, must follow Essentia policies. *See* Shared Services Agreement, ¶ 4, ECF 284-11; **Ex. F** at 43-50.

Essentia has not only failed seriously to challenge relevance but has also failed to make any showing of a "clearly defined and serious injury" if forced to prepare and present a witness on these topics. *See Murphy*, 255 F.R.D. at 502. Essentia's policies and practices are uniquely within Essentia's knowledge and should be readily available.

**Topic 1(k)** seeks information on the two refrigerators at issue, including their purchase, breakdown, and maintenance history. There is no reasonable dispute that this information is relevant. Essentia investigated these issues as part of its response to the temperature excursion at issue. As Mr. Modich testified on behalf of Essentia, the purchase and maintenance history of the fridges was "part of our just overall investigation." **Ex. C** at 68:16-22. Essentia's documents are in accord. *E.g.*, **Ex. L** (Email from Maari Loy indicating discussion within Essentia regarding history of the two fridges). If these issues were relevant to Essentia in responding to the excursion, it is hard to conceive how they would not be relevant now.

Essentia's investigation made sense given that Essentia owned the fridges and was responsible for their maintenance. *See* **Ex. B** at 80:9-80:24. And Ms. Morris testified that Essentia facilities personnel were frequently called to address temperature problems with these very fridges. *Id.* at 62:21-66:9.

What Essentia knew and when Essentia knew it are centrally relevant to a host of issues, including, for example, the unconscionability of Essentia's conduct and the foreseeability that patients would be administered medications affected by a temperature excursion. *See Powell v.*

*WestRock CP, LLC*, No. 2:23-cv-2085, 2024 U.S. Dist. LEXIS 20725, at *7 (W.D. Ark. Feb. 6, 2024) (finding that topics seeking testimony on maintenance and cleaning history of facility where plaintiff slipped were relevant in premises liability suit); *Tierney v. BNSF Ry. Co.*, No. 23-cv-477-WMC, 2024 U.S. Dist. LEXIS 135872, at *12-13 (W.D. Wis. July 31, 2024) (finding topic that sought testimony on maintenance and upkeep history of equipment at issue in suit from 2010 to present was relevant). Indeed, Ms. Morris blames the excursion at issue on Essentia's failure to adequately maintain or replace the fridges in question. **Ex. B** at 63:16-66:9, 91:14-92:6, 196:16-197:16. Likewise, this information is relevant to many of Essentia's affirmative defenses, including their defenses that blame DCP for the excursion. The conflict between Essentia's litigation positions and Ms. Morris's testimony only highlights the relevance of the disputed topics.

Essentia has also failed to offer even a modicum of support suggesting it will suffer a "clearly defined and serious injury" if forced to prepare and present a witness on the topic. *See Murphy*, 255 F.R.D. at 502. Given that Essentia has (a) already investigated these very issues in response to the excursion, and (b) was responsible for the maintenance in question, Essentia should be readily able to prepare and present a witness to address the topic.

Essentia appears to have now conceded that the topic is both relevant and appropriate, emailing Plaintiffs on the day this motion was due: "In light of Laura Morris's deposition last week, we are working with Essentia to review Topic 1(k) outlined in the 30(b)(6) Deposition Notice." **Ex. J.** Yet Essentia failed to confirm it would in fact present a witness on the topic.

**Topics 1(d)** and **14** seek information relating to the availability of temperature monitoring systems, and any efforts to replace refrigerators or implement temperature monitoring systems, including how Essentia determined which refrigerators were a priority for replacement.

Despite owning the fridges in question, Essentia's own documentation reflects that they

contained "antiquated" temperature monitoring systems. Essentia's Rule 30(b)(6) witness agreed. **Ex. G** at 47:15-48:3. Yet Ms. Morris confirmed that this antiquated system was the primary method to monitor fridge temperatures. **Ex. B** at 47:1-48:1, 102:21-103:8, 224:12-225:10.

After the excursion, Essentia's President, Dr. David Herman, asked COO Al Hurley to conduct a "system-wide inclusive inventory of refrigeration assents and monitoring . . . to evaluate gaps or best practice[s]." Ex. F to Pls.' Apr. 21, 2025 Position Statement, at 1, ECF 284-7. This investigation was known as the "One Essentia Fridge Project." *See id.* Contrary to Essentia's arguments, this system-wide assessment was conducted *expressly* as a result of the "temperature excursion for the refrigeration of medications via a distributor partner," i.e., DCP. *Id.*; *see also* Ex. K to Pls.' Apr. 30, 2025 Position Statement, ECF 288-2, at 1 (explaining Hurley's undertaking of One Essentia Fridge Project as a "bi-product" of excursions). As part of his efforts, Mr. Hurley indicated that Essentia must replace fridges "immediately" and proposed purchasing a new monitoring system, explaining it is necessary "to reduce[] risk for refrigeration." *Id.* Moreover, Hurley and others involved in the One Essentia Fridge project indicated that, contrary to recommendations from regulators and Essentia's own policies, many refrigerators were not medical grade and that they would "wait [] until a failure" to mark a fridge as high priority for replacement. **Ex. M**, at 2 (Emails between Hurley and other Essentia personnel) ; *see also* **Ex. I** at 40:2-15, 100:22-102:12. Incredibly, they also suggested a fridge experiencing out-of-range temperatures may not constitute a "failure." **Ex. M,** at 1-2. When discussing purchasing a new monitoring system, Hurley noted the availability of a better system that Essentia was already using in a new facility in Duluth. Ex. K to Pls.' Apr. 30, 2025 Position Statement, ECF 288-2, at 1.

Essentia's understanding of "gaps" and "best practices" in its temperature monitoring systems, as well as its failure to use modern, industry-standard temperature equipment are relevant

to a host of issues, including its duty, the standard of care, the foreseeability of harm, breach, and the deceptive or unconscionable nature of its conduct. *See White v. Union Pac. R.R. Co.*, No. 09-1407-EFM-KGG, 2011 U.S. Dist. LEXIS 16950, at *19 (D. Kan. Feb. 22, 2011) (finding topic seeking "consideration of modifications to [equipment that led to plaintiff's injury]" and defendant's "awareness of and ability to repair, modify or alter the [] equipment ... and its ability to provide [equipment that could have prevented plaintiff's injury]" to be relevant).

Again, Essentia does not, and cannot, demonstrate the "clearly defined and serious injury" it would suffer if forced to prepare and present a witness. *See Murphy*, 255 F.R.D. at 502. Mr. Hurley is already scheduled to testify in his individual capacity and is clearly the person most knowledgeable on these issues. He could easily be prepared as Essentia's Rule 30(b)(6) witness as well. Essentia is of course free to prepare a different individual. But the availability of such an obviously appropriate witness to address this topic belies any claim of prejudice.

**Topic 2** seeks information on prior temperature excursions and any remedial measures it subsequently implemented. As alleged in the Complaint for instance, after an excursion in 2018, Essentia assured the public, stating "[w]e have put measures in place so this does not occur again." SAC, ¶ 203, ECF 119. Discovery has revealed several documents suggesting Essentia had a similar excursion crisis earlier in 2017. *E.g.*, **Ex. N** (Emails between Essentia personnel referencing a prior excursion in 2017).

Essentia's response, or lack of a response, to a known issue is highly relevant to many issues in this case, including foreseeability and unconscionability. *See Mehner v. Panera, LLC*, No. 22-cv-168, 2023 U.S. Dist. LEXIS 159920, at *28-30 (D. Neb. Sept. 11, 2023) (finding a request for information on "prior and substantially similar … incidents" may be highly relevant to prove plaintiff's accident was foreseeable and that defendant was on notice and had a duty to avoid

14

such accidents in the future). Similarly, Essentia's assurances to the public that it had fixed problems "so this does not occur again," are highly relevant to Plaintiffs' breach of warranty claims and the deceptiveness of Essentia's conduct.

As with all other disputed topics, Essentia has made no effort to demonstrate the injury it would suffer if forced to prepare, present, and educate witnesses on this topic. *See Murphy*, 255 F.R.D. at 502. Because there is no cognizable injury. What seems far more likely is that Essentia simply hopes to avoid providing damaging testimony about the frequency and scope of temperature excursions at its facilities.

## V.     CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion and compel Essentia to prepare and present a witness or witnesses fully and completely to address Topics 1(c), 1(d), 1(k), 2, 8, and 14.

Dated: May 23, 2025                                Respectfully submitted,

/s/*Michael von Klemperer*
Michael von Klemperer
Ashali P. Chimata
FEGAN SCOTT LLC
1763 Columbia Rd. NW, Suite 100
Washington, D.C. 20009
Ph: 202.921.0002
Fax: 312.264.0100
mike@feganscott.com
ashali@feganscott.com

Elizabeth A. Fegan
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
Ph: 312.741.1019
Fax: 312.264.0100
beth@feganscott.com

15

Scott A. Haider
SCHNEIDER LAW FIRM
815 3rd Ave. S.
Fargo, ND 58103
Ph: 701-235-4481
scott@schneiderlawfirm.com

J. Barton Goplerud
Brian Marty
SHINDLER, ANDERSON, GOPLERUD &
WEESE, PC
5015 Grand Ridge Drive, Suite 100
West Des Moines, Iowa 50265
Ph: (515) 223-4567
Fax: (515) 223-8887
goplerud@sagwlaw.com
marty@saglaw.com

*Counsel for Plaintiffs*

16