# EXHIBIT D

**AMENDED AND RESTATED
OPERATING AGREEMENT**

**OF**

**DAKOTA CLINIC PHARMACY, LLC**

**ADOPTED BY WRITTEN ACTION**

**OF THE**

**MEMBERS**

**EFFECTIVE AS OF**

**MAY 1, 2016**

Confidential Information - Subject to Protective Order

EH000086

# TABLE OF CONTENTS

**Page**

ARTICLE 1. OFFICES ................................................................................................................ 1

Section 1.1    Registered Office ........................................................................................ 1

Section 1.2    Other Offices ............................................................................................... 1

ARTICLE 2. PURPOSE ............................................................................................................ 1

ARTICLE 3. MEMBERS .......................................................................................................... 1

Section 3.1    Initial Members; Classification ................................................................ 1

Section 3.2    Qualifications ............................................................................................... 1

ARTICLE 4. MEETINGS OF MEMBERS .............................................................................. 2

Section 4.1    Regular Meetings ........................................................................................ 2

Section 4.2    Special Meetings of Members ................................................................... 3

Section 4.3    Organization of Meetings ........................................................................... 3

Section 4.4    Place of Meetings ......................................................................................... 3

Section 4.5    Time of Meetings ......................................................................................... 3

Section 4.6    Notice ............................................................................................................ 3

Section 4.7    Remote Communications ............................................................................ 4

Section 4.8    Quorum .......................................................................................................... 6

Section 4.9    Voting ............................................................................................................. 6

Section 4.10    Action Without A Meeting ........................................................................ 7

ARTICLE 5. BOARD OF GOVERNORS ................................................................................ 7

Section 5.1    Board to Manage ......................................................................................... 7

Section 5.2    Number .......................................................................................................... 7

Section 5.3    Qualifications ............................................................................................... 7

Section 5.4    Election .......................................................................................................... 8

Section 5.5    Terms ............................................................................................................. 8

Section 5.6    Compensation ............................................................................................... 8

Section 5.7    Classification of Governors ........................................................................ 8

Section 5.8    Resignation ................................................................................................... 8

Section 5.9    Removal of Governors ................................................................................ 8

Section 5.10    Vacancies ..................................................................................................... 9

Section 5.11    Board Meetings ........................................................................................... 9

ARTICLE 6. MANAGERS ....................................................................................................... 14

i

Confidential Information - Subject to Protective Order

EH000087

Section 6.1  Designation of Managers................................................................................14

Section 6.2  Duties of Managers.....................................................................................14

Section 6.1  Delegation...................................................................................................17

Section 6.2  Standards of Conduct.................................................................................17

ARTICLE 7. LOANS AND ADVANCES..............................................................................17

Section 7.1  Prerequisites...............................................................................................17

Section 7.1  Interest and Security..................................................................................17

Section 7.2  Advances.....................................................................................................18

ARTICLE 8. BOOKS AND RECORDS.................................................................................18

Section 8.1  Required Records.......................................................................................18

Section 8.2  Right to Inspect..........................................................................................19

Section 8.3  Other Use Prohibited.................................................................................20

Section 8.4  Cost of Copies...........................................................................................20

Section 8.5  Financial Statements..................................................................................20

ARTICLE 9. CONTRIBUTIONS............................................................................................20

Section 9.1  Authorized Contributions..........................................................................20

ARTICLE 10. MEMBERSHIP INTERESTS..........................................................................22

Section 10.1 Statement of Membership Interests..........................................................22

Section 10.2 Transfer of Membership Interests.............................................................23

Section 10.3 Transfer Process Methodology.................................................................24

Section 10.4 Pharmacy Law Change..............................................................................26

Section 10.5 Preemptive Rights......................................................................................27

ARTICLE 11. DISTRIBUTIONS.............................................................................................27

Section 11.1 When Permitted..........................................................................................27

Section 11.2 Determination Presumed Proper...............................................................27

ARTICLE 12. AMENDMENT.................................................................................................28

ARTICLE 13. DISSOLUTION AND LIQUIDATION..........................................................28

Section 13.1 Events Causing Dissolution.......................................................................28

Section 13.2 Liquidation and Winding Up......................................................................28

Section 13.3 Compliance with Timing Requirements and Regulations.........................28

Section 13.4 Limitations on Distributions......................................................................28

ARTICLE 14. INDEMNIFICATION.......................................................................................28

ii

Confidential Information - Subject to Protective Order  EH000088

iii

## SCHEDULES AND EXHIBITS

Schedule 3.1   Members and Membership Units

Confidential Information - Subject to Protective Order

EH000089

**AMENDED AND RESTATED**
**OPERATING AGREEMENT**
**OF**
**DAKOTA CLINIC PHARMACY, LLC**

**ARTICLE 1.**
**OFFICES**

**Section 1.1    Registered Office**.  The registered office of the Company required by the North Dakota Limited Liability Company Act to be maintained in the State of North Dakota is as provided and designated in the Articles of Organization.  The Board may, from time to time, change the location of the registered office.  On or before the day that such change is to become effective, a certificate announcing such change shall be filed with the North Dakota Secretary of State.

**Section 1.2    Other Offices**.  The Company may establish and maintain such other offices, within or without the State of North Dakota, as are from time to time authorized by the Board.

**ARTICLE 2.**
**PURPOSE**

The purpose and character of the business of the Company shall be to undertake and carry on the operation of a North Dakota licensed pharmacy or pharmacies and any lawful business, purpose, or activity permitted under the laws of the State of North Dakota and approved by the Board; provided, however, that the Company shall not be operated in a manner that jeopardizes the tax-exempt status of Innovis Notwithstanding any other law, rule or agreement to the contrary, these purposes shall override any duty that the Members or the Company's governors or managers may otherwise have to operate the company for the financial benefit of any person, including the Members.

**ARTICLE 3.**
**MEMBERS**

**Section 3.1    Initial Members; Classification**.  The initial Members and classification of the Members of the Company shall be pharmacists licensed by the State of North Dakota (each a "Pharmacist Member" and collectively the "Pharmacist Members") and Innovis Health, LLC, a Delaware limited liability company, successor in interest to Dakota Specialty Institute, a Minnesota nonprofit corporation, doing business as Innovis Health ("Innovis").  The respective Membership Units, which reflect a Member's Membership Interests, held by each Pharmacist Member and Innovis are set forth on Schedule 3.1, which shall be updated from time to time to reflect changes in ownership of the Membership Units.

**Section 3.2    Qualifications**.

    **(a)**    Majority Pharmacist Ownership.

1

Confidential Information - Subject to Protective Order

EH000090

Unless otherwise permitted by the North Dakota Board of Pharmacy, fifty-one percent of the Membership Interests shall be owned by the Pharmacist Members.

      **(b)**    Code of Conduct.

The Members of the Company, the Company and all employees of the Company shall at all times and in all cases act in a manner consistent with the Essentia Code of Integrity dated November 12, 2015, revised October 13, 2016, and all amendments, revisions modifications, restatements and the like thereof from time to time (the "Essentia Code of Integrity'). All Members and the Company acknowledge having received and reviewed a copy of the Essentia Code of Integrity existing as of the date hereof and agree at all times to act in a manner consistent therewith. The Company shall inform all Company employees, current and future, of the Essentia Code of Integrity and obtain their acknowledgment at all times to act consistently therewith. Each Pharmacist Member shall at all times act consistently with the Code of Ethics of Pharmacy and the laws regarding pharmacy practice within the State of North Dakota. Failure of a Member to comply with this Section 3.2(b) shall be deemed a breach of this Agreement and shall permit the removal of the Member and require the Member to sell his, her or its Membership Interests upon the unanimous vote of the non-breaching Members.

      **(c)**    Intentionally Omitted.

      **(d)**    Intentionally Omitted.

## ARTICLE 4.
## MEETINGS OF MEMBERS

    **Section 4.1**    **Regular Meetings**. When and if held, regular meetings of the Members shall be conducted as follows:

      **(a)**    Frequency. Regular meetings of Members may be held on an annual basis. However, regular meetings need not be held.

      **(b)**    Demand by Member. If a regular meeting of Members has not been held within the earlier of six months after the fiscal year end of the organization or fifteen (15) months after its last meeting, a Member or Members holding five (5%) percent or more of the voting power of all Members entitled to vote may demand a regular meeting of Members upon written notice given to the President or Secretary of the Company.

      **(c)**    Required Business. At each regular meeting of Members, there shall be an election of qualified successors for Governors, all of whom shall serve for an indefinite term. No other particular business is required to be transacted at the regular meeting. Any business appropriate for action by the Members may be transacted at a regular meeting.

2

Confidential Information - Subject to Protective Order

EH000091

**Section 4.2    Special Meetings of Members**.  When and if held, special meetings of the Members shall be conducted as follows:

    **(a)**    Who may call.  Special meetings of the Members may be called for any purpose or purposes at any time, by:

        (1)    the President;

        (2)    two (2) or more Governors;

        (3)    a person authorized by the Articles of Organization to call special meetings; or

        (4)    a Member or Members holding ten (10%) percent or more of the voting power of all Membership Interests entitled to vote.

    **(b)**    Business Limited.  The business transacted at a special meeting is limited to the purpose stated in the notice of the meeting.  Any business transacted at a special meeting that is not included in those stated purposes is voidable by or on behalf of the Company, unless all of the Members have waived notice of the meeting as set forth in Section 4.6(d) of this Article.

**Section 4.3    Organization of Meetings**.  At all meetings of the Members, the President or, in the absence of the President, any person appointed by the President, shall act as Chairman, and the Secretary or, in the absence of the Secretary, any person appointed by the Chairman, shall act as Secretary.

**Section 4.4    Place of Meetings**.  Meetings of Members called by the demand of a Member or Members shall be held in the county where the principal executive office of the Company is located.  All other meetings of Members shall be held at such places as may be fixed from time to time by the Board.

**Section 4.5    Time of Meetings**.  Meetings called by the demand of a Member or Members shall be held on notice from the Board no sooner than thirty (30) days and no later than ninety (90) days after receipt of the demand.  All other meetings of Members shall be held at such times as may be fixed from time to time by the Board.

**Section 4.6    Notice**.  Notice of Member meetings shall be given as follows:

    **(a)**    To Whom Given.  Except as provided in the North Dakota Limited Liability Company Act, notice of all meetings of Members shall be given to every owner of Membership Interests entitled to vote, unless:

        (1)    The meeting is an adjourned meeting to be held not more than one hundred twenty (120) days after the date fixed for the original meeting and the date, time and place of the meeting were announced at the time of adjournment of the original meeting; or

Confidential Information - Subject to Protective Order

EH000092

(2)  The following have been mailed by first class mail to a Member at the address in the Company records and returned undeliverable:

(i)  Two (2) consecutive annual meeting notices and notice of any special meetings held during the period between the two (2) annual meetings; and

(ii)  All payments of distributions sent during a twelve (12) month period, provided there were at least two (2) sent during the twelve (12) month period.

**(b)**  When Given.  In all instances when a specific minimum notice period has not otherwise been fixed by law, the notice shall be given at least ten (10) days before the date of the meeting and not more than fifty (50) days before the date of the meeting.

**(c)**  Contents.  The notice shall contain the date, time and place of the meeting and any other information required under the North Dakota Limited Liability Company Act (N.D.C.C. Chapter 10-32.1).  In the case of a special meeting, the notice shall contain a statement of the purposes of the meeting. The notice may also contain any other information deemed necessary or desirable by the Board or by any other person or persons calling the meeting.

**(d)**  Waiver and Objections.  A Member may waive notice of the meeting of Members.  A waiver of notice by a Member entitled to notice is effective when given before, at, or after the meeting.  Such notice is effective whether given in writing or by attendance.  Attendance by a Member at a meeting is a waiver of notice of that meeting, except where the Member objects at the beginning of the meeting to the transaction of business because the meeting is not lawfully called or convened, or objects before a vote on an item of business because the item may not lawfully be considered at that meeting and does not participate in the consideration of the item at that meeting.

**Section 4.7**    **Remote Communications**.  Member conferences may utilize remote communications subject to the following:

**(a)**  Simultaneous Participation.  A meeting of the Member may be held solely by any combination of means of remote communication through which the participants may participate in the meeting:

(1)  if notice of the meeting is given to every owner of Membership Interests entitled to vote as would be required by this chapter for a meeting; and

(2)  if the Membership Interests held by the Members participating in the meeting would be sufficient to constitute a quorum at a meeting.

4

Confidential Information - Subject to Protective Order

EH000093

A Member not physically present in person or by proxy at a regular or special meeting of Members may by means of remote communication, participate in a meeting of Members held at a designated place.

**(b)**    Other Conferences.  In any meeting of Members held solely by means of remote communication under subsection a of this Section 4.7 or in any meeting of Members held at a designated place in which one or more Members participate by means of remote communication, the company shall implement reasonable measures to:

(1)    verify that each person deemed present and entitled to vote at the meeting by means of remote communication is a Member; and

(2)    provide each Member participating by means of remote communication with a reasonable opportunity to participate in the meeting, including an opportunity to:

(i)    read or hear the proceedings of the meeting substantially concurrently with those proceedings;

(ii)    if allowed, by the procedures governing the meeting, have the Member's remarks heard or read by other participants in the meeting substantially concurrently with the making of those remarks; and

(iii)    if otherwise entitled, vote on matters submitted to the Members.

Participation in a meeting by that means constitutes presence at the meeting in person or by proxy if all other requirements of this Article are met.

**(c)**    Notice.  Any notice to Members given by the company by a form of electronic communication consented to by the Member to whom the notice is given is effective when given.  The notice is deemed given:

(1)    by facsimile communication, when directed to a telephone number at which the Member has consented to receive notice;

(2)    by electronic mail, when directed to an electronic mail address at which the Member has consented to receive notice;

(3)    by a posting on an electronic network on which the Member has consented to receive notice, together with separate notice to the Member of the specific posting upon the later of the posting or the giving of the separate notice; and

5

Confidential Information - Subject to Protective Order

EH000094

(4)     by any other form of electronic communication by which the Member has consented to receive notice, when directed by the Member.

Consent by a Member to notice given by electronic communication may be given in writing or by authenticated electronic communication. The company is entitled to rely on any consent so given until revoked by the Member, provided that no revocation affects the validity of any notice given before receipt by the company of revocation of the consent.

(d)     Waiver and Objections.  Waiver of notice of a meeting by means of authenticated electronic communication described in subsections (a) and (b) of this Section 4.7 may be given in the manner provided in Section 4.6. Participation in a meeting by means of remote communication described in subsections (a) and (b) of this Section 4.7 is a waiver of notice of that meeting, except where the Member objects at the beginning of the meeting to the transaction of business because the meeting is not lawfully called or convened, or objects before a vote on an item of business because the item may not lawfully be considered at the meeting and does not participate in the consideration of the item at that meeting.

**Section 4.8     Quorum.**  The owners of not less than 60% of the voting power of the Membership Interests entitled to vote at a meeting are a quorum for the transaction of business.  If a quorum is present when a duly called or held meeting is convened, the Members present may continue to transact business until adjournment, even though the withdrawal of a number of the Members originally present leaves less than the proportion or number otherwise required for a quorum.

**Section 4.9     Voting.**  The voting of Membership Interests entitled to vote shall be conducted as follows:

(a)     Act of the Members.  The Members shall be deemed to have acted when:

(1)     60% Required.  Except as expressly set forth otherwise in this Agreement, the Members shall take action by the affirmative vote of the owners of not less than sixty percent (60%) of the voting power of the Membership Interests entitled to vote on that item of business except where the North Dakota Limited Liability Company Act or the Articles of Organization require a larger proportion; provided, however, that the Members shall not take any action that would jeopardize the mission or image of Innovis in the community.

(2)     80% Required.  The following actions shall require the approval of not less than eighty percent (80%) of the voting power of the Membership Interests entitled to vote on that item of business except where the North Dakota Limited Liability Company Act or the Articles of Organization require a larger proportion.

6

Confidential Information - Subject to Protective Order

EH000095

(i)    authorize any merger, consolidation, reorganization, sale or transfer of all or substantially all of the assets of the Company or its subsidiaries;

(ii)    authorize any plan of dissolution of the Company, any liquidating distribution of the Company's or its subsidiaries' assets or other action related to the dissolution or liquidation of the Company or its subsidiaries;

(iii)    amend, repeal, revise or adopt changes to the Articles of Organization or this Agreement; and

(iv)    authorize the incurrence of debt in excess of $20,000, except for such debt incurred in the normal course of business for the acquisition of pharmaceuticals by the Company.

(b)    Voting Rights.  The voting rights of those Membership Interests entitled to vote shall be as follows:

(1)    Determination.  The Board may fix a date not more than fifty (50) days before the date of a meeting of Members as the date for the determination of the owners of Membership Interests entitled to notice of and entitled to vote at the meeting.  When a date is so fixed, only Members on that date are entitled to notice of and permitted to vote at the meeting of Members.

**Section 4.10    Action Without A Meeting**.  An action required or permitted to be taken at a meeting of the Members of this Company may be taken by a written action signed, or consented to by authenticated electronic communication, by unanimous action of all of the Members.   A written action in this manner is effective when signed by the last Member to sign, unless a later effective time is provided in the written action.

**ARTICLE 5.**
**BOARD OF GOVERNORS**

**Section 5.1    Board to Manage**.  The business and affairs of the Company shall be managed under the direction of a Board of Governors.

**Section 5.2    Number**.  The Board shall consist of one (1) or more Governors.  The number of Governors shall be fixed from time to time by resolution of the Board of Governors. The initial Board shall be comprised of four (4) Governors elected by the Pharmacist Members (the "Pharmacist Governors") and three (3) Governors elected by Innovis (the "Innovis Governors").  The number of Governors elected by any classification of Members shall be in proportion to the Membership Interests held by such classification of Members.

**Section 5.3    Qualifications**.  The Governors shall be natural persons.

7

Confidential Information - Subject to Protective Order

EH000096

**Section 5.4**    <u>Election</u>. The Governors shall be elected at the next regular meeting of the Members.

**Section 5.5**    <u>Terms</u>. A Governor serves for an indefinite term that expires at the next regular meeting of the Members. A fixed term of a Governor must not exceed five (5) years. A Governor holds office until expiration of the term for which the Governor was elected or appointed and until a successor is appointed and has qualified, or until the earlier death, resignation, removal or disqualification of the Governor. A Governor may serve more than one (1) term and may serve multiple consecutive terms.

**Section 5.6**    <u>Compensation</u>. The Board may fix the compensation, if any, of Governors.

**Section 5.7**    <u>Classification of Governors</u>. Those Governors elected by the Pharmacist Members shall be the "Pharmacist Governors." Those Governors elected by Innovis shall be the "Innovis Governors."

**Section 5.8**    <u>Resignation</u>. A Governor may resign at any time by giving written notice to the Company. The resignation is effective without acceptance when the notice is given to the Company, unless a later effective time is stated in the notice. If a resignation is made effective at a later time, the Member having elected such Governor may fill the pending vacancy before the effective time if the Member provides that the successor does not take office until the effective time.

**Section 5.9**    <u>Removal of Governors</u>. Governors shall be removed in the following manner:

    **(a)**    Removal by Governors. A Governor may be removed at any time, with or without cause, if:

        (1)    the Members have not elected Governors in the interval between the time of the appointment to fill a vacancy and the time of removal; and

        (2)    all of the remaining Governors affirmatively vote to remove the Governor.

    **(b)**    Removal by Members. Any one or all of the Governors may be removed at any time, with or without cause, by the affirmative vote of the Members holding the Membership Interests from the classification that any such Governor represents. For purposes of clarity, Pharmacist Members, by not less than sixty percent (60%) of the voting power of the Pharmacist Membership Interests may remove a Pharmacist Governor, and Innovis may remove an Innovis Governor.

    **(c)**    Election of Replacements. New Governors may be elected at a meeting at which Governors are removed.

8

Confidential Information - Subject to Protective Order

EH000097

**(d)**    Removal by Judicial Proceeding. The district court of the county where the principal executive office is located may remove any Governor from office in a proceeding commenced either by the Company, its Members holding at least 10 percent of the voting power of any classification of Membership Interests, or the attorney general, if the court finds that:

(1)    The Governor engaged in fraudulent, dishonest conduct, gross abuse of authority, or discretion with respect to the Company or a final judgment has been entered finding they violated Section 5.11(m); or

(2)    Removal is in the best interest of the Company.

The court that removes a Governor may bar the Governor from serving on the Board for a period prescribed by the court. If Members or the attorney general commence a proceeding under this subsection, then the Company shall be a party defendant.

Section 5.10    **Vacancies**. Vacancies on the Board resulting from the death, resignation, removal or disqualification of a Governor or from a newly created governorship may be filled by the affirmative vote of the Members holding the Membership Interests from the classification that any such Governor represents. For purposes of clarity, Pharmacist Members, by not less than sixty percent (60%) of the voting power of the Pharmacist Membership Interests may fill a Pharmacist Governor vacancy, and Innovis may fill an Innovis Governor vacancy. Each Governor elected under this Section to fill a vacancy holds office until a qualified successor is elected by the respective Members at the next regular meeting or special meeting of the Members.

Section 5.11    **Board Meetings**. Organization of Meetings. At all meetings of the Board, the President or, in the absence of the President, any person appointed by the President shall act as Chairman, and the Secretary or, in the absence of the Secretary, any person appointed by the Chairman, shall act as Secretary.

**(b)**    Place of Meetings. If the Board fails to select a place for meeting, the meeting shall be held at the principal executive office of the Company.

**(c)**    Time of Meetings. Meetings of the Board may be held from time to time at any place within or without the state that the Board may select.

**(d)**    Remote Communications.    Board meetings may utilize remote communications subject to the following:

(1)    Simultaneous Participation. Any meeting among Governors may be conducted solely by any one or more means of remote communication through which all of the Governors may participate with each other during the meeting:

(i)    if the same notice is given of the conference as would be required by the North Dakota Limited Liability Company Act for a meeting; and

9

Confidential Information - Subject to Protective Order

EH000098

(ii)    if the number of Governors participating in the conference would be sufficient to constitute a quorum at a meeting.

Participation in a meeting by that means constitutes presence in person at the meeting.

(2)    Other Conferences.  A Governor may participate in a Board of Governors meeting not described in subdivision (1) of this Section 5.11(d) by any means of remote communication through which the Governor, other Governors so participating, and all Governors physically present at the meeting may simultaneously hear each other during the meeting.  Participation in a meeting by that means constitutes presence in person at the meeting.

(e)    Notice.  A Governor may call a Board meeting by giving ten (10) days' notice to all Governors of the date, time and place of the meeting.  The notice need not state the purpose of the meeting.

(f)    Previously Scheduled Meetings.  If the day or date, time and place of a Board meeting have been announced at a previous meeting of the Board, no notice is required.  Notice of an adjourned meeting need not be given other than by announcement at the meeting at which adjournment is taken.

(g)    Waiver of Notice and Objection.  A Governor may waive notice of a meeting of the Board.  A waiver of notice by a Governor entitled to notice is effective whether given before, at or after the meeting.  Such notice is effective whether given in writing, orally, or by attendance.  Attendance by a Governor at a meeting is a waiver of notice of that meeting, except where the Governor objects at the beginning of the meeting to the transaction of business because the meeting is not lawfully called or convened and does not participate thereafter at the meeting.

(h)    Absent Governors.  A Governor may give advance written consent or opposition to a proposal to be acted on at a Board meeting.  If the Governor is not present at the meeting, consent or opposition to a proposal does not constitute presence for purposes of determining the existence of a quorum.  However, consent or opposition shall be counted as a vote of a Governor present at the meeting in favor of or against the proposal and shall be entered in the minutes or other record of action at the meeting, if the proposal acted on at the meeting is substantially the same or has substantially the same effect as the proposal to which the Governor has consented or objected.

(i)    Quorum.  A majority of the Governors currently holding office present at a meeting is a quorum for the transaction of business; provided, however, that such quorum shall consist of at least two of the Innovis Governors.  In the absence of a quorum, a majority of the Governors present may adjourn a meeting from time to time until a quorum is present.  If a quorum is present

10

Confidential Information - Subject to Protective Order

EH000099

when a duly called or held meeting is convened, the Governors present may continue to transact business until adjournment, even though the withdrawal of a number of Governors originally present leaves less than the proportion or number otherwise required for a quorum.

**(j)**    Act of 60% of Board Required.    The Board shall take action by the affirmative vote of sixty percent (60%) of the Governors, except where the North Dakota Limited Liability Company Act requires the affirmative vote of a larger number; provided, however, that the Board shall not take any action that would jeopardize the tax-exempt status, mission or image of Innovis in the community or, without the prior express written consent of Innovis, that would jeopardize the payment of all or some of that certain Promissory Notes from the Company to Innovis dated as of May 1, 2016, in the original sum of $300,000.

   (1)    Supermajority Required.    Notwithstanding anything to the contrary in Section 5.11(j) above, the following actions shall require the affirmative vote of a majority of the Governors and at least two of the Innovis Governors:

      (i)    authorizing capital expenditures in excess of $20,000;

      (ii)    approving compensation for any new pharmacists hired by the Company and any increase in compensation for any existing pharmacist.

      (iii)    approving the incurrence of debt in excess of $10,000, except for such debt incurred in the normal course of business for the acquisition of pharmaceuticals by the Company;

      (iv)    Intentionally Omitted;

      (v)    approving the transfer of a Member's Membership Interests or any of the Member's Units;

      (vi)    approving the creation of any deferred compensation or benefit plans;

      (vii)    Intentionally Omitted;

      (viii)    Intentionally Omitted; and

      (ix)    Intentionally Omitted.

**(k)**    Action Without Meeting.    The Board may take action without a meeting as follows:

11

Confidential Information - Subject to Protective Order                    EH000100

(1) Method. Any action required or permitted to be taken at a meeting of the Board of Governors, not needing approval by the Members, may be taken by written action signed by the number of Governors that would be required to take such action at a meeting of the Board of Governors at which Governors are present in person.

(2) Effective Time. The written action is effective when signed by, or consented to by authenticated electronic communication, the required number of Governors, unless a different effective time is provided in the written action.

(3) Notice and Liability. When written action is permitted to be taken by less than all Governors, all Governors must be notified immediately of its text and effective date. Failure to provide the notice does not invalidate the written action. A Governor who does not sign or consent to the written action has no liability for the action or actions taken by the written action.

(l) Committees. A resolution approved by the affirmative vote of a majority of the Board of Governors may establish committees having the authority of the Board in the management of the business of the Company only to the extent provided in the resolution. Committees may include a special litigation committee consisting of one (1) or more independent Governors or other persons to consider legal rights or remedies of the Company and whether those rights and remedies should be pursued. Committees other than special litigation committees are subject at all times to the direction and control of the Board of Governors.

(1) Membership. Committee Members must be natural persons. A committee consists of one (1) or more persons, who need not be Governors, appointed by affirmative vote of a majority of the Governors present.

(2) Procedure. Subsections a through k of this Section 5.11 apply to committees and Members of committees to the same extent as those subsections apply to the Board of Governors and Governors.

(3) Minutes. Minutes, if any, of committee meetings must be made available upon request to Members of the committee and to any Governor.

(4) Standard of Conduct. The establishment of, delegation of authority to, and action by a committee does not alone constitute compliance by a Governor with the standard of conduct set forth in N.D.C.C. Section 10-32.1-41.

(5) Committee Members Considered Governors. Committee Members are considered to be Governors with respect to standards of conduct

12

Confidential Information - Subject to Protective Order

EH000101

and conflicts of interest under N.D.C.C. Section 10-32.1-41 and indemnification of Governors under N.D.C.C. Section 10-32.1-40.

(m)     Standards of Conduct. Except as provided in N.D.C.C. Section 10-32.1-41, the following standards of conduct shall govern the conduct of Governors:

(1)     Standard and Liability. A Governor shall discharge the duties of the position of Governor in good faith, and in a manner the Governor reasonably believes to be in the best interest of the Company, and with the care an ordinarily prudent person in a like position would exercise under similar circumstances. A person who so performs those duties is not liable by reason of being or having been a Governor of the Company.

(2)     Reliance. A Governor is entitled to rely on information, opinions, reports, or statements, including financial statements, and other financial data, in each case prepared or presented by:

(i)     one or more managers or employees of the Company whom the Governor reasonably believes to be reliable and competent in the matters presented;

(ii)     counsel, public accountants or other persons as to matters that the Governor reasonably believes are within the person's professional or expert competence; or

(iii)     a committee of the Board, upon which the Governor does not serve, duly established in accordance with the North Dakota Limited Liability Company Act, as to matters within its designated authority, if the Governor reasonably believes the committee to merit confidence.

This subdivision (2) does not apply to a Governor who has knowledge concerning the matter in question, but makes unwarranted the reliance otherwise permitted by this subdivision (2).

(3)     Presumption of Assent. A Governor who is present at a meeting of the Board when an action is approved by the affirmative vote of a majority of the Governors present is presumed to have assented to the action approved, unless the Governor:

(i)     objects at the beginning of the meeting to the transaction of business because the meeting was not lawfully called or convened and does not participate thereafter in the meeting, in which case the Governor shall not be considered to be present at the meeting for any purpose;

13

Confidential Information - Subject to Protective Order     EH000102

    (ii)      votes against the action at the meeting; or

    (iii)     is prohibited by a conflict of interest, as set forth in N.D.C.C. Section 10-32.1-41, from voting on the action.

(4)    Limits of Personal Liability. No Governor of the Company shall be personally liable to the Company nor to its Members for any monetary damages or breach of fiduciary duty as a Governor. However, this provision shall not eliminate or limit the liability of a Governor:

    (i)      For any breach of the Governor's duty of loyalty to the limited liability company or to its Members;

    (ii)     For acts or omissions not in good faith or that involve intentional misconduct or a knowing violation of law;

    (iii)    For any distributions from the Company which are determined to be improper under N.D.C.C. Section 10-32.1-31;

    (iv)    For any transaction from which the Governor derived an improper personal benefit; or

    (v)     For any act or omission occurring before the date when the provision in the Articles of Organization eliminating or limiting liability becomes effective.

## ARTICLE 6.
## MANAGERS

**Section 6.1**    <u>Designation of Managers</u>. There shall be not less than three (3) Managers of the Company, all of whom shall be natural persons. The Chief Manager of the Company shall alternatively be known as the President. In addition, there shall be a Secretary and a Treasurer of the Company. The Managers shall be chosen by the Board; provided, however, at least one Manager shall be an Innovis employee that is not a pharmacist Member. The Board may also choose one or more Vice-Presidents.

**Section 6.2**    <u>Duties of Managers</u>. The Managers of the Company shall have the following duties:

**(a)**    Chief Manager (President). The Chief Manager shall:

(1)    have general active management of the business of the Company;

(2)    when present, preside at all meetings of the Board and of the Members;

(3)    see that all orders and resolutions of the Board are carried into effect;

14

Confidential Information - Subject to Protective Order

EH000103

(4)    sign and deliver in the name of the Company any deeds, mortgages, bonds, contracts or other instruments pertaining to the business of the Company, except in cases in which the authority to sign and deliver is required by law to be exercised by another person, or is expressly delegated by the Board to some other manager or agent of the Company;

(5)    maintain records of and, whenever necessary, certify all proceedings of the Board and of the Members;

(6)    be an individual holding a valid pharmacist license from the State of North Dakota (a "Pharmacist"); and

(7)    perform other duties prescribed by the Board.

**(b)**    Vice-President. The Vice-President, if any, or, if there shall be more than one, the Vice-Presidents in the order determined by the Board, shall, in the absence or disability of the President, perform the duties and exercise the powers of the President and shall perform such other duties and shall have such other powers as the Board may from time to time prescribe.

**(c)**    Treasurer. The Treasurer shall:

(1)    keep accurate financial records for the Company;

(2)    deposit all money, drafts, and checks in the name of and to the credit of the Company in the banks and depositories designated by the Board;

(3)    endorse for deposit all notes, checks, and drafts received by the Company as ordered by the Board, making proper vouchers therefor;

(4)    disburse Company funds and issue checks and drafts in the name of the Company, as ordered by the Board;

(5)    render to the President and the Board, whenever requested, an account of all transactions by the Treasurer and of the financial condition of the Company; and

(6)    perform other duties prescribed by the Board or by the President.

**(d)**    Secretary. The Secretary shall:

(1)    attend all meetings of the Board, all meetings of the Members and, when required, all meetings of standing committees;

15

Confidential Information - Subject to Protective Order

EH000104

(2)    record all proceedings of the meetings in a book to be kept for that purpose;

(3)    give, or cause to be given, notice of all meetings of the Members and meetings of the Board; and

(4)    perform other duties prescribed by the Board or by the President.

(e)    **Multiple Managerial Positions.** Any number of managerial positions or functions of those positions may be held or exercised by the same person. If a document must be signed by persons holding different positions or functions and a person holds or exercises more than one of those positions or functions, that person may sign the document in more than one capacity, but only if the document indicates each capacity in which the person signs.

(f)    **Managers Deemed Elected.** In the absence of an election or appointment of managers by the Board, the person or persons exercising the principal functions of the President, Treasurer and Secretary are deemed to have been elected to those offices, except for the purpose of determining the location of the principal executive office, which in that case is the registered office of the Company.

(g)    **Qualifications.** The Managers shall be natural persons.

(h)    **Compensation.** The compensation, if any, of all Managers of the Company shall be fixed by the Board.

(i)    **Contract Rights.** The election or appointment of a person as a Manager or agent does not, of itself, create contract rights. However, the Company may enter into a contract with a Manager or agent. The resignation or removal of the Manager or agent is without prejudice to any contract rights or obligations.

(j)    **Resignation.** Any Manager may resign at any time by giving written notice to the Company. The resignation is effective without acceptance when notice is given to the Company, unless a later effective date is specified in the notice.

(k)    **Removal.** A Manager may be removed at any time, with or without cause, by resolution approved by the affirmative vote of a majority of the Governors present, subject to the provisions of any member control agreement.

(l)    **Vacancy.** A vacancy in an office because of death, resignation, removal, disqualification, or other cause may, or in the case of the office of President, Treasurer or Secretary shall, be filled for the unexpired portion of the term in the manner determined by the Board or pursuant to subsection (f) of this Section 6.2 regarding the election of managers.

16

Confidential Information - Subject to Protective Order

EH000105

**Section 6.1    Delegation**.  Unless prohibited by a resolution approved by an affirmative vote of a majority of the Governors present, a Manager elected or appointed by the Board may, without the approval of the Board, delegate some or all of the duties and powers of an office to other persons.  A Manager who delegates the duties or powers of an office remains subject to the standard of conduct for a Manager with respect to the discharge of all duties and powers to be delegated.

**Section 6.2    Standards of Conduct**.  Except as provided in N.D.C.C. Section 10-32.1.41, a Manager shall discharge the duties of an office in good faith in a manner the Manager reasonably believes to be in the best interests of the Company, and with the care an ordinarily prudent person in a like position would exercise under similar circumstances.  A person exercising the principal functions of an office or to whom some or all of the duties and powers of an office are delegated pursuant to Section 6.1 of this Article VI is deemed a Manager for all purposes.

## ARTICLE 7.
## LOANS AND ADVANCES

**Section 7.1    Prerequisites**.  The Company may lend money to, guarantee an obligation of, become a surety for, or otherwise financially assist a person, if the transaction or class of transactions to which the transaction belongs is approved by the affirmative vote of a majority of the Governors present and:

(a)    is in the usual and regular course of business of the Company;

(b)    is with, or for the benefit of:

(1)    a related organization,

(2)    an organization in which the Company has a financial interest,

(3)    an organization with which the Company has a business relationship, or

(4)    an organization to which the Company has the power to make donations;

(c)    is with, or for the benefit of, a Manager or other employee of the Company, or a subsidiary, including a Manager or employee who is a Governor of the Company or a subsidiary, and may reasonably be expected, in the judgment of the Board, to benefit the Company; or

(d)    has been approved by the owners of two-thirds (2/3) of the voting power of persons other than the interested person or persons.

**Section 7.1    Interest and Security**.  A loan, guaranty, a surety contract, or other financial assistance under this Article may be with or without interest and may be unsecured or may be secured in any manner, including, without limitation, a grant of a security interest in Membership Interests of the Company.

17

Confidential Information - Subject to Protective Order                                    EH000106

**Section 7.2    Advances**.  The Company may, without a vote of the Governors or its Members, advance money to its Members, Governors, Managers or employees who provide services to cover expenses that can be reasonably anticipated to be incurred by them in the performance of their duties and for which they would be entitled to reimbursement in the absence of an advance.

**ARTICLE 8.**
**BOOKS AND RECORDS**

**Section 8.1    Required Records**.  The Company shall keep at its principal executive office, or at another place or places within the United States determined by the Board, the following:

**(a)**    a current list of the full name and last known business, residence or mailing address of each Member, Governor and President;

**(b)**    a current list of the full name and last known business, residence or mailing address of each assignee of financial rights other than a secured party, and a description of the rights assigned;

**(c)**    a copy of the Articles of Organization and all amendments to the Articles;

**(d)**    copies of this Agreement and any currently effective operating agreement;

**(e)**    copies of the Company's federal and state income tax returns and reports for the three (3) most recent years;

**(f)**    financial statements required by Section 8.5 of this Article;

**(g)**    records of all proceedings of Members for the last three (3) years;

**(h)**    records of all proceedings of the Board of Governors for the last three (3) years;

**(i)**    reports made to Members generally within the last three (3) years;

**(j)**    Member control agreements and statements of contributions accepted, including for each contribution:

    (1)    the identity of the Member to whom the contribution relates;

    (2)    the class or series to which the contribution pertains;

    (3)    the amount of cash accepted by the Company or promised to be paid to the Company;

    (4)    a description of any services rendered to or for the benefit of the Company or promised to be rendered to or for the benefit of the Company; and

18

Confidential Information - Subject to Protective Order    EH000107

(5)    the value accorded to the contribution by the Board to:

    (i)    any other property transferred or promised to be transferred to the Company; and

    (ii)    any services rendered to or for the benefit of the Company or promised to be rendered to or for the benefit of the Company;

**(k)**    a statement of all contribution agreements, including for each contribution agreement:

(1)    the identity of the would-be contributor;

(2)    the class or series to which the future contribution pertains; and

(3)    as to each future contribution to be made, the same information as subsection j of this Section requires for contributions already accepted;

**(l)**    a statement of all contribution allowance agreements, including for each contribution allowance agreement:

(1)    the identity of the would-be contributor;

(2)    the class or series to which the future contribution pertains; and

(3)    as to each future contribution allowed to be made, the same information as subsection j of this Section requires for contributions already accepted;

**(m)**    an explanation of any restatement of value of previous contributions which is made by the Board;

**(n)**    any written consents obtained from Members under this Chapter;

**(o)**    copy of agreements, contracts, or other arrangements or portions of them incorporated by reference in fixing the relative rights and preferences of any class or series of Membership Interests.

**Section 8.2**    **Right to Inspect**. A Member has the following inspection rights:

**(a)**    an absolute right, upon written demand, to examine and copy, in person or by a legal representative, at any reasonable time, and the Company shall make available within ten (10) days after receipt by a manager of the Company of the written demand, all documents referred to in Section 8.1 of this Article.

19

Confidential Information - Subject to Protective Order

EH000108

      **(b)**    if a Member for at least six (6) months immediately preceding the Member's demand or if the holder of record of at least five (5%) percent of all Membership Interests of the Company, the right, upon written demand, to examine and copy, in person or by a legal representative, other Company records at any reasonable time if the Member demonstrates a proper purpose for the examination.

A "proper purpose" is one reasonably related to the person's interest as a Member of the Company.

**Section 8.3**    **Other Use Prohibited**.  A Member who has gained access under this Article to any Company record may not use or furnish to another for use the Company record or a portion of the contents for any purpose other than a proper purpose.  Upon application of the Company, a Court may issue a protective order or order other relief as may be necessary to enforce the provisions of this Section.

**Section 8.4**    **Cost of Copies**.  Copies of the information referred to in Section 8.1 must be furnished at the expense of the Company.  In all other cases, the Company may charge the requesting party a reasonable fee to cover the expenses of providing the copy.

**Section 8.5**    **Financial Statements**.  The Company shall, upon written request by a Member, furnish annual financial statements, including at least a balance sheet as of the end of the fiscal year and a statement of income for the fiscal year, which shall be prepared on the basis of accounting methods reasonable in the circumstances and may be consolidated statements of the Company and one or more of its subsidiaries.

      **(a)**    In the case of statements audited by a public accountant, each copy shall be accompanied by a report setting forth the opinion of the accountant on the statements.

      **(b)**    In other cases, each copy shall be accompanied by a statement of the Treasurer or other person in charge of the Company's financial records stating the reasonable belief of the person that the financial statements were prepared in accordance with accounting methods reasonable in the circumstances, describing the basis of presentation, and describing any respects in which the financial statements were not prepared on a basis consistent with those prepared for the previous year.

**ARTICLE 9.**
**CONTRIBUTIONS**

**Section 9.1**    **Authorized Contributions**.  The Company may issue Membership Interests and accept contribution allowance agreements only when authorized by the Board.

      **(a)**    Permissible Forms.  A person may make a contribution to the Company by paying money or transferring the ownership of an interest in property to the Company, or rendering services to or for the benefit of the Company.

20

Confidential Information - Subject to Protective Order

EH000109

**(b)**    Acceptance of Contributions.  No purported contribution is to be treated or considered as a contribution, unless:

(1)    the Board accepts the contribution on behalf of the Company and in that acceptance:

(i)    describes the contribution, including terms of future performance, if any; and

(ii)    states the value being accorded to the contribution; and

(2)    the fact of the contribution and the contribution's accorded value are both reflected in the Member control agreement and statement of contributions accepted and in any other required records of the Company.

**(c)**    Valuation.  The determination by the Board as to the amount or fair value or the fairness to the Company of the contribution accepted or to be accepted by the Company or the terms of payment or performance, including under a contribution agreement or a contribution allowance agreement, are presumed to be proper if they are made in good faith and on the basis of accounting methods or a fair valuation or other method, reasonable in the circumstances.

(1)    Governors who are present and entitled to vote, and who:

(i)    intentionally or without reasonable investigation, fail to vote against approving a consideration that is unfair to the Company; or

(ii)    overvalue property or services received or to be received by the Company as a contribution;

are jointly and severally liable to the Company for the benefit of the then Members who did not consent to and are damaged by the action, to the extent of the damages of those Members.

(2)    A Governor against whom a claim is asserted pursuant to this Section, except in the case of knowing participation in a deliberate fraud, is entitled to contribution on an equitable basis from other Governors who are liable under this subsection.

**(d)**    Terms of Membership Interests.  All Membership Interests of the Company:

(1)    shall be in classes and series as established by the Board; and

(2)    shall be ordinary Membership Interests entitled to vote and shall have equal rights and preferences in all matters not otherwise

21

Confidential Information - Subject to Protective Order                    EH000110

provided for by the Board, unless and to the extent that the Articles of Organization or this Agreement have fixed the relative rights and preferences of different classes and series.

(e)    Procedure for Fixing Terms.   The power granted in subsection a of this Section 9.1 may be exercised by resolution approved by the affirmative vote of a majority of the Governors present establishing a class or series, setting forth the designation of the class or series, and fixing the relative rights and preferences of the class or series.  A statement setting forth the name of the Company and the text of the resolution and certifying the adoption of the resolution and the date of adoption shall be filed with the Secretary of State before the issuance of any Membership Interests for which the resolution creates rights or preferences not set forth in the Articles of Organization. The resolution is effective when the statement has been filed with the Secretary of State.

(f)    Specific Terms.   Without limiting the authority of the Company, the Company may issue Membership Interests of a class or series:

(1)    subject to the right of the Company to redeem any of those Membership Interests at a price fixed for their redemption by the Board;

(2)    entitling the Membership Interests to cumulative, partially cumulative, or non-cumulative distributions;

(3)    having preference over any class or series of Membership Interests for the payment of distributions of any or all kinds;

(4)    convertible into Membership Interests of any other class or any series of the same or another class; or

(5)    having full, partial or no voting rights, except as provided in N.D.C.C. Section 10-32.1-21.6.

### ARTICLE 10.
### MEMBERSHIP INTERESTS

**Section 10.1    Statement of Membership Interests**.  At the request of any Member, the Company shall state in writing the particular Membership Interests owned by that Member at the moment the Company makes the statement.  The statement shall describe:

(a)    The Member's rights:

(1)    to vote;

(2)    to share in profits and losses; and

22

Confidential Information - Subject to Protective Order

EH000111

(3)    to share in distributions;

(4)    Restrictions on assignments of financial rights or governance rights then in effect; and

(5)    Any assignment of the Member's rights then in effect other than a security interest.

**Section 10.2   Transfer of Membership Interests.**  Membership Interests in the Company may be transferred as set forth in this Article X, only to the extent permitted by law, and subject to approval by the Board of Governors pursuant to Section 5.11(j)(1)(v).

**(a)**    Intentionally Omitted

**(b)**    Pharmacist Member Transfers

A Pharmacist Member may transfer his or her Membership Interests to a pharmacist licensed in the State of North Dakota; provided, however, that the Pharmacist Member shall first offer the sale of his or her Membership Interests to another Pharmacist Member. If no Pharmacist Member accepts the offer to purchase the Membership Interests, the selling Pharmacist Member shall then be permitted to sell his or her Membership Interests to another qualifying Pharmacist. The price for the Pharmacist Member's Membership Interests shall be established as set forth in Article X, Section 10.3 below.

**(c)**    Transfer of Innovis Membership Interest

Innovis may transfer its Membership Interests to another entity; provided, however, that Innovis shall first offer the sale of its Membership Interests to a Pharmacist Member. The price for Innovis's Membership Interests shall be established as set forth in Article X, Section 10.3 below. Notwithstanding anything to the contrary in this Article X, Section 10.2, a merger, sale of substantially all of the assets, or a transfer to an entity controlling, controlled by or under common control with Innovis shall not be deemed a "transfer" of Innovis's Membership Interests.

**(d)**    Exit Right of Innovis Resulting from Jeopardy to its Exempt Status or Violation of Law.

Notwithstanding anything in this Agreement to the contrary, in the event that the Company operates, or comes to be regarded by the Internal Revenue Service as operating, in a way that jeopardizes Innovis's tax exempt status, or in a manner that violates other laws applicable to the Company or Innovis (any such event, a "Redemption Event"): (i) the Company shall redeem all of the Membership Interests held by Innovis; (ii) the redemption price of the Innovis Membership Interests shall be calculated as of the date of the Redemption Event in the same manner as if a Transfer Event had occurred pursuant to Article X, Section 10.3(a) below; (iii) the closing on such redemption shall occur within 120 days following the occurrence of the Redemption Event; and (iv) the Company shall pay the full redemption price for all Innovis Membership Interests in full, in the form or cash or other immediately available funds, at closing. The valuation process described at Article X, Section 10.3(a), and the Company's actions to acquire financing (if necessary) to effect redemption, shall proceed expeditiously and on a timeframe to allow for such

23

Confidential Information - Subject to Protective Order    EH000112

closing.    The Company shall not intentionally take any actions, or fail to any actions, that would cause a Redemption Event.

      **(e)**     Intentionally Omitted.

      **Section 10.3**  **Transfer Process Methodology**.  Upon the occurrence of (a) the death of a Pharmacist Member; (b) retirement of a Pharmacist Member; (c) the occurrence, with respect to a Member, of Financial Problems; or (d) the desire or attempt of a Pharmacist Member to transfer or the attempt to transfer (during life or at death) his or her Membership Interests as set forth in Article X, Section 10.2(b) above or of Innovis to transfer its Membership Interests as set forth in Article X, Section 10.2(c) (a "Transfer Event"), the Member affected by such Transfer Event, or his or her personal representative, attorney-in-fact, trustee, guardian or the like, as the case may be (a "Selling Member"), shall give written notice to the other Members of the occurrence of the Transfer Event (the "Transfer Notice").   The Transfer Notice shall disclose the number of Membership Units affected by the Transfer Event and the name and address of, and the consideration, if any, to be paid by any proposed purchaser, and shall contain the Selling Member's offer to sell all, but not less than all, such Membership Units to (i) first, the other Pharmacist Members (the "Pharmacist Member Option") and (ii) then, Innovis (the "Innovis Option") pursuant to the provisions of this Section 10.3, if the Selling Member is a Pharmacist Member, or to the Pharmacist Members, if the Selling Member is Innovis. For purposes of this Section 10.3, "retirement" or "retired" means the affected Pharmacist Member is no longer providing at least 750 hours of professional pharmacist services to the Company in any consecutive 12-month period.  For purposes of this Section 10.3, "Financial Problems" means (i) bankruptcy or insolvency, (ii) the filing or commencement of a voluntary or involuntary proceeding in bankruptcy, insolvency, receivership or other similar law now or hereafter in effect in a court of competent jurisdiction, or an action to appoint a trustee, receiver, or similar person, which continues for a period of ninety (90) days without dismissal, or (iii) the entry into any arrangement, composition or reorganization for the benefit of creditors.

      **(a)**     Purchase Price Determination.

The purchase price for a Membership Units subject to a Transfer Event shall be calculated by multiplying the Net Book Value of the Company as of the date of the Transfer Notice by a fraction, the numerator of which is the total number of Membership Units set forth in the Transfer Notice and the denominator of which is the total number of Membership Units held by all Members. "Net Book Value of the Company" shall mean the value of total assets, less all intangible assets and less all liabilities, all as reflected in the financial statements and records of the Company kept for accounting (not tax) purposes, as reasonably determined and calculated by the Treasurer of the Company and approved by the Board.  At the request of any Member, an independent accounting firm, mutually agreed upon by the Selling Member and the Company, shall prepare a "Valuation Letter" to verify, and adjust as appropriate, the calculation of Net Book Value of the Company, and in such case, the Valuation Letter shall be determinative and final as to the Net Book Value of the Company.  The purchase price shall be paid by delivery of twenty percent (20%) of the purchase price in cash or certified check at the closing and a promissory note for the balance, which promissory note shall be payable in four (4) equal annual installments of principal together with accrued interest computed at a rate equal to the "reference rate" of U.S. Bank National Association, Minneapolis, Minnesota as of the date of the closing of the purchase and sale determined pursuant

24

Confidential Information - Subject to Protective Order

EH000113

to Sections 10.(3)(b)(1) or (2) below. The first such installment shall be due and payable on the first anniversary of such closing, and each successive installment shall be due and payable on the successive anniversaries of the closing.

        **(b)**    Election of Options - Pharmacist Member Transfer. In the event of a Transfer Notice given by a Pharmacist Member:

        (1)    Pharmacist Member Option.

If a Pharmacist Member elects to exercise a Pharmacist Member Option, it shall, within thirty (30) days after the later of (i) the receipt of the Transfer Notice or (ii) the date of the Valuation Letter, if any, give written notice of such election to the Selling Member and concurrently give the same notice to the Members. If more than one (1) Pharmacist Member elects to exercise the Pharmacist Member Option, then each Pharmacist Member who has so elected shall be entitled to purchase a pro rata portion (based on the respective Membership Units of the electing Pharmacist Members) of the Membership Units of the Selling Member. The sale of the Selling Member's Units shall be closed within sixty (60) days after the expiration of such thirty (30) day period by tendering the purchase price to the Selling Member in the same manner as set forth in Section 10.3(a) above.

        (2)    Innovis Option.

If then permitted by law to acquire and own additional Membership Units, and no Pharmacist Members elect to fully exercise the Pharmacist Member Option within the thirty (30) day period referred to in Section 10.3(b)(1) above, Innovis shall have thirty (30) days from and after the last day of the thirty (30) day period referred to in Section 10.3(b)(1) to elect to exercise the Innovis Option. If Innovis elects to exercise the Innovis Option, it shall, within such thirty (30) day period, give written notice to the Selling Member of election to purchase all of such remaining Membership Units and concurrently give the same notice to the other Members. The sale of the Selling Member's Membership Units shall be closed within sixty (60) days after the expiration of such thirty (30) day period by tendering the purchase price to the Selling Member in the same manner as set forth in Section 10.3(a).

        (3)    Sale to Third-Party.

If neither the Pharmacist Members nor Innovis gives timely written notice of his or her or its election to purchase all of the Membership Units subject to the Transfer Notice, the Selling Member shall have the right, at any time within ninety (90) days after the expiration of the thirty (30) day period referred to above, to sell or otherwise dispose of all of the Membership Units specified in such Transfer Notice to a pharmacist licensed by the North Dakota Board of Pharmacy, upon the same terms and conditions as specified in said Transfer Notice, including at the price set forth therein.

        **(c)**    Election of Options - Innovis Transfer. In the event of a Transfer Notice given by Innovis:

        (1)    Pharmacist Member Option.

25

Confidential Information - Subject to Protective Order

EH000114

If a Pharmacist Member elects to exercise a Pharmacist Member Option, it shall, within thirty (30) days after the later of (i) the receipt of the Transfer Notice or (ii) the date of the Valuation Letter, if any, give written notice of such election to Innovis to purchase all of Innovis's Membership Units and concurrently give the same notice to the Members. If more than one (1) Pharmacist Member elects to exercise the option to purchase Innovis's Membership Interests, then each Pharmacist Member who has so elected shall be entitled to purchase an equal number (or such number as agreed upon by such electing Pharmacist Members) of the Membership Units of Innovis, provided it results in the purchase of all of the offered Membership Units. The sale of Innovis's Membership Units shall be closed within sixty (60) days after the expiration of such thirty (30) day period by tendering the purchase price to Innovis in the same manner as set forth in Section 10.3(a).

> (2)    Sale to a Third-Party.

If one or more Pharmacist Members fail to give timely written notice of his or her election to exercise the option to purchase all of Innovis's Membership Interests subject to the Transfer Notice, Innovis shall have the right, at any time within ninety (90) days after the expiration of the thirty (30) day period referred to above, to sell or otherwise dispose of the Membership Units specified in such notice to a pharmacist licensed by the North Dakota Board of Pharmacy or any third-party permitted to own a Membership Interest in the Company, upon the same terms and conditions as specified in said Transfer Notice, including at the price set forth therein.

**Section 10.4  Pharmacy Law Change**. The parties recognize and acknowledge current laws in North Dakota require that Company, and not Innovis, own and operate a pharmacy at presently two, and potentially additional, clinics owned and operated by Innovis, but absent such laws, Innovis would own and operate all such pharmacies. Notwithstanding anything in this Article 10 to the contrary, if, at any point or time during while Innovis is a Member, the laws of North Dakota change such that Innovis or any entity controlling Innovis, under the control of Innovis or under the common control with Innovis is able to own and operate a pharmacy in such clinics, at the election of Innovis exercised by written notice to the Pharmacist Members, Innovis may purchase all of the Membership Interests of the Pharmacist Members (the "Law Change Purchase Notice"). The Law Change Purchase Notice shall specify a closing date for (a) the number of Membership Units required to raise Innovis's ownership of all Membership Units to fifty-one percent (51%), not sooner than 60 days following the Law Change Purchase Notice; and (b) all remaining Pharmacist Membership Units, not sooner than 60 months following the Law Change Purchase Notice. At the first such closing, Innovis shall purchase from each Pharmacist Member the number of whole or partial Membership Units calculated by multiplying the total Membership Units to be acquired by a fraction, the numerator of which is the number of Membership Units owned by the Pharmacist Member, and the denominator of which is the total number of Membership Units owned by all Pharmacist Members. At each closing, the purchase price of each Pharmacist Member Membership Unit shall be calculated by dividing the Net Book Value of the Company on the date of the particular closing by the total number of Membership Units held by all Members. The purchase of the Pharmacist Member's Membership Units shall be closed on the dates specified in the Law Change Purchase Notice by tendering the purchase price to the Pharmacist Members in the same manner as set forth in Section 10.3(a).

26

Confidential Information - Subject to Protective Order    EH000115

**Section 10.5**  **Preemptive Rights.**   The preemptive rights of Members to make contributions of a certain amount or to make contribution allowance agreements specifying future contributions of a certain amount before the Company may accept new contributions from other persons or make contribution allowance agreements with other persons shall be as set forth in the Articles of Organization.   However, no amendment to the Articles of Organization or to this Agreement which has the effect of denying, limiting or modifying the preemptive rights of Members shall be adopted if the votes of a proportion of the voting power sufficient to elect a Governor at the election of the Board under cumulative voting are cast against the amendment.

## ARTICLE 11.
## DISTRIBUTIONS

**Section 11.1**  **When Permitted.** Distributions are to be permitted as follows:

    **(a)**    Authorization.  The Board may authorize and cause the Company to make a distribution only:

        (1)    if the Board determines, in accordance with Section 11.2 of this Article XI, that the Company will be able to pay its debts in the ordinary course of business after making the distribution; and

        (2)    if the Board does not know before the distribution is made that the determination was or has become erroneous.

    **(b)**    Condition Precedent.  The Company may make the distribution if it is able to pay its debts in the ordinary course of business after making the distribution.

    **(c)**    Measurement of Effect.  The effect of a distribution on the ability of the Company to pay its debts in the ordinary course of business after making the distribution must be measured in accordance with N.D.C.C. Section 10-32.1-31.3.

    **(d)**    Restrictions.  The right of the Board to authorize, and the Company to make, the distributions may be prohibited, limited, or restricted by, or the rights and priorities of persons to receive distributions may be established by, an agreement.  Unless so affected by an agreement, and except to the extent the Board acts to provide otherwise, distributions to each member shall be in proportion to the number of Membership Units held by a Member.

**Section 11.2**  **Determination Presumed Proper.**  A determination that the Company will be able to pay its debts in the ordinary course of business after the distribution is presumed to be proper if the determination is made in compliance with the standard of conduct provided in N.D.C.C. Section 10-32.1-41 on the basis of financial information prepared in accordance with accounting methods, or a fair valuation or other method, reasonable in the circumstances.  No liability under N.D.C.C. Section 10-32.1-32 will accrue if the requirements of this Section 11.2 have been met.

27

Confidential Information - Subject to Protective Order

EH000116

## ARTICLE 12.
## AMENDMENT

The power to adopt, amend, or repeal this Agreement is vested in the Board. The power of the Board is subject to the power of the Members to adopt, amend, or repeal this Agreement. The Members do hereby adopt this Amended and Restated Operating Agreement of Dakota Clinic Pharmacy, LLC, and by doing so acknowledge and agree all prior Operating Agreements, including without limitation the Operating Agreement dated as of January 1, 2006, and any subsequent amendments thereto, are wholly amended, restated and superseded by this Amended and Restated Operating Agreement.

## ARTICLE 13.
## DISSOLUTION AND LIQUIDATION

**Section 13.1    Events Causing Dissolution**. The Company shall be dissolved only upon the occurrence of any of the following events:

**(a)**    The affirmative vote of Members pursuant to Section 4.9(a)(2)(ii), and any subsequent actions by such Members as are reasonably necessary or required; or

**(b)**    The final decree of a court that dissolution is required under applicable law.

**Section 13.2    Liquidation and Winding Up**. Upon an event triggering dissolution, the Company shall be liquidated and the Governors (or other person or persons designated by a decree of court) shall wind up the affairs of the Company. The Governors or other Persons winding up the affairs of the Company shall promptly proceed to the liquidation of the Company and, in settling the accounts of the Company, the assets and the property of the Company shall be distributed in the order of priority as set forth in a member control agreement, if any.

**Section 13.3    Compliance with Timing Requirements and Regulations**. In the event the Company is liquidated within the meaning of Treasury Regulations Section 1.704-1(b)(2)(ii)(g), distributions shall be made pursuant to this Article XIII to the Members who have positive Capital Account balances in compliance with Treasury Regulations Section 1.704-1(b)(2)(ii)(b)(2). If any Member has a deficit balance in its Capital Account (after giving effect to all contributions, distributions, and allocations for all fiscal periods including the fiscal period during which the liquidation occurs), such Member shall have no obligation to make any contribution to the capital of the Company with respect to such deficit, and such deficit shall not be considered a debt owed to the Company or to any Person for any purpose whatsoever.

**Section 13.4    Limitations on Distributions**. Notwithstanding any provision to the contrary in this Article XIII, no distribution shall be made that would result in violation of the Act.

## ARTICLE 14.
## INDEMNIFICATION

Each manager and Governor, past or present of the Company, and each person who serves or may have served at the request of the Company as director, officer, Governor, manager, employee or

28

Confidential Information - Subject to Protective Order                    EH000117

agent of another corporation, limited liability company, partnership, joint venture, trust or other enterprise, and their respective heirs and legal representatives, shall be indemnified by the Company in accordance with, and to the fullest extent permissible under, the provisions of N.D.C.C. Chapter 10-32.1, as it may be from time to time amended. Whenever the applicable provisions of N.D.C.C. Chapter 10-32.1 make indemnification permissible upon the finding that certain standards are met, such indemnification shall be mandatory by the Company.

Adopted by Written Action of the Members effective as of May 1, 2016.

**MEMBERS:**

_____
Paul Graalum

_____
Susan Herman

_____
Robert Haskell

_____
Laura Morris

Innovis Health, LLC

By: _____

Its: _____

29

## SCHEDULE 3.1

## MEMBERS AND MEMBERSHIP UNITS

| Member | Membership Units (percentage ownership/Membership Interest) |
|---|---|
| Paul Graalum | 12.75 (12.75 %) |
| Susan Herman | 12.75 (12.75 %) |
| Robert Haskell | 12.75 (12.75 %) |
| Laura Morris | 12.75 (12.75 %) |
| Innovis Health, LLC | 49 (49%) |

3.1-1

Confidential Information - Subject to Protective Order                    EH000119