# EXHIBIT H

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA


Jessica Kraft, et al.,           )
                                 )
Plaintiffs,                      )
                                 ) File No. 3:20-cv-00121
        vs.                      )
                                 )
Essential Health, et al.,        )
                                 )
        Defendants.              )


TRANSCRIPT OF DIGITAL RECORDING
OF TELEPHONIC STATUS CONFERENCE - DISCOVERY DISPUTE



Taken at
United States Courthouse
Fargo, North Dakota
April 30, 2025



BEFORE THE HONORABLE ALICE R. SENECHAL
-- UNITED STATES DISTRICT COURT MAGISTRATE JUDGE --



Kristen M. Keegan
220 East Rosser Avenue
Bismarck, ND 58501
701-530-2313
Proceedings recorded by digital recording, transcript produced
by computer-aided transcription.

APPEARANCES

Ashali Chimata
Michael Von Klemperer
Fegan Scott LLC
1763 Columbia Road Northwest, Suite 100
Washington, DC 20009

J. Barton Goplerud
Hudson, Mallaney, Schindler, & Anderson P.C.
5015 Grand Ridge Drive, Suite 100
West Des Moines, Iowa 50265

                              FOR THE PLAINTIFFS

          - - - - - - - - - -

Angela Lord
Vogel Law Firm
218 NP Avenue
Fargo, North Dakota  58107-1389

                              FOR THE DEFENDANTS

          - - - - - - - - - -


Certificate of Transcriber - Page 31

(The above-entitled matter came before the Court, the Honorable Alice R. Senechal, United States District Court Magistrate Judge, presiding, commencing at 9:00 a.m., Wednesday, April 30, 2025, in the United States Courthouse, Fargo, North Dakota.  The following telephonic proceedings were had and made of record by digital recording:)

---------------

THE COURT:  Good morning.  This is Judge Senechal. You're on a speakerphone in my chambers.  Sarah Lien from the clerks office is here, my law clerk, Claire Thompson, is here as well.

We are recording the conference today.  Today is April 30, 2025.  It is 9:00 a.m.  The case number is 3:20-cv-121.  I understand that Mr. Von Klemperer, Ms. Chimata are on the line for the plaintiffs; is that correct?

MS. CHIMATA:  Yes, Your Honor.

MR. VON KLEMPERER:  That's correct, Your Honor.  Good morning.

MR. GOPLERUD:  And Bart Goplerud, Your Honor.  Good morning.

THE COURT:  Good morning.  So three for plaintiffs. Anyone else on for the plaintiffs this morning?

And I understand Ange Lord's on for Essentia.  Are there others on the line for Essentia this morning?

MS. LORD:  No, Your Honor.  Just me this morning.

THE COURT:  Okay.

MS. LORD:  Good morning.

THE COURT:  Well, thank you for your letters of April 29.  It does seem like you've made a bit of progress since we last talked.  And again, I am sorry that we had to cut the last conference short, but, you know, that's -- that's just how my schedule turns out these days.  And actually, today I do have a hearing at 10:00.  I expect it to be no more than 15 minutes, so we will break at that time if we're not done by then.  And after that hearing then, the next thing on my calendar is at noon today so we should be okay.

And there are a few things raised in plaintiffs' letter of yesterday, and perhaps the easiest one is the request to perhaps adjust the schedule.

Mr. Von Klemperer, do you want to address that?

MR. VON KLEMPERER:  Yes, Your Honor.  Thank you.  I believe the parties are in agreement that an extension of approximately five weeks is appropriate just to allow a little more breathing room for us to complete all remaining depositions.  I believe defendants want to take a deposition of about nine plaintiffs, and the plaintiffs are in the process of taking depositions of about eight or nine Essentia witnesses. So we would just request that the schedule be adjusted by five weeks for discovery and all the remaining deadlines that follow that deadline.

THE COURT:  Thank you.  I'm looking at a stipulation that was submitted on December 16, and if we adjust everything by five weeks, my calculation would be that fact discovery would be completed by June 20th, discovery motions would be filed by July 8, plaintiffs' class certification expert disclosures and reports and motion for class certification would be due by August 26.

Defendants' class certification expert disclosures and reports and response to the motion for class certification would be due by October 10 and plaintiffs' reply by November 21.  Is all of that consistent with your agreement?

MR. VON KLEMPERER:  That sounds accurate to me, Your Honor.

MS. LORD:  Yes, Your Honor.

THE COURT:  Okay.  So there will be a text order adjusting those deadlines.

MR. VON KLEMPERER:  Thank you.

THE COURT:  Then it seems like most of the matters that remain at -- in dispute concern questions of the relationship between Dakota Clinic Pharmacy and Essentia.  But first let me just confirm the topic numbers.  There was a little bit of dispute between the two letters.  Essentia listed Topic 1(l), plaintiffs did not.  What's the status of any dispute about 1(l) which is described as a refrigerator temperature logs?  Mr. Von Klemperer?

MR. VON KLEMPERER:  I -- Your Honor, I believe that Essentia's first witness, Mr. Kaufenberg, did address that topic.  It overlaps a bit with, I believe, Topic 1(a) and he did address that.  Obviously we have concerns about his testimony itself.  But from our perspective, the topic has been addressed pending any -- any motion practice on the adequacy of his testimony itself.

THE COURT:  Thank you.  Ms. Lord, do you agree?

MS. LORD:  To the extent that there'd be any challenges on the adequacy of his testimony, I think that's where it goes to 1(l).  He was designated under 1(a) and there was discussion previously that 1(a) would be addressing Essentia Health's and Innovis Health, LLC's understanding of the temperature logs that they had received and so he did address that.

THE COURT:  Okay.

MS. LORD:  But to the extent that it's no longer an issue to designate for the notice, we would not challenge plaintiffs' position on that.

THE COURT:  Okay.  And Essentia also listed Topics 11, 12, and 13 where plaintiffs seem to take the position that those can be deferred at this time.  Mr. Von Klemperer, is that correct?

MR. VON KLEMPERER:  Your Honor, we received the written responses to our document requests on Monday evening,

along with a fairly small production, I believe, of documents responsive to those RFPs.  We have requested -- you know, we only just started reviewing the responses in those documents, and we requested last night to meet and confer on those responses.

I don't think we've heard back yet.  We only sent that email fairly late in the evening.  But I believe it would make the most sense to fully resolve any disputes over those responses, make sure we have all the responsive documents, and then proceed with those topics once that production is complete.

THE COURT:  So for today we'll consider that those topics remain deferred.

Ms. Lord, is that okay?

MS. LORD:  Yes.  No objection, Your Honor.

THE COURT:  All right.  Then let's dig in to the remaining topics.  And to the extent the arguments overlap among the various topic numbers, feel free to address them together.  I do think that most relate in one way or another to the relationship between Essentia and DCP, but you folks may see it differently.  Mr. Von Klemperer?

MR. VON KLEMPERER:  Your Honor, in our letter, we addressed Topics 1(c), 1(d), 2, 8, and 14 together because we see these topics as very similar and related in many ways.  In a nutshell, they address Essentia's policies and practices

before, during, and after the temperature excursion at issue in this case including prior temperature excursions.  Their response after the temperature excursion was -- we just lost someone -- it may have been Bart.

Your Honor, are you still on the line?

THE COURT:  I am, yes.

MR. VON KLEMPERER:  Okay.

THE COURT:  Ms. Lord, are you still on?

MS. LORD:  Yes.

THE COURT:  Okay.  Go ahead.

MR. VON KLEMPERER:  So 14 addresses Essentia's response after the excursion.  We don't see any legitimate objection.  We don't -- I don't think there's any reasonable burden issue here.  These are topics that individuals such as Mr. Hurley, who's already testify -- who's already scheduled to testify in several weeks in his individual capacity -- could easily address.  He was very involved in Essentia's response to the excursion and -- and their investigation about how to revamp Essentia's own temperature monitoring systems.

We think that these topics are very -- are highly relevant to a host of claims including, for example, our negligence claim, our consumer protection claim, Essentia's knowledge of appropriate temperature monitoring practices and the practices they had in place and how they compare to what Dakota Clinic had in place are all highly relevant to their

duty, to foreseeability, to the wrongfulness of their conduct which is relevant to the consumer protection claim.

I -- I really don't see what the objection is or what the basis for why they would refuse to put a witness up on these topics.

THE COURT:  I think I heard you say that you view it as something Mr. Hurley could address when he's deposed as an individual?

MR. VON KLEMPERER:  Yes -- yes, Your Honor.  Mr. Hurley is the individual who actually ran essentially an investigation into how Essentia should revamp its own temperature monitoring practices.  He -- and we've submitted a few documents to that effect, Exhibit F, for example, and Exhibit K that we submitted yesterday are documents that Mr. Hurley, himself, prepared in which -- when he was investigating Essentia's temperature monitoring practices.

That -- that is directly addressed in Topic 14, I think also Topic 1(d) touches on those issues, and so we don't see why he can't just be the 30(b)(6) designee to address that topic at the same time.

THE COURT:  And just help me understand why you view it as necessary that he address those topics as a 30(b)(6) witness in addition to addressing them as an individual.

MR. VON KLEMPERER:  Well, of course, Your Honor, a 30(b)(6) imposes some different obligations on the responding

party. They need to make sure the witness is fully prepared to address the topics, they need to educate him to the extent he doesn't already have personal knowledge, and then, of course, the testimony under 30(b)(6) is the corporation binding admission which is -- you know, slightly different from the testimony of an individual employee. And so we want to make sure that we have the corporation's official position on these issues.

THE COURT: And remind me, please, of Mr. Hurley's position with Essentia at the time.

MR. VON KLEMPERER: Defendants can correct me if I'm wrong, but I believe he is the COO, chief operating officer.

THE COURT: Thank you. Ms. Lord?

MS. LORD: There are several issues on -- on Mr. Von Klemperer's discussion this morning. It wouldn't be the plaintiffs who would determine who would be designated to address the topic under 30(b)(6), it would be the corporation who would do that, and the corporation would have the obligation to ensure that whomever's designated is prepared to speak to the topics.

With respect to number -- Topic 14, what plaintiffs are seeking is to delve in to a systemwide review within Essentia Health's entities across the system on refrigeration monitoring throughout the entire system and then what actions to be taken.

The issues in this case relate to two refrigerators at Dakota Clinic Pharmacy that Dakota Clinic Pharmacy had the contractual obligation under the Shared Services Agreement, Exhibit A, which is part of the Court's materials, under the pharmaceutical management services portion.

The pharmaceutical management services portion was in effect between August of 2017, and notice of termination of that provision was given pursuant to the contract by Innovis Health, LLC with the 60-day notice with the termination date of February 28th of 2020.

In that process is when the two refrigerators from Dakota Clinic Pharmacy were moved from Dakota Clinic Pharmacy to a location at Innovis Health, LLC, and after that move is when the temperature logs were provided to Innovis Health personnel.

The notification to patients of potential exposure to a potential temperature excursion to potential medications was all derived from the period of time between September of 2017 and February of 2020 when DCP was doing the management -- the procurement, management, and storage of this product under the pharmaceutical management services.  It was all exclusive to these two refrigerators and exclusive to Dakota Clinic Pharmacy.

What plaintiff -- and it's already been established that Dakota Clinic Pharmacy is a pharmacist -- a pharmacy under

the laws of North Dakota in which it's required that it be pharmacist owned, and under the operating agreement, the individual with active management control over the pharmacy is a pharmacist and the president.

It's also been established that Essentia Health or Innovis Health, LLC's policies and practices within the Essentia Health, Innovis Health, LLC system do not apply to Dakota Clinic Pharmacy, and so Topics 1(c) addressing policies and practices regarding temperature monitoring, to the extent they are relevant or pertinent to this case, they would be DCP's policies and practices.  And Ms. Morris, who is the current president, is having her deposition taken in May.

The Item Number D, talking about the availability of automated temperature monitoring systems, whether it utilized or not, it's being interpreted as a topic Essentia wide which, again, is not the issue in this case.

Under -- let's see -- 14, in discussing the work being done systemwide, where the refrigeration symptoms were reviewed, that work had actually begun earlier before this and so it's taking some of the language a little out of context in terms of what's been submitted.  But in any event, the work that is done with Essentia systemwide in evaluating refrigeration systems and looking at that, again, is a completely separate issue than the potential temperature excursion under review and litigation in this case.

It also goes to Number 2 where plaintiffs are seeking designation for any prior temperature excursion at Essentia facilities, so any and all, including but not limited to the excursion discussed within a few paragraphs of the Second Amended Complaint which, again, are not at all related to Dakota Clinic Pharmacy, they relate to, I believe, it was a West Fargo clinic.

So in terms of the application of these topics, they are not applicable to this lawsuit because they are separate and apart from Dakota Clinic Pharmacy and what was being done and how things were being done by Dakota Clinic Pharmacy.

I'd be happy to answer any of the Court's questions as well, but that is, in a nutshell, our position on those topics.

THE COURT:  Sure.  First of all, you --

MR. VON KLEMPERER:  Your Honor, can I --

THE COURT:  Excuse me, please.

MR. VON KLEMPERER:  I'm sorry.

THE COURT:  You referred, Ms. Lord, to Exhibit A to the Shared Services Agreement, and I did look at the docket this morning looking for that exhibit.  Now, it's certainly possible that it's there and I didn't find it but I did not find it easily.  Can you direct me to where in the docket it might be found?

MS. LORD:  Yes.  Well, I'm not sure about the docket.

It would be in response -- it was one of the filings with the plaintiffs' correspondence.

MR. VON KLEMPERER:  Your Honor, it's ECF 284-11, Exhibit J to our letter of April 18th.

MS. LORD:  Thank you.

THE COURT:  I'm sorry, give me again.  284-11, Exhibit J?

MR. VON KLEMPERER:  Yes.

THE COURT:  Okay.  Well, sorry I missed it.  I found the Shared Services Agreement, but I did not see Exhibit A to it.  But I will take a look at that now.  And, Ms. Lord --

MR. VON KLEMPERER:  Exhibit A I believe is the last page of the document.

THE COURT:  Yes.

Ms. Lord, you talked about several things having been established as to application of policies and related matters. In what sense have they been established in your view?

MS. LORD:  Well, DCP is an entity that has an operating agreement where the pharmacist, the president, consistent with North Dakota law, has active management and control at the pharmacy.

The policies that have been produced in the case were acknowledged with the production that they do not apply at Dakota Clinic Pharmacy and that was reiterated with the people who have already been deposed in the case.  Again, Laura Morris

is being deposed.  Presumably she would echo the same perspective at her deposition that the policies and practices of Essentia Health West or Essentia are not applicable or part of Dakota Clinic Pharmacy.  The people that were doing the work at Dakota Clinic Pharmacy are under the control of the president who is a licensed pharmacist.  So that -- that's where it's been established, Your Honor.

THE COURT:  Okay.  Thank you.  And I -- I see that I have Exhibit A right in front of me.  I'm sorry, I just did not see its heading as Exhibit A, but I have it and I have reviewed it.

Mr. Von Klemperer?

MR. VON KLEMPERER:  Your Honor, we couldn't agree less that these issues have been established.  Essentia's argument essentially assumes that their defense in the case is valid and we are not entitled to discovery that doesn't support their defense.

The notion that Essentia's policies and practices do not apply to Dakota Clinic has not been established.  In fact, quite to the contrary that the agreements between Essentia and Dakota clinic are very clear.  Under their operating agreement, Essentia appoints three out of the seven governors to the board of governors of the Dakota Clinic; they appoint one of the three managers of Dakota Clinic; they own 49 percent of the company.

And if you look at the Joint Services Agreement, Exhibit A, that you mentioned you have in front of you, Innovis, which is a part of Essentia, they have roles and responsibilities that are listed at the top of the document, the first two paragraphs.

And under the first paragraph, it states that "Innovis shall keep and maintain the books and records of DCP's pharmacy business."  Under the staffing services paragraph, the one below it, it states that "Innovis shall employ and furnish to DCP all pharmacists, technicians, and clerical staff needed to operate DCP's pharmacy business."

So the notion that Essentia's and Innovis' policies do not apply to DCP has absolutely not been established.  I understand someone testified to that last week, but the notion that that, therefore, precludes any further discovery into the topic is not something I've ever seen under the federal rules, Your Honor.  And so, we strongly disagree with Ms. Lord's assertions there.

And further, the fact that DCP's witness, Ms. Morris, is scheduled to testify next week is no basis why we cannot further delve in to these topics with a Essentia witness.

And the final point I would just make, Your Honor, is Essentia's response to the temperature excursion, which is covered in Topic 14, we've -- we've submitted Exhibit K with a letter yesterday in which Mr. Hurley expressly writes that the

-- his investigation -- his -- his systemwide investigation of Essentia Health's temperature monitoring practices was a direct bi-product, he uses that term, "bi-product," of the Dakota Clinic temperature excursion. So we think this is absolutely fair game.

And even if the Essentia policies and practices don't technically cover Dakota Clinic, which I'm by no means conceding, their own knowledge and their own practices are still relevant to foreseeability, to their duty, to the wrongfulness of their conduct under our consumer protection claims. And so the notion that these topics are not discoverable I think is -- is absolutely not supported, Your Honor.

THE COURT: Okay. Thank you. I do have Exhibit K but I also have Exhibit M. What can you tell me about the -- the origin of these documents? Who prepared them and when?

MR. VON KLEMPERER: I'm sorry, which documents?

THE COURT: Exhibit K and Exhibit M.

MR. VON KLEMPERER: These are documents that were produced by Essentia in discovery. Exhibit K is an email -- or it's an email chain in which Mr. Hurley is emailing other individuals in Essentia discussing the temperature -- the assessment of Essentia's temperature monitoring practices.

And Exhibit M is a series of notes or minutes that were taken by Essentia employees during their initial

investigation of the temperature excursion after they first learned of it. They -- they would convene a committee and they were taking notes from those meetings, and I don't know for sure who took the notes. When we received them in discovery, there was no document custodian associated with that document unfortunately. I believe we -- we asked the witness last week who took the notes and he wasn't sure either.

But they do indicate that Ms. -- Ms. Loy, who is another individual who's scheduled to testify next week, was very involved into Essentia's research into the refrigerators at issue and their maintenance history, which is Topic 1(k), which is another disputed topic.

And so our position on that topic is Ms. Loy seems to be the perfect witness who could address that topic as well. And I agree with Ms. Lord that we can't dictate who they designate under the 30(b)(6) notice, but it seems that there's already witnesses who will be the perfect person to select which just goes to their assertion that there's any burden here.

THE COURT: Thank you. Obviously the relationship between Essentia and DCP is central to many of the topics that remain in dispute. And from what I've heard so far and from what I've reviewed so far, I think it would be best if that were -- that central question and its relationship to the topics were addressed in a more formal order than would be

appropriate coming out of the Rule 37.1 conference today.

So let's move on to topics that have not yet been addressed this morning and then we can talk about a schedule for whatever briefing you might want to submit before a more formal order is issued.

Mr. Von Klemperer?

MR. VON KLEMPERER:  Thank you, Your Honor.  So the other topics -- 30(b)(6) topics are Topic 1(i), which is any other entity that Essentia places blame on for the temperature excursion at issue.  And we simply here are looking to determine if there's any -- other than DCP, whom they clearly blame for the excursion, all we're looking for here is to determine if there's any other entity that they contend has any role or responsibility in the excursion.

It doesn't seem like a controversial topic to me.  I think we're entitled to know whether there's anyone else that they blame for the excursion.  I don't see any burden in responding to that question.  And, of course, the objective here is so that they don't have an opportunity to conduct trial by surprise and when we get to trial, all the sudden they're pointing their finger at some entity or person that we've never heard of before.

THE COURT:  Has that --

MR. VON KLEMPERER:  And then, Your Honor, 1(k) -- sorry.

THE COURT:  I'm sorry to interrupt.  Has that inquiry been made in any other form of discovery such as an interrogatory or request for admission?

MR. VON KLEMPERER:  It has not.

THE COURT:  Thank you.  And I'm sorry to cut you off.  Go ahead.

MR. VON KLEMPERER:  I was just going to briefly touch on Topic 1(k), which I mentioned briefly earlier, because you brought up Exhibit M, but this topic addresses the refrigerators involved, including the purchase breakdown and maintenance history.  And as I mentioned earlier, the documents that we've seen and the testimony that we -- we heard last week, indicates that these are topics that Essentia it very closely investigated in following the excursion at issue.  There's exhibits, there's testimony indicating that they -- they researched these exact issues.

They also have possession of the refrigerators.  They're stored in the Essentia basement in Fargo and so we think that these are fair topics.  They definitely have some knowledge of it because they conducted an investigation into these topics.  And as I mentioned, Ms. Loy, I believe, was one of the people spearheading that investigation and she is scheduled to testify next week and so she seems like the -- an appropriate person that they could designate to address this topic.

THE COURT:  Thank you.  Ms. Lord?

MS. LORD:  Your Honor, with respect to 1(i), the witnesses last week were asked about this question or about this topic and they explained that they don't know -- they don't have the knowledge of how DCP did their operation with respect to storage of the product.  And so if anyone -- or if others were involved in how that was implemented, they -- they don't have that knowledge.  Again, Ms. Morris is going to be deposed next Thursday.  There may be more -- more information there.

But in terms of how the topic is identified, it says "Any other entities' role in and responsibility for the potential temperature excursion."  It's not within Essentia Health's or Innovis Health, LLC's purview or knowledge, and that's been explained that DCP would be the one knowledgeable of how things were being done.

THE COURT:  Is it --

MS. LORD:  And then with respect to -- with respect to 1(k), Your Honor, I think that has been taken out of context perhaps as well.  DCP had a production in this case that was provided, and my understanding is that it had an invoice for one of the refrigerators included in that.  So it's -- it's -- it's unclear what information is being sought through Essentia and Innovis Health, LLC.

And again, Ms. Morris' deposition is going to be

taken next week.

THE COURT:  Thank you.  Ms. Lord, is it Essentia's position that an entity other than DCP bears some responsibility for the potential excursion?

MS. LORD:  They're not aware of anyone at this time.

THE COURT:  Mr. Von Klemperer, do you see this as something that you might be able to resolve through some avenue other than a 30(b)(6) witness?

MR. VON KLEMPERER:  Well, Your Honor, if -- if that's their position that they don't have -- that they're not aware of anyone else, then they're fine accepting the testimony of the witnesses last week as they're official position, then we're happy to accept that.

All we want to avoid is for them to refuse to formally designate someone on that topic and then low and behold they point to some new entity that we've never heard of before when we get to trial.  So if their official position is that they're not aware of anyone else, then that's fine.  That's fine with us.

THE COURT:  Ms. Lord, anything else on that question?

MS. LORD:  No, Your Honor.  I think -- and again, I think it's consistent with what has been said consistently is that DCP would be knowledgeable on that aspect.  And DCP's deposition is next week.  If something derives from that, there may be additional perspective, and if that -- that happens,

that would be known.

THE COURT:  And the deposition next -- next week, is that a 30(b)(6) deposition of DCP?

MR. VON KLEMPERER:  It is not, Your Honor.  It's an individual deposition of one of the owners.

THE COURT:  All right.  Thank you.  So --

MR. VON KLEMPERER:  I would only add, Your Honor, that the notion that Essentia doesn't know the answer to this until we take that deposition is surprising to me to say the least given that they launched an extensive investigation into this excursion and interviewed Ms. Morris herself.  So if there's some other entity to blame, they should already be in possession of that information.

THE COURT:  Well, I think I just pretty clearly heard Ms. Lord state that Essentia was not aware of any other entity that could potentially be responsible at this time.

So does that mean that there is some possibility in someone's view that a manufacturer of one of the refrigerators or someone responsible -- an entity responsible for the temperature system could potentially be at fault?  Is that what I'm guessing?  Is that what I -- well, that's speculation on my part, but is that consistent with what you folks might be considering?

MR. VON KLEMPERER:  Those are certainly potential entities that they may point to, but they've made no indication

of that.  And so, if their official position is they don't know of anyone else, then, again, we're happy to accept that as their response.

THE COURT:  Ms. Lord, any other comments on that issue?

MS. LORD:  Not at this time, Your Honor.

THE COURT:  Okay.  Is there anything else that either of you would like to address this morning as to the topics that have been identified as remaining in dispute?

MR. VON KLEMPERER:  Not from the plaintiffs, Your Honor.

THE COURT:  Ms. Lord?

MS. LORD:  No, Your Honor.  I think we've -- we've -- we've covered the issues.

THE COURT:  Thank you.  Plaintiffs did submit some brief excerpts from draft deposition transcripts.  I certainly don't have enough information to make any decision, but I will just tell you a couple of my observations.

I did see a couple of situations where I thought a yes/no answer could have been provided and could have avoided some of the quibbling that happened afterward.  And certainly many of the responses that plaintiffs have questioned relate to this relationship issue.

So I think we just need to set a briefing schedule.  And I know this case has been going on for a long time.  It's

25

probably among the oldest that's on the Court's docket at this point. And you've agreed today just to extend the time by an additional five weeks, so what I would like to suggest is that we get some briefing done just as soon as you folks can conceivably do it and I will promise that it will be at the top of my list of things to do once we get that briefing. And --

MS. LORD: Your Honor, may I --

THE COURT: Go ahead.

MS. LORD: May I raise something?

THE COURT: Go ahead.

MS. LORD: This -- this wasn't a topic that was addressed at all with counsel before it was identified in the letter. And one of the examples I think that could be given here is on the -- the topic of during Mr. Kaufenberg's deposition where it was being asked about responsibility and was there a belief that Essentia or Innovis had any responsibility for the temperature excursion. And that was an example where Mr. Kaufenberg was interpreting that question as what Essentia and Innovis Health had done after the potential temperature excursion had come to light. And he had explained everything that Essentia had done in that response, i.e. the responsibility that Essentia had taken in notifying patients in that response.

I think Mr. Von Klemperer was seeing that question differently, and Mr. Von Klemperer, I think, was trying to ask

a question did Mr. Kaufenberg believe there was any responsibility between September of 2017 and February of 2020 for what was being done.

And there was -- there -- there wasn't any meeting of the minds on the question and the answer. And I could -- you can see that from the transcript if you look at it from that perspective. And so I think there are areas here -- and we don't have the full transcript of what -- what was happening there.

And that's just -- that's one of the examples that Mr. Von Klemperer referenced in his letter that there was a feigning of ignorance on the word "responsibility." But you really have to take it in the context of the deposition and what had already been explained and the confusion between the witness and counsel on what was being asked.

So, you know, I can certainly address other areas as well and --

THE COURT: Well, as I said, I'm not going to pretend to deal with adequacy of deposition responses with the short excerpts that I have. I just passed along my observation that it seemed that there were at least a couple of questions that could have been answered "yes" or "no" and that would have shortened up the arguing.

And I understand what you're saying as to different perceptions of the word "responsibility." It's a little more

difficult for me to understand different perceptions of the word "healthcare," but I understand what you're saying.

So --

MS. LORD:  And, Your Honor, that is with pharmacy. You know, how does healthcare -- Mr. Kaufenberg is the vice president of pharmacy and there are considerations of how does pharmacy fit into a healthcare model.  So I think that's where the confusion was coming in.

THE COURT:  Thank you.  Let's talk about a briefing schedule.  It seems to me it would be appropriate for plaintiffs to do the opening brief.  Mr. Von Klemperer, do you see that differently?

MR. VON KLEMPERER:  We're happy to do so, Your Honor. I think that -- well, I can -- we could go either way.  But if that's what you think is the most appropriate, we're happy to file the opening brief.

THE COURT:  Yeah.  I -- I could see -- I could see it going the other way or I could see simultaneous briefing.  So Mr. Von Klemperer, why don't you propose a schedule and make it as quick as you can but -- and I -- when I say that, of course, I'm not asking that you compromise quality.

MS. LORD:  Your Honor, we don't have the transcript yet.

THE COURT:  Well, some of these topics it seems to me would not require deposition transcripts.  The central issue of

relationship between DCP and Essentia, do you see that as requiring a deposition transcript?

MS. LORD:  Oh, Your Honor, I'm sorry.  I thought you were talking about Mr. Von Klemperer's --

THE COURT:  Oh, no.  I'm sorry.  No.

MS. LORD:  -- issue on -- on the second issue on objections in the Rule 30(b)(6) and my -- you know, why I was saying what I did at the deposition on the witness and Mr. Von Klemperer not being on the same page, so to speak, on responsibility.  So I thought the briefing schedule you were asking about is objections being made at the depositions.

THE COURT:  Thank you for that clarification.  Sorry for the confusion.  But let's talk about a briefing schedule on the topics that remain in dispute.  Mr. Von Klemperer?

MR. VON KLEMPERER:  Your Honor, looking at my calendar, ordinarily I would say we -- we could get you something next week; however, there's three depositions in this case scheduled for next week, and my son is actually having surgery this Friday and so I'm going to be a little bit out of the pocket the end of this week and maybe the beginning of next week.  So if it's possible to submit the brief on May 14, that would be ideal for us, that we would appreciate that.

THE COURT:  Thank you.  Ms. Lord, if we use that date for plaintiffs' brief, when could you respond?

MS. LORD:  Would the 20th be acceptable?

THE COURT:  Yes.

And Mr. Von Klemperer, in the event you felt a need to submit any reply, I know this is a short time but --

MR. VON KLEMPERER:  We could do so --

THE COURT:  Go ahead.

MR. VON KLEMPERER:  -- sorry -- by May -- May 23rd?

THE COURT:  Well, that was going to be my suggestion so thank you.

One other question.  Are you at a point where you can determine whether you might be asking the Special Master to do additional work?

MR. VON KLEMPERER:  Your Honor, we are still -- we received an updated privilege log from Essentia a few weeks ago, perhaps about a month ago.  We're -- we're in the process of reviewing that.  Of course the depositions that we're all involved in are taking some precedence over that.  We would ask that the Special Master not be dismissed at this time.

We anticipate that there may be some additional challenges obviously following a meet and confer with Essentia, but that is definitely something we're actively working on alongside the deposition preparation.

THE COURT:  Thank you.  Is there anything else we should talk about this morning?  Mr. Von Klemperer?

MR. VON KLEMPERER:  I don't think so from my perspective, Your Honor.  Thank you.

30

THE COURT:  Ms. Lord?

MS. LORD:  No, Your Honor.  Thank you for your time.

THE COURT:  Thank you, all.  We're adjourned.

(Proceedings concluded at 9:49 a.m., the same day.)

CERTIFICATE

STATE OF NORTH DAKOTA   )
                        )    ss.
COUNTY OF BISMARCK      )

I, Kristen M. Keegan, a district court reporter, do hereby certify that the foregoing and attached typewritten pages contain an accurate transcription, to the best of my ability, of said digital recording made at the time and place herein indicated.

Dated at Bismarck, North Dakota, this 5th day of May, 2025.

/s/ *Kristen M. Keegan*
_____
KRISTEN M. KEEGAN
United States District Court Reporter
District of North Dakota
Western Division