**Exhibit A**
**3:20-cv-00121-PDW-ARS**

## LEASE

THIS LEASE, Made as of the 1st day of July, 2015 by and between INNOVIS HEALTH, LLC, a Delaware limited liability company ("Landlord"), DAKOTA CLINIC PHARMACY, LLC, a North Dakota limited liability company ("Tenant").

WITNESSETH, that Landlord hereby leases to Tenant, and Tenant hereby hires and takes from Landlord, certain premises during the term of, and according to the conditions of, this Lease Agreement, hereinafter referred to as this "Lease", those certain premises in the City of Fargo, County of Cass, and State of North Dakota, more fully described as follows, to-wit:

Approximately 2,000 square feet located in the Essentia Health South University Clinic, comprising the real estate and buildings commonly known as 1702 South University Drive, Fargo, North Dakota ("Clinic") and cross-hatched on attached Exhibit A. Landlord will allow use of the public toilet rooms adjacent to such space and will allow for private consultations to take place in an available exam or other room occupied by Landlord.

(Hereinafter be referred to as the "Premises")

1. **NEW LEASE**. This Lease supersedes any and all prior leases, subleases or memorandums of lease by and between the Landlord and Tenant, and any predecessors thereof, pertaining to the Premises or any portion thereof.

2. **COMMON AREA USE**. The use and occupation by the Tenant of the Premises shall include the non-exclusive use, in common with others entitled thereto, of the Common Areas located in and about the Clinic. Tenant's use of the Common Areas shall be subject to the limitations and restrictions set forth in this Lease and further subject to reasonable rules and regulations for the use of Common Areas as adopted from time to time by Landlord.

3. **BUILDING CHANGES**. Landlord hereby reserves the absolute right which will, however, be reasonably exercised and be accompanied by a prior fifteen (15) day written notice to Tenant, at any time and from time to time, to make alterations or additions to, and to build basements or additional stories on the buildings comprising the Clinic, including without limitation, the building in which the Premises is contained, and to build adjoining the same. Landlord also reserves the right to construct other buildings or improvements upon the property upon which the Clinic is located from time to time and to make alterations thereof or additions thereto and to build basements or additional stories on any such building or buildings and to build adjoining same. Landlord will not hinder Tenant's access to an exterior wall with drive-up automotive access, without making alternative provisions for Tenant for same. Landlord agrees that in exercising the above reservations, it shall in all cases provide Tenant and its employees and customers such reasonable temporary and/or alternate access to the Premises as is practicable under the circumstances.

4. **RIGHT TO RELOCATE**. The purpose of the floor plan attached hereto as Exhibit A is to show the approximate location of the Premises in the Clinic. Landlord reserves the right, which will be reasonably exercised, to at any time to add to and relocate the various buildings, automobile parking areas, access roads, utility facilities, walk ways and other Common

1

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER    *DCP 000001*

Areas and facilities shown on said Exhibit A or otherwise located at the Clinic. The relative location of the Premises in the Clinic will be maintained as much as reasonably possible. Landlord will not hinder Tenant's access to an exterior wall with drive-up automotive access, without making alternative provisions for Tenant for same.

5.    **ACCEPTANCE OF PREMISES**. TENANT ACKNOWLEDGES THAT TENANT HAS EXAMINED THE PREMISES AND THAT IT IS IN THE CONDITION CALLED FOR BY THIS LEASE AND THAT LANDLORD HAS PERFORMED ALL OF LANDLORD'S REQUIRED WORK, IF ANY, WITH RESPECT THERETO. TENANT AGREES THAT IT ACCEPTS THE PREMISES AS-IS, WITH ALL FAULTS AND WITHOUT ANY EXPRESS OR IMPLIED WARRANTIES INCLUDING WARRANTIES OF MERCHANTABILITY.

6.    **LANDLORD'S ACCESS TO PREMISES**. Landlord or its agents shall have the right to enter the Premises at all reasonable times to examine the same, to show them to prospective purchasers or tenants of the building, and to make such repairs, alterations, improvements or additions in the Premises or the building of which it is a part as may be necessary, and Landlord shall be allowed to take all material into and upon the Premises that may be required therefor without the same constituting an eviction of Tenant in whole or in part, and rent shall in no wise abate while said repairs, alterations, improvements, or additions are being made, by reason of loss or interruption of business of Tenant because of the performance of any such work. Nothing herein contained shall be deemed or construed to impose upon Landlord any obligation, responsibility or liability whatsoever, for the care, supervision or repair of the building or of the Premises, except as otherwise herein specifically provided. Notwithstanding the foregoing, should a business interruption continue for more than seven (7) days, rent will be abated during the additional days.

During the six months prior to the expiration of this Lease Landlord may show the Premises to prospective tenants and place upon the Premises the usual notices "To Let" or "For Rent" which notices Tenant shall permit to remain thereon without molestation. If during the last month of the term Tenant shall have removed all or substantially all of its property therefrom, Landlord may immediately enter and alter, renovate or redecorate the Premises without elimination or abatement of rent or other compensation and such action shall have no effect upon this Lease.

7.    **QUIET ENJOYMENT**. Upon payment by the Tenant of the rents herein provided, and upon the observance and performance of all the covenants, terms and conditions on Tenant's part to be observed and performed, Tenant shall peaceably and quietly hold and enjoy the Premises for the term of this Lease without hindrance or interruption by Landlord or any other person lawfully claiming by, through or under Landlord, subject, nevertheless, to the other terms and conditions of this Lease, and to all mortgages and underlying leases of record to which this Lease is, or may be or become subject or subordinate.

8.    **TERM/RENEWAL**. This Lease is for a term of 10 years, beginning on July 1, 2015, and ending on June 30, 2025. Tenant shall have two options to extend the term for a period of five years each, which option shall be exercised, if at all, by written notice to Landlord given not less than 270 days prior to the end of the initial term, or the term as extended by the first option, as the case may be.

2

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER        *DCP 000002*

9.    RENTAL: The Tenant agrees to pay the Landlord monthly rent, in advance and on the first day of the month, without notice, demand or offset, in the sum of $3,667 during the first five years of the initial term of this Lease. Monthly rent shall increase to $3,916 for the last five years of the initial term of this Lease. If Tenant exercises its first extension option, monthly rent shall increase to $4,308 for the full five years of the first extension term. If Tenant exercises its second extension option, monthly rent shall increase to $4,739 for the full five years of the second extension term.

10.    **INTENTIONALLY OMITTED.**

11.    **USE OF LEASED PREMISES**. Tenant shall occupy and use the Premises solely for the purpose of conducting a pharmacy business and all reasonably related activities. Tenant shall, at its expense, procure any and all governmental licenses and permits, including without limitation sign permits, required for the conduct of Tenant's business on the Premises and shall, at all times, comply with the requirements of each such license and permit. Landlord does not represent or warrant that it will obtain for Tenant or that Tenant will be able to obtain any license permit.

12.    **ALTERATIONS AND IMPROVEMENTS**. Without first obtaining Landlord's written approval and consent (which shall not be unreasonably withheld) Tenant shall not make, cause to be made, or contract for any alterations, additions, or improvements to the Premises, or to install therein any trade fixture, exterior sign, floor covering, interior or exterior lighting, plumbing fixtures, heating and air conditioning equipment, shades or awnings, or make any changes to the store front, or other structural changes or additions to the Premises or mechanical systems serving the Premises. At the time Tenant requests Landlord's consent for any such improvement, alteration, or addition, Tenant shall deliver to Landlord Tenant's drawings and specifications for the proposed work, together with all other documentation required by Landlord's then current design criteria. All work undertaken must be in accordance with Landlord's design criteria in effect at the time the improvement or modification is made.

13.    **CONSTRUCTION LIEN**. Tenant shall within ten (10) days after notice from Landlord discharge any construction lien for materials or labor claimed to have been furnished to the Premises on Tenant's behalf.

14.    **OWNERSHIP OF IMPROVEMENTS AND FIXTURES**. All alterations, installations, additions and improvements made upon or for the benefit of the Premises by either party shall, unless Landlord otherwise elects (by giving notice thereof to Tenant not less than thirty days prior to the expiration or other termination of this Lease), become the property of Landlord and shall remain upon and be surrendered with the Premises as a part thereof at the expiration or sooner termination of this Lease. Movable furniture, trade fixtures or other fixtures and other personal property (but not fixed leasehold improvements or leasehold improvements affixed to the Premises) which is acquired by Tenant at its expense (whether financed by Landlord or not) shall remain its property and may be removed at any time, provided Tenant promptly repairs any damage caused by such removal.

15.    **SIGNS - DISPLAYS**. Tenant will not place or suffer to be placed or maintained anywhere in the Clinic or on any exterior door, wall or window of the Premises any sign, awning

3

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER    **DCP 000003**

or canopy, or advertising matter or other thing of any kind, and will not place or maintain any decoration, lettering or advertising matter on the glass of any window or door of the Premises without first obtaining Landlord's written approval and consent (which shall not be unreasonably withheld). Prior to the Commencement Date Tenant shall, at its expense, install all signs required by and in compliance with Landlord's design criteria. Tenant further agrees to maintain such sign, awning, canopy, decoration, lettering, advertising matter or other thing as may be approved in good condition and repair at all times.

16. **REAL ESTATE TAXES**. Tenant's proportionate share of real estate taxes for the Clinic are included within its rental amount.

17. **OPERATING COSTS**. Except as expressly provided otherwise in this Lease, Tenant's proportionate share of Clinic operating expenses are included within its rental amount.

18. **INENTIONALLY OMITTED**.

19. **INENTIONALLY OMITTED**.

20. **TENANT'S FIRE INSURANCE - LANDLORD'S INSURANCE**. Tenant agrees that during the entire term of this Lease Tenant will procure and keep in full force and effect at Tenant's own expense fire and extended coverage insurance on Tenant's own property including Tenant's leasehold improvements. Landlord agrees to keep the Clinic insured for fire and extended coverage but the amount of such insurance shall be in the sole discretion of the Landlord.

21. **LIABILITY INSURANCE**. Tenant shall, during the entire lease term, keep in full force and effect at Tenant's own cost a policy of public liability and property damage insurance with respect to the Premises in which the limits of public liability for bodily injury or death shall not be less than $3,000,000.00 single limit. The insurance policy shall name Landlord and any persons, firms or corporations designated by Landlord as an insured and shall contain a clause that the insurer will not cancel or change the insurance without first giving the Landlord at least ten (10) days prior written notice. The insurance shall be in a responsible company qualified to do business in the State of North Dakota, approved by Landlord and a copy of the policy or certificate of insurance shall be delivered to Landlord.

22. **UTILITIES AND JANITORIAL SERVICE**. Landlord shall pay for all heat, water, sewage and electricity services and utilities provided to the Premises. Landlord shall provide a level of garbage removal and vacuuming for the Premises equivalent to similar spaces in the Clinic, and the costs thereof are included within Tenant's rental amount; if Tenant wishes for a higher level of these services, Tenant shall make its own arrangements and pay for same. Tenant shall arrange and pay for such further housekeeping and janitorial services needed by Tenant.

23. **REPAIRS AND MAINTENANCE - LANDLORD'S OBLIGATION**. Except to the extent a Tenant responsibility under Section 24 below, Landlord shall, within a reasonable period after receipt of written notice from Tenant, make or cause to be made necessary structural repairs to the exterior foundations, exterior walls, parking lot, frames surrounding all windows, doors and entrances and shall keep or cause to be kept in good order, condition and repair the heating fixtures, air-handling equipment and/or air-conditioning system, exterior walls,

4

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER    *DCP 000004*

foundations and roofs of the Clinic as well as maintain, repair and replace all of the leasehold fixed improvements, reasonable wear and tear excepted.

24.    **REPAIRS AND MAINTENANCE - TENANT'S OBLIGATION**.  Tenant shall, at its expense, keep, replace and maintain the Premises (including maintenance of storefronts, exterior entrances and signs, all glass, and window moldings) and all partitions, doors, store fronts, fixtures, equipment and  appurtenances thereof (including lighting, plumbing fixtures, interior walls, interior surfaces of exterior walls, special air handling equipment installed specially by Tenant or on its behalf for smoke removal and refrigeration units) in clean, neat and good order, condition   and repair (including reasonably periodic painting and decorating), damage by unavoidable casualty excepted.  If Landlord is required to make repairs to such items by reason of Tenant's, its agents' or employees' acts or omission to act, or if Tenant refuses or neglects to repair, maintain or replace property as required hereunder to the reasonable satisfaction of Landlord after ten days written notice, then Landlord may make such repairs or modifications without liability to Tenant for any loss or damage that may accrue to Tenant's merchandise, fixtures, or other property or to Tenant's business by reason thereof, and upon completion thereof and presentation of bill therefor, Tenant shall pay Landlord, as additional rent, at the time the next rent payment is due, the Landlord's cost and expense for making such repairs, plus 15% for overhead and  supervision.  Landlord and Landlord's agents shall be entitled at any reasonable time to enter, inspect and examine the Premises for the purpose of verifying Tenant's compliance with this Section.

25.    **PLATE GLASS**.  Tenant agrees to replace all plate glass and all other glass, if and when broken on said Premises.  However, Tenant shall not be liable for plate glass if destroyed through negligence of the Landlord or its agents or servants and the Tenant shall have the right of insuring the plate glass if it so desires.

26.    **COMMON AREAS DEFINED**.  Common areas are defined as the parking areas, streets, fire corridors, driveways, walkways, curbs, gutters, drainage areas, landscaped areas, access roads, retaining walls, truck service ways or tunnels, loading docks, pedestrian malls, (enclosed or open), courts, stairs, escalators, elevators, ramps and sidewalks, comfort stations, washrooms, management offices, utility rooms, and the like, designated by Landlord for common use or benefit of tenants, occupants and other patrons of the Clinic and their employees, agents, servants, customers and other invitees.  Common Areas may be located either within the Clinic or on land adjacent to the Clinic which is made available for the common use or benefit of tenants of the Clinic.

27.    **CONTROL OF ALL COMMON AREAS**.  All Common Areas and other common facilities provided by Landlord are for the general use or benefit, in common with Landlord and/or other tenants, their officers, agents, employees, customers, and invitees and shall be subject to the exclusive control and management of Landlord, and Landlord shall have the right from time to time to promulgate and enforce reasonable rules and regulations, as it may deem appropriate, with respect to all Common Areas which shall apply equally and without discrimination to all tenants and permittees.  Landlord shall have the right to construct, maintain and operate lighting facilities on all said areas and improvements; to police the same; to change the area, level, location and arrangement of parking areas and other Common Area facilities; to build multi-story or underground parking facilities; to restrict parking by tenants, their officers,

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER        *DCP 000005*

agents and employees to employee parking areas; to enforce parking charges (by operation of meters or otherwise), with appropriate provisions for free parking ticket validating by tenants; to construct, remove, and modify utility lines within the Common Areas; to grant easements through Common Areas; to close all or any portion of said areas or facilities to such extent as may, in the opinion of Landlord's counsel, be legally sufficient to prevent a dedication thereof or the accrual of any rights to any person or the public therein; to grant occupants of adjacent properties and others access easements to Common Areas and the right to use all Common Areas; to close temporarily all or any portion of the parking areas or common facilities, to regulate non-customer parking; to allow concessions, kiosks, shows and displays (provided the same do not substantially interfere with the access to the Premises) and to do and perform such other acts in and to said areas and improvements as in the use of good business judgment, Landlord shall determine to be advisable with a view to the improvement of the convenience and use thereof by tenants, their officers, agents, employees, invitees, and customers. Landlord will operate and maintain the common facilities referred to above in such manner as it, in its sole discretion, shall determine and shall have full right and authority to employ and discharge all personnel with respect thereto.

28.    **NON-EXCLUSIVE USE OF COMMON AREAS**. Tenant's right to use all Common Areas is a non-exclusive right, in common with Landlord, all other tenants in the Clinic, and all other to whom Landlord may through easements, operating agreements, leases or otherwise, authorize to use the Common Areas.

29.    **MODIFICATION OF COMMON AREAS**. Landlord reserves the absolute right to designate additional land or improvements as Common Areas, withdraw land or improvements from Common Areas, to sell or lease areas formerly designated as Common Areas, to change the boundaries of Common Areas, and to construct, modify and remove buildings or other improvements on Common Areas, except for the limitations with regard to maintaining drive-up automotive access as expressly set out elsewhere in this Leases, and further provided Landlord agrees that in exercising the above reservations, it shall in all cases provide Tenant and its employees and customers such reasonable temporary and/or alternate access to the Premises as is practicable under the circumstances. If the area of such Common Areas is diminished, Landlord shall not be subject to any liability nor shall Tenant be entitled to any compensation or abatement of rent, nor shall such diminution of such areas be deemed constructive or actual eviction. Landlord agrees, however, to provide within the limits of the Clinic, parking area or areas in a sufficient amount to meet all applicable governmental laws, codes and regulations.

30.    **INDEMNIFICATION**. Tenant covenants and agrees to indemnify, defend and save Landlord harmless from and against any and all injury, loss, claims, damages, liability, costs and expenses, including reasonable attorney's fees, in connection with loss of life, personal or bodily injury, damage to property, or litigation arising from or out of any occurrence, in, upon or at the Premises or occasioned anywhere wholly or in part by any act, neglect or omission of Tenant or Tenant's agents. Landlord covenants and agrees to indemnify, defend and save Tenant harmless from and against any and all injury, loss, claims, damages, liability, costs and expenses, including reasonable attorney's fees, in connection with loss of life, personal or bodily injury, damage to property, or litigation arising from or out of any occurrence, in, upon or at the Premises or occasioned anywhere wholly or in part by any act, neglect or omission of Landlord or Landlord's agents.

6

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER        *DCP 000006*

31.    **WASTE OR NUISANCE**. Tenant shall not commit or suffer to be committed any waste upon the Premises or any nuisance or other act or thing which may disturb the quiet enjoyment of any other persons in the area, including but not limited to neighbors of the Tenant.

32.    **GOVERNMENTAL REGULATION AND RESTRICTIVE COVENANTS**. Tenant shall, at Tenant's sole cost and expense, comply with and faithfully observe all of the rules, regulations, ordinances, laws and requirements of county, municipal, state, federal and other applicable governmental authorities, present or future, which affect the occupancy or use of the Premises.

33.    **ASSIGNMENT AND SUBLETTING**.  The Tenant may not assign this Lease or sublease in whole or in part the Premises without the prior written consent of the Landlord, which Landlord may grant or withhold in Landlord's sole and absolute discretion.  In the event the Landlord grants written consent to the Tenant for assignment or sublease, the Tenant shall, in any event, remain liable for the performance of all of the covenants of this Lease.

34.    **CHANGE OF OWNERSHIP**. If Tenant is a corporation, partnership, business trust, or other form of business association at any time during the term of this Lease, and there exists any transfer by sale, assignment, bequest, inheritance, operation of law or other disposition so as to result in the loss of or a change in the voting control of Tenant by the person or persons owing a majority of the voting control prior to such transfer, such change shall be considered a transfer of this Lease and any such transfer without the written consent of Landlord shall constitute an event of default under this Lease.

35.    **WAIVER OF SUBROGATION**.  Landlord and Tenant each hereby release and waive any and all rights of recovery from each other and their respective officers, employees, agents and representatives for loss of or damages to their respective property or the property of others under their respective control, arising from any cause insurable under any policy of fire and extended coverage insurance to be carried by such party pursuant to this Lease (an "Insured Loss") and without regard to the negligence of the other party that may have contributed to the loss or damage.  Tenant further agrees to release all other occupants of the Clinic under lease with Landlord, their officers, employees, agents and representatives from any and all rights of recovery from such other parties for loss of or damages to Tenant's property or the property of others under Tenant's control, arising from any Insured Loss, provided that such party has a similar waiver in its lease.  Under no circumstances shall Landlord be obligated to obtain similar provisions in agreements with other occupants of the Clinic or incur any liability for the failure to procure or insure that other tenants have similar provisions in their leases with Landlord.

36.    **INCREASES IN INSURANCE PREMIUMS**.  Tenant agrees that it will not keep, use, sell or offer for sale in or upon the Premises any article which may be prohibited by the standard form of fire insurance policy.  Tenant agrees to pay any increase in premiums for fire and extended coverage insurance that may be charged during the term of this Lease on the amount of such insurance which may be carried by Landlord on said Premises or the building of which they are a part, resulting from the type of merchandise sold by Tenant or from its use or occupancy of the Premises, whether or not Landlord has consented to the same.  In determining whether increased premiums are the result of Tenant's use or occupancy of the Premises, a schedule, issued by the organization making the insurance rate on the Premises, showing the various components

7

of such rate, shall be conclusive evidence of the several items and charges which make up the insurance rate on the Premises.

Any increase in Landlord's insurance premiums payable by Tenant shall be deemed to be additional rent and Tenant shall pay all such amounts within thirty days after demand from Landlord, accompanied by a statement setting forth the basis of the payment due from Tenant.

37. **DAMAGE AND DESTRUCTION - LANDLORD'S OBLIGATION**. If the Premises is partially or totally destroyed or damaged by fire or other insured casualty so as to become partially or totally untenantable, Landlord shall repair and rebuild the same as required herein, except that Landlord shall have no obligation to repair and rebuild if: i) Landlord is unable to obtain all necessary permits and approvals therefor, including, without limitation, permits and approvals required from any agency or body administering environmental laws, rules or regulations; ii) Landlord terminates this Lease as herein authorized; or iii) Tenant is in default under this Lease.

38. **DAMAGE AND DESTRUCTION - OPTION TO TERMINATE**. If (a) the Clinic, or the Premises, shall be destroyed or damaged by fire or other insured casualty to the extent of 50% or more of the cost of replacement thereof under the coverage of Landlord's insurance (notwithstanding that the Premises may be unaffected by such fire or other occurrence), or (b) if the Premises shall be partially or totally destroyed during the last three years of the term of this Lease, or (c) if the Clinic or the Premises shall be partially or totally destroyed by a cause or casualty other than one covered by Landlord's insurance, or (d) if Landlord's mortgagee shall require that the insurance proceeds be applied against the principal balance of Landlord's mortgage, then in any such event, Landlord, may, if it so elects, rebuild the Premises, or it may give notice terminating this Lease as of a date not later than sixty (60) days after such damage or destruction. If Landlord elects to restore, repair or rebuild the Premises, Landlord shall, within sixty days after such damage or destruction, give Tenant notice of its intention to restore, repair or rebuild the Premises and then shall proceed with reasonable speed to make the repairs to or to rebuild the Premises. Unless Landlord elects to terminate this Lease, this Lease shall remain in full force and effect, provided, however, that Tenant shall have the right to terminate this Lease, upon not less than sixty days written notice to Landlord, if Landlord shall not have restored, repaired or rebuilt the Premises suitable for Tenant's use and occupancy within one year after the fire or other casualty (excluding time lost because of strikes, material shortages, Acts of God, or other causes beyond Landlord's control.)

39. **DAMAGE AND DESTRUCTION - LANDLORD'S RECONSTRUCTION**. If Landlord shall elect or be obligated to repair or rebuild the Premises because of any damage or destruction, Landlord shall reconstruct the shell and leasehold fixed improvements of and to the Premises to substantially the condition as it existed prior to the damage or destruction, provided that Landlord shall not be required to make any repairs to the extent such repairs are not fully covered by the insurance proceeds attributable to the Premises actually received by Landlord under insurance policies carried by Landlord, and subject to Tenant's obligation hereunder. For the purposes of this provision, the shell of the Premises shall include the structural framing material, roof, unfinished concrete floor slab, exterior and demising walls comprised or exposed masonry or exposed studs extending from the floor slab to roof deck. Landlord shall make sanitary sewer, storm sewer, water, electrical and HVAC services available to the Premises to the extent provided

8

prior to the damage or destruction. All work to be performed by Landlord shall be done in such manner that upon completion thereof, that portion of the Premises repaired or rebuilt shall contain substantially the same amount of floor area as immediately prior to the damage or destruction. Tenant agrees to cooperate and assist Landlord in the restoration and reconstruction of the Premises.

40. **DAMAGE AND DESTRUCTION - TENANT'S RECONSTRUCTION**. If Landlord does not elect to terminate this Lease as provided in this Lease, Tenant shall, at its own cost and expense promptly and diligently commence to fully repair, replace and restore those portions of the Premises Landlord is not required to repair under this Lease, including, but without limitation, all exterior and demising wall finishes, interior walls, partitions, doors, floor coverings, painting and decorating, plumbing, electrical and HVAC distribution elements and fixtures, telephone, communications, signs and other leasehold improvements (whether or not constructed by Tenant), trade fixtures, furnishings, equipment, merchandise, signs and other personal property to a condition equal to, or better than, that existing prior to its damage or destruction. All construction shall be in accordance with plans and specifications approved by Landlord which satisfy Landlord's then current design criteria.

41. **DAMAGE AND DESTRUCTION - INSURANCE PROCEEDS**. All proceeds payable from Landlord's insurance policies with respect to the Premises shall belong to and shall be payable to Landlord. If Landlord does not elect to terminate this Lease, as provided herein, Landlord shall, subject to the rights of Landlord's mortgagee, disburse and apply so much of any insurance recovery as shall be necessary to pay and reimburse Landlord for the costs incurred by Landlord with respect to Landlord's restoration work referred to above.

42. **DAMAGE AND DESTRUCTION - TENANT'S OBLIGATIONS - RENT ADJUSTMENT**. Should the Premises be rendered totally or partially untenantable as a result of any fire or other insured casualty, a just and proportionate part of the rent shall be abated until the earlier of: i) sixty (60) days after completion by Landlord of the restoration work Landlord is required to perform hereunder, or ii) Tenant's reopening of the Premises for normal business following such fire or other casualty, or iii) the date the Premises would have been open for normal business had Tenant promptly and diligently proceeded to complete its reconstruction as provided in this Lease; or iv) in the event Landlord terminates this Lease, until the date of termination. Tenant shall continue the operation of its business to the extent reasonably practicable from the standpoint of good business during any period of reconstruction or repair of the Premises. In no event shall Landlord be liable for interruption to the business of Tenant or for damage to or repair, reconstruction or restoration of any items belonging to Tenant or within the Premises.

43. **CONDEMNATION - CONTINUATION OF LEASE**. If title to the whole of the Premises shall be conveyed or condemned by right of eminent domain for any public or quasi-public use, then this Lease shall cease and terminate as of the date that possession is taken by the condemning authority. If less than all of the area of the Premises shall be so taken under eminent domain, the term of this Lease shall cease only with respect to the part so taken or conveyed, as of the day possession shall be taken by such authority; provided, however, that if the area taken amounts to more than 25% of the floor area of the Premises, either party shall have the right to terminate this Lease upon notice in writing within 30 days after such taking of possession. If more than 25% of the floor area of the Clinic shall be so condemned or conveyed, whether or not any

9

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER    **DCP 000009**

portion of the Premises shall be taken or conveyed, or if so much of the parking areas and Common Area facilities shall be so taken or conveyed that a reasonable number of parking spaces and sufficient other Common Area facilities, necessary, in Landlord's judgment, for the continued effective operation of the Clinic shall not be available for use by tenants and patrons of the Clinic, or if required by Landlord's mortgagee, or if Landlord's mortgage requires the condemnation award to be applied to Landlord's loan, then, in any such event, Landlord may, by notice in writing to Tenant delivered on or before the day of surrendering possession to the condemning authority, terminate this Lease, and rent shall be paid or refunded as of the date of termination. Tenant shall have no claim against Landlord for the value of any unexpired portion of the term of this Lease.

44.    **CONDEMNATION - RENTAL OBLIGATION AFTER TAKING**. In the event this Lease should terminate by reason of any taking or conveyance as aforesaid of the Premises or the Clinic, or any portion thereof, Tenant shall pay rent to the day when possession shall be taken by such authority, with an appropriate refund by Landlord of such rent as may have been paid in advance for a period subsequent to such date. If this Lease shall continue in effect as to any portion of the Premises not so taken or conveyed, the rent shall be reduced to a fair and equitable amount based on the floor area of the Premises remaining after such taking (or conveyance) as compared to the floor area in the Premises prior to such taking, and all additional rents shall thereafter be computed on the basis of such remaining floor area.

45.    **CONDEMNATION - RESTORATION**. If this Lease shall continue, Landlord shall, subject to the limitations set forth below, make all necessary repairs or alterations so as to constitute the portion of the remaining building a complete architectural unit, and the remaining Premises a complete operating unit. Landlord shall also restore or replace the parking areas and other common facilities as nearly as practicable to the area and condition they were in prior to any such taking. There shall be no abatement of rent during such repairs and restoration except to the extent otherwise provided above. Landlord's obligation under this Section shall be limited to an equitable portion of the condemnation award paid to Landlord and not applied by Landlord's mortgagee to the reduction of debt.

46.    **CONDEMNATION RIGHT TO AWARD**. All compensation awarded or paid for any taking or conveyance, as aforesaid, whether for the whole or a part of the Premises or otherwise, shall be the property of Landlord, whether such compensation shall be awarded as compensation for diminution in the value of the leasehold or of the fee, and Tenant hereby assigns to Landlord all of Tenant's right, title and interest in and to any and all such compensation. Tenant shall have the right to claim and recover from the condemning authority (pursuant to the laws of the State of North Dakota if the condemning authority is the State or federal law if the condemning authority is the United States), but not from Landlord, (except to the extent that any compensatory items of Tenant's damages are specifically included in Landlord's condemnation award), such compensation as may be separately awarded or recoverable by Tenant in Tenant's own right on account of any and all damage to Tenant's business by reason of the condemnation and for or on account of any cost or loss to which Tenant might be put in repairing, restoring or removing Tenant's merchandise, furniture, and trade fixtures, as well as for the unamortized cost (amortized on a straight line basis over the term of this Lease) of Tenant's leasehold improvements to the extent Landlord has not contributed to the cost thereof.

10

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER          *DCP 000010*

47.    **CONDEMNATION OF LESS THAN A FEE**. In the event of a condemnation of a leasehold interest in all or a portion of the Premises without the condemnation of the fee simple title also, this Lease shall not terminate and such condemnation shall not excuse Tenant from full performance of all of its covenants hereunder, but Tenant in such event shall be entitled to present or pursue against the condemning authority its claim and to receive all compensation or damages sustained by it by reason of such condemnation, and Landlord's right to recover compensation or damages shall be limited to compensation for and damages, if any, to its reversionary interest; it being understood, however, that during such time as Tenant shall be out of possession of the Premises by reason of such condemnation, this Lease shall not be subject to forfeiture for failure to observe and perform those covenants not calling for the payment of money. In the event the condemning authority shall fail to keep the Premises in the state of repair required hereunder, or to perform any other covenant not calling for the payment of money, Tenant shall have ninety days after the restoration of possession to it within which to carry out its obligations under such covenant or covenants. During such time as Tenant shall be out of possession of the Premises by reason of such leasehold condemnation, Tenant shall pay to Landlord, in lieu of rent provided for hereunder, and in addition to any other payments required of Tenant hereunder, an annual rent equal to the average annual rent paid by Tenant for the period from the commencement of the term until the condemning authority shall take possession, or during the preceding three full calendar years, whichever period is shorter. At any time after such condemnation proceedings are commenced, Tenant agrees, upon request of Landlord, to assign to Landlord all compensation and damages payable by the condemnor to Tenant, to be held without liability for interest thereon as security for the full performance of Tenant's covenants hereunder, such compensation and damages received pursuant to said assignment to be applied first to the payment of rents and all other sums from time to time payable by Tenant pursuant to the terms of this Lease as such sums fall due, and the remainder, if any, to be payable to Tenant at the end of the term hereof or on restoration of possession to Tenant, whichever shall first occur, it being understood and agreed that such assignment shall not relieve Tenant of any of its obligations under this Lease with respect to such rents and other sums except as the same shall be actually received by Landlord.

48.    **HAZARDOUS MATERIALS - DEFINITION**. Tenant covenants and agrees that Tenant shall at all times from and after delivery of possession of the Premises to Tenant, be responsible and liable for, and be in complete and strict compliance with, all "Governmental" laws, ordinances, rules and regulations relating to "Environmental Protection", "Environmental Matters" and "Industrial Hygiene" (as such terms are hereinafter defined) arising, directly or indirectly, out of the use of "Hazardous Materials" in, on, under or about the Premises or the Clinic by Tenant, its agents, servants, employees, licensees, contractors, subtenants and concessionaires. The term "Governmental" as used herein shall include, without limitation, federal, state, and local governments, and political subdivisions and regulatory agencies of federal, state, and local governments. The term "Hazardous Materials" as used herein shall include, without limitation, whether now or subsequently listed in any Governmental listing or publication defining hazardous materials, substances defined as: 'hazardous substances', 'hazardous materials', or 'toxic substances' in the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq.; the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq.; the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq.; and any subsequent amendments thereto, or replacement statutes thereof and any similar statutes, ordinances, rules, orders and regulations. The terms "Environmental Protection", "Environmental Matters" and "Industrial Hygiene" as used herein shall include, without limitation,

11

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER          *DCP 000011*

any matter which affects the environment or which may affect the environment, the use of sophisticated electrical and/or mechanical equipment, chemical, electrical, radiological or nuclear processes, radiation, sonar and sound equipment, use of lasers, and laboratory analysis and materials. Tenant shall be deemed to be (1) the person in control, (2) an operator of the Premises and (3) the person in charge with respect to the Premises for purposes of reporting requirements under the Comprehensive Environmental Response Compensation and Liability Act of 1980, as amended. Tenant agrees (i) that should it or its agents, servants, employees, licensees, contractors, subtenants or concessionaires know of the release or threatened release of any Hazardous Materials, in, on, under or about the Premises, including, without limitation, the release or threatened release of any Hazardous Materials in connection with Tenant's work, or in connection with any alterations, replacements, installations, improvements and/or additions made by Tenant to the Premises or any part thereof during the term of this Lease, that it will promptly notify Landlord of such release or threatened release, and (ii) that it will provide all warnings of exposure to Hazardous Materials in, on, under or about the Premises, as required by law, including, but not limited to, all laws hereinabove referred to in this Section as the same may be amended from time to time, all ordinances, rules and regulations adopted and publications promulgated thereunder, and all future laws or case decisions to the same effect.

49.    **HAZARDOUS MATERIALS - COMPLIANCE WITH LAWS**. Tenant further covenants and agrees, at its sole cost and expense, to procure, maintain in effect, and comply with all conditions of any and all permits, licenses, and approvals issued by governmental agencies for Tenant's use of Hazardous Materials in, on, under or about the Premises. Tenant shall prior to any use of the Premises affecting Environmental Protection, Environmental Matters and Industrial Hygiene or involving the use of Hazardous Materials, in, on, under or about the Premises, notify Landlord in writing of the intended use of such Hazardous Materials and promptly provide Landlord evidence of compliance with all Governmental laws, ordinances, rules and regulations pertaining to such use. Tenant shall in all respects handle, treat, deal with and manage any and all Hazardous Materials in, on, under or about the Premises in strict conformity with all applicable Governmental laws, ordinances, rules and regulations relating to Hazardous Materials, Environmental Protection and Industrial Hygiene.

50.    **HAZARDOUS MATERIALS - ENVIRONMENTAL AUDIT AND REMOVAL**. Landlord shall have the right, upon written notice to Tenant ("Landlord's Notice"), at any time and from time to time during the term of this Lease, including, without limitation, (i) prior to the expiration or earlier termination of the term of this Lease, or (ii) in conjunction with a proposed assignment of this Lease or a proposed sublease of all or a part of the Premises requested by Tenant pursuant to the provisions of this Lease (in which event, Tenant's satisfaction of its obligations under this Section shall be a condition precedent to Landlord's consent to any such proposed assignment or sublease), to require Tenant, at its sole cost and expense, to cause an environmental audit and survey (the "Survey") to be made of the Premises, not later than fifteen (15) days following Landlord's Notice, by an environmental consulting firm (the "Consulting Firm") approved and/or designated by Landlord to determine whether the Premises contains any Hazardous Materials. Tenant shall, upon completion of such Survey, promptly furnish to Landlord a copy of such Survey prepared by the Consulting Firm. In the event said Survey shall disclose the presence of Hazardous Materials in, on, under or about the Premises, and if Landlord determines, based upon the original approved plans for Tenant's Work, or on the basis of any subsequent plans and specifications submitted to Landlord pursuant to the terms of this Lease, or

12

DCP 000012

on the basis of other information and data available to Landlord, that the existence of said Hazardous Materials arose out of or is in any way connected with the construction, use, manufacture, storage, sale, release or disposal of Hazardous Materials or products containing Hazardous Materials by Tenant, its agents, servants, employees, licensees, contractors, subtenants or concessionaires during the period of Tenant's occupancy of the Premises (the "Tenant Installed Hazardous Materials"), (i) Tenant shall, at its sole cost and expense, cause all of said Tenant Installed Hazardous Materials to be removed from in, on, under or about the Premises and transported from the Clinic for use, storage or disposal in compliance with all applicable laws by a hazardous materials abatement contractor (the "Abatement Contractor") licensed in the state in which the Clinic is located and approved by Landlord. In the event such removal and disposal of the Tenant Installed Hazardous Materials is performed by Tenant after the expiration or earlier termination of the term of this Lease, Tenant shall be deemed to be occupying the Premises as a licensee at a monthly charge in an amount equal to average rent for the last twelve months of the term of this Lease, which sum shall be charged to Tenant by Landlord until the date Landlord receives certification from the Abatement Contractor that all Tenant Installed Hazardous Materials have been removed from in, on, under or about the Premises and transported from the Clinic for use, storage or disposal, or (ii) Landlord may, at its sole option upon written notice to Tenant, cause all of said Tenant Installed Hazardous Materials to be removed from in, on, under or about the Premises and transported from the Clinic for use, storage or disposal, in compliance with all applicable laws, by a hazardous materials abatement contractor selected by Landlord, in which event, the costs and expenses of such removal and disposal, as reasonably estimated by Landlord, shall be paid to Landlord by Tenant, as additional rent, within ten (10) days after receipt of an invoice therefor. In the event Tenant fails to timely perform its obligations under this Section, Landlord shall have the right (but shall not be obligated) to perform Tenant's obligations under this Section, in which event, Tenant shall pay to Landlord, as additional rent, promptly, upon demand, the costs and expenses thereof; provided, however, in the event Landlord performs Tenant's obligations hereunder after the expiration or earlier termination of the term of this Lease, Tenant shall pay to Landlord, in addition to the foregoing costs and expenses, a monthly charge in an amount equal to the monthly charge determined pursuant to the provisions of this Section from the date of expiration or earlier termination of the term of this Lease until the date Landlord has completed Tenant's obligations under this Section. Landlord and Tenant agree that the foregoing monthly charge represents a reasonable estimate of the financial losses suffered by Landlord by Tenant's failure to timely perform its obligations under this Section.

In the event that the environmental audit and survey does not disclose the existence of any hazardous materials and the report by the Consulting Firm further states that the request for the audit and survey (Survey) was requested by Landlord without any reasonable factual basis for the any belief that such hazardous material did exist then and in that event the cost of the audit and survey (Survey) shall be paid by the Landlord.

51. **HAZARDOUS MATERIALS - LANDLORD'S APPROVAL**. Tenant shall not take any remedial action in response to the presence of Hazardous Materials in, on, under or about the Premises, nor enter into any settlement agreement, consent decree or other compromise in respect to any Claims [as such term is hereinafter defined in above relating to Hazardous Materials in any way connected with the Premises], without first notifying Landlord of Tenant's intention to do so and affording Landlord ample opportunity to appear, intervene or otherwise appropriately assert Landlord's interest with respect thereto.

13

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER          *DCP 000013*

52.    **HAZARDOUS MATERIALS - INDEMNITY**. Without limiting anything herein contained Tenant shall indemnify and hold Landlord harmless from and against any and all claims, demands, losses, liabilities, penalties, damages, costs and expenses, including without limitation, attorneys' fees and costs (collectively "Claims"), arising out of or in any way connected with the use, manufacture, storage, sale, release or disposal of Hazardous Materials or products containing Hazardous Materials by Tenant, its agents, servants, employees, licensees, contractors, subtenants or concessionaires in, on, under or about the Premises during the period of its occupancy of the Premises including, without limitation; (i) any Claim by a federal, state or local Governmental agency or a private citizen arising out of or in any way connected with the environmental condition of the Premises; (ii) any Claim by any successor Tenant, its agents, servants, employees, licensees, contractors, subtenants or concessionaires, arising out of or in any way connected with the environmental condition of the Premises; and (iii) the cost of any required or necessary repair, cleanup or detoxification and the preparation of any closure or other required plans in connection therewith. The indemnity obligations of Tenant under this Section shall survive the expiration or earlier termination of the term of this Lease.

53.    **EVENT OF DEFAULT**. Any one or more of the following occurrences shall constitute an event of default under this Lease by Tenant:

(a)    The failure of the Tenant to pay rent of any kind or nature due hereunder within fifteen (15) days after the same shall be due;

(b)    The bankruptcy or insolvency of the Tenant or any guarantor of this Lease, or the filing of any debtor proceedings, including petition in bankruptcy or insolvency or for reorganization or for the appointment of a receiver or trustee of all or any portion of Tenant's or any such guarantor's property, or the making or assignment for the benefit of creditors, or the petitioning or entering into an arrangement by the Tenant or any guarantor of this Lease;

(c)    The vacation or abandonment by the Tenant of the Premises for a period of five (5) days;

(d)    The taking by any party of this Lease by writ of execution or similar process;

(e)    The failure of the Tenant to keep or perform any of the terms, conditions, covenants or agreements of this Lease covenanted and agreed to be observed or performed by Tenant, not otherwise specified as a default or event of default, for more than 30 days after written notice of such default or violation shall have been given to Tenant, provided that if the default be of such a nature that it cannot be reasonably cured within said thirty day period, and Tenant shall in good faith have promptly commenced the curing of such default within such period, then Tenant shall be deemed not in default hereunder if it shall diligently proceed to cure such default within the grace period expressly allowed by Landlord in writing.

14

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER    **DCP 000014**

54.    **REMEDIES FOR DEFAULT**. In the event of the occurrence of an event of default, as defined in the preceding section in addition to all other rights and remedies available to Landlord under this Lease or under law, Landlord shall have the following remedies:

(a)    At any time following an event of default, Landlord may, at Landlord's option, elect to terminate this Lease by written notice to Tenant specifying Landlord's intention to terminate this Lease, which notice may, but need not be, included in a notice of intention to evict or pleading in an eviction action. Notice of termination shall be served in writing, by facsimile, or any manner authorized for service of any pleading in a civil action. Following service of the notice of termination, Tenant shall have the right to reinstate this Lease by paying to Landlord all fixed minimum rent, additional rentals, late charges and all other fees and charges payable under this Lease and curing all other events of default under this Lease, by no later than 11:59 p.m of the seventh day following notice of termination; provided, however, in the third instance of a monetary default in any 12 month period, no notice or opportunity to cure shall be required prior to Landlord terminating this Lease. Landlord shall be under no obligation to reinstate this Lease if Tenant fails to cure all events of default within the time and in the manner required herein.

Unless Tenant reinstates this Lease in the time and in the manner provided above, termination of this Lease will be effective, without further notice and without the necessity of any legal suit or action, upon the expiration of the period Tenant is allowed to reinstate this Lease. Delivery of Landlord's notice of termination under this provision is intended to satisfy any common law requirements relating to service of notice of default or demand for payment of rents prior to terminating a lease, and no further notice to quit, vacate, demand or legal process shall be necessary to terminate this Lease, whether or not any additional notice may be required by law as a condition to obtaining a judicial order evicting Tenant from the Premises.

Following the effective time of termination, Tenant shall have no further interest in the Premises or in this Lease, or any right to rents or profits generated by Landlord from the Premises and, subject to Landlord's right to recover damages under Subsection (a) of the following Section [Recovery of Rents and Damages] Tenant shall not be liable to Landlord for fixed rent or additional rents which first accrue after the effective date of termination. Rents and other charges paid to Landlord for the post-termination use or occupancy of all or any portion of the Premises shall not reduce Tenant's obligations to pay all rents and other charges which accrued prior to the effective date of termination. No attempt by Tenant to cure defaults under this Lease following expiration of the time to cure defaults shall be valid. Landlord's acceptance of rent following expiration of the period of curing a default shall not, unless otherwise agreed by Landlord in writing, constitute reinstatement of this Lease, and any post-termination rental payments received or recovered by Landlord shall be applied by Landlord to satisfy Tenant's obligations under this Lease, without affecting the termination of this Lease.

(b)    At any time following an event of default, Landlord, shall, at its option, have the immediate right to re-enter the Premises, without terminating the Lease. Should Landlord elect to re-enter, it may take such steps as it deems necessary to secure the Premises and to exclude Tenant and its agents and employees therefrom; make such alterations and repairs as may be necessary in order to relet the Premises; and relet the Premises or any part thereof, on behalf of Tenant, for such term or terms (which may be

15

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER    **DCP 000015**

for a term extending beyond the term of this Lease) and at such rental and upon such other terms and conditions as Landlord, in its sole discretion, may deem advisable. Notwithstanding re-entry by Landlord, and until termination of this Lease, Tenant's obligations under this Lease shall remain in full force and effect and, unless Landlord has agreed to lease or otherwise convey all or any portion of the Premises, Tenant shall have the right to reinstate this Lease and retake possession of the Premises by curing all events of default and paying all late charges and legal fees due under this Lease. Any rents collected by Landlord following re-entry shall be applied as provided in Subsection (c) of the following Section [Recovery of Rents and Damages]. To the extent that for any month after re-entry, but prior to termination, Landlord receives net rents, as defined below, in excess of Tenant's rental obligation for such month, the excess shall be held by Landlord as security for Tenant's future obligations to Landlord under this Lease, and upon satisfaction of those obligations, shall be applied to the reduction of Tenant's past due obligations to Landlord.

Following re-entry, Landlord shall have no obligation to relet the Premises or otherwise mitigate Tenant's damages. In the event, notwithstanding this provision, any court were to impose on Landlord the obligation to mitigate Tenant's damages subsequent to re-entry, Landlord may condition the reletting of the Premises on, among other reasonable conditions, any one or more of the following: i) the payment of a fair market rate of rent for the Premises, whether or not that rate is in excess of the amounts reserved to Landlord under this Lease; ii) the compliance by the prospective Tenant with the use clause and all other material covenants and agreements in this Lease (except those which cannot legally be performed by anyone other than Tenant); iii) the making of repairs and improvements to the Premises necessary to place it in first-class condition; or iv) the provision of a security deposit or guaranty; or v) the satisfaction of all requirements Landlord could impose as a condition to approving Tenant's assignment of the Lease to any other party. Re-entry by Landlord solely for the purpose of securing the Premises and without any effort by Landlord to relet the Premises after Tenant's abandonment or vacation of the Premises, shall not impose any obligation on Landlord to mitigate damages.

55.    **RECOVERY OF RENT AND DAMAGES**. In addition to all other rights and remedies of Landlord provided by law and under this Lease, following an event of default, Landlord shall have the right to recover from Tenant, Tenant's successors and assigns, and any co-obligor, surety or guarantor, or other party legally responsible for Tenant's obligations under this Lease, all or any portion of Tenant's obligations under this Lease in the following amounts:

(a)    All rent and all other charges owing by Tenant to Landlord under this Lease prior to the effective date of termination or re-entry; plus,

(b)    Damages subsequent to termination of the Lease equal the excess of all rent including any additional rents reserved under this Lease reduced to present value to the date of the termination, over the rental value of the Premises for the remaining term of this Lease; plus,

(c)    For any period subsequent to re-entry but prior to termination of this Lease all rent and any additional rents, and other charges reserved under this Lease, as defined below, accrued as of the date of judgment, less the net rentals received by Landlord from

16

the reletting of all or any portion of the Premises, after deducting Landlord's costs of reletting the Premises, including without limitation, leasing commissions, brokerage fees, costs of repairs, improvements or modifications made to the Premises, legal fees, and other costs incurred by Landlord in reletting the Premises; plus,

(d)     All direct and consequential damages, cost, expense, or loss suffered by Landlord as a proximate result of the breach by Tenant of any provision of this Lease for which Landlord is not fully compensated under any other provision of this Lease.

56.     **LEGAL EXPENSES**. If any case, suit or proceeding shall be brought by one party to this Lease against the other, the prevailing party shall be entitled to recover all costs incurred by the prevailing party related thereto, including reasonable attorney's fees and the costs of appeal.

57.     **DEFAULT AND REMEDIES - WAIVER OF DEFAULT**. The waiver by Landlord of any breach of any term, covenant or condition herein contained or the doing of any matter or payment of any sum by Landlord not required of Landlord by the terms hereof shall not be deemed to be a waiver or amendment of that term, covenant or condition or of any subsequent breach of the same or any other term, covenant or condition herein. The subsequent acceptance of rent hereunder by Landlord shall not be deemed to be a waiver of any existing or preceding breach by Tenant of any term, covenant or condition of this Lease, other than the failure of Tenant to pay the particular rent so accepted, regardless of Landlord's knowledge of such preceding or existing breach at the time of acceptance of such rent. No covenant, term or condition of this Lease shall be deemed to have been waived by Landlord, unless such waiver be in writing signed by Landlord.

58.     **DEFAULT AND REMEDIES - OPTION TO CURE DEFAULT**. Landlord may, at its option, elect to cure at any time, without notice (except as otherwise provided), any default by Tenant under this Lease; and whenever Landlord so selects, and if not otherwise expressly provided for in this Lease, all costs and expenses incurred by Landlord in curing a default, including, without limitation, reasonable attorney's fees, together with interest on the amount of costs and expenses so incurred at the rate of eighteen per cent (18%) per annum or the highest legal rate provided by law to be charged to Tenant, whichever is lower, shall be paid by Tenant to Landlord on demand, and shall be recoverable as additional rent.

59.     **DEFAULT AND REMEDIES - ACCORD AND SATISFACTION**. No payment by Tenant or receipt by Landlord of a lesser amount than the monthly rent herein stipulated shall be deemed to be other than on account of the earliest stipulated rent, nor shall any endorsement or statement on any check or any letter accompanying any check or payment as rent be deemed an accord and satisfaction, and Landlord may accept such check or payment without prejudice to Landlord's right to recover the balance of such rent or pursue any other remedy in this Lease provided.

60.     **DEFAULT AND REMEDIES - REMEDIES CUMULATIVE**. All remedies provided by Landlord under this Lease are intended to be cumulative, and any one or more may be exercised by Landlord, at its option. The exercise by Landlord of any remedy reserved to Landlord under this Lease or provided by law is not intended to be exclusive of any other available remedy or remedies, but each and every such remedy shall be in addition to every other remedy now or hereafter existing at law, in equity or by statute.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER          *DCP 000017*

**61.   RULES AND REGULATIONS.**  Landlord reserves the right to promulgate such reasonable rules and regulations relating to the Premises, Common Areas and the Clinic, and any part or parts thereof, as Landlord may deem appropriate and for the best interests of the tenants. Tenant agrees to abide by such rules, which shall be uniformly applied, and to cooperate in their observance.  Landlord shall also have the authority to establish in the rules and regulations reasonable fines and penalties for violations of the rules and regulations, which shall include reasonable due process provisions, applicable to tenants of the Clinic.  The rules and regulations, and any amendments or additions that may be made from time to time, shall be effective and become binding upon Tenant upon delivery of a copy of them to Tenant.  Tenant shall be responsible for compliance by its employees, agents and contractors with all rules and regulations adopted by Landlord.

**62.   PROTECTION OF LENDERS - ESTOPPEL CERTIFICATE.**  Landlord and Tenant each agree that they will, at any time and from time to time, within ten (10) business days following written notice by the other party hereto specifying that it is given pursuant to this provision, execute, acknowledge and deliver to the party who gave such notice a statement in writing certifying that this Lease is unmodified and in full force and effect (or if there have been modifications, that the same is in full force and effect as modified, and stating the modifications), and the dates to which the rent and any other payments due hereunder from Tenant have been paid in advance, if any, and stating whether or not, to the best of knowledge of the signer of such certificate, the other party is in default in performance of any covenant, agreement or condition contained in this Lease, and, if so, specifying each such default of which the signer may have knowledge.

The failure of either party to execute, acknowledge and deliver to the other a statement in accordance with the foregoing provisions within the ten (10) day period shall constitute an acknowledgement by the party given such notice, which may be relied on by any person holding or proposing to acquire an interest in the Clinic or the Premises or this Lease from or through the other party, that this Lease is unmodified and in full force and effect and that the rent has been duly and fully paid to and including the respective due dates immediately preceding the date of such notice and shall constitute, as to any person entitled as aforesaid to rely upon such statements, a waiver of any default which may exist prior to the date of such notice.

**63.   PROTECTION OF LENDERS - ATTORNMENT.**  Tenant shall, in the event any proceedings are brought for the foreclosure of, or in the event of exercise of power of sale under, any mortgage or deed of trust made by Landlord covering the Premises, attorn in writing to the mortgagee or purchaser at such foreclosure sale and recognize such purchaser as Landlord under this Lease.

**64.   PROTECTION OF LENDERS - SUBORDINATION.**  This Lease and all of Tenant's rights hereunder shall be subject and subordinate to any and all ground leases or underlying leases or subleases that include the Premises, including, without limitation, a sale leaseback lease or leaseback leases to which Landlord is or may become a party as a Tenant or a subtenant, and to the lien of all mortgages, in all amounts and all advances thereon, which may now or hereafter become a lien on the Premises, and to all renewals, replacements, modifications, consolidations and extensions thereof; provided, however, Tenant agrees that any such lessor or mortgagee may elect to have this Lease be made superior to any such ground or underlying lease

18

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER     *DCP 000018*

or the lien of its mortgage, and in the event of such election and upon notification by Landlord or such lessor or mortgagee to Tenant to that effect, this Lease shall be deemed superior to said ground or underlying lease or to the lien of any such mortgage, whether or not this Lease is recorded or whether this Lease is recorded prior or subsequent to the date of recording of said ground or underlying lease or mortgage. This Lease shall also be subordinate and subject to the provisions of any easements and operating agreements affecting the Clinic. Tenant agrees to provide any such mortgagee or lessor whose name and address has been provided to Tenant with written notice of any default by Landlord under this Lease. The curing of any Landlord default by such mortgagee or lessor shall be treated as curing and performance by Landlord.

Upon request of Landlord, Tenant will within fifteen (15) days thereafter execute an agreement confirming that this Lease and Tenant's rights thereunder are subordinate to the lien or interest of any mortgage, trust deed, ground or other underlying lease or other instrument resulting from any other method of financing or refinancing (including any sale and leaseback) now or hereafter in force against the Clinic or the land or buildings of which the Premises are a part or against any buildings hereafter placed upon the land of which the Premises are a part, and to all advances made or hereafter to be made upon the security thereof, provided, however, that such mortgagee or lessor will agree that, in the event any action is taken to foreclose the lien of the mortgage or terminate any ground lease, this Lease and all rights of the Tenant under its terms to use and quiet possession of the Premises, including, but not limited to, easements, appurtenances and Common Areas and facilities in the Clinic, shall not be disturbed and shall continue in full force and effect so long as Tenant shall faithfully discharge each and every obligation on its part to be kept and performed under the terms of this Lease.

     **65.**    **ENTIRE AGREEMENT**. This Lease and the exhibits now or hereafter attached (as provided herein) and forming a part hereof, set forth all the covenants, promises, agreements, conditions and understandings between Landlord and Tenant concerning the Premises or matters related thereto, and there are no covenants, promises, agreements, conditions or understandings, either oral or written, between them other than are herein set forth. Except as herein otherwise provided, no subsequent alteration, amendment, change or addition to this Lease shall be binding upon Landlord or Tenant unless reduced to writing and signed by them.

     **66.**    **NOTICES**. Any notice of demand herein required or permitted to be given shall be in writing and shall be mailed by Certified Mail, Return Receipt Requested, postage prepaid, properly addressed as follows, or such other address as may hereafter be designated in writing by either of the parties.

As to Landlord:     Innovis Health, LLC
                3000 32nd Avenue South
                Fargo, North Dakota 58104
                Attention:    Vice    President
                Finance/CFO

As to Tenant:     Dakota Clinic Pharmacy, LLC
                1702 South University Drive
                Fargo, ND 58103
                Attention: President

19

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER     *DCP 000019*

67.  **CAPTIONS**.  The captions used as headings for the various subject matters appearing in this Lease are used only as a matter of convenience to help find subject matters and are not to be construed as part of the Lease provisions nor in determining the intent of the parties to this Lease.

68.  **NO PARTNERSHIP RELATION**.  Landlord, in its role as Landlord, is not intended to be in any way or for any purpose a partner of Tenant in the conduct of its business, or otherwise, or joint adventurer, or a member of a joint enterprise with Tenant.

69.  **SEVERABILITY**.  If any term, covenant or condition of this Lease shall, to any extent, be invalid or unenforceable, the remainder of this Lease, or the application of such term, covenant or condition to person or circumstances other than those in respect to which it is held invalid or unenforceable, shall not be affected thereby and each term, covenant or condition of this Lease shall be valid and be enforced to the fullest extent permitted by law.

70.  **NO OPTION**.  The submission of this Lease for examination does not constitute a reservation of or option for the Premises and this Lease becomes effective as a Lease only upon execution and delivery thereof by Landlord and Tenant.

71.  **RECORDING**.  Tenant shall not record this Lease without the written consent of Landlord.

72.  **GOVERNING LAW**.  This Lease shall be governed by the laws of the State of North Dakota.

73.  **HOLDING OVER**.  Any holding over after the expiration of the term of this Lease or any renewal thereof with the consent of the Landlord, shall be construed to be a tenancy from month-to-month at the rents herein specified (pro-rated on a monthly basis) and shall otherwise be on the terms and conditions herein specified, so far as applicable.

74.  **SUCCESSORS**.  All rights and liabilities herein given to, or imposed upon, the respective parties hereto shall extend to and bind the respective successors and assigns of the said parties; and they shall all be bound jointly and severally by the terms, covenants, conditions and agreements herein.  No rights, however, shall inure to the benefit of any assignee of Tenant unless the assignment to such assignee has been approved by the Landlord in writing as hereinbefore provided.

75.  **EXCLUSIVE RIGHT**.  Tenant shall have the exclusive right to sell prescription and over-the-counter drugs on a retail basis at the Clinic, except that minor over-the-counter drugs and medicines may be sold at a gift, hospitality or similar shop at the Clinic.

76.  **CROSS-DEFAULT**.  Landlord has or will enter into the following other agreements (collectively, with this Lease, the "Agreements"): (a) Lease with Health Center Pharmacy, Ltd ("HCP"), for certain pharmacy space at Landlord's clinic located at 1401 13 Ave East, West Fargo, ND; (b) Shared Services Agreement with Tenant pertaining to certain services provided by and to each of Landlord and Tenant at Landlord's clinics located at 1702 University

20

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER     **DCP 000020**

Drive South, Fargo, ND, 1401 13th Avenue East, West Fargo, ND, 3000 32nd Avenue South, Fargo, ND and/or other facilities owned or operated by Landlord or Landlord's affiliates; and (c) Lease with Tenant Lease for certain pharmacy space at Landlord's clinic located at 3000 32nd Avenue South, Fargo, ND. Some individuals who are owners of Tenant are also individuals who are owners of HCP, and Tenant recognizes and acknowledges that a default by Tenant or HCP under one of the Agreements would create a tenuous and unworkable relationship with Landlord under all of the Agreements. Accordingly, a default by Tenant or HCP in any one of the Agreements shall, at the option of Landlord, constitute and be deemed a default by Tenant and HCP under all of the Agreements, and in such case, Landlord may exercise any and all remedies it has in the event of default under all Agreements, including, without limitation, termination of all of the Agreements.

*[The remainder of this page intentionally left blank – signatures contained on following page]*

21

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER     *DCP 000021*

IN WITNESS WHEREOF, the parties hereto have executed this Lease as of the day and year first above written.

**LANDLORD:**

INNOVIS HEALTH, LLC

By: _____

Its: _____

**TENANT:**

DAKOTA CLINIC PHARMACY, LLC

By: _____

Its: _____

22

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER    *DCP 000022*

IN WITNESS WHEREOF, the parties hereto have executed this Lease as of the day and year first above written.

**LANDLORD:**

INNOVIS HEALTH, LLC

By: _____

Its: West President

**TENANT:**

HEALTH CENTER PHARMACY, LTD

By: _____

Its: President

22

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER    *DCP 000023*

## EXHIBIT A



A-1

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER    *DCP 000024*