**UNITED STATES DISTRICT COURT**
**DISTRICT OF NORTH DAKOTA**
**EASTERN DIVISION**

JESSICA KRAFT, individually and as parent of minors L.K., S.K., and O.K.; SHELLI SCHNEIDER, individually and as parent of minors A.S. and W.S.; ANNE BAILEY, individually and as parent of minor D.B; AMY LAVELLE, individual and as parent of minors Em.L.and El.L.; ELIZABETH BEATON, individually and as parent of minor M.B.; AMANDA AND TYRELL FAUSKE, individually and as parents of minors C.R.F. and C.J.F; JENNIFER REIN, individually; and JESSICA BERG, individually and as parent of minors A.B. and S.B, individually and on behalf of all others similarly situated,

        Plaintiffs,

vs.

ESSENTIA HEALTH, INNOVIS HEALTH, LLC d/b/a ESSENTIA HEALTH, DAKOTA CLINIC PHARMACY, LLC, JOHN DOE MANUFACTURERS, and JOHN DOE DISTRIBUTOR,

        Defendants.

Civil File No.: 3:20-cv-00121-PDW-ARS
Hon. Peter D. Welte
Mag. J. Alice R. Senechal

**ESSENTIA HEALTH'S SUPPLEMENTAL BRIEF IN RESPONSE TO PLAINTIFFS' MOTION TO COMPEL**

Defendants, Essentia Health and Innovis Health, LLC d/b/a Essentia Health West (collectively, "Essentia"), submit this supplemental brief in response to Plaintiffs' Motion to Compel pursuant to the Court's Order dated June 24, 2025. *See* Doc. ID No. 307. For the reasons previously articulated and those outlined further below, Essentia respectfully requests

this Court deny Plaintiffs' Motion because the discovery sought is simply irrelevant to any party's claim or defense and is disproportionate to the needs of the case.

This Court is well-versed in the factual and procedural background of this case and Essentia previously submitted briefing and various position statements of record as it relates to the present dispute, which Essentia incorporates by reference. Essentia will only repeat factual/procedural information below as may be necessary for ease of understanding.

Following multiple meet and confer discussions and discovery dispute conferences, the parties remain at an impasse as to several areas of discovery. One of these areas relates to deposition topics designated by the Plaintiffs pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure. More specifically, Plaintiffs seek to compel Essentia to designate a witness pursuant to Rule 30(b)(6) to testify regarding "all warranties, promises, statements, or representations, whether express or implied," by Essentia and DCP with respect to the safety and efficacy of care, and the potentially impacted vaccinations/medications, as well as marketing materials related to the same. *See* Doc. ID No. 284-2. Essentia objects to this line of inquiry and for broader reasons than suggested by Plaintiffs.

These topics, as phrased, do not meet the "reasonable particularity" standard of Rule 30(b)(6). FED. R. CIV. P. 30(b)(6). Essentia cannot possibly designate a witness to address these topics with respect to the potential patient population, in excess of 50,000 people. To be sure, healthcare is by its very nature individualized and unique to meet the needs and wishes of each patient. Conversations between healthcare providers and patients are necessarily dependent upon each patient's clinical presentation, medical history, questions

2

presented, and individual provider judgment and approach to these types of discussion. There is simply no way Essentia can designate a witness to address these overly broad topics; nor would such an endeavor be proportionate to the needs of the case. FED. R. CIV. P. 26(b)(1).

Plaintiffs contend that this discovery is relevant to their breach of warranty and consumer protection claims. However, none of the cases cited by the Plaintiffs involve the rendition of healthcare services. Instead, the cases Plaintiffs cite involve the same or similar claims made against various product manufacturers and/or entities involved in the direct to consumer sale of goods. *See e.g. In re Hardieplan Fiber Cement Siding Litig.,* No. 12-MD-2359, 2014 WL 5654318, at *2 (D. Minn. Jan. 28, 2014) (multi-district litigation against manufacturer of allegedly defective siding); *Podpeskar v. Makita U.S.A. Inc.*, 247 F. Supp. 3d 1001 (D. Minn. 2017) (putative class action against manufacturer of lithium-ion batteries); *Williams v. United Techs. Corp.*, No. 2:15-CV-04144-NKL, 2015 WL 7738370, at *1 (W.D. Mo. Nov. 30, 2015) (lawsuit against manufacturer of home air conditioning heat pump); *Hodges v. Pfizer, Inc.*, No. 14-CV-4855 (ADM/TNL), 2015 WL 13804602, at *10 (D. Minn. Dec. 17, 2015), objections overruled, No. CV 14-4855 ADM/TNL, 2016 WL 1222229 (D. Minn. Mar. 28, 2016) (claims against drug manufacturer); *Nicholson v. Biomet, Inc.*, 537 F. Supp. 3d 990 (N.D. Iowa 2021), aff'd, 46 F.4th 757 (8th Cir. 2022) (products liability action against manufacture or hip implants). The logic of these cases, however valuable, is simply inapplicable in the context of this proceeding.

Plaintiffs allege Essentia sold and administered temperature sensitive pharmaceutical products ("TTSPPs"), which Plaintiffs claim were subjected to one or more temperature excursions, to Plaintiffs, their children, and alleged class members.  (Doc. ID No. 119, *Second Amended Class Action Complaint*, at ¶¶ 1-4).  There is no dispute that the potentially impacted products were stored and distributed by Dakota Clinic Pharmacy, LLC ("DCP") pursuant to a Shared Services Agreement with Innovis Health, LLC.  *Id* at. ¶¶ 304-306.  Plaintiffs assert DCP represented and warranted the quality of the potentially impacted products and that DCP distributed the potentially impacted products to Essentia facilities for administration to patients.  (Doc. ID No. 119, at ¶¶ 248-250; 273-275).

While there is no concession that any of the potentially impacted products stored by DCP pursuant to the Shared Services Agreement between September 2017 and February of 2020 were indeed exposed to a temperature excursion, patients were notified of a potential temperature excursion and offered revaccination at no cost out of an abundance of caution.  (Doc. ID No. 103, *Essentia Health's Answer to Second Amended Complaint*).  There is no allegation that Essentia was aware of the potential temperature excursion prior to the administration of any of the potentially impacted products to patients.  In fact, the discovery to date and Essentia's response to the potential temperature excursion belies any such suggestion.  Moreover, general statements regarding quality of care do not support Plaintiffs' claims.  *See e.g. Bernstein v. Extendicare Health Servs.*, 607 F.Supp.2d 1027, 1032 (D. Minn. 2009) ("Statements that a nursing home will comply with or exceed 'applicable laws,' or that it has established 'rigorous standards,' are similar to statements that services provided will be 'high quality.' These statements are puffery."); *LensCrafters,*

4

*Inc. v. Vision World, Inc.*, 943 F.Supp. 1481, 1498 (D. Minn. 1996) (finding in a false advertising action that the statement a business used—"the most advanced equipment available"—was "mere puffery" and a "generalized exaggeration or overstatement of superiority ... expressed in broad, vague and commendatory terms").  Any discovery regarding the same is irrelevant and, in turn, would be grossly disproportionate to the needs of the case considering the time and expense of properly educating a designee regarding these topics and the importance of the discovery in resolving the issues in this litigation. *See* FED. R. CIV. P. 26(b)(1).

Unlike the cases cited by the Plaintiffs involving direct to consumer product sales or manufacturing, this case involves neither.  Rather, this case involves the rendition of professional services, including the administration of potentially impacted vaccinations and/or medications, innate in which is the exercise of professional judgment and skill. With the exception of encouraging patients to consider annual flu immunizations, Essentia does not advertise or market for a particular drug or product.  Instead, what medication and/or vaccination may be recommended is entirely dependent upon provider judgment and individualized to the patient and condition.  Advertising for healthcare services generally can hardly be compared to the sale of siding or batteries, for example, and discovery on this topic is untethered to the actual claims and defenses at issue—centered on the storage of temperature sensitive pharmaceuticals, for which DCP was directly and contractually responsible.

Importantly, Plaintiffs bear the burden of proof in demonstrating what warranties, promises, statements or representations, if any, they relied on.  To date, however, Plaintiffs

have not identified any such statements or representations despite repeated requests for the same. Despite this, Plaintiffs are not without discovery on these topics entirely. Rather, Essentia produced various advertisements relative to immunizations, as well as cancer screenings and oncology services. (Doc. ID No. 305-7, at Response to Request No. 22). Template notification letters provided to the potentially impacted patient population have long since been produced, as were communications with the named Plaintiffs. *Id*. The Pharmacy Storage Communications Plan, in various drafting stages, and related correspondence specific to the potential temperature excursion, as well as marketing plans for previous flu campaigns were also produced. *Id*. at Response to Request No. 24.

In addition, Essentia explained in written discovery that patients who were administered vaccinations and/or immunizations during the relevant time period at Essentia Health West were provided Vaccine Information Sheets as published and updated by the U.S. Centers for Disease Control and Prevention. *Id*. at Response to Request Nos. 26 & 27. Similar information was provided with respect to materials given to chemotherapy patients. *Id*. Last, informed consent forms were produced, together with reference to the named Plaintiffs' medical records.[1] *Id*. at Response to Request No. 28.

Essentia has not conducted a chart-by-chart review of the putative class medical records, nor has Essentia produced putative class medical records, aside from the voluminous, and largely deidentified, data produced in multiple formats. To do so would

---

[1] Essentia explained that the informed consent forms produced in response to Plaintiffs' discovery requests, by their very terms, are inapplicable to immunizations. Contrary to Plaintiffs' representation, specific reference to the informed consent form for the named Plaintiff who received chemotherapy was provided.

be disproportionate to the needs of the case given the discovery already provided and the phenomenal cost in such effort, both in Essentia's resources and the privacy interests of the putative class members as well.

Plaintiffs also take issue with the extent of Essentia's search for responsive records. Lost in Plaintiffs analysis, however, is the body of work Essentia undertook to comply with the terms of the Court's Order Governing Discovery of Electronically Stored Information. Pursuant to the Court's ESI Order (Doc. ID No. 46), the parties were to agree to the disclosure and formulation of custodians and potentially relevant sources of ESI in advance of any search and/or collection. Pursuant to this Order, Essentia made its ESI disclosures on March 31, 2021. Significantly, these disclosures did not otherwise identify Laura Morris, Robert Haskell, Paul Graalum, or other DCP employees/owners, as record custodians. Through the Court's ESI Order's Document Search Protocol, Essentia identified various ESI custodians, systems, and storage resulting in the imaging over 2.9 million resources. Numerous search terms were applied to this universe of resources to facilitate the review and production of relevant and responsive documents. This Court likely recalls that search terms were previously the subject of dispute resolved by this Court's Order in 2022.

In addition to litigating the search terms, there was previous discussion both between parties and with the Court regarding the universe of record custodians. *See* Doc. ID No. 77. Essentia's position relative to exclusion of DCP employees from its list of record custodians was made known nearly four years ago. While there was initial

7

disagreement on this point, following various meet and confers and related correspondence, the issue was not pursued any further by Plaintiffs.

It appears that Plaintiffs wish to relitigate the Court's ESI Order, review under which was completed prior to the most recent discovery that was served and the details of which were last raised with this Court in 2022. Plaintiffs were aware as early as January 3, 2022, with DCP's first supplemental production, that Laura Morris and Robert Haskell had email accounts through essentiahealth.org.[2] While Laura Morris and Robert Haskell had the ability to utilize essentiahealth.org email addresses, the signature block reflects "Pharmacist, Co-Owner, Dakota Clinic Pharmacy" without reference to Essentia Health or Innovis Health, LLC. In any event, not unlike 2021, Plaintiffs declined to pursue inclusion of these two individuals as record custodians at that time as well. All of the work under the Court's ESI Order had long since been completed and Plaintiffs had ample opportunity to seek Court intervention on this point much earlier on in these proceedings. *See* FED. R. CIV. P. 26(b)(2).

In addition, DCP was a named party to this litigation and Plaintiffs previously subpoenaed DCP for documents. DCP's Privilege Log, and supplements thereto, assert various privileges, including the attorney-client, work product, and peer review and continuous quality improvement privileges. Not only could Plaintiffs have pursued this issue earlier, Plaintiffs could have sought the requested records from DCP. *See* Doc. ID

---

[2] As Frank Modich testified, Innovis Health, LLC provided certain administrative and HR tools to DCP pursuant to the Shared Services Agreement. (Doc. ID No. 288.3, 42:17-43:1-2; 44:4-8).

No. 77.  Significantly, in light of DCP's privilege assertions and separate representation, Essentia cannot ethically search DCP's emails in any event.  Requiring Essentia to include these record custodians as part of this Court's ESI Order, particularly at this stage of the case, would be disproportionate to the needs of the case, the concept of which is "designed to provide parties with efficient access to what is needed to prove a claim or defense, but eliminate unnecessary or wasteful discovery."  *Alvarado-Herrera v. Acuity*, 344 F.R.D. 103, 105 (D. Nev. May 18, 2023).

Plaintiffs suggest not only should Essentia be required to effectively start the ESI process over with additional record custodians but that Essentia's production in response to Plaintiffs' Fifth Set of Discovery Requests casts doubt on the veracity of Essentia's search efforts.  As has been made plain, however, in responding to Plaintiffs' most recent discovery requests, Essentia enlisted the assistance of its subject matter experts or those most knowledgeable on the topics for which Plaintiffs seek discovery to *together with counsel* respond to Plaintiffs' discovery requests.  By calling this approach into question, Plaintiffs in effect are seeking an Order from this Court to not only add additional record custodians, but also apply additional search terms to the body of resources previously imaged, both of which are inconsistent with the Court's ESI Order.

For these reasons, and those articulated in prior submissions to the Court, Essentia respectfully requests that Plaintiffs' Motion be denied in its entirety.

9

Dated this 1st day of July, 2025.

<div style="margin-left: 40%;">

**VOGEL LAW FIRM**

*/s/ Briana L. Rummel*

BY:   Angela E. Lord (#05351)
Briana L. Rummel (#08399)
218 NP Avenue
PO Box 1389
Fargo, ND  58107-1389
Telephone:  701.237.6983
Email:    alord@vogellaw.com
         brummel@vogellaw.com

**BASSFORD REMELE**
*A Professional Association*

Christopher R. Morris (#230613)
Bryce D. Riddle (#398019)
100 South 5th Street, Suite 1500
Minneapolis, MN 55402-1254
Telephone:  612.333.3000
cmorris@bassford.com
briddle@bassford.com

ATTORNEYS FOR DEFENDANTS
ESSENTIA HEALTH AND INNOVIS
HEALTH, LLC

</div>