**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**

| | | |
|---|---|---|
| JESSICA KRAFT, INDIVIDUALLY AND AS PARENT OF MINORS L.K., S.K., and O.K.; SHELLI SCHNEIDER, INDIVIDUALLY AND AS PARENT OF MINORS A.S. and W.S.; ANNE BAILEY, AS PARENT OF MINOR D.B.; AMY LAVELLE, AS PARENT OF MINORS Em.L. and El.L.; ELIZABETH BEATON, INDIVIDUALLY AND AS PARENT OF MINOR M.B.; AMANDA AND TYRELL FAUSKE, INDIVIDUALLY AND AS PARENTS OF MINORS C.R.F. and C.J.F.; JENNIFER REIN, INDIVIDUALLY; and JESSICA BERG, AS PARENT OF MINORS A.B. and S.B., individually and on behalf of all others similarly situated, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 3:20-CV-121<br><br>Hon. Peter D. Welte<br>Mag. Judge Alice R. Senechal |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| ESSENTIA HEALTH, INNOVIS HEALTH, LLC d/b/a ESSENTIA HEALTH, | ) ) ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFFS' SUPPLEMENTAL DISCOVERY BRIEF**

Plaintiffs submit this Supplemental Discovery Brief in further support of the arguments raised in Plaintiffs' June 13 and June 20, 2025 Position Statements (ECF 305-5, 308-2), and in response to Essentia's Supplemental Discovery Brief ("Supp. Br.") (ECF 309), pursuant to the Court's June 24, 2025 Order (ECF 307). Despite extensive efforts to meet and confer, and several conferences with the Court, the parties remain at an impasse concerning (a) Essentia's refusal to designate a witness to address Topics 11, 12, and 13 of Plaintiffs' Rule 30(b)(6) deposition notice (ECF 284-2 at 8-9); (b) Essentia's refusal to produce documents from Laura Morris and Robert

1

Haskell's @EssentiaHealth.org email accounts; (c) Essentia's failure to conduct a reasonable search for documents responsive to RFPs 22-30; and (d) Essentia's refusal to produce class member medical records while simultaneously planning to raise arguments in opposition to class certification that implicate those records.

### A. Plaintiffs' Rule 30(B)(6) Topics 11-13 Easily Fall Within the Broad Scope of Relevance, and Essentia Has Not and Cannot Meet its Burden of Demonstrating The Are Disproportionate.

Plaintiffs set forth the standards for relevance, proportionality, and the parties' burdens when disputing a Rule 30(b)(6) topic in their earlier Motion to Compel (ECF 296-1 at 6-8) and hereby incorporate those standards here. Topics 11-13 easily satisfy the broad scope of relevance; they seek testimony that goes to the heart of Plaintiffs' warranty and consumer protection claims. Essentia has not and cannot demonstrate disproportionality or a "clearly defined and serious injury." *See Murphy v. Kmart Corp.*, 255 F.R.D. 497, 502 (D.S.D. 2009).

**Relevance**: Plaintiffs bring claims for breaches of express and implied warranties under North Dakota's Uniform Commercial Code. ECF 119 (Counts I-II), 2nd Am. Compl. Any affirmation of fact or promise relating to the goods at issue or description of the goods that becomes part of the basis of the bargain creates an express warranty that the goods shall conform to those descriptions or affirmations. N.D.C.C. 41-02-30(1)(a); Minn. Stat. 336.2-313(1)(a)-(c). Plaintiffs allege that Essentia expressly warranted that the Affected Medications were effective, fit, and safe for their intended use. *Id.* ¶¶ 239-269. Express warranties were made to consumers via labels, publications, package inserts, and other written materials. Essentia advertised, labeled, marketed, and promoted that the Affected Medications were effective and safe for treating their intended conditions. Thus, when Essentia promised that the Affected Medications were effective for treating or preventing a particular condition, it formed express warranties that the medications would do so.

2

Plaintiffs also alleged that Essentia impliedly warranted that the Affected Medications were of merchantable quality, safe, and fit for their intended use, and that Plaintiffs relied on these warranties and used the Affected Medications as intended. ECF 119 ¶¶ 270-297. Plaintiffs did not know about (and could not reasonably have discovered) the temperature excursions and the risks associated with them. Essentia breached these warranties because the Affected Medications were defective, not merchantable, not safe for their intended use, and did not contain warnings regarding the risks associated with out-of-range storage.

Further, Plaintiffs brought consumer protection claims, which require a showing that Essentia engaged in a deceptive act or practice, fraud, misrepresentation, or unconscionable conduct. N.D. Cent. Code § 51-15-02; Minn. Stat. § 325F.69; ECF 119 ¶¶ 298-332. Plaintiffs allege that they were deceived into believing the Affected Medications were safe and effective without any warning that they had been subject to temperature excursions. Plaintiffs further allege that this was unfair and deceptive because Essentia represented that the medications were of a particular quality and possessed the ability to treat or prevent a particular condition when they did not.[1] ECF 119 ¶¶ 270-297.

Topics 11-13 seek testimony on Essentia's and DCP's representations to class members concerning the safety and efficacy of the Affected Medications and any marketing for the Affected Medications (including services where the Affected Medications may be administered). *See* ECF

---

[1] Amazingly, despite these detailed allegations, Essentia contends that Plaintiffs "have not identified any . . . statements or representations" underlying their warranty claims. Supp. Br. at 5-6. The Court rejected this argument when it denied Essentia's motion to dismiss. ECF 13 at 12-13. Since then, Plaintiffs have provided ample additional evidence in discovery in their interrogatory responses and deposition testimony. But Plaintiffs' efforts have been hampered by Essentia's refusal to produce discovery exclusively within its control (including conducting a defensible search for relevant marketing and promotional documents and its refusal to designate a witness to testify on these disputed topics).

284-2 at 8-9, Pls.' Rule 30(b)(6) Notice. There is no reasonable argument that these topics fail to satisfy the "extremely broad" standard for relevance under Rule 26(b)(1): they go directly to Plaintiffs' warranty and consumer protection claims. *See Linseth v. Sustayta*, No. 1:21-cv-173, 2022 U.S. Dist. LEXIS 202568, at *4 (D.N.D. Nov. 7, 2022); *see also* Order, ECF 277, at 4 (emphasizing the "broad scope" of relevance). Indeed, Essentia implicitly concedes as much by highlighting the various documents related to these topics that it has produced. Supp. Br. at 6 ("[P]laintiffs are not without discovery on these topics entirely."). It just wants to deny Plaintiffs the opportunity to take testimony on them, thereby starving Plaintiffs of evidence needed to move for class certification and present their case to the jury.

As Plaintiffs explained in their June 20, 2025 Position Statement (ECF No. 308-2), the discovery of promotional and marketing materials is routinely deemed relevant where consumer protection and breach of warranty are brought because they generally contain descriptions of a service, affirmations, and other statements, which form the basis of the bargain that consumers rely on. *See, e.g., In re Hardieplank Fiber Cement Siding Litig.,* No. 12-MD-2359, 2014 U.S. Dist. LEXIS 10205, at *8-9 (D. Minn. Jan. 28, 2014). Misrepresentations and omissions in promotional materials and statements made to consumers can provide a basis for the consumer protection claims as well. *See id.* at *9 ("[T]he marketing and advertising documents are relevant not only to warranty claims, but also to consumer protection claims and the questions of commonality and predominance..."). Thus, this information goes to the very heart of these claims. Further, this information bears on other relevant issues, such as the unconscionability of Essentia's conduct and questions of commonality and predominance. *See id.*

Essentia presents a series of arguments in response, largely repackaging arguments this Court has already heard and rejected at the motion to dismiss stage. In its motion to dismiss,

4

Essentia argued that Plaintiffs' warranty claims failed because the administration of the Affected Medications was a medical service, not a sale involving goods. *See* ECF 5, at 13-15, Defs.' Mot. to Dismiss. The Court rejected this argument. ECF 13 at 11-13, Order Denying Mot. to Dismiss (refusing to dismiss Plaintiffs' warranty claims on this basis). The Court emphasized the fact-intensive inquiry and the need for discovery on things like the language forming the basis of the bargain and the resultant warranty. *Id.* Yet Essentia now seeks to deny Plaintiffs that very discovery, contending that the disputed topics lack relevance because this case involves the provision of healthcare services rather than the sale of goods. Supp. Br. at 3, 5. This puts the cart before the horse, and once again reflects Essentia's effort to deny Plaintiffs any discovery that does not support its own theory of the case. *But see Sentis Grp., Inc. v. Shell Oil Co.*, 763 F.3d 919, 926 (8th Cir. 2014) ("[I]t matters not for the purpose of discovery which side's theory of the case might ultimately be proven correct . . . [a party] cannot, by their sole insistence, declare evidence undiscoverable and irrelevant merely because it does not fit into their own theory of the case.").

Essentia likewise attempts to distinguish Plaintiffs' case law by arguing that Plaintiffs' cited cases all involved direct manufacturer-to-consumer transactions, rather than its preferred framing of this case as one involving exclusively the provision of healthcare services. Supp. Br. at 3. But Essentia does not cite a single authority recognizing such a distinction. *See id.* This is unsurprising because the weight of authority recognizes that all entities involved in a defective product's supply chain, including sellers, may be held liable for a breach of warranty. *See, e.g.*, *Berkley Reg'l Ins. Co. v. John Doe Battery Mfr.*, No. 20-cv-2382 (WMW/DJF), 2023 U.S. Dist. LEXIS 11541, at *4-5 (D. Minn. Jan. 24, 2023) (emphasizing that the Minnesota Supreme Court has recognized tort liability against both manufacturers and sellers of a defective product); Restatement (Second) of Torts § 402A(1)(a) (also providing that any entity engaged in business

of selling or otherwise distributing a defective product may be subject to liability); Restatement (Third) of Torts: Products Liability § 20(a) (recognizing the same); *Herman v. General Irrigation Co.*, 247 N.W. 2d 471, 480 (N.D. 1976) (affirming judgment against two sellers but holding that one seller is entitled to indemnification from entity earlier in distribution chain); *Tuttle v. Lorillard Tobacco Co.*, No. 99-1550 (PAM/JGL), 2001 U.S. Dist. LEXIS 9642, at *25 (D. Minn. July 5, 2001) (reasoning in a Minnesota consumer protection case that "even if [defendant] did not itself manufacture or distribute tobacco products, [its] promotional statements may be viewed as connected to the sale of those products").

In fact, numerous courts have recognized tort liability against hospitals in connection with the preparation, storage, or dispensing of medications. *See, e.g.*, *Providence Health Sys. v. Brown*, 372 Ore. 225, 232-241 (2024) (finding that hospital was not entitled to summary judgment because the fact that it supplied and administered defective medication during emergency care was sufficient to make it "a seller engaged in the business of selling" the product and collecting cases in which a defendant was liable for providing a defective product during a non-defective service); *Gallinari v. Kloth*, 148 F. Supp. 3d 202, 213-15 (D. Conn. 2015) (rejecting defendants' argument that healthcare providers are not product sellers and allowing plaintiff's warranty claims to proceed in case where plaintiff received a contaminated injection at hospital). *Gallinari* is especially notable because in its motion to dismiss decision, this Court noted the lack of North Dakota authority considering whether medical services, products, and providers fall within Art. 2 of the UCC, so it extensively discussed cases in other jurisdictions, including *Gallinari.* ECF 13, at 9-12. *See generally Gallinari*, 148 F. Supp. 3d 202 (D. Conn. 2015). In rejecting Essentia's motion, the Court was "persuaded by the analysis in *Gallinari*." ECF 13, at 12.

Finally, Essentia argues that the disputed topics merely seek testimony on "general statements regarding quality." Supp. Br. at 4. Not so. Topics 11 and 12 explicitly seek testimony about representations regarding the "safety and efficacy" of Affected Medications. ECF 284-2 at 8-9. And Topic 13 seeks marketing materials that are related to the Affected Medications and the services during which Affected Medications would be administered. *Id.* Courts consistently find that statements concerning objective facts, such as a representation that a medication treats (or a vaccine prevents) a particular condition, can support a warranty claim. *See, e.g.*, *Knotts v. Nissan N. Am., Inc.,* 346 F. Supp. 3d 1311, 1326-27 (D. Minn. 2018) (reasoning that statements about the product providing better fuel economy and acceleration are objective facts unlike the *Bernstein* statements and could support plaintiff's warranty claims); *U.S. Salt, Inc. v. Broken Arrow, Inc.*, No. 07-1988, 2008 U.S. Dist. LEXIS 10841, at *14 (D. Minn. Feb. 11, 2008) (finding that a reasonable jury could find an express warranty was created where the "salt contract provides that the salt would meet the quality specifications listed in product data sheets"); *Duxbury v. Spex Feeds, Inc.*, 681 N.W.2d 380, 393 (Minn. Ct. App. 2004) (upholding jury verdict on express warranty claim because "representatives of [defendant] said that quality corn would be used in the feed... [and] [t]he warranty was breached when substandard corn was used"). Even *Bernstein v. Extendicare Health Servs., Inc.*, the case on which Essentia relied, is in accord. *See* 607 F. Supp. 2d 1027, 1031-32 (D. Minn. 2009) (acknowledging that if the statement could be objectively assessed as true or false, it would not constitute puffery).[2]

---

[2] *Bernstein* and *Lenscrafters Inc. v. VisionWorld Inc.*, the cases on which Essentia relies, are both readily distinguishable on their facts. *Bernstein* involved consumer protection claims, premised on vague and subjective assurances of "quality," which the court found to constitute mere puffery. 607 F. Supp. 2d at 1032. *Lenscrafters* involved a false advertising claim regarding superlative statements like "the most advanced equipment available," and was decided on summary judgment after an opportunity for full discovery. 943 F. Supp. 1481, 1498 (D. Minn 1996).

Simply put, Plaintiffs have gone far and beyond the minimal threshold for relevance.

**Proportionality:** Essentia barely addresses proportionality. For instance, Essentia does not substantiate the existence of any burden or injury that would result should it be required to prepare a witness on the disputed topics. *See Vallejo v. Amgen, Inc.*, 903 F.3d 733, 743 (8th Cir. 2018) (discussing the "well-settled rule that courts require the party seeking to limit discovery to 'establish grounds for not providing the discovery that are specific and factual; the party cannot meet its burden by making conclusory allegations as to undue burden'") (citation omitted). Essentia briefly alludes to the prospect of needing to conduct a "chart-by-chart review" of all class members' medical records in order to adequately prepare a witness to address the disputed topics. Supp. Br. at 6. Essentia does not explain why such a chart-by-chart review would be necessary to address any of these topics. And even if it is, if Essentia intends to rely on differences among class members in opposing class certification, which appears to be the case, it *should* conduct such a review, produce the records, and prepare a witness to testify to what it found. *See* Section D, *infra*. The alternative is a trial by surprise. *See id.* Moreover, Essentia makes no effort to demonstrate the actual burden involved in such a review. The records are maintained electronically, and, presumably, can be queried by date and/or type of service. Essentia has been readily able to identify all individuals who received an Affected Medication. This should make a review relatively straightforward. And it is Essentia's burden to demonstrate otherwise, which it has made no effort to carry. *See Dixon v. Edward D. Jones & Co., L.P.*, No. 4:22-cv-00284-SEP, 2024 U.S. Dist. LEXIS 160309, at *5 (E.D. Mo. Sept. 6, 2024) ("The compensation data and custodial documents Plaintiffs seek are relevant, and because Defendants made no specific showing of a burden, Defendants must produce them.").

8

### B. Essentia Should be Ordered to Search and Produce Emails from Laura Morris and Robert Haskell's @EssentiaHealth.org Email Accounts.

A party and its counsel must "ensure that all appropriate sources of data have been searched and that responsive ESI has been collected—and eventually reviewed and produced." *DR Distribs., LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 927 (N.D. Ill. 2021). This obligation extends to all documents within the party's "possession, custody, or control." Fed. R. Civ. P. 34(a)(1). This includes documents within the party's actual possession and extends to documents the party "has the right, authority, or practical ability, to obtain . . . from a non-party to the action." *Marco Techs. v. Midkiff*, No. 19-cv-2323 (PJS/LIB), 2020 U.S. Dist. LEXIS 259978, at *56 (D. Minn. Dec. 7, 2020) (finding that a party has control over emails in employer's email account because "if nothing else," he has "the practical ability to obtain emails contained in his [employer's] email account"). This Court has ordered, and reiterated, that even if the parties reach agreement on ESI sources, that agreement "does not relieve a party of its obligations under the Federal Rules of Civil Procedure to conduct a reasonable search, interview relevant witnesses and custodians, and produce all relevant and responsive documents of which it is aware, regardless of whether such documents are located with the agreed-upon search methodology, and without waiting for an agreement on or implementation of such search methodology." ECF 46 at 5, ESI Order; ECF 173 at 5, Discovery Order.

Essentia does not dispute that Laura Morris and Robert Haskell are key witnesses in this case; they are the two DCP-associated individuals with direct responsibility for overseeing the storage of the Affected Medications. Essentia does not dispute that Morris and Haskell's @EssentiaHealth.org email accounts contain relevant documents. *See* ECF 305-12. Essentia does not dispute that it has *actual possession* of those emails: Essentia created and maintains the accounts, and houses the emails on its servers. *Id.*; Supp. Br. at 8, n.2. Essentia does not

9

substantiate that producing documents from those two accounts would be disproportionate under Rule 26(b)(1). Nor could it: proportionality is determined by weighing, among other factors, benefit (production of evidence from two key witnesses) against burden (Essentia has demonstrated none). Essentia does not argue that Morris or Haskell object to Essentia searching their email accounts. Because they do not. DCP has confirmed there is no objection and that Essentia should conduct the search. Von Klemperer Decl. ¶¶ 5-6. Instead, without citing a single supporting case[3], Essentia attempts to shirk its discovery obligations by raising a host of baseless procedural arguments.

First, Essentia attempts to rely on its *own failure* to identify Morris and Haskell in its ESI disclosures to justify its continued refusal to produce their documents. Supp. Br. at 7. Essentia identified Morris and Haskell as relevant witnesses in its initial disclosures on February 10, 2021., ECF 305-11 at 4, Essentia Initial Disclosures. On March 1, 2021, this Court ordered the parties to identify the document custodians within their possession, custody, or control likely to have relevant information. ECF 46 at 2-3. The parties were to supplement these disclosures if they learned that they were incomplete. *Id.* at 2; *see also* Fed. R. Civ. P. 26(e). Yet, when Essentia served its ESI disclosures on March 31, 2021, it failed to disclose that it had possession of Morris and Haskell's emails and never supplemented those disclosures to correct that omission. *See* Von Klemperer Decl. ¶ 7. Essentia cannot hide the ball and then be rewarded for its own deception. Plaintiffs are not asking "to relitigate the Court's ESI Order." Supp. Br. at 8. Plaintiffs are asking

---

[3] In the three pages it devotes to arguing that it should not be required to produce documents from Morris and Haskell's Essentia-issued email accounts, Essentia cites only a single case: *Alvarado-Herrera v. Acuity A Mut. Ins. Co.*, 344 F.R.D. 103 (D. Nev. 2023). Essentia cites *Alvarado-Herrera* for the proposition that discovery should be proportional. Supp. Br. at 9. Plaintiffs agree—the production of Morris and Haskell's emails easily meets this standard. *Alvarado-Herrera* says nothing about a party's obligation to produce emails from two key witnesses within its possession. Rather, it involved a dispute over an overly broad Rule 30(b)(6) notice. *Id.* at 109.

that Essentia abide by its terms and comply with its discovery obligations. *See Patterson Dental Supply, Inc. v. Pace*, No. 19-cv-1940 (JNE/LIB), 2020 U.S. Dist. LEXIS 262117, at *60 (D. Minn. Dec. 21, 2020) (ordering party to collect from additional, previously undisclosed custodians and explaining that party "will not be permitted to use this [c]ourt's previous [o]rder as a shield behind which to obfuscate relevant, responsive documents").

Second, without citing any purportedly missed deadline or authority, Essentia claims Plaintiffs' request is untimely. Supp. Br. at 8. Not so. Plaintiff served RFP 33 on March 27, 2025. Plaintiffs timely raised this dispute with Essentia and then the Court. *See, e.g.*, ECF 305-5, Pls.' Position Statement (discussing Plaintiffs' efforts to confer with Essentia before and while seeking conference with the Court). Fact discovery is ongoing, and there is nothing untimely about correcting Essentia's discovery failures now. *See* ECF 307; *Clayton Corp. v. Altachem NV*, No. 4:12-cv-01349-AGF, 2015 U.S. Dist. LEXIS 65733, at *9 (E.D. Mo. May 20, 2015) (granting motion to compel search from six additional document custodians and rejecting argument that plaintiff "waited too long to request additional production"); *Llera v. Tech Mahindra (Ams.) Inc.*, No. C19-0445RSL, 2021 U.S. Dist. LEXIS 121613, at *5 (W.D. Wash. June 29, 2021) (rejecting argument that plaintiff "waived" right to seek additional ESI searches and explaining that "defendant has not identified any order of the [c]ourt, rule of procedure, or case law that supports its contention that plaintiff somehow waived the right to conduct discovery during the discovery period"). The fact is, it is Essentia's obligation timely to supplement its responses under Rule 26(e), and that obligation extends to searching from highly relevant sources indisputably within its possession. Plaintiffs are not asking Essentia to "start the ESI process over." Supp. Br. at 9. Plaintiffs are asking that Essentia *complete* the ESI process by producing documents from all relevant sources within its possession, custody, or control.

Third, Essentia argues that Plaintiffs should have sought the emails in question directly from DCP. Supp. Br. at 8. But Essentia does not even attempt to establish that DCP has the ability to search, collect, and produce emails from *Essentia's email system.* Moreover, courts consistently find that discovery should be sought from the parties in the first instance before involving third parties. *See, e.g.*, *Marco Techs.*, 2020 U.S. Dist. LEXIS 259978, at \*57 (collecting cases and explaining that discovery should be sought from the parties themselves if possible).

Fourth, Essentia argues that its counsel "cannot ethically search DCP's emails" because they could hypothetically contain privileged documents. Supp. Br. at 9. As with its other arguments, Essentia offers no authority in support. Likely because none exists; accepting Essentia's argument would incentivize parties to raise creative, purely speculative third-party privilege concerns and undermine the possession, custody, or control standard. In any case, Plaintiffs' counsel conferred with DCP's counsel, Peter Zuger, on July 2. Von Klemperer Decl. ¶¶ 5-6. Plaintiffs' counsel asked "if DCP, Morris, or Haskell would have an objection" to Essentia searching Morris and Haskell's email accounts. *Id.* Mr. Zuger responded that there was no objection and that searching the email accounts was "an Essentia problem," not a DCP problem. *Id.* This is unsurprising given that DCP has never raised an attorney-client privilege or work product objection. Rather, its short privilege log asserts only the peer review privilege, and almost every entry is a communication *from Essentia leadership*. *See* **Ex. A** at 2-4 (DCP Priv. Log.).

C. **Essentia's Outside Counsel Should be Ordered to Conduct an Additional Search for Documents Responsive to RFPs 22-30 and Certify the Production's Completeness.**

Plaintiffs have documented the patent inadequacy of Essentia's search for documents responsive to RFPs 22-30 in prior correspondence to the Court. *See* ECF 305-5, Pls.' June 13, 2025 Ltr.; ECF 308-2 at 2-3, Pls.' June 20, 2025 Ltr.; ECF 308-3, Pls.' App'x A.  While Plaintiffs were able to identify many specific deficiencies, *see* ECF 308-3, Essentia's search—conducted entirely

12

by non-lawyer employees with apparently no oversight from outside counsel—was fundamentally flawed, resulted in the production of almost no documents, and failed to satisfy Essentia's (and its counsel's) well-established discovery obligations. ECF 305-5 at 2 (collecting cases holding that outside counsel must closely supervise and participate in search); *DR Distribs., LLC*, 513 F. Supp. 3d at 920, 934-38, 952-53, 962-64 (explaining the many "pitfalls" of allowing client self-collection, noting that "[b]lindly relying on a client about the identification, preservation, and collection of ESI is . . . not reasonable," and sanctioning counsel under Rules 26(g) and 37(a)-(c) for certifying responses without conducting reasonable inquiry). Essentia provides no further defense of its patently inadequate search in its Supplemental Brief. Accordingly, its outside counsel should be ordered to conduct a further search formulated in consultation with Plaintiffs (as required under the ESI Order), produce all responsive documents they locate, and then certify the completeness of Essentia's production. *See, e.g.*, *Storeworks Techs. v. Aurus, Inc.*, No. 19-cv-1527(HB), 2020 U.S. Dist. LEXIS 259925, at *9 (D. Minn. Dec. 23, 2020) (finding search by client inadequate and granting motion to compel additional search with counsel's close involvement followed by counsel's certification "that [party] properly conducted the search and that [party's] responses are complete and correct").

    **D. Essentia Should Either be Ordered to Produce Class Member Medical Records or be Precluded from Raising Arguments in Opposition to Class Certification and at Trial that Rely on Information Contained Within, or that Can be Rebutted Using, Those Records.**

"Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation," so "either party may compel the other to disgorge whatever facts he has in his possession." *Linseth*, 2022 U.S. Dist. LEXIS 202568, at *4 (quoting 8 Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE §§ 2007, 3637 (1970)); *DR Distribs.*, LLC, 513 F. Supp. 3d at 973 ("The gravamen of the Federal Rules of Civil Procedure is to eliminate trial by

ambush."). Failure to produce evidence results in a self-executing exclusionary sanction under Rule 37(c). *See* Fed. R. Civ. P. 37(c)(1) and advisory committee notes to 1993 amend. (providing that exclusionary sanction is "self-executing"). This Court has also repeatedly held that the existing Qualified Protective Order satisfies HIPAA and has permitted the production of class member data over Essentia's HIPAA objections. ECF 76 at 3-5 (stating that "the protective order governing this case meets requirements for a 'qualified protective order' under [HIPAA]"); *accord* ECF 277 at 4-5.

Yet Essentia refuses to produce class member medical records—which contain information such informed consent forms and the medical advice and consultation class members purportedly received following the temperature excursions at issue—while simultaneously telegraphing an intention to rely on that exact information in opposing class certification. Von Klemperer Decl. ¶¶ 2-4; *see, e.g.*, Supp. Br. at 2-3 ("Healthcare is by its very nature individualized and unique."). Essentia refused Plaintiffs' common-sense proposal that if it wished to withhold the records, it stipulate not to advance such arguments. Von Klemperer Decl. ¶¶ 3-4.

Essentia should be ordered either to produce class member medical records or be precluded from advancing arguments that rely on those records, or that can be rebutted by Plaintiffs only with those records. This would include, for example, arguments that the Named Plaintiffs are not adequate class representatives, or that their claims are not common and predominant, because of purported differences in the experiences of class members. To hold otherwise would fundamentally undermine the purpose of discovery: mutual knowledge of all relevant facts and the elimination of trial by ambush.

For the foregoing reasons, Plaintiffs respectfully request that the Court order Essentia to:

 (a) designate a witness or witnesses to address Plaintiffs' Rule 30(b)(6) Topics 11-13;

14

(b) search and produce responsive emails from Laura Morris and Robert Haskell's @EssentiaHealth.org email accounts;

(c) have its outside counsel conduct an additional search for documents responsive to RFPs 22-30 formulated in consultation with Plaintiffs (as required under the ESI Order) followed by a certification of completeness; and

(d) produce class member medical records or preclude Essentia from raising arguments in opposition to class certification or at trial that rely on, or that can only be challenged with, information contained within those records.

Dated: July 8, 2025

Respectfully submitted,

/s/*Michael von Klemperer*
Michael von Klemperer
Ashali P. Chimata
FEGAN SCOTT LLC
1763 Columbia Rd. NW, Suite 100
Washington, D.C. 20009
Ph: 202.921.0002
Fax: 312.264.0100
mike@feganscott.com
ashali@feganscott.com

Elizabeth A. Fegan
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
Ph: 312.741.1019
Fax: 312.264.0100
beth@feganscott.com

Scott A. Haider
SCHNEIDER LAW FIRM
815 3rd Ave. S.
Fargo, ND 58103
Ph: 701-235-4481
scott@schneiderlawfirm.com

J. Barton Goplerud
Brian Marty
SHINDLER, ANDERSON, GOPLERUD &
WEESE, PC
5015 Grand Ridge Drive, Suite 100
West Des Moines, Iowa 50265
Ph: (515) 223-4567
Fax: (515) 223-8887
goplerud@sagwlaw.com
marty@saglaw.com

*Counsel for Plaintiffs*

16