# EXHIBIT 15



**BASSFORD REMELE**

**BRYCE D. RIDDLE**
SHAREHOLDER
Licensed in MN and CA

T 612.376.1624
F 612.746.1224

BRIDDLE@BASSFORD.COM

March 27, 2025

*VIA EMAIL*

Mike Von Klemperer
mike@feganscott.com

Re:    *Kraft et. al v. Essentia Health | Follow-up to Meet & Confer*
       Court File No.:  3:20-cv-121 (D.N.D.)
       Our File No.:  30-436

Dear Mr. Von Klemperer:

I write in response to the meet and confer held between the parties on March 7, 2025 regarding Plaintiffs' February 19, 2025 deficiency letter. During the meet and confer, we discussed alleged deficiencies in Essentia's responses to Plaintiffs' Requests for Production of Documents and Interrogatories, which were served on January 20, 2025. Below is a summary of those discussions.

## I.     GENERAL AND BOILERPLATE OBJECTIONS.

First, you objected to Essentia's use of general and boilerplate objections, and asked Essentia to confirm that it is not withholding any responsive information on the basis of any such objections. You also asked Essentia to confirm that it is not withholding any documents on the basis of the attorney-client privilege, the work product doctrine, the peer review/quality assurance privileges, or the physician/provider/medical-patient privilege. Essentia confirmed that it is not withholding any information on any of these bases beyond what has already been identified in Essentia's privilege log.

Next, you asked that Essentia explain if its General Objection No. 3, which objected to the TTSPPS definition in your discovery requests, has any impact on Essentia's responses and if any responsive information is being withheld on this basis. Essentia again confirmed that this objection did not have any impact on Essentia's responses and was not withholding any responsive information on this basis.

Mike Von Klemperer
March 27, 2025
Page 2

## II.    PLAINTIFF-SPECIFIC INTERROGATORIES REGARDING THE AFEECTED MEDICATION.

The parties next discussed the Plaintiff-specific interrogatories served, which were broken down by subpart.

### A.    Subparts D, K, and N.

Subparts D, K, and N requested Essentia identify whether Essentia contends that the affected medications were or were not subject to a temperature excursion, the price at which Essentia acquired the affected medications, and any contract which identifies the price at which Essentia acquired the medications, respectively. You claimed that Essentia's responses were evasive, incomplete, and improbable in light of the fact that Federal Law requires Essentia to maintain the requested data.

#### 1.    Federal Requirements to Track Certain Information.

You first noted that Essentia was required by law to track certain information in the discovery requests. In support of this argument, you cited the Food, Drug, & Cosmetic Act §§ 581(20), 581(26), 582(g)(1)(B) and 582(b)(4)(A)(i)(II). Essentia explained that the laws cited here—the Drug Supply Chain Security Act—requiring enhanced drug distribution security requirements, including package-level product tracing, went into effect on November 27, 2024, and that Essentia was not under any obligation to trace the requested information during the relevant time frame to this lawsuit.

You also contended that while the enhanced requirements did indeed go into effect on November 27, 2024, Essentia was still required to comply with lot numbers that should "be capable of yielding the complete manufacturing history of the package" and cited 21 C.F.R. § 201.18. But this requirement refers to the "lot number on the label of a drug," and does not concern the records that Essentia was required to keep during the 2017-2020 relevant time period. *See id*.

With respect to the lot, manufacturer, and date of administration, this was an issue addressed earlier in the case. In addition to generally providing manufacturer information in Essentia's Answers to Plaintiffs' First Set of Interrogatories to Defendant Essentia Health and lot numbers for Flu and Vaccine with production of EH000309-EH002658, Essentia further supplemented by providing this information in the named plaintiffs' spreadsheets, to the extent the information was available after a chart review. This information was similarly supplemented on June 14, 2023, with financial spreadsheets for the putative class to the extent it was available to be populated with data pull. It is notable that this supplementation was the result of several communications with Plaintiffs, culminating in the supplementation of the following:

Mike Von Klemperer
March 27, 2025
Page 3

- Column for lot numbers for flu and vaccine where available, noting that lot numbers were previously provided in discovery but not incorporated into the putative class financial spreadsheets;

- J-Code data for CAM and Medications where accurate data was available to be populated;

- Column for "adjustments" to reflect the difference between the amounts charged and paid where available;

- Column for dose for flu and vaccine where available; and

- Column for quantity for CAM and medications if/where available.

With the 2025 supplementations, the financial spreadsheets for both the Named Plaintiffs and the putative class now contain medical record numbers and dates of service reflecting the month, day, and year, rather than just year. The Court has not required a chart-by-chart review of the putative class for information, as was done for the Named Plaintiffs' production with EH003635-37.

### 2.     Invoices and/or Prices Paid for Potentially Affected Medications.

During this discussion, you also asked for any invoices Essentia possessed indicating the price paid for potentially affected medications. Essentia agreed to look for any such invoices. After a records review, Essentia confirms it does not possess any invoices for potentially affected medications. However, Essentia directs you to EH049442-EH049445, which identifies inventory loss and costs of DCP-stored products after the potential temperature excursion was identified in 2020. The pricing information was taken from the wholesaler McKesson's website at that time.

### B.     Subparts G, H, I, and J.

With respect to these subparts, Essentia directs you to EH003635-37 and the supplementation in 2025. You noted that certain vaccines indicated that there was a $0 "vaccine charge" but found this implausible. Essentia confirms that this is what the records indicate, as not all vaccines are charged for, such as the flu vaccine. You next noted that the "office visit charges" were not disaggregated. Essentia does not keep a further breakdown of "office visit charges"; you have the information that Essentia has with respect to these charges.

### C.     Subpart M.

Subpart M asked Essentia to identify the entity which Essentia Health paid to obtain potentially affected medications. DCP purchased the potentially affected medications on Essentia's behalf; Essentia did not do so itself. Given that Essentia does not have invoices, it is looking for other ways to identify the entities that the potentially affected medications came from, but believes that

**BASSFORD REMELE**

Mike Von Klemperer
March 27, 2025
Page 4

DCP purchased a majority of the potentially affected medications through the wholesaler McKesson and VaccineShoppe. Essentia will supplement this Interrogatory subpart.

### D. Subpart B.

You next asked Essentia to confirm if it is Essentia's position that all potentially affected medications were stored in the two refrigerators identified in its response to this Subpart. Essentia confirmed that this understanding is accurate.

### E. Other Issues Raised.

You also inquired about the list price for uninsured patients through the class period for each affected medication. Essentia does not distinguish pricing between insured and uninsured patients; each treated individual—insured or uninsured—was charged the same amount for a potentially affected medication. Essentia has produced putative class spreadsheets which, among other things, identify whether the patient was insured or not, and what the cost of such services were for such patients. *See, e.g.,* Essentia's January 10, 2025 production. These spreadsheets can be sorted by the "Product Type" column in order to determine who is not insured and determine the list price based on the date of service for each potentially affected medication in those spreadsheets.

## III. JENNIFER REIN'S INTERROGATORY NO. 4.

In Jennifer Rein's Interrogatory No. 4, you asked Essentia to define the contents of each data field in spreadsheets containing financial or billing data. Essentia directs Plaintiffs to its Ninth Supplemental Response to Plaintiff's First Set of Requests for Production of Documents. To the extent other data fields are not defined, Essentia will supplement its Interrogatory response to reflect definitions of each data field in the spreadsheets identified in your February 19, 2025 letter.

## IV. RESPONSE TO REQUEST FOR PRODUCTION NO. 20.

You next asked Essentia to confirm that all responsive documents have been produced and there are no documents being withheld on the basis of Essentia's boilerplate objections. Essentia confirms it is not withholding any information beyond what has already been identified in Essentia's privilege log.

**BASSFORD REMELE**

Mike Von Klemperer
March 27, 2025
Page 5

Very truly yours,

Bryce D. Riddle

BDR:drs