# EXHIBIT 29

![feganscott]

**FeganScott LLC**
ATTORNEYS AT LAW
1763 Columbia RD NW, Ste.100
Washington, DC 20009
PHONE  771.244.6729
FAX  312.264.0100
ashali@feganscott.com

August 11, 2025

**VIA EMAIL**
The Honorable Judge Karen Klein
Special Master
kklein@kkleinmediation.com

Re: *Kraft, et al. v. Essentia Health, et al.,* No. 20-cv-121; Request for *In Camera* Review of
Documents Identified in Essentia's February 2025 Privilege Log

Dear Judge Klein,

Pursuant to Judge Senechal's June 24, 2025 Order (ECF 307), Plaintiffs respectfully submit this letter to request an *in camera* review of both the 980 challenged withholdings from Essentia's February 2025 Privilege Log, as identified by Plaintiffs in Exhibit A[1], as well as a randomized selection of at least ten percent of the redacted documents that Essentia produced on July 18.

Given the extraordinary amount of Essentia's privilege claims that the Court has overruled over the past several years, in January 2025, Plaintiffs requested that Essentia provide an updated privilege log that includes only the documents that are still being withheld, so that Plaintiffs may determine whether further privilege challenges are necessary. On February 4, 2025, defense counsel served Plaintiffs with a supplemental privilege log, containing 1,338 entries.

Plaintiffs sent Essentia challenges to a substantial subset of these entries on June 5. Plaintiffs challenged only a subset of the entries given their volume and largely repetitive nature, while noting that Plaintiffs reserved the right to request that all similarly improper withholdings be overruled. Essentia agreed, however, to comprehensively re-review all 1,338 entries in their log. Essentia completed this review on July 18, producing 247 documents and continuing to withhold 1,091 documents. A substantial portion of the 247 documents produced contain redactions to significant portions, or in some cases, to virtually an entire document.

Of the remaining withholdings, Plaintiffs are challenging 980 as noted in Exhibit A. The issues identified below are not new and have all been addressed before. Plaintiffs begin by explaining that this log lacks the level of detail required by the Court and Rule 26(b)(5), making it inadequate to support these privilege claims. Next, Plaintiffs address each category of issues and documents according to the three types of privileges claimed by Essentia—the legal privileges (attorney-client and work product), the quality assurance/peer review privilege, and the physician-patient privilege.

---

[1] Exhibit A is Essentia's February 2025 Privilege Log, annotated with both Plaintiffs' challenges and the documents that Essentia produced on July 18. After Plaintiffs sampled roughly 25 percent of the entries and noted challenges in Column H, Essentia returned it with the addition of Column I, indicating which documents it agreed to produce. In preparation for submitting this dispute to Your Honor, Plaintiffs reviewed the remainder of the log and revised Column H to note all documents that Plaintiffs challenge.
FeganScott.com



After identifying the Court's main holdings with regard to each privilege type, Plaintiffs highlight how these determinations are contravened by the challenged withholdings. Finally, Plaintiffs briefly discuss the need for review of a subset of the redacted documents produced on July 18 to determine whether redactions were narrowly tailored to protect only privileged material. Ultimately, Plaintiffs request Your Honor find that all entries not in compliance with Rule 26(b)(5) (or the additional requirements imposed by the Court to satisfy the Rule) are waived, all challenged withholdings are overruled, and that Essentia should be ordered to produce documents in accordance with the ESI Order and the Court's determinations regarding privilege claims. Should the review of the redacted documents produced on July 18 reveal that a substantial portion are improper, Plaintiffs also request that all the redactions be deemed waived.

A. Relevant Factual and Procedural Background

Plaintiffs filed this putative class action in 2020, alleging that, beginning in 2017, Essentia sold and administered over 100 temperature sensitive pharmaceutical products, despite having failed to store these medications within the temperature ranges required by manufacturers ("Affected Medications"). ECF 119 ¶¶ 2-5. Plaintiffs allege that these incidents, also known as "temperature excursions," resulted in reduced medication potency and efficacy. *Id.* In April 2020, Essentia advised patients who had received Affected Medications that the medications they received may have been rendered ineffective. ECF 30 ¶ 4.

The history of privilege disputes in this case is extensive, spanning more than four years in which Essentia has created a pattern of asserting improper privilege claims, stymying Plaintiffs' attempts to compel the production of documents, and failing to comply with the Court's Orders and its discovery obligations.

Essentia produced its first privilege logs in May 2021, containing just six categorical entries without any details like dates, sender, recipients, committee designations, or subject matter descriptions. Plaintiffs disputed the sufficiency of the logs with the Court, leading it to order Essentia to produce a detailed, document-by-document log. ECF 79. Essentia appealed this Order to both the presiding District Court and the Eighth Circuit, while also requesting stays from the Court pending the appeals. ECF 83; ECF 84; ECF 105; ECF 113. Essentia's appeals were unsuccessful. ECF 109; ECF 111.

Following the Eighth Circuit's dismissal, Essentia produced a more detailed privilege log, but it still contained fatal deficiencies. ECF 129, at 1. Accordingly, the Court entered another order that required Essentia to provide "additional detail, specific to each document over which it claims the privilege." *Id.* at 2. When Essentia failed to do so, Plaintiffs moved to compel the production of the withheld documents, which led to the Court directing Essentia to review its privilege claims and determine whether the standards articulated in its January and October 2023 Orders are met. ECF 242, at 23. To the extent Essentia maintained its privilege claims after such a review, a Special Master was to conduct an *in camera* review and to make recommendations on whether Essentia



met its burden of establishing one or more privileges as to each document it withheld. *Id.*; ECF 247.

Because Essentia did not "narrow[] any of its privilege claims in response to the court's directive," it effectively shifted the burden of reviewing over 17,000 pages to the Special Master, leading to a review of a subset of several hundred documents. ECF 255, at 2-3. Based on this review, Your Honor issued a Report on July 10, 2024 ("SM Report") that provided recommendations on each category of documents, which mostly required Essentia to narrow their over-inclusive privilege claims. *Id.* at 2-3; ECF 269, at 1-3. Essentia later filed a response opposing the recommendations within the SM Report. ECF 260. Nevertheless, after conducting conferences with the parties, the Court adopted Your Honor's recommendation that Essentia review its privilege log and eliminate over-inclusive listings in each category. ECF 269. To the extent the parties were unable to resolve the remaining privilege disputes, Plaintiffs were to advise the Court to determine whether further review by Your Honor was necessary. *Id.* at 2.

After five years of litigation, a Special Master *in camera* review and report, at least five court orders, and being given every opportunity to cure deficiencies, Essentia has continued doing the very things the Court has expressly rejected. Its February 2025 Log is only the latest example of this pattern, and each of the issues that Plaintiffs identify below have been addressed at least once, if not multiple times, by the SM Report and the Court. With the deadline for discovery motions and the class certification motion quickly approaching on September 2 and September 19, respectively, the time has come for Essentia to end its pattern of improper privilege disputes.

B.  The February 2025 Privilege Log Deficiencies

a.  The Log Lacks the Requisite Level of Detail to Support its Privilege Claims.

As an initial matter, this log lacks the level of detail required by Fed. R. Civ. P. 26(b) and numerous court orders. After Essentia served its first categorical logs, the Court issued an order in August 2021, requiring Essentia to provide several details in order to bring its logs into compliance with the general mandate of Rule 26(b)(5). ECF 225, at 47-48. Specifically, the Court has held that Essentia's logs must contain: (1) the date on which each document was created; (2) identity of the person who created it and the position held by that person at the time the document was created; (3) identity of persons who received the document and their positions; (4) a description of the subject matter of the document; (5) inclusive document identification numbers; and (6) specific reference to the portion of the Minnesota privilege the document is asserted to meet. ECF 79, at 12-13.

The Court has also expressly rejected Essentia's pattern of both using generic subject matter descriptions and document types, such as "investigation and quality assurance" or "document," and only providing each participant's position within Essentia, rather than also including their position within any purported peer review committee. *Id.* at 12; ECF 181, at 3; ECF 225, at 2 n.1



Yet, this log remains deficient for the very same reasons as previously observed by the Court. Essentia continues to use the same vague document type and subject matter descriptions in nearly every single entry, and none of its entries identify the committee positions of each participant. Several entries also lack creator/sender names or dates, despite the Court's order requiring such information.[2] ECF 79, at 12-13.

Therefore, this log again lacks the level of detail required by Rule 26 and the Court, effectively forcing Plaintiffs "to challenge the privilege claim as to every document." *See* ECF 225, at 2 n.1; Fed. R. Civ. P. 26(b)(5)(A)(ii) (requiring parties to "describe the nature of the documents . . . not produced or disclosed—and do so in a manner that . . . will enable other parties to assess the claim").

Moreover, the vagueness of this log is especially troubling in a case where many communications involve in-house counsel as they often serve both legal and business interests. Additionally, the very fact that Essentia makes (and has made for years) blanket privilege assertions, often overlapping contradictory privileges[3], further underscores the issue with this bare-bones, skeletal log. Put simply, this log is inadequate to support the privilege claims therein.

Given that Essentia has been provided an exceptional number of chances to serve a compliant log, Essentia's continued failure to do so can only be considered willful. Each privilege withholding containing one of the foregoing deficiencies should be deemed waived.

    b.   <u>Improper Claims of the Attorney-Client and Work Product Privileges</u>

To establish the existence of the attorney-client privilege, Essentia must show as to each document that (1) legal advice was sought; (2) from a professional legal advisor in their legal capacity; (3) the communication relates to that purpose; (4) the communication was made in confidence; and (5) the communication was made by the client. ECF 181, at 30. Further, whether a document falls within the work product doctrine hinges on whether "in light of the nature of the document and the factual situation… the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Id.* at 31 (citation omitted).

 Essentia's assertions of the attorney-client and attorney work product privileges remain, as the SM Report described, "grossly over-inclusive," covering documents that clearly neither meet the elements of the attorney-client privilege nor address anticipated litigation. ECF 255, at 6. First,

---

[2] *E.g.*, EHPRIV000229 ("unknown" date and author); EHPRIV001303 ("unknown" author); EHPRIV001354 ("unknown" author); EHPRIV006053 ("unknown" author); EHPRIV007958 ("unknown" author).

[3] Essentia repeatedly asserts the attorney-client, work product, physician-patient, and peer review privileges for a single document, highlighting how over-inclusive and contradictory its assertions are. For instance, the use of information, that originally had a proper peer review purpose, for others to prepare a press release or advise counsel of a potential public relations crisis in the future removes such information from the scope of the peer review privilege.

many documents do not appear to have any attorney sender or recipient.[4] However, even where Essentia's in-house counsel is a participant (usually along with many other non-legal personnel), their mere inclusion in the distribution of a document does not automatically create a confidential communication entitled to protection unless counsel weighed in on some legal issue implicated in the content of the communication. *Id.* at 6-7; ECF 269, at 5. Similarly, merely drafting a document does not, on its own, trigger the attorney-client privilege unless counsel's advice was sought as to the document's legal terms and effect. ECF 181, at 30.

Even where there is some attorney participant, scores of documents have descriptions that are wholly unrelated to legal advice or litigation. For instance, many subject matter descriptions concern efforts to manage the public relations consequences of the excursions, which are not protected by the legal privileges.[5] ECF 255, at 6. And even among the entries that do not describe non-legal topics, a substantial portion simply use the word "litigation" or "class litigation," which are insufficient to support a privilege claim. *See* ECF 109, at 2 (discussing Essentia's use of vague descriptions like "lawsuit"). Thus, as noted in the SM Report, Essentia effectively takes "the position that nearly everything its personnel and consultants did or said after discovery of the temperature excursion was … anticipated litigation and is entitled to work product protection." ECF 255, at 6. However, the generalized fear of future litigation "does not give rise to a wholesale protection of documents relating to the event as work product." *Id.* at 7. And further illustrating Essentia's over-inclusiveness is the fact that it uses the same subject matter description for entries that assert legal privileges as it uses for entries that assert no legal privilege.[6] Essentia still offers no explanation as to how these documents are subject to any legal privilege.

The challenged documents are not entitled to attorney-client or work product protection. To the extent that some descriptions do indeed contain a reference to legal issues or litigation,

---

[4] *E.g.,* EHPRIV004918 (involving no attorney participants and concerning "draft meeting agenda regarding update relative to investigation and quality assurance"); EHPRIV006482 (document with unknown sender and non-attorney recipient and described as "document regarding patient reports relative to investigation and quality assurance"); EHPRIV008156 (no attorney participants and described as "email exchange regarding meeting regarding revaccination relative to investigation and quality assurance as well as class litigation"); EHPRIV008369 (described as "email exchange regarding meeting minutes on patient data, patient communications, and revaccination relative to investigation and quality assurance"); EHPRIV006758 (containing no attorney participants); EHPRIV005485 (described as "screenshot of vaccination data relative to investigation and quality assurance"); EHPRIV006472 (described as "email exchange regarding literature relative to investigation and quality assurance" and containing no attorney participants); EHPRIV008576 (described as "email exchange regarding equipment records relative to investigation and records request"); EHPRIV009212 (involving creator never employed by Essentia and described as "draft patient communication relative to investigation and quality assurance").

[5] *E.g.*, EHPRIV001162 (described as "email exchange regarding public communications relative to investigation, quality assurance, and posture of class litigation"); EHPRIV001774 (described as "email exchange regarding draft media statement relative to investigation and quality assurance").

[6] *E.g.*, EHPRIV007943 (withdrawing legal privilege claim over document described as "email exchange regarding revaccination relative to investigation and quality assurance"); EHPRIV002542 (asserting no legal privilege over document with identical description).



production may still be appropriate with redactions, thus, Plaintiffs challenge these entries as well.[7] *See* ECF 255, at 8.

c.   <u>Improper Claims of the Quality Assurance/Peer Review Privilege</u>

The peer review privilege has been heavily litigated in this case. Essentia bears the burden to demonstrate that (1) the withheld documents were created exclusively by or for a peer review organization in connection with a professional peer review; (2) the documents were not used for any purpose other than the professional peer review procedure; (3) the documents are not available from a source other than the review organization; and (4) the privilege has not been waived. ECF 181.

Initially, Essentia maintained that the entire Essentia system constitutes a peer review organization, but the Court rejected this position, holding that only four specific committees constitute peer review organizations under Minnesota law. ECF 255, at 8. Still, Essentia did not update its log to identify a purported committee for each document it withheld on this basis. As a result, Your Honor met with counsel and requested that Essentia update its log to identify the documents which relate to the four committees the Court found qualify for peer review protection. *Id.* at 9. After Essentia did so, the "resulting updates show[ed] that most of the documents for which Essentia asserts a peer review/quality assurance privilege are not related to the [qualifying] committees…" *Id.*

Like before, although Essentia currently identifies a qualifying committee, the result still does not show a meaningful departure from its already rejected position that the entire Essentia system is a peer review organization. *See id.* at 8. Moreover, many of the entries contravene determinations that the Court has made with regard to this privilege. For example, the Court has already determined that documents that were described as "guidelines" or that were distributed to individuals who were not a part of the purported committee are not protected by the peer review privilege. ECF 242, at 21-22. The Court has also established that communications of earlier acquired information or matters addressed in the ordinary course of business do not represent a proper peer review purpose. *Id.* at 20-22.

Even so, Essentia has not applied these principals. The documents identified as originating from or on behalf of a committee still do not appear topically distinguishable from scores of other documents that do not relate to any qualifying committee and/or have been produced.[8] *See also*

---

[7] *E.g.*, EHPRIV006137 (described as "email exchange regarding pertinent documentation relative to class litigation, as well as investigation and quality assurance"); EHPRIV006642 (described as "email exchange regarding draft memorandum with update on investigation and quality assurance, as well as class litigation").

[8] *E.g.,* EHPRIV000792 (described as "email exchange regarding refrigeration information relative to investigation and quality assurance"); Ex. B (EH031553; produced email exchange in which members of refrigeration project discuss criteria for determining fridges to replace, whether out-of-range temperatures constitute a failure, and lack of medical grade fridges); EHPRIV0000736 (asserting no peer review privilege and agreeing to produce document



ECF 255, at 6. Further, many of the subject matter descriptions also suggest that the documents were mere communications of earlier-acquired information or other matters done in the ordinary course of business, disqualifying them from peer review protection. For instance, many concern the fiscal impact of the excursion, staffing needs, and developing a plan for revaccinating patients.[9] Essentia also asserts this privilege over documents distributed or created by individuals who are not members of any of the four approved committees or created for or sent to such individuals.[10] And several documents are described as "SBAR with guidance" or "regarding guidance," which is the exact same verbiage already addressed by the Court when it concluded that "Plaintiffs correctly assert that the peer review privilege does not apply to 'guidelines.'" ECF 225, at 21.

As also noted in the SM Report, it remains unclear whether the documents allegedly attributable to the Patient Relations & Risk Management Committee include documents attributable to the *Subcommittee* of Patient Relations & Risk Management, the latter of which the Court has already determined does not qualify as a peer review organization. ECF 255, at 10-11. Simply put, Essentia has continued failing to carry its burden to show that the peer review privilege applies.

---

described as "email exchange regarding potential fiscal impact and revaccination relative to investigation and quality assurance"); EHPRIV000976 (withholding on peer review basis a document described as "email exchange regarding potential fiscal impact and revaccination relative to investigation and quality assurance"); Ex. C (EH025873; produced email exchange in which Essentia CFO and other personnel discuss the financial impact of the excursions in terms of cost of cover and providing free revaccination); EHPRIV004242 (described as "draft document regarding roles and responsibilities matrix for potential temperature excursion response relative to investigation and quality assurance"); Ex. D (EH053239; matrix of Essentia employee's role and responsibility within temperature excursion response such as Vetter being responsible for informing healthcare providers); EHPRIV006431 (described as "email exchange regarding action plan relative to investigation and quality assurance"); Ex. E (EH025894; produced email exchange between the same individuals about finding an action plan from a previous excursion response); EHPRIV008339 (described as "email exchange regarding transition of pharmaceutical services relative to quality assurance"); Ex. F (EH026611; produced email exchange about amending DCP contract and reasons for transitioning pharmaceutical services away from DCP); EHPRIV008040 (asserting no peer review privilege and agreeing to produce document sent between Daniel Collins and Kailee Kofal and described as "email exchange regarding draft request for guidance relative to investigation and quality assurance"); EHPRIV008036 (withholding solely on basis of peer review privilege despite having identical description, identical date, and also being sent between Collins and Kofal).

[9] *E.g.*, EHPRIV007614 (described as "email exchange regarding vaccination plan relative to investigation and quality assurance"); EHPRIV008386 (described as "SBAR regarding guidance for staffing for pharmaceutical services relative to quality assurance"); EHPRIV001238 (described as "email exchange regarding refrigeration information relative to investigation and quality assurance"); EHPRIV000976 (withholding on peer review basis a document described as "email exchange regarding potential fiscal impact and revaccination relative to investigation and quality assurance").

[10] *E.g.*, EHPRIV004241-47 (all purportedly related to the System Quality Committee despite both sender and recipients for each being individuals not being members of that committee); EHPRIV007580 (neither the sender nor two out of three recipients are members of a committee recognized by the Court); EHPRIV005945 (neither the recipient nor one of the two authors are members of a committee recognized by the Court); ECF 227 (Declaration of Frank M. Modich listing the members of each committee).



d. <u>Improper Claims of the Physician-Patient Privilege</u>

In March 2021, the Court entered a HIPAA-qualified protective order, governing the production of documents and allowing Essentia to disclose protected health information (PHI), which includes information covered by the physician-patient privilege. *See* ECF 45; ECF 76, at 5, 13. Subsequently, the Court reached the following key decisions with regard to Essentia's physician-patient privilege claims: (1) Named Plaintiff PHI must be produced (ECF 122, at 3-6); (2) documents that contain PHI but do not identify individual patients are not privileged and must be produced (ECF 225, at 28-29); (3) documents that contain PHI and identify patients by a medical record number are privileged but should be produced pursuant to the protective order (*Id.*); and (4) documents that both contain PHI and individually identify patients by name are privileged but may be produced pursuant to the protective order if warranted by the relevance and benefit of the documents (ECF 76, at 13-14).

Yet, in spite of these numerous determinations by the Court, Essentia continues withholding hundreds of documents on this basis, again taking the already rejected position that any reference to patients, whether anonymous, individual, or collective, constitutes protected information. In addressing Essentia's previous medical privilege claims, Your Honor found that "[i]n all but a very few instances, these documents [withheld on the basis of the physician-patient privilege] do not contain any identifying information about individual patients." ECF 255, at 3. Plaintiffs believe the same will be true of the instant documents because the subject matter descriptions in this log provide absolutely no information as to what patient information is contained, if any, within each document. Moreover, several subject matter descriptions appear to be indistinguishable from documents that Essentia either already produced or does not assert a medical privilege over.[11]

Put simply, all documents should be produced in the form required by the ESI Order, and to the extent that a small number of documents do need contain protected information, disclosure is still appropriate with narrow redactions limited only to patient names, addresses, birthdates, and social security numbers.

C. <u>Redactions Contained in Essentia's July 18 Production</u>

A substantial portion of the documents Essentia produced on July 18 contained redactions, many of which were so heavily redacted that no judgment can be made about whether the redactions were likely of privileged material.[12] Further complicating such a determination is that Plaintiffs were neither provided each document's corresponding privilege log number nor are the

---

[11] *E.g.*, EHPRIV006067 (agreeing to produce document described as "spreadsheet of patient data regarding revaccination relative to investigation and quality assurance"); EHPRIV006143 (still withholding document described as "spreadsheet regarding patient data and revaccination relative to investigation and quality assurance"); EHPRIV007949 (still withholding document described as "spreadsheet with patient data and revaccination relative to investigation and quality assurance"); Ex. G (EH050217; spreadsheet of patients revaccinated in error).

[12] Ex. H (EH058341); Ex. I (EH058627).



documents stamped with test identifying the basis for each redaction, as required by the ESI Order. ECF 46, at 8-9. But even if Plaintiffs did receive such information, whether the redacted material represents the type of information protected by a particular privilege still cannot be gleaned from the skeletal descriptions in Essentia's log for all the reasons discussed above. Moreover, given the extensive history of Essentia failing to carry its burden of establishing privileges, along with the insufficiencies in the instant log, Plaintiffs cannot be certain that Essentia fairly described the withheld material and adequately stated the reason for nondisclosure.

Accordingly, Plaintiffs propose the randomized selection and *in camera* review of ten percent of the documents produced on July 18 that contain redactions to determine if the material is genuinely privileged under the applicable legal standard and determinations made by the Court. Given Essentia's history of improper withholdings, if Your Honor finds that a substantial portion of the redactions are improper, all redactions should be deemed waived. With regard to the selection of this sample, Plaintiffs propose using a random number generator as the Parties have done in previous discovery disputes. Further, when Essentia produces these documents to Your Honor, the redacted portions should be visible but also highlighted in some way to facilitate the review.

D. <u>Conclusion</u>

Essentia's plainly over-inclusive privilege claims, its years-long refusal to provide factual support for these assertions, and its repeated appeals of discovery orders have delayed discovery significantly and come at great cost to Plaintiffs. For these reasons, Plaintiffs respectfully request an *in camera* review of the challenged withholdings and a randomized sample of at least ten percent of the documents produced on July 18 that contain redactions. Further, Plaintiffs request a finding that all entries not in compliance with Rule 26(b)(5) (or the additional requirements imposed by the Court to satisfy the Rule) are waived, all challenged withholdings are overruled, and that Essentia should be ordered to produce documents within 7 days in accordance with the ESI Order.

Sincerely,

*Ashali Chimata*

Ashali Chimata