# EXHIBIT 35

Page 1

UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA

Case No.:
3:20-CV-00121

JESSICA KRAFT, individually and
as parent of minors L.K., S.K.,
and O.K.; SHELLI SCHNEIDER,
individually and as parent of
minors A.S. and W.S.; ANNE
BAILEY, as parent of minor D.B.;
AMY LAVELLE, as parent of minors
Em.L. and El. L.; ELIZABETH
BEATON, individually and as
parent of minor M.B.; AMANDA AND
TYRELL FAUSKE, individually and
as parents of minors C.R.F. and
C.J.F.; JENNIFER REIN,
individually; and JESSICA BERG,
as parent of minors A.B. and
S.B., individually and on behalf
of all others similarly situated,

                    Plaintiffs,

vs.

ESSENTIA HEALTH, INNOVIS HEALTH,
LLC, d/b/a ESSENTIA HEALTH, JOHN
DOE MANUFACTURERS, and JOHN DOE
DISTRIBUTOR,
                    Defendants.

REMOTE DEPOSITION OF
JESSICA KRAFT

    Job No. CS7425722
DATE:          June 23, 2025
PLACE:         Veritext Virtual Zoom
TIME:          10:01 a.m.
REPORTED BY:   Deanna L. Sager, R.P.R., R.M.R.

Page 2

                    A P P E A R A N C E S

    FOR THE PLAINTIFFS:

            Schindler, Anderson, Goplerud & Weese, P.C.
            Attorneys at Law
            5015 Grand Ridge Drive - Suite 100
            West Des Moines, Iowa  50265
            By:  Brian O. Marty
                 marty@sagwlaw.com
    FOR THE DEFENDANT ESSENTIA HEALTH:
            Bassford Remele
            Attorneys at Law
            100 South Fifth Street - Suite 1500
            Minneapolis, Minnesota  55402
            By:  Bryce D. Riddle
                 briddle@bassford.com

Page 3

C O N T E N T S
W I T N E S S E S

                                                    PAGE
            JESSICA KRAFT
                    Examination by Mr. Riddle       5
                    Examination by Mr. Marty        100

                    E X H I B I T S
    PLAINTIFF
    EXHIBIT NO.     DESCRIPTION                      MARKED

    Exhibit 1       Defendant Essentia Health's      7
                    Notice of Deposition of
                    Jessica Kraft

    Exhibit 2       Response of Plaintiff            21
                    Jessica Kraft, Individually
                    and as Parent of Minors L.K.,
                    S.K., and O.K., to Defendant
                    Essentia Health's Interrogatories
                    Directed to Plaintiffs
    Exhibit 3       Essentia Health Statement of     29
                    Services Bates
                    KRAFT100 CONFIDENTIAL
    Exhibit 4       Confidentiality Order            32
    Exhibit 5       Spreadsheet Bates EH052465       33
                    HIGHLY CONFIDENTIAL

    Exhibit 6       Essentia Health Statement        47
                    of Services Bates
                    KRAFT100 CONFIDENTIAL

    Exhibit 7       Summary Claim Report:            53
                    Explanation of Benefits
                    Bates KRAFT014 CONFIDENTIAL

    Exhibit 8       Essentia Health Invoice          88
                    Bates KRAFT085 CONFIDENTIAL

Page 4

E X H I B I T S    (CONT'D)

PLAINTIFF D

EXHIBIT NO.      DESCRIPTION                          MARKED

Exhibit 9        Letter from Essentia Health          89
                 to Jessica Kraft 4/7/2020
                 Bates KRAFT006-007 CONFIDENTIAL

Exhibit 10       Letter from Essentia Health          95
                 to Parent of L.K. 4/7/2020
                 Bates KRAFT008-009 CONFIDENTIAL

Exhibit 11       Letter from Essentia Health          97
                 to Parent of O.K. 4/30/20
                 Bates KRAFT013 CONFIDENTIAL

Exhibit 12       Letter from Essentia Health          98
                 to Parent of S.K. 4/30/20
                 Bates KRAFT019 CONFIDENTIAL

Page 5

P R O C E E D I N G S

(Whereupon, the remote deposition of JESSICA KRAFT commenced at 10:01 a.m. as follows:)

JESSICA KRAFT,

HAVING BEEN FIRST DULY SWORN TO TESTIFY THE TRUTH, THE WHOLE TRUTH, AND NOTHING BUT THE TRUTH, RELATIVE TO THE CAUSE SPECIFIED, TESTIFIED AS FOLLOWS:

EXAMINATION

BY MR. RIDDLE:

Q.   Good morning.  Can you please state your name for the record?

A.   Jessica Kraft.

Q.   Thank you, Ms. Kraft.  Have you ever had your deposition taken before?

A.   No.

Q.   No?  Okay.  I'm going to go over a few general rules that we try to follow during these types of proceedings.  As you can see here, everything is being recorded.  So I'm going to ask that whenever you're responding please say "yes" or "no" instead of gestures, shaking your head, nodding your head, saying, "uh-huh" or "huh-uh."  It just makes it difficult for the court reporter to track what is being said.  Do you understand?

A.   Yes.

Q.   I also will ask that you wait until the

Page 6

other person is done speaking before responding.  I will try to do the same for you, but talking over each other, again, makes it very difficult for the court reporter to catch what is being said.  So please just try to wait until I'm done speaking before responding.  Okay?

A.   Yes.

Q.   We're also going to be taking breaks about every hour or as needed.  If you need a break sooner than once an hour, please just let me know.  The only thing I ask is that if there is a question outstanding that you answer it before we go on break.  Okay?

A.   Yes.

Q.   And, lastly, please ask clarifying questions if anything that I say does not make sense to you.  If you answer I'm going to assume that you understood the question as I posed it.  Okay?

A.   Yes.

Q.   Okay.  Can you please tell me where you're located for today's deposition?

A.   Leander, Texas.

Q.   Okay.  And is there anyone else in the room with you?

A.   No.

Page 7

Q.    I just ask that if anyone else does enter the room please let us know and we will pause. I would prefer it if no one else enters the room during the duration of this deposition.  Okay?

A.    Yes.

Q.    Ms. Kraft, you said you were in Texas. Is this a home address or is this a place of work?

A.    Home address.

Q.    Okay.  And what's the home address there?

A.    It's 2913 Rabbit's Tail Drive, Leander, Texas, 78641.

Q.    And is this your home?

A.    Yes.

Q.    How long have you lived there?

A.    It'll be five years in July.

Q.    Where did you previously live before moving into this location?

A.    Fargo, North Dakota.

Q.    And did you rent or own in Fargo?

A.    Owned.

Q.    Was it a home?

A.    Yes.

(Deposition Exhibit No. 1 marked.)

Q.    I'm going to share my screen with you

Page 8

in a moment.  I would like to introduce what is being marked as Plaintiff D Exhibit 1 which is Defendant Essentia Health's Notice of Deposition of Jessica Kraft.  Ms. Kraft, do you see my screen with this notice on it?

A.   Yes.

Q.   And have you seen this document before?

A.   Yes.

Q.   So you understand that you're here to testify today in the lawsuit titled Jessica Kraft with other individuals listed versus Essentia Health, Innovis Health, and John Doe Manufacturers and John Doe Distributors; is that correct?

A.   Yes.

Q.   What did you do to prepare for today's deposition?

A.   I went over my documents and I submitted them to my lawyers.

Q.   When you say you submitted documents to lawyers, was this recently or was this a few years ago?

A.   A few years ago.

Q.   Okay.  Did you do anything in the last few weeks to prepare for this deposition today?

A.   Just a depo prep.

Page 9

Q.    And who was that with?

A.    It was with Brian.

Q.    Okay.  I'm not asking about the substance here, but how long did that meeting last?

A.    Two hours.

Q.    Was it just the one meeting you had?

A.    One meeting, yes.

Q.    Was there anybody else present with you aside from Brian Marty?

A.    No.

Q.    Okay.  Have you spoken to any other class representatives with regards to this lawsuit?

A.    Yes.

Q.    Who have you spoken to?

A.    Mac Schneider and Brooke in Chicago, Illinois.

MR. MARTY:  Jessica, he's not asking about lawyers that you talked to.  He's asking if any of the other parties to the lawsuit.

Q.    Correct.  So any of the other named plaintiffs such as yourself.

A.    No.

Q.    Do you have any children, Ms. Kraft?

A.    Yes.

Q.    How many children do you have?

Page 10

A.   Three.

Q.   And what are their names?

A.   S.K., O.K., and L.K.

Q.   And are you their legal guardian?

A.   Yes.

Q.   And are you legally entitled to make medical decisions on their behalf?

A.   Yes.

Q.   And are they also named plaintiffs in this lawsuit?

A.   I don't understand that question.

Q.   Are your children also named as plaintiffs in this class action lawsuit against Essentia?

A.   I still don't understand it.  I'm their guardian.  I'm their mom.

Q.   Yes.  And so in the -- one moment, please.  So I'm again sharing my screen and showing you Exhibit 1.  In this upper corner here do you see where the case caption states, "Jessica Kraft Individually and as Parent of Minors L.K., S.K., and O.K." are?

A.   Yes.

Q.   So are you bringing this lawsuit on behalf of your children?

Page 11

A.   Yes.

Q.   Whose decision was it for you to get involved in this lawsuit?

A.   My decision.

Q.   And why did you choose to want to become involved in this lawsuit?

A.   I chose to stand up for what I believe is right and stand up for my children.

Q.   And what exactly, in your words, is standing up for what -- what do you mean by standing up for what you believe to be right?

A.   Medicine was stored incorrectly and then injected into myself and my children.

Q.   And what is it that you're hoping to achieve out of this lawsuit?

A.   Monetary compensation for the -- our time and our emotional distress and the breach of warranty and the void of the contract.

Q.   So let's unpack that a little bit. You're seeking monetary compensation for time.  What type of time are you referring to here?

A.   My time of going to repeated appointments and looking through documents.

Q.   Anything else?

A.   No.

Page 12

Q.   Okay.  So it's time with regards to this lawsuit specifically and with regards to getting -- going to repeat appointments; is that correct?

A.   Yes.

Q.   What do you mean by going to repeat appointments?

A.   Having to go back to appointments because the medicine was void of warranty.  It was not stored properly.  And having to go back to Essentia in order to get medicine that was not properly stored and going back a second time to go and -- with three children that's a lot of time.

Q.   So to get revaccinated in other words?

A.   Yes.

Q.   Okay.  You're also stating -- you also stated that you're seeking monetary compensation for emotional distress; is that correct?

A.   Yes.

Q.   Can you describe that a little bit for me?

A.   Having a medicine that was not stored properly injected into your body and injected into your children's bodies and injected into other people's bodies, that's a breach of contract.  And

Page 13

it's stressful because you don't know if you're protected with a vaccination that was not stored properly.

Q.    Are you seeking any counseling or other treatment with regards to this emotional distress? Or did you in the past?

A.    No.

Q.    Are there any witnesses that can corroborate these alleged distresses?

A.    Yes.

MR. MARTY:  Objection.  Foundation. But go ahead.

Q.    And who are those individuals?

A.    My husband.

Q.    Anyone else?

A.    My parents.

Q.    Anyone else?

A.    My pharmacist friend.

Q.    Who is your pharmacist friend?

A.    She is a really close friend of mine who is a pharmacist.

Q.    And what's her name?

A.    Julie Rau.  Dr Julie Rau.

Q.    Have you spoken to Ms. -- this Julie Rau about this lawsuit?

Page 14

A.   Yes.

Q.   What have you spoken about?

A.   I asked in her opinion if the vaccinations were not stored properly what would the outcome be from that.  And she said that she wasn't sure because they should have been stored properly.

Q.   When did that conversation occur?

A.   I don't remember.

Q.   Was it before this lawsuit had been filed?

A.   Yes.

Q.   So it predated your involvement with this lawsuit if I'm understanding that correctly?

A.   Yes.

Q.   Have you had any other conversations with Julie Rau with regards to the allegations in this lawsuit aside from what you just told me?

A.   Not that I remember.

Q.   Okay.  You also mentioned that you're seeking monetary compensation for breach of warranty. Can you explain that for me?

A.   The breach of warranty could you -- or could you explain the question a little more?

Q.   Sure.  I had previously asked what you're seeking in being involved in this lawsuit, and

Page 15

I believe you had said you're seeking monetary compensation for breach of warranty.  And I'm just curious what that means in your own words.

MR. MARTY:  Objection.  Calls for a legal conclusion.  Go ahead, Jessica.

A.   In my mind it means that medicine was not stored properly, but yet it was injected into myself and my children and lots of other people.

Q.   Okay.  Why is it that you're seeking to represent a class of consumers in this lawsuit?

A.   Because I feel like it's the right thing to do.

Q.   Do you know what the class of consumers is that you and your children are seeking to represent?

A.   The class action lawsuit.

Q.   Uh-huh.  And I'm asking within the class action lawsuit do you know what type or class of consumers it is that you and your children are seeking to represent?

A.   The individuals that were injected with medicine that was not stored properly.

Q.   Do you have any idea what geographic region that consists of the class members you're seeking to represent?

Page 16

A.    North Dakota and Minnesota.

Q.    Do you have any idea what their claims are against Essentia?

A.    I do not.

Q.    Do you have any idea what their damages may be against Essentia?

A.    I do not.

Q.    Do you know how their claims compare to yours?

A.    I do not.

Q.    Do you understand what your obligations to the class are as a potential class representative?

A.    Yes.

Q.    And can you describe those to me, please?

A.    Reading the documents, sending in my written responses.  Giving information to my lawyers by gathering the documents.  Going over the documents.  Having this -- attending this deposition and going to trial.

Q.    Thank you.  Have you reviewed the Complaint in this lawsuit?

A.    Yes.

Q.    And can you tell me what the claims against my client are?

Page 17

A.   That the medicine or vaccinations were not kept properly but still injected into people.  So it's a null of warranty.

Q.   And you said this a couple times that these medications were not kept properly.  Do you have any evidence -- direct evidence that indicates that these medications were not kept properly?

A.   That would be in the documents that I gave my lawyers.

Q.   So documents you've produced already in this lawsuit?

A.   Yes.

Q.   Previously you also said that you're seeking monetary damages for a variety of issues up to and including, you know, the time, the emotional distress, and the breach of warranties.  I want to unpack the specific type of financial damages that you're seeking in this lawsuit a bit.  Can you describe, like, what exactly -- what financial damages you have incurred?

A.   Pain for the vaccinations that were void of the warranty.

Q.   Okay.  Anything else?  Was there anything else, Ms. Kraft?

A.   Can you repeat the question?

Page 18

Q.   You just said that the out-of-pocket costs for paying for the vaccinations is part of your financial damages, and I just asked if there was anything else in addition to that.

A.   My time.

Q.   Okay.  Do you know whether this case is scheduled for trial yet?

A.   No, I do not.

Q.   Are you aware of any court hearings on motions to certify the class?

A.   I don't understand that question.

Q.   Do you know whether there is a hearing scheduled for a motion to get the class certified as a class action?

A.   No.

Q.   How much time do you estimate you've spent on this lawsuit?

A.   It's an estimate.  I would say about 30 hours.

Q.   When did you first meet your attorney that you -- that signed you up for this lawsuit?

A.   Can you be more specific?

Q.   Sure.  So at some point in time you became aware of this potential temperature excursion with Essentia, and between that time and the

Page 19

beginning of this lawsuit you had to have met with an attorney; correct?

A.   Correct, yes.

Q.   So I'm just asking what were the circumstances that led you to meeting with this attorney and how you ended up getting signed up for this class action lawsuit.

A.   I called Mac Schneider and I spoke with him.

Q.   Did you just reach out to Mac Schneider out of the blue?

A.   Yes.

Q.   And was he involved in this lawsuit in any way prior to you reaching out to him?

A.   No.

Q.   Aside from Mac Schneider and Brian Marty, have you met with any other attorneys in connection with this lawsuit?

A.   Yes.  Through the phone.

Q.   And do you recall the identity of those individuals?

A.   I remember first names.

Q.   Sure.  Can you say those for me, please?

A.   Beth and Brooke in Chicago.  And Bart

Page 20

and Brian in Des Moines.

Q.   How many meetings have you had with these individuals, whether it be over the phone speaking with them or in person?

A.   An estimate, I would say maybe 15.

Q.   And what in general are the terms of your fee agreement with your attorneys?

A.   There's been no money exchanged.

Q.   So you haven't personally incurred any legal fees or costs in connection with this lawsuit?

A.   No.

Q.   Have any of your attorneys said how much you might receive if you win this case?

A.   No.

Q.   And was this addressed in your fee agreement?

A.   Yes.

Q.   And how would your attorneys be paid if you were to succeed in this lawsuit?

A.   Only if we go to trial and win.

Q.   So you have to go to trial for your attorneys to get paid?

A.   I don't know.

Q.   Okay.  Were you and your children covered by health insurance at all relevant times

Page 21

during the window of time that is relevant to this lawsuit?

A. Yes.

Q. What health insurance did you have?

A. Blue Cross Blue Shield of North Dakota.

Q. Did that ever change? Were there multiple health insurers during the 2017 to 2020 time period?

A. Not that I remember.

Q. Okay. And do you know whether they covered the costs of yourself and your children's immunizations or vaccinations?

A. They covered some.

Q. But not all?

A. I don't know.

(Deposition Exhibit No. 2 marked.)

Q. I'm now going to introduce what is being marked as Plaintiff D Exhibit 2. And, Ms. Kraft, I will represent to you that this is the response of Plaintiff Jessica Kraft to Defendant Essentia Health's Interrogatories Directed to Plaintiffs. Do you see this document on the screen in front of you?

A. Yes.

Q. Do you recognize this document,

Page 22

Ms. Kraft?

A.   Yes.

Q.   And I'm going to scroll down to the bottom here.  Is this your signature on the verification page?

A.   Yes.

Q.   And did you respond on behalf of your children?

A.   Yes.

Q.   And you provided the information that is in this document to your attorneys?

A.   Yes.

Q.   So there's a few things that I'd like to go over here.  In Interrogatory No. 2, and I know we briefly just touched upon this, it's asking for present addresses and each place you've lived in the last ten years.  I now understand that you have moved to Texas.  And is this still accurate?

A.   Yes.

Q.   Interrogatory No. 4 is asking about marriages.  Are you still married to Michael?

A.   Yes.

Q.   Okay.  Interrogatory No. 6 wants to know about employment histories in chronological order, and it states here that you've been a

Page 23

stay-at-home mom since 2012.  Is that still correct?

A.    Yes.

Q.    Have you had any other employment since answering this interrogatory?

A.    I'm a self-employed artist.

Q.    Okay.  And what does that entail?

A.    Freelance art.

Q.    What type of art?

A.    Murals, paintings, sculpture paintings.

Q.    And just -- do you sell it to the public, or do you contract to paint these types of murals?  How exactly do you earn income on it?

A.    It is a contract.

Q.    So for an agreed upon price you just provide a service?

A.    Yes.

Q.    Okay.  I'd like to direct your attention to Interrogatory No. 21 which begins on page 16 and goes on to page 17 of this document. And, Ms. Kraft, Interrogatory No. 21 states, "Identify the temperature sensitive pharmaceutical products you were administered that you contend were subjected to a temperature excursion and the date and location of administration."

And in your response for yourself you

Page 24

identified that you received a hep A vaccine that was administered on February 7, 2018, an influenza shot that was administered on October 9 of 2018.  Do you see that?

A.   Yes.

Q.   And are those the only two medications that you are still seeking damages on in this lawsuit with regards to yourself?

A.   Yes.

Q.   Just below that it states that S.K. and O.K. received influenza shots on October 9 of 2018 as well.  Is that correct?

A.   Yes.

Q.   And for those two children, these are the only two vaccinations which you are seeking damages over in this lawsuit; correct?

A.   Yes.

Q.   Was that a yes?

A.   Yes.

Q.   Thank you.  And then just below that, for L.K. it appears that this child received the DTaP vaccine on 11/7/17, the hepatites A vaccine on 4/4/2018, a Hib vaccine that was administered on 11/7/17, and a flu vaccine that was administered on 10/9 of 2018; is that correct?

Page 25

A.   Yes.

Q.   And for L.K. these are the only medications or vaccinations which you are seeking damages over in connection with this lawsuit still; correct?

A.   Yes.

Q.   Okay.  I'd like to start with the vaccinations that you received, Ms. Kraft.  And beginning with the hepatitis A vaccine that was administered on 2/7 of 2018.  Can you explain to me why you decided to get vaccinated with the hep A vaccine?

A.   To prevent getting hepatitis A.

Q.   And when did you make this decision to get the hep A vaccine?

A.   My doctor probably provided me information.

Q.   Do you recall who this doctor was?

A.   No.

Q.   So was this information that the doctor you're referencing when they gave you information about this, was this at a prior appointment or at the same appointment which you received the hepatitis A vaccine at?

A.   I don't know.

Page 26

Q.   So you don't know whether you decided to get the hepatitis A vaccine prior to the appointment when you actually received it or not?

A.   Yes.

Q.   And you also stated that you got the hepatitis A vaccine to prevent from getting hepatitis A.  Is it -- can you tell me what your understanding of vaccines is with regards to the hepatitis A vaccine?

A.   Yes.  Your doctors tell you to get vaccines and you get them based on what they tell you.

Q.   And when you say your doctors tell you to get vaccines, I'd like to unpack that a little bit.  What does them telling you to get a vaccine mean?

A.   To protect yourself from getting the vaccine that they're giving you.

Q.   Is it your testimony today, then, that your doctor said that getting this vaccine would prevent you from getting hepatitis A?

A.   Yes.

Q.   So you can -- you're testifying today they actually told you those specific words.

A.   I don't remember.

Page 27

Q.   At any time prior to or during your visit to receive the hepatitis A vaccine, did Essentia personnel make any representations to you about the vaccine?

A.   Can you explain that more?

Q.   I'm trying to understand whether, prior to receiving this vaccine, whether Essentia had made any statements or representations to you about the hepatitis A vaccine.

A.   They have pamphlets in all the offices.

Q.   Okay.  And did you receive one of the pamphlets?

A.   I don't know.

Q.   Did they say anything to you as opposed to just having written literature?  Did they discuss the hepatitis A vaccine with you?

A.   I don't know.

Q.   Did you ask any questions about the hepatitis A vaccine to your health care provider?

A.   I don't remember.

Q.   So you can't recall one way or another if they would -- if any Essentia personnel made any statements to you about the hepatitis A vaccine?

A.   Yes.

Q.   Did you receive any literature on the

Page 28

hepatitis A vaccine before deciding to receive it?

A.    I don't remember.

Q.    Did you review the hepatitis A's product label before receiving the hepatitis A vaccination?

A.    I don't remember.

Q.    You don't recall if you looked at it or not?

A.    I don't remember.

Q.    Do you know what the label stated concerning the hepatitis A vaccine?

A.    I don't remember.

Q.    At one point in time would you have remembered this?

A.    I don't know.

Q.    Were there any recommendations that were made on the labels that made you decide to receive the hepatitis A vaccine?

A.    I don't remember.

Q.    Did you rely at all on the vaccine's label or its representations when deciding to get the hepatitis A vaccine?

A.    I don't remember.

Q.    Did you look at the expiration dates on the hepatitis A vaccine prior to receiving it?

Page 29

A.   I don't remember.

Q.   Did you review any description of the vaccine prior to being administered it?

A.   I don't remember.

Q.   Other than what you've described so far today, were there any other statements of fact or promises made by Essentia that were made to you as it relates to the hepatitis A vaccine that you were going to receive?

A.   I don't remember.

Q.   After receiving the hepatitis A vaccine on 2/7 of '18, did you contract any infection that -- did you contract hepatitis A?

A.   Not that I know of.

(Deposition Exhibit No. 3 marked.)

Q.   I'm now going to introduce Plaintiff D Exhibit 3.  Ms. Kraft, I will represent that this is a document which you have produced in this lawsuit with a Bates stamp of KRAFT100.  Do you see this document on my screen?

A.   Yes.

Q.   I'm going to zoom in a bit here so that we can both read it.  Actually I'm going to introduce a different document right now which is...  So I apologize, Ms. Kraft.  I would like to introduce a

Page 30

different document that is being labeled as Exhibit 3 rather than the one I previously had just put up on the screen.  And I'm going to represent that this is being labeled as Plaintiff Exhibit 3, and rather than the Bates label being KRAFT100, this is KRAFT12.  Do you see this document on your screen?

A.   Yes.

Q.   Okay.  Now this appears to be an Explanation of Benefits for yourself; is that correct?

A.   Yes.

Q.   And if we look down here on the bottom third of the page, in the most left-hand column it states that there's dates of service/description.  Do you see that?

A.   Yes.

Q.   And the date of service here is one for February 7 of 2018; correct?

A.   Yes.

Q.   And it appears that there are four lines that are on this column here, one of which is redacted, but three of them are not.  Do you see that?  Two of them state office visit and one is for vaccines; correct?

A.   Yes.

Page 31

Q.   I'm just going to zoom in just a bit more here.  If you look at the vaccines column, there is a charge of $112.  Do you see that?

A.   Yes.

Q.   And two columns over, patient noncovered, it shows that there's a zero dollar balance there; correct?

A.   Yes.

Q.   And if we move all the way over to the most right column, it states that there's an amount that you owe.  Do you see that?

A.   I need to move these screens.  Yes.

Q.   And let me know if you need me to zoom in a little bit so that you can read this better, I'm happy to adjust it for you.  But it appears, though, that for the vaccines that you received on 2/7 of '18 you don't owe anything; is that correct?

A.   Yes.

Q.   And going back to your interrogatory response in Interrogatory No. 21, it appears that you only received one immunization on February 7 of 2018 which is the hepatitis A vaccine; correct?

A.   Yes.

Q.   Is it a fair conclusion, then, to state that the vaccines that is being discussed on your

Page 32

Explanation of Benefits on Kraft 12 is for the hepatitis A vaccine?

A.   Yes.

Q.   And, therefore, you did not pay or have any out-of-pocket expenses with regards to receiving this hepatitis A vaccine then; correct?

A.   Yes.

(Deposition Exhibit No. 4 marked.)

Q.   I'm now going to introduce what is being marked as Plaintiff D Exhibit 4.  Ms. Kraft, I'll represent to you this is a Confidentiality Order that was filed in this case back in 2021.  Have you seen this document before?

A.   Yes.

Q.   And I believe your counsel had you review and sign an agreement contained in this document; is that correct?

A.   Yes.

Q.   And so you understand that I'm going to be showing you some documents here going forward over the next hour that are -- have sensitive medical information in them, and you understand and have attested to the fact that you will not be discussing this or sharing the information that is in these documents with anybody else after this deposition;

Page 33

correct?

A.   Yes.

(Deposition Exhibit No. 5 marked.)

Q.   Thank you.  I'm now going to introduce what is being marked as Plaintiff D Exhibit 5.  And I'll represent to you, Ms. Kraft, that this is a document that was prepared by Essentia for this lawsuit, and it has a Bates number of EH052465.  Can you see the spreadsheet on your screen?

A.   Yes.

Q.   Now I'm on a tab here, and I'll represent to you that this is a list of all the services that you have received on dates which you are claiming you may have been -- received a vaccine that is subject to a potential temperature excursion.  Do you see this here in column B that this relates to a Jessica Kraft?

A.   Yes.

Q.   Highlighting rows 2 through 9 right now, and if you look at column F you'll see that there's a service date.  And underneath the service date here you'll see that there are approximately eight different entries for services that you received on February 2 of 2018.  Do you see that?

A.   Yes.

Page 34

Q.   And specifically in column -- excuse me, in rows 5 and 6 if you look at column K, under the procedure name it does appear that you received a hepatitis A vaccine and an immunization administration on that date, and I believe that is what we were just discussing; correct?

A.   Yes.

Q.   It also appears that on that date, though, you had received other services in addition to receiving the hepatitis A vaccine; is that correct?  It looks like you received an office outpatient visit, had a preventative visit, and had a few other tests being done; is that correct?

A.   Yes.

Q.   Now I'm just going to highlight rows 5 and 6 again for ease of our review as we go forward here.  I'm going to -- I'm just going to scroll right on this document.  Now for the hepatitis A vaccine and its administration, in column U you'll see that there's a 112 and a $55 charge in connection with those -- the vaccine and its administration.  Do you see that?

A.   Yes.

Q.   If you were to scroll and look all the way over in the column of AI, which is patient

payments, it appears that there also, again, were zero dollars out of pocket that you paid for these vaccines or its administration; correct?

A. Yes.

Q. But it does appear that you had a $25 charge and a $12.67 charge for services that were unrelated to receiving the vaccine on that date; is that correct?

A. Yes.

Q. So if you haven't contracted hepatitis A and you didn't have any out-of-pocket costs associated with receiving the hepatitis A vaccine on February 7 of 2018, can you explain to me how you were damaged?

A. My time. And potentially being injected with medicine that was not stored properly. And the emotional distress that goes with that.

Q. Can you explain to me how Essentia has been unjustly enriched in connection with giving you that vaccine?

MR. MARTY: Objection. Form. Calls for a legal conclusion. Go ahead, Jessica.

A. Can you restate the question?

Q. How did Essentia unfairly benefit from administering this vaccine to you?

Page 36

A.   They may or may not have used medicine that was -- or the vaccination that was stored -- or the vaccination wasn't stored properly.

Q.   And my question is how did that benefit Essentia?

A.   I don't understand your question.

Q.   In the Complaint, which you have testified that you've reviewed, you are alleging that Essentia has been unjustly enriched or unfairly benefited from the allegations in the Complaint.  And I'm asking you how -- in your words how did Essentia -- how is Essentia unfairly benefiting from administering this vaccine to you?

A.   Can you still -- can you reask it?  I still don't understand.

Q.   Do you understand what unfairly benefiting from means?

A.   Yes.

Q.   Do you understand that you've alleged that Essentia unfairly benefited from administering these vaccines to patients such as yourself?

A.   If the product was damaged and they injected it into me, a hospital is supposed to protect you.  And, in my mind, they are not fulfilling their contract with me as their patient by

Page 37

potentially injecting me with a product that may or may not work.

Q.   Is it your testimony that that would not benefit Essentia then either?

MR. MARTY:   Objection.   Form.

A.   I don't know.

Q.   So what actions of Essentia do you contend constituted unfair competition in connection with providing you the hepatitis A vaccine?

MR. MARTY:   Objection.   Form.   Legal conclusion.   Go ahead.

Q.   You may answer.

A.   Can you restate the question?   I didn't hear you.

Q.   Could you read that back?

THE COURT REPORTER:   "So what actions of Essentia do you contend constituted unfair competition in connection with providing you the hepatitis A vaccine?"

Q.   (Mr. Riddle continuing)  I'll try to rephrase this for you, Ms. Kraft.   What actions of Essentia do you contend constituted unfair competition in connection with providing you the hepatitis A vaccine?

A.   It may or may not have been stored

Page 38

properly.

Q.    And do you know whether Essentia was aware at the time of administration whether it had been stored properly or not?

A.    I do not.

Q.    What actions of Essentia do you contend constitute a deceptive acts in connection with providing you the hepatitis A vaccine?

A.    Not knowing if the medicine was stored properly or not.

Q.    When you say not knowing, are you saying Essentia not knowing if they were stored properly or not?

A.    Yes.

Q.    So are you alleging that Essentia knew that the medications were not stored properly at the time they administered it to you?

A.    I'm not sure.

Q.    What do you mean by that?

A.    I'm not sure.

Q.    I'm trying to understand what you mean by your statement prior to that.  So are you alleging that they knew or did not know that the medications were stored properly or improperly at the time it was administered to you?

Page 39

A.    I don't know.

Q.    Are you aware one way or the other of whether Essentia knew whether the medication that you received was stored properly at the time it was administered?

A.    I don't know.

Q.    What actions of Essentia do you consider were fraudulent acts in connection with providing you the hepatitis A vaccine?

A.    I don't know.

Q.    Are you aware of any acts that were fraudulent in connection with providing you the hepatitis A vaccine?

A.    I don't know.

Q.    It's a yes or a no question.

A.    Can you reask it?

Q.    Are you aware of any actions by Essentia that were fraudulent acts in connection with providing you the hepatitis A vaccine?

A.    I don't know.

Q.    If you don't know, is that a yes or is that a no?

A.    I don't understand the question.

Q.    I'm asking if you are aware of any actions by Essentia that you're contending are

Page 40

fraudulent in connection with giving you the hepatitis A vaccine.  As you sit here today, do you know of any acts that you're alleging to be fraudulent?

A.   I don't know.

MR. RIDDLE:  Okay.  I think we're at a good stopping point for a first break.  Do you guys want to go off the record?

MR. MARTY:  That sounds good.

(Off the record from 10:58 a.m. to 11:08 a.m.)

Q.   (Mr. Riddle continuing)  Ms. Kraft, before our break we were discussing the hepatitis A vaccine you received back in February of 2018, and just to kind of round out that conversation going back to that appointment on February 7 of 2018 at the time of you receiving that vaccination, do you recall anything that Essentia personnel said to you with regard to this vaccine at all?

A.   For my vaccine?

Q.   Yes.  For the hepatitis A vaccine that you received in 2018.

A.   No.

Q.   Okay.  Did they give you any materials, any sort of documentation?

Page 41

A.    Not that I remember.

Q.    Okay.  So you don't recall any other representations or statements that Essentia personnel had made with regards to the hepatitis A vaccine that you received.

A.    Not that I remember.

Q.    Okay.  I'd now like to turn our attention and I'm going to just point you back to Exhibit 2 that we've already introduced which was the interrogatory responses.  So we just discussed your hepatitis A vaccine.  Briefly would like to talk about the two influenza vaccinations you received, the first being on October 9 of 2018 and the second being December 18 of 2019.  We're going to take the October 9, 2018, influenza vaccination first.  Can you explain to me why you decided to get vaccinated with the influenza vaccine?

A.    To protect myself from getting influenza.

Q.    So is it your understanding that the influenza vaccine prevents -- or protects, excuse me, it protects from getting influenza?

A.    To my understanding it is to protect or prevent you from getting a severe case of influenza.

Q.    Do you also understand that you can

Page 42

still contract influenza even after receiving an influenza vaccine?

A.   Yes.

Q.   Do you recall when you made the decision to get vaccinated with the flu vaccine in 2018?

A.   I do not recall in 2018.

Q.   Do you know whether, just generally speaking -- so we had the appointment on October 9 of 2018.  Had you made the decision to get vaccinated prior to that appointment, or was it at that appointment for something unrelated that you decided to also receive the flu vaccine?

A.   I don't remember.

Q.   Okay.  At any time prior to or during the visit to receive this flu vaccine in 2018 did Essentia personnel make any statements or representations to you about the flu vaccine?

A.   I don't remember.

Q.   Did they provide you any documentation?

A.   I don't remember.

Q.   Did you receive -- or, excuse me, did you review any literature on the flu vaccine before deciding to receive it in 2018?

A.   I don't remember.

Page 43

Q.   Did you review the flu vaccine's product label before deciding to receive the flu vaccine?

A.   I don't remember.

Q.   Is it possible you could have?

A.   I don't remember.

Q.   You don't remember if it's possible for you to have reviewed a label?

A.   I don't remember.

Q.   I'm simply asking if it's possible. That's a yes or a no question.  That's not an, I don't recall.  This is is it possible that you could have reviewed a product label?

A.   I don't remember.

Q.   Do you know what the label -- the flu vaccine label stated concerning the flu vaccine?

A.   I don't remember.

Q.   Do you recall what representations were made on the label -- on the flu vaccine label?

A.   I don't remember.

Q.   Do you know if you relied on the vaccine's label prior to receiving the flu vaccine?

A.   I don't remember.

Q.   Did you look at the expiration date on the flu vaccine prior to receiving the flu vaccine in

Page 44

2018?

A.   I don't remember.

Q.   Did you review any description of the flu vaccine prior to being administered it?

A.   I don't remember.

Q.   Did you ask Essentia personnel any questions about the flu vaccine prior to receiving it in 2018?

A.   I don't remember.

Q.   Were there any descriptions of the flu vaccine which you either saw or were told or relied upon in deciding to receive the flu vaccine in 2018?

A.   I don't remember.

Q.   After receiving the flu vaccine in 2018, did you contract the flu in the 2018-2019 influenza season?

A.   I don't remember.

Q.   I'm just going to share my screen again and direct you back to Exhibit 2 which, again, is the interrogatory responses that you have submitted in this lawsuit.  And I'm going to point you -- I want to direct your attention to Interrogatory No. 30. Interrogatory No. 30 reads, "Did you contract the disease for which the temperature sensitive pharmaceutical products you were administered were

Page 45

designed to prevent?  If so, state the date of diagnosis and the name of the provider who diagnosed you."  That's at the bottom of page 22.

And at the top of page 23 you respond that, "Responding plaintiffs are not aware whether they contracted the diseases for which the temperature sensitive pharmaceutical products they were administered were designed to prevent."

Do you see that?

A.   Yes.

Q.   Does this refresh your recollection one way or the other as to whether you contracted the influenza at any point after receiving the flu vaccine in 2018?

A.   Not that I remember.

Q.   All right.  Sharing my screen again. And this is what has previously been identified as Exhibit 5.  Ms. Kraft, I'd just like to point your attention to rows 11 and 12 here of the spreadsheet that we were previously looking at for services that you have received by Essentia and which is at issue in this lawsuit.  In rows 11 and 12 under the service date you can see that there are two for October 9 of 2018.  And in column K the procedure was for a flu vaccine and for the immunization administration.  Do

Page 46

you see that?

A.   Yes.

Q.   Now I'm going to scroll over to column T in this spreadsheet which is for the total the account charges on the day of service, and you'll see that there was an $80 charge.  Do you see that?

A.   Yes.

Q.   And in column U it appears that there was a $27 charge for the vaccine itself and a $53 charge for the administration.  Do you see that?

A.   Yes.

Q.   And now it appears that there were insurance payments that were made in column AH, but if you look at column AI there was a zero dollar patient payments.  Do you see that?

A.   I need to move this.  Just a second. Yes.

Q.   So is it your understanding that there were no out-of-pocket costs for you in connection with receiving the flu vaccine on -- in October of 2018?

A.   Yes.

Q.   So, again, if you didn't contract the influenza during the 2018-2019 flu season, and you didn't have any out-of-pocket costs, can you explain

Page 47

to me how you were damaged?

A.   Well, we paid for our insurance which pays Essentia.  That's an out-of-pocket cost.

Q.   Did you have -- are you aware of whether you had a copay in connection with receiving the flu vaccine?

A.   I don't remember.

(Deposition Exhibit No. 6 marked.)

Q.   I'm introducing what is being marked as Plaintiff D Exhibit 6.  And I will represent to you that this is another document which you have produced in this lawsuit, Ms. Kraft, and it is Bates labeled KRAFT00000100.  And, Ms. Kraft, this appears to be a screenshot or a picture of an Essentia document which states -- which is titled "Statement of Services." Do you see that?

A.   Yes.

Q.   And underneath the first redaction here you'll see that there's a service date of what is marked as 10/9 of 2018.  Do you see that?

A.   Yes.

Q.   And this is for -- it appears to be for you where it says Jessica L. in the description; correct?

A.   Yes.

Page 48

Q.    And in the description it also says it's for the flu vaccine; correct?

A.    Yes.

Q.    And these charges it also states that there's a 27 and $53 charge which is identical to what was identified on Exhibit 5 in the columns that we had previously looked at; correct?

A.    Yes.

Q.    So -- and, again, if you look over in the next two columns at the payments and adjustments, it appears that insurance paid and covered all $80 in connection with the flu vaccine that you received on October 9 of 2018; correct?

A.    Yes.

Q.    And that your patient responsibility in the far right column was zero; right?

A.    Yes.

Q.    So there was no copay that was associated with receiving the flu vaccine; correct?

A.    I'm not sure.

Q.    Do you know one way or the other whether you had to pay a copayment for the flu vaccine that you received in October of 2018?

A.    I don't remember.

Q.    Does it appear to identify a copay

Page 49

charge on this document that we're looking at right now?

A.    On this document I see a patient responsibility as zero.

Q.    So there's no patient copay then; correct?

A.    According to this document that you're showing me, I see no copay right now.

Q.    Okay.  Thank you.  Could you describe to me any actions taken by Essentia which would constitute unfair competition in connection with you receiving the flu vaccine in 2018?

MR. MARTY:  Objection.  Form.  Calls for a legal conclusion.

Q.    And you may answer.

A.    I don't understand your question.

Q.    Are you aware of any actions taken by Essentia that would include unfair competition under statutory law in connection with you receiving the flu vaccine in 2018?

MR. MARTY:  Same objection.

A.    I don't understand the question.

Q.    Which part are you not understanding?

A.    All of it.

Q.    Do you understand -- let's see.  Are

Page 50

you aware of any actions that Essentia took which would support the claims in the Complaint that Essentia has engaged in unfair competition?

A.   I don't know.

Q.   Are you aware of any actions taken by Essentia that would support your claims in the Complaint that would constitute a deceptive act or practice in connection with you receiving the flu vaccine in 2018?

MR. MARTY:  Same objection.

A.   I don't know.

Q.   Are you aware of any actions taken by Essentia which would support your contention in the Complaint that Essentia engaged in any fraudulent actions in connection with you receiving the flu vaccine in 2018?

MR. MARTY:  Same objection.

A.   I don't know.

Q.   And at the time of you receiving the flu vaccine in 2018, did Essentia say anything to you about the flu vaccine itself?

A.   I don't know.

Q.   Do you recall if they gave you any documentation about the vaccine you were going to receive in 2018, the flu vaccine?

Page 51

A.    I don't remember.

Q.    Okay.  I'd like to move on to the flu vaccine that you received in December -- on December 18 of 2019 now.  Can you explain to me why you decided to get that flu vaccination?

A.    To protect myself and prevent getting the flu or getting a bad case of the flu, influenza.

Q.    Do you generally get the flu vaccine each year?

A.    Depends.

Q.    What does it depend on?

A.    Depends if I can take the time to go make it, to get the vaccination.

Q.    When did you make the decision to get the flu vaccine in 2019?

A.    I don't remember.

Q.    Do you know if you made it prior to the December 18, 2019, appointment if you made the decision?

A.    I don't remember.

Q.    Did anybody, aside from yourself, assist you in making the decision to receive the flu vaccine in 2019?

A.    I don't remember.

Q.    At any time prior to or during your

Page 52

appointment to receive the flu vaccine in 2019, did Essentia personnel make any statements to you about the flu vaccine?

A.   I don't remember.

Q.   Did you ask Essentia personnel any questions about the flu vaccine that you were to receive in 2019?

A.   I don't remember.

Q.   Did you review any literature on the flu vaccine before deciding to receive it in 2019?

A.   I don't remember.

Q.   Did you review the product label on the flu vaccine before receiving it?

A.   I don't remember.

Q.   Do you know what the labels -- what the flu label stated concerning the vaccine?

A.   I don't remember.

Q.   Did you know it at one point?

A.   I don't remember.

Q.   Did you look at the expiration dates on the flu vaccine that you were to receive in 2019?

A.   I don't remember.

Q.   Did you review any description of the vaccine prior to being administered it in 2019?

A.   I don't remember.

Page 53

Q.   Did you rely on any statements made by Essentia in deciding to get the flu vaccine in 2019?

A.   I don't remember.

Q.   Do you recall any other statements of fact or promises made by Essentia that were made to you as it relates to the flu vaccine you received in 2019?

A.   I don't remember.

Q.   After receiving the flu vaccine in 2019, did you contract the influenza virus in the 2019-2020 flu season?

A.   I don't remember.

(Deposition Exhibit No. 7 marked.)

Q.   I'm now introducing what is being marked as Plaintiff D Exhibit 7.  Ms. Kraft, I will represent to you that this is another document that you have produced in this lawsuit and its Bates label is KRAFT14.  Do you see this document?

A.   Yes.

Q.   In the upper left corner it reads, "Summary Claim Report:  Explanation of Benefits."  Do you see that?

A.   Yes.

Q.   Then this appears to be a medical claim for you, Jessica Kraft, as the patient.  Do you see

Page 54

that?

A.   Yes.

Q.   And in the middle column here -- middle row, excuse me, there are medical services that, and I'm going to try to zoom in here, that appear to be administered on 12/18 of 2019.  Do you see that?

A.   Yes.

Q.   And one of the top rows on the far right reads that there's a breakdown of member responsibility.  Do you see that?

A.   Yes.

Q.   And for both the services that you received on 12/18 of 2019 it reflects that there's a zero dollar copay, a zero deductible, a zero dollar co-insurance, and there's no money that's not covered in connection with the services that you received on 12/18 of 2019; correct?

A.   Yes.

Q.   And then, similarly, in the very far right corner it states that the amount you may owe or have paid is zero for these services; correct?

A.   Yes.

Q.   And, Ms. Kraft, do you understand that these services being referenced here are in connection with your flu vaccine; is that correct?

Page 55

That you received on December 18 of 2019?  Is that what this document is referring to?

A.   I believe so.

Q.   Okay.  And very briefly, going back to Exhibit 5 which we have previously introduced, and looking at the two services you received at Essentia on 12/18 of 2019, this document also reflects that you received a flu vaccine and the administration thereof on that date; correct?

A.   Yes.

Q.   And you didn't receive any other services from Essentia on that date according to this document; correct?

A.   According to this document, correct, yes.

Q.   Okay.  So, again, if you didn't contract the influenza in the 2019-2020 flu season and you had no out-of-pocket costs, explain to me how you were damaged in connection with receiving the 2019 flu vaccine.

A.   It may or may not have been affected from the temperature -- from the storing it at a temperature...

Q.   And, again, you just mentioned that it may or may not have been affected; correct?

Page 56

A.    Correct.

Q.    And you have no idea one way or the other if the vaccine that you received actually was impacted by this potential temperature excursion?

A.    Yes.

Q.    So can you explain to me, then, how Essentia unfairly benefited from administering this vaccine to you in 2019?

MR. MARTY:  Objection.  Form.  Calls for a legal conclusion.

Q.    You may answer.

A.    I don't know.

Q.    Can you identify any actions taken by Essentia which would support your allegations in the Complaint that Essentia engaged in unfair competition in connection with providing you the flu vaccine in 2019?

MR. MARTY:  Same objection.

A.    I don't know.

Q.    And do you have any -- can you point to any allegations taken by Essentia that would support your allegations in the Complaint that Essentia engaged in deceptive acts in connection with providing you the flu vaccine in 2019?

MR. MARTY:  Same objection.

Page 57

Q.   You may answer.

A.   I don't know.

Q.   Can you identify any actions taken by Essentia that would support your allegations in the Complaint that Essentia engaged in any fraudulent acts in connection with providing you the flu vaccine in 2019?

MR. MARTY:   Same objection.

A.   I don't know.

Q.   Okay.  Going back to Exhibit 2, Ms. Kraft.  We are back at Interrogatory No. 21.  We previously were just discussing the vaccines that you had received in connection with the allegations in this lawsuit.  I'm going to take this a little out of order, but I'd right now like to talk about L.K.  And appears that the vaccines that L.K. received and which are at issue in this lawsuit are DTap, hepatitis A, Hib, and flu for various dates; correct?

A.   Yes.

Q.   So taking it -- I'm going to start with the DTaP here, and we're going to go through the same questions that I've been asking but with regards to L.K.'s vaccines.  You were legally entitled to make decisions on behalf of L.K.; correct?

A.   Yes.

Page 58

Q.   And was it your decision to have L.K. vaccinated with the DTaP vaccine?

A.   Yes.

Q.   Why did you decide to get her vaccinated with the DTaP vaccine?

A.   From the information provided from the doctor.  Or pediatrician.

Q.   What information was provided by the pediatrician?

A.   To vaccinate your children to prevent them from getting diseases.  Or influenza.

Q.   Okay.  And we're just going to take it one by one right now.  Like, we'll just talk about the DTap, and I'll let you know when we're going to go to the next vaccine here.  So this is still just with regards to the DTaP vaccine.  Do you recall when the pediatrician made that statement to you?

A.   At the appointment.

Q.   When you say at the appointment, was it at the appointment, the November 7 of 2017 appointment, or was it a previous appointment?

A.   I don't recall the exact appointment, but at most of the pediatrician appointments they talk to you about the schedule for the vaccinations.

Q.   And what did they say about the

Page 59

schedule for the vaccinations?

A.   They keep track in your medical records the vaccinations that your children have had, in this case L.K.

Q.   Do you have any idea of what the doctors base the schedule of vaccinations off of?

A.   No, I don't.

Q.   Did you ask the pediatrician any questions with regards to the DTaP vaccine that L.K. received on November 7 of 2017?

A.   I don't remember.

Q.   Was there any other information that you received from any source or from any Essentia personnel that made you decide to receive -- to have L.K. receive the DTaP vaccine?

A.   Not that I recall.

Q.   So at the time that L.K. received the DTaP vaccine, did Essentia personnel make my statements to you about the DTaP vaccine?

A.   I -- I don't remember.

Q.   Were you present with L.K. when she received the DTaP vaccine on November 7 of 2017?

A.   Yes.

Q.   And at that appointment when she was to receive the DTaP vaccine on November 7 of 2017, did

Page 60

you ask Essentia personnel any questions about the DTaP vaccine?

A.   I don't recall.

Q.   Did you review any literature in any form regarding the DTaP vaccine before deciding to have L.K. be vaccinated with it?

A.   I don't recall.

Q.   Did you review the DTaP product label before having L.K. be administered it?

A.   I don't recall.

Q.   Have you ever reviewed the product label for the DTaP vaccine?

A.   I don't recall.

Q.   Do you have any idea what the label -- the DTaP label stated concerning the DTaP vaccine?

A.   I don't remember.

Q.   Did any representations on the DTaP vaccine label make you decide to receive -- or have L.K. receive the DTaP vaccine?

A.   I don't remember.

Q.   Did any representations from a pediatrician make you want to receive -- have L.K. receive the DTaP vaccine?

A.   Yes.

Page 61

Q.   And what statements were those?

A.   I don't remember.

Q.   So how do you know there was something that was said that made you want to receive the DTaP vaccine for L.K. then?

A.   Because at most pediatric appointments they go over the immunizations with you and they tell you your schedule for your child.

Q.   And during these conversations, did you have any other follow-up questions for the pediatrician with regards to the DTaP vaccine?

A.   I don't remember.

Q.   Did you look at the expiration date on the DTaP vaccine that L.K. was being administered in 2017?

A.   I don't remember.

Q.   Did you review any other description of the vaccine, the DTaP vaccine, prior to having it be administered to L.K. in 2017?

A.   I don't remember.

Q.   After receiving the DTaP vaccine in November of 2017, did L.K. contract any infection or disease that the DTaP vaccine was intended to prevent?

A.   No.

Page 62

Q.   I'm going to go back to Exhibit 5 here which was previously introduced.  And I'm switching over to a new sheet which is now with regards to L.K. Do you see that, Ms. Kraft?

A.   Yes.

Q.   At the very top in rows 2 and 3 it identifies actual -- actually rows 2 through 4 I should say, it identifies a service date of November 7 of 2017.  Do you see that?

A.   Yes.

Q.   And it appears that for two of these services there was an immunization administration on that date.  Do you see that?

A.   Yes.

Q.   And there was also a preventative visit for -- in addition to the immunizations; correct?

A.   Yes, according to these records.

Q.   Okay.  Scrolling over to column V. Excuse me.  Let's see.  Column U, excuse me.  For rows 3 and 4 it appears there was a $116 and a $64 charge in connection with the vaccines and the immunization that she received; is that correct?

A.   You have highlighted there 231, 116, and 64.  Under U?

Q.   Yes.

Page 63

A. Is that what we're looking at?

Q. That is what we're looking at. And I was specifically -- and I'm going to go back to the far left here. If we're looking at specifically rows 3 and 4 which appear to be the immunization -- encounter for immunization here. If we were to look in column U, which you were just pointing out, there's a $116 charge and a $64 charge; correct?

A. Yes.

Q. And the $231 charge was for the general preventative checkup which was in the other column; correct?

A. It's in the same column. It's under U.

Q. Same row. Excuse me. Different row.

A. Row 2, correct.

Q. And row 2 is not for the immunizations; correct? That's for a preventative visit. Do you see that?

A. Correct.

Q. I'm just asking -- correct; right? So rows -- what we're really looking at with regards to L.K.'s DTaP immunization would be for rows 3 and 4; correct?

A. Yes.

Page 64

Q.    So, again, and I'll just deselect that one.  So column U for the same immunizations that she received, it appears that there was a $116 and a $64 charge.  Correct?

A.    Yes.

Q.    But if we were to go to column AI under patient payments there is actually a zero amount that you owed; correct?

A.    Yes.

Q.    So, again, there was no out-of-pocket costs to you associated with L.K.'s DTaP vaccine that she received on November 7 of 2017; correct?

A.    According to this document, yes.

Q.    Do you have any reason to believe that there was -- there were, in fact, out-of-pocket costs associated with the DTaP vaccine that L.K. received on November 7 of 2017?

A.    I don't know.

Q.    And, again, so if you had no out-of-pocket costs, and L.K. did not contract any disease or infection that the DTaP vaccine was designed to prevent, explain to me how you were damaged.

A.    The emotional distress.

Q.    Anything else?  I don't know, did you

Page 65

answer? I didn't hear. Is there anything else in addition to the emotional distress, Ms. Kraft?

A. I'm thinking. There's the insurance that we paid.

Q. What do you mean by the insurance that you paid?

A. We pay for insurance which paid Essentia.

Q. Do you know whether you had insurance costs associated with L.K. receiving the DTaP vaccine?

A. You pay monthly for your insurance and yearly for your insurance.

Q. So it's those -- it's just your general costs, your monthly costs of having and maintaining health insurance that you're claiming here?

A. Yes.

Q. Okay. Do you have any other facts that would support your allegations in the Complaint that Essentia unfairly benefited from providing L.K. the DTaP vaccine in November of 2017?

MR. MARTY: Objection. Form. Calls for a legal conclusion.

Q. And, Ms. Kraft, occasionally your attorney may object. And unless he says do not

Page 66

answer, you may answer and you must answer after he makes his objection.  So I don't know if you're pausing because you don't think you have to answer, but unless specifically told not to answer, please just answer the question.  Okay?

A.    Yes.

Q.    Do you need me to read that question back to you again?

A.    Yes.

MR. RIDDLE:  Madam Court Reporter, could you please read the previous question I asked back?

THE COURT REPORTER:  "Okay.  Do you have any other facts that would support your allegations in the Complaint that Essentia unfairly benefited from providing L.K. the DTaP vaccine in November of 2017?"

A.    I don't know.

Q.    (Mr. Riddle continuing)  And do you have any other facts that would support your allegations in the Complaint that Essentia engaged in any actions which would constitute unfair competition in connection with its administration of the DTaP vaccine to L.K. in 2017?

MR. MARTY:  Same objection.

Page 67

A.   I don't know.

Q.   Do you have any other facts that would support your allegations in the Complaint that Essentia engaged in any deceptive acts in connection with providing L.K. the DTaP vaccine in 2017?

MR. MARTY:  Same objection.

A.   I don't know.

Q.   Do you have any other facts that would support your allegations in the Complaint that Essentia engaged in fraudulent activity in connection with providing L.K. the DTaP vaccine in 2017?

MR. MARTY:  Same objection.

A.   I don't know.

Q.   Okay.  Briefly going back to Exhibit 2. In addition to the DTaP vaccine, we're also -- let's move on to the hepatitis A vaccine that L.K. received on April 4 of 2018.  Did you have the -- you had the legal authority to make a decision for L.K. to receive that vaccination; correct?

A.   Yes.

Q.   And why did you decide to have L.K. vaccinated with the hep A -- for hep A?

A.   To prevent hep A.

Q.   And how did you arrive at that conclusion?

Page 68

A.    Based on the pediatric doctor.  And the recommendations for the immunization shots for your children.

Q.    And what exactly did the pediatrician say with regards to recommending that your children receive certain vaccines?

A.    For preventative health care.

Q.    Is it your testimony that the pediatrician said these vaccines are for preventative health care?

A.    I don't know.

Q.    Well, what exactly did you mean by that?  I'm just trying to understand what was said by the pediatrician in connection with you and making the decision to have L.K. receive the hep A vaccine.

A.    Right.  To stay on the schedule to vaccinate your children to protect them from diseases and influenza.

Q.    And when you say to stay on the schedule I believe you just said, is this the CDC recommended vaccination schedule?  Is that what you're referring to?

A.    Yes.

Q.    So Essentia personnel was just recommending that you follow the CDC's vaccination

Page 69

schedule; correct?

A.   Yes.

Q.   And you agreed with that?

A.   Yes.

Q.   Did you make the decision to have L.K. receive the hepatitis A vaccine before the appointment which -- at which she actually received it, or was it at the same appointment?

A.   I don't remember.

Q.   Do you recall any statements or representations that Essentia personnel made to you about the hepatitis A vaccine that L.K. received?

A.   I don't remember.

Q.   Did you review any literature on the hepatitis A vaccine before having L.K. receive it?

A.   I don't recall.

Q.   Did you review the hepatitis A product label before deciding to have L.K. receive the vaccine?

A.   I don't recall.

Q.   Do you know what the hepatitis A label stated regarding the hepatitis vaccine?

A.   I don't know.

Q.   Did any representations on the hepatitis vaccines label help you decide to have L.K.

Page 70

receive this vaccine?

A.   I don't remember.

Q.   Do you know if you relied at all on the vaccine -- on the hepatitis vaccine's label when deciding to have L.K. vaccinated?

A.   I don't remember.

Q.   Did you look at the expiration date on the hepatitis A vaccine before having L.K. be administered it?

A.   I don't remember.

Q.   Do you recall any other statements of fact or promises made by Essentia that were made to you regarding the hepatitis A vaccine?

A.   I don't remember.

Q.   After receiving the hepatitis A vaccine, did L.K. contract any infection or disease that the hepatitis A vaccine was intended to prevent?

A.   Not that I'm aware of.

Q.   Going back to Exhibit 5.  Let's see. Row 12.  Just pointing it out.  It appears that, as you can see here, the service date is April 4 of 2018 and L.K. was seen to receive the hepatitis A vaccine; correct?

A.   Yes.

Q.   And the total charges for that visit

Page 71

under column U amount to $57; correct?

A.   Yes.

Q.   And as you can see in X, that was for the vaccine charges; correct?

A.   Yes.

Q.   And, again, if we were to scroll all the way to column AI, there are no patient payments made in connection with L.K. receiving the hepatitis A vaccine; correct?

A.   Yes.

Q.   And do you have any reason to dispute that there were no out-of-pocket costs for you associated with L.K. receiving the hepatitis A vaccine?

A.   Could you say that again?

Q.   Do you dispute that you did not have any out-of-pocket costs associated with having L.K. receive the hepatitis A vaccine?

A.   I don't know.

Q.   Do you acknowledge that there was zero out-of-pocket costs to you associated with L.K. receiving the hepatitis A vaccine in 2017?

A.   Yes.

Q.   Okay.  So, again, there's no out-of-pocket costs to you associated with L.K.

Page 72

receiving this vaccine and she did not contract hepatitis A or any disease that the hepatitis A vaccine was designed to prevent.  So can you explain to me again how you were damaged by having L.K. receive this vaccine?

A.    Emotional distress.

Q.    Anything else?

A.    Time.

Q.    Okay.  Anything else -- what do you mean by time?

A.    My time.  My child's time.

Q.    And what does that mean, your child's time or your time?

A.    Well, taking my time to go to the appointment, to set it up, to drive over there, to get it set up to talk to the doctor, to get the immunization.

Q.    Okay.  Any other ways that you can -- that you were damaged?

A.    Not that I recall right now.

Q.    Do you have any other facts in your possession that would support your allegations in the Complaint that Essentia was unfairly benefited by administering L.K. the hepatitis A vaccine in April of 2018?

Page 73

MR. MARTY:  Objection.  Form.  Calls for a legal conclusion.  Go ahead, Jessica.

A.    I don't know.

Q.    Do you have -- are you aware of any other actions that Essentia took that would support your allegations in the Complaint that Essentia engaged in unfair competition in connection with providing your daughter the hepatitis A vaccine in April of 2018?

A.    I don't know.

MR. MARTY:  Same objection.

Q.    Are you aware of any other facts that Essentia engaged in which would support your allegations in the Complaint that Essentia engaged in deceptive acts in connection with providing your daughter the hepatitis A vaccine?

MR. MARTY:  Same objection.

A.    I don't know.

Q.    Can you identify any actions that would support your allegations in the Complaint that Essentia engaged in any fraudulent activity in connection with providing your daughter the hepatitis A vaccine?

MR. MARTY:  Same objection.

A.    I don't know.

Page 74

Q.   Okay.   Moving on to the next vaccine that L.K. received.   That would be the Hib vaccine that was administered also on November 7 of 2017. Whose decision was it to have her vaccinated with the Hib vaccine?

A.   My decision.

Q.   And why did you decide to have her vaccinated with the Hib vaccine?

A.   To protect her.

Q.   Do you recall when you made that decision to get her vaccinated with the Hib vaccine?

A.   I don't recall.

Q.   At any time prior to or during the visit for L.K. to receive the Hib vaccine did Essentia -- any Essentia personnel make my representations or statements to you about the Hib vaccine?

A.   Not that I recall.

Q.   Did you review any literature on the Hib vaccine?

A.   Not that I recall.

Q.   Did you review the Hib vaccine's product label?

A.   Not that I recall.

Q.   Before the administration?

Page 75

A.    Not that I recall.

Q.    Do you know what the Hib label stated concerning the vaccine?

A.    Not that I recall.

Q.    Did you rely in any way on the Hib vaccine's label in deciding whether to get vaccinated -- to have L.K. get vaccinated?

A.    Not that I remember.

Q.    Did you look at the expiration date on the Hib vaccine?

A.    Not that I remember.

Q.    Did you review any description of the Hib vaccine prior to deciding -- prior to it being administered to L.K.?

A.    Not that I remember.

Q.    After L.K. received the Hib vaccine on November 7 in 2017, did she contract any infection or disease that the Hib vaccine was intended to prevent?

A.    Not that I'm aware of.

Q.    And going back to Exhibit 5.  Row 14 here we can see that there's a November 7, 2017, Hib vaccine procedure that occurred for L.K.; correct?

A.    Yes.

Q.    And in column X there was a $116 vaccine charge for that service; correct?

Page 76

A.   Yes.

Q.   But, again, under patient payments you actually had no out-of-pocket costs associated with L.K. receiving the Hib vaccine on November 7 of 2017; correct?

A.   Yes.

Q.   So, again, if there was no out-of-pocket costs to you, she did not contract the -- any disease that the Hib vaccine was designed to prevent, can you explain then what damages you're claiming with regards to the Hib vaccine?

A.   The emotional distress and time, and we're not aware of any diseases that L.K. has.

Q.   Is there any sort of concern on your end that she may in the future contract a disease that the vaccine was intended to prevent?

A.   Can you say that again?

Q.   I'm just asking if you have any concern or if you're trying to state that there's, like, some damages for, like, unknown future issues that might arise as a result of this.  Is that what you're claiming?

A.   Yes.

Q.   Okay.  Do you have any other facts that would support your allegations in the Complaint that

Page 77

Essentia engaged in unfair competition in connection with providing L.K. the Hib vaccine?

MR. MARTY:  Objection.  Form.  Calls for a legal conclusion.  Go ahead.

A.   I don't know.

Q.   Do you have any other facts that would support your allegations in the Complaint that Essentia engaged in any deceptive acts in connection with providing L.K. the Hib vaccine?

MR. MARTY:  Same objection.

A.   I don't know.

Q.   Do you have any other facts in your possession that would support your allegations in the Complaint that Essentia engaged in fraudulent acts in connection with providing L.K. the Hib vaccine?

MR. MARTY:  Same objection.

A.   I don't know.

MR. RIDDLE:  And I think we're at a good stopping point.  Let's go off the record.

(Off the record from 12:06 p.m. to 12:14 p.m.)

Q.   (Mr. Riddle continuing)  Ms. Kraft, we were previously speaking about your daughter L.K. and some of the vaccinations that she had received.  We just finished discussing the Hib vaccine, and it

Page 78

appears now that I'd like to talk about the final two that she received which were two influenza shots that she was administered, the first being on October 9 of 2018 and the second being on December 18 of 2019. Can you tell me whose decision was it to have L.K. vaccinated with the influenza in the 2018 and 2019 seasons?

A.    My decision.

Q.    And why did you decide to have her get vaccinated in each of those years?

A.    For an influenza?

Q.    Yes.  What was your motivation for deciding to have her get vaccinated?

A.    For preventing it and making it a more mild case if she were to get influenza.

Q.    Did anybody or anything influence your decision to have her get vaccinated with the flu vaccine in either of those years?

A.    Yes.

Q.    And can you explain to me what those were?

A.    When you go to the pediatrician they recommend that you get a vaccination for the influenza.

Q.    And what exactly did she say in

Page 79

connection with that recommendation?

A.   I don't recall their exact words.

Q.   Give me a summary, then, of your impression of what it was.

A.   My impression is that as the pediatrician that I saw, they said that the influenza shot is highly recommended for your child so that they don't experience the full-blown influenza.

Q.   And that -- what the pediatrician conveyed what were just explaining to me, do you know if that occurred at the same appointment that you were -- that you were having the vaccine administered, or was that at a previous appointment?

A.   I don't recall.

Q.   Did you review any literature on the influenza vaccine before deciding to have L.K. receive it in either of the years?

A.   I don't recall.

Q.   Did you review the influenza product label in either year before deciding to have L.K. receive the influenza vaccine?

A.   I don't recall.

Q.   Did you look at the -- any representations on the influenza vaccine labels in either year prior to having L.K. receive the

Page 80

influenza vaccination?

A.   I don't recall.

Q.   Did you look at the expiration dates on the influenza vaccines in either year that L.K. received the influenza vaccine?

A.   I don't recall.

Q.   Did you review any description of the influenza vaccine prior to administering it to L.K. in 2018 or 2019?

A.   I don't recall.

Q.   Other than what you've described here today, were there any other statements of fact or promises made by Essentia that were made to you that relates to the flu vaccines in either 2018 or 2019?

A.   I don't recall.

Q.   Did L.K. come down or contract the influenza in either flu seasons, the 2018-2019 or 2019 and 2020 flu seasons?

A.   I don't recall.

Q.   And when you say you don't recall, are you saying you don't know if she contracted the flu or not?

A.   Correct, yes.  I don't remember.  I don't know.  I don't know.

THE COURT REPORTER:  I think he froze.

Page 81

MR. MARTY:  Jessica, can you hear me?

THE WITNESS:  Yeah.

MR. MARTY:  Okay.  Yeah, this is -- I think this has happened in every one of these Bryce has frozen at some point.  I'm just going to email him quick.  And we're off the record too.

(Off the record from 12:19 p.m. to 12:20 p.m.)

Q.  (Mr. Riddle continuing)  Let's go back on the record and hope it doesn't happen again. Ms. Kraft, I believe my last question before we had some technical difficulties was whether L.K. was ever diagnosed with influenza in either the 2018-2019 or 2019-2020 seasons; is that correct?

A.  I don't remember.

Q.  You don't know if she was -- I'm asking if she was formally diagnosed by a pediatrician or some doctor.  Do you know?

A.  If she had the flu?

Q.  Correct.

A.  So you're asking if a doctor told me that if she had the flu?

Q.  Yes.  Was she diagnosed with the flu in either of the seasons that she received the flu vaccine?

Page 82

A.   I don't remember.

Q.   Very briefly here, in Exhibit 5 I've highlighted the October 9, 2018, flu vaccination which you can see in rows 10 and 11 here.  And very briefly I'm going to scroll over.  And it appears in column V there was a -- or, excuse me, column U there were account charges associated with receiving the flu vaccine; correct?

A.   Yes.

Q.   However, again, there was no out-of-pocket costs to you in connection with L.K. receiving this influenza vaccine; right?

A.   Yes.

Q.   And, similarly, in December of 2019 I've highlighted the flu vaccination columns here. But, again, there were account charges that were associated with this -- with receiving the influenza vaccine in 2009, but, again, there were no out-of-pocket costs to you; correct?

A.   Yes.

Q.   So can you describe, given that there was no indication that L.K. contracted the influenza virus in either 2018, 2019, or 2020, and the fact that there was no out-of-pocket costs to you associated with this, can you explain to me again

Page 83

what the basis of your damages is in connection with the flu vaccines that L.K. received?

A.   I don't remember if she got the flu or not during that time.

Q.   And so I had previously asked as well, you -- she never received a formal diagnosis of being -- of having influenza at that time; correct?

A.   Correct.  A formal doctor visit, correct.

Q.   Okay.  So there's no indication -- do you have any other indication to believe that she did, in fact, have the influenza virus in the 2018 to 2020 time period?

A.   I don't remember.

Q.   Okay.  So, again, with that information, then, what's the basis of your damages?

A.   Emotional distress.

Q.   Anything else?

A.   Time.

Q.   And when you say time, just like previously, the time spent going to and from the appointment?  Is that what you mean by that?

A.   Correct, yes.

Q.   Do you have any other facts in your possession that would support your allegations in the

Page 84

Complaint that Essentia unfairly benefited from receiving -- or from administering the flu vaccine to L.K. in either the 2018 or 2019 years?

MR. MARTY:  Objection.  Form.  Calls for a legal conclusion.

A.    I don't know.

Q.    Do you have any other facts in your possession that would support your allegations in the Complaint that Essentia engaged in any deceptive acts in connection with administering L.K. the flu vaccine in either 2018 or 2019?

A.    I don't know.

Q.    Do you have any other facts in your possession that would support your allegations in the Complaint that Essentia engaged in fraudulent actions in connection with providing L.K. with the flu vaccine in either 2018 or 2019?

MR. MARTY:  Same objection.

A.    I don't know.

Q.    Going back to Exhibit 2.  It also appears that two of your other children, S.K. and --

A.    I think his screen froze.

MR. MARTY:  I think he froze again. Okay.  We'll go off the record.

(Off the record from 12:26 p.m. to

Page 85

12:27 p.m.)

Q. (Mr. Riddle continuing) Ms. Kraft, it also appears -- I'm going to go back to Exhibit 2. Now we've previously just discussed the vaccinations that you, yourself, and L.K. have received. I'd like to now discuss your two other children, S.K. and O.K. It appears that they also received an influenza vaccine on October 9 of 2018 which you are alleging is a part of this lawsuit; is that correct?

A. Yes.

Q. Whose decision was it to have S.K. and O.K. be administered the flu vaccine?

A. My decision.

Q. And what was the basis for that decision?

A. To help protect them against getting influenza or getting a bad case of influenza.

Q. And was there any advice or other information that you relied upon from any Essentia personnel coming to that decision?

A. From my pediatrician. Recommending --

Q. Go ahead.

A. Recommending getting the vaccination every year for the flu and influenza.

Q. Did your pediatrician make any

Page 86

representations to you about -- specifically about the influenza vaccine that S.K. and O.K. received in October of 2018?

A.   I don't remember.

Q.   So was it just generally that the pediatricians recommend you get the flu vaccine every year which was the basis for you deciding to have your children vaccinated with the flu vaccine?

A.   Yes.

Q.   But nothing specifically about that vaccine and what it would do; correct?

A.   The influenza vaccine to prevent for influenza.

Q.   Did the pediatrician specifically mention that in connection with the vaccines, the influenza vaccine that S.K. and O.K. received in October of 2018?

A.   I don't remember.

Q.   Did you review any literature on these vaccines before having S.K. and O.K. receive the influenza vaccine?

A.   I don't remember.

Q.   Did you review the product labels of these influenza vaccines?

A.   I don't remember.

Page 87

Q.   Did you review -- do you have any -- sorry.  Do you have any indication or knowledge as to what the influenza vaccine labels stated?

A.   I don't remember.

Q.   Did you look at the expiration dates on the influenza vaccines that S.K. and O.K. received in October of 2018?

A.   I don't remember.

Q.   Did you review any descriptions or rely on any descriptions of the influenza vaccine prior to having S.K. and O.K. be administered it in October of 2018?

A.   I don't remember.

Q.   Do you have any other statements of fact or promises made by Essentia that were conveyed to you that relate to the influenza vaccines that S.K. and O.K. received in October of 2018?

A.   I don't remember.

Q.   After receiving these vaccines, did S.K. contract the influenza virus during the 2018-2019 season?

A.   I don't remember.

Q.   And same question for O.K.  After he received the influenza vaccine, did he contract the

Page 88

influenza virus in the 2018-2019 flu season?

A.    I don't remember.

(Deposition Exhibit No. 8 marked.)

Q.    And I'm hoping I don't pause here so I apologize.  I'm just -- one moment.  I'm now introducing Plaintiff D Exhibit I have marked as 8 but it may be Exhibit 7.  I've kind of lost track.  I apologize.  Regardless, this is a document that you have produced, Ms. Kraft, which is Bates labeled KRAFT00000085.  And this is also a screenshot that appears to be from Essentia Health.  Can you see this on your screen?

A.    Yes.

Q.    I'll just represent to you this is a bill statement for various services that were provided by Essentia.  And of particular relevance on this sheet is two entries both from October 9 of 2018 for S.K. and O.K. receiving flu vaccines.  Would you agree with that characterization?

A.    Yes.

Q.    And for each of them it appears that there is a 27 and $53 charge in connection with receiving the influenza vaccine in October of 2018. But it also appears that there was an insurance adjusted payments of $80 for both S.K. and O.K.

Page 89

leaving a responsibility out-of-pocket for you of zero dollars for both of your other children's vaccines that they received in 2018; correct?

A.   Yes.

Q.   So, again, without any indication that either S.K. or O.K. had contracted the influenza virus and there being no out-of-pocket costs, can you describe to me what your damages are in connection with both of these vaccines?

A.   Emotional distress and time.

Q.   And time being as you have previously described it in connection with other vaccinations? Is that what you mean?

A.   Yes.

(Deposition Exhibit No. 9 marked.)

Q.   I'm now introducing what I'm marking as Kraft Exhibit 9.  And I'll represent that this is another document which you have produced in this lawsuit, Ms. Kraft, and the Bates labels for this document range from KRAFT00006 through 7.  And I'll also represent, Ms. Kraft, that this is a letter sent from Essentia to you through your My Chart app.  And I'm going to ask you to just go ahead and take -- briefly review this letter and let me know when you're done and I'll have a few questions for

Page 90

you.

A.   Okay.

Q.   Okay.  So as you can see, this letter is dated April 7 of 2020; is that correct?

A.   Let me -- I got to move this.  Yes.

Q.   Was this the first time that you learned that some of the vaccines you had received were potentially impacted by a temperature excursion?

A.   I don't remember.

Q.   Do you recall when you first became aware that some of the vaccines you had received may have been impacted by a potential temperature excursion?

A.   Do I recall?

Q.   Yes.  Do you recall when or how you became aware?

A.   With this letter?

Q.   Okay.  So this letter was the first time you became aware.

A.   I don't remember.

Q.   Did you not just testify -- did you not just say that this letter was when you first became aware?

A.   I don't remember.

Q.   Do you recall receiving this letter?

Page 91

A.   Yes.

Q.   Do you recall when you received this letter?

A.   It looks like April 7.

Q.   Was that the date that you --

A.   2020.

Q.   Was that the date that you reviewed this letter?

A.   I don't know what date I reviewed the letter.

Q.   According to this letter, it states that, in the third paragraph here, that Essentia is offering revaccination at no additional cost to you. Do you see that?

A.   Yes.

Q.   Did you decide to get revaccinated for any of the vaccines that may have been impacted by the potential temperature excursion?

A.   Yes.

Q.   And which vaccines did you get revaccinated with?

A.   It's in the information that I submitted to my lawyers.

Q.   Do you not recall off the top of your head?

Page 92

A.   I do not.

Q.   But you do at least know that you went and received a revaccination for at least one of the vaccines you had previously received; correct?

A.   Yes.

Q.   Do you know if you received revaccinations for the influenza vaccine?

A.   I don't know.

Q.   I'd like to direct you here to the second paragraph.  And the second paragraph of this letter reads, "We want to make you aware of an issue at a former distribution partner's medication storage location in Fargo, North Dakota, that may have resulted in certain vaccines and medications being stored at temperatures outside of the range recommended by manufacturers.  Storage temperatures outside the recommended range do not cause the vaccines and medications to be harmful but they may reduce their effectiveness."

Do you see that?

A.   Yes.

Q.   So this letter doesn't actually state that the vaccines you received were definitively subjected to a temperature excursion; right?  Just that they might have been subjected to a temperature

Page 93

excursion?

A.   Yes.

Q.   And have you ever been told that the specific vaccine doses that you received had actually experienced a temperature excursion?

A.   I don't know.

Q.   Do you have any specific knowledge that the vaccine doses you received were actually impacted by the temperature excursion?

A.   I don't know.

Q.   So are you just speculating that the vaccines you received were affected based upon this letter?

A.   I don't know.

Q.   You don't know if you're speculating?

A.   I don't know.

Q.   What do you mean by you don't know?

A.   I don't know.  That's what I mean by I don't know.

Q.   You don't know if you're speculating or not.

A.   I don't know.

Q.   So this question is fairly straightforward, Ms. Kraft.  I'm asking if you are speculating that the medications you received, the

Page 94

vaccines that you received were impacted solely based upon this letter.

A.   I don't know.

MR. MARTY:   Just a second.   Deanna, could you read that question back?

THE COURT REPORTER:   "So this question is fairly straightforward, Ms. Kraft.   I'm asking if you are speculating that the medications you received, the vaccines that you received were impacted solely based upon this letter."

MR. MARTY:   Okay.   Objection to form. Go ahead, Jessica.

A.   I don't know.

Q.   (Mr. Riddle continuing)   You don't know one way or the other whether you're speculating or whether you're guessing that the vaccines that you received were impacted based upon this letter?

A.   I don't know.

Q.   Do you have any other facts, aside from this letter, that would support your contention that the vaccines you received were impacted by a potential temperature excursion?

A.   I don't know.

Q.   You don't know if you do or not?

A.   I don't know.

Page 95

Q.    Is there somebody better suited other than yourself to ask this question then?

A.    I don't know.

(Deposition Exhibit No. 10 marked.)

Q.    I'm now introducing what is being marked as Plaintiff D Exhibit 10.  And I'll represent this was also a document that you produced in this lawsuit, Ms. Kraft, with Bates range going from KRAFT000008 to 09.  And, Ms. Kraft, I'll represent to you that this also was a letter that was sent out in connection with the vaccination that L.K. received that may have been impacted by a potential temperature excursion.  Do you see that and would you agree with that characterization?

A.    Yes.

Q.    And please give this a read, but tell me if you think this is essentially similar to the same letter that you had received for yourself.

A.    Yes.

Q.    And, again, in the second paragraph the last sentence reads, again, that, "Storage temperatures outside the recommended range do not cause the vaccines and medications to be harmful but they may reduce their effectiveness."  Correct?

A.    Yes.

Page 96

Q.   And, again, this letter doesn't specifically state that the vaccinations L.K. received were, in fact, affected, just that they may have been affected; correct?

A.   Yes.

Q.   Were you ever told at any time from -- that is relevant from the date of this letter going forward that the specific vaccines that L.K. received were, in fact, subject to a potential temperature excursion?

A.   I don't know.

Q.   So you don't know -- you haven't been informed of that since the date of this letter, have you?

A.   Informed of what?

Q.   Whether the specific vaccines that L.K. received were, in fact, subject to a temperature excursion.

A.   I don't know.

Q.   Are you speculating that the medications that L.K. received were, in fact, subject to a temperature excursion based upon this letter?

A.   I don't know.

Q.   What other evidence do you have to support your allegation that the vaccinations that

Page 97

L.K. received were, in fact, subject to a temperature excursion?

A.   I don't know.

(Deposition Exhibit No. 11 marked.)

Q.   I'm now introducing Plaintiff D Exhibit 11 which is Bates labeled KRAFT00000013. Ms. Kraft, this is a document that you produced as well dated April 30 of 2020 regarding your child, O.K.   And this is also a letter that was sent from Essentia Health to yourself regarding a potential temperature excursion.   Do you see that?

A.   Yes.

Q.   Would you agree that this letter is substantially similar to the document we were just reviewing as it pertains to L.K.?

A.   Yes.

Q.   And, again, in the second paragraph the final sentence states, "Storage temperatures outside of the recommended range do not cause the flu vaccines to be harmful but they may reduce their effectiveness."   Do you see that?

A.   Yes.

Q.   So, again, this letter doesn't actually state that the vaccines that O.K. received were actually subject to a temperature excursion; right?

Page 98

Just that it may have been?

A.   Yes.

Q.   And you were never told that the specific vaccine doses that O.K. received actually experienced a temperature excursion?

A.   Yes.

Q.   So you don't actually know whether this specific vaccine dose that O.K. received was impacted by any temperature excursion; correct?

A.   Yes.

(Deposition Exhibit No. 12 marked.)

Q.   I'm now introducing Plaintiff D Exhibit 12 which is Bates labeled KRAFT0000019.  And, Ms. Kraft, this is another document that you produced.  It is a letter from Essentia which is relating to your child S.K. being sent from Essentia Health.  Do you see that?

A.   Yes.

Q.   And would you agree this is substantially identical to the previous letters that we were just reviewing concerning your other children?

A.   Yes.

Q.   And, again, second paragraph, final sentence also -- it also reads, "The storage

Page 99

temperatures outside the recommended range do not cause the flu vaccines to be harmful but they may reduce their effectiveness."  Do you see that?

A.   Yes.

Q.   And, again, it doesn't actually state that the vaccines that S.K. received were actually subject to a temperature excursion; correct?  Just that it may have been?

A.   Yes.

Q.   And have you ever been told that the specific vaccines that S.K. received did, in fact, experience a temperature excursion?

A.   I don't know.

Q.   Were you aware of any other information in your possession that suggests that the specific vaccines that S.K. received did, in fact, experience a temperature excursion?

A.   I don't know.

Q.   You don't have any other -- do you have any additional information regarding that is my question.

A.   Not that I'm aware of.

Q.   Thank you.  Do you have any other information or evidence that would support the

Page 100

allegations that any of the vaccines you received or your children received did not work as intended?

A. Not that I'm aware of.

MR. RIDDLE: I have no additional questions at this time. Thank you for your time today, Ms. Kraft.

EXAMINATION

BY MR. MARTY:

Q. I have a really quick follow-up. Jessica, Mr. Riddle asked you some questions earlier in the deposition about evidence that you have supporting various legal claims that have been made. Are you relying on your lawyers to bring the appropriate legal claims based on the allegation and the evidence?

A. Yes.

MR. MARTY: Thank you.

MR. RIDDLE: No further follow-up for me.

THE COURT REPORTER: Can I just have you say for the record if you're ordering?

MR. MARTY: Yep. And we'll read and sign. And, yes, just pdf and exhibits for us,

Page 101

please.

MR. RIDDLE:  Same here.  Thank you.

(Whereupon, the remote deposition of

JESSICA KRAFT was concluded at 12:50 p.m.)

Page 102

REPORTER'S CERTIFICATE

STATE OF NORTH DAKOTA )
                      ) ss.
COUNTY OF CASS        )

I hereby certify that I reported the deposition of JESSICA KRAFT on June 23, 2025, via Veritext Virtual Zoom, and that the witness was by me first duly sworn to tell the whole truth;

That the testimony was transcribed by me and is a true record of the testimony of the witness;

That the cost of the original has been charged to the party who noticed the deposition, and that all parties who ordered copies have been charged at the same rate for such copies;

That I am not a relative or employee or attorney or counsel of any of the parties, or a relative or employee of such attorney or counsel;

That I am not financially interested in the action and have no contract with the parties, attorneys, or persons with an interest in the action that affects or has a substantial tendency to affect my impartiality;

That the right to read and sign the deposition transcript by the witness was reserved.

Witness my hand this 14th day of July, 2025.

_Deanna Sager_

Deanna Sager - R.P.R., R.M.R.
Notary Public
Cass County, North Dakota
My commission expires July 28, 2026.

Page 103

Brian O. Marty, Esquire

marty@sagwlaw.com

July 14, 2025

RE:   Kraft, Jessica, Et Al.  v. Essentia Health, Et Al.

6/23/2025, Jessica Kraft (#7425722)

The above-referenced transcript is available for review.

Within the applicable timeframe, the witness should read the testimony to verify its accuracy. If there are any changes, the witness should note those with the reason, on the attached Errata Sheet.

The witness should sign the Acknowledgment of Deponent and Errata and return to the deposing attorney. Copies should be sent to all counsel, and to Veritext at erratas-cs@veritext.com

Return completed errata within 30 days from receipt of testimony.

If the witness fails to do so within the time allotted, the transcript may be used as if signed.

Yours,

Veritext Legal Solutions

Page 104

Kraft, Jessica, Et Al.  v. Essentia Health, Et Al.

Jessica Kraft (#7425722)

E R R A T A  S H E E T

PAGE_____ LINE_____ CHANGE_____

_____

REASON_____

PAGE_____ LINE_____ CHANGE_____

_____

REASON_____

PAGE_____ LINE_____ CHANGE_____

_____

REASON_____

PAGE_____ LINE_____ CHANGE_____

_____

REASON_____

PAGE_____ LINE_____ CHANGE_____

_____

REASON_____

PAGE_____ LINE_____ CHANGE_____

_____

REASON_____

_____    _____

Jessica Kraft                                        Date

Veritext Legal Solutions

800-567-8658                                        973-410-4098

Page 105

Kraft, Jessica, Et Al.  v. Essentia Health, Et Al.

Jessica Kraft (#7425722)

ACKNOWLEDGEMENT OF DEPONENT

I, Jessica Kraft, do hereby declare that I have read the foregoing transcript, I have made any corrections, additions, or changes I deemed necessary as noted above to be appended hereto, and that the same is a true, correct and complete transcript of the testimony given by me.

_____    _____

Jessica Kraft                                Date

*If notary is required

SUBSCRIBED AND SWORN TO BEFORE ME THIS

_____ DAY OF _____, 20____.



_____

NOTARY PUBLIC

**[& - 3]**

| & | | | |
|---|---|---|---|

**&**  2:3

**0**

**00121**  1:3
**09**  95:9

**1**

**1**  3:9 7:24 8:2
  10:19
**10**  4:5 82:4
  95:4,6
**10/9**  24:25
  47:20
**100**  2:4,9 3:5
**10:01**  1:24 5:3
**10:58**  40:10
**11**  4:7 45:19,22
  82:4 97:4,6
**11/7/17**  24:22
  24:24
**112**  31:3 34:20
**116**  62:20,23
  63:8 64:3
  75:24
**11:08**  40:11
**12**  4:9 32:1
  45:19,22 70:20
  98:11,13
**12.67**  35:6
**12/18**  54:6,13
  54:17 55:7
**12:06**  77:20

**12:14**  77:21
**12:19**  81:7
**12:20**  81:8
**12:26**  84:25
**12:27**  85:1
**12:50**  101:4
**14**  75:20 103:3
**14th**  102:17
**15**  20:5
**1500**  2:9
**16**  23:19
**17**  23:19
**17953**  102:20
**18**  29:12 31:16
  41:14 51:4,18
  55:1 78:4

**2**

**2**  3:11 21:16,18
  22:14 33:19,24
  41:9 44:19
  57:10 62:6,7
  63:16,17 67:14
  84:20 85:3
**2/7**  25:10 29:12
  31:16
**20**  105:15
**2009**  82:18
**2012**  23:1
**2017**  21:7
  58:20 59:10,22
  59:25 61:15,19
  61:22 62:9
  64:12,17 65:21

66:17,24 67:5
67:11 71:22
74:3 75:17,21
76:4
**2018**  24:2,3,11
  24:25 25:10
  30:18 31:21
  33:24 35:13
  40:14,16,22
  41:13,15 42:6
  42:7,10,16,24
  44:1,8,12,15
  45:14,24 46:21
  47:20 48:13,23
  49:12,20 50:9
  50:16,20,25
  67:17 70:21
  72:25 73:9
  78:4,6 80:9,14
  82:3,23 83:12
  84:3,11,17
  85:8 86:3,17
  87:8,13,18
  88:17,23 89:3
**2018-2019**
  44:15 46:24
  80:17 81:13
  87:22 88:1
**2019**  41:14
  51:4,15,18,23
  52:1,7,10,21,24
  53:2,7,10 54:6
  54:13,17 55:1
  55:7,20 56:8

56:17,24 57:7
78:4,6 80:9,14
80:18 82:14,23
84:3,11,17
**2019-2020**
  53:11 55:17
  81:14
**2020**  21:7
  80:18 82:23
  83:13 90:4
  91:6 97:8
**2021**  32:12
**2025**  1:22
  102:4,17 103:3
**2026**  102:23
**21**  3:11 23:18
  23:20 31:20
  57:11
**22**  45:3
**23**  1:22 45:4
  102:4
**231**  62:23
  63:11
**25**  35:5
**27**  46:9 48:5
  88:22
**28**  102:23
**29**  3:15
**2913**  7:11

**3**

**3**  3:15 29:15,17
  30:1,4 62:6,20
  63:5,23

**[30 - administered]** Page 2

**30** 18:18 44:22 44:23 97:8 103:16
**32** 3:17
**33** 3:18
**3:20** 1:3

**4**

**4** 3:17 22:20 32:8,10 62:7 62:20 63:5,23 67:17 70:21
**4/30/20** 4:8,10
**4/4/2018** 24:23
**4/7/2020** 4:4,6
**47** 3:19

**5**

**5** 3:5,18 33:3,5 34:2,15 45:18 48:6 55:5 62:1 70:19 75:20 82:2
**5015** 2:4
**50265** 2:5
**53** 3:21 46:9 48:5 88:22
**55** 34:20
**55402** 2:9
**57** 71:1

**6**

**6** 3:19 22:23 34:2,16 47:8 47:10

**6/23/2025** 103:5
**64** 62:20,24 63:8 64:3

**7**

**7** 3:9,21 24:2 30:18 31:21 35:13 40:16 53:13,15 58:20 59:10,22,25 62:9 64:12,17 74:3 75:17,21 76:4 88:7 89:20 90:4 91:4
**7425722** 103:5 104:2 105:2
**78641** 7:12

**8**

**8** 3:23 88:3,6
**80** 46:6 48:11 88:25
**88** 3:23
**89** 4:3

**9**

**9** 4:3 24:3,11 33:19 41:13,15 42:9 45:23 48:13 78:3 82:3 85:8 88:17 89:15,17

**95** 4:5
**97** 4:7
**98** 4:9

**a**

**a.b.** 1:10
**a.m.** 1:24 5:3 40:10,11
**a.s.** 1:5
**above** 103:6 105:7
**account** 46:5 82:7,16
**accuracy** 103:9
**accurate** 22:18
**achieve** 11:15
**acknowledge** 71:20
**acknowledge...** 105:3
**acknowledg...** 103:12
**act** 50:7
**action** 10:13 15:16,18 18:14 19:7 102:13,13
**actions** 37:7,16 37:21 38:6 39:7,17,25 49:10,17 50:1 50:5,12,15 56:13 57:3 66:22 73:5,19 84:15

**activity** 67:10 73:21
**acts** 38:7 39:8 39:11,18 40:3 56:23 57:6 67:4 73:15 77:8,14 84:9
**actual** 62:7
**actually** 26:3 26:24 29:23 56:3 62:7 64:7 69:7 76:3 92:22 93:4,8 97:23,25 98:4 98:7 99:5,6
**addition** 18:4 34:9 62:16 65:2 67:15
**additional** 91:13 99:21 100:5
**additions** 105:6
**address** 7:7,8,9
**addressed** 20:15
**addresses** 22:16
**adjust** 31:15
**adjusted** 88:25
**adjustments** 48:10
**administered** 23:22 24:2,3 24:23,24 25:10

**[administered - asking]**                                                              Page 3

29:3 38:17,25
39:5 44:4,25
45:8 52:24
54:6 60:9
61:14,19 70:9
74:3 75:14
78:3 79:13
85:12 87:12
**administering**
35:25 36:13,20
56:7 72:24
80:8 84:2,10
**administration**
23:24 34:5,19
34:21 35:3
38:3 45:25
46:10 55:8
62:12 66:23
74:25
**advice** 85:18
**affect** 102:14
**affected** 55:21
55:25 93:12
96:3,4
**affects** 102:14
**ago** 8:21,22
**agree** 88:19
95:14 97:13
98:19
**agreed** 23:14
69:3
**agreement** 20:7
20:16 32:16

**ah** 46:13
**ahead** 13:12
15:5 35:22
37:11 73:2
77:4 85:22
89:23 94:12
**ai** 34:25 46:14
64:6 71:7
**al** 103:4,4
104:1,1 105:1
105:1
**allegation**
96:25 100:15
**allegations**
14:16 36:10
56:14,21,22
57:4,13 65:19
66:15,21 67:3
67:9 72:22
73:6,14,20
76:25 77:7,13
83:25 84:8,14
100:1
**alleged** 13:9
36:19
**alleging** 36:8
38:15,22 40:3
85:8
**allotted** 103:19
**amanda** 1:8
**amount** 31:10
54:20 64:7
71:1

**amy** 1:6
**anderson** 2:3
**anne** 1:5
**answer** 6:12,17
37:12 49:15
56:11 57:1
65:1 66:1,1,1,3
66:4,5
**answering** 23:4
**anybody** 9:8
32:25 51:21
78:16
**apologize** 29:25
88:5,8
**app** 89:22
**appear** 34:3
35:5 48:25
54:5 63:5
**appears** 24:21
30:8,20 31:15
31:20 34:8
35:1 46:8,12
47:13,22 48:11
53:24 57:16
62:11,20 64:3
70:20 78:1
82:5 84:21
85:3,7 88:11
88:21,24
**appended**
105:7
**applicable**
103:8

**appointment**
25:22,23 26:3
40:16 42:9,11
42:12 51:18
52:1 58:18,19
58:20,21,21,22
59:24 69:7,8
72:15 79:11,13
83:22
**appointments**
11:23 12:3,7,8
58:23 61:6
**appropriate**
100:15
**approximately**
33:22
**april** 67:17
70:21 72:24
73:9 90:4 91:4
97:8
**arrive** 67:24
**art** 23:7,8
**artist** 23:5
**aside** 9:9 14:17
19:16 51:21
94:19
**asked** 14:3,24
18:3 66:11
83:5 100:11
**asking** 9:3,17
9:18 15:17
19:4 22:15,20
36:11 39:24
43:10 57:22

**[asking - brooke]**

63:21 76:18 81:16,21 93:24 94:7

**assist** 51:22

**associated** 35:12 48:19 64:11,16 65:10 71:13,17,21,25 76:3 82:7,17 82:25

**assume** 6:17

**attached** 103:11

**attending** 16:19

**attention** 23:18 41:8 44:22 45:19

**attested** 32:23

**attorney** 18:20 19:2,6 65:25 102:11,11 103:13

**attorneys** 2:4,8 19:17 20:7,12 20:18,22 22:11 102:13

**authority** 67:18

**available** 103:6

**aware** 18:9,24 38:3 39:2,11 39:17,24 45:5 47:4 49:17 50:1,5,12

70:18 73:4,12 75:19 76:13 90:11,16,19,23 92:11 99:15,23 100:4

**b**

**b** 1:15 3:7 4:1 33:16

**back** 12:8,10 12:12 31:19 32:12 37:15 40:14,16 41:8 44:19 55:4 57:10,11 62:1 63:3 66:8,12 67:14 70:19 75:20 81:9 84:20 85:3 94:5

**bad** 51:7 85:17

**bailey** 1:6

**balance** 31:7

**bart** 19:25

**base** 59:6

**based** 26:11 68:1 93:12 94:1,10,17 96:22 100:15

**basis** 83:1,16 85:14 86:7

**bassford** 2:8

**bassford.com** 2:10

**bates** 3:15,18 3:20,22,24 4:4 4:6,8,10 29:19 30:5 33:8 47:12 53:17 88:9 89:19 95:8 97:6 98:13

**beaton** 1:7

**beginning** 19:1 25:9

**begins** 23:18

**behalf** 1:11 10:7,25 22:7 57:24

**believe** 11:7,11 15:1 32:15 34:5 55:3 64:14 68:20 81:11 83:11

**benefit** 35:24 36:4 37:4

**benefited** 36:10 36:20 56:7 65:20 66:16 72:23 84:1

**benefiting** 36:12,17

**benefits** 3:22 30:9 32:1 53:21

**berg** 1:10

**beth** 19:25

**better** 31:14 95:1

**bill** 88:15

**bit** 11:19 12:20 17:18 26:15 29:22 31:1,14

**blown** 79:8

**blue** 19:11 21:5 21:5

**bodies** 12:24,25

**body** 12:23

**bottom** 22:4 30:12 45:3

**breach** 11:17 12:25 14:20,22 15:2 17:16

**break** 6:9,12 40:7,13

**breakdown** 54:9

**breaks** 6:8

**brian** 2:5 9:2,9 19:16 20:1 103:1

**briddle** 2:10

**briefly** 22:15 41:11 55:4 67:14 82:2,5 89:24

**bring** 100:14

**bringing** 10:24

**brooke** 9:15 19:25

bryce 2:10 81:4

**c**

c 2:1 3:1 5:1
c.j.f. 1:9
c.r.f. 1:9
called 19:8
calls 15:4 35:21
  49:13 56:9
  65:22 73:1
  77:3 84:4
caption 10:20
care 27:19 68:7
  68:10
case 1:2 10:20
  18:6 20:13
  32:12 41:24
  51:7 59:4
  78:15 85:17
cass 102:3,22
catch 6:4
cause 5:6 92:17
  95:23 97:19
  99:2
cdc 68:20
cdc's 68:25
certain 68:6
  92:14
certificate
  102:1
certified 18:13
certify 18:10
  102:4

change 21:6
  104:4,7,10,13
  104:16,19
changes 103:10
  105:6
characterizati...
  88:19 95:14
charge 31:3
  34:20 35:6,6
  46:6,9,10 48:5
  49:1 62:21
  63:8,8,11 64:4
  75:25 88:22
charged 102:8
  102:9
charges 46:5
  48:4 70:25
  71:4 82:7,16
chart 89:22
checkup 63:12
chicago 9:15
  19:25
child 24:21
  61:8 79:7 97:8
  98:16
child's 72:11
  72:12
children 9:23
  9:25 10:12,25
  11:8,13 12:13
  15:8,14,19
  20:24 22:8
  24:14 58:10
  59:3 68:3,5,17

84:21 85:6
  86:8 98:22
  100:2
children's
  12:24 21:11
  89:2
choose 11:5
chose 11:7
chronological
  22:24
circumstances
  19:5
claim 3:21
  53:21,24
claiming 33:14
  65:16 76:11,22
claims 16:2,8
  16:24 50:2,6
  100:13,15
clarifying 6:15
class 9:12
  10:13 15:10,13
  15:16,18,18,24
  16:12,12 18:10
  18:13,14 19:7
client 16:25
close 13:20
column 30:13
  30:21 31:2,10
  33:16,20 34:1
  34:2,19,25
  45:24 46:4,8
  46:13,14 48:16
  54:3 62:18,19

63:7,12,14
  64:2,6 71:1,7
  75:24 82:6,6
columns 31:5
  48:6,10 82:15
come 80:16
coming 85:20
commenced 5:3
commission
  102:23
compare 16:8
compensation
  11:16,20 12:17
  14:20 15:2
competition
  37:8,18,23
  49:11,18 50:3
  56:15 66:22
  73:7 77:1
complaint
  16:22 36:7,10
  50:2,7,14
  56:15,22 57:5
  65:19 66:15,21
  67:3,9 72:23
  73:6,14,20
  76:25 77:7,14
  84:1,9,15
complete 105:8
completed
  103:16
concern 76:14
  76:18

**[concerning - costs]**

| | | | |
|---|---|---|---|
| **concerning** | 84:10,16 86:15 | 72:1 75:17 | 54:17,21,25 |
| 28:11 43:16 | 88:22 89:8,12 | 76:8,15 80:16 | 55:9,13,14,25 |
| 52:16 60:15 | 95:11 | 87:21,25 | 56:1 57:18,24 |
| 75:3 98:21 | **consider** 39:8 | 102:13 | 62:16,22 63:9 |
| **concluded** | **consists** 15:24 | **contracted** | 63:13,16,18,20 |
| 101:4 | **constitute** 38:7 | 35:10 45:6,12 | 63:21,24 64:4 |
| **conclusion** 15:5 | 49:11 50:7 | 80:21 82:22 | 64:8,12 67:19 |
| 31:24 35:22 | 66:22 | 89:6 | 69:1 70:23 |
| 37:11 49:14 | **constituted** | **conversation** | 71:1,4,9 75:22 |
| 56:10 65:23 | 37:8,17,22 | 14:7 40:15 | 75:25 76:5 |
| 67:25 73:2 | **consumers** | **conversations** | 80:23 81:14,20 |
| 77:4 84:5 | 15:10,13,19 | 14:15 61:9 | 82:8,19 83:7,8 |
| **confidential** | **cont'd** 4:1 | **conveyed** 79:10 | 83:9,23 85:9 |
| 3:16,18,20,22 | **contained** | 87:16 | 86:11 89:3 |
| 3:24 4:4,6,8,10 | 32:16 | **copay** 47:5 | 90:4 92:4 |
| **confidentiality** | **contend** 23:22 | 48:18,25 49:5 | 95:24 96:4 |
| 3:17 32:11 | 37:8,17,22 | 49:8 54:14 | 98:9 99:7 |
| **connection** | 38:6 | **copayment** | 105:8 |
| 19:18 20:10 | **contending** | 48:22 | **corrections** |
| 25:4 34:20 | 39:25 | **copies** 102:9,9 | 105:6 |
| 35:19 37:8,18 | **contention** | 103:14 | **correctly** 14:13 |
| 37:23 38:7 | 50:13 94:20 | **corner** 10:19 | **corroborate** |
| 39:8,12,18 | **continuing** | 53:20 54:20 | 13:9 |
| 40:1 46:19 | 37:20 40:12 | **correct** 8:13 | **cost** 47:3 91:13 |
| 47:5 48:12 | 66:19 77:22 | 9:20 12:4,18 | 102:8 |
| 49:11,19 50:8 | 81:9 85:2 | 19:2,3 23:1 | **costs** 18:2 |
| 50:15 54:16,25 | 94:14 | 24:12,16,25 | 20:10 21:11 |
| 55:19 56:16,23 | **contract** 11:18 | 25:5 30:10,18 | 35:12 46:19,25 |
| 57:6,13 62:21 | 12:25 23:11,13 | 30:24 31:7,17 | 55:18 64:11,15 |
| 66:23 67:4,10 | 29:12,13 36:25 | 31:22 32:6,17 | 64:20 65:10,15 |
| 68:14 71:8 | 42:1 44:15,23 | 33:1 34:6,11 | 65:15 71:12,17 |
| 73:7,15,22 | 46:23 53:10 | 34:13 35:3,8 | 71:21,25 76:3 |
| 77:1,8,15 79:1 | 55:17 61:22 | 47:24 48:2,7 | 76:8 82:11,19 |
| 82:11 83:1 | 64:20 70:16 | 48:13,19 49:6 | 82:24 89:7 |

counsel 32:15 102:11,11 103:14
counseling 13:4
county 102:3 102:22
couple 17:4
court 1:1 5:22 6:4 18:9 37:16 66:10,13 80:25 94:6 100:21
covered 20:25 21:11,13 48:11 54:15
cross 21:5
cs 103:15
cs7425722 1:21
curious 15:3
cv 1:3

**d**

d 1:15 2:10 4:2 5:1 8:2 21:18 29:16 32:10 33:5 47:10 53:15 88:6 95:6 97:5 98:12
d.b. 1:6
dakota 1:1 7:19 16:1 21:5 92:13 102:2,22
damaged 35:14 36:22 47:1

55:19 64:23 72:4,19
damages 16:5 17:14,17,20 18:3 24:7,16 25:4 76:10,20 83:1,16 89:8
date 1:22 23:23 30:17 33:21,22 34:5,8 35:7 43:24 45:1,23 47:19 55:9,12 61:13 62:8,13 70:7,21 75:9 91:5,7,9 96:7 96:13 104:24 105:12
dated 90:4 97:8
dates 28:24 30:14 33:13 52:20 57:18 80:3 87:6
daughter 73:8 73:16,22 77:23
day 46:5 102:17 105:15
days 103:16
deanna 1:25 94:4 102:21
december 41:14 51:3,4 51:18 55:1 78:4 82:14

deceptive 38:7 50:7 56:23 67:4 73:15 77:8 84:9
decide 28:17 58:4 59:14 60:19 67:21 69:25 74:7 78:9 91:16
decided 25:11 26:1 41:16 42:12 51:5
deciding 28:1 28:21 42:24 43:2 44:12 52:10 53:2 60:5 69:18 70:5 75:6,13 78:13 79:16,20 86:7
decision 11:2,4 25:14 42:5,10 51:14,19,22 58:1 67:18 68:15 69:5 74:4,6,11 78:5 78:8,17 85:11 85:13,15,20
decisions 10:7 57:24
declare 105:4
deductible 54:14

deemed 105:6
defendant 2:7 3:9,13 8:2 21:20
defendants 1:17
definitively 92:23
depend 51:11
depends 51:10 51:12
depo 8:25
deponent 103:13 105:3
deposing 103:13
deposition 1:18 3:10 5:2,13 6:21 7:4,24 8:3 8:16,24 16:19 21:16 29:15 32:8,25 33:3 47:8 53:13 88:3 89:15 95:4 97:4 98:11 100:12 101:3 102:4,8 102:16
des 2:5 20:1
describe 12:20 16:14 17:19 49:9 82:21 89:8

Page 8

| | | | |
|---|---|---|---|
| **described**  29:5 80:11 89:12 | **discussing** 32:23 34:6 40:13 57:12 77:25 | **document**  8:7 21:22,25 22:11 23:19 29:18,20 29:24 30:1,6 32:13,17 33:7 34:18 47:11,14 49:1,3,7 53:16 53:18 55:2,7 55:13,14 64:13 88:8 89:18,20 95:7 97:7,14 98:14 | 58:5,14,16 59:9,15,18,19 59:22,25 60:2 60:5,8,12,15,15 60:18,20,24 61:4,11,14,18 61:21,23 63:23 64:11,16,21 65:10,21 66:16 66:23 67:5,11 67:15 |
| **description**  3:8 4:2 29:2 30:14 44:3 47:23 48:1 52:23 61:17 75:12 80:7 | **disease**  44:24 61:23 64:21 70:16 72:2 75:18 76:9,15 | | |
| **descriptions** 44:10 87:10,11 | **diseases**  45:6 58:11 68:17 76:13 | | **duly**  5:5 102:5 |
| **deselect**  64:1 | **dispute**  71:11 71:16 | | **duration**  7:4 |
| **designed**  45:1,8 64:22 72:3 76:9 | **distress**  11:17 12:18 13:5 17:16 35:17 64:24 65:2 72:6 76:12 83:17 89:10 | **documentation** 40:25 42:20 50:24 | **e** |
| | | | **e**  2:1,1 3:1,2,2,7 4:1 5:1,1 104:3 104:3,3 |
| **diagnosed**  45:2 81:13,17,23 | | **documents** 8:17,19 11:23 16:16,18,19 17:8,10 32:20 32:25 | **earlier**  100:11 |
| **diagnosis**  45:2 83:6 | | | **earn**  23:12 |
| **different**  29:24 30:1 33:23 63:15 | **distresses**  13:9 | | **ease**  34:16 |
| | **distribution** 92:12 | **doe**  1:15,15 8:12,13 | **effectiveness** 92:19 95:24 97:21 99:3 |
| **difficult**  5:22 6:3 | **distributor** 1:16 | **dollar**  31:6 46:14 54:14,14 | |
| **difficulties** 81:12 | **distributors** 8:13 | **dollars**  35:2 89:2 | **eh052465**  3:18 33:8 |
| **direct**  17:6 23:17 44:19,22 92:9 | **district**  1:1,1 | **dose**  98:8 | **eight**  33:23 |
| | **doctor**  25:16,18 25:20 26:20 58:7 68:1 72:16 81:18,21 83:8 | **doses**  93:4,8 98:4 | **either**  37:4 44:11 78:18 79:17,20,25 80:4,14,17 81:13,24 82:23 84:3,11,17 89:6 |
| **directed**  3:14 21:21 | | **dr**  13:23 | |
| **discuss**  27:15 85:6 | | **drive**  2:4 7:11 72:15 | |
| **discussed**  31:25 41:10 85:4 | **doctors**  26:10 26:13 59:6 | **dtap**  24:21 57:17,21 58:2 | |

**[el - expiration]**                                                    Page 9

| | | | |
|---|---|---|---|
| **el** 1:7 | **errata** 103:11 | 84:1,9,15 | **excuse** 34:1 |
| **elizabeth** 1:7 | 103:13,16 | 85:19 87:16 | 41:21 42:22 |
| **em.l.** 1:7 | **erratas** 103:15 | 88:11,16 89:22 | 54:4 62:19,19 |
| **email** 81:5 | **esquire** 103:1 | 91:12 97:10 | 63:15 82:6 |
| **emotional** | **essentia** 1:14 | 98:15,16 103:4 | **exhibit** 3:8,9,11 |
| 11:17 12:18 | 1:15 2:7 3:9,13 | 104:1 105:1 | 3:15,17,18,19 |
| 13:5 17:15 | 3:15,19,23 4:3 | **essentially** | 3:21,23 4:2,3,5 |
| 35:17 64:24 | 4:5,7,9 8:3,11 | 95:17 | 4:7,9 7:24 8:2 |
| 65:2 72:6 | 10:14 12:11 | **estimate** 18:16 | 10:19 21:16,18 |
| 76:12 83:17 | 16:3,6 18:25 | 18:18 20:5 | 29:15,17 30:1 |
| 89:10 | 21:21 27:3,7 | **et** 103:4,4 | 30:4 32:8,10 |
| **employed** 23:5 | 27:22 29:7 | 104:1,1 105:1 | 33:3,5 41:9 |
| **employee** | 33:7 35:18,24 | 105:1 | 44:19 45:18 |
| 102:10,11 | 36:5,9,12,12,20 | **evidence** 17:6,6 | 47:8,10 48:6 |
| **employment** | 37:4,7,17,22 | 96:24 99:25 | 53:13,15 55:5 |
| 22:24 23:3 | 38:2,6,12,15 | 100:12,16 | 57:10 62:1 |
| **encounter** 63:6 | 39:3,7,18,25 | **exact** 58:22 | 67:14 70:19 |
| **ended** 19:6 | 40:18 41:3 | 79:2 | 75:20 82:2 |
| **engaged** 50:3 | 42:17 44:6 | **exactly** 11:9 | 84:20 85:3 |
| 50:14 56:15,23 | 45:21 47:3,14 | 17:19 23:12 | 88:3,6,7 89:15 |
| 57:5 66:21 | 49:10,18 50:1 | 68:4,12 78:25 | 89:17 95:4,6 |
| 67:4,10 73:7 | 50:3,6,13,14,20 | **examination** | 97:4,6 98:11 |
| 73:13,14,21 | 52:2,5 53:2,5 | 3:5,5 5:7 100:8 | 98:13 |
| 77:1,8,14 84:9 | 55:6,12 56:7 | **exchanged** 20:8 | **exhibits** 100:25 |
| 84:15 | 56:14,15,21,22 | **excursion** | **expenses** 32:5 |
| **enriched** 35:19 | 57:4,5 59:13 | 18:24 23:23 | **experience** 79:8 |
| 36:9 | 59:18 60:1 | 33:15 56:4 | 99:12,17 |
| **entail** 23:6 | 65:8,20 66:15 | 90:8,13 91:18 | **experienced** |
| **enter** 7:2 | 66:21 67:4,10 | 92:24 93:1,5,9 | 93:5 98:5 |
| **enters** 7:3 | 68:24 69:11 | 94:22 95:13 | **expiration** |
| **entitled** 10:6 | 70:12 72:23 | 96:10,18,22 | 28:24 43:24 |
| 57:23 | 73:5,6,13,14,21 | 97:2,11,25 | 52:20 61:13 |
| **entries** 33:23 | 74:15,15 77:1 | 98:5,9 99:7,13 | 70:7 75:9 80:3 |
| 88:17 | 77:8,14 80:13 | 99:18 | 87:6 |

**[expires - geographic]**

expires  102:23
explain  14:21
  14:23 25:10
  27:5 35:13,18
  41:16 46:25
  51:4 55:18
  56:6 64:22
  72:3 76:10
  78:20 82:25
explaining
  79:10
explanation
  3:22 30:9 32:1
  53:21

**f**

f  33:20
fact  29:6 32:23
  53:5 64:15
  70:12 80:12
  82:23 83:12
  87:16 96:3,9
  96:17,21 97:1
  99:12,17
facts  65:18
  66:14,20 67:2
  67:8 72:21
  73:12 76:24
  77:6,12 83:24
  84:7,13 94:19
fails  103:18
fair  31:24
fairly  93:23
  94:7

far  29:5 48:16
  54:8,19 63:4
fargo  7:19,20
  92:13
fauske  1:8
february  24:2
  30:18 31:21
  33:24 35:13
  40:14,16
fee  20:7,15
feel  15:11
fees  20:10
fifth  2:9
filed  14:10
  32:12
final  78:1 97:18
  98:24
financial  17:17
  17:19 18:3
financially
  102:12
finished  77:25
first  5:5 18:20
  19:22 40:7
  41:13,15 47:18
  78:3 90:6,10
  90:18,22 102:5
five  7:16
flu  24:24 42:5
  42:13,16,18,23
  43:1,2,15,16,19
  43:22,25,25
  44:4,7,10,12,14
  44:15 45:13,24

46:20,24 47:6
48:2,12,19,22
49:12,20 50:8
50:15,20,21,25
51:2,5,7,7,8,15
51:22 52:1,3,6
52:10,13,16,21
53:2,6,9,11
54:25 55:8,17
55:20 56:16,24
57:6,18 78:17
80:14,17,18,21
81:19,22,23,24
82:3,8,15 83:2
83:3 84:2,10
84:16 85:12,24
86:6,8 88:1,18
97:19 99:2
follow  5:16
  61:10 68:25
  100:10,19
follows  5:3,6
foregoing
  105:5
form  35:21
  37:5,10 49:13
  56:9 60:5
  65:22 73:1
  77:3 84:4
  94:11
formal  83:6,8
formally  81:17
former  92:12

forward  32:20
  34:16 96:8
foundation
  13:11
four  30:20
fraudulent
  39:8,12,18
  40:1,4 50:14
  57:5 67:10
  73:21 77:14
  84:15
freelance  23:7
friend  13:18,19
  13:20
front  21:23
froze  80:25
  84:22,23
frozen  81:5
fulfilling  36:25
full  79:8
further  100:19
future  76:15,20

**g**

g  5:1
gathering
  16:18
general  5:16
  20:6 63:11
  65:14
generally  42:8
  51:8 86:5
geographic
  15:23

| | | | |
|---|---|---|---|
| **gestures** 5:20 | 21:17 22:3 | **happy** 31:15 | 29:11,13 31:22 |
| **getting** 12:3 | 29:9,16,22,23 | **harmful** 92:18 | 32:2,6 34:4,10 |
| 19:6 25:13 | 30:3 31:1,19 | 95:23 97:20 | 34:18 35:11,12 |
| 26:6,17,20,21 | 32:9,19,20 | 99:2 | 37:9,19,24 |
| 41:18,22,24 | 33:4 34:15,17 | **head** 5:20,21 | 38:8 39:9,13 |
| 51:6,7 58:11 | 34:17 40:15 | 91:25 | 39:19 40:2,13 |
| 85:16,17,23 | 41:8,14 44:18 | **health** 1:14,14 | 40:21 41:4,11 |
| **give** 40:24 79:3 | 44:21 46:3 | 1:15 2:7 3:15 | 57:18 67:16 |
| 95:16 | 50:24 54:5 | 3:19,23 4:3,5,7 | 69:6,12,15,17 |
| **given** 82:21 | 55:4 57:10,14 | 4:9 8:11,12 | 69:21,22,25 |
| 105:9 | 57:20,21 58:12 | 20:25 21:4,7 | 70:4,8,13,15,17 |
| **giving** 16:17 | 58:14 62:1 | 27:19 65:16 | 70:22 71:8,13 |
| 26:18 35:19 | 63:3 67:14 | 68:7,10 88:11 | 71:18,22 72:2 |
| 40:1 | 70:19 75:20 | 97:10 98:17 | 72:2,24 73:8 |
| **go** 5:15 6:12 | 81:5 82:5 | 103:4 104:1 | 73:16,22 |
| 12:8,10,12 | 83:21 84:20 | 105:1 | **hereto** 105:7 |
| 13:12 15:5 | 85:3 89:23 | **health's** 3:9,13 | **hib** 24:23 57:18 |
| 20:20,21 22:14 | 95:8 96:8 | 8:3 21:21 | 74:2,5,8,11,14 |
| 34:16 35:22 | **good** 5:9 40:7,9 | **hear** 37:14 65:1 | 74:16,20,22 |
| 37:11 40:8 | 77:19 | 81:1 | 75:2,5,10,13,16 |
| 51:12 57:21 | **goplerud** 2:3 | **hearing** 18:12 | 75:18,21 76:4 |
| 58:15 61:7 | **grand** 2:4 | **hearings** 18:9 | 76:9,11 77:2,9 |
| 62:1 63:3 64:6 | **guardian** 10:4 | **help** 69:25 | 77:15,25 |
| 72:14 73:2 | 10:16 | 85:16 | **highlight** 34:15 |
| 77:4,19 78:22 | **guessing** 94:16 | **hep** 24:1 25:11 | **highlighted** |
| 81:9 84:24 | **guys** 40:7 | 25:15 67:22,22 | 62:23 82:3,15 |
| 85:3,22 89:23 | **h** | 67:23 68:15 | **highlighting** |
| 94:12 | | **hepatites** 24:22 | 33:19 |
| **goes** 23:19 | **h** 3:7 4:1 104:3 | **hepatitis** 25:9 | **highly** 3:18 |
| 35:17 | **hand** 30:13 | 25:13,23 26:2 | 79:7 |
| **going** 5:15,18 | 102:17 | 26:6,7,9,21 | **histories** 22:24 |
| 6:8,17 7:25 | **happen** 81:10 | 27:2,9,16,19,23 | **home** 7:7,8,9 |
| 11:22 12:3,6 | **happened** 81:4 | 28:1,3,4,11,18 | 7:13,22 23:1 |
| 12:12 16:18,20 | | 28:22,25 29:8 | |

**hope** 81:10
**hoping** 11:14
 88:4
**hospital** 36:23
**hour** 6:9,10
 32:21
**hours** 9:5 18:19
**huh** 5:21,21
 15:17
**husband** 13:14

**i**

**idea** 15:23 16:2
 16:5 56:2 59:5
 60:14
**identical** 48:5
 98:20
**identified** 24:1
 45:17 48:6
**identifies** 62:7
 62:8
**identify** 23:21
 48:25 56:13
 57:3 73:19
**identity** 19:20
**illinois** 9:16
**immunization**
 31:21 34:4
 45:25 62:12,22
 63:6,6,23 68:2
 72:17
**immunizations**
 21:12 61:7
 62:16 63:17

64:2
**impacted** 56:4
 90:8,12 91:17
 93:8 94:1,10
 94:17,21 95:12
 98:8
**impartiality**
 102:14
**impression**
 79:4,5
**improperly**
 38:24
**include** 49:18
**including** 17:15
**income** 23:12
**incorrectly**
 11:12
**incurred** 17:20
 20:9
**indicates** 17:6
**indication**
 82:22 83:10,11
 87:2 89:5
**individually**
 1:3,5,7,8,10,11
 3:12 10:21
**individuals**
 8:11 13:13
 15:21 19:21
 20:3
**infection** 29:12
 61:22 64:21
 70:16 75:17

**influence** 78:16
**influenza** 24:2
 24:11 41:12,15
 41:17,19,21,22
 41:24 42:1,2
 44:16 45:13
 46:24 51:7
 53:10 55:17
 58:11 68:18
 78:2,6,11,15,24
 79:6,8,16,19,21
 79:24 80:1,4,5
 80:8,17 81:13
 82:12,17,22
 83:7,12 85:7
 85:17,17,24
 86:2,12,13,16
 86:21,24 87:3
 87:7,11,17,21
 87:25 88:1,23
 89:6 92:7
**information**
 16:17 22:10
 25:17,20,21
 32:22,24 58:6
 58:8 59:12
 83:16 85:19
 91:22 99:15,21
 99:25
**informed** 96:13
 96:15
**injected** 11:13
 12:23,23,24
 15:7,21 17:2

35:16 36:23
**injecting** 37:1
**innovis** 1:14
 8:12
**insurance**
 20:25 21:4
 46:13 47:2
 48:11 54:15
 65:3,5,7,9,12
 65:13,16 88:24
**insurers** 21:7
**intended** 61:23
 70:17 75:18
 76:16 100:3
**interest** 102:13
**interested**
 102:12
**interrogatories**
 3:13 21:21
**interrogatory**
 22:14,20,23
 23:4,18,20
 31:19,20 41:10
 44:20,22,23
 57:11
**introduce** 8:1
 21:17 29:16,23
 29:25 32:9
 33:4
**introduced**
 41:9 55:5 62:2
**introducing**
 47:9 53:14
 88:6 89:16

95:5 97:5 98:12

**invoice** 3:23

**involved** 11:3,6 14:25 19:13

**involvement** 14:12

**iowa** 2:5

**issue** 45:21 57:17 92:11

**issues** 17:14 76:20

**it'll** 7:16

**j**

**jennifer** 1:9

**jessica** 1:3,10 1:19 3:4,10,12 4:4 5:3,4,11 8:3,10 9:17 10:20 15:5 21:20 33:17 35:22 47:23 53:25 73:2 81:1 94:12 100:11 101:4 102:4 103:4,5 104:1,2,24 105:1,2,4,12

**job** 1:21

**john** 1:15,15 8:12,12

**julie** 13:23,23 13:24 14:16

**july** 7:16 102:17,23 103:3

**june** 1:22 102:4

**k**

**k** 34:2 45:24

**keep** 59:2

**kept** 17:2,5,7

**kind** 40:15 88:7

**knew** 38:15,23 39:3

**know** 6:10 7:2 13:1 15:13,18 16:8 17:15 18:6,12 20:23 21:10,15 22:14 22:24 25:25 26:1 27:13,17 28:10,15 29:14 31:13 37:6 38:2,23 39:1,6 39:10,14,20,21 40:3,5 42:8 43:15,21 48:21 50:4,11,18,22 51:17 52:15,18 56:12,19 57:2 57:9 58:14 61:3 64:18,25 65:9 66:2,18 67:1,7,13 68:11 69:21,23 70:3 71:19

73:3,10,18,25 75:2 77:5,11 77:17 79:10 80:21,24,24 81:16,18 84:6 84:12,19 89:24 91:9 92:2,6,8 93:6,10,14,15 93:16,17,18,19 93:20,22 94:3 94:13,14,18,23 94:24,25 95:3 96:11,12,19,23 97:3 98:7 99:14,19

**knowing** 38:9 38:11,12

**knowledge** 87:3 93:7

**kraft** 1:3,19 3:4 3:10,12 4:4 5:3 5:4,11,12 7:6 8:4,4,10 9:23 10:20 17:24 21:19,20 22:1 23:20 25:8 29:17,25 32:1 32:10 33:6,17 37:21 40:12 45:18 47:12,13 53:15,25 54:23 57:11 62:4 65:2,24 77:22 81:11 85:2

88:9 89:17,19 89:21 93:24 94:7 95:8,9 97:7 98:14 100:7 101:4 102:4 103:4,5 104:1,2,24 105:1,2,4,12

**kraft00000013** 97:6

**kraft00000085** 88:10

**kraft00000100** 47:13

**kraft0000019** 98:13

**kraft000008** 95:9

**kraft00006** 89:20

**kraft006-007** 4:4

**kraft008-009** 4:6

**kraft013** 4:8

**kraft014** 3:22

**kraft019** 4:10

**kraft085** 3:24

**kraft100** 3:16 3:20 29:19 30:5

**kraft12** 30:5

**kraft14** 53:18

**[l - looked]**

| l | label 28:4,10 | 47:12 53:17 | letters 98:20 |
|---|---|---|---|
| **l** 1:7,25 47:23 | 28:21 30:5 | 57:14,17 85:9 | **line** 104:4,7,10 |
| **l.k.** 1:4 3:12 4:6 | 43:2,8,13,15,16 | 89:19 95:8 | 104:13,16,19 |
| 10:3,21 24:21 | 43:19,19,22 | **lawyers** 8:18 | **lines** 30:21 |
| 25:2 57:15,16 | 52:12,16 53:17 | 8:20 9:18 | **list** 33:12 |
| 57:24 58:1 | 60:8,12,15,15 | 16:17 17:9 | **listed** 8:11 |
| 59:4,9,15,17,21 | 60:19 69:18,21 | 91:23 100:14 | **literature** |
| 60:6,9,20,23 | 69:25 70:4 | **leander** 6:22 | 27:15,25 42:23 |
| 61:5,14,19,22 | 74:23 75:2,6 | 7:11 | 52:9 60:4 |
| 62:3 64:16,20 | 79:20 | **learned** 90:7 | 69:14 74:19 |
| 65:10,20 66:16 | **labeled** 30:1,4 | **leaving** 89:1 | 79:15 86:19 |
| 66:24 67:5,11 | 47:12 88:9 | **led** 19:5 | **little** 11:19 |
| 67:16,18,21 | 97:6 98:13 | **left** 30:13 53:20 | 12:20 14:23 |
| 68:15 69:5,12 | **labels** 28:17 | 63:4 | 26:14 31:14 |
| 69:15,18,25 | 52:15 79:24 | **legal** 10:4 15:5 | 57:14 |
| 70:5,8,16,22 | 86:23 87:3 | 20:10 35:22 | **live** 7:17 |
| 71:8,13,17,21 | 89:19 | 37:10 49:14 | **lived** 7:15 |
| 71:25 72:4,24 | **lastly** 6:15 | 56:10 65:23 | 22:16 |
| 74:2,14 75:7 | **lavelle** 1:6 | 67:18 73:2 | **llc** 1:15 |
| 75:14,16,22 | **law** 2:4,8 49:19 | 77:4 84:5 | **located** 6:21 |
| 76:4,13 77:2,9 | **lawsuit** 8:10 | 100:13,15 | **location** 7:18 |
| 77:15,23 78:5 | 9:12,19 10:10 | 103:23 | 23:24 92:13 |
| 79:16,20,25 | 10:13,24 11:3 | **legally** 10:6 | **long** 7:15 9:4 |
| 80:4,8,16 | 11:6,15 12:2 | 57:23 | **look** 28:24 |
| 81:12 82:11,22 | 13:25 14:9,13 | **letter** 4:3,5,7,9 | 30:12 31:2 |
| 83:2 84:3,10 | 14:17,25 15:10 | 89:21,24 90:3 | 33:20 34:2,24 |
| 84:16 85:5 | 15:16,18 16:22 | 90:17,18,22,25 | 43:24 46:14 |
| 95:11 96:2,8 | 17:11,18 18:17 | 91:3,8,10,11 | 48:9 52:20 |
| 96:16,21 97:1 | 18:21 19:1,7 | 92:11,22 93:13 | 61:13 63:7 |
| 97:15 | 19:13,18 20:10 | 94:2,10,17,20 | 70:7 75:9 |
| **l.k.'s** 57:23 | 20:19 21:2 | 95:10,18 96:1 | 79:23 80:3 |
| 63:23 64:11 | 24:7,16 25:4 | 96:7,13,22 | 87:6 |
| | 29:18 33:8 | 97:9,13,23 | **looked** 28:7 |
| | 44:21 45:22 | 98:15 | 48:7 |

**[looking - morning]**

**looking** 11:23 45:20 49:1 55:6 63:1,2,4 63:22
**looks** 34:11 91:4
**lost** 88:7
**lot** 12:13
**lots** 15:8

**m**

**m.b.** 1:8
**mac** 9:15 19:8 19:10,16
**madam** 66:10
**made** 27:7,22 28:17,17 29:7 29:7 41:4 42:4 42:10 43:19 46:13 51:17,18 53:1,5,5 58:17 59:14 61:4 69:11 70:12,12 71:8 74:10 80:13,13 87:16 100:13 105:5
**maintaining** 65:15
**make** 6:16 10:6 25:14 27:3 42:17 51:13,14 52:2 57:23 59:18 60:19,23 67:18 69:5

74:15 85:25 92:11
**makes** 5:22 6:3 66:2
**making** 51:22 68:14 78:14
**manufacturers** 1:15 8:12 92:16
**marked** 3:8 4:2 7:24 8:2 21:16 21:18 29:15 32:8,10 33:3,5 47:8,9,20 53:13,15 88:3 88:6 89:15 95:4,6 97:4 98:11
**marking** 89:16
**marriages** 22:21
**married** 22:21
**marty** 2:5,6 3:5 9:9,17 13:11 15:4 19:17 35:21 37:5,10 40:9 49:13,21 50:10,17 56:9 56:18,25 57:8 65:22 66:25 67:6,12 73:1 73:11,17,24 77:3,10,16 81:1,3 84:4,18

84:23 94:4,11 100:9,18,24 103:1,2
**materials** 40:24
**mean** 11:10 12:6 26:16 38:19,21 65:5 68:12 72:10,12 83:22 89:13 93:17,18
**means** 15:3,6 36:17
**medical** 10:7 32:21 53:24 54:4 59:2
**medication** 39:3 92:12
**medications** 17:5,7 24:6 25:3 38:16,23 92:14,18 93:25 94:8 95:23 96:21
**medicine** 11:12 12:9,11,22 15:6,22 17:1 35:16 36:1 38:9
**meet** 18:20
**meeting** 9:4,6,7 19:5
**meetings** 20:2
**member** 54:9

**members** 15:24
**mention** 86:15
**mentioned** 14:19 55:24
**met** 19:1,17
**michael** 22:21
**middle** 54:3,3
**mild** 78:15
**mind** 15:6 36:24
**mine** 13:20
**minneapolis** 2:9
**minnesota** 2:9 16:1
**minor** 1:6,8
**minors** 1:4,5,6 1:9,10 3:12 10:21
**moines** 2:5 20:1
**mom** 10:16 23:1
**moment** 8:1 10:17 88:5
**monetary** 11:16,20 12:17 14:20 15:1 17:14
**money** 20:8 54:15
**monthly** 65:12 65:15
**morning** 5:9

| | | | |
|---|---|---|---|
| **motion**  18:13 | **north**  1:1 7:19 | 49:21 50:10,17 | 25:7 27:11 |
| **motions**  18:10 | 16:1 21:5 | 56:9,18,25 | 30:8 40:6,24 |
| **motivation** | 92:13 102:2,22 | 57:8 65:22 | 41:2,7 42:15 |
| 78:12 | **notary**  102:22 | 66:2,25 67:6 | 49:9 51:2 55:4 |
| **move**  31:9,12 | 105:13,19 | 67:12 73:1,11 | 55:16 57:10 |
| 46:16 51:2 | **note**  103:10 | 73:17,24 77:3 | 58:12 62:18 |
| 67:16 90:5 | **noted**  105:7 | 77:10,16 84:4 | 65:18 66:5,13 |
| **moved**  22:17 | **notice**  3:10 8:3 | 84:18 94:11 | 67:14 71:24 |
| **moving**  7:18 | 8:5 | **obligations** | 72:9,18 74:1 |
| 74:1 | **noticed**  102:8 | 16:11 | 76:24 81:3 |
| **multiple**  21:7 | **november** | **occasionally** | 83:10,15 84:24 |
| **murals**  23:9,12 | 58:20 59:10,22 | 65:24 | 90:2,3,18 |
| **n** | 59:25 61:22 | **occur**  14:7 | 94:11 |
| **n**  2:1 3:1,1,2 | 62:9 64:12,17 | **occurred**  75:22 | **once**  6:10 |
| 5:1 | 65:21 66:17 | 79:11 | **opinion**  14:3 |
| **name**  5:10 | 74:3 75:17,21 | **october**  24:3,11 | **opposed**  27:14 |
| 13:22 34:3 | 76:4 | 41:13,15 42:9 | **order**  3:17 |
| 45:2 | **null**  17:3 | 45:23 46:20 | 12:11 22:25 |
| **named**  9:20 | **number**  33:8 | 48:13,23 78:3 | 32:11 57:15 |
| 10:9,12 | **o** | 82:3 85:8 86:3 | **ordered**  102:9 |
| **names**  10:2 | **o**  2:5 3:1 5:1 | 86:17 87:8,12 | **ordering** |
| 19:22 | 103:1 | 87:18 88:17,23 | 100:23 |
| **necessary** | **o.k.**  1:4 3:13 | **offering**  91:13 | **original**  102:8 |
| 105:6 | 4:8 10:3,22 | **office**  30:23 | **outcome**  14:5 |
| **need**  6:9 31:12 | 24:11 85:6,12 | 34:11 | **outpatient** |
| 31:13 46:16 | 86:2,16,20 | **offices**  27:10 | 34:12 |
| 66:7 | 87:7,12,18,24 | **okay**  5:15 6:6 | **outside**  92:15 |
| **needed**  6:9 | 88:18,25 89:6 | 6:13,18,20,23 | 92:17 95:22 |
| **never**  83:6 98:3 | 97:9,24 98:4,8 | 7:4,9 8:23 9:3 | 97:18 99:1 |
| **new**  62:3 | **object**  65:25 | 9:11 12:1,16 | **outstanding** |
| **nodding**  5:20 | **objection**  13:11 | 14:19 15:9 | 6:12 |
| **noncovered** | 15:4 35:21 | 17:23 18:6 | **owe**  31:11,17 |
| 31:6 | 37:5,10 49:13 | 20:24 21:10 | 54:20 |
| | | 22:23 23:6,17 | |

owed  64:8
own  7:20 15:3
owned  7:21

**p**

p  2:1,1 5:1
p.c.  2:3
p.m.  77:20,21
  81:7,8 84:25
  85:1 101:4
page  3:3 22:5
  23:19,19 30:13
  45:3,4 104:4,7
  104:10,13,16
  104:19
paid  20:18,22
  35:2 47:2
  48:11 54:21
  65:4,6,7
pain  17:21
paint  23:11
paintings  23:9
  23:9
pamphlets
  27:10,12
paragraph
  91:12 92:10,10
  95:20 97:17
  98:24
parent  1:4,5,6
  1:6,8,10 3:12
  4:6,8,10 10:21
parents  1:9
  13:16

part  18:2 49:23
  85:9
particular
  88:16
parties  9:19
  102:9,11,13
partner's  92:12
party  102:8
past  13:6
patient  31:5
  34:25 36:25
  46:15 48:15
  49:3,5 53:25
  64:7 71:7 76:2
patients  36:21
pause  7:2 88:4
pausing  66:3
pay  32:4 48:22
  65:7,12
paying  18:2
payments  35:1
  46:13,15 48:10
  64:7 71:7 76:2
  88:25
pays  47:3
pdf  100:25
pediatric  61:6
  68:1
pediatrician
  58:7,9,17,23
  59:8 60:23
  61:11 68:4,9
  68:14 78:22
  79:6,9 81:17

85:21,25 86:14
pediatricians
  86:6
people  15:8
  17:2
people's  12:25
period  21:8
  83:13
person  6:1 20:4
personally  20:9
personnel  27:3
  27:22 40:18
  41:3 42:17
  44:6 52:2,5
  59:14,18 60:1
  68:24 69:11
  74:15 85:20
persons  102:13
pertains  97:15
pharmaceutical
  23:21 44:25
  45:7
pharmacist
  13:18,19,21
phone  19:19
  20:3
picture  47:14
place  1:23 7:7
  22:16
plaintiff  3:8,11
  4:2 8:2 21:18
  21:20 29:16
  30:4 32:10
  33:5 47:10

53:15 88:6
  95:6 97:5
  98:12
plaintiffs  1:12
  2:2 3:14 9:21
  10:9,13 21:22
  45:5
please  5:9,19
  6:5,10,15,20
  7:2 10:18
  16:15 19:24
  66:4,11 95:16
  101:1
pocket  18:1
  32:5 35:2,11
  46:19,25 47:3
  55:18 64:10,15
  64:20 71:12,17
  71:21,25 76:3
  76:8 82:11,19
  82:24 89:1,7
point  18:23
  28:13 40:7
  41:8 44:21
  45:13,18 52:18
  56:20 77:19
  81:5
pointing  63:8
  70:20
posed  6:18
possession
  72:22 77:13
  83:25 84:8,14
  99:16

**[possible - r]** Page 18

**possible** 43:5,7 43:10,12
**potential** 16:12 18:24 33:15 56:4 90:12 91:18 94:22 95:12 96:9 97:10
**potentially** 35:15 37:1 90:8
**practice** 50:8
**predated** 14:12
**prefer** 7:3
**prep** 8:25
**prepare** 8:15 8:24
**prepared** 33:7
**present** 9:8 22:16 59:21
**prevent** 25:13 26:6,21 41:24 45:1,8 51:6 58:10 61:24 64:22 67:23 70:17 72:3 75:18 76:10,16 86:12
**preventative** 34:12 62:15 63:12,18 68:7 68:9
**preventing** 78:14

**prevents** 41:21
**previous** 58:21 66:11 79:13 98:20
**previously** 7:17 14:24 17:13 30:2 45:17,20 48:7 55:5 57:12 62:2 77:23 83:5,21 85:4 89:11 92:4
**price** 23:14
**prior** 19:14 25:22 26:2 27:1,6 28:25 29:3 38:22 42:11,15 43:22 43:25 44:4,7 51:17,25 52:24 61:18 74:13 75:13,13 79:25 80:8 87:11
**probably** 25:16
**procedure** 34:3 45:24 75:22
**proceedings** 5:17
**produced** 17:10 29:18 47:11 53:17 88:9 89:18 95:7 97:7 98:15

**product** 28:4 36:22 37:1 43:2,13 52:12 60:8,11 69:17 74:23 79:19 86:23
**products** 23:22 44:25 45:7
**promises** 29:7 53:5 70:12 80:13 87:16
**properly** 12:10 12:12,23 13:3 14:4,6 15:7,22 17:2,5,7 35:16 36:3 38:1,4,10 38:13,16,24 39:4
**protect** 26:17 36:24 41:18,23 51:6 68:17 74:9 85:16
**protected** 13:2
**protects** 41:21 41:22
**provide** 23:15 42:20
**provided** 22:10 25:16 58:6,8 88:16
**provider** 27:19 45:2
**providing** 37:9 37:18,23 38:8

39:9,12,19 56:16,24 57:6 65:20 66:16 67:5,11 73:8 73:15,22 77:2 77:9,15 84:16
**public** 23:11 102:22 105:19
**put** 30:2

**q**

**question** 6:11 6:18 10:11 14:23 17:25 18:11 35:23 36:4,6 37:13 39:15,23 43:11 49:16,22 66:5 66:7,11 81:11 87:24 93:23 94:5,6 95:2 99:22
**questions** 6:16 27:18 44:7 52:6 57:22 59:9 60:1 61:10 89:25 100:6,11
**quick** 81:6 100:10

**r**

**r** 2:1 5:1 104:3 104:3

**r.m.r.** 1:25 102:21
**r.p.r.** 1:25 102:21
**rabbit's** 7:11
**range** 89:20 92:15,17 95:8 95:22 97:19 99:1
**rate** 102:9
**rather** 30:2,4
**rau** 13:23,23,25 14:16
**reach** 19:10
**reaching** 19:14
**read** 29:23 31:14 37:15 66:7,11 94:5 95:16 100:24 102:15 103:9 105:5
**reading** 16:16
**reads** 44:23 53:20 54:9 92:11 95:21 98:25
**really** 13:20 63:22 100:10
**reask** 36:14 39:16
**reason** 64:14 71:11 103:11 104:6,9,12,15 104:18,21

**recall** 19:20 25:18 27:21 28:7 40:17 41:2 42:4,7 43:12,18 50:23 53:4 58:16,22 59:16 60:3,7 60:10,13 69:10 69:16,20 70:11 72:20 74:10,12 74:18,21,24 75:1,4 79:2,14 79:18,22 80:2 80:6,10,15,19 80:20 90:10,14 90:15,25 91:2 91:24
**receipt** 103:17
**receive** 20:13 27:2,11,25 28:1,18 29:9 42:13,16,22,24 43:2 44:12 50:25 51:22 52:1,7,10,21 55:11 59:14,15 59:25 60:19,20 60:23,24 61:4 67:19 68:6,15 69:6,15,18 70:1,22 71:18 72:5 74:14 79:17,21,25 86:20

**received** 24:1 24:11,21 25:8 25:23 26:3 31:16,21 33:13 33:14,24 34:3 34:9,11 39:4 40:14,22 41:5 41:12 45:21 48:12,23 51:3 53:6 54:13,16 55:1,6,8 56:3 57:13,16 59:10 59:13,17,22 62:22 64:3,12 64:16 67:16 69:7,12 74:2 75:16 77:24 78:2 80:5 81:24 83:2,6 85:5,7 86:2,16 87:7,18,25 89:3 90:7,11 91:2 92:3,4,6 92:23 93:4,8 93:12,25 94:1 94:9,9,17,21 95:11,18 96:3 96:9,17,21 97:1,24 98:4,8 99:6,11,17 100:2,2
**receiving** 27:7 28:4,25 29:11 32:5 34:10

35:7,12 40:17 42:1 43:22,25 44:7,14 45:13 46:20 47:5 48:19 49:12,19 50:8,15,19 52:13 53:9 55:19 61:21 65:10 70:15 71:8,13,22 72:1 76:4 82:7 82:12,17 84:2 87:20 88:18,23 90:25
**recently** 8:20
**recognize** 21:25
**recollection** 45:11
**recommend** 78:23 86:6
**recommendat...** 79:1
**recommendat...** 28:16 68:2
**recommended** 68:21 79:7 92:16,17 95:22 97:19 99:1
**recommending** 68:5,25 85:21 85:23
**record** 5:10 40:8,10 77:19

**[record - responsibility]**

77:20 81:6,7 81:10 84:24,25 100:22 102:7
**recorded** 5:18
**records** 59:2 62:17
**redacted** 30:22
**redaction** 47:18
**reduce** 92:19 95:24 97:20 99:3
**referenced** 54:24 103:6
**referencing** 25:21
**referring** 11:21 55:2 68:22
**reflects** 54:13 55:7
**refresh** 45:11
**regard** 40:19
**regarding** 60:5 69:22 70:13 97:8,10 99:21
**regardless** 88:8
**regards** 9:12 12:1,2 13:5 14:16 24:8 26:8 32:5 41:4 57:22 58:16 59:9 61:11 62:3 63:22 68:5 76:11

**region** 15:24
**rein** 1:9
**relate** 87:17
**relates** 29:8 33:16 53:6 80:14
**relating** 98:16
**relative** 5:5 102:10,11
**relevance** 88:16
**relevant** 20:25 21:1 96:7
**relied** 43:21 44:11 70:3 85:19
**rely** 28:20 53:1 75:5 87:10
**relying** 100:14
**remele** 2:8
**remember** 14:8 14:18 19:22 21:9 26:25 27:20 28:2,6,9 28:12,19,23 29:1,4,10 41:1 41:6 42:14,19 42:21,25 43:4 43:6,7,9,14,17 43:20,23 44:2 44:5,9,13,17 45:15 47:7 48:24 51:1,16 51:20,24 52:4

52:8,11,14,17 52:19,22,25 53:3,8,12 59:11,20 60:17 60:21 61:2,12 61:16,20 69:9 69:13 70:2,6 70:10,14 75:8 75:11,15 80:23 81:15 82:1 83:3,14 86:4 86:18,22,25 87:5,9,14,19,23 88:2 90:9,20 90:24
**remembered** 28:14
**remote** 1:18 5:2 101:3
**rent** 7:20
**repeat** 12:3,6 17:25
**repeated** 11:22
**rephrase** 37:21
**report** 3:21 53:21
**reported** 1:25 102:4
**reporter** 5:22 6:4 37:16 66:10,13 80:25 94:6 100:21
**reporter's** 102:1

**represent** 15:10,15,20,25 21:19 29:17 30:3 32:11 33:6,12 47:10 53:16 88:14 89:17,21 95:6 95:9
**representations** 27:3,8 28:21 41:3 42:18 43:18 60:18,22 69:11,24 74:16 79:24 86:1
**representative** 16:12
**representatives** 9:12
**required** 105:13
**reserved** 102:16
**respond** 22:7 45:4
**responding** 5:19 6:1,6 45:5
**response** 3:11 21:20 23:25 31:20
**responses** 16:17 41:10 44:20
**responsibility** 48:15 49:4

**[responsibility - see]**                                    Page 21

54:10 89:1
**restate** 35:23
  37:13
**result** 76:21
**resulted** 92:14
**return** 103:13
  103:16
**revaccinated**
  12:14 91:16,21
**revaccination**
  91:13 92:3
**revaccinations**
  92:7
**review** 28:3
  29:2 32:16
  34:16 42:23
  43:1 44:3 52:9
  52:12,23 60:4
  60:8 61:17
  69:14,17 74:19
  74:22 75:12
  79:15,19 80:7
  86:19,23 87:1
  87:10 89:24
  103:7
**reviewed** 16:21
  36:8 43:8,13
  60:11 91:7,9
**reviewing**
  97:15 98:21
**riddle** 2:10 3:5
  5:8 37:20 40:6
  40:12 66:10,19
  77:18,22 81:9

85:2 94:14
  100:5,11,19
  101:2
**ridge** 2:4
**right** 11:8,11
  15:11 29:24
  31:10 33:19
  34:17 45:16
  48:16,16 49:1
  49:8 54:9,20
  57:15 58:13
  63:21 68:16
  72:20 82:12
  92:24 97:25
  102:15
**room** 6:24 7:2
  7:3
**round** 40:15
**row** 54:4 63:15
  63:15,16,17
  70:20 75:20
**rows** 33:19
  34:2,15 45:19
  45:22 54:8
  62:6,7,20 63:5
  63:22,23 82:4
**rules** 5:16

**s**

**s** 2:1 3:1,2,2,2,7
  4:1 5:1 104:3
**s.b.** 1:11
**s.k.** 1:4 3:13
  4:10 10:3,21

24:10 84:21
  85:6,11 86:2
  86:16,20 87:7
  87:12,18,21
  88:18,25 89:6
  98:16 99:6,11
  99:17
**sager** 1:25
  102:21
**sagwlaw.com**
  2:6 103:2
**saw** 44:11 79:6
**saying** 5:21
  38:12 80:21
**says** 47:23 48:1
  65:25
**schedule** 58:24
  59:1,6 61:8
  68:16,20,21
  69:1
**scheduled** 18:7
  18:13
**schindler** 2:3
**schneider** 1:4
  9:15 19:8,10
  19:16
**screen** 7:25 8:4
  10:18 21:22
  29:20 30:3,6
  33:9 44:18
  45:16 84:22
  88:12
**screens** 31:12

**screenshot**
  47:14 88:10
**scroll** 22:3
  34:17,24 46:3
  71:6 82:5
**scrolling** 62:18
**sculpture** 23:9
**season** 44:16
  46:24 53:11
  55:17 87:22
  88:1
**seasons** 78:7
  80:17,18 81:14
  81:24
**second** 12:12
  41:13 46:16
  78:4 92:10,10
  94:4 95:20
  97:17 98:24
**see** 5:17 8:4
  10:19 21:22
  24:4 29:19
  30:6,15,22
  31:3,11 33:9
  33:16,20,22,24
  34:19,22 45:9
  45:23 46:1,6,6
  46:10,15 47:16
  47:19,20 49:3
  49:8,25 53:18
  53:22,25 54:6
  54:10 62:4,9
  62:13,19 63:19
  70:19,21 71:3

75:21 82:4 88:11 90:3 91:14 92:20 95:13 97:11,21 98:17 99:3

**seeking** 11:20 12:17 13:4 14:20,25 15:1 15:9,14,20,25 17:14,18 24:7 24:15 25:3

**seen** 8:7 32:13 70:22

**self** 23:5

**sell** 23:10

**sending** 16:16

**sense** 6:16

**sensitive** 23:21 32:21 44:24 45:7

**sent** 89:21 95:10 97:9 98:16 103:14

**sentence** 95:21 97:18 98:25

**service** 23:15 30:14,17 33:21 33:21 45:22 46:5 47:19 62:8 70:21 75:25

**services** 3:15 3:20 33:13,23 34:9 35:6

45:20 47:15 54:4,12,16,21 54:24 55:6,12 62:12 88:15

**set** 72:15,16

**severe** 41:24

**shaking** 5:20

**share** 7:25 44:18

**sharing** 10:18 32:24 45:16

**sheet** 62:3 88:17 103:11

**shelli** 1:4

**shield** 21:5

**shot** 24:2 79:7

**shots** 24:11 68:2 78:2

**showing** 10:18 32:20 49:8

**shows** 31:6

**sign** 32:16 100:25 102:15 103:12

**signature** 22:4 102:20

**signed** 18:21 19:6 103:19

**similar** 95:17 97:14

**similarly** 1:11 54:19 82:14

**simply** 43:10

**sit** 40:2

**situated** 1:11

**solely** 94:1,10

**solutions** 103:23

**somebody** 95:1

**sooner** 6:10

**sorry** 87:2

**sort** 40:25 76:14

**sounds** 40:9

**source** 59:13

**south** 2:9

**speaking** 6:1,5 20:4 42:9 77:23

**specific** 17:17 18:22 26:24 93:4,7 96:8,16 98:4,8 99:11 99:16

**specifically** 12:2 34:1 63:3 63:5 66:4 86:1 86:10,14 96:2

**specified** 5:6

**speculating** 93:11,15,20,25 94:8,15 96:20

**spent** 18:17 83:21

**spoke** 19:8

**spoken** 9:11,14 13:24 14:2

**spreadsheet** 3:18 33:9 45:19 46:4

**ss** 102:2

**stamp** 29:19

**stand** 11:7,8

**standing** 11:10 11:10

**start** 25:7 57:20

**state** 5:9 30:23 31:24 45:1 76:19 92:22 96:2 97:24 99:5 102:2

**stated** 12:17 26:5 28:10 43:16 52:16 60:15 69:22 75:2 87:4

**statement** 3:15 3:19 38:22 47:15 58:17 88:15

**statements** 27:8,23 29:6 41:3 42:17 52:2 53:1,4 59:19 61:1 69:10 70:11 74:16 80:12 87:15

**states** 1:1 10:20 22:25 23:20

24:10 30:14
31:10 47:15
48:4 54:20
91:11 97:18
**stating** 12:16
**statutory** 49:19
**stay** 23:1 68:16
68:19
**stopping** 40:7
77:19
**storage** 92:12
92:16 95:21
97:18 98:25
**stored** 11:12
12:10,12,22
13:2 14:4,6
15:7,22 35:16
36:2,3 37:25
38:4,9,12,16,24
39:4 92:15
**storing** 55:22
**straightforward**
93:24 94:7
**street** 2:9
**stressful** 13:1
**subject** 33:15
96:9,17,21
97:1,25 99:7
**subjected**
23:23 92:24,25
**submitted** 8:18
8:19 44:20
91:23

**subscribed**
105:14
**substance** 9:4
**substantial**
102:14
**substantially**
97:14 98:20
**succeed** 20:19
**suggests** 99:16
**suite** 2:4,9
**suited** 95:1
**summary** 3:21
53:21 79:3
**support** 50:2,6
50:13 56:14,21
57:4 65:19
66:14,20 67:3
67:9 72:22
73:5,13,20
76:25 77:7,13
83:25 84:8,14
94:20 96:25
99:25
**supporting**
100:13
**supposed** 36:23
**sure** 14:6,24
18:23 19:23
38:18,20 48:20
**switching** 62:2
**sworn** 5:5
102:5 105:14

**t**

**t** 3:1,1,2,7 4:1
46:4 104:3,3
**tab** 33:11
**tail** 7:11
**take** 41:14
51:12 57:14
58:12 89:24
**taken** 5:13
49:10,17 50:5
50:12 56:13,21
57:3
**talk** 41:11
57:15 58:13,24
72:16 78:1
**talked** 9:18
**talking** 6:2
**technical** 81:12
**tell** 6:20 16:24
26:7,10,11,13
61:7 78:5
95:16 102:5
**telling** 26:15
**temperature**
18:24 23:21,23
33:15 44:24
45:7 55:22,23
56:4 90:8,12
91:18 92:24,25
93:5,9 94:22
95:13 96:10,17
96:22 97:1,11
97:25 98:5,9

99:7,12,18
**temperatures**
92:15,16 95:22
97:18 99:1
**ten** 22:17
**tendency**
102:14
**terms** 20:6
**testified** 5:6
36:8
**testify** 5:5 8:10
90:21
**testifying** 26:23
**testimony**
26:19 37:3
68:8 102:6,7
103:9,17 105:8
**tests** 34:13
**texas** 6:22 7:6
7:12 22:18
**thank** 5:12
16:21 24:20
33:4 49:9
99:24 100:6,18
101:2
**thereof** 55:9
**thing** 6:11
15:12
**things** 22:13
**think** 40:6 66:3
77:18 80:25
81:4 84:22,23
95:17

**[thinking - v]**

| | | | |
|---|---|---|---|
| **thinking** 65:3 | **today's** 6:21 | 31:5 41:12 | 68:13 |
| **third** 30:13 | 8:15 | 45:23 48:10 | **understanding** |
| 91:12 | **told** 14:17 | 55:6 62:11 | 14:13 26:8 |
| **three** 10:1 | 26:24 44:11 | 78:1,2 84:21 | 41:20,23 46:18 |
| 12:13 30:22 | 66:4 81:21 | 85:6 88:17 | 49:23 |
| **time** 1:24 11:17 | 93:3 96:6 98:3 | **type** 11:21 | **understood** |
| 11:20,21,22 | 99:10 | 15:18 17:17 | 6:18 |
| 12:1,12,13 | **took** 50:1 73:5 | 23:8 | **unfair** 37:8,17 |
| 17:15 18:5,16 | **top** 45:4 54:8 | **types** 5:17 | 37:22 49:11,18 |
| 18:23,25 21:1 | 62:6 91:24 | 23:11 | 50:3 56:15 |
| 21:7 27:1 | **total** 46:4 70:25 | **tyrell** 1:8 | 66:22 73:7 |
| 28:13 35:15 | **touched** 22:15 | | 77:1 |
| 38:3,17,24 | **track** 5:22 59:2 | **u** | **unfairly** 35:24 |
| 39:4 40:17 | 88:7 | **u** 34:19 46:8 | 36:9,12,16,20 |
| 42:15 50:19 | **transcribed** | 62:19,24 63:7 | 56:7 65:20 |
| 51:12,25 59:17 | 102:6 | 63:14 64:2 | 66:15 72:23 |
| 72:8,10,11,11 | **transcript** | 71:1 82:6 | 84:1 |
| 72:13,13,14 | 102:16 103:6 | **uh** 5:21,21 | **united** 1:1 |
| 74:13 76:12 | 103:19 105:5,8 | 15:17 | **unjustly** 35:19 |
| 83:4,7,13,19,20 | **treatment** 13:5 | **under** 34:2 | 36:9 |
| 83:21 89:10,11 | **trial** 16:20 18:7 | 45:22 49:18 | **unknown** 76:20 |
| 90:6,19 96:6 | 20:20,21 | 62:24 63:14 | **unpack** 11:19 |
| 100:6,6 103:18 | **true** 102:7 | 64:6 71:1 76:2 | 17:17 26:14 |
| **timeframe** | 105:8 | **underneath** | **unrelated** 35:7 |
| 103:8 | **truth** 5:5,5,5 | 33:21 47:18 | 42:12 |
| **times** 17:4 | 102:5 | **understand** | **upper** 10:19 |
| 20:25 | **try** 5:16 6:2,5 | 5:23 8:9 10:11 | 53:20 |
| **titled** 8:10 | 37:20 54:5 | 10:15 16:11 | **used** 36:1 |
| 47:15 | **trying** 27:6 | 18:11 22:17 | 103:19 |
| **today** 8:10,24 | 38:21 68:13 | 27:6 32:19,22 | **v** |
| 26:19,23 29:6 | 76:19 | 36:6,15,16,19 | **v** 62:18 82:6 |
| 40:2 80:12 | **turn** 41:7 | 38:21 39:23 | 103:4 104:1 |
| 100:7 | **two** 9:5 24:6,14 | 41:25 49:16,22 | 105:1 |
| | 24:15 30:23 | 49:25 54:23 | |

| | | | |
|---|---|---|---|
| **vaccinate** 58:10 68:17 | 32:2,6 33:14 34:4,10,18,21 | 65:21 66:16,24 67:5,11,15,16 | 62:21 68:6,9 69:25 80:4,14 |
| **vaccinated** 25:11 41:16 42:5,10 58:2,5 60:6 67:22 70:5 74:4,8,11 75:7,7 78:6,10 78:13,17 86:8 | 35:7,13,20,25 36:13 37:9,19 37:24 38:8 39:9,13,19 40:2,14,19,20 40:21 41:4,11 41:17,21 42:2 | 68:15 69:6,12 69:15,19,22 70:1,4,8,13,16 70:17,22 71:4 71:9,14,18,22 72:1,3,5,24 73:8,16,23 | 83:2 86:15,20 86:24 87:7,17 87:20 88:18 89:3,9 90:7,11 91:17,20 92:4 92:14,18,23 93:12 94:1,9 |
| **vaccination** 13:2 28:5 36:2 36:3 40:17 41:15 51:5,13 67:19 68:21,25 78:23 80:1 82:3,15 85:23 95:11 | 42:5,13,16,18 42:23 43:3,16 43:16,19,22,25 43:25 44:4,7 44:11,12,14 45:14,25 46:9 46:20 47:6 48:2,12,19,23 | 74:1,2,5,8,11 74:14,17,20 75:3,10,13,16 75:18,22,25 76:4,9,11,16 77:2,9,15,25 78:18 79:12,16 79:21,24 80:5 | 94:16,21 95:23 96:8,16 97:20 97:24 99:2,6 99:11,17 100:1 **variety** 17:14 **various** 57:18 88:15 100:13 |
| **vaccinations** 14:4 17:1,21 18:2 21:12 24:15 25:3,8 41:12 58:24 59:1,3,6 77:24 85:4 89:12 96:2,25 | 49:12,20 50:9 50:16,20,21,24 50:25 51:3,8 51:15,23 52:1 52:3,6,10,13,16 52:21,24 53:2 53:6,9 54:25 55:8,20 56:3,8 | 80:8 81:25 82:8,12,18 84:2,10,17 85:8,12 86:2,6 86:8,11,12,16 86:21 87:3,11 87:25 88:23 92:7 93:4,8 | **verification** 22:5 **verify** 103:9 **veritext** 1:23 102:5 103:14 103:23 **veritext.com** 103:15 |
| **vaccine** 24:1,22 24:22,23,24 25:9,12,15,24 26:2,6,9,15,18 26:20 27:2,4,7 27:9,16,19,23 28:1,11,18,22 28:25 29:3,8 29:12 31:22 | 56:16,24 57:6 58:2,5,15,16 59:9,15,18,19 59:22,25 60:2 60:5,12,16,19 60:20,24 61:5 61:11,14,18,18 61:21,23 64:11 64:16,21 65:11 | 98:4,8 **vaccine's** 28:20 43:1,22 70:4 74:22 75:6 **vaccines** 26:8 26:11,14 30:24 31:2,16,25 35:3 36:21 57:12,16,23 | **versus** 8:11 **virtual** 1:23 102:5 **virus** 53:10 82:23 83:12 87:21 88:1 89:7 **visit** 27:2 30:23 34:12,12 42:16 62:15 63:18 |

70:25 74:14 83:8

**void** 11:18 12:9 17:22

**vs** 1:13

**w**

**w** 3:2

**w.s.** 1:5

**wait** 5:25 6:5

**want** 11:5 17:16 40:8 44:21 60:23 61:4 92:11

**wants** 22:23

**warranties** 17:16

**warranty** 11:18 12:9 14:20,22 15:2 17:3,22

**way** 19:14 27:21 31:9 34:25 39:2 45:12 48:21 56:2 71:7 75:5 94:15

**ways** 72:18

**we've** 41:9 85:4

**weeks** 8:24

**weese** 2:3

**went** 8:17 92:2

**west** 2:5

**win** 20:13,20

**window** 21:1

**witness** 81:2 102:5,7,16,17 103:8,10,12,18

**witnesses** 13:8

**words** 11:9 12:14 15:3 26:24 36:11 79:2

**work** 7:7 37:2 100:2

**written** 16:17 27:15

**x**

**x** 3:7 4:1 71:3 75:24

**y**

**yeah** 81:2,3

**year** 51:9 79:20 79:25 80:4 85:24 86:7

**yearly** 65:13

**years** 7:16 8:20 8:22 22:17 78:10,18 79:17 84:3

**yep** 100:24

**z**

**zero** 31:6 35:2 46:14 48:16 49:4 54:14,14 54:14,21 64:7

71:20 89:2

**zoom** 1:23 29:22 31:1,13 54:5 102:5

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER:  THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019.  PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS

COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted

fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.